Nos. 25-1236, 25-1413

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

STATE OF NEW YORK, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Rhode Island

_____

**APPENDIX**

_____

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

SARA MIRON BLOOM
  *Acting United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5446*

# TABLE OF CONTENTS

**Page**

Complaint for Declaratory and Injunctive Relief
(Dkt. No. 1) ............................................................................................ A70

Exhibits to Corrected Complaint
(Dkt. Nos. 27-1, -2) ............................................................................. A114

Exhibit to Notice of Factual Development
(Dkt. No. 43-1).................................................................................... A170

Exhibit to Response in Opposition to Motion for
Temporary Restraining Order (Dkt. No. 49-1)................................. A171

Temporary Restraining Order
(Dkt. No. 50) ....................................................................................... A173

Motion for Enforcement of the Temporary Restraining Order
(Dkt. No. 66) ....................................................................................... A186

Exhibits to Motion for Preliminary Injunction
(Dkt. Nos. 68-10, -13, -14, -15, -58, -61, -92, -124, -126, -127)...................... A207

Order Granting Motion for Enforcement of the
Temporary Restraining Order (Dkt. No. 96) .................................... A286

Order of the First Circuit Denying Administrative Stay
(Dkt. No. 106) ..................................................................................... A291

Order Denying Emergency Motion
(Dkt. No. 107) ..................................................................................... A293

Excerpts of Memorandum in Opposition to Motion for
Preliminary Injunction (Dkt. No. 113)............................................. A297

First Amended Complaint for Declaratory and Injunctive Relief
(Dkt. No. 114) ..................................................................................... A304

Judgment of the First Circuit Dismissing Appeal
(Dkt. No. 121) ..................................................................................... A369

i

Second Motion to Enforce the Temporary Restraining Order
    (Dkt. No. 160) ................................................................................ A371

Exhibit to Second Motion to Enforce the Temporary Restraining Order
    (Dkt. No. 160-1) ........................................................................... A384

Notice of Appeal
    (Dkt. No. 162) ................................................................................ A421

Exhibits to Status Report
    (Dkt. Nos. 166-1, -4, -5, -9) ........................................................ A424

Response to Status Report
    (Dkt. No. 167) ................................................................................ A445

Renewed Second Motion to Enforce
    (Dkt. No. 168) ................................................................................ A458

Exhibits to Renewed Second Motion to Enforce
    (Dkt. No. 168-1, -2, -3, -4) .......................................................... A472

Exhibit to Notice of Supplemental Filing
    (Dkt. No. 169-1) ........................................................................... A509

Stay Opinion of the First Circuit
    (Dkt. No. 170) ................................................................................ A532

Excerpts of Reply in Support of Renewed Second Motion to Enforce
    (Dkt. No. 173) ................................................................................ A580

Notice of Appeal
    (Dkt. No. 185) ................................................................................ A602

District Court Docket Sheet ................................................................... A605

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN, | C.A. No. _____ |
| Plaintiffs, | **REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 65(B)** |
| v. | |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; U.S. OFFICE OF MANAGEMENT AND BUDGET; MATTHEW J. VAETH, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF THE U.S. OFFICE OF MANAGEMENT AND BUDGET; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY; PATRICIA COLLINS IN HER OFFICIAL CAPACITY AS TREASURER OF THE U.S.; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D., IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF EDUCATION; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE U.S. FEDERAL EMERGENCY MANAGEMENT | |

1

AGENCY; U.S. DEPARTMENT OF
TRANSPORTATION;
JUDITH KALETA, IN HER OFFICIAL
CAPACITY AS ACTING SECRETARY OF
TRANSPORTATION;
U.S. DEPARTMENT OF LABOR; VINCE
MICONE, IN HIS OFFICIAL CAPACITY AS
ACTING SECRETARY OF LABOR; U.S.
DEPARTMENT OF ENERGY; INGRID KOLB, IN
HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE U.S. DEPARTMENT OF
ENERGY; U.S. ENVIRONMENTAL
PROTECTION AGENCY; JAMES PAYNE, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S.
ENVIRONMENTAL PROTECTION AGENCY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, IN HER CAPACITY
AS SECRETARY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
DEPARTMENT OF JUSTICE; JAMES R.
McHENRY III, IN HIS OFFICIAL CAPACITY AS
ACTING ATTORNEY GENERAL OF THE U.S.
DEPARTMENT OF JUSTICE; THE NATIONAL
SCIENCE FOUNDATION and DR.
SETHURAMAN PANCHANATHAN, IN HIS
CAPACITY AS DIRECTOR OF THE NATIONAL
SCIENCE FOUNDATION,

Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**INTRODUCTION**

1. This action seeks declaratory and injunctive relief and vacatur under the Administrative Procedure Act ("APA") with respect to the Office of Management and Budget's January 27, 2025, Directive for Heads of Executive Departments and Agencies (M-25-13), with the subject, "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs"

("OMB Directive").[1] The OMB Directive, set to take effect at 5 pm today but actually being implemented even earlier, directs that the head of every executive branch department and agency "**must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by" recent executive orders, "including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." OMB Directive, at 2 (emphasis in original). It requires all federal agencies to conduct a review of all federal financial assistance programs and supporting activities for consistency with current presidential policy, including the slate of executive orders directing immigration activities; eradicating DEI initiatives from federal programs; eliminating protections for members of the LGBTQ community; and removing conservation-focused regulations intended to protect the environment. The OMB Directive violates the APA and is unconstitutional. The substantial confusion created by the OMB Directive and unlawfully withheld funding pursuant to the OMB Directive's directive will result in immediate and devastating harm to Plaintiff States.

2.      The OMB Directive would permit the federal government to rescind already allocated dollars that have been included in recipient budgets—monies that are otherwise necessary for the Plaintiffs to ensure that their residents have quality healthcare, the protections of law enforcement, the benefit of safe roads, and assistance in the aftermath of natural disasters, among many other key services. Without this funding, Plaintiff States will be unable to provide certain essential benefits for residents, pay public employees, satisfy obligations, and carry on the important business of government.

---

[1] A copy of the OMB Directive is appended to this Complaint as Exhibit A.

3.     There has apparently been a new document circulated by OMB today attempting to clarify that the pause is not "across-the-board," and does not impact funding like Medicaid. Regardless of this attempt at clarification, as of the filing of this Complaint, the portal for processing Medicaid Disbursement was inoperable across numerous of Plaintiff States for hours. The system for drawing down Head Start and the Child Care Development Block Grant Fund were also down for some states. Plaintiff States became aware of this document via X (formerly Twitter). This directive also does not describe how particular grant programs are treated, and the pause appears to continue as to nearly all federal funding. This directive suggests that in some circumstances, a pause "could be a day," but the directive does not provide an end date, and the process required by the OMB Directive, including analysis and reports by agencies, demonstrates that delays are more likely to be weeks or months, with no way of determining the actual length of time. For these reasons, this new document actually increases confusion.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 702.

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. The State of New York is a resident of this district, and a substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within the Southern District of New York.

## PARTIES

**A. Plaintiffs**

6. The State of New York is a sovereign state in the United States of America. New York is represented by Attorney General Letitia James, who is the chief law enforcement officer of New York.

7. The State of California is a sovereign state in the United States of America. California is represented by Attorney General Rob Bonta, who is the chief law enforcement officer of California.

8. The State of Illinois is a sovereign state in the United States of America. Illinois is represented by Attorney General Kwame Raoul, who is the chief law enforcement officer of Illinois.

9. The State of Rhode Island is a sovereign state in the United States of America. Rhode Island is represented by Attorney General Peter F. Neronha, who is the chief law enforcement officer of Rhode Island.

10. The State of New Jersey is a sovereign state in the United States of America. New Jersey is represented by Attorney General Matthew Platkin, who is the chief law enforcement officer of New Jersey.

11. The Commonwealth of Massachusetts is a sovereign state in the United States of America. Massachusetts is represented by Attorney General Andrea Campbell, who is the chief law enforcement officer of Massachusetts.

12. The State of Arizona is a sovereign state in the United States of America. Arizona is represented by Attorney General Kris Mayes, who is the chief law enforcement officer of Arizona.

13.     The State of Colorado is a sovereign state in the United States of America. Colorado is represented by Attorney General Phil Weiser, who is the chief law enforcement officer of Colorado.

14.     The State of Connecticut is a sovereign state in the United States of America. Connecticut is represented by Attorney General William Tong, who is the chief law enforcement officer of Connecticut.

15.     The State of Delaware is a sovereign state in the United States of America. Delaware is represented by Attorney General Kathy Jennings, who is the chief law enforcement officer of Delaware.

16.     The District of Columbia is the capitol of the Federal District of the United States. The District of Columbia is represented by Attorney General Brian Schwalb.

17.     The State of Hawai'i is a sovereign state of the United States of America. Hawai'i is represented by Attorney General Anne Lopez who is the chief law enforcement officer of Hawai'i.

18.     The State of Maine is a sovereign state of the United States of America. Maine is represented by Attorney General Aaron Frey who is the chief law enforcement officer of Maine.

19.     The State of Maryland is a sovereign state of the United States of America. Maryland is represented by Attorney General Anthony G. Brown who is the chief law enforcement officer of Maryland.

20.     The State of Michigan is a sovereign state of the United States of America. Michigan is represented by Attorney General Dana Nessell who is the chief law enforcement officer of Michigan.

21.     The State of Minnesota is a sovereign state of the United States of America. Minnesota is represented by Attorney General Keith Ellison who is the chief law enforcement officer of Minnesota.

22.     The State of Minnesota is a sovereign state of the United States of America. Minnesota is represented by Attorney General Keith Ellison who is the chief law enforcement officer of Minnesota.

23.     The State of Nevada is a sovereign state of the United States of America. Nevada is represented by Attorney General Aaron Ford who is the chief law enforcement officer of Nevada.

24.     The State of North Carolina is a sovereign state of the United States of America. North Carolina is represented by Attorney General Jeff Jackson who is the chief law enforcement officer of North Carolina.

25.     The State of New Mexico is a sovereign state of the United States of America. New Mexico is represented by Attorney General Raúl Torrez who is the chief law enforcement officer of New Mexico.

26.     The State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield who is the chief law enforcement officer of Oregon.

27.     The State of Vermont is a sovereign state of the United States of America. Vermont is represented by Attorney General Charity Clark who is the chief law enforcement officer of Vermont.

28.     The State of Washington is a sovereign state in the United States of America. Washington is represented by Attorney General Nicholas W. Brown. The Attorney General of

Washington is the chief legal adviser to the State and is authorized to act in federal court on behalf of the State on matters of public concern.

29.    The State of Wisconsin is a sovereign state of the United States of America. Wisconsin is represented by Attorney General Josh Kaul who is the chief law enforcement officer of Wisconsin.

30.    Plaintiff States each receive billions of dollars annually from the federal government, for services that range from funding essential healthcare and free or low-cost school meals to low-income children, to providing grants to support law enforcement efforts to combat violence against children, elders and other vulnerable groups, to funding the maintenance of highways and roads. The OMB Directive jeopardizes all of this funding – funding that Congress designated and appropriated for the States.

**B. Defendants**

31.    Defendant Donald J. Trump is the President of the United States. He is responsible for the actions and decisions that are being challenged by Plaintiffs in this action and is sued in his official capacity.

32.    Defendant the United States Office of Management and Budget (OMB) is a cabinet agency within the executive branch of the United States government. The Office of Management and Budget is responsible for oversight of federal agencies' performance and the administration of the federal budget. 31 U.S.C. § 501.

33.    Defendant Matthew J. Vaeth is the Acting Director of the Office of Management and Budget, and that agency's highest ranking official. He is responsible for overseeing OMB, providing direction and leadership to the executive branch on financial management matters by establishing financial management policies and requirements, including being responsible for

authoring the OMB Directive and ensuring that its directions are implemented by all federal agencies that provide relevant funding and support. He is sued in his official capacity. 31 U.S.C. §§ 502, 503; "President Trump Announces Acting Cabinet and Cabinet-Level Positions" (Jan. 20, 2025) ("Acting Designations EO").

34. Defendant the United States Department of the Treasury is a cabinet agency within the executive branch of the United States government. 31 U.S.C. § 301. The Department of the Treasury is responsible for ensuring the financial security of the United States.

35. Scott Bessent is the Secretary of the Department of the Treasury and responsible for the operations of the Department of the Treasury, and management the finances of the United States. He is sued in his official capacity. 31 U.S.C. § 301.

36. Patricia Collins is the Treasurer of the United States and responsible for the management of the finances of the United States. She is sued in her official capacity. 31 U.S.C. § 301.

37. Defendant the United States Department of Health and Human Services is a cabinet agency within the executive branch of the United States government. 42 U.S.C. §§ 3501, 3501a.

38. Defendant Dorothy A. Fink, M.D., is the Acting Secretary of the Department of Health and Human Services, and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. She is sued in her official the capacity. 42 U.S.C. §§ 3501a, 3502; Acting Designations EO.

39. Defendant the United States Department of Education is a cabinet agency within the executive branch of the United States government. 20 U.S.C. § 3411.

40. Defendant Denise Carter is the Acting Secretary of the United States Department of Education, and that agency's highest ranking official. She is charged with the supervision and

management of all decisions and actions of that agency. She is sued in her official capacity. 20 U.S.C. § 3412; Acting Designations EO.

41.     Defendant United States Federal Emergency Management Agency is part of the United States Department of Homeland Security, a cabinet agency within the executive branch of the United States government. 6 U.S.C. § 313.

42.     Defendant Cameron Hamilton is the Acting Administrator of the United States Federal Emergency Management Agency, and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. He is sued in his official capacity. 6 U.S.C. §§ 313, 314.

43.     Defendant United States Department of Transportation is a cabinet agency within the executive branch of the United States government. 49 U.S.C. § 102.

44.     Defendant Judith Kaleta is the Acting Secretary of the United States Department of Transportation, and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. She is sued in her official capacity. 49 U.S.C. § 102; Acting Designations EO.

45.     Defendant United States Department of Labor is a cabinet agency within the executive branch of the United States government. 29 U.S.C. § 551.

46.     Defendant Vincent Micone is the Acting Secretary of the United States Department of Labor, and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. He is sued in his official capacity. 29 U.S.C. § 551; Acting Designations EO.

47.     Defendant United States Department of Energy is a cabinet agency within the executive branch of the United States government. 42 U.S.C. § 7131.

48.      Defendant Ingrid Kolb is the Acting Secretary of the United States Department of Energy, and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. She is sued in her official capacity. 42 U.S.C. § 7131; Acting Designations EO.

49.      Defendant United States Environmental Protection Agency is an independent agency within the executive branch of the United States government.

50.      Defendant James Payne is the Acting Administrator of the United States Environmental Protection Agency, and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. He is sued in his official capacity. Acting Designations EO.

51.      Defendant United States Department of Homeland Security is an independent agency within the executive branch of the United States government. 6 U.S.C. § 111.

52.      Defendant Kristi Noem is the Secretary of the United States Department of Homeland Security and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. She is sued in her official capacity. 6 U.S.C. § 112.

53.      Defendant United States Department of Justice is an independent agency within the executive branch of the United States government. 28 U.S.C. § 501.

54.      Defendant James R. McHenry III is the Acting Attorney General for the United States Department of Justice, and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. He is sued in his official capacity. 28 U.S.C. § 503, https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-acting-leaders/.

55.     Defendant the National Science Foundation is an independent agency within the executive branch of the United States government.

56.     Defendant Dr. Sethuraman Panchanathan is the Director of the National Science Foundation, and that agency's highest ranking official.  He is charged with the supervision and management of all decisions and actions of that agency.  He is sued in his official capacity.

## ALLEGATIONS

### A. Background

#### i.     Executive Orders

57.     On January 20, 2025, and in the days following, President Trump issued a series of executive orders announcing widespread policy changes and indicating, in a non-specific and unclear manner, that a number of funding commitments to various federal funding recipients would be rescinded. The OMB Directive purports to implement these executive orders. None of these orders lawfully or reasonably provides authority for the OMB Directive's disruption of all federal financial assistance, nor could they.

58.     "Putting America First in International Environmental Agreements" (the "Environmental EO"), sets out a policy to "put the interests of the United States and the American people first in the development and negotiation of any international agreements with the potential to damage or stifle the American economy." Environmental EO § 2.

59.     To accomplish its stated policy, the Environmental EO directs the United States Ambassador to the United Nations to withdraw the United States as a signatory to the Paris Agreement under the United Nations Framework Convention on Climate Change. *Id.* § 3(a). It also mandates the revocation or rescission of U.S. financial commitments made under the United Nations Framework Convention on Climate Change, which is the governing body responsible for

implementing the Paris Agreement. *See id.* § 3(b)-(c). The order additionally rescinds the U.S. International Climate Finance Plan and directs federal agencies "to revoke or rescind policies that were implemented to advance the" Plan. *Id.* § 3(e)-(f). Finally, the Environmental EO mandates that the "Secretary of State, Secretary of Commerce, and the head of any department or agency that plans or coordinates international energy agreements shall henceforth prioritize economic efficiency, the promotion of American prosperity, consumer choice, and fiscal restraint in all foreign engagements that concern energy policy." *Id.* § 3(g).

60.     Also on January 20, 2025, the President issued an executive order entitled, "Protecting the American People Against Invasion" (the "Invasion EO"). This EO asserts that an "unprecedented flood of illegal immigration" over the last four years resulted in the entry of people who "present significant threats to national security and public safety," "are engaged in hostile activities, including espionage, economic espionage, and preparations for terror-related activities," or have "abused the generosity of the American people."

61.     The Invasion EO further asserts that it is the "the policy of the United States to achieve the total and efficient enforcement" of its immigration laws and issues a wide-ranging series of instructions to various persons and agencies within the federal government.

62.     Among those directives contained in the Invasion EO is the following:

> Sec. 17.  Sanctuary Jurisdictions.  The Attorney General and the Secretary of Homeland Security shall, to the maximum extent possible under law, evaluate and undertake any lawful actions to ensure that so-called "sanctuary" jurisdictions, which seek to interfere with the lawful exercise of Federal law enforcement operations, do not receive access to Federal funds.

63.     On January 20, 2025, the President also issued an executive order entitled, "Ending Radical and Wasteful Government DEI Programs and Preferencing" (the "DEI EO"). This EO asserts that the Biden administration "forced illegal and immoral discrimination programs, going

by the name 'diversity, equity, and inclusion' (DEI), into virtually all aspects of the Federal Government," and announces the intent to eliminate any such programs. In addition to ordering the review and potential revision of "all existing Federal employment practices, union contracts, and training policies or programs to comply with this order" the DEI EO mandates the termination of various offices, positions, programs and practices within the federal government, including in relation to its grants or contracts.

64.     The EO also requires all agency, department, or commission heads to provide a wide range of information and analyses related to DEI, diversity, equity, inclusion, and accessibility, or environmental justice efforts, mandating evaluation of "positions, committees, programs, services, activities, budgets, and expenditures," as well as policies, programs and practices. The EO also requires agencies to provide the Director of OMB a list of all "Federal grantees who received Federal funding to provide or advance DEI, DEIA, or 'environmental justice' programs, services, or activities since January 20, 2021."

65.     On January 20, 2025, the President also issued an executive order entitled "Reevaluating and Realigning United States Foreign Aid" (the "Foreign Aid EO"). This EO asserts that "[t]he United States foreign aid industry and bureaucracy are not aligned with American interests and in many cases antithetical to American values," and announces that it is "the policy of United States that no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President of the United States." The EO orders a 90-day pause in all U.S. foreign development assistance "for assessment of programmatic efficiencies and consistency with United States foreign policy," further specifying that " [a]ll department and agency heads with responsibility for United States foreign development assistance programs shall immediately pause new obligations and disbursements of development assistance

14

funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors," pending review of those programs. The Foreign Aid EO further instructs department and agency heads, the Secretary of State and the Director of OMB to participate in a review of the programs, to culminate in a decision as to whether each program should be continued, modified, or ended.

66. On January 20, 2025, the President issued an executive order entitled "Unleashing American Energy" (the "Energy EO"), which purports to address "burdensome and ideologically motivated regulations" that allegedly "have impeded the development of [energy and natural] resources, limited the generation of reliable and affordable electricity, reduced job creation, and inflicted high energy costs upon our citizens." To that end, Section 2 of the Energy EO declares several policies, including encouraging energy exploration and production on Federal lands and waters, producing and processing non-fuel minerals, ensuring an abundant supply of reliable energy, and safeguarding the freedom to choose among appliances.

67. The Energy EO also directs agencies to temporarily pause certain types of funding. Specifically, Section 7 provides that "[a]ll agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58), including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program and the Charging and Fueling Infrastructure Discretionary Grant Program, and shall review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and the policy outlined in section 2 of this order." Section 7 further provides that within 90 days (*i.e.*, before April 20, 2025), all agency heads must submit a report detailing their review and

recommendations to "enhance their alignment with the policy set forth in section 2." According to this EO, no funds paused under this section can be disbursed until the Director of OMB and Assistant to the President for Economic Policy have determined that such disbursements "are consistent with any review recommendations they have chosen to adopt." *Id.*

68.     On January 20, 2025, the President issued an executive order titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (the "Gender EO"). This EO purports to redirect federal policy "by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male." Gender EO § 1. The EO sets out definitions for, among other things, "male" and "female," and states that these definitions "shall govern all Executive interpretation of and application of Federal law and administration policy." *Id.* § 2. The term "gender ideology" is defined as follows:

> "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.

In addition to mandating that all federal agencies require individuals' biological sex on government documents, the EO directs the separation of biological males from females in prisons and federally managed private spaces, begins the process of rescinding regulations that include gender identity in community planning and development, and rescinds a slew of federal guidance concerning gender identity, including the Attorney General's interpretation of the Supreme Court's opinion in *Bostock v. Clayton County*, 590 U.S. 644 (2020).

69.     Additionally, the Gender EO requires that (a) agencies "shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," (b) agencies "shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology," (c) the Attorney General "shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex," and (d) the Attorney General "shall issue guidance to ensure the freedom to express the binary nature of sex and the right to single-sex spaces in workplaces and federally funded entities covered by the Civil Rights Act of 1964." *See* Gender EO §§ 3(e) & (g), 4(c), 5.

70.     On January 24, 2025, the President issued an executive order titled "Enforcing the Hyde Amendment" ("Hyde EO"). This EO states that while Congress has annually enacted the Hyde Amendment, which prevents the use of Federal funds for abortion care (with narrow exceptions), the Biden administration had disregarded this prohibition and instead "embedd[ed] forced taxpayer funding of elective abortions in a wide variety of Federal programs." The EO goes on to revoke two executive orders issued under the Biden Administration. The first, Executive Order 14076, Protecting Access to Reproductive Healthcare Services (July 8, 2022), directs the heads of various agencies and/or the Attorney General to, *inter alia*, "protect and expand access to abortion care," "consider actions . . . to ensure the safety of patients, providers . . . and to protect the security of clinics," and "provide technical assistance . . . to States seeking to afford legal protection to out-of-State patients and providers who offer legal reproductive healthcare." The second, Executive Order 14079, Securing Access to Reproductive and Other Healthcare Services (Aug. 3, 2022), directs the Secretary for Health and Human Services to advance access to reproductive healthcare "through Medicaid for patients traveling across State lines for medical care" and ensure, including through technical support, "understanding of and compliance with

Federal non-discrimination laws [including those related to pregnancy] by healthcare providers that receive Federal financial assistance."

      **ii.**    **The OMB Directive**

    71.    On the evening of January 27, State Plaintiffs were alerted through social media to a Directive sent by Matthew J. Vaeth, Acting Director of the Office of Management and Budget to heads of executive departments and agencies. The Directive, titled "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs," references the seven executive orders described above. OMB Directive, at 1-2. It further states that all federal agencies "must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders." *Id.* at 2. Moreover, while this analysis is ongoing, "[i]n the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." *Id.* at 2 (emphasis in original). Pursuant to the OMB Directive, the temporary pause will take effect today, January 28, 2025 at 5:00 PM. *Id.*

    72.    The OMB Directive appears to require the temporary suspension of disbursement and obligation of all Federal financial assistance with few exceptions, and not just funds that may be related to "foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." *Id.*; *see also* Jeff Stein, et al., *White House Pauses all Federal Grants, Sparking Confusion*, Washington Post (Jan. 27, 2025, updated Jan. 28, 2025) ("A person familiar with the order, speaking on the condition of anonymity to describe confidential decisions, confirmed the

accuracy of the document and said it applied to all grants."). Indeed, the OMB Directive states that the pause applies to "*all* activities related to obligation or disbursement of *all* Federal financial assistance," seemingly separate from its additional application to "other relevant agency activities that may be implicated by the executive orders." *Id.* at 2 (emphasis added). And the Directive expressly states that its list of "other relevant agency activities" that may be implicated by the executive orders is merely illustrative and not exhaustive. *Id.*

73.    The OMB Directive relies upon a potentially broad definition of affected Federal funds. *See id.* at 1 n.1 ("For the purposes of this Memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs (1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or subrecipients *of any type* except for assistance received directly by individuals." (emphasis added)). Paragraphs one and two of 2 C.F.R. 200.1 list the following forms of Federal financial assistance: grants, cooperative agreements, non-cash contributions or donations of property, direct appropriations, food commodities, other financial assistance, loans, loan guarantees, interest subsidies, and insurance. This encompasses all grant programs.

74.    These broad, but not well-defined, categories of financial assistance that may be affected by the OMB Directive will be paused indefinitely. There is no time period by which the pause must end. Instead, the OMB Directive states that the pause must continue until agencies "submit to OMB detailed information on any programs, projects or activities subject to this pause[,]" which must happen by February 10, 2025 *and* OMB "review[s] and provide[s] guidance to your agency with respect to the information submitted." *Id.* at 2. The OMB Directive provides no time frame whatsoever for OMB to conduct review and provide guidance to federal agencies.

75.    In many instances, State agencies have accepted Federal funds after the Federal government set forth terms and conditions, which the State had to accept. The Plaintiff States know of no grants that had terms consistent with the prohibitions set forth in the OMB Directive (e.g., prohibiting use of funds to promote "woke gender ideology"). The Plaintiff States are also not aware of grants that include notice to the States or have any terms that would authorize the Federal government to impose a sudden, across-the-board, indefinite freeze of already allocated funds. The OMB Directive has now sown chaos and confusion around whether States can continue to receive disbursements of funding already obligated to them and whether any further funding will ever be obligated. And this uncertainty surrounds all grant programs, without regard to the specific statutes that authorize particular grant programs or what regulations or terms govern their award and use. For example, the OMB Directive references categories of funding with no clear reference to Federal law, including categories like "woke gender ideology," terms not appearing in any statute governing the grant of Federal financial assistance and the "green new deal," an apparent reference to proposed legislation that was never enacted.

76.    Following the transmittal of the OMB Directive to Federal agencies, OMB circulated a document labeled "Instructions for Federal Financial Assistance Program Analysis in Support of M-25-13."[2] This document contains a chart listing federal funding lines, with columns that ask whether the funding line "promote[s] gender ideology," "provide[s] Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens," "relate[s] 'environmental justice' programs or 'equity-related' grants" among other inquiries. The chart appears to be a way of assessing whether the funding programs are related to any of the Executive Orders referenced in the OMB Directive.

---

[2] A copy of this document is appended to this Complaint as Exhibit B.

### iii. Funding Affected

77. A full account of all of the federal grant programs that benefit Plaintiff States is impossible here. Grants to the States in FY 2024 surpassed $1 trillion. Rebecca Thiess, Kate Watkins & Justin Theal, "Record Federal Grants to States Keep Federal Share of State Budgets High," Pew Charitable Trust (Sep. 10, 2024), https://www.pewtrusts.org/en/research-and-analysis/articles/2024/09/10/record-federal-grants-to-states-keep-federal-share-of-state-budgets-high. However, there are a number of key funding streams that are most essential and where the OMB Directive's impact is most alarming.

78. State health systems rely on federal grant programs in order to provide essential services to millions of residents—these programs are necessary to keep health systems functioning. State Departments of Health alone receive billions in grant funding. Department of Health and Human Services grants support hospital facilities, community health centers, lab testing, addiction treatment centers, services for people living with disabilities, and facilities for aging people. In New York, the Department of Health alone has nearly $40 billion in Federal funding obligated for FY 2025. Hundreds of millions of dollars from these funds support the facilities that provide community healthcare, including in rural and other under-resourced areas.

79. States likewise rely on federal funds to maintain vital programs for their residents, including Medicaid, the single largest federal funding stream to the States—over $600 billion in funding in Fiscal Year 2023 designated for reimbursing the States' cost of providing healthcare to their poorest residents. That year, for instance, Illinois received over $21 billion from the federal government in Medicaid reimbursements, or over 60% of the amount that it spent on critical health services for its eligible residents. Congress has specifically directed the Executive Branch to give

the States these funds, but as of this filing, Illinois and other States are prohibited from accessing the funds that Congress has allotted them.

80.    States rely on Federal FEMA funds for disaster relief and management.  In the last year alone, California has faced devasting fires. President Biden issued a Presidential declaration of a major disaster for the State of California on January 8, 2025, FEMA-4865-DR. The declaration authorized FEMA and its Administrator, Curtis Brown, to provide assistance to State and local governments as well as individuals pursuant to the Stafford Act and its implementing regulations. The financial impacts of the fires are staggering. Recent estimates place the total economic losses at upwards of $150 billion. The OMB Directive pushes pause on any FEMA grant money not yet disbursed, including key support for California as it responds to the fires.

81.    Similarly, in September 2024, Hurricane Helene inflicted catastrophic damage to public and private property across western North Carolina. The most recent estimates indicate the total cost of the damage is approximately $60 billion. The federal government has already pledged financial support to North Carolina to assist with Helene recovery. On September 26, 2024, President Biden issued an emergency declaration, FEMA-3617-EM, for the State of North Carolina. That declaration provided, in part, for Public Assistance-Category B, including direct federal assistance to the State. Two days later, the President approved an Expedited Major Disaster Declaration, FEMA-4827-DR, to ensure North Carolina receives federal disaster relief funds expeditiously.  And last week, President Trump issued an executive order directing the Secretary of Homeland Security, acting through the Administrator of FEMA, and the Administrator of the Small Business Administration to "immediately take all necessary and appropriate measures, including through direct assistance, loans, and other available means, to expedite roadway clearance or rebuilding, including the section of Interstate 40 in North Carolina that remains

22

closed, and the repair or rebuilding of roads and bridges on private property in areas of North Carolina affected by Hurricane Helene." Executive Order, Emergency Measures To Provide Water Resources in California and Improve Disaster Response in Certain Areas (Jan. 24, 2025). North Carolina needs this federal assistance to rebuild and revitalize the western region; it cannot cover the cost of Helene's damage alone. Yet the OMB Directive purports to freeze the federal funding that should be disbursed pursuant to these federal actions. The purported freeze will substantially disrupt recovery efforts in western North Carolina, delaying repairs to homes, businesses, roads, bridges, and other critical infrastructure.

82.    Federal infrastructure funding often provides emergency augmentation of state budgeted and planned funds when disaster strikes. To take one current example, Rhode Island experienced the unexpected failure of a bridge span carrying a major interstate highway, the Washington Bridge, that has a daily traffic volume of 90,000 vehicles and has been closed since December 2023. Rhode Island's Congressional Delegation wrote to Acting Director Vaeth on January 27, 2025, inquiring after the $220 million in competitive grant funding allocated for the bridge and the balance of the $600 million in competitive grant funding for other critical infrastructure, including bridges along I-95, currently awarded to Rhode Island. As of filing, there has been no response to clarify that this money would not be impacted.

83.    In FY 2024, the Federal Edward Byrne JAG grant program gave over $180 million in funding to the states to fund essential law enforcement and criminal justice programs, including programs that prevent and prosecute hate crimes, address the opioid crisis, and support mental health treatment services. Other grant programs administered by the U.S. Department of Justice fund initiatives to combat violence against women and internet crimes against children, support community policing, and provide services to victims of crimes. The High Intensity Drug

Trafficking Areas (HIDTA) program provides assistance to Federal, state, local, and Tribal law enforcement agencies operating in areas determined to be critical drug-trafficking regions of the United States. An email from Shannon Kelly, the Director of the National HIDTA program, on January 28, 2025, indicates that National HIDTA Assistance Center payments to state-based HIDTA programs have been paused at OMB's direction. Pausing these grants imperils state, local, and Tribal funding for critical public safety initiatives.

84.     State education systems also receive tremendous amounts of federal funding. In New York, the Department of Education has $2.1 billion obligated for FY 2025. Included in that funding are *formula* grants that local education agencies receive to improve teaching and learning in high-poverty schools in particular for children failing, or most at-risk of failing, to meet challenging State academic standards. Because this is a formula grant, the allocation is supposed to be automatic based on a statutory formula. These grants have served millions of children nationwide.

85.     State institutions of higher education also receive billions of dollars in grants, not including direct student aid, that fund essential research in every conceivable area of study.

86.     Plaintiff States also receive millions of dollars in grants through the Title IV-E Foster Care program to provide safe and stable out-of-home care for children in their care until plans can be made for permanency.

87.     For the most recent fiscal year—FY2024, running from July 1, 2023 to June 30, 2024—Washington received over $27 billion in federal funding. This comprised approximately 32% of Washington's total budget for FY2024.

88.     Approximately $13 billion of this funding comprised of Medicaid reimbursements, which is excluded from the definition of "federal financial assistance" under 2 CFR 200.1. The

memo purportedly does not apply to Medicaid reimbursements. However, Washington State is presently unable to draw funds for Medicaid reimbursements. Even just yesterday—before the OMB Directive was set to take effect—the Washington State Health Care Authority attempted to request approximately $160 million from the Department of Health and Human Services, which was denied.

89.     The remaining $14 billion-plus largely comprised the sort of "federal financial assistance" that are likely threatened by the OMB Directive.

90.     To give just a few examples, this includes such critically important programs as:

a.   Highway planning and construction funds, which amounted to over $952 million in FY2024 state expenditures. These funds include the Highway Infrastructure Program, which provides federal funds for road, bridge, ferry, transit capital, and Intelligent Transportation System capital projects for the elimination of hazards and the installation of protective devices at railway-highway crossing;

b.   Child Care and Development Block Grants, which amounted to over $393 million in FY2024 state expenditures. This is the primary federal grant program that allows states to provide childcare assistance to low-income working families with children under age 13;

c.   National School Lunch Program, which amounted to over $361 million in FY2024 state expenditures. This program provides nutritious meals to children. Public school districts, private schools, residential child care institutions, and Charter Schools may participate in school meal programs;

d.   Title I education grants, which amounted to over $310 million in FY2024 state expenditures. Title I funds instructional help to children whose academic performance is below average, based on a formula that targets funding to schools and districts with higher percentages of students in poverty;

e.   Special Education grants, which amounted to over $275 million in FY2024 state expenditures. This program serves to meet the excess costs of providing special education and related services to children with disabilities, including support and direct services, technical assistance and personnel preparation, assisting schools in providing positive behavioral interventions and supports, and improving the use of technology in the classroom;

f.   Child support enforcement, which amounted to over $134 million in FY2024 state expenditures;

g. Allergy and infectious disease research, which amounted to over $121 million in FY2024 state expenditures;

h. Low-income home energy assistance, which amounted to over $96 million in FY2024 state expenditures. This program helps keep families safe and healthy through initiatives that assist families with energy costs. LIHEAP provides federally funded assistance to reduce the costs associated with home energy bills, energy crises, weatherization, and minor energy-related home repairs;

i. Substance abuse treatment block grants, which amounted to over $65 million in FY2024 state expenditures. This grant helps plan, carry out, and evaluate activities for the prevention, treatment, and recovery of substance abuse for individuals not covered by Medicaid;

j. Veterans nursing care funding, which amounted to over $59 million in FY2024 state expenditures; and

k. Hundreds or thousands of other programs, covering everything from immunizations to clean water to adoption assistance to transit to childcare to global AIDS prevention to National Guard operations to crime victim assistance to immigration and refugee assistance to wildlife restoration, and on and on.

91. If these and similar federal funds are suddenly withheld, even temporarily, Washington simply does not have funds to cover all of these necessary programs that are currently funded through federal dollars. And it most certainly does not have the funds to backfill federal dollars while continuing to pay for the many state-funded programs on which its residents rely. Thus, pausing or terminating federal funds would necessarily entail cuts—likely drastic cuts—to key services provided by state agencies on which Washington residents depend.

92. This threat to federal funding comes at a precarious time for Washington. Due to factors like inflation, higher projected caseloads in several safety net programs, and revenue declines, Washington is facing a forecasted budget deficit of over $12 billion over the next four years.

93. Washington's Legislature is currently in session trying to address this budget shortfall and pass a budget for the FY2025-2027 biennium. Many Washington state agencies are facing budget cuts of between three and six percent to account for the lack of funding.

94.     OMB's direction to withhold additional billions of dollars in federal funding, even temporarily, would interfere with critical state programs, drastically worsen Washington's budget shortfall, and make it nearly impossible for state agencies and Washington's Legislature to intelligently prioritize budgeting needs.

95.     Because the OMB Directive provided effectively no notice to the States, it compounded these injuries. The States were unable to prepare for or mitigate the pause in federal funding, meaning that the OMB Directive will cause chaos and confusion. Given the less than 24 hours notice, the States were unable to set aside funding for the anticipated shortfall in response to the OMB Directive, work with their legislatures to appropriate funds, or take other similar measures to lessen the blow.

96.     Moreover, by purporting to terminate federal funds on 24 hours' notice, the OMB Directive effectively renders illusory (1) its direction that funding be halted only "to the extent permissible by law" and (2) its statement that "OMB may grant exceptions allowing federal agencies to issue new awards or take other actions on a case-by-case basis." The OMB Directive provides no time for federal agencies either to make supported requests for case-by-case exceptions to the Directive's directives or to assess adequately whether halting particular grants would or would not be permissible under law. Even with more time, it is unclear whether it would be possible to assess whether the law permits any funding to be halted in response the President's Executive Orders where the Executive Orders themselves may be contrary to law.

97.     State agencies administer numerous federal grants and direct grant programs of their own—some of which pass through federal funding. State agencies in Plaintiff States do not know when or if disbursements and obligations may resume, complicating the important work they do to ensure that state residents have access to healthcare services, education support, appropriate

law enforcement, reliable infrastructure, among many other missions. They are also now unable to evaluate whether they need to take action under their own sub-agreements or contracts to mitigate any downstream effects of the pause.

## CAUSES OF ACTION

### COUNT I

**(Substantive Violation of the Administrative Procedure Act – Contrary to Law, Ultra Vires)**

98.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

99.     Neither the President nor an agency can take any action that exceeds the scope of their constitutional and/or statutory authority.

100.     No authority—constitutional or otherwise—authorizes the President or the Director of OMB to order federal agencies not to enforce duly promulgated regulations, to refrain from fulfilling their statutory duties, or to violate federal law.

101.     Defendants also include "agenc[ies]" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), and the OMB Directive is agency action subject to the APA.

102.     Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§ 706(2)(B) – (C).

103.     Defendants may only exercise authority conferred by statute.

104.     Congress enacted the APA "as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391 (2024) (quoting *U.S. v. Morton Salt*, 338

U.S. 632, 644 (1950)). And in *Loper Bright*, the Supreme Court in 2024 clarified that historical principles of "respect" did not equate to deference—rather, "Section 706 makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Id.* at 392 (emphasis in original). Rather, it "remains the responsibility of the court to decide whether the law means what the agency says." *Id.* (quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 109) (2015) (Scalia, J., concurring in judgment)).

105.     Defendants have no authority to impose a government-wide pause on federal awards without regard to the individual authorizing statutes, regulations, and terms that govern each funding stream. This breathtaking freeze of all federal assistance is unauthorized, unprecedented, and not entitled to respect or deference by this Court.

106.     Defendants also cannot refuse to disburse funds appropriated by Congress contrary to congressional intent and directive.

107.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the Defendants lack legal authority to impose the conditions and has, in so doing, acted contrary to law and in violation of the APA.

108.     Plaintiffs are also entitled vacatur of the OMB Directive pursuant to 5 U.S.C. § 706, all appropriate preliminary relief under 5 U.S.C. § 705, and a preliminary and permanent injunction preventing Defendants from enforcing the OMB Directive.

### COUNT II
**(Substantive Violation of the Administrative Procedure Act – Arbitrary & Capricious – Against Agency Defendants)**

109.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

110.    Defendants include "agenc[ies]" under the APA, 5 U.S.C. § 551(1), and the OMB Directive is agency action subject to review under the APA.

111.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

112.    An agency action is arbitrary or capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). This requires that an agency provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). An action is also arbitrary and capricious if the agency "failed to consider . . . important aspects of the problem" before it. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

113.    Because the OMB Directive provides no reasoned basis for pausing the disbursement and obligation of trillions of federal dollars and fails to consider the consequences of that action, it is arbitrary and capricious. Even if the OMB Directive is targeted at implementation of certain Executive Orders, that justification cannot support the breadth of its effect. Further, the OMB Directive contains no reasoning as to the impact and chaos it has caused, including as to the Plaintiff States and their residents, who rely on federal funding for key programs and services.

114.    The OMB Directive further provides no reasoned basis for refusing to disburse funds appropriated by Congress contrary to congressional intent and directive, and thus is arbitrary and capricious.

115.    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the OMB Directive violates the APA because it is arbitrary and capricious.

116.    Plaintiffs are also entitled to vacatur of the OMB Directive pursuant to 5 U.S.C. § 706, all appropriate preliminary relief under 5 U.S.C. § 705, and a preliminary and permanent injunction preventing Defendants from enforcing the OMB Directive.

## COUNT III

### (Violation of the Separation of Powers—Usurping the Legislative Function)

117.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

118.    Article I, Section 1 of the United States Constitution enumerates that: "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. Art. I, Sec. 1. "The Framers viewed the legislative power as a special threat to individual liberty, so they divided that power to ensure that 'differences of opinion' and the 'jarrings of parties' would 'promote deliberation and circumspection' and 'check excesses in the majority.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 223 (2020) (quoting The Federalist No. 70, at 475 (A. Hamilton) and citing *id.*, No. 51, at 350).

119.    "As Chief Justice Marshall put it, this means that 'important subjects . . . must be entirely regulated by the legislature itself,' even if Congress may leave the Executive 'to act under such general provisions to fill up the details.'" *West Virginia v. EPA*, 597 U.S. 697, 737 (2022) (Gorsuch, J., concurring) (quoting *Wayman v. Southard*, 10 Wheat. 1, 42-43, 6 L.Ed. 253 (1825)).

120.    The separation of powers doctrine thus represents perhaps the central tenet of our constitution, *see, e.g.*, *Trump v. United States*, 603 U.S. 593, 637-38 (2024); *West Virginia v. EPA*,

31

A100

597 U.S. at 723-24, *Seila Law LLC*, 591 U.S. at 227, and consistent with these principles, the executive acts at the lowest ebb of his constitutional authority and power when he acts contrary to the express or implied will of Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

121.    The OMB Directive violates the separation of powers because the executive branch has overridden the careful judgements of Congress by refusing to disburse funding for innumerable federal grant programs—some of which are even formula grants dictated by precise statutory formulas. Pausing funding under the affected programs and permanent refusal to disburse funds appropriated by Congress contrary to congressional intent and directive both violate the separation of powers.

122.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the OMB Directive violates the constitutional principles of separation of powers doctrine, and impermissibly arrogates to the executive power that is reserved to Congress.

123.    Plaintiffs are further entitled to a preliminary and permanent injunction preventing the Agency Defendants from enforcing the OMB Directive.

## COUNT IV

### (Violation of the Spending Clause)

124.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

125.    The Spending Clause of the U.S. Constitution provides that "Congress"—not the Executive—"shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ." U.S. Const. Art. I, Sec. 8, clause 1.

126.     If funding conditions reach a certain level of coercion, they encroach on state sovereignty as guaranteed by the Tenth Amendment by "commandeering . . . reserved State power." *State of New York v. U.S. Dep't of Justice*, 951 F.3d 84, 114 (2d Cir. 2020). States must also have fair notice of conditions. "Congress' power to legislate under the spending power is broad," but conditions on funding must be "unambiguous[]" and they cannot "surprise[] participating States with post acceptance or 'retroactive' conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981). Once a State has accepted funds pursuant to a federal spending program, the Federal government cannot alter the conditions attached to those funds so significantly as to "accomplish[ ] a shift in kind, not merely degree." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 583-84 (2012). Conditions must be "reasonably related to the purpose of the expenditure." *New York v. United States*, 505 U.S. 144, 172 (1992) (citing *Mass. v. United States*, 435 U.S. 444 (1978)).

127.     Because the OMB Directive imposes new conditions on federal funding, altering the terms upon which grants were obligated and disbursed contrary to Congressional authority, the OMB Directive imposes funding conditions that are coercive, retroactive, ambiguous, and unrelated to the purpose of myriad grants affected.

128.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the OMB Directive violates the Spending Clause.

129.     Plaintiffs are also entitled to a preliminary and permanent injunction barring the Agency Defendants from enforcing the OMB Directive.

## COUNT V

## (Violation of the Presentment, Appropriations, and Take Care Clauses)

130.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

131.     The Presentment Clause provides that "[e]very Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States."  U.S. Const. Art. I, Sec. 7, Clause 2; *INS v. Chadha*, 462 U.S. 919, 946 (1983). "Our Constitution gives Congress control over the public fisc." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 420 (2024); *see also id.* at 431 ("By the time of the Constitutional Convention, the principle of legislative supremacy over fiscal matters engendered little debate and created no disagreement. It was uncontroversial that the powers to raise and disburse public money would reside in the Legislative Branch."). The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. Art. I, Sec. 7.  The Appropriations Clause is a "straightforward and explicit command" that "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."  *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). The Take Care Clause provides that the executive must "take Care that the Laws be faithfully executed. . . ."  U.S. Const. Art. II, Sec. 3, Clause 3.

132.     No provision of the United States Constitution authorizes the executive to enact, amend, or repeal statutes, including appropriations approved by Congress and signed into law by the President. *Clinton v. City of New York*, 524 U.S. 417, 438 (1998).

133.     The executive cannot unilaterally amend or cancel appropriations that Congress has duly enacted.  *See Train v. City of New York*, 420 U.S. 35, 38, 44 (1975); *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013); 2 U.S.C. § 683 (requiring the President to transmit proposed

rescissions of budget authority to Congress for approval and requiring "any amount of budget authority proposed to be rescinded" to be made available for obligation unless and until Congress approves the rescission within 45 days).

134.    The OMB Directive constitutes a refusal to spend money appropriated by Congress, in violation of the executive's constitutional authority to administer the law.

135.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the OMB Directive violates the Presentment, Appropriations, and Take care Clauses of the U.S. Constitution.

136.    Plaintiffs are further entitled to a preliminary and permanent injunction preventing the Agency Defendants from enforcing the OMB Directive.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

    i.    Issue a judicial declaration that the OMB Directive is unconstitutional and/or unlawful because it violates the APA and the Constitution;

    ii.    Vacate the OMB Directive and issue all necessary and appropriate process to postpone the effective date of the OMB Directive or to preserve status or rights pending conclusion of the review proceedings under 5 U.S.C. § 705;

    iii.    Temporarily restrain and enjoin the Agency Defendants from implementing or enforcing the OMB Directive, pending further orders from this Court;

    iv.    Pursuant to Federal Rule of Civil Procedure 65(b)(2), set an expedited hearing within fourteen (14) days to determine whether the Temporary Restraining Order should be extended;

    v.    Pursuant to 5 U.S.C. § 705, postpone the effective date of the OMB Directive, so as to preserve the status and rights of the Plaintiff States;

vi.    Pursuant to 5 U.S.C. § 706, vacate the OMB Directive;

vii.    Preliminarily and permanently enjoin the Agency Defendants from enforcing the OMB Directive;

viii.    Issue a writ of mandamus compelling Defendants to immediately cease implementing the OMB Directive without further delay;

ix.    Award the Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

x.    Grant other such relief as this Court may deem proper.


Respectfully submitted,

**LETITIA JAMES**
Attorney General of the State of New York

By: /s Rabia Muqaddam
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Zoe Levine*
28 Liberty Street
New York, NY 10005
(212) 416-8883

**ROB BONTA**
Attorney General of the State of California

MICHAEL L. NEWMAN*
THOMAS PATTERSON*
Senior Assistant Attorneys General
CHRISTINE CHUANG*
LARA HADDAD*
Supervising Deputy Attorneys General

/s/ Laura L. Faer

36

LAURA L. Faer
Supervising Deputy Attorney General
NICHOLAS GREEN*
CARLY MUNSON*
KENNETH SUGARMAN*
CHRISTOPHER KISSEL*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
laura.faer@doj.ca.gov


**KWAME RAOUL**
ATTORNEY GENERAL STATE OF ILLINOIS


By: /s/ Alex Hemmer
Alex Hemmer*
Deputy Solicitor General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
alex.hemmer@ilag.gov

*Counsel for the State of Illinois*


**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (RI Bar No. 8486)
*Civil Division Chief*
*Special Assistant Attorney General*

/s/ Sarah W. Rice
Sarah W. Rice (R.I. Bar No. 10465)
*Deputy Chief, Public Protection Bureau*
*Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
srice@riag.ri.gov

37

*Counsel for the State of Rhode Island*


**Matthew J. Platkin**
Attorney General of New Jersey

*/s/ Angela Cai*
Angela Cai*
*Executive Assistant Attorney General*

Jeremy M. Feigenbaum*
*Solicitor General*

Shankar Duraiswamy*
*Deputy Solicitor General*

Office of the Attorney General
25 Market Street
Trenton, NJ 08625
609) 376-3377
 Angela.Cai@njoag.gov

*Counsel for the State of New Jersey*


**Andrea Joy Campbell**
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks *
Deputy Chief, Government Bureau
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

**KRIS MAYES**
*Attorney General of Arizona*

*s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004

38

(602) 542-3333
Joshua.Bendor@azag.gov
ACL@azag.gov

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ Shannon Stevenson*
Shannon Stevenson, CO Reg. No. 35542
Solicitor General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6749
Shannon.Stevenson@coag.gov
Attorney for State of Colorado

STATE OF CONNECTICUT
**WILLIAM TONG**
ATTORNEY GENERAL

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

39

(302) 683-8899
ian.liston@delaware.gov


**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

/s/ Andrew C. Mendrala____
ANDREW C. MENDRALA*
Assistant Attorney General

Public Advocacy Division
Office of the Attorney General for the D.C.
Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov
Counsel for the District of Columbia

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

*/s/Kalikoʻonālani D. Fernandes*
David D. Day*
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov


**AARON M. FREY**
Attorney General for
the State of Maine

/s/ Jason Anton
        JASON ANTON*
        Assistant Attorney General
        Office of the Attorney General
         6 State House Station
        Augusta, ME  04333-0006
Tel.:  207-626-8800

40

Fax: 207-287-3145
jason.anton@maine.gov

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ Adam D. Kirschner
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
akirschner@oag.state.md.us
410-576-6424

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: /s/ Linus Banghart-Linn
Linus Banghart-Linn*
Chief Legal Counsel
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov

*Attorneys for the State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

By /s/ **Liz Kramer***
Solicitor General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

Attorneys for State of Minnesota

41

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA
*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov
Counsel for the State of Nevada


**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD*
Chief Deputy Attorney General

By /s/ Daniel P. Mosteller*
Associate Deputy Attorney General
North Carolina Department of Justice
PO Box 629
        Raleigh, NC 27602
        919-716-6026
dmosteller@ncdoj.gov

*Attorneys for State of North Carolina*


STATE OF NEW MEXICO
**RAÚL TORREZ**
ATTORNEY GENERAL

/s/ Anjana Samant_____
        Anjana Samant*
        Deputy Counsel for Impact Litigation
        New Mexico Department of Justice
        P.O. Drawer 1508
        Santa Fe, NM 87504-1508
        (505) 490-4060
        asamant@nmdoj.gov

42

A111

**DAN RAYFIELD**
Attorney General of Oregon

_____

CHRISTINA L. BEATTY-WALTERS*
    Senior Assistant Attorney General
    Trial Attorney
    Tel (971) 673-1880
    Fax (971) 673-5000
    Tina.BeattyWalters@doj.oregon.gov
    Of Attorneys for Defendants


**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Jonathan T. Rose*
    Jonathan T. Rose*
    Solicitor General
    109 State Street
    Montpelier, VT 05609
    (802)828-3171
Jonathan.rose@vermont.gov


**NICHOLAS W. BROWN**
Attorney General of Washington

*s/ Andrew Hughes*
ANDREW HUGHES*
LEAH BROWN*
Assistant Attorneys General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov.

*Attorneys for Plaintiff State of Washington*

43

**JOSHUA L. KAUL**
Attorney General of Wisconsin

<u>/s/ Aaron J. Bibb</u>

Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
bibbaj@doj.state.wi.us

Counsel for the State of Wisconsin

*pro hac vice forthcoming*

44

A113

# **Exhibit A**



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 27, 2025

M-25-13

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:      Matthew J. Vaeth, Acting Director, Office of Management and Budget

SUBJECT:   Temporary Pause of Agency Grant, Loan, and Other Financial Assistance
           Programs

     The American people elected Donald J. Trump to be President of the United States and gave him a mandate to increase the impact of every federal taxpayer dollar. In Fiscal Year 2024, of the nearly $10 trillion that the Federal Government spent, more than $3 trillion was Federal financial assistance, such as grants and loans. Career and political appointees in the Executive Branch have a duty to align Federal spending and action with the will of the American people as expressed through Presidential priorities. Financial assistance should be dedicated to advancing Administration priorities, focusing taxpayer dollars to advance a stronger and safer America, eliminating the financial burden of inflation for citizens, unleashing American energy and manufacturing, ending "wokeness" and the weaponization of government, promoting efficiency in government, and Making America Healthy Again. The use of Federal resources to advance Marxist equity, transgenderism, and green new deal social engineering policies is a waste of taxpayer dollars that does not improve the day-to-day lives of those we serve.

     This memorandum requires Federal agencies to identify and review all Federal financial assistance[1] programs and supporting activities consistent with the President's policies and requirements.[2]  For example, during the initial days of his Administration, President Donald J. Trump issued a series of executive orders to protect the American people and safeguard valuable taxpayer resources, including *Protecting the American People Against Invasion* (Jan. 20, 2025), *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20,

---

[1] 2 CFR 200.1 defines Federal financial assistance to mean "[a]ssistance that recipients or subrecipients receive or administer" in various forms, but this term does not include assistance provided directly to individuals. For the purposes of this memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs (1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or subrecipients of any type except for assistance received directly by individuals.
[2] Nothing in this memo should be construed to impact Medicare or Social Security benefits.

2025), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), and *Enforcing the Hyde Amendment* (Jan. 24, 2025). These executive orders ensure that Federal funds are used to support hardworking American families.

To implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders. In the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal.

This temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities. The temporary pause will become effective on January 28, 2025, at 5:00 PM. Even before completing their comprehensive analysis, Federal agencies must immediately identify any legally mandated actions or deadlines for assistance programs arising while the pause remains in effect. Federal agencies must report this information to OMB along with an analysis of the requirement. OMB also directs Federal agencies to pause all activities associated with open NOFOs, such as conducting merit review panels.

No later than February 10, 2025, agencies shall submit to OMB detailed information on any programs, projects or activities subject to this pause. Each agency must pause: (i) issuance of new awards; (ii) disbursement of Federal funds under all open awards; and (iii) other relevant agency actions that may be implicated by the executive orders, to the extent permissible by law, until OMB has reviewed and provided guidance to your agency with respect to the information submitted.

OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis. To the extent required by law, Federal agencies may continue taking certain administrative actions, such as closeout of Federal awards (2 CFR 200.344), or recording obligations expressly required by law.

Additionally, agencies must, for each Federal financial assistance program: (i) assign responsibility and oversight to a senior political appointee to ensure Federal financial assistance conforms to Administration priorities; (ii) review currently pending Federal financial assistance announcements to ensure Administration priorities are addressed, and, subject to program statutory authority, modify unpublished Federal financial assistance announcements, withdraw any announcements already published, and, to the extent permissible by law, cancel awards already awarded that are in conflict with Administration priorities, and; (iii) ensure adequate oversight of Federal financial assistance programs and initiate investigations when warranted to identify underperforming recipients, and address identified issues up to and including cancellation of awards.

# **Exhibit B**

**Instructions for Federal Financial Assistance Program Analysis in Support of M-25-13**

All Federal agencies that provide Federal financial assistance are required by **February 7, 2025** to complete the attached spreadsheet and submit it to OMB. The information requested must be provided for any program that has funding or activities planned through March 15. Agencies are encouraged to complete this task for all their programs as soon as possible. OMB will be following up with additional deadlines for subsequent periods.

Using the spreadsheet provided, locate or filter the spreadsheet to isolate the agency's list of Federal programs (by Assistance Listing number) and complete the requested information for each program (represented in columns C-G). Agencies should add additional lines to the spreadsheet to include any programs not listed in the spreadsheet.

| | |
|---|---|
| **Column B:** | Sub-Agency or component. |
| **Column C-G:** | These columns contain pre-populated information on each Assistance Listing program. |
| **Column H:** | Identify the email of the senior political appointee responsible for overseeing this program. |
| **Column I:** | Indicate if the program has any pending funding announcements. |
| **Column J:** | Indicate if this program has any anticipated obligations or disbursement of funds through 3/15/2025. |
| **Column K:** | Indicate if this program has any statutory requirements mandating the obligation or disbursement of funds through 3/15/2025. |
| **Column L:** | Provide the estimated date of the next obligation or disbursement of funds. |
| **Column M-T:** | Provide responses to each of the questions (Yes/No). |
| **Column U:** | Provide any additional relevant information on program or project activities. |

Submit the spreadsheet no later than February 7, 2025 to: FFAPlans@omb.eop.gov.

OMB will review each agency submission and will communicate additional information to each Federal agency through the agency Senior Financial Assistance Official and the Points of Contact provided.

| FEDERAL AGENCY | SUB-AGENCY | ASSISTANCE LIS | TITLE | OBJECTIVE | SAM Link | USA Spending Link | Please identify the email of the senior political appointee responsible for overseeing this program | Does the program have any pending funding announcements? | Does the program have any anticipated obligations or disbursement of funds before 3/15/2025? | Does this program have any statutory requirements mandating the obligation or disbursement of funds through 3/15/2025? | Provide the estimated date of the next obligation or disbursement of funds | Does this program provide Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens? | Is this program a foreign assistance program, or provide funding or support activities overseas? | Does this program provide funding that is implicated by the revocation and recission of the U.S. International Climate Finance Plan? | Does this program include activities that impose an undue burden on the identification, development, or use of domestic energy resources (including through funding under the Inflation Reducing Act of 2022; and the Infrastructure Investment and Jobs Act)? | Does this program provide funding that is implicated by the directive to end discriminatory programs, including illegal DEI and "diversity, equity, inclusion, and accessibility" (DEIA) mandates, policies, programs, preferences, and activities, under whatever name they appear, or other directives in the same EO, including those related to "environmental justice" programs or "equity-related" grants? | Does this program promote gender ideology? | Does this program promote or support in any way abortion or other related activities identified in the Hyde Amendment? | If not covered in the preceding columns, does this program support any activities that must not be supported based on executive orders issued on or after January 20, 2025 (including executive orders released following the dissemination of this spreadsheet)? | Provide additional information on program or project activities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Agency for International Development | | 98.001 | USAID Foreign Assistance for Programs Overseas | The Foreign Assistance Program works to support long-term and | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.002 | Cooperative Development Program (CDP) | Deliver the quality and magnitude of support necessary for CDOs to | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.003 | Ocean Freight Reimbursement Program (OFR) | Reimburses registered U.S. private voluntary organizations (PVOs) to | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.004 | Non-Governmental Organization Strengthening (NGO) | The NGO Strengthening program aims to help local | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.005 | Institutional Capacity Building (ICB) | To strengthen the capacity of new and experienced Food for | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.006 | Foreign Assistance to American Schools and Hospitals Abroad | The purpose of the American Schools and Hospitals Abroad | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.007 | Food for Peace Development Assistance Program | To improve access, availability and utilization of food in | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.008 | Food for Peace Emergency Program (EP) | To improve access, availability and utilization of food in | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.009 | John Ogonowski Farmer-to-Farmer Program | Improve global food production and marketing by | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.010 | Denton Program | To put the empty space on U.S. Military transport to good use | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.011 | Global Development Alliance | The Global Development Alliance (GDA) business model | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Agency for International Development | | 98.012 | USAID Development Partnerships for University Cooperation | The purpose of the program is to support and advance the | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Appalachian Regional Commission | | 23.001 | Appalachian Regional Development (See individual Appalachian | To help the regional economy become more competitive by putting in | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Appalachian Regional Commission | | 23.002 | Appalachian Area Development | To help the regional economy become more competitive by putting in | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Appalachian Regional Commission | | 23.003 | Appalachian Development Highway System | To provide a highway system which, in conjunction with other | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Appalachian Regional Commission | | 23.009 | Appalachian Local Development District Assistance | To provide planning and development resources in multicounty areas; to | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Appalachian Regional Commission | | 23.011 | Appalachian Research, Technical Assistance, and Demonstration | To expand the knowledge of the region to the fullest extent | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Barry Goldwater Scholarship and Excellence in Education Fund | | 85.200 | Barry M. Goldwater Scholarship Program | To honor former Senator Barry Goldwater through the | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Consumer Product Safety Commission | | 87.002 | Virginia Graeme Baker Pool and Spa Safety | To reduce the number of drowning and drain entrapment-related | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Consumer Product Safety Commission | | 87.003 | Nicholas and Zachary Burt Memorial Carbon Monoxide Poisoning | Promote the installation of carbon monoxide alarms in residential | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.002 | AmeriCorps Seniors Retired and Senior Volunteer Program | RSVP provides grants that support volunteers 55 years and older | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.003 | AmeriCorps State Commissions Support Grant | To develop a State plan, to assist States in the application process, | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.006 | AmeriCorps State and National 94.006 | AmeriCorps State and National grants are awarded to eligible | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.008 | AmeriCorps Commission Investment Fund 94.008 | AmeriCorps is seeking to expand the capacity (knowledge, skills, and | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.011 | AmeriCorps Seniors Foster Grandparent Program (FGP) 94.011 | The Foster Grandparent Program (FGP) provides grants to | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.012 | AmeriCorps September 11th National Day of Service and | The purpose of the September 11th National Day of Service | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.013 | AmeriCorps Volunteers In Service to America 94.013 | AmeriCorps Volunteers in Service to America (VISTA) is the national | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.014 | AmeriCorps Martin Luther King Jr. Day of Service Grants 94.014 | The purpose of the Martin Luther King Jr. Day of Service grant | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.016 | AmeriCorps Seniors Senior Companion Program (SCP) 94.016 | The Senior Companion Program (SCP) provides grants to | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.017 | AmeriCorps Seniors Senior Demonstration Program (FGP) 94.017 | To provide grants to qualified agencies for the purpose of | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.020 | AmeriCorps CNCS Disaster Response Cooperative Agreement | The AmeriCorps Disaster Response Cooperative Agreement | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.021 | AmeriCorps Volunteer Generation Fund 94.021 | The Volunteer Generation Fund focuses on investments | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Corporation for National and Community Service | | 94.026 | AmeriCorps National Service and Civic Engagement Research | To further achieve its mission, AmeriCorps has a strong belief in | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Delta Regional Authority | | 90.200 | Delta Regional Authority | The Delta Regional Authority (DRA) is a federal-state | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Denali Commission | | 90.003 | Denali Commission Program | The Denali Commission is a Federal agency designed to provide | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Denali Commission | | 90.100 | Denali Commission Program | The Denali Commission is a Federal agency designed to provide | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Denali Commission | | 90.199 | Shared Services | Delivery of services of the federal government in the most cost- | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.001 | Agricultural Research Basic and Applied Research | There are over 600 research and development projects | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.025 | Plant and Animal Disease, Pest Control, and Animal Care | To protect U.S. agriculture from economically injurious | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.028 | Wildlife Services | To reduce damage caused by mammals and birds and those | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.030 | Indemnity Program | Animal and Plant Health Inspection Service administers regulations | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.047 | Tribal Food Sovereignty | The USDA Indigenous Food Sovereignty Initiative promotes | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.048 | Tribal Agriculture Technical Assistance | The Intertribal Technical Assistance Network (ITAN) was established | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.049 | Tribal Youth & Workforce Development | To increase the engagement of tribal members within the | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.051 | Commodity Loans and Loan Deficiency Payments | To improve and stabilize farm income, to assist in bringing about a | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.053 | Dairy Indemnity Payment Program | To protect dairy operations and manufacturers of dairy | https:// sam.g | https:// www. | | | | | | | | | | | | | | |
| Department of Agriculture | | 10.054 | Emergency Conservation Program | To enable farmers to perform emergency conservation measures | https:// sam.g | https:// www. | | | | | | | | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.056 | Farm Storage Facility Loans | The Farm Storage Facility Loan (FSFL) Program provides low- | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.069 | Conservation Reserve Program | CRP is a voluntary program which contracts directly with | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.072 | Wetlands Reserve Program | To assist landowners in restoring and protecting wetlands on eligible | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.087 | Biomass Crop Assistance Program | The purpose of BCAP is to encourage the production of biofuels. | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.089 | Livestock Forage Disaster Program | The objective of LFP is to provide financial assistance from the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.093 | Voluntary Public Access and Habitat Incentive Program | The primary objective of VPA-HIP is to encourage owners and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.096 | Marketing Assistance for Specialty Crops | MASC will provide eligible specialty crop producers with | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.097 | Water-Saving Commodities Grant | Water-Savings Conservation Grants (WSCG) provide | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.098 | Reimbursement Transportation Cost Payment Program for | The intended goal of the program is to provide direct | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.099 | Conservation Loans | To provide access to credit for farmers who need and want to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.102 | Emergency Forest Restoration Program | The object of EFRP is to make financial assistance available to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.108 | Livestock Indemnity Program-2014 Farm Bill | LIP provides benefits to eligible livestock owners or livestock contract | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.109 | Livestock Forage Disaster Program | LFP provides compensation to eligible livestock producers that | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.110 | Emergency Assistance for Livestock, Honeybees and Farm- | ELAP provides financial assistance to eligible producers of livestock, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.111 | Tree Assistance Program | TAP provides financial assistance to eligible orchardists and nursery | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.112 | Price Loss Coverage | The Price Loss Coverage program (PLC) is carried over | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.113 | Agriculture Risk Coverage Program | The ARC program carried over from the 2014 Farm Bill. The | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.116 | The Margin Protection Program | MPP-Dairy offers a protection plan which provides payments to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.120 | 2017 Wildfires and Hurricanes Indemnity Program | The 2017 WHIP is directly reimbursing producers for crop | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.123 | Market Facilitation Program | MFP provides assistance to producers with commodities that | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.127 | Dairy Margin Coverage | DMC offers a dairy margin protection plan which provides | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.128 | Heirsâ€™ Property Relending Program | As specified in 7 U.S.C. 1936c(c), HPRP provides loan funds to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.129 | Wildfires and Hurricanes Indemnity Program Plus | The WHIP Plus is directly reimbursing producers for crop, tree, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.130 | Coronavirus Food Assistance Program 1 | CFAP provides direct financial assistance to producers of eligible | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.131 | Seafood Trade Relief Program (STRP) | STRP provides payments to eligible commercial fishermen | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.132 | Coronavirus Food Assistance Program 2 | CFAP 2 provides direct financial assistance to producers of eligible | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.133 | Quality Loss Adjustment Program | The Quality Loss Adjustment (QLA) Program provides | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.134 | Oriental Fruit Fly Program | The purpose of the Oriental Fruit Fly Program is to provide | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.135 | Supplemental Dairy Margin Coverage | Supplemental Dairy Margin Coverage (Supplemental DMC) is | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.138 | Pandemic Livestock Indemnity Program | The Pandemic Livestock Indemnity Program (PLIP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.139 | Organic and Transitional Education and Certification | OTECP provides direct financial assistance to certified organic and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.142 | Food Safety Certification for Specialty Crops | FSCSC provides direct financial assistance to eligible specialty crop | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.143 | Pandemic Assistance Revenue Program | PARP provides direct financial support for eligible producers of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.144 | Spot Market Hog Pandemic Program | SMHPP provides assistance to producers that sold hogs through | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.146 | Farm Service Agency Taxpayer Outreach Education and | The American Rescue Plan Act 2021, H.R. 1319, signed into law | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.147 | Outreach Education and Technical Assistance | EOTA provides financial assistance to eligible recipients to perform | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.148 | Emergency Livestock Relief Program | The Emergency Livestock Relief Program (ELRP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.153 | Market News | To provide timely and accurate information on prices, demand, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.155 | Marketing Agreements and Orders | Marketing Agreements and Orders are designed to stabilize | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.156 | Federal-State Marketing Improvement Program | To explore and identify new market opportunities for U.S. | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.162 | Inspection Grading and Standardization | To develop and apply standards of quality and condition for agricultural | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.163 | Market Protection and Promotion | The Federal Seed Program prevents mislabeled seed from | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.164 | Wholesale Farmers and Alternative Market Development | Wholesale Farmers and Alternative Market Development works to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.165 | Perishable Agricultural Commodities Act | To reduce unfair and fraudulent practices in the marketing of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.167 | Transportation Services | The Transportation Services program develops and promotes | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.170 | Specialty Crop Block Grant Program - Farm Bill | The U.S. Department of Agricultureâ€™s (USDA) Agricultural | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.171 | Organic Certification Cost Share Programs | The objective of Organic Certification Cost Share Programs | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.173 | Sheep Production and Marketing Grant Program | To develop projects that strengthen and enhance the production | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.174 | Acer Access Development Program | To support the efforts of such States, tribal governments, and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.175 | Farmers Market and Local Food Promotion Program | The Farmers Market and Local Food Promotion Program | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.176 | Dairy Business Innovation Initiatives | The Dairy Business Innovation (DBI) Initiatives connects the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.177 | Regional Food System Partnerships | RFSP is a component of the Local Agricultural Marketing Program | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.179 | Micro-Grants for Food Security Program | Eligible agricultural agencies or departments | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.180 | Meat and Poultry Inspection Readiness Grants â€ | To assist eligible meat and poultry slaughter and processing facilities | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.181 | Pandemic Relief Activities: Farm and Food Worker Relief | The purpose of this program is to defray worker expenses | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.182 | Pandemic Relief Activities: Local Food Purchase Agreements | 1. Provide an opportunity for State, Local and Tribal | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.183 | Pandemic Market Volatility Assistance Program (PMVAP) | USDA-Agricultural Marketing Service will make pandemic | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.184 | Pandemic Relief Activities: Meat and Poultry Processing | This program establishes technical assistance to support | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.185 | Local Food for Schools Cooperative Agreement Program | 1. Provide an opportunity for States to strengthen their local | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.186 | Regional Food Business Centers | This program supports regional food supply chains by creating | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.187 | The Emergency Food Assistance Program (TEFAP) Commodity | To support the additional food purchases from the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.188 | Organic Market Development Grant (OMDG) Program | The Organic Market Development Grant (OMDG) program will | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.189 | Local Meat Capacity Grants | The purpose of this program is to build resilience in the meat | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.190 | Resilient Food System Infrastructure Program | This program will provide funds to states and territories to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.191 | Pandemic Assistance for Cotton Merchandisers (PACM) | The Pandemic Assistance for Cotton Merchandisers (PACM) | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.193 | Commodity Credit Corporation (CCC) Funding to Alleviate | Indian Tribal Organizations (ITOs) and State agencies | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.194 | Commodity Credit Corporation (CCC) Funding to Alleviate | Commodity Credit Corporation (CCC) Funding to Alleviate | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.195 | Organic Dairy Product Promotion | â€¢ To increase domestic consumption of organic dairy | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.200 | Grants for Agricultural Research, Special Research Grants | To carry out research, to facilitate or expand promising | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.202 | Cooperative Forestry Research | The goal of McIntire-Stennis Cooperative Forestry Research | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.203 | Payments to Agricultural Experiment Stations Under the | To assist State Agricultural Experiment Stations, the District of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.205 | Payments to 1890 Land-Grant Colleges and Tuskegee | To support continuing agricultural research at colleges eligible to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.207 | Animal Health and Disease Research | The purpose of this funding is to increase animal health and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.210 | Higher Education National Needs Graduate Fellowship | The purpose of the NNF Grants Program is to train students for | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.212 | Small Business Innovation Research (SBIR) Program / Small | The National Institute of Food and Agriculture (NIFA) administers the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.215 | Sustainable Agriculture Research and Education | The purpose of the SARE program, under assistance listing | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.216 | 1890 Institution Capacity Building Grants | The Capacity Building Grants (CBG) Program is designed to build the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.217 | Higher Education - Institution Challenge Grants Program | The purpose of the Higher Education Challenge Grants | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.219 | Biotechnology Risk Assessment Research | The purpose of the BRAG program Assistance Listing | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.220 | Higher Education - Multicultural Scholars Grant Program | To increase the ethnic and cultural diversity of the food and agricultural | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.221 | Tribal Colleges Education Equity Grants | The Tribal Colleges Education Equity Grants (TCEG) program | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.222 | Tribal Colleges Endowment Program | To enhance educational opportunities at the thirty-four (34) Land | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.223 | Hispanic Serving Institutions Education Grants | The objective of this program is to promote and strengthen the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.225 | Community Food Projects | The primary goals of the Community Food Projects Competitive | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.226 | Secondary Education, Two-Year Postsecondary | The Secondary Education, Two-Year Postsecondary | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.227 | 1994 Institutions Research Grants | The Tribal Colleges Research Grants Program (TCRGP) (aka | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.228 | Alaska Native Serving and Native Hawaiian Serving Institutions | The purpose of this program is to promote and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.229 | Extension Collaborative on Immunization Teaching & | Funds are provided for support the Extension Collaborative on | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.230 | Farm of the Future | Farm of the Future is a competitive grant program that | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.231 | Agriculture Business Innovation Center at HBCU | National Institute of Food and Agriculture issues a competitive | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.232 | Blue Ribbon | The Blue-Ribbon Panel on Land-grant Cooperation and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.233 | Open Data Standards | This program will build the framework needed to create a neutral and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.234 | American Rescue Plan Technical Assistance Investment Program | The goal of this program is to fund organizations, to be | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.236 | Bioproduct Pilot Program | The Bioproduct Pilot Program will advance development of cost- | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.237 | From Learning to Leading: Cultivating the Next Generation of | The Next Gen Program represents one part in a series of efforts led by | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.238 | Institute of Rural Partnership (GP 780) | Section 780 of the FY 2022 Consolidated Appropriations Act (P.L. | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.239 | Human Health and Soil Health Study | The Agriculture Subcommittee on Appropriations provides | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.241 | Institute of Rural Partnerships (GP 778) | Section 778 of the FY 2022 Consolidated Appropriations Act (P.L. | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.243 | American Rescue Plan Centers of Excellence for Meat and Poultry | The MPPRI Program is part of the broader USDA investment to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.244 | Special Supplemental Nutrition Program for Women, Infants, and | The Special Supplemental Nutrition Program for Women, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.245 | Laying Hen and Turkey Research Program | The Laying Hen and Turkey Research program under | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.246 | Research Facilities Act Program | The Research Facilities Act Program seeks to strengthen the quality | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.247 | Emergency Citrus Disease Research and Extension Program | Section 12605 of the 2018 Farm Bill (Pub. L. 115-334) also | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.250 | Agricultural and Rural Economic Research, Cooperative | To provide economic and other social science information and | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.253 | Consumer Data and Nutrition Research | To provide economic and other social science information and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.255 | Research Innovation and Development Grants in Economic | To provide economic and other social science information and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.290 | Agricultural Market and Economic Research | To conduct cooperative economic research and analyses in support of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.291 | Agricultural and Food Policy Research Centers | To conduct research and education programs that are | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.292 | Food Loss and Waste Reduction | To conduct research and related activities that support | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.303 | Integrated Programs | GENERAL: NIFA Integrated Programs provide support for | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.304 | Food and Agriculture Defense Initiative (FADI) | To provide funding to protect the food supply and agricultural | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.305 | International Science and Education Grants | The purpose of ISE is to support the internationalization of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.307 | Organic Agriculture Research and Extension Initiative | The Organic Agriculture Research and Extension Initiative | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.308 | Resident Instruction, Agriculture, and Food Science Facilities and | In General. -The Secretary of Agriculture shall make competitive | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.309 | Specialty Crop Research Initiative | The purpose of the SCRI program is to address the critical | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.310 | Agriculture and Food Research Initiative (AFRI) | The Agriculture and Food Research Initiative (AFRI) awards | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.311 | Beginning Farmer and Rancher Development Program | The primary goal of BFRDP is to help beginning farmers and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.312 | Biomass Research and Development Initiative Competitive Grants | To carry out research on and development and demonstration of: | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.313 | Veterinary Medicine Loan Repayment Program | The program responds to the current shortage of large animal | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.318 | Women and Minorities in Science, Technology, Engineering, and | The Women and Minorities (WAMS) in Science, Technology, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.319 | Farm Business Management and Benchmarking | To establish a competitive research and extension grants | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.320 | Sun Grant Program | This program responds to the need to enhance national energy security | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.322 | Distance Education Grants for Institutions of Higher Education in | The purpose of the DEG program is to strengthen the capacity | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.326 | Capacity Building for Non-Land Grant Colleges of Agriculture | To assist the NLGCA Institutions in maintaining and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.328 | Food Safety Outreach Program | The National Food Safety Training, Education, Extension, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.329 | Crop Protection and Pest Management Competitive Grants | The purpose of the Crop Protection and Pest Management | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.330 | Alfalfa Seed and Alfalfa Forage Systems Program | To improve alfalfa and forage yield and seed yield of crops grown for | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.331 | Gus Schumacher Nutrition Incentive Program | The Gus Schumacher Nutrition Incentive Program (GusNIP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.332 | Agricultural Genome to Phenome Initiative | The National Institute of Food and Agricultureâ€™s | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.333 | Urban, Indoor, and Other Emerging Agricultural Production | To make competitive grants in support of research, education, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.334 | Enhancing Agricultural Opportunities for Military Veterans | The Enhancing Agricultural Opportunities for | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.336 | Veterinary Services Grant Program | The purpose of the Veterinary Services Grant Program (VSGP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.342 | Conservation and Urban Resources Extension | This program has two parts: 1.) Capacity Assistance | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.350 | Technical Assistance to Cooperatives | To develop and administer research, technical assistance, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.351 | Rural Business Development Grant | To promote sustainable economic development and facilitate the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.352 | Value-Added Producer Grants | To help agricultural producers enter into value-added activities | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.376 | Biobased Market Development and Access Grant Program | The program provides grants for domestic Integrated | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.377 | Agriculture Innovation Center Demonstration Program | The purpose of this program is to establish and operate Agriculture | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.378 | Biofuel Producer Program | The Biofuel Producer Program will make payments to eligible | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.380 | Food Supply Chain Guaranteed Loan Program | The Food Supply Chain Guaranteed Loan Program will make loan | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.381 | Meat and Poultry Processing Expansion Program | USDA is making grant funding available to meat and poultry | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.382 | Meat and Poultry Intermediary Lending Program | Grants can be made to intermediaries to facilitate financing to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.383 | Fertilizer Product Expansion Program | The purpose of FPEP is to expand capacity, improve competition, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.384 | Indigenous Animals Harvesting and Meat Processing Grant | This program will provide funds to Tribal governments as defined | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.385 | Timber Production Expansion Guaranteed Loans | The TPEP will provide financial assistance through loan | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.404 | Emergency Loans | FSA provides emergency loans to help producers recover | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.405 | Farm Labor Housing Loans and Grants | To provide decent, safe, and sanitary low-rent housing and related | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.406 | Farm Operating Loans and Loan Guarantees | The Farm Service Agency (FSA) offers direct and guaranteed | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.407 | Farm Ownership Loans and Loan Guarantees | To assist farmers and ranchers become owner-operators of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.410 | Very Low to Moderate Income Housing Loans and Loan Guarantees | To assist very low, low-income, and moderate-income households to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.411 | Rural Housing Site Loans and Self Help Housing Land | To assist public or private nonprofit organizations interested | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.415 | Rural Rental Housing Loans | To provide economically designed and constructed rental and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.417 | Very Low-Income Housing Repair Loans and Grants | Section 504 loans and grants are intended to help very low-income | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.420 | Rural Self-Help Housing Technical Assistance | Self-Help Technical Assistance Grants provide financial | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.421 | Indian Tribes and Tribal Corporation Loans | To assist Indian tribes to become owners of additional property | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.427 | Rural Rental Assistance Payments | To reduce the tenant contribution paid by low-income families | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.433 | Rural Housing Preservation Grants | To assist very low- and low-income rural residents individual | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.435 | State Mediation Grants | To assist States in establishing and administering mediation | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.438 | Section 538 Rural Rental Housing Guaranteed Loans | This program has been designed to increase the supply of affordable | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.443 | Outreach and Assistance for Socially Disadvantaged and | The overall goal of the 2501 Program is to encourage and assist | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.446 | Rural Community Development Initiative | To develop the capacity and ability of private, nonprofit community- | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.447 | Rural Multi-Family Housing Revitalization Demonstration Program | To preserve and revitalize existing rural rental housing and farm | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.448 | Rural Development Multi-Family Housing Rural Housing Voucher | The Rural Housing Voucher Demonstration program is designed to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.449 | Boll Weevil Eradication Loan Program | To assist producers and state government agencies in the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.450 | Crop Insurance | Risk Management Agencyâ€™s (RMA) mission is serving | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.451 | Noninsured Crop Disaster Assistance Program | To provide financial assistance to producers of non-insurable crops | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.460 | Risk Management Education Partnerships | To deliver training and information as well as outreach activities in the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.461 | Pandemic Cover Crop Program | Agricultural producers who have coverage under most crop | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.462 | Transitional and Organic Grower Assistance Program | Agriculture producers who have crop insurance coverage on | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.464 | Socially Disadvantaged Farmers and Ranchers Policy Research Center | The Policy Research Center was established to collect, analyze, and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.466 | Minority-Serving Institutions Partnership | The objective of this program is to strengthen the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.467 | Student Internship Programs | To increase the number of students studying agriculture, food, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.475 | Cooperative Agreements with States for Intrastate Meat and | To supply Federal assistance to States desiring to operate a | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.477 | Meat, Poultry, and Egg Products Inspection | To assure that all meat, poultry and egg products produced in | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.479 | Food Safety Cooperative Agreements | To reduce the incidence of foodborne illnesses associated with meat, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.494 | Multi-Family Housing Non-Profit Transfer Technical Assistance | Provides grants to qualified nonprofits (NP) and public housing | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.495 | Farm Labor Housing Technical Assistance Grants | Provide grant funds to qualified private and public nonprofit (NP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.500 | Cooperative Extension Service | The Cooperative Extension Service (CES) has an important | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.511 | Smith-Lever Extension Funding | The Smith-Lever Special Needs Competitive Grants | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.512 | Extension Services at 1890 Colleges and Tuskegee University, | The purpose of this funding is to support agricultural and forestry | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.513 | Facility Improvements at 1890 Facilities (Sec. 1447) | 1890 Facilities Grants Program provides funding for | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.514 | Expanded Food and Nutrition Education Program | The purpose of this funding is to increase the impact of nutrition | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.515 | Renewable Resources Extension Act | The goal of this program is to support extension activities | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.516 | Rural Health and Safety Education Competitive Grants Program | The Rural Health and Safety RHSE program addresses the health | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.517 | Tribal Colleges Extension Programs | The Tribal College Extension Program supports the 1994 | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.518 | Food Animal Residue Avoidance Databank | The purpose of the FARAD is to provide livestock producers, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.519 | Equipment Grants Program (EGP) | The Equipment Grants Program (EGP) serves to increase access to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.520 | Agriculture Risk Management Education Partnerships | To establish a competitive grants program for the purpose | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.521 | Children, Youth and Families At-Risk | To marshal resources of the Land-grant Institutions (LGIs) and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.522 | Food and Agriculture Service Learning Program | The purposes of the Program are- (1) to increase capacity | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.523 | Centers of Excellence at 1890 Institutions | The Centers of Excellence at 1890 Institutions Program will | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.524 | Scholarships for Students at 1890 Institutions | The Scholarships for students at 1890 Institutions program | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.525 | Farm and Ranch Stress Assistance Network Competitive Grants | The purpose of the Farm and Ranch Stress Assistance Network | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.527 | New Beginning for Tribal Students | The purpose of the NBTS grant program, Assistance Listing | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.528 | USDA WIC Telehealth Evaluation Collaborative | The purpose of the Telehealth Intervention Strategies for WIC | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.529 | Food Distribution Program on Indian Reservations (FDPIR) | The Food and Nutrition Service (FNS) administers 15 Federal | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.531 | State Agency: Farm to School Program Training and Curricula | The Farm to School Cooperative Agreement solicitation is open to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.532 | School Nutrition Training Grants | School Nutrition Training Grant for Allied Professional | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.533 | SNAP-Ed Toolkit | The Supplemental Nutrition Education (SNAP-Ed) Toolkit: | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.535 | SNAP Fraud Framework Implementation Grant | The purpose of the SNAP Fraud Framework | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.537 | Supplemental Nutrition Assistance Program (SNAP) Employment | These grants provide support to State agencies in developing | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.539 | CNMI Nutrition Assistance | The Nutrition Assistance Program (NAP) in the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.540 | Participant Research Innovation Laboratory for Enhancing WIC | The objective of this opportunity was to announce the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.541 | Child Nutrition-Technology Innovation Grant | The purpose of the Child Nutrition Non-Competitive Technology | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.542 | Pandemic EBT Food Benefits | The objective of the of the Pandemic Electronic Benefit | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.545 | Farmersâ€™ Market Supplemental Nutrition Assistance Program | These funds are intended to support the participation of | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.551 | Supplemental Nutrition Assistance Program | SNAP Benefits: Improve nutrition of eligible low-income households by | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.553 | School Breakfast Program | To assist States in implementing a nutritious nonprofit | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.555 | National School Lunch Program | To assist States, through cash grants and food donations, in | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.556 | Special Milk Program for Children | To provide subsidies to schools and institutions to encourage the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.557 | WIC Special Supplemental Nutrition Program for Women, | To provide income-eligible pregnant, breastfeeding and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.558 | Child and Adult Care Food Program | To assist States, through grants-in-aid and other means, to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.559 | Summer Food Service Program for Children | The United States Department of Agriculture (USDA) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.560 | State Administrative Expenses for Child Nutrition | To provide each State agency with funds for its administrative expenses | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.561 | State Administrative Matching Grants for the Supplemental Nutrition | SNAP State Administrative Expenses: Provide | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.565 | Commodity Supplemental Food Program | To improve the health of low-income elderly persons at least 60 | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.566 | Nutrition Assistance For Puerto Rico | An alternative to the Special Nutrition Assistance Program | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.567 | Food Distribution Program on Indian Reservations | The Food Distribution Program on Indian Reservations (FDPIR) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.568 | Emergency Food Assistance Program (Administrative Costs) | To help supplement the diets of low-income persons by making | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.569 | Emergency Food Assistance Program (Food Commodities) | To help supplement the diets of low-income persons by making | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.572 | WIC Farmers' Market Nutrition Program (FMNP) | The purposes of the WIC Farmersâ€™ Market Nutrition | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.574 | Team Nutrition Grants | The goal of the Fiscal Year(FY) 2024 Team Nutrition Training | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.575 | Farm to School Grant Program | The Farm to School program exists in order to assist eligible | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.576 | Senior Farmers Market Nutrition Program | The purposes of the Senior Farmersâ€™ Market Nutrition | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.577 | SNAP Partnership Grant | The purpose of the SNAP Partnership grants is to establish | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.578 | WIC Grants To States (WGS) | To assist WIC State agencies, through grants and cooperative | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.579 | Child Nutrition Discretionary Grants Limited Availability | National School Lunch Program (NSLP) Equipment Assistance | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.580 | Supplemental Nutrition Assistance Program, Process and | The purpose of these grants is to support efforts by State | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.582 | Fresh Fruit and Vegetable Program | To assist States, through cash grants, in providing free fresh | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.585 | FNS Food Safety Grants | The Food and Nutrition Serviceâ€™s Food Safety Branch provides | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.587 | National Food Service Management Institute Administration and | The Institute of Child Nutrition (ICN), formerly known as the National | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.593 | Bill Emerson National Hunger Fellows and Mickey Leland | The Bill Emerson Hunger Fellowship Program is to address | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.594 | Food Distribution Program on Indian Reservations Nutrition | The Food Distribution Program Nutrition Education grant offered | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.600 | Foreign Market Development Cooperator Program | FMD award recipients will implement various market development | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.601 | Market Access Program | MAP award recipients will implement various market development | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.603 | Emerging Markets Program | The primary objective of the Emerging Markets Program is to promote, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.604 | Technical Assistance for Specialty Crops Program | The TASC program is designed to assist U.S. organizations by | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.605 | Quality Samples Program | The Quality Samples Program is designed to encourage the | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.606 | Food for Progress | In order to use the food resources of the United States more effectively | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.608 | Food for Education | The key objective of the McGovern-Dole Program is to reduce | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.610 | Export Guarantee Program | The U.S. Department of Agriculture's (USDA) Export Credit guarantee | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.612 | USDA Local and Regional Food Aid Procurement Program | Through the Local and Regional Food Aid Procurement (LRP) | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.613 | Faculty Exchange Program | The Faculty Exchange Program is intended to improve the teaching | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.615 | Pima Agriculture Cotton Trust Fund | The Pima Agriculture Cotton Trust Fund was established to reduce | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.616 | Agriculture Wool Apparel Manufacturers Trust Fund | The Agriculture Wool Apparel Manufacturers Trust Fund was | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.617 | PL-480 Market Development and Technical Assistance | Uses available foreign currencies repaid to the United States to provide | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.618 | Regional Agricultural Promotion Program | The Regional Agricultural Promotion Program (RAPP) is | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.619 | International Agricultural Education Fellowship Program | The program provides fellowships to citizens of the United States to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.620 | Scientific Exchanges Program | The Scientific Exchange Program promotes trade, trade policy, trade | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.621 | Assisting Specialty Crop Exports | ASCE addresses barriers unique to specialty crops exports. | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.622 | Food for Opportunity | The objective of FFO is to complement existing food assistance | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.645 | Farm to School State Formula Grant | To provide funding for state operated farm to school programs to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.646 | Summer Electronic Benefit Transfer Program for Children | Summer EBT is a Federally-assisted program through which | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.649 | Pandemic EBT Administrative Costs | To provide Federal financial participation to State agencies and | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.652 | Forestry Research | The Forestry Research program funds a wide range of research | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.664 | Cooperative Forestry Assistance | With respect to nonfederal forest and other rural lands to | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.665 | Schools and Roads - Grants to States | To share receipts from the National Forests and supplemental | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.666 | Schools and Roads - Grants to Counties | To share receipts from the National Grasslands and Land Utilization | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.674 | Wood Utilization Assistance | Provide direct technical assistance to Forest Service, state foresters, | https:// sam.g | https:// www. |
| Department of Agriculture | | 10.675 | Urban and Community Forestry Program | To plan for, establish, manage and protect trees, forests, green | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.676 | Forest Legacy Program | To effectively identify and protect environmentally | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.678 | Forest Stewardship Program | Using existing State, Federal, and private sector forestry experts, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.679 | Collaborative Forest Restoration | The purposes of the grants are: to promote healthy watersheds and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.680 | Forest Health Protection | Protect and manage non-Federal forest and tree resources from | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.681 | Wood Education and Resource Center (WERC) | To provide technical assistance and funds, on a cost-share basis, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.682 | National Forest Foundation | The purposes of the National Forest Foundation are to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.683 | National Fish and Wildlife Foundation | Created by Congress in 1984, National Fish and Wildlife Foundation | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.684 | International Forestry Programs | To extend Forest Service efforts to improve forest policies | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.689 | Community Forest and Open Space Conservation Program | The Community Forest Program (CFP) is a competitive grant | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.690 | Lake Tahoe Erosion Control Grant Program | To make annual payments to the governing bodies of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.691 | Good Neighbor Authority | To permit the head of any state agency (including the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.693 | Watershed Restoration and Enhancement Agreement Authority | To enter into domestic cooperative agreements with willing participants | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.694 | Southwest Forest Health and Wildfire Prevention | (1) To enhance the capacity to develop, transfer, apply, monitor, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.697 | State & Private Forestry Hazardous Fuel Reduction Program | Reduce the risk of catastrophic wildfire to communities and the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.698 | State & Private Forestry Cooperative Fire Assistance | With respect to nonfederal forest and other rural lands to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.699 | Partnership Agreements | To increase participation of non-federal cooperators in | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.700 | National Agricultural Library | To serve as the Nation's Chief Agricultural information resource by | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.701 | Stewardship Agreements | Stewardship End Result Contracting authorizes use of contracts and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.702 | Alaska National Interest Lands Conservation Act (ANILCA) Agreements | Through a multidisciplinary collaborative program, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.703 | Cooperative Fire Protection Agreement | To allow reciprocal agreements with fire organizations (as | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.704 | Law Enforcement Agreements | Cooperative work between the Forest Service with State and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.705 | Cooperative Forest Road Agreements | Allows the Forest Service to work cooperatively with | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.706 | Grey Towers Cooperative Authorities | To promote the recreational and educational resources | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.707 | Research Joint Venture and Cost Reimbursable Agreements | To increase participation by partners in Agricultural rangeland | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.708 | Community Wood Energy and Wood Innovation Program | Provide assistance to supplement the capital costs 1) for installing a | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.711 | Forest Service 638 Authority for Tribes | The Forest Service received authority for demonstration projects | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.712 | Great American Outdoors Act Deferred Maintenance Program | The Great American Outdoors Act (GAOA) establishes a new fund | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.714 | Infrastructure Investment and Job Act Joint Fire Science | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.715 | Infrastructure Investment and Jobs Act Collaborative Forest | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.716 | Infrastructure Investment and Jobs Act Prescribed Fire/Fire | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.717 | Infrastructure Investment and Jobs Act Restoration/ | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.718 | Infrastructure Investment and Jobs Act Capital | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.719 | Infrastructure Investment and Jobs Act Firewood Bank | To provide financial assistance for the operation of firewood | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.720 | Infrastructure Investment and Jobs Act Community Wildfire | With respect to nonfederal lands, to develop community | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.721 | Infrastructure Investment and Jobs Act Temporary Bridge | Provide direct federal support to States and Indian Tribes to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.722 | Forest Service Reverse 911 Grant Program | Provide federal financial assistance for the establishment, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.723 | Community Project Funds - Congressionally | These are specific projects selected by Congress for funding | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.724 | Wildfire Crisis Strategy Landscapes | In 2022, the Forest Service launched the Wildfire Crisis Strategy | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.725 | Infrastructure and Investment Jobs Act Financial Assistance to | Provide financial assistance to facilities that purchase and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.726 | Opal Creek Wilderness Economic Grant Program | To provide funding to the State of Oregon to establish an economic | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.727 | Inflation Reduction Act Urban & Community Forestry Program | To plan for, establish, manage and protect trees, forests, green | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.728 | Inflation Reduction Act Hazardous Fuels Transportation | The focus of this program is to support the hauling of material | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.729 | Inflation Reduction Act - National Forest System | The focus of this program is for project work to be performed | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.730 | Community Project Funds - Congressionally | These are specific projects selected by Congress for funding | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.731 | Inflation Reduction Act Landscape Scale Restoration | To support competitive grant programs in the following areas: 1) | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.732 | Bipartisan Infrastructure Law State, Private & Tribal Agreements | The Infrastructure Investment and Jobs Act (IIJA) establishes | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.733 | Bipartisan Infrastructure Law â€“ Removal and Production of | This funding program works with partners to better support long term | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.734 | Inflation Reduction Act - Forest Legacy Program | To effectively identify and protect environmentally | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.735 | Reforestation of Non-Federal Mined Land | Emphasis on expanding existing partnerships and the creation of new | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.736 | Bipartisan Infrastructure Act Nursery Vegetation | The intent for this program is to provide funding for state and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.737 | Forest and Grassland Collaboratives | Provide support for forest or grassland collaboratives in the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.751 | Rural Energy Savings Program (RESP) | The Rural Energy Savings Program (RESP) provides loans | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.752 | Rural eConnectivity Pilot Program | The ReConnect Program provides loans, grants, and loan/ | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.754 | Higher Blends Infrastructure Incentive Program | The Higher Blends Infrastructure Incentive Program (HBIIP) is a | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.755 | Rural Innovation Stronger Economy | To help struggling communities by funding job accelerators in low- | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.757 | Powering Affordable Clean Energy (PACE) Program | The Powering Affordable Clean Energy (PACE) | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.758 | New Empowering Rural America (New ERA) Program | RUS will utilize the New ERA funds to assist eligible entities to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.759 | Part 1774 Special Evaluation Assistance for Rural Communities | To make predevelopment planning grants for | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.760 | Water and Waste Disposal Systems for Rural Communities | Provide loan and grant funds for water and waste projects serving | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.761 | Water and Waste Technical Assistance and Training Grants | Annual TAT - To identify and evaluate solutions to water and waste | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.762 | Solid Waste Management Grants | The objectives of the program are to reduce or eliminate pollution of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.763 | Emergency Community Water Assistance Grants | The objective of the ECWAG program is to assist the residents of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.766 | Community Facilities Loans and Grants | To provide affordable funding either through loans or grants to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.767 | Intermediary Relending Program | Establish revolving loan funds for the purpose of providing loans to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.768 | Business and Industry Guaranteed Loans | The purpose of the B&I Guaranteed Loan Program is to improve, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.770 | Water and Waste Grants and Loans and Loan Guarantees | This program helps get safe reliable drinking water and waste | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.771 | Rural Cooperative Development Grants | To improve the economic condition of rural areas by assisting | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.777 | Norman E. Borlaug International Agricultural Science and | Fellowships are intended to promote food security and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.782 | Appropriate Technology Transfer for Rural Areas | To provide diverse technical information and educational | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.850 | Rural Electrification Loans and Loan Guarantees | To assure that people in eligible rural areas have access to electric | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.851 | Rural Telecommunications Loans | This program provides loans for the construction, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.854 | Rural Economic Development Loans and Grants | The Rural Economic Development Loan and Grant Programs provide | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.855 | Distance Learning and Telemedicine Loans and Grants | To encourage and improve the use of telemedicine, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.858 | Denali Commission Grants and Loans | This program assists the Denali Commission in lowering the cost of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.859 | Assistance to High Energy Cost Rural Communities | The purpose of this grant program is to assure access to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.860 | Rural Business Investment Program | To promote economic development and create wealth and job | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.862 | Rural Decentralized Water Systems Grant Program | To make grants to private, nonprofit organizations to finance | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.863 | Community Connect Grant Program | To encourage community-oriented connectivity by | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.864 | Grant Program to Establish a Fund for Financing Water and | This program helps qualified nonprofits create revolving loan | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.865 | Biorefinery Assistance | The program provide loan guarantees for the development, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.867 | Bioenergy Program for Advanced Biofuels | The purpose of this subpart is to support and ensure an | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.868 | Rural Energy for America Program | (1) Provision of grants and loan guarantees to agricultural producers | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.870 | Rural Microentrepreneur Assistance Program | Provide rural microentrepreneurs with the skills necessary to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.871 | Socially-Disadvantaged Groups Grant | The primary objective of the Socially Disadvantaged Groups | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.872 | Healthy Food Financing Initiative | The Healthy Food Financing Initiative (HFFI) is an inter- | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.874 | Delta Health Care Services Grant Program | To provide financial assistance to address the continued unmet | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.886 | Rural Broadband Access Loans and Loan Guarantees | This program furnishes loans and loan guarantees to provide | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.890 | Rural Development Cooperative Agreement Program | USDA Rural Development Innovation Center in | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.902 | Soil and Water Conservation | Provide conservation technical assistance to private landowners, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.903 | Soil Survey | To produce and maintain up to date soil survey information | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.904 | Watershed Protection and Flood Prevention | To provide technical and financial assistance in carrying out works of | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.905 | Plant Materials for Conservation | To assemble, evaluate, and promote the use of new and improved plant | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.907 | Snow Survey and Water Supply Forecasting | To provide reliable, accurate, and timely forecasts of surface | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.912 | Environmental Quality Incentives Program | EQIP promotes agricultural production, forest management, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.913 | Farm and Ranch Lands Protection Program | To provide funding to eligible entities to purchase conservation | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.914 | Wildlife Habitat Incentive Program | To help participants protect, restore, develop or enhance | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.916 | Watershed Rehabilitation Program | To provide technical and financial assistance to rehabilitate dams | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.917 | Agricultural Management Assistance | To provide financial assistance to producers on private lands through | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.920 | Grassland Reserve Program | To assist landowners and operators in restoring and protecting | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.922 | Healthy Forests Reserve Program (HFRP) | The purpose of the Healthy Forests Reserve Program | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.923 | Emergency Watershed Protection Program | The objective of the EWP Program is to assist sponsors, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.924 | Conservation Stewardship Program | Through CSP, NRCS provides financial and technical assistance to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.927 | Emergency Watershed Protection Program - Disaster Relief | The objective of the EWP Program is to assist sponsors, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.928 | Emergency Watershed Protection Program - Floodplain Easements | The Emergency Watershed Protection - Floodplain Easement | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Agriculture | | 10.929 | Water Bank Program | To preserve and improve major wetlands as habitat for migratory | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.931 | Agricultural Conservation Easement Program | To establish an agricultural conservation easement | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.932 | Regional Conservation Partnership Program | To further the conservation, protection, restoration, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.933 | Wetland Mitigation Banking Program | The Wetland Mitigation Banking Program is used to help establish | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.934 | Feral Swine Eradication and Control Pilot Program | The Feral Swine Pilot Program will allow NRCS and APHIS to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.935 | Urban Agriculture and Innovative Production | The objective of the Urban Agriculture and Innovative Production | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.936 | Gulf Coast Ecosystem Restoration Council Comprehensive Plan | The primary objective of this program is to disburse funds to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.937 | Partnerships for Climate-Smart Commodities | The Partnerships for Climate-Smart Commodities aim to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.938 | Conservation Outreach, Education and Technical Assistance | The overall goal of Conservation Outreach is to expand | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.950 | Agricultural Statistics Reports | The objective for NASS is to formulate, develop, and administer | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.951 | Census of Agriculture | The objective for NASS is to formulate, develop, and administer | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.960 | Technical Agricultural Assistance | To identify international agricultural issues and problems and apply the | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.961 | Scientific Cooperation and Research | The projects address specific issues related to agricultural trade and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.962 | Cochran Fellowship Program | Awards will enhance knowledge and skills to assist eligible countries | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.964 | Emergency Relief Program | ERP provides financial assistance to producers for losses to crops, | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.965 | Milk Loss Program | The Milk Loss program will indemnify eligible dairy operations for milk | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.966 | Commodity Container Assistance Program | CCAP provides assistance to eligible owners or designated | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.968 | Increasing Land, Capital, and Market Access Program | USDA launched the Increasing Land, Capital, and Market | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.969 | FSA Conservation Reserve Program Transition Incentive | The objective of this program is to provide education on the CRP- | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.970 | Farm Loan Borrower Relief Program | The Farm Loan Borrower Relief Program (FLBRP) is to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.971 | Urban Agriculture and Urban County Committee Outreach, | Assistance from USDAâ€™s Farm Service Agency (FSA) | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.973 | Emergency Grain Storage Facility Assistance Program | The Emergency Grain Storage Facility Assistance Program | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.974 | DSA COVID Relief Program | The DSA COVID Relief Program was implemented to assist | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.975 | Emergency Relief Program Outreach Education and | The Emergency Relief Program (ERP) is intended to help | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.976 | Rice Production Program | RPP provides assistance to rice producers that planted | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.977 | Organic Dairy Marketing Assistance Program | The Organic Dairy Marketing Assistance Program (ODMAP) was | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.978 | Farm Labor Stabilization and Protection Pilot Grant | USDA is offering a grant program focused on addressing labor | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.979 | Emergency Relief Program 2022 | ERP 2022 provides financial assistance to producers for losses to | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.980 | Emergency Livestock Relief Program 2022 | ELRP 2022 provides direct financial assistance to livestock | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.981 | Commodity Storage Assistance Program | The Commodity Storage Assistance Program (CSAP) will | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.982 | Testing, Mitigation, and Relief for Agricultural Contamination by Per- | Under the authority of the Fiscal Year 2023 Consolidated | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.983 | Outreach Education and Technical Assistance for Disaster | These cooperative agreements require recipients to work with | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.984 | Discrimination Financial Assistance Program | The U.S. Department of Agriculture (USDA) is authorized by Section | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.996 | Rural Development Policy Public Service and Leadership | Fellowships are intended to improve the coordination and | https:/ / sam.g | https:/ / www. |
| Department of Agriculture | | 10.997 | U.S. Codex Office Support for International Activities | The goal of this listing is to support agreements with organizations, | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.008 | NOAA Mission-Related Education Awards | The objectives of the overall program are to facilitate educational | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.011 | Ocean Exploration | To explore the Earthâ€™s largely unknown oceans in all | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.012 | Integrated Ocean Observing System (IOOS) | To support projects aimed at the development and | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.013 | Education Quality Award Ambassadorship | Support Malcolm Baldrige National Quality Award Program | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.015 | Broad Agency Announcement | This BAA is a mechanism to encourage research, | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.016 | Statistical, Research, and Methodology Assistance | To make awards to, or conclude cooperative agreements with | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.017 | Ocean Acidification Program (OAP) | The OAP plays an integral role in maintaining long-term | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.021 | NOAA Small Business Innovation Research (SBIR) Program | The Small Business Innovation Research (SBIR) seeks to | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.022 | Bipartisan Budget Act of 2018 | Identifying and documenting incremental risks and | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.023 | Science, Technology, Engineering, and Mathematics (STEM) | The U.S Economic Development Administrationâ€™s | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.024 | BUILD TO SCALE | Entrepreneurs, especially technology entrepreneurs, flourish | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.028 | Connecting Minority Communities Pilot Program | The Connecting Minority Communities Pilot Program provides | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.029 | Tribal Broadband Connectivity Program | This program provides grants to eligible tribal or Native entities in the | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.031 | Broadband Infrastructure Program | The Broadband Infrastructure Program provides federal grants | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.032 | State Digital Equity Planning and Capacity Grant | The purpose of the State Digital Equity Planning and Capacity | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.033 | Middle Mile (Broadband) Grant Program | The Middle Mile (Broadband) Grant Program provides | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.034 | 2023 MBDA Capital Readiness Program | The Minority Business Development Agencyâ€™s (MBDA) | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Commerce | | 11.035 | Broadband Equity, Access, and Deployment Program | The Commerce Department's National Telecommunications | https:// sam.g | https:// www. |
| Department of Commerce | | 11.036 | Digital Equity Competitive Grant Program | The purpose of the Digital Equity Competitive Grant | https:// sam.g | https:// www. |
| Department of Commerce | | 11.037 | CHIPS Incentives Program | The CHIPS Incentives Program aims to catalyze long-term | https:// sam.g | https:// www. |
| Department of Commerce | | 11.038 | Public Wireless Supply Chain Innovation Fund Grant Program | The Innovation Fund is a ten-year, $1.5 billion grant program, | https:// sam.g | https:// www. |
| Department of Commerce | | 11.039 | Regional Technology and Innovation Hubs | Awards made under this NOFO will seek to strengthen U.S. | https:// sam.g | https:// www. |
| Department of Commerce | | 11.040 | Distressed Area Recompete Pilot Program | The Distressed Area Recompete Pilot Program (Recompete | https:// sam.g | https:// www. |
| Department of Commerce | | 11.041 | U.S. and Foreign Commercial Service Pilot Fellowship | The goals of the fellowship program are to enhance | https:// sam.g | https:// www. |
| Department of Commerce | | 11.042 | CHIPS Research and Development | The CHIPS Research and Development Office (CHIPS R&D) aims to | https:// sam.g | https:// www. |
| Department of Commerce | | 11.043 | National Weather Service Office of Science and | The Office of Science and Technology Integration (OSTI) | https:// sam.g | https:// www. |
| Department of Commerce | | 11.112 | Market Development Cooperator Program | Through the Market Development Cooperator Program | https:// sam.g | https:// www. |
| Department of Commerce | | 11.300 | Investments for Public Works and Economic Development Facilities | EDAâ€™s Public Works program helps distressed communities | https:// sam.g | https:// www. |
| Department of Commerce | | 11.302 | Economic Development Support for Planning Organizations | The Economic Development Planning Assistance program | https:// sam.g | https:// www. |
| Department of Commerce | | 11.303 | Economic Development Technical Assistance | EDA administers three Technical Assistance initiatives under this | https:// sam.g | https:// www. |
| Department of Commerce | | 11.307 | Economic Adjustment Assistance | The EAA program provides a wide range of technical, planning, | https:// sam.g | https:// www. |
| Department of Commerce | | 11.312 | Research and Evaluation Program | Through the R&E program, EDA supports the development of | https:// sam.g | https:// www. |
| Department of Commerce | | 11.313 | Trade Adjustment Assistance for Firms | The Trade Adjustment Assistance for Firms (TAAF) program helps | https:// sam.g | https:// www. |
| Department of Commerce | | 11.400 | Geodetic Surveys and Services (Geodesy and Applications of the | Two programs exist in this CFDA: A.The National | https:// sam.g | https:// www. |
| Department of Commerce | | 11.405 | Cooperative Institute (Inter-Agency Funded Activities) | To increase the effectiveness of research and develop | https:// sam.g | https:// www. |
| Department of Commerce | | 11.407 | Interjurisdictional Fisheries Act of 1986 | To assist States in managing interjurisdictional | https:// sam.g | https:// www. |
| Department of Commerce | | 11.408 | Fishermen's Contingency Fund | To compensate U.S. commercial fishermen for damage/loss of | https:// sam.g | https:// www. |
| Department of Commerce | | 11.413 | Fishery Products Inspection and Certification | To ensure that the hygienic aspects of seafood harvesting and | https:// sam.g | https:// www. |
| Department of Commerce | | 11.415 | Fisheries Finance Program | Provides direct loans for certain fisheries costs. Vessel financing | https:// sam.g | https:// www. |
| Department of Commerce | | 11.417 | Sea Grant Support | To support the establishment and operation of major | https:// sam.g | https:// www. |
| Department of Commerce | | 11.419 | Coastal Zone Management Administration Awards | To assist States in implementing and enhancing Coastal | https:// sam.g | https:// www. |
| Department of Commerce | | 11.420 | Coastal Zone Management Estuarine Research Reserves | To assist States in the development, acquisition, monitoring, | https:// sam.g | https:// www. |
| Department of Commerce | | 11.426 | Financial Assistance for National Centers for Coastal Ocean Science | NCCOS provides research, scientific information and tools to | https:// sam.g | https:// www. |
| Department of Commerce | | 11.427 | Fisheries Development and Utilization Research and | To increase greatly the Nation's wealth and quality of life through | https:// sam.g | https:// www. |
| Department of Commerce | | 11.429 | Marine Sanctuary Program | National marine sanctuaries conduct and support monitoring | https:// sam.g | https:// www. |
| Department of Commerce | | 11.431 | Climate and Atmospheric Research | Climate variability and change present society with significant | https:// sam.g | https:// www. |
| Department of Commerce | | 11.432 | National Oceanic and Atmospheric Administration (NOAA) | To increase the effectiveness of research and develop | https:// sam.g | https:// www. |
| Department of Commerce | | 11.433 | Marine Fisheries Initiative | To provide financial assistance for research and development | https:// sam.g | https:// www. |
| Department of Commerce | | 11.434 | Cooperative Fishery Statistics | To maintain a cooperative State and Federal partnership to | https:// sam.g | https:// www. |
| Department of Commerce | | 11.435 | Southeast Area Monitoring and Assessment Program | To maintain a cooperative program which engages State | https:// sam.g | https:// www. |
| Department of Commerce | | 11.436 | Columbia River Fisheries Development Program | This program uses the facilities and personnel of State and Federal | https:// sam.g | https:// www. |
| Department of Commerce | | 11.437 | Pacific Fisheries Data Program | This cooperative program provides support to State fishery | https:// sam.g | https:// www. |
| Department of Commerce | | 11.438 | Pacific Coast Salmon Recovery Pacific Salmon Treaty Program | This is a cooperative program that assists the States in salmon | https:// sam.g | https:// www. |
| Department of Commerce | | 11.439 | Marine Mammal Data Program | Nondiscretionary funding under this authorization provides | https:// sam.g | https:// www. |
| Department of Commerce | | 11.440 | Environmental Sciences, Applications, Data, and Education | To advance and promote applied research, data | https:// sam.g | https:// www. |
| Department of Commerce | | 11.441 | Regional Fishery Management Councils | The objectives of the eight Regional Fishery Management Councils | https:// sam.g | https:// www. |
| Department of Commerce | | 11.451 | Gulf Coast Ecosystem Restoration Science, Observation, | The mission of the National Oceanic and Atmospheric | https:// sam.g | https:// www. |
| Department of Commerce | | 11.452 | Unallied Industry Projects | To provide grants and cooperative agreements for biological, economic, | https:// sam.g | https:// www. |
| Department of Commerce | | 11.454 | Unallied Management Projects | Projects provide economic, sociological, public policy, and other | https:// sam.g | https:// www. |
| Department of Commerce | | 11.455 | Cooperative Science and Education Program | To support through grants and cooperative agreements, enduring | https:// sam.g | https:// www. |
| Department of Commerce | | 11.457 | Chesapeake Bay Studies | To provide financial assistance for research and development | https:// sam.g | https:// www. |
| Department of Commerce | | 11.459 | Weather and Air Quality Research | Advance weather research, development, and transition to | https:// sam.g | https:// www. |
| Department of Commerce | | 11.460 | Special Oceanic and Atmospheric Projects | To strengthen the communication and improve the impact of | https:// sam.g | https:// www. |
| Department of Commerce | | 11.463 | Habitat Conservation | To provide grants and cooperative agreements for habitat conservation | https:// sam.g | https:// www. |
| Department of Commerce | | 11.467 | Meteorologic and Hydrologic Modernization | To maintain a cooperative university and Federal | https:// sam.g | https:// www. |
| Department of Commerce | | 11.468 | Applied Meteorological Research | The Collaborative Science, Technology, and Applied Research | https:// sam.g | https:// www. |
| Department of Commerce | | 11.469 | Congressionally Identified Awards and Projects | The objectives of the overall program are to facilitate education, | https:// sam.g | https:// www. |
| Department of Commerce | | 11.472 | Unallied Science Program | To provide grants and cooperative agreements of biological, socio- | https:// sam.g | https:// www. |
| Department of Commerce | | 11.473 | Office for Coastal Management | To support projects aimed at developing a science-based, multi- | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Commerce | | 11.474 | Atlantic Coastal Fisheries Cooperative Management Act | To provide assistance to eligible States and the Atlantic States Marine | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.477 | Fisheries Disaster Relief | To deal with commercial fishery failures due to fishery resource | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.478 | Center for Sponsored Coastal Ocean Research Coastal | The Competitive Research Program (CRP), part of the | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.481 | Educational Partnership Program | To continue development of education, research, | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.482 | Coral Reef Conservation Program | To provide matching grants of financial assistance in support of | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.483 | NOAA Programs for Disaster Relief Appropriations Act - | 1. Protect, Restore, and Manage the Use of Coastal and Ocean | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.553 | Special Projects | To assist various organizations identified by Congress or through | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.601 | Calibration Program | To provide a consistent system of physical measurement in the | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.603 | National Standard Reference Data System | To make evaluated scientific and technical data readily available to | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.604 | Standard Reference Materials | Standard Reference Materials are certified and issued by NIST to | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.606 | Weights and Measures Service | To provide leadership and technical resources to assure the accuracy | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.609 | Measurement and Engineering Research and Standards | To provide scientific and engineering research and technology transfer | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.610 | Standards Information Center | To serve as a standards and conformity assessment information | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.611 | Manufacturing Extension Partnership | Enhance competitiveness, productivity, and | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.617 | Congressionally-Identified Projects | To assist various organizations identified by Congress to achieve | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.619 | Arrangements for Interdisciplinary Research Infrastructure | To establish an strengthen new and/or existing centers, | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.620 | Science, Technology, Business and/or Education Outreach | To evaluate the benefits and impacts of NIST research and | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.802 | Minority Business Resource Development | The objectives of the overall program are to 1) provide financial | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.804 | MBDA Business Center - American Indian and Alaska Native | The purpose of the MBDA Business Center - Native American | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.805 | MBDA Business Center | The Minority Business Development Agency (MBDA), a bureau of | https:/ / sam.g | https:/ / www. |
| Department of Commerce | | 11.999 | Marine Debris Program | To provide grants and cooperative agreements to help identify, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.002 | Procurement Technical Assistance For Business Firms | Building a strong and sustainable U.S. supply chain and supporting a | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.003 | Community Economic Adjustment Assistance for Responding to | Assist State and local governments to review existing capabilities | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.004 | Fort Huachuca Sentinel Landscapes for Military Training | Objective 1: Future external encroachment mitigation through | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.005 | Conservation and Rehabilitation of Natural Resources on Military | The Sikes Act attempts to ensure that fish, wildlife and other | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.006 | National Defense Education Program | To obtain support for the management, development, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.007 | Military Health Services Research (MHSR) | The Military Health System Research (MHSR) Program | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.008 | Dredged Material Containment Area | inspect, ditch and drain dredged material containment areas | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.010 | Youth Conservation Services | To further training and educational opportunities at water | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.012 | Management of Undersirable Plants on Federal Lands, 7 U.S.C. | The purpose of the cooperative agreement is to manage | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.014 | OnRampII | The purpose of the OnRamp II program is to foster educational | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.015 | Past Conflict Accounting - Vietnam | The Secretary of Defense, in coordination with the | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.016 | Transportation - DASH 102X and WMATA 7M Shuttles | Objective is to provide Transportation between the Mark Center, the | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.017 | Readiness and Environmental Protection Integration | The Readiness and Environmental Protection Integration | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.019 | Pacific Center Disaster (PDC) Program | 1. Enable PDC to stimulate research, development, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.020 | STARBASE Program | This is a non discretionary award. 1. STARBASE 2.0 is | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.021 | Army National Guard Army Compatible Use Buffer Program | The Army Compatible Use Buffer (ACUB) program provides | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.022 | DoD Mentor-Protege Program | The Department of Defense (DoD), Mentor Protege Program was | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.024 | Defense Security Cooperation University - Sponsored Research | The Defense Security Cooperation Agencyâ€™s (DSCA) | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.025 | Native American Consultation to Identify Sacred Sites and | Work with Tribal representatives to identify sacred sites and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.026 | Corps Water Infrastructure Financing Program (CWIFP) | CWIFP enables local investment in critical non-Federal dam safety | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.027 | Defense Community Infrastructure Program | Assist state and local governments with addressing deficiencies | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.029 | Community Noise Mitigation Program | Assist state and local governments with addressing military | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.113 | State Memorandum of Agreement Program for the Reimbursement of | To reimburse each State and territory for their costs incurred by | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.114 | Collaborative Research and Development | To facilitate productivity-improving research and development and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.116 | Department of Defense Appropriation Act of 2003 | For developing a system for prioritization of mitigation and cost to | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.219 | Ease 3.0 | 1. Establish and ensure successful, sustainable, and effective methods | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.225 | Commercial Technologies for Maintenance Activities | In partnership with industry, the goal of the CTMA program is to | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.300 | Basic and Applied Scientific Research | To support and stimulate basic and applied research and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.330 | Science, Technology, Engineering & Mathematics (STEM) | To support educational programs in Science, Technology, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.333 | Advanced Manufacturing Technology - Office of | OSD ManTech provides federal financial assistance for basic, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.335 | Navy Command, Control, Communications, | To support basic and applied research at educational, nonprofit, | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Defense | | 12.340 | Naval Medical Research and Development | To enhance the health, safety, readiness, and performance of Navy | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.350 | Department of Defense HIV/AIDS Prevention Program | To train and assist selected foreign militaries in establishing | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.351 | Scientific Research - Combating Weapons of Mass Destruction | To support and stimulate basic, applied and advanced research | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.355 | Pest Management and Vector Control Research | Research designed to develop new interventions for | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.357 | ROTC Language and Culture Training Grants | Project GO (Global Officers) is a DoD-funded initiative that | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.360 | Research on Chemical and Biological Defense | To further the capability to prevent, detect, diagnose and treat the | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.369 | Marine Corps Systems Command Federal Assistance Program | To reduce the demand for illegal drugs among Americaâ€™s youth by | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.400 | Military Construction, National Guard | This is a non-discretionary award. To provide Congressionally | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.401 | National Guard Military Operations and Maintenance (O&M) | This is a non-discretionary program. The National Guard | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.404 | National Guard ChalleNGe Program | This is a non discretionary program. The Secretary of | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.420 | Military Medical Research and Development | Through the support of basic, applied, and advanced biomedical | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.431 | Basic Scientific Research | To support basic research, and enhance fundamental knowledge | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.440 | Dissertation Year Fellowship | The U.S. Army Center of Military History Dissertation Year | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.460 | Fisher House Foundation | To implement Congressionally-directed assistance to | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.501 | Training and Support â€“ Combating Weapons of Mass | To support and stimulate training and collaborative efforts for | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.550 | The Language Flagship Grants to Institutions of Higher Education | (1) To establish centers for the teaching of critical languages that | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.551 | National Security Education Program David L. Boren | (1) To provide the necessary resources, accountability and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.552 | National Security Education Program David L. Boren | (1) To provide the necessary resources, accountability and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.554 | English for Heritage Language Speakers Grants to U.S. | The English for Heritage Language Speakers (EHLS) | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.556 | Competitive Grants: Promoting K-12 Student Achievement at Military- | The DoDEA Educational Partnership Grant Program provide | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.558 | Department of Defense Impact Aid (Supplement, CWSD, | Reimbursement to local educational agencies (LEAs) for education | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.560 | DOD, NDEP, DOTC-STEM Education Outreach | To obtain support for the management, development, and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.579 | Language Training Center | The Language Training Center Program is a DOD-funded initiative | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.599 | Congressionally Directed Assistance | To implement Congressionally directed assistance for | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.600 | Community Investment | To provide assistance authorized by statute. | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.604 | Community Economic Adjustment Assistance for Reductions in | To provide assistance to State and local governments affected | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.607 | Community Economic Adjustment Assistance for Realignment or | Assist States and local governments to: plan and carry out | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.610 | Community Economic Adjustment Assistance for Compatible Use and | Provide technical and financial assistance to state and local | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.611 | Community Economic Adjustment Assistance for Reductions in | Assist States and local governments to plan and carry out | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.614 | Community Economic Adjustment Assistance for Advance Planning | Assist State and local governments to lessen an area's dependence | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.615 | Research and Technical Assistance | To make awards to, or conclude cooperative agreements with States | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.617 | Economic Adjustment Assistance for State Governments | To provide technical and financial assistance to a State, or an entity | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.618 | Community Economic Adjustment Assistance for Establishment or | Assist States and local governments to: plan and carry out local | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.620 | Troops to Teachers Grant Program | The goal is to facilitate employment of eligible members of the armed | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.630 | Basic, Applied, and Advanced Research in Science and | To: (1) Support basic, applied, or advanced research in | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.631 | Science, Technology, Engineering and Mathematics (STEM) | To partner with like-minded organizations in managing the SMART | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.632 | Legacy Resource Management Program | The mission of the DoD Legacy Program is to provide coordinated, | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.740 | Past Conflict Accounting | The United States has made a sacred promise to its citizens that it will | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.750 | Uniformed Services University Medical Research Projects | The mission of the Uniformed Services University of Health | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.777 | Defense Production Act Title III (DPA Title III) | To create, maintain, protect, expand, or restore domestic | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.800 | Air Force Defense Research Sciences Program | To maintain technological superiority in the scientific areas | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.801 | Air Force Academy Athletic Programs | To operate and support the United States Air Force Academy athletic | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.810 | Air Force Medical Research and Development | To enhance the health, safety, readiness, and performance of Air | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.840 | Civil Air Patrol Program | The purposes of the Civil Air Patrol are: to encourage and aid | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.900 | Language Grant Program | STARTALK is a federal grant program that provides funding and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.901 | Mathematical Sciences Grants | 1. The NSA grants program seeks to stimulate new and | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.902 | Information Security Grants | The DoD Cyber Service Academy; formerly the DoD Cyber Scholarship | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.903 | GenCyber Grants Program | The GenCyber Program provides summer cybersecurity camp | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.905 | CyberSecurity Core Curriculum | To meet future national security challenges, the NSA (and other DoD | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.910 | Research and Technology Development | To support and stimulate basic research, applied | https:/ / sam.g | https:/ / www. |
| Department of Defense | | 12.987 | Upper San Pedro Partnership Support | To assist in the execution of the Upper San Pedro | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.002 | Adult Education - Basic Grants to States | To fund local programs of adult education and literacy services, | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Education | | 84.004 | Civil Rights Training and Advisory Services (also known as Equity | To provide technical assistance and training services to school | https:// sam.g | https:// www. |
| Department of Education | | 84.007 | Federal Supplemental Educational Opportunity Grants | To provide need-based grant aid to eligible undergraduate | https:// sam.g | https:// www. |
| Department of Education | | 84.010 | Title I Grants to Local Educational Agencies | To help local educational agencies (LEAs) improve | https:// sam.g | https:// www. |
| Department of Education | | 84.011 | Migrant Education State Grant Program | To assist States in ensuring that migratory children have the | https:// sam.g | https:// www. |
| Department of Education | | 84.013 | Title I State Agency Program for Neglected and Delinquent Children | To help provide educational continuity for neglected and | https:// sam.g | https:// www. |
| Department of Education | | 84.015 | National Resource Centers Program for Foreign Language and | Centers: To promote instruction in modern foreign languages and | https:// sam.g | https:// www. |
| Department of Education | | 84.016 | Undergraduate International Studies and Foreign Language | The Undergraduate International Studies and Foreign Language | https:// sam.g | https:// www. |
| Department of Education | | 84.017 | International Research and Studies | To improve foreign language, area, and other international | https:// sam.g | https:// www. |
| Department of Education | | 84.018 | Overseas Programs Special Bilateral Projects | To increase mutual understanding and knowledge between the | https:// sam.g | https:// www. |
| Department of Education | | 84.019 | Overseas Programs - Faculty Research Abroad | To contribute to the development and improvement of modern | https:// sam.g | https:// www. |
| Department of Education | | 84.021 | Overseas Programs - Group Projects Abroad | To contribute to the development and improvement of the | https:// sam.g | https:// www. |
| Department of Education | | 84.022 | Overseas Programs - Doctoral Dissertation Research Abroad | To provide opportunities for graduate students to engage in full-time | https:// sam.g | https:// www. |
| Department of Education | | 84.027 | Special Education Grants to States | To provide grants to States to assist them in providing special | https:// sam.g | https:// www. |
| Department of Education | | 84.031 | Higher Education Institutional Aid | To help eligible colleges and universities to strengthen their | https:// sam.g | https:// www. |
| Department of Education | | 84.033 | Federal Work-Study Program | To provide part-time employment to eligible postsecondary students | https:// sam.g | https:// www. |
| Department of Education | | 84.040 | Impact Aid Facilities Maintenance | To maintain school facilities used to serve federally connected | https:// sam.g | https:// www. |
| Department of Education | | 84.041 | Impact Aid | To provide financial assistance to local educational agencies | https:// sam.g | https:// www. |
| Department of Education | | 84.042 | TRIO Student Support Services | To provide supportive services to disadvantaged college | https:// sam.g | https:// www. |
| Department of Education | | 84.044 | TRIO Talent Search | To identify qualified disadvantaged youths with potential for | https:// sam.g | https:// www. |
| Department of Education | | 84.047 | TRIO Upward Bound | To generate skills and motivation necessary for success in education | https:// sam.g | https:// www. |
| Department of Education | | 84.048 | Career and Technical Education -- Basic Grants to States | To develop more fully the academic knowledge and | https:// sam.g | https:// www. |
| Department of Education | | 84.051 | Career and Technical Education -- National Programs | To provide support, directly or through grants, contracts, or | https:// sam.g | https:// www. |
| Department of Education | | 84.060 | Indian Education Grants to Local Educational Agencies | To address (1) the unique educational and culturally related | https:// sam.g | https:// www. |
| Department of Education | | 84.063 | Federal Pell Grant Program | To provide eligible undergraduate postsecondary students | https:// sam.g | https:// www. |
| Department of Education | | 84.066 | TRIO Educational Opportunity Centers | To provide information on financial and academic assistance | https:// sam.g | https:// www. |
| Department of Education | | 84.101 | Career and Technical Education - Grants to Native Americans and | To make grants, cooperative agreements, or enter | https:// sam.g | https:// www. |
| Department of Education | | 84.103 | TRIO Staff Training Program | To provide training for staff and leadership personnel employed in, | https:// sam.g | https:// www. |
| Department of Education | | 84.116 | Fund for the Improvement of Postsecondary | To provide assistance to support institutional reforms and innovative | https:// sam.g | https:// www. |
| Department of Education | | 84.120 | Minority Science and Engineering Improvement | To (1) effect long-range improvement in science and engineering | https:// sam.g | https:// www. |
| Department of Education | | 84.126 | Rehabilitation Services Vocational Rehabilitation Grants to | To assist States in operating comprehensive, | https:// sam.g | https:// www. |
| Department of Education | | 84.129 | Rehabilitation Long-Term Training | To support projects to provide academic training in areas of | https:// sam.g | https:// www. |
| Department of Education | | 84.141 | Migrant Education High School Equivalency Program | To assist students who are engaged, or whose immediate family is | https:// sam.g | https:// www. |
| Department of Education | | 84.144 | Migrant Education Coordination Program | To provide financial incentives to State Educational Agencies | https:// sam.g | https:// www. |
| Department of Education | | 84.145 | Federal Real Property Assistance Program | To convey surplus Federal Real Property for educational | https:// sam.g | https:// www. |
| Department of Education | | 84.149 | Migrant Education College Assistance Migrant Program | To assist students who are engaged, or whose immediate family is | https:// sam.g | https:// www. |
| Department of Education | | 84.153 | Business and International Education Projects | To promote innovation and improvement in international business | https:// sam.g | https:// www. |
| Department of Education | | 84.160 | Training Interpreters for Individuals who are Deaf and Individuals | To support projects that increase the numbers and improve the skills of | https:// sam.g | https:// www. |
| Department of Education | | 84.161 | Rehabilitation Services Client Assistance Program | To establish and carry out client assistance programs in each State | https:// sam.g | https:// www. |
| Department of Education | | 84.165 | Magnet Schools Assistance | To provide grants to eligible local educational agencies | https:// sam.g | https:// www. |
| Department of Education | | 84.173 | Special Education Preschool Grants | To provide grants to States to assist them in providing special | https:// sam.g | https:// www. |
| Department of Education | | 84.177 | Rehabilitation Services Independent Living Services for Older | To provide any independent living services that are | https:// sam.g | https:// www. |
| Department of Education | | 84.181 | Special Education-Grants for Infants and Families | To provide grants to States to assist them to implement and maintain | https:// sam.g | https:// www. |
| Department of Education | | 84.184 | School Safely National Activities | To improve students' safety and well-being during and after the | https:// sam.g | https:// www. |
| Department of Education | | 84.187 | Supported Employment Services for Individuals with the Most | To assist States in developing collaborative programs with | https:// sam.g | https:// www. |
| Department of Education | | 84.191 | Adult Education National Leadership Activities | To support applied research, development, demonstration, | https:// sam.g | https:// www. |
| Department of Education | | 84.196 | Education for Homeless Children and Youth | To ensure that all homeless children and youth have equal | https:// sam.g | https:// www. |
| Department of Education | | 84.200 | Graduate Assistance in Areas of National Need | To provide fellowships through graduate academic departments, | https:// sam.g | https:// www. |
| Department of Education | | 84.206 | Javits Gifted and Talented Students Education | To promote and initiate a coordinated program of evidence-based | https:// sam.g | https:// www. |
| Department of Education | | 84.215 | Innovative Approaches to Literacy; Promise Neighborhoods; Full- | The Innovative Approaches to Literacy program supports high- | https:// sam.g | https:// www. |
| Department of Education | | 84.217 | TRIO McNair Post-Baccalaureate Achievement | To provide grants for institutions of higher education to prepare | https:// sam.g | https:// www. |
| Department of Education | | 84.220 | Centers for International Business Education | To provide a comprehensive university approach to | https:// sam.g | https:// www. |
| Department of Education | | 84.229 | Language Resource Centers | To provide grants for establishing, strengthening, and | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Education | | 84.235 | Rehabilitation Services Demonstration and Training Programs | To provide financial assistance to projects and demonstrations for | https:// sam.g | https:// www. |
| Department of Education | | 84.240 | Program of Protection and Advocacy of Individual Rights | To provide grants for States, and to the eligible system serving | https:// sam.g | https:// www. |
| Department of Education | | 84.245 | Tribally Controlled Postsecondary Career and Technical | To make grants to eligible tribally controlled | https:// sam.g | https:// www. |
| Department of Education | | 84.246 | Rehabilitation Short-Term Training | To support special seminars, institutes, workshops, and other | https:// sam.g | https:// www. |
| Department of Education | | 84.250 | American Indian Vocational Rehabilitation Services | To make grants to the governing bodies of Indian tribes (and | https:// sam.g | https:// www. |
| Department of Education | | 84.259 | Native Hawaiian Career and Technical Education | To make grants to community-based organizations primarily | https:// sam.g | https:// www. |
| Department of Education | | 84.263 | Innovative Rehabilitation Training | This program is designed to: (a) Develop new types of | https:// sam.g | https:// www. |
| Department of Education | | 84.264 | Rehabilitation Training Technical Assistance Centers | To increase the number and quality of employment outcomes | https:// sam.g | https:// www. |
| Department of Education | | 84.268 | Federal Direct Student Loans | To provide loan capital directly from the Federal government to | https:// sam.g | https:// www. |
| Department of Education | | 84.274 | American Overseas Research Centers | To enable American Overseas Research Centers, that are | https:// sam.g | https:// www. |
| Department of Education | | 84.282 | Charter Schools | The program supports startup of new charter schools and the | https:// sam.g | https:// www. |
| Department of Education | | 84.283 | Comprehensive Centers | This program supports no fewer than 20 comprehensive centers | https:// sam.g | https:// www. |
| Department of Education | | 84.287 | Twenty-First Century Community Learning Centers | To provide opportunities for communities to establish or expand | https:// sam.g | https:// www. |
| Department of Education | | 84.295 | Ready-To-Learn Television | To facilitate student academic achievement by developing | https:// sam.g | https:// www. |
| Department of Education | | 84.299 | Indian Education -- Special Programs for Indian Children | Funds support two grant programs, (1) Demonstration Grants | https:// sam.g | https:// www. |
| Department of Education | | 84.305 | Education Research, Development and Dissemination | To support research activities that improve the quality of education | https:// sam.g | https:// www. |
| Department of Education | | 84.310 | Statewide Family Engagement Centers | To provide financial support to statewide organizations that | https:// sam.g | https:// www. |
| Department of Education | | 84.315 | Traditionally Underserved Populations | To make awards to minority entities and Indian tribes to carry out | https:// sam.g | https:// www. |
| Department of Education | | 84.323 | Special Education - State Personnel Development | To assist State educational agencies in reforming and | https:// sam.g | https:// www. |
| Department of Education | | 84.324 | Research in Special Education | To support scientifically rigorous research contributing to the | https:// sam.g | https:// www. |
| Department of Education | | 84.325 | Special Education - Personnel Development to Improve Services | The purposes of this program are to (1) help address State-identified | https:// sam.g | https:// www. |
| Department of Education | | 84.326 | Special Education Technical Assistance and Dissemination to | The purpose of the Technical Assistance and Dissemination to | https:// sam.g | https:// www. |
| Department of Education | | 84.327 | Special Education Educational Technology Media, and Materials for | The purposes of the Educational Technology, Media, and Materials for | https:// sam.g | https:// www. |
| Department of Education | | 84.328 | Special Education Parent Information Centers | The purpose of the program is to ensure that parents of children | https:// sam.g | https:// www. |
| Department of Education | | 84.329 | Special Education Studies and Evaluations | To assess progress in implementing the Individuals with | https:// sam.g | https:// www. |
| Department of Education | | 84.334 | Gaining Early Awareness and Readiness for | Provides 6-or 7-year grants to States and Partnerships to provide | https:// sam.g | https:// www. |
| Department of Education | | 84.335 | Child Care Access Means Parents in School | To support the participation of low-income parents in | https:// sam.g | https:// www. |
| Department of Education | | 84.336 | Teacher Quality Partnership Grants | To improve student achievement; improve the quality of new and | https:// sam.g | https:// www. |
| Department of Education | | 84.351 | Arts in Education | The Arts in Education program promotes arts education for students, | https:// sam.g | https:// www. |
| Department of Education | | 84.354 | Credit Enhancement for Charter School Facilities | To provide grants to eligible entities to leverage funds through | https:// sam.g | https:// www. |
| Department of Education | | 84.356 | Alaska Native Educational Programs | To support projects that recognize and address the unique educational | https:// sam.g | https:// www. |
| Department of Education | | 84.358 | Rural Education | To provide financial assistance to rural districts to carry out | https:// sam.g | https:// www. |
| Department of Education | | 84.362 | Native Hawaiian Education | To develop innovative educational programs to assist Native | https:// sam.g | https:// www. |
| Department of Education | | 84.365 | English Language Acquisition State Grants | To help ensure that English learners (ELs), including immigrant | https:// sam.g | https:// www. |
| Department of Education | | 84.367 | Supporting Effective Instruction State Grants (formerly Improving | To provide grants to State Educational Agencies (SEAs), and, | https:// sam.g | https:// www. |
| Department of Education | | 84.368 | Competitive Grants for State Assessments | The purpose of the program is to support efforts to: (1) improve | https:// sam.g | https:// www. |
| Department of Education | | 84.369 | Grants for State Assessments and Related Activities | The purpose of this program is: to pay the costs of developing the | https:// sam.g | https:// www. |
| Department of Education | | 84.370 | DC Opportunity Scholarship Program | To provide low-income parents residing in the District of Columbia with | https:// sam.g | https:// www. |
| Department of Education | | 84.371 | Comprehensive Literacy Development | The objective of the Comprehensive Literacy Development | https:// sam.g | https:// www. |
| Department of Education | | 84.372 | Statewide Longitudinal Data Systems | These grants are intended to enable State educational | https:// sam.g | https:// www. |
| Department of Education | | 84.373 | Special Education Technical Assistance on State Data Collection | To provide technical assistance, where needed, to improve the | https:// sam.g | https:// www. |
| Department of Education | | 84.374 | Teacher and School Leader Incentive Grants (formerly the Teacher | To help eligible entities develop, implement, improve, or expand | https:// sam.g | https:// www. |
| Department of Education | | 84.379 | Teacher Education Assistance for College and Higher Education | To provide annual grants of up to $4,000 to eligible | https:// sam.g | https:// www. |
| Department of Education | | 84.380 | Special Education - Special Olympics Education Programs | This program promotes the expansion of Special Olympics and | https:// sam.g | https:// www. |
| Department of Education | | 84.382 | Strengthening Minority-Serving Institutions | To strengthen Predominantly Black Institutions (PBI); Asian | https:// sam.g | https:// www. |
| Department of Education | | 84.403 | Consolidated Grant to the Outlying Areas | To make an annual consolidated grant to assist an Insular Area in | https:// sam.g | https:// www. |
| Department of Education | | 84.407 | Transition Programs for Students with Intellectual Disabilities | Funding under this program supports competitive grants to | https:// sam.g | https:// www. |
| Department of Education | | 84.408 | Postsecondary Education Scholarships for Veteran's | To provide eligible veteran's dependent undergraduate | https:// sam.g | https:// www. |
| Department of Education | | 84.411 | Education Innovation and Research (formerly Investing in Innovation | To support the creation, development, implementation, | https:// sam.g | https:// www. |
| Department of Education | | 84.415 | Indian Education National Activities (State Tribal Education | The objectives of the State Tribal Education Partnership (STEP) | https:// sam.g | https:// www. |
| Department of Education | | 84.417 | Directed Grants and Awards | Objectives of the programs vary based on the directed grant | https:// sam.g | https:// www. |
| Department of Education | | 84.421 | Disability Innovation Fund (DIF) | To support innovative activities aimed at improving the outcomes | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Education | | 84.422 | American History and Civics Education | The program supports two types of grants: American History and | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.423 | Supporting Effective Educator Development Program | The purpose of the SEED program is to (1) Support pathways that | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.424 | Student Support and Academic Enrichment Program | To improve studentâ€™s academic achievement by | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.425 | Education Stabilization Fund | To prevent, prepare for, and respond to the coronavirus COVID-19 | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.426 | Randolph-Sheppard â€“ Financial Relief and Restoration Payments | To provide financial relief and restoration payments to offset | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.428 | Augustus F. Hawkins Centers of Excellenceâ€”Teacher | This program focuses on the various aspects of the teacher | https:/ / sam.g | https:/ / www. |
| Department of Education | | 84.429 | Education Evaluation and Technical Assistance Grants | To support education evaluation and technical assistance related to | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.005 | Environmental Monitoring, Independent Research, | Provides technical and financial assistance to State of New Mexico | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.008 | Cybersecurity, Energy Security & Emergency Response (CESER) | The Office of Cybersecurity, Energy Security, and | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.009 | Molybdenum-99 Program | In 2012, Congress passed the American Medical Isotopes | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.010 | Office of Technology Transitions (OTT)-Technology | The Mission of the Office of Technology Transitions (OTT) is to | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.012 | Artificial Intelligence and Technology Office Financial Assistance | The mission of the Artificial Intelligence & Technology Office | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.041 | State Energy Program | The purpose of this program is to increase market transformation | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.042 | Weatherization Assistance for Low-Income Persons | To improve home energy efficiency for low-income families | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.049 | Office of Science Financial Assistance Program | SC is the Nationâ€™s largest Federal sponsor of basic research in the | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.057 | University Coal Research | To educate and train the next generation of engineers and scientists | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.065 | Nuclear Legacy Cleanup Program | For nuclear waste disposal activities to carry out the purposes | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.086 | Conservation Research and Development | The goal of this program is to conduct a balanced, long-term | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.087 | Renewable Energy Research and Development | The goal of this program is to conduct balanced research and | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.089 | Fossil Energy Research and Development | The Office of Fossil Energy and Carbon Managementâ€™s | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.092 | Remedial Action and Waste Management | An objective of the Oak Ridge Office of Environmental | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.102 | Student Driven Research and Long Term Monitoring of | An objective of the Oak Ridge Office of Environmental | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.104 | Environmental Remediation and Waste Processing and | The Environmental Management Research and Development | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.106 | Transport of Transuranic Wastes to the Waste Isolation Pilot | To enlist cooperation among the Tribal and the Southern, Western, | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.108 | Epidemiology and Other Health Studies Financial Assistance | To provide financial support for research, education, conferences, | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.112 | Stewardship Science Grant Program | (1) To grow the U.S. scientific community through university | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.113 | Defense Nuclear Nonproliferation Research | To conduct basic and applied research and development that | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.117 | Energy Efficiency and Renewable Energy Information | The Department of Energy (DOE) seeks to provide financial | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.119 | State Energy Program Special Projects | To allow States to submit proposals to implement specific | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.121 | Nuclear Energy Research, Development and Demonstration | The Department of Energy (DOE) promotes nuclear energy as a | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.122 | Electricity Research, Development and Analysis | The Office of Electricity (OE) leads the Departmentâ€™s | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.123 | National Nuclear Security Administration (NNSA) Minority | The Minority Serving Institution Partnership Program's primary | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.124 | Predictive Science Academic Alliance Program | (1) To focus on development and demonstration of | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.126 | Federal Loan Guarantees for Innovative Energy | For Title XVII Loan Guarantee program under Section 1703 of | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.128 | Energy Efficiency and Conservation Block Grant Program | The program provides financial and technical assistance to assist | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.135 | Advanced Research Projects Agency - Energy | To support the Presidentâ€™s National Objectives for | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.136 | Long-Term Surveillance and Maintenance | The objectives of the Office of Legacy Management are to | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.137 | Minority Economic Impact | The program objectives are to enhance the participation and | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.138 | State Heating Oil and Propane Program | State Heating Oil and Propane Program (SHOPP) is a joint data | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.140 | Los Alamos National Laboratory - Fire Protection | The general objective of this Cooperative Agreement is to provide | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.210 | Global Material Security | The objective of the Global Material Security Program is to enhance | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.214 | Environmental Monitoring/Cleanup, Cultural and Resource | Provides technical and financial assistance to State and local | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.250 | Energy Policy and Systems Analysis | The objective is to develop decision-relevant data and | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.251 | National Laboratory Jobs Apprenticeship for Complete and | The ACCESS Program is a pre-apprenticeship or apprenticeship | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.252 | Legally-directed Academic Programs, Workforce Development | Academic Programs receives direction from Congress to send funds | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.253 | Manufacturing and Energy Supply Chain Demonstrations and | Strengthen and secure domestic manufacturing and energy supply | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.254 | Grid Infrastructure Deployment and Resilience | The Grid Deployment Office (GDO) works to catalyze the | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.255 | Clean Energy Demonstrations | The mission of the Office of Clean Energy Demonstrations | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.256 | Environmental Monitoring/Cleanup, Cultural and Resource | Provides technical and financial assistance to the State of Tennessee | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.258 | Glovebox Manufacturing Expansion Initiative | The objective of the Glovebox Manufacturing | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.260 | County of Nye, Nye County Sheriffâ€™s Office Law Enforcement | The objective of the County of Nye, Nye County Sheriffâ€™s | https:/ / sam.g | https:/ / www. |
| Department of Energy | | 81.279 | Law Enforcement Support of Pantex Plant | The objective to provide reasonable and appropriate law | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Energy | | 81.300 | Grid Deployment Office - Other Direct Funding Mechanisms/Identified | The Grid Deployment Office (GDO) works to catalyze the | https:// sam.g | https:// www. |
| Department of Energy | | 81.302 | Inertial Confinement Fusion Program University Assistance | The goal of the Inertial Confinement Fusion (ICF) program is to | https:// sam.g | https:// www. |
| Department of Energy | | 81.505 | Nonproliferation and Arms Control | Nonproliferation and Arms Control (NPAC): NNSAâ€™s Office of | https:// sam.g | https:// www. |
| Department of Energy | | 81.884 | Nuclear Counterterrorism and Incident Response | To assist nonprofit, non-government, professional | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.007 | Public Awareness Campaigns on Embryo Adoption | To increase public awareness of embryo adoption and donation | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.008 | Medical Reserve Corps Small Grant Program | To support the development of Medical Reserve Corps (MRC) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.011 | National Organizations for State and Local Officials | The purpose of the HRSA National Organizations of State | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.019 | Technical Assistance and Provision for Foreign Hospitals and | To provide support for a quality of care improvement project | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.041 | Special Programs for the Aging, Title VII, Chapter 3, Programs for | To support activities to develop, strengthen, and carry out programs | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.042 | Special Programs for the Aging, Title VII, Chapter 2, Long Term | The principal role of this Ombudsman Program is to investigate and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.043 | Special Programs for the Aging, Title III, Part D, Disease Prevention | To develop or strengthen preventive health service and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.044 | Special Programs for the Aging, Title III, Part B, Grants for Supportive | To encourage State Agencies on Aging and Area Agencies on Aging | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.045 | Special Programs for the Aging, Title III, Part C, Nutrition Services | To provide grants to States and U.S. Territories to support | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.047 | Special Programs for the Aging, Title VI, Part A, Grants to Indian | To promote the delivery of supportive services, including nutrition | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.048 | Special Programs for the Aging, Title IV, and Title II, Discretionary | To support the development and testing of innovative | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.051 | Alzheimer's Disease Demonstration Grants to States | To expand the availability of diagnostic and support services for | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.052 | National Family Caregiver Support, Title III, Part E | To assist States, Territories in providing multifaceted systems of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.053 | Nutrition Services Incentive Program | To reward effective performance by States and Tribes in the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.054 | National Family Caregiver Support, Title VI, Part C, Grants To | To assist Indian Tribal and Native Hawaiian Organizations in | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.059 | Training in General, Pediatric, and Public Health Dentistry | The purpose of the Training in General, Pediatric, and Public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.060 | Sexual Risk Avoidance Education | The purpose of this program is to promote sexual risk avoidance | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.061 | Innovations in Applied Public Health Research | To foster the new knowledge necessary to develop, enhance, and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.065 | Laboratory Leadership, Workforce Training and Management | This program will increase the capacity and capability of state | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.066 | State Vital Statistics Improvement Program | To enhance the performance of the National Vital Statistics | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.067 | Global AIDS | The U.S. President's Emergency Plan for AIDS Relief (PEPFAR) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.068 | Chronic Diseases: Research, Control, and Prevention | To assist State and local health agencies, health related | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.069 | Public Health Emergency Preparedness | Public health emergency preparedness and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.070 | Environmental Public Health and Emergency Response | To bring public health and epidemiologic principles together to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.071 | Medicare Enrollment Assistance Program | To provide enhanced outreach to eligible Medicare beneficiaries | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.072 | Lifespan Respite Care Program | To expand and enhance respite care services to family caregivers; | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.073 | Birth Defects and Developmental Disabilities - Prevention | To work with State health agencies, universities, and public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.077 | Family Smoking Prevention and Tobacco Control Act Regulatory | The Family Smoking Prevention and Tobacco Control Act (TCA) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.078 | Strengthening Emergency Care Delivery in the United | To assist in planning or developing emergency care health information | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.079 | Cooperative Agreements to Promote Adolescent Health | Funding is to improve the health and well-being of our | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.080 | Blood Disorder Program: Prevention, Surveillance, and | To work with State health agencies and other public, private, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.081 | ASPR Science Preparedness and Response Grants | To conduct preparedness and response research that | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.083 | Prevention of Disease, Disability, and Death through Immunization | The purpose of this program is to strengthen capacity to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.084 | Prevention of Disease, Disability, and Death by Infectious Diseases | The purpose of this program is to prevent disease, disability and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.085 | Research on Research Integrity | This program supports projects, conferences, and workshops that | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.086 | Healthy Marriage Promotion and Responsible | Under the Family, Relationship, and Marriage Education | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.087 | Enhance Safety of Children Affected by Substance Abuse | To provide, through interagency collaboration, an | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.088 | Advancing System Improvements for Key Issues in Women's | To promote program and systems innovation, policy and performance | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.089 | Emergency System for Advance Registration of Volunteer Health | To establish and maintain a national interoperable network of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.090 | Guardianship Assistance | The objective of the Guardianship Assistance Program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.092 | Affordable Care Act (ACA) Personal Responsibility | The purpose of this program is to support projects that educate | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.097 | Strengthening the Nation's Public Health System through a | This project will support the operations and continuous | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.099 | Collaboration With the World Health Organization and its | On September 19, 2011, the Government of the United States of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.103 | Food and Drug Administration Research | To assist institutions and organizations, to establish, expand, and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.104 | Comprehensive Community Mental Health Services for | To implement community systems of care to provide | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.107 | Area Health Education Centers | The Area Health Education Centers (AHEC) Program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.110 | Maternal and Child Health Federal Consolidated Programs | The Special Projects of Regional and National Significance Program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.113 | Environmental Health | To foster understanding of human health effects of exposure to | https:// sam.g | https:// www. |

| | | | | | |
|---|---|---|---|---|---|
| Department of Health and Human Services | 93.116 | Project Grants and Cooperative Agreements for | This program assists State, local health agencies, political | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.117 | Preventive Medicine Residency | Grants are intended to promote postgraduate medical education in | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.118 | Acquired Immunodeficiency Syndrome (AIDS) | To develop and implement HIV prevention programs of | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.121 | Oral Diseases and Disorders Research | NIDCR extramural research provides research funds to | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.123 | Health Professions Pre-graduate Scholarship Program for Indians | To provide scholarships to American Indians and Alaska Natives for the | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.124 | Nurse Anesthetist Traineeship | The purpose of the Nurse Anesthetist Traineeship (NAT) | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.127 | Emergency Medical Services for Children | To support demonstration projects for the expansion and | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.129 | Technical and Non-Financial Assistance to Health Centers | State and Regional Primary Care Associations (PCAs) | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.130 | Cooperative Agreements to States/ Territories for the | To coordinate the local, State, and Federal resources contributing | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.134 | Grants to Increase Organ Donation | Living Organ Donation Reimbursement Program: The goal of | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.135 | Centers for Research and Demonstration for Health Promotion and | The funded Prevention Research Centers aims are to: 1. Establish, | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.136 | Injury Prevention and Control Research and State and Community | Through its programs, the Injury Center works with national | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.137 | Community Programs to Improve Minority Health | Support public and private evidence-based interventions and | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.138 | Protection and Advocacy for Individuals with Mental | To enable the expansion of the Protection and | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.140 | Intramural Research Training Award | The National Institutes of Health (NIH) IRTA Traineeships/ | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.142 | NIEHS Hazardous Waste Worker Health and Safety Training | To provide cooperative agreements and project grant support for the | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.143 | NIEHS Superfund Hazardous Substances_Basic | To support innovate research and training through multi-project, | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.145 | HIV-Related Training and Technical Assistance | National Training and Technical Assistance Cooperative | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.150 | Projects for Assistance in Transition from Homelessness (PATH) | To provide financial assistance to States to support services for | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.153 | Coordinated Services and Access to Research for Women, | Part D (base): The purpose of this program is to provide family- | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.155 | Rural Health Research Centers | The Rural Health Research Center program supports | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.157 | Centers of Excellence | The goal of this program is to assist eligible schools in | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.161 | Health Program for Toxic Substances and Disease Registry | To work closely with State, local, and other Federal agencies to | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.162 | National Health Service Corps Loan Repayment | The purpose of the National Health Service Corps (NHSC) Loan | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.164 | Indian Health Service Educational Loan Repayment | To ensure that the Indian Health Service (IHS) has an adequate | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.165 | Grants to States for Loan Repayment | To increase the availability of primary health care clinicians in | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.172 | Human Genome Research | NHGRI supports the development of methods, resources and | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.173 | Research Related to Deafness and Communication | To investigate solutions to problems directly relevant to individuals | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.178 | Nursing Workforce Diversity | The objective of the NWD program is to increase the diversity of | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.184 | Disabilities Prevention | (1) Support National Centers on Disability to develop, implement, | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.185 | Immunization Research, Demonstration, Public | To assist states, political subdivisions of states, and other public and | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.186 | National Research Service Award in Primary Care Medicine | The purpose of the Ruth L. Kirschstein National Research | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.187 | Undergraduate Scholarship Program for Individuals from | To provide service-conditioned scholarships to | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.191 | Graduate Psychology Education | The purpose of the Graduate Psychology Education Program is | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.193 | Urban Indian Health Services | Grants provide health-related services to Urban Indians including: | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.197 | Childhood Lead Poisoning Prevention Projects, State and | To (1) Develop and/or enhance a surveillance system that monitors all | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.210 | Tribal Self-Governance Program: IHS Compacts/Funding | To allow Federally recognized Indian Tribes to enter into an | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.211 | Telehealth Programs | The purpose of the Telehealth Network Program (TNGP) is to | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.213 | Research and Training in Complementary and Integrative Health | NCCIH is the lead Federal agency for scientific research on | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.217 | Family Planning Services | To establish and operate voluntary family planning services | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.220 | National Institutes of Health Intramural Loan Repayment Program | To recruit and retain health professionals performing research in | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.223 | Development and Coordination of Rural Health Services | The purpose of this program is to serve as a national clearinghouse | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.224 | Health Center Program (Community Health Centers, Migrant Health | To improve the health of the Nation's underserved | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.225 | National Research Service Awards Health Services Research | To provide predoctoral and postdoctoral training opportunities in | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.226 | Research on Healthcare Costs, Quality and Outcomes | To support research and evaluations, demonstration projects, | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.228 | Indian Health Service, Health Management Development Program | To develop and enhance management infrastructure of | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.231 | Epidemiology Program | The purpose of this program is to fund Tribes, Tribal and urban | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.232 | Loan Repayment Program for General Research | This listing is no longer in use. To recruit and retain health | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.233 | National Center on Sleep Disorders Research | The National Center on Sleep Disorders Research (NCSDR) | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.234 | Traumatic Brain Injury State Demonstration Grant Program | To create and strengthen a system of services and supports | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.235 | Title V State Sexual Risk Avoidance Education (Title V State | The purpose of the Title V State SRAE program is to provide messages | https:// sam.g | https:// www. |
| Department of Health and Human Services | 93.236 | Grants to States to Support Oral Health Workforce Activities | Grants to States to Support Oral Health Workforce Activities | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.237 | Special Diabetes Program for Indians Diabetes Prevention | To promote improved health care among American Indians/ | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.239 | Policy Research and Evaluation Grants | The goals of this listing are to improve the effectiveness of public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.240 | State Capacity Building | To fulfill the mandated objectives of the Comprehensive | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.241 | State Rural Hospital Flexibility Program | The Rural Hospital Flexibility Program (Flex) enables state | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.242 | Mental Health Research Grants | The mission of the National Institute of Mental Health (NIMH) is | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.243 | Substance Abuse and Mental Health Services Projects of Regional | SAMHSA was given the authority to address priority substance | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.247 | Advanced Nursing Education Workforce Grant Program | ANEW: The purpose of the Advanced Nursing Education Workforce | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.250 | Geriatric Academic Career Awards Department of Health | The purpose of the GACA program is to support the career | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.251 | Early Hearing Detection and Intervention | The Early Hearing Detection and Intervention (EHDI) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.253 | Poison Center Support and Enhancement Grant | The objectives are (1) to support Poison Control Centers efforts | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.255 | Children's Hospitals Graduate Medical Education Payment | The purpose of the CHGME Payment Program is to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.257 | Grants for Education, Prevention, and Early Detection of Radiogenic | The Radiation Exposure Screening and Education Program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.260 | Family Planning Personnel Training | To provide job specific training for personnel working in Title X | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.262 | Occupational Safety and Health Program | To (1) recognize new hazards; (2) define the magnitude of the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.264 | Nurse Faculty Loan Program (NFLP) | The Nurse Faculty Loan Program (NFLP) seeks to increase the number | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.266 | Health Systems Strengthening and HIV/ AIDS Prevention, Care | Fund human resources for health, quality improvement and other | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.268 | Immunization Cooperative Agreements | To assist states and communities in establishing and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.269 | Complex Humanitarian Emergency and War-Related Injury Public | To bring public health and epidemiologic principles to the aid of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.270 | Viral Hepatitis Prevention and Control | Program activities support integrated viral hepatitis surveillance | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.273 | Alcohol Research Programs | To develop a sound fundamental knowledge base which can be | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.276 | Drug-Free Communities Support Program Grants | The purpose of the DFC Support Program is to establish and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.279 | Drug Use and Addiction Research Programs | To support basic, clinical, translational, and implementation | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.280 | National Institutes of Health Extramural Loan Repayment Program | To attract and retain health professionals to research careers by | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.283 | Centers for Disease Control and Prevention Investigations and | To assist State and local health authorities and other health related | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.284 | Injury Prevention Program for American Indians and Alaskan | To improve the quality of the health of American Indians and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.286 | Discovery and Applied Research for Technological | To support hypothesis-, design-, technology-, or device-driven research | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.288 | National Health Service Corps Scholarship Program | The purpose of the NHSC SP is to enter into contracts with | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.291 | Surplus Property Utilization | To convey or lease surplus Federal real properties made | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.297 | Teenage Pregnancy Prevention Program | The purpose of the Teenage Pregnancy Prevention (TPP) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.300 | National Health Center for Health Workforce Analysis | To provide for the development of information describing | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.301 | Small Rural Hospital Improvement Grant Program | The Small Rural Hospital Improvement Program supports | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.303 | Nurse Corps Scholarship | The Nurse Corps Scholarship Program's objective is to increase | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.304 | Racial and Ethnic Approaches to Community Health | The purpose of this program is to fund National Networks to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.307 | Minority Health and Health Disparities Research | To support basic, clinical, social, and behavioral research; | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.310 | Trans-NIH Research Support | This listing covers multiple offices in the NIH Office of the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.313 | NIH Office of Research on Women's Health | ORWH will identify projects on women's health that should be | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.314 | Early Hearing Detection and Intervention Information System | The objective of this program is to assist EHDI programs in | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.315 | Rare Disorders: Research, Surveillance, Health Promotion, and | To (1) Promote public health capacity by conducting research to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.316 | Public Health Preparedness and Response Science, | The overall goal of this program is to conduct research and related | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.317 | Emerging Infections Programs | The purpose of the Emerging Infections Programs (EIP) is to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.318 | Protecting and Improving Health Globally: Building and | CDCâ€™s global health efforts are to assist Ministries of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.319 | Outreach Programs to Reduce the Prevalence of Obesity in High Risk | The purpose of this listing is to assist Land-Grant institutions | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.321 | Dietary Supplement Research Program | The NIH Office of Dietary Supplements will identify projects that | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.322 | CDC Partnership: Strengthening Public Health Laboratories | The activities under this cooperative agreement are aligned with the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.323 | Epidemiology and Laboratory Capacity for Infectious Diseases | The purpose of this program is to protect the public health and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.324 | State Health Insurance Assistance Program | To provide information, counseling, and assistance relating to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.325 | Paralysis Resource Center | The Paralysis Resource Center (PRC) grant is awarded to the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.326 | Strengthening Public Health through Surveillance, | CDCâ€™s global health efforts are to assist Ministries of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.327 | Demonstration Grants for Domestic Victims of Human Trafficking | The Office on Trafficking in Persons (OTIP) currently funds | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.332 | Cooperative Agreement to Support Navigators in Federally-facilitated | Each year, the Centers for Medicare & Medicaid Services | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.334 | The Healthy Brain Initiative: Technical Assistance to | The purpose of the listing is to implement public health actions | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.336 | Behavioral Risk Factor Surveillance System | The purpose of this program is to provide assistance to State and | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.341 | Analyses, Research and Studies to Address the Impact of CMSâ€™ | To further CMSâ€™ mission and goals related to providing high | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.342 | Health Professions Student Loans, Including Primary Care | To increase educational opportunities by providing long-term, | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.343 | Public Health Service Evaluation Funds | To evaluate programs and services administered by public | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.344 | Research, Monitoring and Outcomes Definitions for Vaccine | Enhance the work of local communities and their partnerships with | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.345 | Leading Edge Acceleration Projects (LEAP) in Health | Through this notice of funding opportunity (NOFO) ONC seeks to | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.346 | Enhancing the Logical Observation Identifiers Names and Codes | This single source cooperative agreement to Regenstrief, is being | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.347 | Trusted Exchange Framework and Common Agreement | The purpose of this program is to support efforts to advance the | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.348 | Technical Assistance to Increase Tobacco Cessation | To provide technical assistance to state tobacco control | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.349 | Packaging and Spreading Proven Pediatric Weight | The purpose of this program is to increase the availability and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.350 | National Center for Advancing Translational Sciences | NCATS' mission is to turn research observations into health | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.351 | Research Infrastructure Programs | The Office of Research Infrastructure Programs (ORIP) is a program | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.352 | Construction Support | To renovate existing research facilities and build new research | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.353 | 21st Century Cures Act - Beau Biden Cancer Moonshot | To provide support for initiatives funded under the 21st Century Cures | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.354 | Public Health Emergency Response: Cooperative Agreement | The intent of this program is to fund state, local, and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.355 | Public Health Informatics & Technology Workforce | The Office of the National Coordinator for Health Information | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.356 | Head Start Disaster Recovery | Head Start Disaster Recovery provides supplemental funding | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.359 | Nurse Education, Practice Quality and Retention Grants | Mobile Health Training Program (NEPQR-MHTP): The purpose of | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.360 | Biomedical Advanced Research and Development Authority | The purpose of this program is to coordinate the | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.361 | Nursing Research | Nurses understand that improving health and well-being means | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.364 | Nursing Student Loans | To increase educational opportunities by providing long-term, | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.365 | Sickle Cell Treatment Demonstration Program | The objectives of this project is to support the development and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.366 | State Actions to Improve Oral Health Outcomes and Partner | To establish oral health leadership and program guidance, oral health | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.367 | Flexible Funding Model - Infrastructure Development and | Advance efforts for a nationally integrated food safety system | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.368 | 21st Century Cures Act - Precision Medicine Initiative | To provide support for initiatives funded under the 21st Century Cures | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.369 | ACL Independent Living State Grants | To provide financial assistance to States for expanding and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.370 | 21st Century Cures Act: Regenerative Medicine Initiative | To provide support for initiatives funded under the 21st Century Cures | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.372 | 21st Century Cures Act - Brain Research through | To provide extramural research support for the Brain Research | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.376 | Title: Multiple Approaches to Support Young Breast Cancer | Goals resulting from providing support to young breast cancer | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.377 | Prevention and Control of Chronic Disease and Associated Risk Factors | The purpose of this five-year program is to reduce the rates of | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.378 | Integrated Care for Kids Model | The purpose of this cooperative agreement funding opportunity is to | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.382 | Indian Health Service Community Health Aide Program | The Indian Health Service (IHS) Community Health Aide | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.383 | Public Health Nursing | Public Health Nursing (PHN) patient care coordination activities | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.384 | ADVANCED RESEARCH PROJECTS AGENCY | The purpose of this program is to coordinate the | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.386 | Medical Reserve Corps Small Grant Program | To support the development of Medical Reserve Corps (MRC) | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.387 | National and State Tobacco Control Program | The Centers for Disease Control and Prevention (CDC), | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.388 | Biomedical Advanced Research and Development Authority | The purpose of this program is to coordinate the | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.391 | Activities to Support State, Tribal, Local and Territorial (STLT) Health | CDC will strengthen the U.S. public health systemâ€™s response | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.393 | Cancer Cause and Prevention Research | To identify cancer risks and risk reduction strategies, to identify | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.394 | Cancer Detection and Diagnosis Research | To improve screening and early detection strategies and to | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.395 | Cancer Treatment Research | To develop the means to cure as many cancer patients as possible and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.396 | Cancer Biology Research | To provide fundamental information on the cause and nature of | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.397 | Cancer Centers Support Grants | To provide an organizational focus and stimulus for the | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.398 | Cancer Research Manpower | To make available support to nonprofit and for-profit institutions | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.399 | Cancer Control | To reduce cancer risk, incidence, morbidity, and mortality and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.413 | The State Flexibility to Stabilize the Market Grant Program | The State Flexibility to Stabilize the Market Cycle I and II Grant | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.421 | Strengthening Public Health Systems and Services through | The goal is to fund nongovernmental organizations with | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.422 | National Partnerships to promote cancer surveillance standards | The purpose of this program is to enhance the data quality and | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.423 | 1332 State Innovation Waivers | Under Section 1332 of the ACA, states can apply for State | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.426 | The National Cardiovascular Health Program | This program supports extensive scientific evidence, links | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.427 | Provision of Technical Assistance and Training Activities to Assure | The purpose of this program is to fund recipients with proven | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.428 | Strengthening Emergency Care Delivery in the United | To assist in planning or developing emergency care health information | https://sam.g | https://www. |
| Department of Health and Human Services | | 93.429 | ASPR Science Preparedness and Response Grants | To conduct preparedness and response research that | https://sam.g | https://www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.431 | Networking2Saveâ€ | The Office on Smoking and Health and Division of Cancer Prevention | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.432 | ACL Centers for Independent Living | To support a Statewide network of centers for independent living | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.433 | ACL National Institute on Disability, Independent Living, and | To support and coordinate research and its utilization in | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.434 | Every Student Succeeds Act/ Preschool Development | Section 9212 of the Every Student Succeeds Act (ESSA), | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.436 | WELL-INTEGRATED SCREENING AND EVALUATION FOR | The purpose of this competitive five-year program is to fund state | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.438 | Emergency System for Advance Registration of Volunteer Health | To establish and maintain a national interoperable network of | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.439 | State Physical Activity and Nutrition (SPAN | This program supports recipients to implement state and local nutrition | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.441 | Indian Self-Determination | To enable Indian tribes to assume the management and | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.444 | Tribal Self-Governance Program: Planning and Negotiation Cooperative | To enable Federally recognized Indian tribes to enter into | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.445 | Indian Health Service Sanitation Facilities Construction Program | To provide essential sanitation facilities, such as safe drinking | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.446 | Partner Actions to Improve Oral Health Outcomes | To establish oral health leadership and program guidance, oral health | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.450 | Ebola Healthcare Preparedness and Response for Select | To enable select public health departments serving regions where | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.454 | Hospital Preparedness Program (HPP) Ebola Preparedness and | This program covers two separate, but related projects: Part A | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.455 | National Ebola Training and Education Center (NETEC) | CDC, will increase the competency of health care and public health | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.456 | CDC Undergraduate Public Health Scholars Program (CUPS): A | The purpose of this funding opportunity is to implement a national | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.457 | Planning Grant for Healthcare and Public Health Sector | The first objective of this award is to gain an understanding of the | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.458 | Enhance the Ability of Emergency Medical Services (EMS) to | Enhance state and local level emergency medical services | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.459 | National Bioterrorism Hospital Preparedness Program | To ready hospitals and other healthcare systems, in | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.461 | HRSA COVID-19 Claims Reimbursement for the Uninsured | The COVID-19 Claims Reimbursement to Health Care Providers | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.462 | Strengthening the Technical Advancement & Readiness of Public | This program provides an opportunity to strengthen and expand | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.464 | ACL Assistive Technology | The 2004 amendments to the Assistive Technology Act of 1998 | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.465 | Tobacco Prevention and Control Legal Technical Assistance | The awardee will provide legal technical assistance and | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.469 | Assistive Technology Alternative Financing Program | The purpose of the Assistive Technology (AT) Alternative | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.470 | Alzheimerâ€™s Disease Program Initiative (ADPI) | The purpose of the Alzheimerâ€™s Disease Program | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.471 | Title IV-E Kinship Navigator Program | The title IV-E Kinship Navigator program helps states, Indian | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.472 | Title IV-E Prevention Program | The Title IV-E Prevention Program provides funding for | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.478 | Preventing Maternal Deaths: Supporting Maternal Mortality | This funding will support existing Maternal Mortality Review | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.479 | Good Health and Wellness in Indian Country | The purpose of this Assistance Listing (AL) is to reduce rates of | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.488 | National Harm Reduction Technical Assistance and Syringe | The purpose of this program is to strengthen harm | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.489 | Child Care Disaster Relief | Hurricanes Fiona and Ian were powerful storms that impacted | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.493 | Congressional Directives | To implement special Congressionally directed projects or | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.494 | Global Tuberculosis:Developin g,Evaluating,Implementi | CDCâ€™s global health priorities include efforts towards ending | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.495 | Community Health Workers for Public Health Response and | To scale up Community Health Worker (CHW) activities across the | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.496 | Family Violence Prevention and Services/Culturally | The objective of this program is to fund a wide range of | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.497 | Family Violence Prevention and Services/ Sexual | This funding will support allowable activities to assist states, territories, | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.498 | Provider Relief Fund and American Rescue Plan (ARP) Rural | The Provider Relief Fund supported eligible health care providers in | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.499 | Low Income Household Water Assistance Program | The objective of the Low Income Household Water Assistance | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.504 | Family to Family Health Information Centers | To develop and support Family-to-Family Health Information Centers | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.516 | Public Health Training Centers Program | The Regional Public Health Training Center program improves the | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.526 | Grants for Capital Development in Health Centers | To award Health Center Capital Development Grants for (1) | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.527 | Grants for New and Expanded Services under the Health Center | To provide for expanded and/or sustained national investment in | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.530 | Teaching Health Center Graduate Medical Education Payment | The objective of the THCGME program is to expand primary care | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.534 | Affordable Care Act Program for Early Detection of Certain | The overall goals of this program are for Early Detection of Certain | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.550 | Transitional Living for Homeless Youth | The Transitional Living Program (TLP) and Maternity Group Home | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.556 | MaryLee Allen Promoting Safe and Stable Families | The objectives of the MaryLee Allen Promoting Safe and | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.557 | Education and Prevention Grants to Reduce Sexual Abuse | The Service Connection for Youth on the Streets, also referred to as the | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.558 | Temporary Assistance for Needy Families | To provide grants to States and the District of Columbia, Territories, | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.560 | Payments to Territories â€“ Adults | To provide aid in the form of cash benefits for food, clothing, shelter, | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.563 | Child Support Services | The purpose of this program is to enforce the support obligations | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.564 | Child Support Services Research | This program provides federal funds for experimental, pilot, or | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.566 | Refugee and Entrant Assistance State/ Replacement Designee | The Refugee Cash and Medical Assistance (CMA) Program | https:/ / sam.g | https:/ / www. |
| Department of Health and Human Services | | 93.567 | Refugee and Entrant Assistance Voluntary Agency Programs | The Matching Grant Program was created in 1979 as an intensive | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.568 | Low-Income Home Energy Assistance | The objective of the Low Income Home Energy Assistance | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.569 | Community Services Block Grant | The objectives of the Community Services Block Grant (CSBG) are | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.570 | Community Services Block Grant Discretionary Awards | Community Services Block Grant Discretionary Awards | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.575 | Child Care and Development Block Grant | The Child Care and Development Fund (CCDF) is the primary | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.576 | Refugee and Entrant Assistance Discretionary Grants | The objectives of these discretionary programs are: (1) build capacity | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.579 | U.S. Repatriation | The U.S. Repatriation Program was established to provide | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.581 | Improving the Capability of Indian Tribal Governments to | The purpose of the Environmental Regulatory | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.583 | Refugee and Entrant Assistance Wilson/Fish Program | The objective of the Wilson Fish demonstration program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.586 | State Court Improvement Program | This program provides funding to state and tribal courts to improve | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.587 | Promote the Survival and Continuing Vitality of Native American | The P&M program provides funding for projects designed to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.590 | Community-Based Child Abuse Prevention Grants | The objectives of the Community-Based Child Abuse Prevention | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.591 | Family Violence Prevention and Services/State | The purpose of this program is to provide funding for State | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.592 | Family Violence Prevention and Services/Discretionary | The purpose of this program is to fund a wide range of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.594 | Tribal Work Grants | The Native Employment Works (NEW) grant enables eligible Indian | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.595 | Welfare Reform Research, Evaluations and National Studies | Welfare Research (WR) funds were authorized as a set-aside of the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.596 | Child Care Mandatory and Matching Funds of the Child Care and | The Mandatory and Matching portion (or Child Care Entitlement | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.597 | Grants to States for Access and Visitation Programs | The purpose of this program is to enable States to create | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.598 | Services to Victims of a Severe Form of Trafficking | Under the Services to Victims of a Severe Form of Trafficking, the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.599 | Chafee Education and Training Vouchers Program (ETV) | To provide resources to states and eligible Indian tribes to make | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.600 | Head Start | Head Start programs promote school readiness by enhancing | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.603 | Adoption and Legal Guardianship Incentive Payments Program | The objective of the Adoption and Legal Guardianship Incentive | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.604 | Assistance for Torture Victims | The Office of Refugee Resettlement (ORR) provides funding to the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.605 | Family Connection Grants | This program provides awards for the purpose of helping children who | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.610 | Innovation In Behavioral Health | The CMS Innovation Center is announcing a new NOFO focusing on | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.612 | Native American Programs | The purpose of the Social and Economic Development Strategies | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.618 | Voting Access for Individuals with Disabilities-Grants for | Section 291 of HAVA provides that funds be made available to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.623 | Basic Center Grant | The purpose of the Basic Center Program is to establish or | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.630 | Developmental Disabilities Basic Support and Advocacy | Developmental Disabilities Basic Support and Advocacy | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.631 | Developmental Disabilities Projects of National Significance | To provide for grants, contracts and cooperative agreements | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.632 | University Centers for Excellence in Developmental | To pay the Federal share of the cost of administration and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.634 | Support for Ombudsman and Beneficiary Counseling | CMS is presenting this Funding Opportunity Announcement (FOA) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.640 | Basic Health Program (Affordable Care Act) | Section 1331 of the Affordable Care Act gives states the option | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.643 | Children's Justice Grants to States | To encourage states to enact reforms which are designed to improve (1) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.645 | Stephanie Tubbs Jones Child Welfare Services Program | The purpose of the Stephanie Tubbs Jones Child Welfare Services | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.647 | Social Services Research and Demonstration | The Social Services Research and Demonstration program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.648 | Child Welfare Research Training or Demonstration | This program supports research and demonstration projects | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.649 | Nutrition and Physical Activity Programs | The purpose of this program is to achieve three goals related to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.652 | Adoption Opportunities | The purpose of this program is to eliminate barriers, including | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.653 | Indian Health Service Domestic Violence Prevention Programs | The objective of the Domestic Violence Prevention (DVP) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.654 | Indian Health Service Behavioral Health Programs | The Indian Health Service Behavioral Health Programs | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.658 | Foster Care Title IV-E | The Title IV-E Foster Care program helps states, Indian tribes, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.659 | Adoption Assistance | This program provides Federal Financial Participation (FFP) to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.661 | Extramural Research Restoration Program: Hurricanes Fiona and | As written in the Consolidated Appropriations Act, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.665 | Emergency Grants to Address Mental and Substance Use | This program is to provide mental and substance use disorder | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.667 | Social Services Block Grant | The objective is to enable each state and territory to furnish social | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.669 | Child Abuse and Neglect State Grants | To assist States in the support and improvement of their | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.670 | Child Abuse and Neglect Discretionary Activities | To improve the national, state, and community activities for the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.671 | Family Violence Prevention and Services/Domestic | The purpose of this program is to assist States and Native | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.674 | John H. Chafee Foster Care Program for Successful Transition to | To assist states and eligible Indian tribes in establishing and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.676 | Unaccompanied Children Program | The Unaccompanied Children Bureau (UCB) provides for the care | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.679 | EHB-Benchmark Plan Modernization Grant for States with a Federally- | EHB-Benchmark Plan Modernization Grant for States with a Federally- | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.680 | Medical Student Education | The MSE Program provides grants to public institutions of | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.684 | Engaging State and Local Emergency Management Agencies | The purpose of this program is to prepare the nationâ€™s public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.686 | Ending the HIV Epidemic: A Plan for America â€" Ryan | In February 2019, the Administration announced a new | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.687 | Maternal Opioid Misuse Model | The Centers for Medicare & Medicaid Services (CMS), | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.691 | Integrating the Healthcare Enterprise FHIR Cooperative | The Office of the National Coordinator for Health Information | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.693 | Nursing Home Staffing Campaign | The Centers for Medicare & Medicaid Services (CMS) is | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.694 | Section 206 Consolidated Appropriations Act, | The Centers for Medicare & Medicaid Services (CMS) is | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.695 | Health Equity Data Access Program | Through the HEDAP, CMS OMH provides grant funding to support | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.696 | Certified Community Behavioral Health Clinic Expansion Grants | The purpose of this program is to help transform community | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.698 | Elder Justice Act â€ "Adult Protective Services | To enhance and improve coordinated systems of adult | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.714 | ARRA â€" Emergency Contingency Fund for Temporary Assistance | This funding was to provide economic stimulus to the nation | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.732 | Mental and Behavioral Health Education and Training Grants | The purpose of the behavioral health programs is to develop | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.734 | Empowering Older Adults and Adults with Disabilities through | The cooperative agreements are intended to increase the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.747 | Elder Abuse Prevention Interventions Program | To develop, implement, and evaluate successful or promising | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.761 | Evidence-Based Falls Prevention Programs Financed Solely by | These cooperative agreements are intended to increase the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.762 | A Comprehensive Approach to Good Health and Wellness in | The program supports initiatives and public health capacity to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.763 | Alzheimerâ€™s Disease Initiative: Specialized Supportive | The purpose of the Alzheimerâ€™s Disease Initiative: | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.767 | Children's Health Insurance Program | The objective of the Childrenâ€™s Health Insurance Program | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.770 | Medicare Prescription Drug Coverage | To provide prescription drugs to Medicare beneficiaries through | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.771 | State Grants for the Implementation, Enhancement, and | The Bipartisan Safer Communities Act (BSCA) provided | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.772 | Tribal Public Health Capacity Building and Quality Improvement | This program's ultimate outcomes are 1) decreased morbidity | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.773 | Medicare Hospital Insurance | To provide hospital insurance protection for covered services to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.774 | Medicare Supplementary Medical Insurance | To provide medical insurance protection for covered services to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.775 | State Medicaid Fraud Control Units | To investigate and prosecute Medicaid provider fraud as well | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.777 | State Survey and Certification of Health Care Providers and | To provide financial assistance to any State which is able and willing | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.778 | Medical Assistance Program | To provide financial assistance to States for payments of medical | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.779 | Centers for Medicare and Medicaid Services (CMS) Research, | The Centers for Medicare & Medicaid Services (CMS) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.787 | Title V Sexual Risk Avoidance Education Program (Discretionary | The purpose of the Title V Competitive SRAE Program is to fund | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.788 | Opioid STR | Addressing the opioid crisis within such States, used for | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.791 | Money Follows the Person Rebalancing Demonstration | The Money Follows the Person (MFP) Rebalancing | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.796 | State Survey Certification of Health Care Providers and | To provide (Medicaid) financial assistance to any State which is able | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.797 | Expanding Access to Womenâ€™s Health Grant | The Expanding Access to Womenâ€™s Health Grant Program will | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.799 | CARA Act â€ "Comprehensive Addiction and Recovery | The purpose of this program is to prevent and reduce the abuse | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.800 | Organized Approaches to Increase Colorectal Cancer Screening | The purpose of the program is to increase colorectal cancer (CRC) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.801 | Ebola Healthcare Preparedness and Response for Select | To enable select public health departments serving regions where | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.809 | National Organizations for Chronic Disease Prevention and Health | The purpose of the funding is to develop effective state chronic | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.810 | Paul Coverdell National Acute Stroke Program National Center for | To improve the quality of acute stroke care and health outcomes for | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.816 | Preventing Heart Attacks and Strokes in High Need Areas | The purpose of program is to support implementation of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.817 | Hospital Preparedness Program (HPP) Ebola Preparedness and | This program covers two separate, but related projects: Part A | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.822 | Health Careers Opportunity Program (HCOP) | The Health Careers Opportunity Program (HCOP), also known as | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.823 | Public Health Response, Forecasting, and Analytic Capacities | In order to advance U.S. public health response, forecasting, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.825 | National Ebola Training and Education Center (NETEC) | CDC, will increase the competency of health care and public health | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.826 | Closing the Gap Between Standards Development and | To establish a mechanism for ongoing long-term collaborative | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.829 | Section 223 Demonstration Programs to Improve | Funding to support development of proposals to participate | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.832 | Promoting the Cancer Surveillance Workforce, Education and Data | The purpose of this program is to expand the capacity of CDC- | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.833 | Supporting and Maintaining a Surveillance System for | This program will build upon previous work to continue developing, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.834 | Capacity Building Assistance (CBA) for High-Impact HIV | To reduce morbidity and mortality by preventing cases and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.835 | Planning Grant for Healthcare and Public Health Sector | The first objective of this award is to gain an understanding of the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.837 | Cardiovascular Diseases Research | To foster heart and vascular research in the basic, translational, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.838 | Lung Diseases Research | The Division of Lung Diseases supports research and research | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.839 | Blood Diseases and Resources Research | To foster research and research training on the pathophysiology, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.840 | Translation and Implementation Science Research for Heart, | The Center for Translation Research and Implementation | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.843 | ACL Assistive Technology State Grants for Protection | To support protection and advocacy services through the systems | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.845 | Promoting Population Health through Increased Capacity in | The purpose of this program is to support the building of capacity | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.846 | Arthritis, Musculoskeletal and Skin Diseases | The National Institute of and Musculoskeletal and Skin Diseases | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.847 | Diabetes, Digestive, and Kidney Diseases Extramural Research | (1) To promote extramural basic and clinical biomedical | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.850 | Improving Epilepsy Programs, Services, and Outcomes through | The purpose of this program is to: | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.851 | Tracking Electronic Health Record Adoption and Capturing Related | Significant federal investments to accelerate the adoption | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.853 | Extramural Research Programs in the Neurosciences and | (1) To support extramural research funded by the National | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.855 | Allergy and Infectious Diseases Research | To assist public and private nonprofit institutions and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.858 | National Collaboration to Support Health, Wellness and Academic | The purpose of this announcement is to fund applicants to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.859 | Biomedical Research and Research Training | The National Institute of General Medical Sciences (NIGMS) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.860 | Emerging Infections Sentinel Networks | In its 1994 monograph, Addressing Emerging Infectious Disease | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.865 | Child Health and Human Development Extramural Research | To conduct and support laboratory research, clinical trials, and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.866 | Aging Research | To encourage biomedical, social, and behavioral research and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.867 | Vision Research | 1) To support eye and vision research projects that address the leading | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.869 | Transforming Maternal Health (TMaH) Model | The Transforming Maternal Heath (TMaH) Model is a voluntary, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.870 | Maternal, Infant and Early Childhood Home Visiting Grant | The goals of the Maternal, Infant, and Early Childhood Home | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.872 | Tribal Maternal, Infant, and Early Childhood Home Visiting | The Tribal Maternal, Infant, and Early Childhood Home | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.873 | State Grants for Protection and Advocacy Services | To make grants to Protection and Advocacy systems as | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.874 | Strengthening the Public Health System in US-affiliated Pacific | The purpose of this funding initiative to ensure provision of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.876 | Antimicrobial Resistance Surveillance in Retail Food | The National Antimicrobial Resistance Monitoring | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.877 | Autism Collaboration, Accountability, Research, Education, | This Program supports activities to: provide information and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.878 | Enhance the Ability of Emergency Medical Services (EMS) to | Enhance state and local level emergency medical services | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.879 | Medical Library Assistance | To meet a growing need for investigators trained in biomedical | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.881 | The Reduction of Issuer Burden Through Technology Grant | The Reduction of Issuer Burden Through Technology Grant will | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.884 | Primary Care Training and Enhancement | The overarching purpose of the PCTE Program is to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.885 | Cell and Gene Therapy (CGT) Access Model | The Cell and Gene Therapy (CGT) Access Model aims to improve | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.889 | National Bioterrorism Hospital Preparedness Program | To ready hospitals and other healthcare systems, in | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.893 | Health Care and Public Health (HPH) Sector Information Sharing and | The purpose of this cooperative agreement is to build the capacity | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.898 | Cancer Prevention and Control Programs for State, Territorial and | The purpose of this program is to transition this highly-functional | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.899 | Minority HIV/AIDS Fund (MHAF) | The Minority AIDS Initiative (MAI)â€™s principal goals are to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.908 | Nurse Corps Loan Repayment Program | The Nurse Corps Loan Repayment Program (Nurse Corps LRP) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.912 | Rural Health Care Services Outreach, Rural Health Network | The Delta Region Community Health Systems Development | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.913 | Grants to States for Operation of State Offices of Rural Health | The purpose of the State Offices of Rural Health (SORH) grant | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.914 | HIV Emergency Relief Project Grants | To provide direct financial assistance to Eligible Metropolitan | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.917 | HIV Care Formula Grants | To enable States and Territories to improve the quality, availability, | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.918 | Grants to Provide Outpatient Early Intervention Services | The purpose of the RWHAP Part C Early Intervention Services | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.923 | Disadvantaged Health Professions Faculty Loan Repayment | The Faculty Loan Repayment Program (FLRP) provides loan | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.924 | Ryan White HIV/AIDS Dental Reimbursement and Community Based | Dental Reimbursement Program (DRP): To partially compensate | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.925 | Scholarships for Health Professions Students from Disadvantaged | The Scholarships for Disadvantaged Students (SDS) | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.926 | Healthy Start Initiative | The purpose of the Healthy Start (HS) program is to improve | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.928 | Special Projects of National Significance | To quickly respond to the care and treatment needs of individuals | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.932 | Native Hawaiian Health Care Systems | To raise the health status of Native Hawaiians to the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.933 | Demonstration Projects for Indian Health | To promote improved health care among American Indians and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.939 | HIV Prevention Activities Non-Governmental | To provide assistance to local, regional and, national nonprofit | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.940 | HIV Prevention Activities Health Department Based | To assist States and political subdivisions of States in meeting the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.941 | HIV Demonstration, Research, Public and Professional Education | To develop, test, and disseminate improved human | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.943 | Epidemiologic Research Studies of Acquired | To support promising epidemiologic and implementation of | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.944 | Human Immunodeficiency Virus (HIV)/Acquired | To continue and strengthen effective human | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.945 | Assistance Programs for Chronic Disease Prevention and Control | To work with State health agencies and other public and private | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.946 | Cooperative Agreements to Support State-Based Safe | To promote optimal and equitable health in women and infants | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.947 | Tuberculosis Demonstration, Research, Public and | To assist States, political subdivisions of States, and other public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.958 | Block Grants for Community Mental Health Services | To provide financial assistance to States and Territories to enable | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.959 | Block Grants for Prevention and Treatment of Substance | To provide financial assistance to States and Territories to | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Health and Human Services | | 93.965 | Coal Miners Respiratory Impairment Treatment Clinics and Services | The Black Lung Clinics Program aims to reduce the morbidity and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.967 | Centers for Disease Control and Prevention Collaboration with | This program seeks to catalyze innovative efforts to provide public | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.968 | States Advancing All-Payer Health Equity Approaches and | States Advancing AHEAD aims to address unsustainable | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.969 | PPHF Geriatric Education Centers | The purpose of this program is to educate and train the health | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.970 | Health Professions Recruitment Program for Indians | (1) To identify American Indians and Alaska Natives with a potential | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.971 | Health Professions Preparatory Scholarship Program for Indians | To provide scholarships to American Indians and Alaska Natives for the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.972 | Health Professions Scholarship Program | To provide scholarships to American Indians and Alaska Natives at health | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.974 | Family Planning Service Delivery Improvement Research | Awarded fund support projects to conduct research or analyses to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.976 | Primary Care Medicine and Dentistry Clinician Educator Career | The goal of the career development awards is to support the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.977 | Sexually Transmitted Diseases (STD) Prevention and Control | The purpose of the assistance is to strengthen STD | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.978 | Sexually Transmitted Diseases (STD) Provider Education | The purpose of the assistance is to fund academic institutions | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.981 | Improving Student Health and Academic Achievement through | This program supports evidence-based strategies and activities | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.982 | Mental Health Disaster Assistance and Emergency Mental | To provide supplemental emergency mental | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.983 | Market Transparency Project for Health IT Interoperability Services | The purpose of this program is to increase market awareness and | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.988 | Cooperative Agreements for Diabetes Control | Diabetes Prevention and Control Programs (DPCPs) are funded by | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.989 | International Research and Research Training | The John E. Fogarty International Center (FIC) supports research | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.990 | National Health Promotion | Activities as may be required to make information respecting | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.991 | Preventive Health and Health Services Block Grant | To provide States with the resources to improve the health | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.994 | Maternal and Child Health Services Block Grant to the States | To enable States to improve the health and well-being of the | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.997 | Assisted Outpatient Treatment | In April of 2014, Congress passed the Protecting Access to | https:// sam.g | https:// www. |
| Department of Health and Human Services | | 93.998 | Autism and Other Developmental Disabilities, | This funding supports State health agencies, universities, and public | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.005 | State and Local Homeland Security National Training | National Domestic Preparedness Consortium: Through | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.007 | Homeland Security Preparedness Technical Assistance Program | The Homeland Security Technical Assistance Program (HSPTAP) is | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.008 | Non-Profit Security Program | The FY 2023 Nonprofit Security Grant Program (NSGP) provides | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.009 | FY 2022 Operation Allies Welcome Airport Assistance Grant | To reimburse airport authorities for services provided and expenses | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.010 | Citizenship Education and Training | The Office of Citizenship, Partnership and Engagement | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.012 | Boating Safety Financial Assistance | The mission of the National RBS Program is to ensure the public | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.018 | National Fire Academy Training Assistance | To provide travel stipends (up to 75 percent of the expense | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.022 | Flood Insurance | To enable personal and business property owners and renters to | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.023 | Community Assistance Program State Support Services Element | The Community Assistance Program â€“ State Support | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.024 | Emergency Food and Shelter National Board Program | This program does not accept unsolicited proposals; the only | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.025 | National Urban Search and Rescue (US&R) Response System | The National Urban Search and Rescue (US&R) Response | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.029 | Flood Mitigation Assistance | Objectives<br><br>The Flood Mitigation | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.030 | Community Disaster Loans | To provide loans subject to congressional loan authority to any local | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.032 | Crisis Counseling | The Crisis Counseling Assistance and Training Program (CCP) | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.033 | Disaster Legal Services | The Disaster Legal Services Program (DLS) supports the | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.034 | Disaster Unemployment Assistance | The Disaster Unemployment Assistance (DUA) | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.036 | Disaster Grants - Public Assistance (Presidentially Declared | To assist state, local, territorial , and tribal (SLTT) governments | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.039 | Hazard Mitigation Grant | The objective of the program is to provide funding support to | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.040 | Chemical Stockpile Emergency Preparedness Program | The objective is to enhance emergency preparedness | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.041 | National Dam Safety Program | Both the National Dam Safety Program (NDSP) state assistance grant | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.042 | Emergency Management Performance Grants | The Emergency Management Performance Grant | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.043 | State Fire Training Systems Grants | In accordance with the Federal Fire Prevention and Control Act of 1974, | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.044 | Assistance to Firefighters Grant | The goal of the Assistance to Firefighters Grant | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.045 | Cooperating Technical Partners | The Cooperating Technical Partners (CTP) Program exists to | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.046 | Fire Management Assistance Grant | The Fire Management Assistance Grant (FMAG) Program is | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.047 | BRIC: Building Resilient Infrastructure and Communities | The Building Resilient Infrastructure and Communities (BRIC) | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.048 | Federal Disaster Assistance to Individuals and | To provide financial assistance, and if necessary, direct | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.050 | Presidential Declared Disaster Assistance to Individuals and | This type of assistance supports disaster recovery by providing | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.052 | Emergency Operations Center | The purpose of the Emergency Operations Center (EOC) Grant | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.056 | Port Security Grant Program | Port Security Grant Program (PSGP) is one of four grant programs | https:// sam.g | https:// www. |
| Department of Homeland Security | | 97.057 | Intercity Bus Security Grants | The objective of the FY 2023 IBSGP is to provide funds to eligible | https:// sam.g | https:// www. |

| | | | | | |
|---|---|---|---|---|---|
| Department of Homeland Security | 97.061 | Centers for Homeland Security | DHS S&T seeks to establish a university-led consortium that | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.062 | Scientific Leadership Awards | In support of the Science and Technology | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.067 | Homeland Security Grant Program | The objective of the FY 2023 HSGP is to fund SLTT efforts to prevent | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.075 | Rail and Transit Security Grant Program | The objective of the FY 2023 TSGP is to provide funds to eligible | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.076 | CyberTipline | This programâ€™s objectives are to promote public | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.077 | Homeland Security Research, Development, Testing, | Support the PPD-8 objective of prevention related to terrorist acts | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.082 | Earthquake State Assistance | The National Earthquake Hazards Reduction Program | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.083 | Staffing for Adequate Fire and Emergency Response (SAFER) | The goal of the SAFER Grant Program is to assist local fire | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.088 | Disaster Assistance Projects | This category is not for unsolicited proposals. Provides funding that | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.089 | Driver's License Security Grant Program | This program provides funding to prevent terrorism, reduce fraud | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.091 | Homeland Security Biowatch Program | The BioWatch program is a federally managed, locally operated early | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.102 | Case Management Pilot Program | The objective of the Case Management Pilot Program (CMPP) is to | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.106 | Securing the Cities Program | The DHS Secretary established the STC Program, managed | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.107 | National Incident Management System (NIMS) | The purpose of the Fiscal Year (FY) 2023 National incident | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.108 | Public Safety and Violence Prevention Research, Evaluation, | S&T seeks to support foundational research that contributes to | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.111 | Regional Catastrophic Preparedness Grant Program (RCPGP) | The goal of the RCPGP is to build regional capacity and enhance | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.120 | Rural Emergency Medical Communications | The Homeland Security Act of 2002 (HSA) assigns CISA with the | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.123 | State, Local, Tribal and Territorial Security Operations Center/ | The mission of CISA is to lead the national effort to understand and | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.127 | Cybersecurity Education and Training | Section 2220 of the Homeland Security Act of 2002 (codified as | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.128 | CISA Cyber Security Awareness Campaign | CISAâ€™s mission is to lead the national effort to understand, | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.130 | National Nuclear Forensics Expertise Development Program | The objectives of this program are: (1) to provide a stable | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.131 | Emergency Management Baseline Assessments Grant | The purpose of the FY 2023 EMBAG cooperative agreement | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.132 | Financial Assistance for Targeted Violence and Terrorism Prevention | The TVTP Grant Program has six objectives: | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.133 | Preparing for Emerging Threats and Hazards | The FY 2016 Program to Prepare Communities for | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.134 | Presidential Residence Protection Security Grant | The purpose of FEMA's PRPA grant program is to provide assistance | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.135 | National Nonprofit Organization Recreational Boating | The mission of the National RBS Program is to ensure the public | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.136 | Boating Safety Data Collection and Analysis Grant Program | The Boating Safety Data Collection and Analysis Grant is | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.137 | State and Local Cybersecurity Grant Program Tribal | The goal of the State and Local Cybersecurity Grant Program | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.138 | Next Generation Warning System Grant Program | Objectives To have in place a public alert and warning | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.139 | Safeguarding Tomorrow Revolving Loan Fund Program | The Safeguarding Tomorrow Revolving Loan Fund (RLF) | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.140 | National Coast Guard Museum Construction | The U.S. Coast Guard (USCG) will award a Congressionally | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.141 | Shelter and Services Program | â€¢ To provide funding to non-federal entities that serve | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.142 | National Computer Forensics Institute Facility Expansion | The objective is the expansion of the National Computer | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.143 | Pre-Disaster Mitigation (PDM) Congressionally Directed Spending | The Pre-Disaster Mitigation (PDM) Congressionally | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.144 | Flood Mitigation Assistance (FMA) Swift Current | The Flood Mitigation Assistance (FMA) Swift Current grant program | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.145 | National Domestic Preparedness Consortium | The goal and mission of the NDPC is to enable communities to address | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.146 | Alliance for System Safety of Unmanned Aircraft Systems | The mission and goal of the CTG ASSURE program is to enable | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.147 | National Earthquake Hazards Reduction Program (NEHRP) | The National Earthquake Hazards Reduction Program | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.148 | National Cybersecurity Preparedness Consortium | The National Cybersecurity Preparedness | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.149 | Shelter and Services Program â€“ Competitive | SSP provides funding to non-federal entities that serve noncitizen | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.150 | Tribal Homeland Security Grant Program | The objective of the FY 2024 Tribal Homeland Security Grant Program | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.151 | Fire Prevention & Safety | The goal of the Fire Prevention and Safety (FP&S) Program is to | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.152 | Rehabilitation of High Hazard Potential Dams Grant Program | Rehabilitation of High Hazard Potential Dams (HHPD) Grant Program: | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.154 | Citizenship Integration Training Academy | The Office of Citizenship, Partnership and Engagement | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.155 | Cybersecurity Workforce Development and Training for | The goals of the CWD Program are to decrease the | https:// sam.g | https:// www. |
| Department of Homeland Security | 97.156 | Tribal Cybersecurity Grant Program | The goal of the Tribal Cybersecurity Grant Program (TCGP) is to | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.021 | Green and Resilient Retrofit Program | The Green and Resilient Retrofit Program offers loans | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.022 | Housing Counseling Program Homeownership | The Homeownership Initiative (HI) helps to bridge the | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.023 | Community Development Block Grant- PRO Housing | PRO (Pathways to Removing Obstacles) to Housing provides | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.024 | Community Development Block Grant- PRICE | The Community Development Block Grant - Preservation | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.108 | Rehabilitation Mortgage Insurance | FHA's 203(k) Rehabilitation Mortgage program is HUD's | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | 14.110 | Manufactured Home Loan Insurance (Title I) | To help people purchase a manufactured home or | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Housing and Urban Development | | 14.117 | Mortgage Insurance Homes | Helps enable people to purchase a home or refinance an existing | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.119 | Mortgage Insurance Homes for Disaster Victims | To help victims of a Presidentially-declared disaster whose home | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.122 | Mortgage Insurance Homes in Urban Renewal Areas | To help eligible entities to purchase and/or rehabilitate homes in | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.126 | Mortgage Insurance Cooperative Projects | Enables nonprofit cooperative ownership housing corporations or | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.128 | Mortgage Insurance Hospitals | To facilitate the affordable financing of hospitals for the care | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.129 | Mortgage Insurance Nursing Homes, Intermediate Care | To provide mortgage insurance to HUD-approved lenders to | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.133 | Mortgage Insurance Purchase of Units in Condominiums | To enable individuals and families to purchase or refinance | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.134 | Mortgage Insurance Rental Housing | HUD insures mortgage loans to finance the construction or | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.135 | Mortgage Insurance Rental and Cooperative Housing for Moderate | Section 221(d)(4) insures mortgage loans to facilitate the new | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.138 | Mortgage Insurance Rental Housing for the Elderly | To provide quality rental housing for the elderly. | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.139 | Mortgage Insurance Rental Housing in Urban Renewal Areas | To provide quality rental housing in urban renewal areas, code | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.142 | Property Improvement Loan Insurance for Improving All Existing | To facilitate the financing of improvements to homes | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.151 | Supplemental Loan Insurance Multifamily Rental Housing | Section 241(a) insures lenders against loss on mortgage defaults on | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.155 | Mortgage Insurance for the Purchase or Refinancing of Existing | To provide mortgage insurance to HUD-approved lenders for | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.157 | Supportive Housing for the Elderly | To expand the supply of multifamily housing with supportive services for | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.162 | Mortgage Insurance Combination and Manufactured Home Lot | To make possible reasonable financing for the purchase of a | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.169 | Housing Counseling Assistance Program | Provide funds to HUD-approved housing counseling agencies | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.171 | Manufactured Housing | Administers the National Manufactured Housing Construction | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.175 | Adjustable Rate Mortgages | To provide mortgage insurance for an adjustable rate | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.181 | Supportive Housing for Persons with Disabilities | To expand the supply of supportive housing for very low-income | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.183 | Home Equity Conversion Mortgages | To enable elderly homeowners to convert equity in their homes to | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.188 | Housing Finance Agencies (HFA) Risk Sharing | Under Section 542(c), HUD provides credit enhancement for | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.191 | Multifamily Housing Service Coordinators | To link elderly, especially frail and disabled, or disabled | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.195 | Project-Based Rental Assistance (PBRA) | To provide rental assistance to very low income individuals and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.198 | Good Neighbor Next Door Sales Program | The purpose of the Good Neighbor Next Door Sales Program is | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.218 | Community Development Block Grants/Entitlement | To develop viable urban communities by providing decent | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.225 | Community Development Block Grants/Special Purpose | To provide community development assistance to the Pacific Islands of | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.228 | Community Development Block Grants/State's program | The primary objective of this program is the development of viable | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.231 | Emergency Solutions Grant Program | The ESG program provides funding to: (1) engage homeless | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.239 | Home Investment Partnerships Program | To expand the supply of affordable housing, particularly rental | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.241 | Housing Opportunities for Persons with AIDS | To provide States, units of local government, or nonprofit organizations | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.247 | Self-Help Homeownership Opportunity Program | To facilitate and encourage innovative homeownership | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.248 | Community Development Block Grants Section 108 | To provide communities with a source of financing for economic | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.249 | Section 8 Moderate Rehabilitation Single Room Occupancy | The Section 8 Moderate Rehabilitation Single Room Occupancy | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.251 | Economic Development Initiative, Community Project Funding, and | The annual appropriation of funds to the Department and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.252 | Section 4 Capacity Building for Community Development and | The Section 4 program builds the capacity of Community | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.256 | Neighborhood Stabilization Program (Recovery Act Funded) | Neighborhood stabilization through acquisition and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.259 | Community Compass Technical Assistance and Capacity Building | Community Compass brings together technical assistance | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.261 | National Homeless Data Analysis Project (NHDAP) | National Homeless Data Analysis Project (NHDAP) provides | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.265 | Rural Capacity Building for Community Development and | The Rural Capacity Building program enhances the capacity | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.267 | Continuum of Care Program | The program is designed to promote community-wide | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.269 | Hurricane Sandy Community Development Block | The overall CDBG program objective is to develop viable urban | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.272 | National Disaster Resilience Competition | The overall CDBG program objective is to develop viable urban | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.275 | Housing Trust Fund | To expand and preserve the supply of affordable housing, particularly | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.276 | Youth Homelessness Demonstration Program | The goal of the Youth Homeless Demonstration Program | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.277 | Youth Homeless System Improvement Grants | The objectives of the Youth Homeless System Improvement | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.278 | Veterans Housing Rehabilitation and Modification Program | The purpose of the Veterans Housing Rehabilitation and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.311 | Single Family Property Disposition | To sell HUD single family Real Estate Owned (REO) | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.313 | Dollar Home Sales | To expand HUD's partnership with local governments in helping | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.316 | Housing Counseling Training Program | This program supports, under cooperative agreements with HUD, | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.322 | Tenant Education and Outreach Program | The purpose of the Tenant Education and Outreach (TEO) | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.326 | Project Rental Assistance Demonstration (PRA | The Project Rental Assistance (PRA) provides funding to | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Housing and Urban Development | | 14.327 | Performance Based Contract Administrator Program | It is the policy of the United States to promote the general | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.401 | Fair Housing Assistance Program | Provide assistance to State and local fair housing enforcement | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.408 | Fair Housing Initiatives Program | To develop, implement, carry out, or coordinate programs and/or | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.416 | Education and Outreach Initiatives | To assist organizations that are regional and local, community based | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.417 | Fair Housing Organization Initiatives | To assist organizations that are regional and local, community based | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.418 | Private Enforcement Initiatives | To assist private non-profit fair housing enforcement | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.506 | General Research and Technology Activity | What all funding does this listing include? All Core R&T activities (per | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.536 | Research, Evaluation, and Demonstrations | This is a Notice of Funding Availability (NOFA) from the | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.537 | Eviction Protection Grant Program | The overall purpose of the Eviction Protection Grant Program is to | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.850 | Public Housing Operating Fund | To provide and operate cost-effective, decent, safe and affordable | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.856 | Lower Income Housing Assistance Program Section 8 Moderate | The Moderate Rehabilitation (Mod Rehab) program was | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.862 | Indian Community Development Block Grant Program | The purpose of the Indian Community Development Block | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.865 | Public and Indian Housing Indian Loan Guarantee Program | To provide access to sources of private financing so Native | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.866 | Demolition and Revitalization of Severely Distressed | Revitalization Grants enable PHAs to improve the living | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.867 | Indian Housing Block Grants | The Indian Housing Block Grants (IHBG) program is authorized | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.869 | Title VI Federal Guarantees for Financing Tribal | To provide access to sources of private financing to Indian | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.870 | Resident Opportunity and Supportive Services - Service | To address the economic and housing self-sufficiency needs of | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.871 | Section 8 Housing Choice Vouchers | The housing choice voucher program is the federal government's | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.872 | Public Housing Capital Fund | The Capital Fund provides funds annually to Public Housing | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.873 | Native Hawaiian Housing Block Grants | To provide funds to carry out affordable housing activities, | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.874 | Loan Guarantees for Native Hawaiian Housing | To provide access to sources of private financing on Hawaiian | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.878 | Affordable Housing Development in Main Street Rejuvenation | To assist small communities with populations of 50,000 or | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.879 | Mainstream Vouchers | The Mainstream Vouchers (previously referred to as the | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.880 | Family Unification Program (FUP) | To aid: (1) Families for whom the lack of adequate housing is a | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.881 | Moving to Work Demonstration Program | Moving to Work (MTW) is a demonstration program for public | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.888 | Lead-Based Paint Capital Fund Program | The Lead-Based Paint and Housing-Related Hazards are for Public | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.889 | Choice Neighborhoods Implementation Grants | Choice Neighborhoods Implementation Grants provide funds to | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.892 | Choice Neighborhoods Planning Grants | Choice Neighborhoods Planning Grants support the | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.893 | Office of Native American Programs Training and Technical | To provide technical assistance for Indian tribes, Alaska Native | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.895 | Jobs-Plus Pilot Initiative | The Jobs Plus program develops locally based, job-driven approaches | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.896 | Family Self-Sufficiency Program | To promote the development of local strategies to coordinate | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.899 | Tribal HUD-VA Supportive Housing Program | The Tribal HUD-VASH program combines rental assistance from | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.900 | Lead Hazard Reduction Grant Program | Lead-Based Paint Hazard Control grants assist State, Tribal, and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.901 | Healthy Homes Weatherization Cooperation | HUD, through this Healthy Homes and Weatherization | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.902 | Lead Technical Studies Grants | To fund technical studies to improve methods for detecting | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.905 | Lead Hazard Reduction Demonstration Grant Program | Lead Hazard Reduction Demonstration Grant assist State, Tribal, and | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.906 | Healthy Homes Technical Studies Grants | To fund technical studies to improve methods for detecting | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.912 | Lead Hazard Control Capacity Building | The purpose of the Lead Hazard Reduction Capacity Building Grant | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.913 | Healthy Homes Production Program | The purpose of the Healthy Homes Production Program is | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.914 | Radon Interventions in Public and Assisted Multifamily Housing | None. The program is defunct | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.920 | Lead Hazard Control for High Risk Areas | This funding will be made available to public housing agencies that | https:// sam.g | https:// www. |
| Department of Housing and Urban Development | | 14.921 | Older Adults Home Modification Grant Program | The purpose of the Older Adults Home Modification Grant | https:// sam.g | https:// www. |
| Department of Justice | | 16.001 | Law Enforcement Assistance Narcotics and Dangerous Drugs | To provide technical assistance to dully constituted state, | https:// sam.g | https:// www. |
| Department of Justice | | 16.003 | Law Enforcement Assistance Narcotics and Dangerous Drugs | To disseminate scientific information on the detection and | https:// sam.g | https:// www. |
| Department of Justice | | 16.004 | Law Enforcement Assistance Narcotics and Dangerous Drugs | To acquaint appropriate professional and enforcement personnel | https:// sam.g | https:// www. |
| Department of Justice | | 16.015 | Missing Alzheimer's Disease Patient Assistance Program | The goal of the program is to support local jurisdictionsâ€™ efforts | https:// sam.g | https:// www. |
| Department of Justice | | 16.016 | Culturally and Linguistically Specific Services Program | To enhance culturally specific services for victims of domestic | https:// sam.g | https:// www. |
| Department of Justice | | 16.017 | Sexual Assault Services Formula Program | To increase intervention, advocacy, accompaniment, | https:// sam.g | https:// www. |
| Department of Justice | | 16.019 | Tribal Registry | To develop and maintain a national tribal sex offender | https:// sam.g | https:// www. |
| Department of Justice | | 16.021 | Justice Systems Response to Families | The Grants to Support Families in the Justice System program | https:// sam.g | https:// www. |
| Department of Justice | | 16.023 | Sexual Assault Services Culturally Specific Program | To increase culturally specific intervention, advocacy, | https:// sam.g | https:// www. |
| Department of Justice | | 16.024 | Tribal Sexual Assault Services Program | To support programs or projects in Indian tribal lands and Alaska native | https:// sam.g | https:// www. |

| | | | | | |
|---|---|---|---|---|---|
| Department of Justice | 16.025 | Special Domestic Violence Criminal Jurisdiction | To assist tribal governments in implementing the | https:// sam.g | https:// www. |
| Department of Justice | 16.026 | OVW Research and Evaluation Program | The purpose of the Research and Evaluation (R&E) | https:// sam.g | https:// www. |
| Department of Justice | 16.027 | National Clearinghouse on Sexual Assault of American Indian and | To provide training and technical assistance on issues relating to sexual | https:// sam.g | https:// www. |
| Department of Justice | 16.028 | Resource Center on Workplace Response to Domestic Violence, | To provide for establishment and operation of a national | https:// sam.g | https:// www. |
| Department of Justice | 16.029 | Office on Violence Against Women Special Projects | To promote promising or innovative practices to respond to violence | https:// sam.g | https:// www. |
| Department of Justice | 16.030 | National Center on Restorative Justice | Goal(s): The primary goals of the National Center on Restorative | https:// sam.g | https:// www. |
| Department of Justice | 16.031 | Emmett Till Cold Case Investigations Program | The Emmett Till Program provides support to state, local | https:// sam.g | https:// www. |
| Department of Justice | 16.032 | Academic-based Drug Field Testing and Training Initiative | Note: Program is inactive and pending archival. | https:// sam.g | https:// www. |
| Department of Justice | 16.034 | Coronavirus Emergency Supplemental Funding Program | The program is no longer funded. This was a one-time funding | https:// sam.g | https:// www. |
| Department of Justice | 16.035 | Preventing Trafficking of Girls | The purpose of this program is to support the prevention and early | https:// sam.g | https:// www. |
| Department of Justice | 16.036 | Comprehensive Forensic DNA Analysis Grant Program | The goals of this comprehensive program are to assist | https:// sam.g | https:// www. |
| Department of Justice | 16.037 | Strengthening the Medical Examiner - Coroner System | The goals of the Strengthening the Medical Examiner- | https:// sam.g | https:// www. |
| Department of Justice | 16.038 | National Decertification Index | The purpose of this funding is to assist with the implementation of | https:// sam.g | https:// www. |
| Department of Justice | 16.039 | Rural Violent Crime Initiative | The goal of Rural Violent Crime Reduction Initiative (RVCRI) | https:// sam.g | https:// www. |
| Department of Justice | 16.040 | Matthew Shepard and James Byrd, Jr. Hate Crimes Education, | The goals of the Matthew Shepard and James Byrd, Jr. Hate | https:// sam.g | https:// www. |
| Department of Justice | 16.041 | National Ashanti Alert Network Training and Technical Assistance | This program is specifically directed toward the | https:// sam.g | https:// www. |
| Department of Justice | 16.042 | Security Assistance Reimbursement Grant Program | The purpose of the Security Assistance Reimbursement Grant | https:// sam.g | https:// www. |
| Department of Justice | 16.043 | Veterans Treatment Court Discretionary Grant Program | Goal: To provide veterans treatment courts and criminal | https:// sam.g | https:// www. |
| Department of Justice | 16.044 | Forensics Training and Technical Assistance Program | The goal of the Forensic Science Federal, State, and | https:// sam.g | https:// www. |
| Department of Justice | 16.045 | Community-Based Violence Intervention and Prevention Initiative | Goal: The main goal of CVIPI is the prevention and reduction of violent | https:// sam.g | https:// www. |
| Department of Justice | 16.046 | Drug Data Research Center to Combat the Opioid Crisis | The goal of the Drug Data Research Center (DDRC) to Combat the | https:// sam.g | https:// www. |
| Department of Justice | 16.047 | Community-Based Approaches to Advancing Justice | Goal(s): The goals of the Community-based Approaches to Prevent | https:// sam.g | https:// www. |
| Department of Justice | 16.048 | Khalid Jabara and Heather Heyer NO HATE Act | The primary goal is for state agencies to establish and run state- | https:// sam.g | https:// www. |
| Department of Justice | 16.049 | Supporting Vulnerable and At-Risk Youth Transitioning out of | The goal of the program is to promote positive youth outcomes and | https:// sam.g | https:// www. |
| Department of Justice | 16.050 | Missing and Unidentified Human Remains (MUHR) | Administered by the Office of Justice Programsâ€™ (OJP) | https:// sam.g | https:// www. |
| Department of Justice | 16.051 | Crime Gun Intelligence Training and Education | Goal: To develop leads to swiftly identify unlawfully used firearms | https:// sam.g | https:// www. |
| Department of Justice | 16.052 | Restorative Practices to Address Domestic Violence, Dating | The restorative Practices Program is designed to assist | https:// sam.g | https:// www. |
| Department of Justice | 16.053 | Sexual Assault Forensic Examinations | This program establishes or expands sexual assault | https:// sam.g | https:// www. |
| Department of Justice | 16.054 | Virtual Reality De-escalation Training | Goal: To prepare officers to safely and effectively respond to | https:// sam.g | https:// www. |
| Department of Justice | 16.055 | Tribal Special Assistant United States Attorneys | Tribal SAUSA is an initiative to support cross-designation of | https:// sam.g | https:// www. |
| Department of Justice | 16.056 | National Deaf Services Line | To provide remote services to Deaf victims of domestic violence, | https:// sam.g | https:// www. |
| Department of Justice | 16.057 | OVW LGBT Specific Services Program | (A) The maintenance and replication of existing successful | https:// sam.g | https:// www. |
| Department of Justice | 16.058 | Demonstration Program on Trauma-Informed, Victim Centered | The Attorney General shall award grants on a competitive basis to | https:// sam.g | https:// www. |
| Department of Justice | 16.059 | Tribal Special Criminal Jurisdiction Reimbursement | The purpose of this program is to reimburse Tribal governments for | https:// sam.g | https:// www. |
| Department of Justice | 16.060 | Local Law Enforcement Grants for Enforcement of Cybercrimes | To assist law enforcement with the prevention, prosecution, | https:// sam.g | https:// www. |
| Department of Justice | 16.061 | National Resource Center on Cybercrimes Against Individuals | The establishment and maintenance of a National Resource | https:// sam.g | https:// www. |
| Department of Justice | 16.062 | Grants to State and Tribal Courts to Implement Protection | An eligible entity that receives a grant under this section shall use | https:// sam.g | https:// www. |
| Department of Justice | 16.063 | Financial Assistance to Victims of Domestic Violence, Dating | The objective of the program is to provide financial assistance to | https:// sam.g | https:// www. |
| Department of Justice | 16.064 | Sexual Assault Forensic Exam Training and Services | By statute, grants are for the following purposes: | https:// sam.g | https:// www. |
| Department of Justice | 16.065 | Training to Improve Police-Based Responses to the | The Training to Improve Police-Based Responses to People | https:// sam.g | https:// www. |
| Department of Justice | 16.066 | Officer Robert Wilson III Preventing Violence Against Law | The VALOR Initiative uses a multifaceted approach to address | https:// sam.g | https:// www. |
| Department of Justice | 16.067 | Family-Based Alternative Justice Program | The goal is to establish new and enhance existing family-based | https:// sam.g | https:// www. |
| Department of Justice | 16.123 | Community-Based Violence Prevention Program | Goals: To eliminate youth gun and gang violence | https:// sam.g | https:// www. |
| Department of Justice | 16.300 | Law Enforcement Assistance FBI Advanced Police | To provide advanced training to experienced personnel of local, | https:// sam.g | https:// www. |
| Department of Justice | 16.301 | Law Enforcement Assistance FBI Crime Laboratory Support | To provide forensic services to the FBI and any other duly | https:// sam.g | https:// www. |
| Department of Justice | 16.302 | Law Enforcement Assistance FBI Field Police Training | To develop the professional skills of criminal justice | https:// sam.g | https:// www. |
| Department of Justice | 16.303 | Law Enforcement Assistance FBI Fingerprint Identification | To provide fingerprint and arrest-record services to U.S. | https:// sam.g | https:// www. |
| Department of Justice | 16.304 | Law Enforcement Assistance National Crime Information | The FBI National Crime Information Center (NCIC) is designed to | https:// sam.g | https:// www. |
| Department of Justice | 16.305 | Law Enforcement Assistance Uniform Crime Reports | To furnish data which will assist heads of law enforcement agencies | https:// sam.g | https:// www. |
| Department of Justice | 16.307 | Combined DNA Index System | To develop or improve forensic DNA analysis capabilities in State and | https:// sam.g | https:// www. |
| Department of Justice | 16.308 | Indian Country Investigations | To provide training to the Bureau of Indian Affairs (BIA) and Tribal | https:// sam.g | https:// www. |
| Department of Justice | 16.309 | Law Enforcement Assistance National Instant Criminal | To provide a system so that any Federal Firearm Licensee (FFL) | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Justice | | 16.320 | Services for Trafficking Victims | Specific goals vary by solicitation, but the overarching goal of the | https:// sam.g | https:// www. |
| Department of Justice | | 16.321 | Antiterrorism Emergency Reserve | To support eligible victims of criminal mass violence and terrorism | https:// sam.g | https:// www. |
| Department of Justice | | 16.524 | Legal Assistance for Victims | These grants are for increasing the availability of | https:// sam.g | https:// www. |
| Department of Justice | | 16.525 | Grants to Reduce Domestic Violence, Dating Violence, Sexual | To develop and strengthen effective security and | https:// sam.g | https:// www. |
| Department of Justice | | 16.526 | OVW Technical Assistance Initiative | To provide communities with critical resources that help them forge | https:// sam.g | https:// www. |
| Department of Justice | | 16.528 | Enhanced Training and Services to End Violence and Abuse of | To provide training, services, and collaboration to address | https:// sam.g | https:// www. |
| Department of Justice | | 16.529 | Education, Training, and Enhanced Services to End Violence Against | To provide training, consultation, and information on domestic | https:// sam.g | https:// www. |
| Department of Justice | | 16.540 | Juvenile Justice and Delinquency Prevention | The Title II Formula Grants Program provides funding to | https:// sam.g | https:// www. |
| Department of Justice | | 16.543 | Missing Children's Assistance | 1) Goal(s): To support research, training, technical | https:// sam.g | https:// www. |
| Department of Justice | | 16.548 | Delinquency Prevention Program | Provide funding to implement evidence-based strategies to | https:// sam.g | https:// www. |
| Department of Justice | | 16.550 | State Justice Statistics Program for Statistical Analysis Centers | Goal: This program provides funds to each state to coordinate | https:// sam.g | https:// www. |
| Department of Justice | | 16.554 | National Criminal History Improvement Program (NCHIP) | GOAL(S): Ensuring the quality and completeness of the | https:// sam.g | https:// www. |
| Department of Justice | | 16.556 | State Domestic Violence and Sexual Assault Coalitions | To coordinate State victim services activities and collaborate and | https:// sam.g | https:// www. |
| Department of Justice | | 16.557 | Tribal Domestic Violence and Sexual Assault Coalitions Grant | To increase awareness of domestic violence and sexual assault | https:// sam.g | https:// www. |
| Department of Justice | | 16.560 | National Institute of Justice Research, Evaluation, and | GOAL: Foster the development of new knowledge and tools | https:// sam.g | https:// www. |
| Department of Justice | | 16.571 | Public Safety Officers' Benefits Program | To provide death benefits to the eligible survivors of federal, | https:// sam.g | https:// www. |
| Department of Justice | | 16.575 | Crime Victim Assistance | The Office for Victims of Crime provides an annual grant from the | https:// sam.g | https:// www. |
| Department of Justice | | 16.576 | Crime Victim Compensation | The primary purpose of these grants is to supplement state efforts | https:// sam.g | https:// www. |
| Department of Justice | | 16.578 | Public Benefit Conveyance Program | Goal(s): The effective use of real property owned by the federal | https:// sam.g | https:// www. |
| Department of Justice | | 16.582 | Crime Victim Assistance/ Discretionary Grants | The Office for Victims of Crime (OVC) administers a | https:// sam.g | https:// www. |
| Department of Justice | | 16.583 | Children's Justice Act Partnerships for Indian Communities | The goal of the Childrenâ€™s Justice Act Partnerships for | https:// sam.g | https:// www. |
| Department of Justice | | 16.585 | Treatment Court Discretionary Grant Program | Goal(s): To provide adult treatment courts and professionals in the | https:// sam.g | https:// www. |
| Department of Justice | | 16.587 | Violence Against Women Discretionary Grants for Indian Tribal | To increase tribal capacity to respond to violent crimes against | https:// sam.g | https:// www. |
| Department of Justice | | 16.588 | Violence Against Women Formula Grants | To assist States, Indian tribal governments, tribal courts, State and | https:// sam.g | https:// www. |
| Department of Justice | | 16.589 | Rural Domestic Violence, Dating Violence, Sexual | (1) to identify, assess, and appropriately respond to child, youth, | https:// sam.g | https:// www. |
| Department of Justice | | 16.590 | Grants to Encourage Arrest Policies and Enforcement of | To assist States, Indian Tribal governments, State and local courts | https:// sam.g | https:// www. |
| Department of Justice | | 16.593 | Residential Substance Abuse Treatment for State Prisoners | The goal of the RSAT for State Prisoners Program is to assist | https:// sam.g | https:// www. |
| Department of Justice | | 16.596 | Trible Justice Assistance | Goal: The overall goal of BJAâ€™s Tribal Justice Assistance | https:// sam.g | https:// www. |
| Department of Justice | | 16.601 | Corrections Training and Staff Development | To devise and conduct in various geographical locations, seminars, | https:// sam.g | https:// www. |
| Department of Justice | | 16.602 | Corrections Research and Evaluation and Policy Formulation | To conduct, encourage, and coordinate research relating to | https:// sam.g | https:// www. |
| Department of Justice | | 16.603 | Corrections Technical Assistance/ Clearinghouse | To encourage and assist Federal, State, and local government | https:// sam.g | https:// www. |
| Department of Justice | | 16.606 | State Criminal Alien Assistance Program | The State Criminal Alien Assistance Program (SCAAP) is a payment | https:// sam.g | https:// www. |
| Department of Justice | | 16.607 | Bulletproof Vest Partnership Program | The objective of the Patrick Leahy Bulletproof Vest | https:// sam.g | https:// www. |
| Department of Justice | | 16.608 | Tribal Justice Systems | Program now funded under Assistance Listing 16.596 and | https:// sam.g | https:// www. |
| Department of Justice | | 16.609 | Project Safe Neighborhoods | The Project Safe Neighborhood (PSN) formula grant program | https:// sam.g | https:// www. |
| Department of Justice | | 16.610 | Regional Information Sharing Systems | Goals: The goal is to assist agencies in reducing violent crime | https:// sam.g | https:// www. |
| Department of Justice | | 16.614 | State and Local Anti-Terrorism Training | The goal of the State and Local Anti-Terrorism Training | https:// sam.g | https:// www. |
| Department of Justice | | 16.615 | Public Safety Officers' Educational Assistance | The PSOEA Program, an expansion of the Federal Law | https:// sam.g | https:// www. |
| Department of Justice | | 16.710 | Public Safety Partnership and Community Policing | The COPS Office was established in 1994 to assist state, local and | https:// sam.g | https:// www. |
| Department of Justice | | 16.726 | Juvenile Mentoring Program | To improve outcomes for at-risk and high-risk youth, and reduce | https:// sam.g | https:// www. |
| Department of Justice | | 16.731 | Tribal Youth Program | Through this program, the Department seeks to assist tribes in | https:// sam.g | https:// www. |
| Department of Justice | | 16.734 | Special Data Collections and Statistical Studies | GOAL: To produce and disseminate relevant, accurate, timely, | https:// sam.g | https:// www. |
| Department of Justice | | 16.735 | PREA Program: Strategic Support for PREA Implementation | The goal of this program is to support efforts in the | https:// sam.g | https:// www. |
| Department of Justice | | 16.736 | Transitional Housing Assistance for Victims of Domestic Violence, | To provide transitional housing assistance and related support services | https:// sam.g | https:// www. |
| Department of Justice | | 16.738 | Edward Byrne Memorial Justice Assistance Grant Program | Goal: Provide states, tribes, and units of local government with | https:// sam.g | https:// www. |
| Department of Justice | | 16.739 | National Prison Rape Statistics Program | GOAL(S): Deliver comprehensive statistical reviews and | https:// sam.g | https:// www. |
| Department of Justice | | 16.741 | DNA Backlog Reduction Program | Program now funded under Assistance Listing 16.036. | https:// sam.g | https:// www. |
| Department of Justice | | 16.742 | Paul Coverdell Forensic Sciences Improvement Grant Program | Goal(s): The Paul Coverdell Forensic Science Improvement | https:// sam.g | https:// www. |
| Department of Justice | | 16.745 | Criminal and Juvenile Justice and Mental Health Collaboration | Goal(s): The Justice and Mental Health Collaboration Program | https:// sam.g | https:// www. |
| Department of Justice | | 16.746 | Capital Case Litigation Initiative | Goals: Capital Case Litigation | https:// sam.g | https:// www. |
| Department of Justice | | 16.750 | Support for Adam Walsh Act Implementation Grant | Goals: To assist states, the District of Columbia, principal U.S. territories, | https:// sam.g | https:// www. |
| Department of Justice | | 16.751 | Edward Byrne Memorial Competitive Grant Program | To improve the functioning of the criminal justice system, | https:// sam.g | https:// www. |

| | | | | | |
|---|---|---|---|---|---|
| Department of Justice | 16.752 | Economic, High-Tech, and Cyber Crime Prevention | Goals: The Economic, High-Technology, White | https:// sam.g | https:// www. |
| Department of Justice | 16.753 | Congressionally Recommended Awards | To provide assistance in improving the functioning of the | https:// sam.g | https:// www. |
| Department of Justice | 16.754 | Harold Rogers Prescription Drug Monitoring Program | Goals: To enhance the capacity of regulatory | https:// sam.g | https:// www. |
| Department of Justice | 16.756 | Court Appointed Special Advocates | The goals of the CASA program are to serve and improve outcomes | https:// sam.g | https:// www. |
| Department of Justice | 16.757 | Judicial Training on Child Maltreatment for Court Personnel | To improve the judicial systemâ€™s handling of child abuse, neglect, | https:// sam.g | https:// www. |
| Department of Justice | 16.758 | Improving the Investigation and Prosecution of Child | Improve the investigation and prosecution of child | https:// sam.g | https:// www. |
| Department of Justice | 16.812 | Second Chance Act Reentry Initiative | There are currently over 2.2 million individuals serving time in federal | https:// sam.g | https:// www. |
| Department of Justice | 16.813 | NICS Act Record Improvement Program | GOAL(S): To improve the FBIâ€™s National Instant Criminal | https:// sam.g | https:// www. |
| Department of Justice | 16.815 | Tribal Civil and Criminal Legal Assistance Grants, Training and | Goal: The goal of this program is to build and enhance capacity and | https:// sam.g | https:// www. |
| Department of Justice | 16.816 | John R. Justice Prosecutors and Defenders Incentive Act | Goal: For all states and territories to encourage qualified individuals to | https:// sam.g | https:// www. |
| Department of Justice | 16.817 | Byrne Criminal Justice Innovation Program | Goals: The goal of the BCJI is to reduce crime and | https:// sam.g | https:// www. |
| Department of Justice | 16.818 | Children Exposed to Violence | The overall goal of the program is to build the capacity of families and | https:// sam.g | https:// www. |
| Department of Justice | 16.820 | Postconviction Testing of DNA Evidence | This programâ€™s primary goal is to assist states and units of local | https:// sam.g | https:// www. |
| Department of Justice | 16.823 | Emergency Planning for Juvenile Justice Facilities | The purpose of this project is to provide funding to States to | https:// sam.g | https:// www. |
| Department of Justice | 16.824 | Emergency Law Enforcement Assistance Grant | Goal: The Emergency Federal Law Enforcement Assistance | https:// sam.g | https:// www. |
| Department of Justice | 16.825 | Smart Prosecution Initiative | Goal(s): The purpose of the | https:// sam.g | https:// www. |
| Department of Justice | 16.827 | Justice Reinvestment Initiative | Goal: Under the enacted appropriations | https:// sam.g | https:// www. |
| Department of Justice | 16.828 | Swift, Certain, and Fair Supervision Program: Applying the Principles | The purpose of the Swift, Certain, and Fair (SCF) Supervision | https:// sam.g | https:// www. |
| Department of Justice | 16.830 | Girls in the Juvenile Justice System | Increase protective factors to prevent further delinquent | https:// sam.g | https:// www. |
| Department of Justice | 16.831 | Children of Incarcerated Parents | The goal of this program is to assist states and localities in | https:// sam.g | https:// www. |
| Department of Justice | 16.833 | National Sexual Assault Kit Initiative | Goal(s): Funding under this initiative is intended to help law enforcement | https:// sam.g | https:// www. |
| Department of Justice | 16.834 | Domestic Trafficking Victim Program | Under the Domestic Trafficking Victim Program, OVC has | https:// sam.g | https:// www. |
| Department of Justice | 16.835 | Body Worn Camera Policy and Implementation | Goal: Funding under the program is intended to support law | https:// sam.g | https:// www. |
| Department of Justice | 16.836 | Indigent Defense | This program supports states and localities in developing and | https:// sam.g | https:// www. |
| Department of Justice | 16.838 | Comprehensive Opioid, Stimulant, and other Substances Use | Goal: The Comprehensive Opioid, Stimulant, and other | https:// sam.g | https:// www. |
| Department of Justice | 16.839 | STOP School Violence | The goal of the STOP School Violence Program is to improve | https:// sam.g | https:// www. |
| Department of Justice | 16.840 | Keep Young Athletes Safe | Goals: To support oversight of the U.S. Olympic & Paralympic | https:// sam.g | https:// www. |
| Department of Justice | 16.841 | VOCA Tribal Victim Services Set-Aside Program | OVC administers the Tribal Victim Services Set-Aside to provide | https:// sam.g | https:// www. |
| Department of Justice | 16.842 | Opioid Affected Youth Initiative | Objectives include implementing programs and services that | https:// sam.g | https:// www. |
| Department of Justice | 16.844 | Combatting Contraband Cell Phone Use in Prisons | Program inactive and pending archival. | https:// sam.g | https:// www. |
| Department of Justice | 16.888 | Consolidated And Technical Assistance Grant Program to | The Consolidated Youth Program supports comprehensive, | https:// sam.g | https:// www. |
| Department of Justice | 16.889 | Grants for Outreach and Services to Underserved | To develop and implement outreach strategies targeted at | https:// sam.g | https:// www. |
| Department of Justice | 16.922 | Equitable Sharing Program | The Department of Justice Asset Forfeiture Program is a nationwide | https:// sam.g | https:// www. |
| Department of Labor | 17.002 | Labor Force Statistics | To provide, analyze, and publish statistical data on payroll | https:// sam.g | https:// www. |
| Department of Labor | 17.003 | Prices and Cost of Living Data | To provide, analyze, and publish statistical data for assisting in the | https:// sam.g | https:// www. |
| Department of Labor | 17.004 | Productivity and Technology Data | To provide, analyze, and publish data on productivity trends in | https:// sam.g | https:// www. |
| Department of Labor | 17.005 | Compensation and Working Conditions | To provide, analyze, and publish a diverse set of measures of | https:// sam.g | https:// www. |
| Department of Labor | 17.150 | Employee Benefits Security Administration | The Employee Benefits Security Administration (EBSA) is responsible | https:// sam.g | https:// www. |
| Department of Labor | 17.207 | Employment Service/ Wagner-Peyser Funded Activities | The Employment Service (ES) program brings together | https:// sam.g | https:// www. |
| Department of Labor | 17.225 | Unemployment Insurance | To implement and oversee unemployment insurance programs for | https:// sam.g | https:// www. |
| Department of Labor | 17.235 | Senior Community Service Employment Program | The Senior Community Service Employment Program (SCSEP) is a | https:// sam.g | https:// www. |
| Department of Labor | 17.245 | Trade Adjustment Assistance | The Trade Adjustment Assistance (TAA) for Workers Program is a | https:// sam.g | https:// www. |
| Department of Labor | 17.258 | WIOA Adult Program | Title I of the Workforce Innovation and Opportunity Act (WIOA) | https:// sam.g | https:// www. |
| Department of Labor | 17.259 | WIOA Youth Activities | To help low income youth, between the ages of 14 and 24, | https:// sam.g | https:// www. |
| Department of Labor | 17.261 | Workforce Data Quality Initiative (WDQI) | Address national employment and training issues through | https:// sam.g | https:// www. |
| Department of Labor | 17.264 | National Farmworker Jobs Program | To help low-income individuals who are primarily employed in | https:// sam.g | https:// www. |
| Department of Labor | 17.265 | Native American Employment and Training | To support employment and training services for Native Americans, | https:// sam.g | https:// www. |
| Department of Labor | 17.268 | H-1B Job Training Grants | The H-1B Skills Training Grants provide training and related activities to | https:// sam.g | https:// www. |
| Department of Labor | 17.270 | Reentry Employment Opportunities | This program includes both reentry grants focused on serving | https:// sam.g | https:// www. |
| Department of Labor | 17.271 | Work Opportunity Tax Credit Program (WOTC) | This federal tax credit was designed to help individuals from certain | https:// sam.g | https:// www. |
| Department of Labor | 17.272 | Permanent Labor Certification for Foreign Workers | To ensure that the admission of foreign workers into the United | https:// sam.g | https:// www. |
| Department of Labor | 17.273 | Temporary Labor Certification for Foreign Workers | To assure that the admission of foreign workers into the United | https:// sam.g | https:// www. |

A149

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Labor | | 17.274 | YouthBuild | Grant funds will be used to equip underserved youth with the | https:// sam.g | https:// www. |
| Department of Labor | | 17.277 | WIOA National Dislocated Worker Grants / WIA National | DWGs are supplemental, time-limited funding | https:// sam.g | https:// www. |
| Department of Labor | | 17.278 | WIOA Dislocated Worker Formula Grants | Title I of the Workforce Innovation and Opportunity Act (WIOA) | https:// sam.g | https:// www. |
| Department of Labor | | 17.280 | WIOA Dislocated Worker National Reserve Demonstration | To carry out demonstration and pilot projects for the purpose | https:// sam.g | https:// www. |
| Department of Labor | | 17.281 | WIOA Dislocated Worker National Reserve Technical | To support the coordination, development, and | https:// sam.g | https:// www. |
| Department of Labor | | 17.285 | Registered Apprenticeship | The Office of Apprenticeship promotes, engages and | https:// sam.g | https:// www. |
| Department of Labor | | 17.287 | Job Corps Experimental Projects and Technical Assistance | The goal of the demonstration is to focus on creating IT- | https:// sam.g | https:// www. |
| Department of Labor | | 17.289 | Community Project Funding/ Congressionally | The goal is to fund projects in the amounts specified in the table | https:// sam.g | https:// www. |
| Department of Labor | | 17.290 | WIOA Adult, Dislocated Worker and Youth Outlying Areas | The WIOA Adult, Dislocated Worker and Youth Outlying Areas | https:// sam.g | https:// www. |
| Department of Labor | | 17.302 | Longshore and Harbor Workers' Compensation | To provide compensation for disability or death | https:// sam.g | https:// www. |
| Department of Labor | | 17.307 | Coal Mine Workers' Compensation | To provide benefits to coal miners who have become totally disabled | https:// sam.g | https:// www. |
| Department of Labor | | 17.310 | Energy Employees Occupational Illness Compensation | Part B provides lump-sum monetary payments and medical | https:// sam.g | https:// www. |
| Department of Labor | | 17.401 | International Labor Programs | The Bureau of International Labor Affairs (ILAB) promotes | https:// sam.g | https:// www. |
| Department of Labor | | 17.502 | Occupational Safety and Health Susan Harwood Training | To provide occupational safety and health training and education | https:// sam.g | https:// www. |
| Department of Labor | | 17.503 | Occupational Safety and Health State Program | To fund federally approved comprehensive State | https:// sam.g | https:// www. |
| Department of Labor | | 17.504 | Consultation Agreements | To fund consultative workplace safety and health services, | https:// sam.g | https:// www. |
| Department of Labor | | 17.600 | Mine Health and Safety Grants | To assist States in providing safety and health training and | https:// sam.g | https:// www. |
| Department of Labor | | 17.603 | Brookwood-Sago Grant | To provide mine safety and health training and education programs for | https:// sam.g | https:// www. |
| Department of Labor | | 17.604 | Safety and Health Grants | To provide mine safety and health training and education to miners, | https:// sam.g | https:// www. |
| Department of Labor | | 17.700 | Women's Bureau | The Womenâ€™s Bureau was created by law in 1920 to formulate | https:// sam.g | https:// www. |
| Department of Labor | | 17.701 | Women in Apprenticeship and Nontraditional | This program is intended to award grants to community- | https:// sam.g | https:// www. |
| Department of Labor | | 17.720 | Disability Employment Policy Development | The Office of Disability Employment Policy (ODEP) provides | https:// sam.g | https:// www. |
| Department of Labor | | 17.801 | Jobs for Veterans State Grants | The Jobs for Veterans State Grants (JVSG) program provides | https:// sam.g | https:// www. |
| Department of Labor | | 17.805 | Homeless Veteransâ€™ Reintegration Program | The Homeless Veteransâ€™ Reintegration Program | https:// sam.g | https:// www. |
| Department of Labor | | 17.807 | Transition Assistance Program | To provide employment instruction, information and assistance to | https:// sam.g | https:// www. |
| Department of State | | 19.009 | Academic Exchange Programs - Undergraduate | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.010 | Academic Exchange Programs - Hubert H. Humphrey Fellowship | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.011 | Academic Exchange Programs - Special Academic Exchange | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.012 | Professional and Cultural Exchange Programs - Special | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.013 | Thomas R. Pickering Foreign Affairs Fellowship Program | As authorized by authorizations stated above. Pickering | https:// sam.g | https:// www. |
| Department of State | | 19.015 | Cultural, Technical and Educational Centers | To assist various organizations identified by Congress to achieve | https:// sam.g | https:// www. |
| Department of State | | 19.017 | Environmental and Scientific Partnerships and Programs | To support sustainable growth across the globe, the Bureau of | https:// sam.g | https:// www. |
| Department of State | | 19.018 | Resettlement Support Centers (RSCs) for U.S. Refugee Resettlement | The purpose of the Resettlement Support Centers (RSCs) is to | https:// sam.g | https:// www. |
| Department of State | | 19.019 | International Programs to Combat Human Trafficking | The mission of the TIP Office is to combat human trafficking (a/k/a | https:// sam.g | https:// www. |
| Department of State | | 19.020 | Charles B. Rangel International Affairs Program | To increase the number of minorities interested in and prepared for | https:// sam.g | https:// www. |
| Department of State | | 19.021 | Investing in People in The Middle East and North Africa | To support programs, projects and activities to include (but not limited | https:// sam.g | https:// www. |
| Department of State | | 19.022 | Educational and Cultural Exchange Programs Appropriation | To provide assistance awards by U.S. diplomatic missions | https:// sam.g | https:// www. |
| Department of State | | 19.023 | Overseas Schools Program | The Office of Overseas Schools promotes quality educational | https:// sam.g | https:// www. |
| Department of State | | 19.024 | Soft Target Program for Overseas Schools | Improve physical security of overseas schools to deter or | https:// sam.g | https:// www. |
| Department of State | | 19.025 | U.S. Ambassadors Fund for Cultural Preservation | 1) Support the preservation of cultural heritage overseas | https:// sam.g | https:// www. |
| Department of State | | 19.026 | Global Peace Operations Initiative | The GPOI program enhances international capacity to effectively | https:// sam.g | https:// www. |
| Department of State | | 19.027 | Energy Governance and Reform Programs | The U.S. Department of Stateâ€™s Bureau of Energy Resources | https:// sam.g | https:// www. |
| Department of State | | 19.029 | The U.S. President's Emergency Plan for AIDS Relief Programs | The Office of the U.S. Global AIDS Coordinator is | https:// sam.g | https:// www. |
| Department of State | | 19.033 | Global Threat Reduction | The U.S. Department of State's Office of Cooperative Threat | https:// sam.g | https:// www. |
| Department of State | | 19.035 | Cyber Capacity Building | To enhance global cybersecurity | https:// sam.g | https:// www. |
| Department of State | | 19.036 | Cultural Antiquities Task Force | The Cultural Antiquities Task Force (CATF) comprises U.S. federal | https:// sam.g | https:// www. |
| Department of State | | 19.040 | Public Diplomacy Programs | To support the achievement of U.S. foreign policy goals and | https:// sam.g | https:// www. |
| Department of State | | 19.087 | International Fisheries Commissions | The commissions and organizations funded by this appropriation | https:// sam.g | https:// www. |
| Department of State | | 19.108 | Bureau of South and Central Asian Affairs | To support the goals of the U.S. Department of State, Bureau of South | https:// sam.g | https:// www. |
| Department of State | | 19.121 | Conflict and Stabilization Operations | The Bureau of Conflict and Stabilization Operations (CSO) is | https:// sam.g | https:// www. |
| Department of State | | 19.124 | East Asia and Pacific Grants Program | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.204 | Fishermen's Guaranty Fund | To provide for reimbursement of losses incurred as a | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of State | | 19.205 | Foreign Affairs IT (FAIT) Fellowship | Develop new Information Technology talent for the | https:// sam.g | https:// www. |
| Department of State | | 19.207 | William D. Clarke, Sr. Fellowship | Develop new Diplomatic Security talent for the Department of | https:// sam.g | https:// www. |
| Department of State | | 19.209 | Student Programs and Fellowships | Attract and recruit highly talented and qualified candidates | https:// sam.g | https:// www. |
| Department of State | | 19.220 | Ambassadors' Special Self Help Fund | The U.S. Ambassadors' Special Self-Help program is a grass- | https:// sam.g | https:// www. |
| Department of State | | 19.221 | Regional Democracy Program | To support democracy and human rights in the Near East region. | https:// sam.g | https:// www. |
| Department of State | | 19.222 | Trans-Sahara Counterterrorism Partnership (TSCTP) | The Trans-Sahara Counterterrorism Partnership (TSCTP) | https:// sam.g | https:// www. |
| Department of State | | 19.223 | South Sudan and Sudan Assistance Program | The goal of the Sudan and South Sudan Assistance Program is | https:// sam.g | https:// www. |
| Department of State | | 19.224 | Nonproliferation and Disarmament Fund | The Nonproliferation and Disarmament Fund (NDF) provides a | https:// sam.g | https:// www. |
| Department of State | | 19.225 | Africa Regional Democracy Fund | This program supports democratic processes and promotes strong | https:// sam.g | https:// www. |
| Department of State | | 19.300 | Program for Study of Eastern Europe and the Independent States of | Develop, support, and deepen American expertise in the | https:// sam.g | https:// www. |
| Department of State | | 19.301 | The Secretary's Office of the Global Partnership Initiative (S/ | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.303 | Decrypting PRC Industrial and Technology Policy | Funds will support a comprehensive research plan to | https:// sam.g | https:// www. |
| Department of State | | 19.322 | Economic Statecraft | To place economics and market forces at the center of U.S. foreign | https:// sam.g | https:// www. |
| Department of State | | 19.334 | Office of the Biological Policy Staff | The Office of The Biological Policy Staff (ISN/BPS) works to | https:// sam.g | https:// www. |
| Department of State | | 19.345 | International Programs to Support Democracy, Human Rights and | DRL funds targeted democracy and human rights programs to | https:// sam.g | https:// www. |
| Department of State | | 19.355 | International Programs to Support the Freedom of Religion or Belief | IRF programs counter government or societal constraints on religious | https:// sam.g | https:// www. |
| Department of State | | 19.400 | Academic Exchange Programs - Graduate Students | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.401 | Academic Exchange Programs - Scholars | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.402 | Professional and Cultural Exchange Programs - International | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.408 | Academic Exchange Programs - Teachers | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.415 | Professional and Cultural Exchange Programs - Citizen | Citizen Exchange activities include American Film | https:// sam.g | https:// www. |
| Department of State | | 19.421 | Academic Exchange Programs - English Language Programs | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.432 | Academic Exchange Programs - Educational Advising and Student | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.440 | ECA U.S. Speaker Program | As authorized by the Fulbright-Hays Act, the Office of the U.S. | https:// sam.g | https:// www. |
| Department of State | | 19.441 | ECA â€“ American Spaces | As authorized by the Fulbright-Hays Act, American Spaces are | https:// sam.g | https:// www. |
| Department of State | | 19.450 | ECA Individual Grants | To provide individual assistance awards by the Bureau of | https:// sam.g | https:// www. |
| Department of State | | 19.451 | Special International Exchange Grant Programs | To provide special grants for international exchanges and other | https:// sam.g | https:// www. |
| Department of State | | 19.452 | International Exchange Alumni Programs | As authorized by the Fulbright-Hays Act, the Bureau of Educational | https:// sam.g | https:// www. |
| Department of State | | 19.500 | Middle East Partnership Initiative | The U.S.-Middle East Partnership Initiative supports organizations | https:// sam.g | https:// www. |
| Department of State | | 19.501 | Public Diplomacy Programs for Afghanistan and | The U.S. Government (USG) is providing resources to promote | https:// sam.g | https:// www. |
| Department of State | | 19.502 | Middle East Regional Cooperation Program | The Middle East Regional Cooperation (MERC) Program funds | https:// sam.g | https:// www. |
| Department of State | | 19.510 | U.S. Refugee Admissions Program | Initial reception and placement program for refugees approved for | https:// sam.g | https:// www. |
| Department of State | | 19.511 | Overseas Refugee Assistance Programs for East Asia | The Bureau of Population, Refugees, and Migration (PRM) | https:// sam.g | https:// www. |
| Department of State | | 19.515 | Contributions to International Organizations for | Provision of voluntary and assessed contributions to Public | https:// sam.g | https:// www. |
| Department of State | | 19.517 | Overseas Refugee Assistance Programs for Africa | Assistance will contribute to the basic needs of refugees and | https:// sam.g | https:// www. |
| Department of State | | 19.518 | Overseas Refugee Assistance Programs for Western | Bureau support saves lives, eases suffering, and promotes human | https:// sam.g | https:// www. |
| Department of State | | 19.519 | Overseas Refugee Assistance Program for Middle East and North | Providing protection and assistance to Syrian and Iraqi | https:// sam.g | https:// www. |
| Department of State | | 19.520 | Overseas Refugee Assistance Programs for Europe | Funding of organizations that assist refugees and internally | https:// sam.g | https:// www. |
| Department of State | | 19.522 | Overseas Refugee Assistance Programs for Strategic Global | Bureau support under this program includes select support to unique | https:// sam.g | https:// www. |
| Department of State | | 19.523 | Overseas Refugee Assistance Program for South Asia | The Bureau will continue support for the return and reintegration | https:// sam.g | https:// www. |
| Department of State | | 19.600 | Bureau of Near Eastern Affairs | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.601 | Syria Assistance Program | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.662 | Fiscal Transparency Innovation Fund | To help governments to improve budget transparency and to | https:// sam.g | https:// www. |
| Department of State | | 19.663 | Global Telecommunications and Emerging | â€¢ Build Connections: Expand and increase secure Internet access | https:// sam.g | https:// www. |
| Department of State | | 19.665 | Cyberspace and Digital Policy | Build Connections by promoting investments in secure, diverse, and | https:// sam.g | https:// www. |
| Department of State | | 19.666 | EUR/ACE National Endowment for Democracy Small | To advance democracy in Europe, Eurasia and Central Asia by | https:// sam.g | https:// www. |
| Department of State | | 19.701 | Global Counterterrorism Programs | The Bureau of Counterterrorism (CT) builds foreign partner | https:// sam.g | https:// www. |
| Department of State | | 19.703 | Criminal Justice Systems | Institutionalize rule of law by developing and expanding criminal | https:// sam.g | https:// www. |
| Department of State | | 19.704 | Counter Narcotics | Disrupt the overseas production and trafficking of illicit drugs | https:// sam.g | https:// www. |
| Department of State | | 19.705 | Trans-National Crime | Minimize the impact of transnational crime and criminal networks on | https:// sam.g | https:// www. |
| Department of State | | 19.706 | Partnership for Regional East Africa Counterterrorism | The objective of this program is to build the capacity and resilience | https:// sam.g | https:// www. |
| Department of State | | 19.707 | Assessed Contributions for State Department | To support the goals of the U.S. Department of State. This is for | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of State | | 19.750 | Bureau of Western Hemisphere Affairs (WHA) Grant Programs | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.777 | 100,000 Strong in the Americas Innovation Fund | Increase the number of grants available to HEIs throughout the Western | https:// sam.g | https:// www. |
| Department of State | | 19.790 | Contributions to International Organizations- CIO | US membership in organizations to which fees are given to | https:// sam.g | https:// www. |
| Department of State | | 19.791 | Voluntary Contributions to International Organizations | IO promotes U.S. foreign policy strategic goals and U.S. interests | https:// sam.g | https:// www. |
| Department of State | | 19.792 | Assessed Contributions to International Organizations | IO promotes U.S. foreign policy strategic goals and U.S. interests | https:// sam.g | https:// www. |
| Department of State | | 19.793 | Bureau of International Organization Affairs Grants Program | Support the foreign assistance goals and objectives of the | https:// sam.g | https:// www. |
| Department of State | | 19.800 | Weapons Removal and Abatement | To reduce the threats posed to civilian security by at-risk, | https:// sam.g | https:// www. |
| Department of State | | 19.801 | Office of Global Women's Issues | The Secretaryâ€™s Office of Global Womenâ€™s Issues | https:// sam.g | https:// www. |
| Department of State | | 19.808 | Multilateral and Nuclear Affairs | To support the goals of the U.S. Department of State. This is for | https:// sam.g | https:// www. |
| Department of State | | 19.878 | EUR-Other | The primary goal is to promote democratic and free market | https:// sam.g | https:// www. |
| Department of State | | 19.888 | Global Defense Reform Program | Enhance security sector governance and build the institutional capacity | https:// sam.g | https:// www. |
| Department of State | | 19.900 | AEECA/ESF PD Programs | To provide civil society and democracy building public diplomacy | https:// sam.g | https:// www. |
| Department of State | | 19.901 | Export Control and Related Border Security | The U.S. Department of Stateâ€™s Bureau of International Security | https:// sam.g | https:// www. |
| Department of State | | 19.903 | Cooperation on Peaceful Uses of Nuclear Energy | The goal is to support the Sustained Dialogue on Peaceful Uses, to | https:// sam.g | https:// www. |
| Department of State | | 19.948 | Organization of American States Programs | Funds shall be for Organization of American States | https:// sam.g | https:// www. |
| Department of State | | 19.973 | Assessed Contributions to International Organizations/CIPA | IO promotes U.S. foreign policy strategic goals and U.S. interests | https:// sam.g | https:// www. |
| Department of State | | 19.979 | Regional Peace and Security | The Office of Security Affairs in the Department of | https:// sam.g | https:// www. |
| Department of State | | 19.980 | Partnership for Regional East Africa Counterterrorism | The objective of this program is to build the capacity and resilience | https:// sam.g | https:// www. |
| Department of State | | 19.989 | State/African Regional - Other Economic Support Funds (ESF) | This CFDA number will be for projects and programs funded | https:// sam.g | https:// www. |
| Department of State | | 19.990 | International Justice and Accountability Programming | Increased justice and accountability worldwide. | https:// sam.g | https:// www. |
| Department of the Interior | | 15.011 | Experienced Services Program | The Experienced Services Program (ESP) will provide | https:// sam.g | https:// www. |
| Department of the Interior | | 15.012 | Outdoor Schools in National Parks | The collaboration between the NPS and Outdoor Schools are | https:// sam.g | https:// www. |
| Department of the Interior | | 15.013 | Alaska Native Science and Engineering | The Bureau of Ocean Energy Management (BOEM) provides major | https:// sam.g | https:// www. |
| Department of the Interior | | 15.014 | Supporting the Lower Mississippi Delta Initiative | The program establishes financial assistance agreements | https:// sam.g | https:// www. |
| Department of the Interior | | 15.015 | Good Neighbor Authority | The Good Neighbor Authority (GNA) is intended to expand | https:// sam.g | https:// www. |
| Department of the Interior | | 15.016 | Experienced Services Program | The Experienced Services Program (ESP) will provide | https:// sam.g | https:// www. |
| Department of the Interior | | 15.017 | Eastern Nevada Conservation, Recreation and | This program advances the Department of the Interiorâ€™s role as | https:// sam.g | https:// www. |
| Department of the Interior | | 15.018 | Energy Community Revitalization Program (ECRP) | To reduce methane and other greenhouse gas emissions, help clean | https:// sam.g | https:// www. |
| Department of the Interior | | 15.019 | Experienced Services | The ESP program provide funding that allows agencies to enter | https:// sam.g | https:// www. |
| Department of the Interior | | 15.020 | Aid To Tribal Governments | To provide funds to Indian tribal governments to support | https:// sam.g | https:// www. |
| Department of the Interior | | 15.021 | Consolidated Tribal Government | To promote Indian self determination and improve the quality of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.022 | Tribal Self-Governance | To further the goals of Indian Self-Determination by | https:// sam.g | https:// www. |
| Department of the Interior | | 15.024 | Indian Self-Determination Contract Support | To provide funds to Federally Recognized Indian Tribal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.025 | Services to Indian Children, Elderly and Families | To provide funds to Federally Recognized Indian Tribal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.026 | Indian Adult Education | To improve the educational opportunities for Indian | https:// sam.g | https:// www. |
| Department of the Interior | | 15.027 | Assistance to Tribally Controlled Community Colleges and | To provide grants for the operation and improvement of Tribal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.028 | Tribally Controlled Community College Endowments | Funding has not been provided for this program. The listing | https:// sam.g | https:// www. |
| Department of the Interior | | 15.029 | Tribal Courts | To provide funds to Federally Recognized Indian Tribal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.030 | Indian Law Enforcement | To provide funds to Indian Tribal Governments to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.031 | Indian Community Fire Protection | To provide funds to perform fire protection services for Indian | https:// sam.g | https:// www. |
| Department of the Interior | | 15.032 | Indian Economic Development | To assist Federally Recognized Indian Tribal Governments by | https:// sam.g | https:// www. |
| Department of the Interior | | 15.033 | Road Maintenance Indian Roads | To provide limited routine and preventive maintenance on BIA | https:// sam.g | https:// www. |
| Department of the Interior | | 15.034 | Agriculture on Indian Lands | To protect and restore the agricultural (cropland and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.035 | Forestry on Indian Lands | To maintain, protect, enhance, and develop Indian forest resources | https:// sam.g | https:// www. |
| Department of the Interior | | 15.036 | Indian Rights Protection | To protect Indian rights guaranteed through treaty or statute by | https:// sam.g | https:// www. |
| Department of the Interior | | 15.037 | Water Resources on Indian Lands | To support Indian tribes in the effective and efficient management, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.038 | Minerals and Mining on Indian Lands | The objectives of the Energy and Mineral Development Program | https:// sam.g | https:// www. |
| Department of the Interior | | 15.040 | Real Estate Programs Indian Lands | To provide real property management, counseling, and land | https:// sam.g | https:// www. |
| Department of the Interior | | 15.041 | Environmental Management Indian | To determine environmental impacts of Federal projects on | https:// sam.g | https:// www. |
| Department of the Interior | | 15.042 | Indian School Equalization | To provide funding for primary and secondary education. | https:// sam.g | https:// www. |
| Department of the Interior | | 15.043 | Indian Child and Family Education | The Family And Child Education (FACE) program is designed to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.044 | Indian Schools Student Transportation | To provide funds to each Bureau of Indian Education (BIE) funded | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.046 | Administrative Cost Grants for Indian Schools | To provide grants to tribes and tribal organizations operating | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.047 | Indian Education Facilities, Operations, and Maintenance | To provide funds to BIE funded elementary schools, secondary | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.048 | Bureau of Indian Affairs Facilities Operations and Maintenance | To provide funds for basic operating services to Bureau-owned or | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.051 | Endangered Species on Indian Lands | To comply with the Endangered Species Act, the Northern | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.052 | Litigation Support for Indian Rights | To establish or defend Indian property or treaty rights through judicial, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.053 | Attorney Fees Indian Rights | To assist Federally Recognized Tribes in protecting their treaty | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.057 | Navajo-Hopi Indian Settlement | To implement those provisions of the Navajo-Hopi Settlement | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.058 | Indian Post Secondary Schools | To provide postsecondary educational | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.059 | Indian Graduate Student Scholarships | To provide financial aid to eligible Indian students to enable them | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.060 | Indian Vocational Training United Tribes Technical College | To provide vocational training to individual American Indians | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.061 | Indian Job Placement United Sioux Tribes Development | To provide job development, counseling, social | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.062 | Replacement and Repair of Indian Schools | Providing safe, functional, code-compliant, economical, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.063 | Improvement and Repair of Indian Detention Facilities | To provide safe, functional, code and standards compliant, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.065 | Safety of Dams on Indian Lands | To improve the structural integrity of dams on Indian lands, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.066 | Tribal Great Lakes Restoration Initiative | The BIA Tribal GLRI Program provides financial assistance to | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.067 | Strengthening Tribal Nations | To provide funding to advance nation-to-nation relationships, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.068 | Native Hawaiian Community Guest Stewardship | The Office of Native Hawaiian Relationsâ€™ (ONHR) | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.069 | Zoonotic Disease Initiative | Assistance will be available for a range of activities with the focus | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.070 | Experienced Services Program | The ESP program provides funding that allows agencies to enter | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.071 | Pacific Northwest and Hawaiian Islands Arts | Provide enhanced Pacific Northwest and Hawaiian Islands art | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.072 | USGS Experienced Services Program | To implement legislation that authorizes cooperative agreements | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.073 | Earth Mapping Resources Initiative | The primary purpose of the Earth Mapping Resources Initiative is | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.074 | Small Surface Water and Groundwater Storage Projects | The Bipartisan Infrastructure Law, Public Law 117-58, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.075 | Blackfeet Water Rights Settlement | In 2016, the Blackfeet Water Rights Settlement passed (PL | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.076 | Musselshell-Judith Rural Water System | The purpose of this act is to ensure a safe and adequate municipal, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.077 | Rehabilitation, Reconstruction, or Replacement of Carey | Section 40904(b) of the Bipartisan Infrastructure Law, also known as the | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.078 | Snow Water Supply Forecasting | To fund activities to improve the skill of water supply forecasts | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.079 | Experienced Services Program (ESP) | The ESP program provide funding that allows agencies to enter | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.088 | Department of Interior Wildfire Management - Preparedness | Provide funding to local governments with fire protection | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.089 | DOI - HQ Experienced Services Program | The Experienced Services Program (ESP) will provide | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.098 | Native Hawaiian Climate Resilience Program | The goal of the Native Hawaiian Climate Resilience Program is | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.099 | Abandoned Hardrock Mine Reclamation (AHMR/AML) Grants | The U.S. Department of the Interior has been authorized to establish | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.108 | Indian Employment Assistance | To provide vocational training and employment | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.113 | Indian Social Services Welfare Assistance | To provide financial assistance for basic needs for eligible | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.114 | Indian Education Higher Education Grant | To provide financial aid to eligible Indian students to enable them | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.124 | Indian Loans Economic Development | To provide assistance to Federally Recognized Indian Tribal | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.130 | Indian Education Assistance to Schools | To fund programs that meet the unique and specialized needs of | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.133 | Native American Business Development Institute | Under its Native American Business Development Institute | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.141 | Indian Housing Assistance | To use the Housing Improvement Program (HIP) resources of the | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.144 | Indian Child Welfare Act Title II Grants | To promote the stability and security of American Indian tribes | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.146 | Ironworker Training | To provide ironworker vocational training, apprenticeships, and | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.147 | Tribal Courts Trust Reform Initiative | To provide grant funds to Federally Recognized Indian | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.148 | Tribal Energy Development Capacity Grants | To provide development grants to Indian tribes for use in developing | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.149 | FOCUS on Student Achievement | The FOCUS program targets schools where student achievement is | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.150 | Juvenile Detention Education | The Juvenile Detention Education Program was designed to provide | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.151 | Education Enhancements | Education Program Enhancements provide resources for special | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.155 | Office of the Special Trustee for American Indians, Field | The objectives of these Office of the Special Trustee (OST) grants | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.156 | Tribal Climate Resilience | The Cooperative Landscape Conservation (CLC) | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.159 | Cultural Resources Management | To ensure the proper management, protection, and | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.160 | BIA Wildland Urban Interface Community Fire Assistance | To implement the National Fire Plan and assist communities at | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.161 | Native Language Immersion Grant | Provide capacity building grants for Bureau-funded schools | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.162 | Tiwahe Housing | Tiwahe is a coordinated service delivery model that increases access to | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.163 | Tribal Education Departments | Make grants and provide technical assistance to tribes for | https:// sam.g | https:// www. |
| Department of the Interior | | 15.164 | Land Acquisition Funding Program | Assist federally recognized Tribes in acquiring land | https:// sam.g | https:// www. |
| Department of the Interior | | 15.165 | Tribal Electrification Program | Tribal Electrification Program through the Inflation Reduction Act | https:// sam.g | https:// www. |
| Department of the Interior | | 15.214 | Non-Sale Disposals of Mineral Material | To permit free use of certain mineral material from federally owned | https:// sam.g | https:// www. |
| Department of the Interior | | 15.222 | Cooperative Inspection Agreements with States and Tribes | To provide for the Bureau of Land Management (BLM) to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.224 | Cultural and Paleontological Resources | The purpose of the program is to manage cultural and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.225 | Recreation and Visitor Services | The BLM makes it a priority to enhance access to the outdoors | https:// sam.g | https:// www. |
| Department of the Interior | | 15.228 | BLM Fuels Management and Community Fire | Wildland Fire Fuels Management and Community Assistance | https:// sam.g | https:// www. |
| Department of the Interior | | 15.229 | Wild Horse and Burro Resource Management | The Bureau of Land Management (BLM) manages and protects | https:// sam.g | https:// www. |
| Department of the Interior | | 15.230 | Invasive and Noxious Plant Management | This program continues to advance the Department of the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.232 | Joint Fire Science Program | This program continues to advance the Administrationâ€™s | https:// sam.g | https:// www. |
| Department of the Interior | | 15.233 | Forest and Woodlands Resource Management | The Bureau of Land Management (BLM) Forest and Woodland | https:// sam.g | https:// www. |
| Department of the Interior | | 15.234 | Secure Rural Schools and Community Self-Determination | Since its initial passage in 2000, the Secure Rural Schools (SRS) | https:// sam.g | https:// www. |
| Department of the Interior | | 15.235 | Southern Nevada Public Land Management | The Southern Nevada Public Land Management Act | https:// sam.g | https:// www. |
| Department of the Interior | | 15.236 | Environmental Quality and Protection | The Bureau of Land Management (BLM) and its cooperative | https:// sam.g | https:// www. |
| Department of the Interior | | 15.237 | Rangeland Resource Management | The Bureau of Land Management (BLM) Rangeland | https:// sam.g | https:// www. |
| Department of the Interior | | 15.239 | Management Initiatives | To provide a variety of Bureau of Land Management financial | https:// sam.g | https:// www. |
| Department of the Interior | | 15.241 | Indian Self-Determination Act Contracts, Grants and | To provide maximum Indian participation in the government and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.243 | Youth Conservation Opportunities on Public Lands | BLMâ€™s continued commitment to reduce and streamline its | https:// sam.g | https:// www. |
| Department of the Interior | | 15.244 | Aquatics Resources Management | The Bureau of Land Managementâ€™s Aquatic Resources | https:// sam.g | https:// www. |
| Department of the Interior | | 15.245 | Plant Conservation and Restoration Management | The Bureau of Land Managementâ€™s Plant Conservation and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.246 | Threatened and Endangered Species | The T&E Species Program has an important role in | https:// sam.g | https:// www. |
| Department of the Interior | | 15.247 | Wildlife Resource Management | The Wildlife Program fulfills the Department of the Interior visions of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.248 | National Landscape Conservation System | This program aims to increase the effectiveness of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.250 | Regulation of Surface Coal Mining and Surface Effects of | To assist the States and Tribes with active coal mining in administering | https:// sam.g | https:// www. |
| Department of the Interior | | 15.252 | Abandoned Mine Land Reclamation (AMLR) | The objectives of the Abandoned Mine Lands (AML) Program are | https:// sam.g | https:// www. |
| Department of the Interior | | 15.253 | Not-for-Profit AMD Reclamation | The Not-for-Profit, Acid Mine Drainage (AMD) Reclamation - | https:// sam.g | https:// www. |
| Department of the Interior | | 15.254 | OSM/VISTA AmeriCorps | The purpose of the OSMRE Youth Program is to carry out | https:// sam.g | https:// www. |
| Department of the Interior | | 15.255 | Science and Technology Projects Related to Coal Mining | The goal of the OSMRE Applied Science Program is to develop | https:// sam.g | https:// www. |
| Department of the Interior | | 15.406 | National Park Service Centennial Challenge | The National Park Centennial Initiative is an effort to prepare | https:// sam.g | https:// www. |
| Department of the Interior | | 15.407 | Keweenaw National Historical Park (NHP) Preservation Grants | The Keweenaw NHP Preservation Grant program is intended to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.408 | Bureau of Ocean Energy Management Renewable Energy | The Renewable Energy Program oversees the leasing of areas on the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.421 | Alaska Coastal Marine Institute | The Bureau of Ocean Energy Management (BOEM) provides major | https:// sam.g | https:// www. |
| Department of the Interior | | 15.423 | Bureau of Ocean Energy Management (BOEM) Environmental | The Bureau of Ocean Energy Management (BOEM) provides major | https:// sam.g | https:// www. |
| Department of the Interior | | 15.424 | Marine Minerals Activities | BOEM provides financial assistance to qualified partners to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.427 | Federal Oil and Gas Royalty Management State and Tribal | To ensure that all oil, gas, and solid minerals originated on the public | https:// sam.g | https:// www. |
| Department of the Interior | | 15.429 | State Select | ONRR shares 90 percent of oil and gas royalties with the State | https:// sam.g | https:// www. |
| Department of the Interior | | 15.430 | 8(g) State Coastal Zone | ONRR shares 27 percent of mineral leasing revenue derived | https:// sam.g | https:// www. |
| Department of the Interior | | 15.431 | Alaska Settlement Agreement | ONRR shares 100 percent with the State of Alaska to be paid | https:// sam.g | https:// www. |
| Department of the Interior | | 15.432 | California Refuge Account | ONRR shares 40.87 percent of Oil and Gas Rents, Royalties, and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.433 | Flood Control Act Lands | ONRR shares 75 percent of mineral leasing revenue with | https:// sam.g | https:// www. |
| Department of the Interior | | 15.434 | Geothermal Resources | ONRR shares 50 percent of mineral leasing revenue with | https:// sam.g | https:// www. |
| Department of the Interior | | 15.435 | GoMESA | ONRR shares 37.5 percent of selected revenue with Gulf | https:// sam.g | https:// www. |
| Department of the Interior | | 15.436 | Late Disbursement Interest | ONRR pays late disbursement interest on subject payments | https:// sam.g | https:// www. |
| Department of the Interior | | 15.437 | Minerals Leasing Act | As directed by the Minerals Leasing Act, the Office of Natural | https:// sam.g | https:// www. |
| Department of the Interior | | 15.438 | National Forest Acquired Lands | ONRR shares 25 percent of minerals leasing revenue with | https:// sam.g | https:// www. |
| Department of the Interior | | 15.439 | National Petroleum Reserve - Alaska | ONRR shares 50 percent of NPR-A oil and gas mineral leasing | https:// sam.g | https:// www. |
| Department of the Interior | | 15.440 | South Half of the Red River | ONRR shares 37.5 percent of mineral leasing revenue with | https:// sam.g | https:// www. |
| Department of the Interior | | 15.441 | Safety and Environmental Research and Data | The Bureau of Safety and Environmental Enforcement (BSEE) | https:// sam.g | https:// www. |
| Department of the Interior | | 15.442 | Alaska Native Science and Engineering | The Bureau of Safety and Environmental Enforcement (BSEE) | https:// sam.g | https:// www. |
| Department of the Interior | | 15.443 | Not For Profit | The Bureau of Ocean Energy Management (BOEM) provides major | https:// sam.g | https:// www. |
| Department of the Interior | | 15.444 | Take Pride | The Bureau of Ocean Energy Management (BOEM) provides major | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.504 | Water Recycling and Desalination Construction Programs | To make funding available for water recycling and | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.506 | Water Desalination Research and Development | There are three goals for the program: (1) augment the supply of | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.507 | WaterSMART (Sustain and Manage Americaâ€™s | To provide cost-shared funding for various types of water | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.508 | Providing Water to At-Risk Natural Desert Terminal Lakes | All funding has been obligated; no new projects expected | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.509 | Title II, Colorado River Basin Salinity Control | To provide financial and technical assistance to: (1) identify salt source | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.510 | Colorado Ute Indian Water Rights Settlement Act | To supply municipal and industrial water supply to the Ute Mountain | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.511 | Cultural Resources Management | To manage and protect cultural resources on Reclamation land; | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.512 | Central Valley Improvement Act, Title XXXIV | The purposes of the Central Valley Project Improvement Act | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.514 | Reclamation States Emergency Drought Relief | Funding under the Drought Response Program will be | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.516 | Fort Peck Reservation Rural Water System | To ensure a safe and adequate municipal, rural and industrial | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.517 | Fish and Wildlife Coordination Act | To provide financial assistance, through grants or cooperative | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.518 | Garrison Diversion Unit | To meet the water needs within the State of North Dakota by | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.519 | Indian Tribal Water Resources Development, | To increase opportunities for Indian tribes to develop, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.520 | Lewis and Clark Rural Water System | To provide safe and adequate municipal, rural, and industrial | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.521 | Lower Rio Grande Valley Water Resources Conservation and | Awards will be made to investigate and identify opportunities to improve | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.522 | Mni Wiconi Rural Water Supply Project | To ensure a safe and adequate municipal, rural, and industrial | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.524 | Recreation Resources Management | To provide cost-share opportunities with non-Federal recreation | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.525 | Rocky Boy's/North Central Montana Regional Water System | To ensure a safe and adequate rural, municipal, and industrial | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.526 | San Gabriel Basin Restoration | To design, construct, operate, and maintain water quality projects | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.529 | Upper Colorado and San Juan River Basins Endangered Fish | To authorize the Bureau of Reclamation to provide cost sharing for | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.530 | Water Conservation Field Services (WCFS) | The goal of the Water Conservation Field Services Program | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.531 | Yakima River Basin Water Enhancement (YRBWE) | Within the Yakima River Basin: (1) to protect, mitigate, and enhance | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.532 | Central Valley, Trinity River Division, Trinity River Fish and Wildlife | To address impacts of the Central Valley Project (CVP) on fish, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.533 | California Water Security and Environmental | The purpose of the CALFED Bay-Delta Authorization Act | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.535 | Upper Colorado River Basin Fish and Wildlife Mitigation | Assistance is provided to recipients to protect, restore and enhance | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.537 | Middle Rio Grande Endangered Species Collaborative | The Middle Rio Grande Endangered Species Collaborative Program | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.538 | Lower Colorado River Multi-Species Conservation | The MSCPâ€™s purposes are: (1) Protect the lower | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.539 | Equus Beds Division Acquifer Storage Recharge | To design and construct the City of Wichitaâ€™s Aquifer | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.540 | Lake Mead/Las Vegas Wash | The objective of this program is to develop and implement | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.541 | Colorado River Basin Act of 1968 | The Colorado River Basin Project Act of 1968, authorized the | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.542 | Arizona Water Settlement Act of 2004 | Pursuant to the Arizona Water Settlements Act of 2004, the Secretary | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.543 | Lake Tahoe Regional Wetlands Development | To assist in addressing the past degradation of Lake Tahoe and its | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.544 | Platte River Recovery Implementation | Implementation of the Platte River Recovery Program Cooperative | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.546 | Youth Conservation | Promote and stimulate public purposes such as education, job training, | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.550 | FISH-ABLE Fun with Reclamation | To provide opportunities for disabled and disadvantaged children | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.552 | Navajo-Gallup Water Supply | To provide financial assistance to design and construct portions | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.553 | Eastern New Mexico Rural Water System | Provide potable surface water to communities in Eastern New Mexico. | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.554 | Cooperative Watershed Management | Reclamationâ€™s WaterSMART Cooperative Watershed | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.555 | San Joaquin River Restoration | The objective of the San Joaquin River Restoration Program | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.557 | Applied Science Grants | The objective of the Applied Science Grants is to improve access to | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.558 | White Mountain Apache Tribe Rural Water System | Pursuant to the White Mountain Apache Tribe Water Rights | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.559 | New Mexico Rio Grande Basin Pueblos Irrigation Infrastructure | Rehabilitate and repair irrigation infrastructure of the Rio Grande | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.560 | SECURE Water Act â€" Research Agreements | To fund research activities that are designed to conserve | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.563 | Suisun Marsh Preservation Agreement | Execute and implement the agreement between the Department of the | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.564 | Central Valley Project Conservation | Provide financial support for activities to benefit federally listed | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.565 | Implementation of the Taos Pueblo Indian water rights settlement | The Claims Resolution Act of 2010 was signed into law on December | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.566 | Upper Klamath Basin Water Supply Alignment | To plan, implement, and administer programs to align water supplies and | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.567 | Colorado River System Conservation Pilot | This program supports conservation projects that create â€œsystem | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.569 | Educational Outreach | The Water Education Foundation has developed several | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.570 | Bay-Delta Restoration Program | The CALFED Water Use Efficiency Grant program promotes | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.571 | Salton Sea Program | Objectives of this program are to develop and implement | https:/ / sam.g | https:/ / www. |
| Department of the Interior | | 15.572 | Agricultural Water Use Efficiency Program | The objective of the Agricultural Water Conservation Efficiency | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.574 | Water Storage Enhancement | Section 4007 of Public Law 114-322, also known as The Water | https:// sam.g | https:// www. |
| Department of the Interior | | 15.576 | Yakima River Basin Water Enhancement Phase III (Yakima Basin | To fund grants or cooperative agreements for the purpose of land | https:// sam.g | https:// www. |
| Department of the Interior | | 15.577 | Domestic Water Supply Projects | To provide funding for planning, design, or construction of water | https:// sam.g | https:// www. |
| Department of the Interior | | 15.580 | Aquatic Ecosystem Restoration Program | The objective of the Aquatic Ecosystem Restoration Program is | https:// sam.g | https:// www. |
| Department of the Interior | | 15.605 | Sport Fish Restoration | Sport Fish Restoration funds support activities designed to restore, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.608 | Fish and Aquatic Conservation - Aquatic Invasive Species | Details vary by subprogram. Brief summaries provided | https:// sam.g | https:// www. |
| Department of the Interior | | 15.611 | Wildlife Restoration and Basic Hunter Education and Safety | The Pittman-Robertson Wildlife Restoration Act provides grants to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.614 | Coastal Wetlands Planning, Protection and Restoration | To provide competitive matching grants to coastal States for | https:// sam.g | https:// www. |
| Department of the Interior | | 15.615 | Cooperative Endangered Species Conservation Fund | Cooperative Endangered Species Conservation Fund | https:// sam.g | https:// www. |
| Department of the Interior | | 15.616 | Clean Vessel Act | This program provides funding to States, the District of Columbia, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.619 | Rhinoceros and Tiger Conservation Fund | To provide financial assistance for projects for the effective long- | https:// sam.g | https:// www. |
| Department of the Interior | | 15.620 | African Elephant Conservation Fund | To provide financial assistance to support projects that will | https:// sam.g | https:// www. |
| Department of the Interior | | 15.621 | Asian Elephant Conservation Fund | To provide financial assistance to support the effective long-term | https:// sam.g | https:// www. |
| Department of the Interior | | 15.622 | Sportfishing and Boating Safety Act | This program provides funding to States, the District of Columbia, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.623 | North American Wetlands Conservation Fund | To provide grant funds for wetlands conservation projects in | https:// sam.g | https:// www. |
| Department of the Interior | | 15.626 | Enhanced Hunter Education and Safety | This program provides funds for the enhancement of hunter | https:// sam.g | https:// www. |
| Department of the Interior | | 15.628 | Multistate Conservation Grant | This program provides funding for sport fish and wildlife restoration | https:// sam.g | https:// www. |
| Department of the Interior | | 15.629 | Great Ape Conservation Fund - Africa | To provide financial assistance for projects for the effective long- | https:// sam.g | https:// www. |
| Department of the Interior | | 15.630 | Coastal | To provide technical and financial assistance to partners to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.631 | Partners for Fish and Wildlife | Deliver Department of the Interior priorities and US Fish and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.634 | State Wildlife Grants | The primary purpose of the State Wildlife Grant (SWG) Program is to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.635 | Neotropical Migratory Bird Conservation | To assist in the conservation of neotropical migratory | https:// sam.g | https:// www. |
| Department of the Interior | | 15.636 | Alaska Subsistence Management | To identify and provide information needed to sustain subsistence | https:// sam.g | https:// www. |
| Department of the Interior | | 15.637 | Migratory Bird Joint Ventures | The objectives of this program are to support projects that protect, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.639 | Tribal Wildlife Grants | Support the development and implementation of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.640 | Latin America and Caribbean Regional | The mission of the Latin America Regional Program is to provide | https:// sam.g | https:// www. |
| Department of the Interior | | 15.643 | Alaska Migratory Bird Co-Management Council | To facilitate and administer regional programs to involve | https:// sam.g | https:// www. |
| Department of the Interior | | 15.645 | Marine Turtle Conservation Fund | This program funds Marine Turtle and Tortoise and Freshwater | https:// sam.g | https:// www. |
| Department of the Interior | | 15.647 | Migratory Bird Conservation | To maintain and enhance populations and habitats of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.648 | Central Valley Project Improvement Act (CVPIA) | To protect, restore, and enhance fish, wildlife, and associated habitats | https:// sam.g | https:// www. |
| Department of the Interior | | 15.651 | Central Africa Regional | The Central Africa Regional Program supports projects in | https:// sam.g | https:// www. |
| Department of the Interior | | 15.652 | Invasive Species | To encourage coordination and integration of efforts | https:// sam.g | https:// www. |
| Department of the Interior | | 15.653 | National Outreach and Communication | To improve communications with anglers, boaters, and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.654 | National Wildlife Refuge System Enhancements | To provide technical and financial assistance to identify, conserve, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.655 | Migratory Bird Monitoring, Assessment and Conservation | Working with others to conserve, enhance, and better understand the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.657 | Endangered Species Recovery Implementation | Recovery Implementation: To provide federal financial | https:// sam.g | https:// www. |
| Department of the Interior | | 15.658 | Natural Resource Damage Assessment and Restoration | The purpose of the Natural Resource Damage Assessment | https:// sam.g | https:// www. |
| Department of the Interior | | 15.660 | Candidate Species Conservation | The objective is to secure candidate and other at-risk species | https:// sam.g | https:// www. |
| Department of the Interior | | 15.661 | Lower Snake River Compensation Plan | To mitigate for the losses of fish and wildlife caused by the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.662 | Great Lakes Restoration | To provide technical and financial assistance to implement the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.663 | NFWF-USFWS Conservation Partnership | Partnering with individuals, government agencies, nonprofit | https:// sam.g | https:// www. |
| Department of the Interior | | 15.664 | Fish and Wildlife Coordination and Assistance | The FWS established this assistance listing to be used: 1) temporarily | https:// sam.g | https:// www. |
| Department of the Interior | | 15.665 | National Wetlands Inventory | Emergency Wetlands Resources Act - National Wetlands | https:// sam.g | https:// www. |
| Department of the Interior | | 15.666 | Endangered Species Conservation-Wolf Livestock Loss | To provide federal financial assistance to livestock producers | https:// sam.g | https:// www. |
| Department of the Interior | | 15.667 | Highlands Conservation | To conserve priority lands and natural resources and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.668 | Coastal Impact Assistance | The USFWS is no longer making awards under this program. The | https:// sam.g | https:// www. |
| Department of the Interior | | 15.669 | Cooperative Landscape Conservation | The Collaborative Landscape Conservation program | https:// sam.g | https:// www. |
| Department of the Interior | | 15.670 | Adaptive Science | The U.S. Fish and Wildlife Service (USFWS) uses a | https:// sam.g | https:// www. |
| Department of the Interior | | 15.671 | Yukon River Salmon Research and Management | The U.S. Fish and Wildlife Service (Service) receives funds | https:// sam.g | https:// www. |
| Department of the Interior | | 15.674 | National Fire Plan-Wildland Urban Interface Community | To implement the National Cohesive Wildland Fire | https:// sam.g | https:// www. |
| Department of the Interior | | 15.676 | Youth Engagement, Education, and Employment | To provide experiential, education, and employment | https:// sam.g | https:// www. |
| Department of the Interior | | 15.677 | Hurricane Sandy Disaster Relief Activities-FWS | To provide technical and financial assistance to identify, protect, | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.678 | Cooperative Ecosystem Studies Units | The Cooperative Ecosystem Studies Units (CESU) Network | https:// sam.g | https:// www. |
| Department of the Interior | | 15.679 | Combating Wildlife Trafficking | The goal of this grant program is to provide financial assistance to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.680 | Mexican Wolf Recovery | To provide federal financial assistance to secure Mexican Wolf | https:// sam.g | https:// www. |
| Department of the Interior | | 15.681 | Cooperative Agriculture | The objectives for the use of cooperative agriculture in the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.682 | Experienced Services | To enable the agency to work with select NGOs to fill a wide variety of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.683 | Prescott Marine Mammal Rescue Assistance | To provide financial assistance to eligible entities for: response, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.684 | White-nose Syndrome National Response Implementation | To conserve and recover bat species affected by the fungal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.685 | National Fish Passage | To restore native fish and other aquatic species to self- | https:// sam.g | https:// www. |
| Department of the Interior | | 15.686 | National Fish Habitat Partnership | To comprehensively address the causes of fish habitat decline by | https:// sam.g | https:// www. |
| Department of the Interior | | 15.687 | Great Lakes Sea Lamprey Control | To work with partners to assess sea lamprey abundance in the Great | https:// sam.g | https:// www. |
| Department of the Interior | | 15.688 | Great Lakes Fish and Wildlife Restoration Act | To provide assistance to States, Indian Tribes, and other interested | https:// sam.g | https:// www. |
| Department of the Interior | | 15.689 | Great Ape Conservation Fund-Asia | To provide financial assistance for projects for the effective long- | https:// sam.g | https:// www. |
| Department of the Interior | | 15.690 | Rhinoceros Conservation Fund-Africa | Provide financial assistance for projects for the effective, long- | https:// sam.g | https:// www. |
| Department of the Interior | | 15.785 | Nicodemus National Historic Site | The town of Nicodemus, in Kansas, has national | https:// sam.g | https:// www. |
| Department of the Interior | | 15.805 | Assistance to State Water Resources Research Institutes | To provide financial support to Water Resources Research | https:// sam.g | https:// www. |
| Department of the Interior | | 15.807 | Earthquake Hazards Program Assistance | To support earthquake hazards research and monitoring in order to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.808 | U.S. Geological Survey Research and Data Collection | To support research complementary to USGS program efforts | https:// sam.g | https:// www. |
| Department of the Interior | | 15.810 | National Cooperative Geologic Mapping | To produce geologic maps of areas in which knowledge of geology is | https:// sam.g | https:// www. |
| Department of the Interior | | 15.812 | Cooperative Research Units | To work in partnership with States and universities to address | https:// sam.g | https:// www. |
| Department of the Interior | | 15.814 | National Geological and Geophysical Data Preservation | To preserve and provide access to geological, geophysical, and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.815 | National Land Remote Sensing Education Outreach and Research | To promote the uses of space-based land remote sensing data | https:// sam.g | https:// www. |
| Department of the Interior | | 15.817 | National Geospatial Program: Building The National Map | To promote the uses of space-based land remote sensing data | https:// sam.g | https:// www. |
| Department of the Interior | | 15.818 | Volcano Hazards Program Research and Monitoring | To advance the scientific understanding of volcanic processes | https:// sam.g | https:// www. |
| Department of the Interior | | 15.820 | National and Regional Climate Adaptation Science Centers | To enable the National and Regional Climate Adaptation Science | https:// sam.g | https:// www. |
| Department of the Interior | | 15.821 | USGS Cooperative Landslide Hazard Mapping and | To support risk communication, planning and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.875 | Economic, Social, and Political Development of the Territories | The Office of Insular Affairs will pursue the Departmentâ€™s | https:// sam.g | https:// www. |
| Department of the Interior | | 15.904 | Historic Preservation Fund Grants-In-Aid | To provide congressionally mandated grants to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.912 | National Historic Landmark | The Secretary of the Interior, through the National Park Service, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.916 | Outdoor Recreation Acquisition, Development and | To provide financial assistance to the States and their political | https:// sam.g | https:// www. |
| Department of the Interior | | 15.921 | Rivers, Trails and Conservation Assistance | The Rivers, Trails and Conservation Assistance Program | https:// sam.g | https:// www. |
| Department of the Interior | | 15.922 | Native American Graves Protection and Repatriation Act | To provide grants to museums to assist in the consultation on and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.923 | National Center for Preservation Technology and | The purposes of the Center shall be toâ€" | https:// sam.g | https:// www. |
| Department of the Interior | | 15.925 | National Maritime Heritage Grants | To provide matching grants for preservation or education projects | https:// sam.g | https:// www. |
| Department of the Interior | | 15.926 | American Battlefield Protection | To provide Federal financial assistance to State, local and tribal | https:// sam.g | https:// www. |
| Department of the Interior | | 15.928 | Battlefield Land Acquisition Grants | To assist States and local communities acquire and preserve | https:// sam.g | https:// www. |
| Department of the Interior | | 15.929 | Save America's Treasures | To provide matching grants for preservation or conservation work on | https:// sam.g | https:// www. |
| Department of the Interior | | 15.930 | Chesapeake Bay Gateways Network | The National Park Service â€" Chesapeake Bay | https:// sam.g | https:// www. |
| Department of the Interior | | 15.931 | Youth and Veteran Organizations Conservation Activities | This program seeks to utilize qualified non-profit youth and veteran | https:// sam.g | https:// www. |
| Department of the Interior | | 15.932 | Preservation of Historic Structures on the Campuses of | In 1988, the National Park Service established the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.933 | Preservation of Japanese American Confinement Sites | To provide for the preservation and interpretation of historic | https:// sam.g | https:// www. |
| Department of the Interior | | 15.935 | National Trails System Projects | To preserve, protect, and develop the components of the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.938 | Boston African-American National Historic Site | As set forth in authorizing legislation, this programâ€™s | https:// sam.g | https:// www. |
| Department of the Interior | | 15.939 | Heritage Partnership | The purpose of the Heritage Partnership Program funding is to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.941 | Mississippi National River and Recreation Area State and Local | The Mississippi National River and Recreation Area is rich | https:// sam.g | https:// www. |
| Department of the Interior | | 15.942 | Environmental Outreach and Conservation - North | Provide field-based environmental outreach (focusing on natural and | https:// sam.g | https:// www. |
| Department of the Interior | | 15.943 | Challenge Cost Share | This program does not award grants or cooperative | https:// sam.g | https:// www. |
| Department of the Interior | | 15.944 | Natural Resource Stewardship | The Natural Resource Stewardship program is the principle means | https:// sam.g | https:// www. |
| Department of the Interior | | 15.945 | Cooperative Research and Training Programs â€" Resources of the | To establish and maintain cooperative study units, in | https:// sam.g | https:// www. |
| Department of the Interior | | 15.946 | Cultural Resources Management | The National Park Service (NPS) conducts cultural resource | https:// sam.g | https:// www. |
| Department of the Interior | | 15.948 | National Fire Plan-Wildland Urban Interface Community | To assist communities at risk from catastrophic wildland fires by | https:// sam.g | https:// www. |
| Department of the Interior | | 15.954 | National Park Service Conservation, Protection, Outreach, | This program supports projects complementary to National Park Service | https:// sam.g | https:// www. |
| Department of the Interior | | 15.955 | Martin Luther King Junior National Historic Site and Preservation | The Martin Luther King, Junior, National Historic Site and Preservation | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Interior | | 15.956 | Cooperative Management of Ebey's Landing National | Objectives of this listing include: | https:// sam.g | https:// www. |
| Department of the Interior | | 15.957 | Emergency Supplemental Historic Preservation Fund | Emergency supplemental Historic Preservation Fund | https:// sam.g | https:// www. |
| Department of the Interior | | 15.958 | Route 66 Corridor Preservation | To preserve the cultural resources of the Route 66 corridor and to | https:// sam.g | https:// www. |
| Department of the Interior | | 15.959 | Education Program Management | To improve the administration and management of | https:// sam.g | https:// www. |
| Department of the Interior | | 15.961 | Federal Historic Preservation Tax Incentive | Commonly known as the Rehabilitation Tax Credit or the Historic | https:// sam.g | https:// www. |
| Department of the Interior | | 15.962 | National Wild and Scenic Rivers System | The Secretary of the Interior shall assist, advise, and cooperate | https:// sam.g | https:// www. |
| Department of the Interior | | 15.963 | Southwest Border Resource Protection Program | Provide financial assistance to educational institutions, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.964 | 9/11 Memorial Act Grant Program | The 9/11 Memorial Act Grant Program provides competitive grants for | https:// sam.g | https:// www. |
| Department of the Interior | | 15.965 | Groundwork - Brownfield to Greenspace | Groundwork furthers the mission of the National Park Service | https:// sam.g | https:// www. |
| Department of the Interior | | 15.966 | Historic Preservation Fund Grants-in-Aid for Competitive Grants | The objectives of the competitive grant programs under this | https:// sam.g | https:// www. |
| Department of the Interior | | 15.969 | National Wildland Fire Management and Natural Resource | The goal of this listing is to provide financial assistance to reduce | https:// sam.g | https:// www. |
| Department of the Interior | | 15.978 | Upper Mississippi River Restoration Long Term Resource Monitoring | To provide decision makers with information needed to maintain the | https:// sam.g | https:// www. |
| Department of the Interior | | 15.980 | National Ground-Water Monitoring Network | To support data providers for the National Ground-Water | https:// sam.g | https:// www. |
| Department of the Interior | | 15.981 | Water Use and Data Research | To support State water resource agencies in developing water use | https:// sam.g | https:// www. |
| Department of the Interior | | 15.984 | NPS Alaska Subsistence Management | Through a multidisciplinary collaborative program, | https:// sam.g | https:// www. |
| Department of the Interior | | 15.991 | September 11 National Memorial Trail | This listing supports the designation of the â€˜â€˜September 11th | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.004 | Exchange of Federal Tax Information With State Tax Agencies | To increase state tax revenues and taxpayer compliance, and to | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.006 | Tax Counseling for the Elderly | Authorize the Internal Revenue Service to enter into an agreement | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.008 | Low Income Taxpayer Clinics | This assistance opportunity provides a matching grant of up to | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.009 | Volunteer Income Tax Assistance (VITA) Matching Grant | This grant authorizes the Internal Revenue Service to provide a | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.011 | Capital Magnet Fund | The Capital Magnet Fund helps to create and preserve affordable | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.012 | Native Initiatives | To promote economic revitalization and community | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.014 | Community Development Financial Institutions Bond | To support community development lending and investment by | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.015 | Resources and Ecosystems Sustainability, Tourist | Treasury administers the Direct Component program and Centers of | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.016 | Equitable Sharing | The Department of the Treasury Asset Forfeiture Program is a | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.017 | Social Impact Partnerships to Pay for Results Act (SIPPRA) | The purposes of this program are the following: | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.018 | Coronavirus Relief - Pandemic Relief for Aviation Workers | The Payroll Support Program (PSP1), Payroll Support | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.019 | Coronavirus Relief Fund | Section 5001 of the Coronavirus Aid, Relief, and Economic Security | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.020 | Community Development Financial Institutions Program | To promote economic revitalization and community | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.021 | Bank Enterprise Award Program | The Bank Enterprise Award Program (BEA Program) provides | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.023 | Emergency Rental Assistance Program | The funding provided by Emergency Rental Assistance (ERA) will | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.024 | Community Development Financial Institutions Rapid | To support the ability of Community Development Financial | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.025 | Small Dollar Loan Program | Through the Small Dollar Loan Program, the CDFI Fund provides | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.026 | Homeowner Assistance Fund | Section 3206 of the American Rescue Plan Act of 2021, (the | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.027 | CORONAVIRUS STATE AND LOCAL FISCAL RECOVERY FUNDS | Sections 602 and 603 of the Social Security Act as added by section | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.028 | Coronavirus Economic Relief for Transportation Services Act | Division N, Title IV, Section 421 of the Consolidated | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.029 | Coronavirus Capital Projects Fund | Section 604 of the Social Security Act, as added by section 9901 | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.030 | Emergency Capital Investment Program | Under the ECIP, Treasury invested $8,570,109,000 in | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.031 | State Small Business Credit Initiative Technical Assistance | Section 3301 of the American Rescue Plan Act of 2021 (ARPA), | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.032 | Local Assistance and Tribal Consistency Fund | Section 605 of the Social Security Act (the Act), as added by | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.033 | Community Development Financial Institutions Fund | To provide grants to Community Development Financial | https:// sam.g | https:// www. |
| Department of the Treasury | | 21.034 | State Small Business Credit Initiative Competitive Technical | Through the State Small Business Credit Initiative (SSBCI) | https:// sam.g | https:// www. |
| Department of the Treasury | | IN.001 | Interest on the Public Debt | The federal government is charged interest for the use of lendersâ€™ | | |
| Department of the Treasury | | TC.001 | Exclusion of benefits and allowances to armed forces personnel | Under the baseline tax system, all compensation, including | | |
| Department of the Treasury | | TC.002 | Exclusion of income earned abroad by U.S. citizens | Under the baseline tax system, all compensation received | | |
| Department of the Treasury | | TC.003 | Exclusion of certain allowances for Federal employees abroad | In general, all compensation received by U.S. citizens and | | |
| Department of the Treasury | | TC.004 | Reduced tax rate on active income of controlled foreign | Under the baseline tax system, worldwide income forms the tax | | |
| Department of the Treasury | | TC.005 | Deduction for foreign-derived intangible income derived from | Under the baseline tax system, the United States taxes income | | |
| Department of the Treasury | | TC.006 | Interest Charge Domestic International Sales Corporations (IC- | Under the baseline tax system, taxpayer earnings are subject to | | |
| Department of the Treasury | | TC.007 | Expensing of research and experimentation expenditures (normal | The baseline tax system allows a deduction for the cost of | | |
| Department of the Treasury | | TC.008 | Credit for increasing research activities | The baseline tax system would uniformly tax all returns to | | |
| Department of the Treasury | | TC.009 | Expensing of exploration and development costs, oil | Under the baseline tax system, the costs of exploring and | | |

| | | | | |
|---|---|---|---|---|
| Department of the Treasury | | TC.010 | Expensing of exploration and development costs, coal | This is similar to the above provision but limited to coal. Current |
| Department of the Treasury | | TC.011 | Excess of percentage over cost depletion, oil and gas | The baseline tax system would allow recovery of the costs of |
| Department of the Treasury | | TC.012 | Excess of percentage over cost depletion, coal | This is similar to the above provision but limited to coal. |
| Department of the Treasury | | TC.013 | Exception from passive loss limitation for working interests in oil | The baseline tax system accepts current lawâ€™s general rule |
| Department of the Treasury | | TC.014 | Enhanced oil recovery credit | A credit is provided equal to 15 percent of the taxpayerâ€™s |
| Department of the Treasury | | TC.015 | Marginal wells credit | A credit is provided for crude oil and natural gas produced from a |
| Department of the Treasury | | TC.016 | Amortize all geological and geophysical expenditures over 2 | The baseline tax system allows taxpayers to deduct the |
| Department of the Treasury | | TC.017 | Capital gains treatment of royalties on coal | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.018 | Exclusion of interest on energy facility bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.019 | Qualified energy conservation bonds | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.020 | Exclusion of utility conservation subsidies | The baseline tax system generally takes a comprehensive view |
| Department of the Treasury | | TC.021 | Credit for holding clean renewable energy bonds | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.022 | Energy production credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.023 | Energy investment credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.024 | Advanced nuclear power production credit | The baseline tax system would not allow credits or deductions for |
| Department of the Treasury | | TC.025 | Zero-emission nuclear power production credit | The baseline tax system would not allow credits or deductions for |
| Department of the Treasury | | TC.026 | Reduced tax rate for nuclear decommissioning funds | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.027 | Alcohol fuel credits | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.028 | Bio-Diesel and small agri-biodiesel producer tax credits | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.029 | Clean fuel production credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.030 | Clean hydrogen production credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.031 | Tax credit for clean vehicles | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.032 | Tax credits for refueling property | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.033 | Tax credits for clean-fuel burning vehicles and refueling property | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.034 | Allowance of deduction for certain energy efficient commercial | The baseline tax system would not allow deductions in lieu of |
| Department of the Treasury | | TC.035 | Credit for construction of new energy efficient homes | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.036 | Credit for energy efficiency improvements to existing homes | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.037 | Credit for residential energy efficient property | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.038 | Advanced energy property credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.039 | Advanced manufacturing production credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.040 | Expensing of exploration and development costs, | The baseline tax system allows the taxpayer to deduct the |
| Department of the Treasury | | TC.041 | Excess of percentage over cost depletion, nonfuel minerals | The baseline tax system allows the taxpayer to deduct the |
| Department of the Treasury | | TC.042 | Exclusion of interest on bonds for water, sewage, and hazardous | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.043 | Capital gains treatment of certain timber income | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.044 | Expensing of multiperiod timber growing costs | The baseline tax system requires the taxpayer to capitalize |
| Department of the Treasury | | TC.045 | Tax incentives for preservation of historic structures | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.046 | Carbon oxide sequestration credit | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.047 | Deduction for endangered species recovery expenditures | The baseline tax system would not allow deductions in addition |
| Department of the Treasury | | TC.048 | Expensing of certain capital outlays | The baseline tax system requires the taxpayer to capitalize |
| Department of the Treasury | | TC.049 | Expensing of certain multiperiod production costs | The baseline tax system requires the taxpayer to capitalize |
| Department of the Treasury | | TC.050 | Treatment of loans forgiven for solvent farmers | Because loan forgiveness increases a debtors net worth the |
| Department of the Treasury | | TC.051 | Capital gains treatment of certain agriculture income | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.052 | Income averaging for farmers | The baseline tax system generally taxes all earned income each |
| Department of the Treasury | | TC.053 | Deferral of gain on sale of farm refiners | The baseline tax system generally subjects capital gains to |
| Department of the Treasury | | TC.054 | Expensing of reforestation expenditures | The baseline tax system requires the taxpayer to capitalize |
| Department of the Treasury | | TC.055 | Exemption of credit union income | Under the baseline tax system, corporations pay taxes on their |
| Department of the Treasury | | TC.056 | Exclusion of life insurance death benefits | Under the baseline tax system, individuals and corporations would pay |
| Department of the Treasury | | TC.057 | Exemption or special alternative tax for small property and casualty | The baseline tax system would require corporations to pay |
| Department of the Treasury | | TC.058 | Tax exemption of insurance income earned by tax-exempt | Under the baseline tax system, corporations pay taxes on their |
| Department of the Treasury | | TC.059 | Exclusion of interest spread of financial institutions | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.060 | Exclusion of interest on owner-occupied mortgage subsidy | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.061 | Exclusion of interest on rental housing bonds | The baseline tax system generally would tax all income under the |

| | | | | |
|---|---|---|---|---|
| Department of the Treasury | | TC.062 | Deductibility of mortgage interest on owner-occupied homes | Under the baseline tax system, expenses incurred in earning |
| Department of the Treasury | | TC.063 | Deductibility of State and local property tax on owner-occupied | Under the baseline tax system, expenses incurred in earning |
| Department of the Treasury | | TC.064 | Deferral of income from installment sales | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.065 | Capital gains exclusion on home sales | The baseline tax system would not allow deductions and |
| Department of the Treasury | | TC.066 | Exclusion of net imputed rental income | Under the baseline tax system, the taxable income of a taxpayer |
| Department of the Treasury | | TC.067 | Exception from passive loss rules for $25,000 of rental loss | The baseline tax system accepts current lawâ€™s general rule |
| Department of the Treasury | | TC.068 | Credit for low-income housing investments | The baseline tax system would uniformly tax all returns to |
| Department of the Treasury | | TC.069 | Accelerated depreciation on rental housing (normal tax | Under a comprehensive economic income tax, the costs of acquiring a |
| Department of the Treasury | | TC.070 | Discharge of mortgage indebtedness | Under the baseline tax system, all income would generally be |
| Department of the Treasury | | TC.071 | Premiums for mortgage insurance deductible as interest | Under the baseline tax system, expenses incurred in earning |
| Department of the Treasury | | TC.072 | Discharge of business indebtedness | Under the baseline tax system, all income would generally be |
| Department of the Treasury | | TC.073 | Exceptions from imputed interest rules | Under the baseline tax system, holders (issuers) of debt |
| Department of the Treasury | | TC.074 | Treatment of qualified dividends | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.075 | Capital gains (except agriculture, timber, iron ore, and coal) | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.076 | Capital gains exclusion of small corporation stock | The baseline tax system would not allow deductions and |
| Department of the Treasury | | TC.077 | Step-up basis of capital gains at death | Under the baseline tax system, unrealized capital gains would be |
| Department of the Treasury | | TC.078 | Carryover basis of capital gains on gifts | Under the baseline tax system, unrealized capital gains would be |
| Department of the Treasury | | TC.079 | Ordinary income treatment of loss from small business | The baseline tax system limits to $3,000 the write-off of losses |
| Department of the Treasury | | TC.080 | Deferral of capital gains from like-kind exchanges | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.081 | Depreciation of buildings other than rental housing (normal | Under a comprehensive economic income tax, the costs of acquiring a |
| Department of the Treasury | | TC.082 | Accelerated depreciation of machinery and | Under a comprehensive economic income tax, the costs of acquiring |
| Department of the Treasury | | TC.083 | Expensing of certain small investments (normal tax method) | Under the reference tax law baseline, the costs of acquiring tangible |
| Department of the Treasury | | TC.084 | Exclusion of interest on small issue bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.085 | Special rules for certain film and TV production | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.086 | Allow 20-percent deduction to certain pass-through income | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.087 | Advanced manufacturing investment credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.088 | Tonnage tax | The baseline tax system generally would tax all profits and |
| Department of the Treasury | | TC.089 | Deferral of tax on shipping companies | The baseline tax system generally would tax all profits and |
| Department of the Treasury | | TC.090 | Exclusion of reimbursed employee parking expenses | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.091 | Exclusion for employer-provided transit passes | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.092 | Tax credit for certain expenditures for maintaining railroad | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.093 | Exclusion of interest on bonds for Highway Projects and rail-truck | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.094 | Exclusion of interest for airport, dock, and similar bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.095 | Exemption of certain mutuals' and cooperatives' income | Under the baseline tax system, corporations pay taxes on their |
| Department of the Treasury | | TC.096 | Empowerment zones | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.097 | New markets tax credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.098 | Credit to holders of Gulf and Midwest Tax Credit Bonds . | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.099 | Recovery Zone Bonds | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.100 | Tribal Economic Development Bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.101 | Opportunity Zones | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.102 | Disaster employee retention credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.103 | Exclusion of scholarship and fellowship income (normal tax method) | Scholarships and fellowships are excluded from taxable |
| Department of the Treasury | | TC.104 | Tax credits for post-secondary education expenses | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.105 | Deductibility of student-loan interest | The baseline tax system accepts current lawâ€™s general rule |
| Department of the Treasury | | TC.106 | Qualified tuition programs (includes Education IRA) | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.107 | Exclusion of interest on student-loan bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.108 | Exclusion of interest on bonds for private nonprofit educational | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.109 | Credit for holders of zone academy bonds | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.110 | Exclusion of interest on savings bonds redeemed to finance | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.111 | Parental personal exemption for students age 19 or over | Under the baseline tax system, a personal exemption would be |
| Department of the Treasury | | TC.112 | Deductibility of charitable contributions to educational | The baseline tax system would not allow a deduction for personal |
| Department of the Treasury | | TC.113 | Exclusion of employer-provided educational assistance | Under the baseline tax system, all compensation, including |

| | | | | |
|---|---|---|---|---|
| Department of the Treasury | | TC.114 | Special deduction for teacher expenses | The baseline tax system would not allow a deduction for personal |
| Department of the Treasury | | TC.115 | Discharge of student loan indebtedness | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.116 | Qualified school construction bonds | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.117 | Work opportunity tax credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.118 | Employer provided child care exclusion | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.119 | Employer-provided child care credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.120 | Assistance for adopted foster children | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.121 | Adoption credit and exclusion | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.122 | Exclusion of employee meals and lodging (other than military) | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.123 | Credit for child and dependent care expenses | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.124 | Credit for disabled access expenditures | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.125 | Deductibility of charitable contributions, other than education | The baseline tax system would not allow a deduction for personal |
| Department of the Treasury | | TC.126 | Exclusion of certain foster care payments | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.127 | Exclusion of parsonage allowances | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.128 | Indian employment credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.129 | Employer-provided paid family and medical leave credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.130 | Exclusion of employer contributions for medical insurance | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.131 | Self-employed medical insurance premiums | Under the baseline tax system, all compensation and |
| Department of the Treasury | | TC.132 | Medical Savings Accounts / Health Savings Accounts | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.133 | Deductibility of medical expenses | The baseline tax system would not allow a deduction for personal |
| Department of the Treasury | | TC.134 | Exclusion of interest on hospital construction bonds | The baseline tax system generally would tax all income under the |
| Department of the Treasury | | TC.135 | Refundable Premium Assistance Tax Credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.136 | Credit for employee health insurance expenses of small | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.137 | Deductibility of charitable contributions to health institutions | The baseline tax system would not allow a deduction for personal |
| Department of the Treasury | | TC.138 | Tax credit for orphan drug research | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.139 | Special Blue Cross/Blue Shield tax benefits | The baseline tax system generally would tax all profits under the |
| Department of the Treasury | | TC.140 | Distributions from retirement plans for premiums for health | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.141 | Credit for family and sick leave taken by self-employed individuals | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.142 | Child credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.143 | Other Dependent Tax Credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.144 | Exclusion of railroad retirement (Social Security equivalent) | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.145 | Exclusion of workers' compensation benefits | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.146 | Exclusion of public assistance benefits (normal tax method) | Under the reference tax law baseline, gifts and transfers are not treated |
| Department of the Treasury | | TC.147 | Exclusion of special benefits for disabled coal miners | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.148 | Exclusion of military disability pensions | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.149 | Net exclusion of pension contributions and earnings: Defined | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.150 | Net exclusion of pension contributions and earnings: Defined | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.151 | Net exclusion of pension contributions and earnings: Individual | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.152 | Net exclusion of pension contributions and earnings: Low and | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.153 | Net exclusion of pension contributions and earnings: Self- | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.154 | Small employer pension plan startup credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.155 | Exclusion of other employee benefits: Premiums on group | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.156 | Exclusion of other employee benefits: Premiums on accident | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.157 | Income of trusts to finance supplementary unemployment benefits | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.158 | Income of trusts to finance voluntary employee benefits | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.159 | Special Employee Stock Ownership Plan (ESOP) rules | Under the baseline tax system, all compensation, including |
| Department of the Treasury | | TC.160 | Additional deduction for the blind | Under the baseline tax system, the standard deduction is allowed. An |
| Department of the Treasury | | TC.161 | Additional deduction for the elderly | Under the baseline tax system, the standard deduction is allowed. An |
| Department of the Treasury | | TC.162 | Deductibility of casualty losses | Under the baseline tax system, neither the purchase of property |
| Department of the Treasury | | TC.163 | Earned income tax credit | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.164 | Recovery rebate credits | The baseline tax system would not allow credits for particular |
| Department of the Treasury | | TC.165 | Exclusion of social security benefits: Social Security benefits for | The baseline tax system would tax Social Security benefits to the |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of the Treasury | | TC.166 | Exclusion of social security benefits: Credit for certain employer | Under the baseline tax system, employer contributions to Social | | |
| Department of the Treasury | | TC.167 | Exclusion of veterans death benefits and disability compensation | Under the baseline tax system, all compensation, including | | |
| Department of the Treasury | | TC.168 | Exclusion of veterans pensions | Under the baseline tax system, all compensation, including | | |
| Department of the Treasury | | TC.169 | Exclusion of GI bill benefits | Under the baseline tax system, all compensation, including | | |
| Department of the Treasury | | TC.170 | Exclusion of interest on veterans housing bonds | The baseline tax system generally would tax all income under the | | |
| Department of the Treasury | | TC.171 | Exclusion of interest on public purpose State and local bonds | The baseline tax system generally would tax all income under the | | |
| Department of the Treasury | | TC.172 | Build America Bonds | The baseline tax system would not allow credits for particular | | |
| Department of the Treasury | | TC.173 | Deductibility of nonbusiness State and local taxes other than | Under the baseline tax system, a deduction for personal consumption | | |
| Department of the Treasury | | TC.174 | Deferral of interest on U.S. savings bonds | The baseline tax system would uniformly tax all returns to | | |
| Department of Transportation | | 20.106 | Airport Improvement Program, Infrastructure Investment and Jobs | The Federal Aviation Administration (FAA) has several strategic | https://sam.g | https://www. |
| Department of Transportation | | 20.108 | Aviation Research Grants | To encourage and support innovative, advanced, and applied | https://sam.g | https://www. |
| Department of Transportation | | 20.109 | Air Transportation Centers of Excellence | Conduct long term research in critical and specific areas of | https://sam.g | https://www. |
| Department of Transportation | | 20.111 | Aircraft Pilots Workforce Development Grant Program | The goal of the Aircraft Pilots Workforce Development Program | https://sam.g | https://www. |
| Department of Transportation | | 20.112 | Aviation Maintenance Technical Workforce Grant Program | The goal of the Aviation Maintenance Technical Workforce Grant | https://sam.g | https://www. |
| Department of Transportation | | 20.115 | Fueling Aviationâ€™s Sustainable Transition via Sustainable Aviation | The objective is to make investments through a new FAST | https://sam.g | https://www. |
| Department of Transportation | | 20.200 | Highway Research and Development Program | The objective is to carry out the highway research and | https://sam.g | https://www. |
| Department of Transportation | | 20.205 | Highway Planning and Construction | This Assistance Listing encompasses several transportation | https://sam.g | https://www. |
| Department of Transportation | | 20.215 | Highway Training and Education | This Assistance Listing encompasses several transportation training | https://sam.g | https://www. |
| Department of Transportation | | 20.218 | Motor Carrier Safety Assistance | The Motor Carrier Safety Assistance Program (MCSAP) is a | https://sam.g | https://www. |
| Department of Transportation | | 20.219 | Recreational Trails Program | The purpose of this program is to provide funds to the States to | https://sam.g | https://www. |
| Department of Transportation | | 20.223 | Transportation Infrastructure Finance and Innovation Act | To finance projects of national or regional significance by filling | https://sam.g | https://www. |
| Department of Transportation | | 20.224 | Federal Lands Access Program | The goal of the Federal Lands Access Program is to improve | https://sam.g | https://www. |
| Department of Transportation | | 20.231 | Performance and Registration Information Systems Management | This program links Federal Motor Carrier Safety information | https://sam.g | https://www. |
| Department of Transportation | | 20.232 | Commercial Driver's License Program Implementation Grant | Assist States in complying with CDL requirements and | https://sam.g | https://www. |
| Department of Transportation | | 20.233 | Border Enforcement Grants | The Federal Motor Carrier Safety Administrationâ€™s | https://sam.g | https://www. |
| Department of Transportation | | 20.234 | Safety Data Improvement Program | 050 Objectives: The Federal Motor | https://sam.g | https://www. |
| Department of Transportation | | 20.235 | Commercial Motor Vehicle Operator Safety Training Grants | Expand the number of commercial driverâ€™s license (CDL) holders | https://sam.g | https://www. |
| Department of Transportation | | 20.237 | Motor Carrier Safety Assistance High Priority Activities Grants and | Support, enrich, and augment Commercial Motor Vehicle (CMV) | https://sam.g | https://www. |
| Department of Transportation | | 20.240 | Fuel Tax Evasion-Intergovernmental Enforcement Effort | The purpose of this program is to increase intergovernmental | https://sam.g | https://www. |
| Department of Transportation | | 20.243 | Commercial Motor Vehicle Enforcement Training and Support | The objective of the HP-ETS grant program is to train non-federal | https://sam.g | https://www. |
| Department of Transportation | | 20.301 | Railroad Safety | To improve railroad safety and reduce railroad-related | https://sam.g | https://www. |
| Department of Transportation | | 20.313 | Railroad Research and Development | To foster long-range enhancement of the Federal Railroad | https://sam.g | https://www. |
| Department of Transportation | | 20.314 | Railroad Development | To provide financial assistance for: planning and developing railroad | https://sam.g | https://www. |
| Department of Transportation | | 20.315 | National Railroad Passenger Corporation Grants | To provide financial assistance to support the operation of and | https://sam.g | https://www. |
| Department of Transportation | | 20.316 | Railroad Rehabilitation and Improvement Financing Program | The Railroad Rehabilitation and Improvement Financing | https://sam.g | https://www. |
| Department of Transportation | | 20.317 | Capital Assistance to States - Intercity Passenger Rail Service | To provide financial assistance to fund capital improvements | https://sam.g | https://www. |
| Department of Transportation | | 20.318 | Maglev Project Selection Program - SAFETEA-LU | To provide financial assistance for a demonstration magnetic | https://sam.g | https://www. |
| Department of Transportation | | 20.319 | High-Speed Rail Corridors and Intercity Passenger Rail Service | To assist in financing the capital costs of facilities, infrastructure, | https://sam.g | https://www. |
| Department of Transportation | | 20.320 | Rail Line Relocation and Improvement | To provide financial assistance for rail line relocation and | https://sam.g | https://www. |
| Department of Transportation | | 20.321 | Railroad Safety Technology Grants | To facilitate the deployment of train control technologies, | https://sam.g | https://www. |
| Department of Transportation | | 20.323 | Fiscal Year 2013 Hurricane Sandy Disaster Relief Grants | To provide supplemental assistance to the | https://sam.g | https://www. |
| Department of Transportation | | 20.324 | Restoration and Enhancement | This program provides operating assistance grants for initiating, | https://sam.g | https://www. |
| Department of Transportation | | 20.325 | Consolidated Rail Infrastructure and Safety Improvements | To fund projects that improve the safety, efficiency, and/or | https://sam.g | https://www. |
| Department of Transportation | | 20.326 | Federal-State Partnership for Intercity Passenger Rail | To fund capital projects that repair, replace, or rehabilitate publicly- | https://sam.g | https://www. |
| Department of Transportation | | 20.327 | Railroad Crossing Elimination | The goals of the Program are (1) to eliminate highway-rail | https://sam.g | https://www. |
| Department of Transportation | | 20.328 | Interstate Rail Compacts | The purpose of the IRC program is to provide a Federal funding | https://sam.g | https://www. |
| Department of Transportation | | 20.500 | Federal Transit Capital Investment Grants | The Capital Investment Grant Program is the Federal | https://sam.g | https://www. |
| Department of Transportation | | 20.505 | Metropolitan Transportation Planning and State and Non- | The purpose of the Metropolitan Transportation Planning | https://sam.g | https://www. |
| Department of Transportation | | 20.507 | Federal Transit Formula Grants | The Urbanized Area Formula Funding Program (49 U.S.C. | https://sam.g | https://www. |
| Department of Transportation | | 20.509 | Formula Grants for Rural Areas and Tribal Transit Program | Pursuant to 49 U.S.C. 5311, FTA apportions or awards funds for | https://sam.g | https://www. |
| Department of Transportation | | 20.513 | Enhanced Mobility of Seniors and Individuals with Disabilities | To provide financial assistance in meeting the transportation | https://sam.g | https://www. |
| Department of Transportation | | 20.516 | Job Access and Reverse Commute Program | This program continues to be repealed. On October 1, 2013, the | https://sam.g | https://www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Transportation | | 20.519 | Clean Fuels | To assist in financing the acquisition of clean fuel vehicles and | https:// sam.g | https:// www. |
| Department of Transportation | | 20.520 | Paul S. Sarbanes Transit in the Parks | The Paul S. Sarbanes Transit in Parks Program was | https:// sam.g | https:// www. |
| Department of Transportation | | 20.521 | New Freedom Program | The New Freedom program (Section 5317) provided grants for new | https:// sam.g | https:// www. |
| Department of Transportation | | 20.524 | Passenger Rail Investment and Improvement (PRIIA) | To assist in financing part of the capital and preventive maintenance | https:// sam.g | https:// www. |
| Department of Transportation | | 20.525 | State of Good Repair Grants Program | The State of Good Repair Program (49 U.S.C. 5337) provides | https:// sam.g | https:// www. |
| Department of Transportation | | 20.526 | Buses and Bus Facilities Formula, Competitive, and Low | Provides capital funding to replace, rehabilitate, purchase, or lease | https:// sam.g | https:// www. |
| Department of Transportation | | 20.527 | Public Transportation Emergency Relief Program | The Emergency Relief Program is intended to provide operating | https:// sam.g | https:// www. |
| Department of Transportation | | 20.528 | Rail Fixed Guideway Public Transportation System State Safety | To improve public transportation safety by assisting States with the | https:// sam.g | https:// www. |
| Department of Transportation | | 20.529 | Bus Testing | The purpose of the program is to provide assistance for testing | https:// sam.g | https:// www. |
| Department of Transportation | | 20.530 | Public Transportation Innovation | The goals and objectives of Public Transportation | https:// sam.g | https:// www. |
| Department of Transportation | | 20.531 | Technical Assistance and Workforce Development | The goals and objectives for Technical Assistance and | https:// sam.g | https:// www. |
| Department of Transportation | | 20.532 | Passenger Ferry Grant Program, Electric or Low-Emitting Ferry Pilot | The Passenger Ferry Grant Program provides funding for passenger | https:// sam.g | https:// www. |
| Department of Transportation | | 20.533 | All Stations Accessibility Program | To assist in financing capital and planning projects to upgrade the | https:// sam.g | https:// www. |
| Department of Transportation | | 20.534 | Community Project Funding Congressionally | Community Project Funding is made available in amounts | https:// sam.g | https:// www. |
| Department of Transportation | | 20.600 | State and Community Highway Safety | The State and Community Highway Safety funding program | https:// sam.g | https:// www. |
| Department of Transportation | | 20.606 | National Driver Register | The NDR maintains the computerized database known as the Problem | https:// sam.g | https:// www. |
| Department of Transportation | | 20.607 | Alcohol Open Container Requirements | To encourage States to enact and enforce a compliant alcohol open | https:// sam.g | https:// www. |
| Department of Transportation | | 20.608 | Minimum Penalties for Repeat Offenders for Driving While | To encourage States to enact and enforce Repeat Intoxicated | https:// sam.g | https:// www. |
| Department of Transportation | | 20.611 | Incentive Grant Program to Prohibit Racial Profiling | Encourage States to enact and enforce laws and programs that | https:// sam.g | https:// www. |
| Department of Transportation | | 20.614 | National Highway Traffic Safety Administration (NHTSA) | Provide technical and financial assistance to State and local | https:// sam.g | https:// www. |
| Department of Transportation | | 20.616 | National Priority Safety Programs | The formula grant program is designed to encourage States to | https:// sam.g | https:// www. |
| Department of Transportation | | 20.617 | State Electronic Data Collection (SEDC) Program Grant | To objective of this program is to support States to upgrade and | https:// sam.g | https:// www. |
| Department of Transportation | | 20.618 | Driver Alcohol Detection System for Safety | The goal of the DADSS collaborative research program is to research | https:// sam.g | https:// www. |
| Department of Transportation | | 20.619 | Motor Vehicle Safety Research | This assistance listing encompasses: (1) motor vehicle safety | https:// sam.g | https:// www. |
| Department of Transportation | | 20.620 | Behavioral Traffic Safety Cooperative Research | The objective is to carry out a cooperative research and evaluation | https:// sam.g | https:// www. |
| Department of Transportation | | 20.621 | State Process for Informing Consumers of Recalls | The objective is to support States in developing a | https:// sam.g | https:// www. |
| Department of Transportation | | 20.700 | Pipeline Safety Program State Base Grant | To develop, support and maintain inspection and enforcement activities | https:// sam.g | https:// www. |
| Department of Transportation | | 20.701 | University Transportation Centers Program | The program awards grants to nonprofit institutions of higher | https:// sam.g | https:// www. |
| Department of Transportation | | 20.703 | Interagency Hazardous Materials Public Sector Training and Planning | Hazardous Materials Emergency Preparedness Grant | https:// sam.g | https:// www. |
| Department of Transportation | | 20.706 | Pipeline Emergency Response Grant (PERG) | Advance the abilities of emergency responders to manage pipeline | https:// sam.g | https:// www. |
| Department of Transportation | | 20.707 | Hazardous Materials State Inspection (HMSI) Grant | The HM State Inspection Grant provides training and | https:// sam.g | https:// www. |
| Department of Transportation | | 20.708 | Natural Gas Distribution Infrastructure Safety and Modernization | Grant funds will be made available to municipality or | https:// sam.g | https:// www. |
| Department of Transportation | | 20.710 | Technical Assistance Grants | Advancement of pipeline safety through the funding of local | https:// sam.g | https:// www. |
| Department of Transportation | | 20.720 | State Damage Prevention Program Grants | The PHMSA State Damage Prevention Program fosters | https:// sam.g | https:// www. |
| Department of Transportation | | 20.721 | PHMSA Pipeline Safety Program One Call Grant | To provide funding to State agencies in promoting damage | https:// sam.g | https:// www. |
| Department of Transportation | | 20.723 | PHMSA Pipeline Safety Research and Development | To sponsor research and development (R&D) projects that focus on | https:// sam.g | https:// www. |
| Department of Transportation | | 20.724 | Pipeline Safety Research Competitive Academic Agreement | The CAAP initiative is intended to spur innovation by enabling | https:// sam.g | https:// www. |
| Department of Transportation | | 20.725 | PHMSA Pipeline Safety Underground Natural Gas Storage Grant | Participating state entities, through annual Certification/ | https:// sam.g | https:// www. |
| Department of Transportation | | 20.802 | Federal Ship Financing Guarantees | To finance eligible vessels and shipyards to promote the growth | https:// sam.g | https:// www. |
| Department of Transportation | | 20.803 | Maritime War Risk Insurance | To provide war risk insurance to U.S.-flag and foreign vessels | https:// sam.g | https:// www. |
| Department of Transportation | | 20.806 | State Maritime Schools | To educate and train future merchant marine officers at the State | https:// sam.g | https:// www. |
| Department of Transportation | | 20.807 | U.S. Merchant Marine Academy | The USMMA is a Federal Service Academy and an | https:// sam.g | https:// www. |
| Department of Transportation | | 20.808 | Capital Construction Fund | To provide for replacement vessels, additional vessels or | https:// sam.g | https:// www. |
| Department of Transportation | | 20.812 | Construction Reserve Fund | To promote the construction, reconstruction, | https:// sam.g | https:// www. |
| Department of Transportation | | 20.813 | Maritime Security Fleet Program or Ship Operations Cooperation | The MSP helps sustain a fleet of 60 active, commercially viable, | https:// sam.g | https:// www. |
| Department of Transportation | | 20.814 | Assistance to Small Shipyards | To award grants for capital improvements and related | https:// sam.g | https:// www. |
| Department of Transportation | | 20.816 | United States Marine Highway Grants | Mitigate landside congestion, expand transportation options, | https:// sam.g | https:// www. |
| Department of Transportation | | 20.817 | Air Emissions and Energy Initiative | MARAD will use projects results and data for a variety of | https:// sam.g | https:// www. |
| Department of Transportation | | 20.819 | Ballast Water Treatment Technologies | MARAD will use the projects results and data for a variety of | https:// sam.g | https:// www. |
| Department of Transportation | | 20.820 | Maritime Studies and Innovations | The purpose of this program is to provide assistance for projects | https:// sam.g | https:// www. |
| Department of Transportation | | 20.821 | Women on the Water (WOW) | The purpose of the WOW program is to promote diversity in the | https:// sam.g | https:// www. |
| Department of Transportation | | 20.823 | Port Infrastructure Development Program | The program makes discretionary grants to improve port facilities at | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Transportation | | 20.824 | Cable Security Fleet Program | The CSF helps sustain a fleet of cable vessels active, commercially | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.825 | Tanker Security Program | The Tanker Security Program (TSP) will ensure that a core fleet | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.901 | Payments for Essential Air Services | The program provides subsidies to air carriers to serve eligible | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.909 | Transportation Research and Technology | The USDOT seeks competitively selected cooperative agreements | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.910 | Assistance to Small and Disadvantaged Businesses | To enter into successful partnerships between OSDBU and chambers | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.930 | Payments for Small Community Air Service Development | The SCASDP program is designed to provide financial assistance to | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.931 | Transportation Planning, Research and Education | To provide funds to conduct research and development on | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.933 | National Infrastructure Investments | RAISE (formerly BUILD) grants are for capital investments in | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.934 | Nationally Significant Freight and Highway Projects | The Nationally Significant Multimodal Freight and Highway | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.936 | Transportation Demonstration Program | Transportation Demonstration grants are for infrastructure | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.937 | National Infrastructure Project Assistance (Mega Projects) | The goal of the National Infrastructure Project Assistance (Mega | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.938 | Rural Surface Transportation Grant Program | The Rural Surface Transportation Grant Program will provide | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.939 | Safe Streets and Roads for All | The purpose of SS4A grants is to improve roadway safety by | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.940 | Reconnecting Communities Pilot (RCP) Discretionary | The Reconnecting Communities Pilot Program provides | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.941 | Strengthening Mobility and Revolutionizing Transportation | Strengthening Mobility and Revolutionizing Transportation | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.942 | Thriving Communities Program Capacity Builders Cooperative | 4 Capacity Builders were selected for FY22 and 9 Capacity Builders | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.943 | Rural and Tribal Assistance Pilot Program | The intent of this Program is to advance transportation | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.944 | Autonomous Vehicle Research in Rural Communities Program | The Autonomous Vehicle Research in Rural Communities | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.945 | Asset Concessions and Innovative Finance Assistance | The objective of this program is to facilitate access to expert | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.946 | Research Partnership on Climate Change and Transportation | The climate and transportation research center shall advance | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.947 | Advanced Bridge Technology Clearinghouse (ABTC) | Rutgers University has been awarded a cooperative agreement | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.948 | MOBILITY EQUITY RESEARCH INITIATIVE | The Mobility Equity Research Initiative shall advance research and | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.949 | RESEARCH INITIATIVE ON THE USE OF STEEL SLAG | The research study will advance the Decarbonization | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.950 | Bridge and Other Transportation Infrastructure Research | As stated in the Consolidated Appropriations Act, | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.005 | Grants to States for Construction of State Home Facilities | To assist States to acquire or construct State home facilities for | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.014 | Veterans State Domiciliary Care | To provide financial assistance to States furnishing domiciliary | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.015 | Veterans State Nursing Home Care | To provide financial assistance to States furnishing nursing home | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.024 | VA Homeless Providers Grant and Per Diem Program | The VA Homeless Providers Grant and Per Diem (GPD) | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.026 | Veterans State Adult Day Health Care | To provide a community-based program designed to | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.028 | Post-9/11 Veterans Educational Assistance | To assist beneficiaries in receiving educational benefits and training | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.031 | Life Insurance for Veterans - Direct Payments for Insurance | To provide direct insurance payments, including advance | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.032 | Montgomery GI Bill Selected Reserve | To encourage membership in units of the Selected Reserve of | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.033 | VA Supportive Services for Veteran Families Program | To provide supportive services grants to private non-profit | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.034 | VA Grants for Adaptive Sports Programs for Disabled Veterans and | To provide grants to eligible adaptive sports entities to plan, | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.035 | Veterans Transportation Program | This program furthers the Departmentâ€™s mission by establishing | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.037 | VA U.S. Paralympics Monthly Assistance Allowance Program | To promote the lifelong health and to motivate, encourage and sustain | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.039 | CHAMPVA | CHAMPVA is health care program that shares the cost of | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.051 | Specially Adapted Housing Assistive Technology Grant | Pursuant to the Veteransâ€™ Benefit Act of 2010, the | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.053 | Payments to States for Programs to Promote the Hiring and | In accordance with the provisions of 38 U.S.C. 1744, this part sets forth | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.054 | Research and Development | In accordance with the provisions of Title 38 U.S.C. 7303, this part | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.055 | Staff Sergeant Parker Gordon Fox Suicide Prevention Grant | To provide resources toward community-based suicide | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.056 | Legal Services for Veterans Grants | To provide legal services grants to public and non-profit private | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.057 | Suicide Mortality Review Cooperative Agreements | This funding supports States, territories, and Tribal entities in | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.058 | Veteran and Spouse Transitional Assistance Grant Program | The Secretary of Veterans Affairs will make grants available | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.100 | Automobiles and Adaptive Equipment for Certain Disabled | Provide financial assistance to certain disabled servicepersons | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.101 | Burial Expenses Allowance for Veterans | If the Veteran died on or after October 1, 2024, VA will provide a | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.104 | Pension for Non-Service-Connected Disability for Veterans | To assist wartime veterans in need whose non-service- connected | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.105 | Pension to Veterans Surviving Spouses, and Children | To assist needy surviving spouses, and children of deceased | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.106 | Specially Adapted Housing for Disabled Veterans | To help certain severely disabled veterans acquire a home which is | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.109 | Veterans Compensation for Service-Connected Disability | Compensate Veterans for disabilities incurred in or aggravated during | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.110 | Veterans Dependency and Indemnity Compensation for | To compensate surviving spouses, children and parents for | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.114 | Veterans Housing Guaranteed and Insured Loans | To assist veterans, certain service personnel, and certain | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Veterans Affairs | | 64.116 | Veteran Readiness and Employment | To provide all services and assistance necessary to enable | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.117 | Survivors and Dependents Educational Assistance | To provide educational opportunities to the dependents of certain | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.118 | Veterans Housing Direct Loans for Certain Disabled Veterans | To provide veterans who are eligible for a Specially Adapted | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.120 | Post-Vietnam Era Veterans' Educational Assistance | To provide educational assistance to persons entering the Armed | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.124 | All-Volunteer Force Educational Assistance | To help servicepersons readjust to civilian life after their separation | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.125 | Vocational and Educational Counseling for Servicemembers | To offer vocational and educational counseling to service members | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.126 | Native American Veteran Direct Loan Program | To provide direct loans to certain veterans who are, or whose spouses | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.127 | Monthly Allowance for Children of Vietnam Veterans Born with | To provide financial assistance to certain children born with spina | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.128 | Vocational Training and Rehabilitation Benefits for Children of Vietnam | To provide services to children of Vietnam Veterans born with | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.130 | Veteran Rapid Retraining Assistance Program | The Veteran Rapid Retraining Assistance Program (VRRAP) was | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.201 | National Cemeteries | To verify military service and determine eligibility for burial in a VA | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.202 | Procurement of Headstones and Markers and/or | Provide Government-furnished headstones and markers to mark | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.203 | Veterans Cemetery Grants Program | To assist States and federally recognized tribal governments in | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.204 | Veterans Legacy Grants Program | Veterans Legacy Grants Program will provide grants to eligible entities | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.205 | VA Casket or Urn Allowance Program | To provide a monetary allowance for the purchase of a casket or | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.206 | VA Outer Burial Receptacle Allowance Program | Monetary allowance for an outer burial receptacle (OBR) for | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.001 | Air Pollution Control Program Support | The objectives of the Â§105 program are to assist state, tribal, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.032 | State and Tribal Indoor Radon Grants | EPA assists states and federally recognized tribes to provide radon | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.033 | Ozone Transport Commission | The overall goal of the Ozone Transport Commission (OTC) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.034 | Surveys, Studies, Research, Investigations, | The objectives of this assistance listing are to fund surveys, research, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.037 | Internships, Training and Workshops for the Office of Air and | To provide, Internships, Training, Workshops, and Technical | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.038 | Training, Investigations, and Special Purpose Activities of Federally- | To support Federally-recognized Indian Tribes' efforts to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.039 | Diesel Emission Reduction Act (DERA) National Grants | The Diesel Emissions Reduction Act, 42 U.S.C. 16132 et seq., | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.040 | Diesel Emissions Reduction Act (DERA) State Grants | The Diesel Emissions Reduction Act, 42 U.S.C. 16131 et seq., | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.042 | Temporally Integrated Monitoring of Ecosystems (TIME) and | EPA will award interagency and cooperative agreements | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.044 | Wildfire Smoke Preparedness in Community Buildings | EPA is providing grants to States, federally recognized Tribes, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.045 | Clean School Bus Program | Title XI, Section 71101 of the Infrastructure Investment and Jobs | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.046 | Climate Pollution Reduction Grants | EPA is providing grants to States, Locals, Federally Recognized | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.047 | Hydrofluorocarbon Reclaim and Innovative Destruction Grants | Section 60109(a)(3) of the Inflation Reduction Act provided EPA with | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.048 | Greenhouse Gas and Zero Emission On-road Mobile Source | EPA is providing grants to support state governments that are | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.049 | Clean Heavy-Duty Vehicles Program | Section 60101 of the Inflation Reduction Act of 2022 (or IRA) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.051 | Clean Ports Program | Section 60102 of the Inflation Reduction Act of 2022 (or IRA) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.110 | Healthy Communities Grant Program | The Healthy Communities Grant Program is a | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.121 | Geographic Programs - Puget Sound Protection and Restoration: Tribal | Puget Sound has been designated as one of 28 estuaries of National | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.123 | Geographic Programs - Puget Sound Action Agenda: Technical | Puget Sound has been designated as one of 28 estuaries of National | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.124 | Geographic Programs â€“ Coastal Wetlands Planning Protection and | The EPA Region 6 Coastal Wetlands Planning, Protection | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.125 | Geographic Programs - Lake Pontchartrain Basic Restoration | The purpose of the Clean Water Act Section 121 (33 U.S.C. | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.126 | Geographic Programs - San Francisco Bay Water Quality | The goals of the SF Bay Restoration Program (formally SF Bay Grant | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.129 | Geographic Programs - Southeast New England Coastal Watershed | To develop and support the Southeast New England Program | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.130 | Geographic Programs - Gulf Coast Ecosystem Restoration Council | The primary objective of this program is to disburse funds to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.202 | Congressionally Mandated Projects | To implement special Congressionally mandated spending for | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.203 | Environmental Finance Center Grants | The Environmental Finance Center Grant Program provides | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.204 | Multipurpose Grants to States and Tribes | Multipurpose Grants (MPGs) are intended to be used at state and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.305 | Compliance Assistance Support for Services to the Regulated | Since 1996, in partnership with industry associations, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.306 | Environmental Justice Collaborative Problem-Solving Cooperative | The Environmental Justice Collaborative Problem-Solving | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.309 | Surveys, Studies, Investigations, Training and Special Purpose | The program's objective is to provide funding in support of surveys, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.312 | Environmental Justice Government-to-Government (EJG2G) | The purpose of this cooperative agreement program is to support | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.313 | International Compliance and Enforcement Projects | The primary purpose of this program is to support projects that | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.418 | Construction Grants for Wastewater Treatment Works | To assist and serve as an incentive in construction of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.419 | Water Pollution Control State, Interstate, and Tribal Program Support | To assist States (including territories and the District of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.424 | Surveys, Studies, Investigations, Demonstrations, and | To support developing, expanding, planning, implementing, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.432 | State Public Water System Supervision | The objective of these grants is to provide financial assistance to | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Environmental Protection Agency | | 66.433 | State Underground Water Source Protection | To foster development and implementation of underground injection | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.436 | Surveys, Studies, Investigations, Demonstrations, and | To support the coordination and acceleration of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.437 | Geographic Programs â€“ Long Island Sound Program | The Long Island Sound Program: (1) implements the Long | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.441 | Healthy Watersheds Consortium Grant Program | To support strategically protecting healthy watersheds across the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.442 | Water Infrastructure Improvements for the Nation Small and | The objective is to assist small and underserved | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.443 | Reducing Lead in Drinking Water (SDWA 1459B) | The grant program funds activities to reduce lead in drinking | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.444 | Voluntary School and Child Care Lead Testing and Reduction Grant | Funding is awarded to states, territories, and Tribal Consortia to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.445 | Innovative Water Infrastructure Workforce Development Program | To inform the public about the role of water and wastewater | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.446 | Technical Assistance for Treatment Works (Clean Water Act [CWA] | The objective is to provide technical assistance and training | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.447 | Sewer Overflow and Stormwater Reuse Municipal Grant | The objective of the OSG Program is to award grants to the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.448 | Drinking Water System Infrastructure Resilience and | The purpose of this grant program is to increase drinking water | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.454 | Water Quality Management Planning | This program assists States (including territories and the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.456 | National Estuary Program | The National Estuary Program (NEP) goal is to protect and restore | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.458 | Clean Water State Revolving Fund | To create State Revolving Funds (SRFs) through a | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.460 | Nonpoint Source Implementation Grants | To assist States, the District of Columbia, American Samoa, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.461 | Regional Wetland Program Development Grants | To assist state, territory, tribal, and/or local government agencies | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.462 | National Wetland Program Development Grants and Five-Star | To assist state, Tribal, territory and/or local government agencies | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.466 | Geographic Programs - Chesapeake Bay Program | The Chesapeake Bay is a national treasure and unique as North | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.468 | Drinking Water State Revolving Fund | To provide a low-cost, long-term source of drinking water | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.469 | Geographic Programs - Great Lakes Restoration Initiative | The Great Lakes Restoration Initiative (GLRI) was launched in | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.472 | Beach Monitoring and Notification Program Implementation Grants | To assist Coastal and Great Lakes States, Territories, and Tribes | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.473 | Direct Implementation Tribal Cooperative Agreements | Direct Implementation Tribal Cooperative Agreements (DITCAs) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.475 | Geographic Programs â€“ Gulf of Mexico Program | The objectives of the Gulf of Mexico Program, housed within | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.481 | Geographic Programs â€“ Lake Champlain Basin Program | The goal of this program is to implement the Lake Champlain | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.484 | Geographic Programs - South Florida Geographic Initiatives | The EPA South Florida Program provides competitive grants to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.485 | Support for the Gulf Hypoxia Action Plan | The Infrastructure Investment and Jobs Act (Public Law 117-58) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.486 | Underground Injection Control Program Grants: Class VI | The Infrastructure Investment and Jobs Act (Public Law 117-58, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.487 | Non-State Member Support for the Gulf Hypoxia Action Plan | The Infrastructure Investment and Jobs Act (Public Law 117-58) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.489 | Response to Emergency Situations Affecting Public Water | To assist in responding to and alleviating emergency situations | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.490 | Centers of Excellence for Stormwater Control Infrastructure | To improve the effectiveness, cost efficiency, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.508 | Senior Environmental Employment Program | To use the talents of Americans 55 years of age or older to provide | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.509 | Science To Achieve Results (STAR) Research Program | The Science to Achieve Results (STAR) Program's goal is to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.510 | Surveys, Studies, Investigations and Special Purpose Grants | The Office of Research and Development (ORD) supports | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.511 | Office of Research and Development Consolidated Research/ | The Office of Research and Developmentâ€™s (ORD) Consolidated | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.516 | P3 Award: National Student Design Competition for | The P3 program supports research, development, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.518 | State Senior Environmental Employment Program | To use the talents of Americans 55 years of age or older to provide | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.521 | Innovative Water Technology Grant Program | The purpose of this program is to accelerate the development and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.522 | Enhanced Aquifer Use and Recharge Program | The purpose of this program is to carry out groundwater research | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.600 | Environmental Protection Consolidated Grants for the Insular | The Omnibus Territories Act (OTA) allows the Insular Areas to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.604 | Environmental Justice Small Grant Program | The Environmental Justice Small Grants (EJSG) Program | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.605 | Performance Partnership Grants | Fostering EPAâ€™s partnership with the states and Tribes is | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.608 | Environmental Information Exchange Network Grant Program | The National Environmental Information Exchange | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.609 | Protection of Children from Environmental Health Risks | To support efforts by organizations; educational institutions; | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.610 | Surveys, Studies, Investigations and Special Purpose Grants | The goals of these assistance programs are to: (1) support | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.611 | Environmental Policy and Innovation Grants | The goals of this assistance program are to (1) support analyses, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.614 | Financial Assistance For Community Support Activities To Address | The objective of this program is to provide financial assistance to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.615 | Environmental Justice Thriving Communities Grantmaking Program | The goals of this program are to make awards for the design | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.616 | Environmental and Climate Justice Community Change | The objective of this program is to provide financial assistance to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.700 | Consolidated Pesticide Enforcement Cooperative | State, territorial, and tribal agencies participating in this | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.701 | Toxic Substances Compliance Monitoring Cooperative | The objectives of this program are to: 1) assist Grantees, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.707 | TSCA Title IV State Lead Grants Certification of Lead- | The goal of EPA's lead-based paint program is to eliminate childhood | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.708 | Pollution Prevention Grants Program | The P2 grant program was enacted under the Pollution Prevention Act | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Environmental Protection Agency | | 66.714 | Pesticide Environmental Stewardship Program (PESP) Grants | The objective of this program is to encourage smart, | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.716 | Research, Development, Monitoring, Public | Grants are awarded to support research, development, | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.717 | Source Reduction Assistance | The goal of the Source Reduction Assistance (SRA) program is to | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.720 | PRIA 5: Farm Worker and Health Care Provider Training and | Grants are awarded to support education, outreach, training, and | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.721 | Reducing Embodied Greenhouse Gas Emissions for | The goal of the Reducing Embodied Greenhouse Gas | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.722 | Pesticide Registration Improvement Act Employee Training | The objective of this program, required by TITLE VIâ€" | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.801 | Hazardous Waste Management State Program Support | To assist State governments in the development and | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.802 | Superfund State, Political Subdivision, and Indian Tribe Site- | The goals of this assistance listing are to (1) conduct site | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.804 | Underground Storage Tank (UST) Prevention, Detection, and | To assist states, territories, tribes, or intertribal consortia | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.805 | Leaking Underground Storage Tank Trust Fund Corrective Action | To support state (including territories that are included in the | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.806 | Superfund Technical Assistance Grants (TAG) for Community | The statutory authority for this project is CERCLA 117(e) as | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.808 | Solid Waste Management Assistance Grants | To promote use of integrated solid waste management systems | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.809 | Superfund State and Indian Tribe Core Program Cooperative | To effectively implement the statutory requirements of | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.812 | Hazardous Waste Management Grant Program for Tribes | The Hazardous Waste Management Grant Program for Tribes | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.813 | Alternative or Innovative Treatment Technology Research, | To support grants and cooperative agreements for (1) a program of | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.814 | Brownfields Training, Research, and Technical Assistance | Brownfield sites are real property, the expansion, redevelopment, or | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.815 | Brownfields Job Training Cooperative Agreements | Brownfield sites are real property, the expansion, redevelopment, or | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.816 | Headquarters and Regional Underground Storage Tanks Program | This grant program funds activities in both the LUST prevention | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.817 | State and Tribal Response Program Grants | Brownfield sites are real property, the expansion, redevelopment, or | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.818 | Brownfields Multipurpose, Assessment, Revolving | Brownfield sites are real property, the expansion, redevelopment, or | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.820 | STATE PROGRAMS FOR CONTROL OF COAL COMBUSTION | The overall goal of the CCR Grant program is to provide grants to | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.920 | Solid Waste Infrastructure for Recycling Infrastructure | The objectives of the Post-Consumer Materials Management | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.921 | Reduce, Reuse, Recycling Education and Outreach Grants | The objective of the grant program is to improve the | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.926 | Indian Environmental General Assistance Program (GAP) | EPA provides Indian Environmental General Assistance Program | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.931 | International Financial Assistance Projects Sponsored by the Office | The Office of International and Tribal Affairs (OITA) engages | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.950 | National Environmental Education Training Program | The purpose of the teacher training program is to train | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.951 | Environmental Education Grants Program | The Environmental Education Grants Program supports | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.956 | Targeted Airshed Grant Program | The overall goal of the Targeted Airshed Grant program is to reduce air | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.957 | Greenhouse Gas Reduction Fund: National Clean | The Inflation Reduction Act (IRA) amends the Clean Air Act to include | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.958 | Water Infrastructure Finance and Innovation (WIFIA) | To accelerate investment in our nation's water and | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.959 | Greenhouse Gas Reduction Fund: Solar for All | The Inflation Reduction Act amends the Clean Air Act to include | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.960 | Greenhouse Gas Reduction Fund: Clean Communities | The Inflation Reduction Act amends the Clean Air Act to include | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.961 | Superfund State and Indian Tribe Combined Cooperative | To effectively implement the statutory requirements of | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.962 | Geographic Programs - Columbia River Basin Restoration (CRBR) | To support the protection and restoration of the | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.964 | Geographic Programs - Chesapeake Bay Program | The Chesapeake Bay is a national treasure and unique as North | https:/ / sam.g | https:/ / www. |
| Environmental Protection Agency | | 66.965 | CONTAMINATED ALASKA NATIVE CLAIMS SETTLEMENT | Congress appropriated funding starting in fiscal year 2023 for EPA to | https:/ / sam.g | https:/ / www. |
| Equal Employment Opportunity Commission | | 30.005 | Employment Discrimination Private Bar Program | a) To assist individuals who have filed a charge with the Commission, or | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.001 | High Intensity Drug Trafficking Areas Program | To reduce drug trafficking and drug production in the United | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.003 | DFC NATIONAL COMMUNITY ANTIDRUG | Per the authorizing legislation, for the Drug-Free Communities | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.004 | Anti-Doping Activities | The Office of National Drug Control Policy (ONDCP), Executive | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.005 | Drug Court Training and Technical Assistance | The Administration supports a combined public health and public | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.006 | Model Acts Program | The purpose of the Model Acts Program includes: A) advising | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.007 | Research and Data Analysis | The purpose of research and data analysis is to inform | https:/ / sam.g | https:/ / www. |
| Executive Office of the President | | 95.010 | Congressional Directives | To implement special Congressionally directed projects or | https:/ / sam.g | https:/ / www. |
| Export - Import Bank of the United States | | 31.007 | Export - Loan Guarantee/Insured Loans | The Export-Import Bank of the United States (Ex-Im Bank or the | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.002 | UNIVERSAL SERVICE FUND - HIGH COST | Universal service has been defined by Congress as â€œan | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.003 | UNIVERSAL SERVICE FUND - LIFELINE | Universal service has been defined by Congress as â€œan | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.004 | UNIVERSAL SERVICE FUND - SCHOOLS and LIBRARIES | The schools and libraries universal service support | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.005 | UNIVERSAL SERVICE FUND - RURAL HEALTH CARE | The Rural Health Care Program, one of the FCCâ€™s Universal | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.006 | COVID-19 Telehealth Program | In response to the coronavirus disease 2019 (COVID-19) | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.007 | Connected Care Pilot Program | Telehealth has assumed a critical role in health care delivery | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.008 | Affordable Connectivity Program | On December 27, 2020, the Consolidated Appropriations Act, | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Federal Communications Commission | | 32.009 | Emergency Connectivity Fund Program | In section 7402 of the American Rescue Plan Act (Act), Congress | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.010 | Supply Chain Reimbursement Program | On March 12, 2020, the Secure and Trusted Communications | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.011 | Affordable Connectivity Outreach Grant Program | Millions of low-income households experience difficulty paying for | https:/ / sam.g | https:/ / www. |
| Federal Communications Commission | | 32.012 | Cybersecurity Pilot Program | As broadband connectivity and Internet access have | https:/ / sam.g | https:/ / www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | | 38.006 | State Appraiser Agency Support Grants | To provide State Appraiser Regulatory Agencies with funds to | https:/ / sam.g | https:/ / www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | | 38.008 | Training and Technical Assistance for State Appraiser Regulatory | The objectives of this federal assistance are to expand and provide | https:/ / sam.g | https:/ / www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | | 38.009 | Board Support and Innovation Grant | The Appraisal Subcommittee is making funds available | https:/ / sam.g | https:/ / www. |
| Federal Permitting Improvement Steering Council | | 90.800 | Federal Permitting Improvement Steering Council Environmental | Providing financial assistance to Tribal governments to | https:/ / sam.g | https:/ / www. |
| General Services Administration | | 39.002 | Disposal of Federal Surplus Real Property | To assist State and local governments, and certain eligible (501(c) | https:/ / sam.g | https:/ / www. |
| General Services Administration | | 39.003 | Donation of Federal Surplus Personal Property | To donate Federal personal property no longer required for | https:/ / sam.g | https:/ / www. |
| General Services Administration | | 39.007 | Sale of Federal Surplus Personal Property | To sell personal property no longer needed by the | https:/ / sam.g | https:/ / www. |
| Gulf Coast Ecosystem Restoration Council | | 87.051 | Gulf Coast Ecosystem Restoration Council Comprehensive Plan | The primary objective of this program is to disburse funds to | https:/ / sam.g | https:/ / www. |
| Gulf Coast Ecosystem Restoration Council | | 87.052 | Gulf Coast Ecosystem Restoration Council Oil Spill Impact Program | The primary objective of this program is to disburse funds to | https:/ / sam.g | https:/ / www. |
| Inter-American Foundation | | 85.750 | IAF Assistance for Overseas Programs | The primary objectives of the IAF Assistance for Programs Overseas | https:/ / sam.g | https:/ / www. |
| Inter-American Foundation | | 85.751 | IAF Assistance for Overseas Programs | The primary objectives of the IAF Assistance for Programs Overseas | https:/ / sam.g | https:/ / www. |
| Japan-U.S. Friendship Commission | | 90.300 | Japan-U.S. Friendship Commission Grants | to promote educational, intellectual, artistic and cultural exchange and | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.010 | Teaching with Primary Sources | Teaching with Primary Sources (TPS) grants seek to fulfill the | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.011 | Library of Congress Grants | To provide grants to individuals and organizations. | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.012 | Connecting Communities Digital Initiative | The Connecting Communities Digital Initiative (CCDI) | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.013 | Of the People: Community Collections Grants | The Library of Congress seeks to award grants to support | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.014 | Affiliate Centers for the Book Programming Grants | Through a gift from the John Y. Cole and Nancy E. Gwinn Trust Fund, | https:/ / sam.g | https:/ / www. |
| Library of Congress | | 42.015 | Lewis-Houghton Civics and Democracy Initiative | With this notice, the Library of Congress invites education- | https:/ / sam.g | https:/ / www. |
| Millennium Challenge Corporation | | 85.002 | MCC Foreign Assistance for Overseas Programs | To provide United States assistance for global development | https:/ / sam.g | https:/ / www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | | 85.400 | Morris K. Udall Scholarship Program | The Udall Undergraduate Scholarship identifies | https:/ / sam.g | https:/ / www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | | 85.401 | Morris K. Udall Fellowship Program | The Native American Graduate Fellowship Program supports | https:/ / sam.g | https:/ / www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | | 85.402 | Morris K. Udall Native American Congressional | The Native American Congressional Internship Program | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.001 | Science | The Science Mission Directorate (SMD) pursues NASA's | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.002 | Aeronautics | The NASA Mission draws support from NASAâ€™s world- | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.003 | Exploration | The Exploration Systems Development Mission Directorate | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.007 | Space Operations | NASAâ€™s Space Operations Mission Directorate is the heart | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.008 | Office of Stem Engagement (OSTEM) | NASAâ€™s journeys have propelled technological | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.009 | Mission Support | Provides effective and efficient institutional support to enable | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.012 | Space Technology | NASAâ€™s Space Technology Mission Directorate (STMD) | https:/ / sam.g | https:/ / www. |
| National Aeronautics and Space Administration | | 43.014 | Congressionally Directed Programs | NASA Community Projects/NASA Special Projects are provided | https:/ / sam.g | https:/ / www. |
| National Archives and Records Administration | | 89.001 | National Archives Reference Services Historical Research | Objectives: To provide professional reference service to members of | https:/ / sam.g | https:/ / www. |
| National Archives and Records Administration | | 89.003 | National Historical Publications and Records Grants | To undertake a wide-range of activities related to the | https:/ / sam.g | https:/ / www. |
| National Council on Disability | | 92.002 | National Council on Disability | NCD is an independent federal agency charged with advising the | https:/ / sam.g | https:/ / www. |
| National Credit Union Administration | | 44.002 | Community Development Revolving Loan Fund Program for | The purpose of the Community Development Revolving | https:/ / sam.g | https:/ / www. |
| National Endowment for the Arts | | 45.024 | Promotion of the Arts Grants to Organizations and Individuals | To support opportunities for all people to participate in the arts | https:/ / sam.g | https:/ / www. |
| National Endowment for the Arts | | 45.025 | Promotion of the Arts Partnership Agreements | To develop and maintain partnerships with the state and | https:/ / sam.g | https:/ / www. |
| National Endowment for the Arts | | 45.201 | Arts and Artifacts Indemnity | To provide for indemnification against loss or damage for | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.129 | Promotion of the Humanities Federal/ State Partnership | Federal/State Partnerships promote local, statewide, and | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.130 | Promotion of the Humanities Challenge Grants | To strengthen institutional base and organizational capacity | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.149 | Promotion of the Humanities Division of Preservation and | Preservation and Access grants ensure the long-term and wide | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.160 | Promotion of the Humanities Fellowships and Stipends | Fellowships and Stipends provide support for individual | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.161 | Promotion of the Humanities Research | Humanities Research awards advance knowledge and | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.162 | Promotion of the Humanities Teaching and Learning | Teaching and Learning Resources and Curriculum | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.163 | Promotion of the Humanities Professional | The Institutes program promotes better teaching and research | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.164 | Promotion of the Humanities Public Programs | Public Programs grants provide opportunities for the American public to | https:/ / sam.g | https:/ / www. |
| National Endowment for the Humanities | | 45.169 | Promotion of the Humanities Office of Digital Humanities | The Office of Digital Humanities supports innovative humanities | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.041 | Engineering | "The NSF Directorate for Engineering (ENG) seeks to improve the | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.049 | Mathematical and Physical Sciences | To promote the progress of the mathematical and | https:/ / sam.g | https:/ / www. |

| | | | | | |
|---|---|---|---|---|---|
| National Science Foundation | 47.050 | Geosciences | To strengthen and enhance the national scientific enterprise | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.070 | Computer and Information Science and Engineering | To support investigator-initiated research and education in all areas of | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.074 | Biological Sciences | To promote the progress of the biological sciences and | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.075 | Social, Behavioral, and Economic Sciences | To contribute to the scientific strength and welfare of the Nation | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.076 | STEM Education (formerly Education and Human Resources) | To provide leadership and ensure the vitality of the Nation's science, | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.078 | Polar Programs | To strengthen and enhance the national scientific enterprise | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.079 | Office of International Science and Engineering | To enable the U.S. to maintain its leadership within the global | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.083 | Integrative Activities | Enhance the competitiveness of the Nationâ€™s research | https:// / sam.g | https:// / www. |
| National Science Foundation | 47.084 | NSF Technology, Innovation, and Partnerships | The Directorate for Technology, Innovation, and Partnerships (TIP) | https:// / sam.g | https:// / www. |
| Northern Border Regional Commission | 90.601 | Northern Border Regional Development | The Northern Border Regional Commission is a Federal-State | https:// / sam.g | https:// / www. |
| Nuclear Regulatory Commission | 77.007 | U.S. Nuclear Regulatory Commission Minority Serving | The Minority Serving Institutions Grants Program (MSIGP) funds | https:// / sam.g | https:// / www. |
| Nuclear Regulatory Commission | 77.008 | U.S. Nuclear Regulatory Commission Scholarship and | This Scholarship and Fellowship program provides funding for | https:// / sam.g | https:// / www. |
| Nuclear Regulatory Commission | 77.009 | U.S. Nuclear Regulatory Commission Office of Research | The Office of Nuclear Regulatory Research (RES) furthers the | https:// / sam.g | https:// / www. |
| Office of the Director Of National Intelligence | 54.001 | Intelligence Community Centers for Academic Excellence | The Intelligence Community Centers for Academic Excellence | https:// / sam.g | https:// / www. |
| Pension Benefit Guaranty Corporation | 86.001 | Pension Plan Termination Insurance | To encourage the continuation and maintenance of | https:// / sam.g | https:// / www. |
| Railroad Retirement Board | 57.001 | Social Insurance for Railroad Workers | Provide income security for retired and disabled railroad workers, their | https:// / sam.g | https:// / www. |
| Railroad Retirement Board | 57.006 | Social Insurance for Railroad Workers | Provide income security for retired and disabled railroad workers, their | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.006 | 8(a) Business Development Program | To foster business ownership by individuals who are both | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.007 | 7(j) Technical Assistance | The purpose of the program is to provide Business Development | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.008 | Disaster Assistance Loans | To provide loans to the survivors of declared disasters for uninsured | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.011 | Small Business Investment Companies | To establish privately owned and managed Small Business | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.012 | 7(a) Loan Guarantees | To provide guaranteed loans from lenders to eligible for profit small | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.016 | Surety Bond Guarantees | To guarantee surety bonds issued by Treasury listed surety | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.026 | SCORE | To provide mentoring and workshops to potential and existing | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.037 | Small Business Development Centers | To provide management counseling, training, and technical | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.041 | 504 Certified Development Loans | To assist small business concerns by providing long-term, fixed-rate | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.043 | Women's Business Ownership Assistance | To fund private, nonprofit organizations to assist, through | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.044 | Veterans Outreach Program | In accordance with Public Law 110-186, the organizations will | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.046 | Microloan Program | To assist women, low-income, and minority entrepreneurs, business | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.050 | Prime Technical Assistance | To increase the number of microenterprises and to enhance the | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.052 | Native American Outreach | To fund economic development projects that will provide small | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.053 | Ombudsman and Regulatory Fairness Boards | To assure equity and fairness in federal regulation of small | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.054 | 7(a)Export Loan Guarantees | Provides aid and assistance to small-businesses to increase | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.055 | HUBZone Program | The purpose of the HUBZone program is to provide federal | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.058 | Federal and State Technology Partnership Program | The purpose of the FAST program is to strengthen the | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.059 | Congressional Grants | Provide funding for small business development and | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.061 | State Trade Expansion | Grants made to state governments to increase the number of | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.062 | Intermediary Loan Program | Three year pilot program in which SBA made direct loans of up | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.065 | Growth Accelerator Fund Competition | Growth Accelerators provide focused assistance to STEM/ | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.066 | Transition Assistance â€“ Entrepreneurship Track (Boots to | Boots to Business (B2B) grant/ cooperative agreement | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.067 | Regional Innovation Clusters | The purpose of this program is to connect and expand regional | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.069 | SBA Emerging Leaders initiative | Emerging Leaders is a free educational series that provides executives | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.072 | Economic Injury Disaster Loan Emergency Advance | In response to the Coronavirus (COVID-19) pandemic, | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.073 | Paycheck Protection Loan Program (PPP) | The Paycheck Protection Program established by the | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.075 | Shuttered Venue Operators Grant Program | The SVOG Program provided funds to support the ongoing | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.076 | Lab-to-Market | Highlight successful examples of innovation ecosystems, particularly | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.077 | Community Navigator Pilot Program | Per the American Rescue Plan, the SBA is authorized to create | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.078 | Restaurant Revitalization Fund | This program provided emergency assistance for eligible restaurants, | https:// / sam.g | https:// / www. |
| Small Business Administration | 59.079 | Cybersecurity for Small Business Pilot Program | Funding opportunity for state governments to assist small business | https:// / sam.g | https:// / www. |
| Social Security Administration | 96.001 | Social Security Disability Insurance | Social Security pays benefits to people who canâ€™t work because | https:// / sam.g | https:// / www. |
| Social Security Administration | 96.002 | Social Security Retirement Insurance | The Social Security Retirement benefit is a monthly payment that | https:// / sam.g | https:// / www. |
| Social Security Administration | 96.004 | Social Security Survivors Insurance | Social Security helps survivors by providing income for the families | https:// / sam.g | https:// / www. |

| | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Social Security Administration | | 96.006 | Supplemental Security Income | To ensure a minimum level of income to persons who have | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.007 | Social Security Research and Demonstration | (1) To conduct social, economic, and demographic research | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.008 | Social Security - Work Incentives Planning and Assistance Program | To comply with the Ticket-to-Work and Work Incentives | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.009 | Social Security State Grants for Work Incentives Assistance to | Support State designated Protection and Advocacy (P&A) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.011 | Analyzing Relationships between Disability, Rehabilitation, and | The objective of the program is to foster new analysis of work, | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.012 | Interventional Cooperative Agreement Program | (1) To conduct social, economic, and demographic research | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.013 | Strengthening Protections for Social Security Beneficiaries | Support State designated Protection and Advocacy (P&A) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Social Security Administration | | 96.020 | Special Benefits for Certain World War II Veterans | To pay a special benefit to certain World War II veterans, who are | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| Southeast Crescent Regional Commission | | 90.705 | Southeast Crescent Regional Commission - Economic and | The mission of the Commission is to help build sustainable | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.031 | American Latino Museum Internship and Fellowship Initiative | This initiative is designed to provide opportunities for | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.032 | 21st Century Museum Professional Program | The 21st Century Museum Professional (21MP) program has | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.033 | Museum Grants for American Latino History and Culture | This program supports projects that build the capacity of American | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.301 | Museums for America | Museums for America (MFA) is designed to strengthen the ability of | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.308 | Native American/Native Hawaiian Museum Services Program | The Native American/ Native Hawaiian Museum Services | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.309 | Museum Grants for African American History and Culture | Museum Grants for African American History and Culture | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.310 | Grants to States | The Grants to States program supports efforts across the nation | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.311 | Native American and Native Hawaiian Library Services | The Native American and Native Hawaiian Library Services | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.312 | National Leadership Grants | NLG supports projects that address critical needs of the museum | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| The Institute of Museum and Library Services | | 45.313 | Laura Bush 21st Century Librarian Program | The Laura Bush 21st Century Librarian (LB21) grant progam | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| U.S. Agency for Global Media | | 90.500 | International Broadcasting Independent Grantee | To promote freedom and democracy and enhance understanding | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| U.S. Election Assistance Commission | | 90.400 | Help America Vote College Program | The purpose of this program is: (1) to encourage students | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| U.S. Election Assistance Commission | | 90.401 | Help America Vote Act Requirements Payments | HAVA Section 251 authorizes requirements payments to assist | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| U.S. Election Assistance Commission | | 90.404 | HAVA Election Security Grants | As authorized under Section 101 of the Help America Vote Act of | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| United States Institute of Peace | | 91.005 | Priority Grant Competition | USIP grants increase the breadth and depth of the Instituteâ€™s | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| United States International Development Finance Corporation | | 87.004 | Equity Investments | The U.S. International Development Finance Corporation (DFC) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| United States International Development Finance Corporation | | 87.005 | Debt Financing | The U.S. International Development Finance Corporation (DFC) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| United States International Development Finance Corporation | | 87.006 | Political Risk Insurance | The U.S. International Development Finance Corporation (DFC) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |
| United States International Development Finance Corporation | | 87.101 | Technical Assistance and Feasibility Studies | The U.S. International Development Finance Corporation (DFC) | https:/ / sam.g | https:/ / www. | | | | | | | | | | | | | | |



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 29, 2025

M-25-14

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM: Matthew J. Vaeth, Acting Director, Office of Management and Budget

SUBJECT: Rescission of M-25-13

    OMB Memorandum M-25-13 is rescinded.  If you have questions about implementing the President's Executive Orders, please contact your agency General Counsel.



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

In implementing President Trump's Executive Orders, OMB issued guidance requesting that agencies temporarily pause, to the extent permitted by law, grant, loan or federal financial assistance programs that are implicated by the President's Executive Orders.

**Any program not implicated by the President's Executive Orders is not subject to the pause.**

The Executive Orders listed in the guidance are:

     *Protecting the American People Against Invasion*

     *Reevaluating and Realigning United States Foreign Aid*

     *Putting America First in International Environmental Agreements*

     *Unleashing American Energy*

     *Ending Radical and Wasteful Government DEI Programs and Preferencing*

     *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*

     *Enforcing the Hyde Amendment*

Any program that provides direct benefits to individuals is not subject to the pause.

The guidance establishes a process for agencies to work with OMB to determine quickly whether any program is inconsistent with the President's Executive Orders. A pause could be as short as day. In fact, OMB has worked with agencies and has already approved many programs to continue even before the pause has gone into effect.

Any payment required by law to be paid will be paid without interruption or delay.

**Q: Is this a freeze on all Federal financial assistance?**

A:  No, the pause does not apply across-the-board. It is expressly limited to programs, projects, and activities implicated by the President's Executive Orders, such as ending DEI, the green new deal, and funding nongovernmental organizations that undermine the national interest.

**Q: Is this a freeze on benefits to Americans like SNAP or student loans?**

A: No, any program that provides direct benefits to Americans is explicitly excluded from the pause and exempted from this review process. In addition to Social Security and Medicare, already explicitly excluded in the guidance, mandatory programs like Medicaid and SNAP will continue without pause.

Funds for small businesses, farmers, Pell grants, Head Start, rental assistance, and other similar programs will not be paused. If agencies are concerned that these programs may implicate the President's Executive Orders, they should consult OMB to begin to unwind these objectionable policies without a pause in the payments.

**Q:  Is the pause of federal financial assistance an impoundment?**

**A:**  No, it is not an impoundment under the Impoundment Control Act.  It is a temporary pause to give agencies time to ensure that financial assistance conforms to the policies set out in the President's Executive Orders, to the extent permitted by law.

Temporary pauses are a necessary part of program implementation that have been ordered by past presidents to ensure that programs are being executed and funds spent in accordance with a new President's policies and do not constitute impoundments.

**Q: Why was this pause necessary?**

**A:**  To act as faithful stewards of taxpayer money, new administrations must review federal programs to ensure that they are being executed in accordance with the law and the new President's policies.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; STATE OF
CALIFORNIA; STATE OF ILLINOIS;
STATE OF RHODE ISLAND; STATE OF
NEW JERSEY; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; THE DISTRICT OF
COLUMBIA; STATE OF HAWAI'I;
STATE OF MAINE; STATE OF
MARYLAND; STATE OF MICHIGAN;
STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NORTH
CAROLINA; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF
VERMONT; STATE OF WASHINGTON;
and STATE OF WISCONSIN,

     Plaintiffs,

v.

DONALD TRUMP, *in his Official
Capacity as President of the United
States*; U.S. OFFICE OF
MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, *in his Official
Capacity as Acting Director of the U.S.
Office of Management and Budget*; U.S.
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT, *in his Official
Capacity as Secretary of the Treasury*;
PATRICIA COLLINS, *in her Official
Capacity as Treasurer of the U.S.*; U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DOROTHY A.
FINK, M.D., *in her Official Capacity As
Acting Secretary Of Health And Human
Services*; U.S. DEPARTMENT OF
EDUCATION; DENISE CARTER, *in her
Official Capacity as Acting Secretary of
Education*; U.S. FEDERAL
EMERGENCY MANAGEMENT
AGENCY; CAMERON HAMILTON, *in*

C.A. No. 25-cv-39-JJM-PAS

his Official Capacity as Acting  )
Administrator of the U.S. Federal  )
Emergency Management Agency; U.S.  )
DEPARTMENT OF  )
TRANSPORTATION;  )
JUDITH KALETA, in her Official  )
Capacity as Acting Secretary of  )
Transportation; U.S. DEPARTMENT OF  )
LABOR; VINCE MICONE, in his Official  )
Capacity as Acting Secretary of Labor;  )
U.S. DEPARTMENT OF ENERGY;  )
INGRID KOLB, in her Official Capacity  )
as Acting Secretary of the U.S.  )
Department of Energy; U.S.  )
ENVIRONMENTAL PROTECTION  )
AGENCY; JAMES PAYNE, in his Official  )
Capacity as Acting Administrator of the  )
U.S. Environmental Protection Agency;  )
U.S. DEPARTMENT OF HOMELAND  )
SECURITY; KRISTI NOEM, in her  )
Capacity as Secretary of the U.S.  )
Department of Homeland Security; U.S.  )
DEPARTMENT OF JUSTICE; JAMES R.  )
McHENRY III, in his Official Capacity as  )
Acting Attorney General of the U.S.  )
Department of Justice; THE NATIONAL  )
SCIENCE FOUNDATION; and DR.  )
SETHURAMAN PANCHANATHAN, in  )
his Capacity as Director of the National  )
Science Foundation,  )
 )
      Defendants.  )

## **TEMPORARY RESTRAINING ORDER**

The legal standard for a Temporary Restraining Order ("TRO") mirrors that of

a preliminary injunction. The Plaintiff States must show that weighing these four

factors favors granting a TRO:

1. likelihood of success on the merits;
2. potential for irreparable injury;
3. balance of the relevant equities; and

    4. effect on the public interest if the Court grants or denies the TRO.

*Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981). The traditional equity doctrine that preliminary injunctive relief is an extraordinary and drastic remedy that is never awarded as of right guides the Court. *Id.* The Court is also fully aware of the judiciary's role as one of the three independent branches of government, and that the doctrine of separation of powers restricts its reach into the Executive Branch. The Court now turns to the four factors.

### <u>Likelihood of Success on the Merits</u>

We begin with what courts have called a key factor—a consideration of the movant's likelihood of success on the merits.

In <u>**Count I**</u>, the States allege that the Executive's actions by the Office of Management and Budget ("OMB")[1] violate the Administrative Procedure Act ("APA")[2] because Congress has not delegated any unilateral authority to the Executive to indefinitely pause all federal financial assistance without considering the statutory and contractual terms governing these billions of dollars of grants.

In <u>**Count II**</u>, the States allege that the Executive's actions violate the APA because the failure to spend funds appropriated by Congress is arbitrary and capricious in multiple respects.

---

[1] See *supra* for discussion of mootness.
[2] 5 U.S.C. § 551 et seq.

In **<u>Count III</u>**, the States allege that the failure to spend funds appropriated by Congress violates the separation of powers because the Executive has overridden Congress' judgments by refusing to disburse already-allocated funding for many federal grant programs.

In **<u>Count IV</u>**, the States allege a violation of the Spending Clause of the U.S. Constitution. U.S. Const. art. I, § 8, cl. law 1.

And in **<u>Count V</u>**, the States allege a violation of the presentment (U.S. Const. art. I, § 7, cl. 2), appropriations (U.S. Const. art. I, § 7), and take care clauses (U.S. Const. art. II, § 3, cl. 3) (the Executive must "take care that the laws be faithfully executed . . .").

Because of the breadth and ambiguity of the "pause," the Court must consider the States' TRO motion today based on the effect it will have on many—but perhaps not all—grants and programs it is intended to cover. Are there some aspects of the pause that might be legal and appropriate constitutionally for the Executive to take? The Court imagines there are, but it is equally sure that there are many instances in the Executive Orders' wide-ranging, all-encompassing, and ambiguous "pause" of critical funding that are not. The Court must act in these early stages of the litigation under the "worst case scenario" because the breadth and ambiguity of the Executive's action makes it impossible to do otherwise.

The Court finds that, based on the evidence before it now, some of which is set forth below, the States are likely to succeed on the merits of some, if not all, their claims. The reasons are as follows:

- The Executive's action unilaterally suspends the payment of federal funds to the States and others simply by choosing to do so, no matter the authorizing or appropriating statute, the regulatory regime, or the terms of the grant itself. The Executive cites no legal authority allowing it to do so; indeed, no federal law would authorize the Executive's unilateral action here.

- Congress has instructed the Executive to provide funding to States based on stated statutory factors—for example, population or the expenditure of qualifying State funds. By trying to impose certain conditions on this funding, the Executive has acted contrary to law and in violation of the APA.

- The Executive Orders threaten the States' ability to conduct essential activities and gave the States and others less than 24 hours' notice of this arbitrary pause, preventing them from making other plans or strategizing how they would continue to function without these promised funds.

- Congress appropriated many of these funds, and the Executive's refusal to disburse them is contrary to congressional intent and directive and thus arbitrary and capricious.

- Congress has not given the Executive limitless power to broadly and indefinitely pause all funds that it has expressly directed to specific recipients and purposes and therefore the Executive's actions violate the separation of powers.

Judge Bruce M. Selya of the First Circuit succinctly set out the black letter law about appropriated funds and Executive powers:

> When an executive agency administers a federal statute, the agency's power to act is "authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013). It is no exaggeration to say that "an agency literally has no power to act ... unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986). Any action that an agency takes outside the bounds of its statutory authority is ultra vires, see *City of Arlington*, 569 U.S. at 297, 133 S. Ct. 1863, and violates the Administrative Procedure Act, see 5 U.S.C. § 706(2)(C).

*City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).

The Executive's statement that the Executive Branch has a duty "to align Federal spending and action with the will of the American people *as expressed through Presidential priorities*," (ECF No. 48-1 at 11) (emphasis added) is a constitutionally flawed statement. The Executive Branch has a duty to align federal spending and action with the will of the people as **expressed through congressional appropriations,** not through "Presidential priorities." U.S. Const. art. II, § 3, cl. 3 (establishing that the Executive must "take care that the laws be faithfully executed . . ."). Federal law specifies how the Executive should act if it believes that appropriations are inconsistent with the President's priorities–it must ask Congress, not act unilaterally. The Impoundment Control Act of 1974 specifies that the President may ask that Congress rescind appropriated funds.[3] Here, there is no evidence that the Executive has followed the law by notifying Congress and thereby effectuating a potentially legally permitted so-called "pause."

---

[3] If both the Senate and the House of Representatives have not approved a rescission proposal (by passing legislation) within forty-five days of continuous session, any funds the Executive is withholding must be made available for obligation.

Justice Brett Kavanaugh wrote when he was on the D.C. Circuit:

> Like the Commission here, a President sometimes has policy reasons (as distinct from constitutional reasons, *cf. infra* note 3) for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds. Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill. *See* 2 U.S.C. § 683; *see also Train v. City of New York,* 420 U.S. 35, 95 S. Ct. 839, 43 L. Ed. 2d 1 (1975); Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, to Edward L. Morgan, Deputy Counsel to the President (Dec. 1, 1969), *reprinted in Executive Impoundment of Appropriated Funds: Hearings Before the Subcomm. on Separation of Powers of the S. Comm. on the Judiciary,* 92d Cong. 279, 282 (1971) ("With respect to the suggestion that the President has a constitutional power to decline to spend appropriated funds, we must conclude that existence of such a broad power is supported by neither reason nor precedent.")

*In re Aiken Cnty.,* 725 F.3d 255, 261, n.1 (D.C. Cir. 2013).

The Court finds that the record now before it substantiates the likelihood of a successful claim that the Executive's actions violate the Constitution and statutes of the United States.

The Court now moves on to the remaining three injunction considerations.

## **Irreparable Harm**

The States have put forth sufficient evidence at this stage that they will likely suffer severe and irreparable harm if the Court denies their request to enjoin enforcement of the funding pause.

- All the States rely on federal funds to provide and maintain vital programs and services and have introduced evidence that the withholding of federal funds

will cause severe disruption in their ability to administer such vital services–
even if it is for a brief time.

- The States detail many examples of where the Executive's overarching pause on funding that Congress has allocated will harm them and their citizens. These programs range from highway planning and construction, childcare, veteran nursing care funding, special education grants, and state health departments, who receive billions of dollars to run programs that maintain functional health systems. *See, e.g.*, ECF No. 3-1 at 56 (highway construction programs in Delaware), at 73 (childcare programs in Michigan), at 113 (veterans nursing care funding in Washington state), at 77 (special education programs in Minnesota), and at 100–01 (health care programs in New Mexico).

- The pause in federal funding will also hurt current disaster relief efforts. The States assert that the pause applies to federal actions directing federal financial assistance to North Carolina to address the damage inflicted by Hurricane Helene and to any Federal Emergency Management Agency grant money not yet disbursed, including key support for California's ongoing response to the fires. ECF No. 1 ¶¶ 80–81.

- A January 28, 2025, email from Shannon Kelly, the Director of the National High Intensity Drug Case Trafficking Areas (HIDTA) program, who aids law enforcement in high drug-trafficking areas, shows that payments to state-based HIDTA programs have been paused, putting the public's safety at risk. *Id.* ¶ 83.

The States have set forth facts showing that the Executive's abrupt "pause" in potentially trillions of dollars of federal funding will cause a ripple effect that would directly impact the States and other's ability to provide and administer vital services and relief to their citizens. Thus, the federal grants to States and others that are impounded through the Executive's pause in disbursement will cause irreparable harm.

And it is more than monetary harm that is at stake here. As Justice Anthony Kennedy reminds us, "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers." *Clinton v. City of New York*, 524 U.S. 417, 449–50 (1998) (Kennedy, J. concurring)

<u>Balance of the Equities and Public Interest</u>

As the Court considers the final two factors, the record shows that the balance of equities weighs heavily in favor of granting the States' TRO.

- If the Defendants are prevented from enforcing the directive contained in the OMB Directive, they merely would have to disburse funds that Congress has appropriated to the States and others.

- On the other hand, if the Court denies the TRO, the funding that the States and others are presumably due under law is in an indefinite limbo—a hardship worsened by the fact that the States had less than 24 hours' notice to act in anticipation of the funding shortfall.

- The fact that the States have shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest. Moreover, the

public interest further favors a TRO because absent such an order, there is a substantial risk that the States and its citizens will face a significant disruption in health, education, and other public services that are integral to their daily lives due to this pause in federal funding.

The evidence in the record at this point shows that, despite the rescission of the OMB Directive, the Executive's decision to pause appropriated federal funds "remains in full force and effect."  ECF No. 44.

<u>Mootness</u>

The Defendants now claim that this matter is moot because it rescinded the OMB Directive.  But the evidence shows that the alleged rescission of the OMB Directive was in name-only and may have been issued simply to defeat the jurisdiction of the courts.  The substantive effect of the directive carries on.

Messaging from the White House and agencies proves the point.  At 2:04 EST, less than an hour before the Court's hearing on the States' motion on Wednesday, the Defendants filed a Notice saying, "OMB elected to rescind that challenged Memorandum.  *See* OMB Mem. M-25-14, *Rescission of M-25-13* (Jan. 28, 2025) ('OMB Memorandum M-25-13 is rescinded.')."  ECF No. 43.  Yet about twenty minutes before the Defendants filed the Notice, the President's Press Secretary sent a statement via the X platform that said: "The President's [Executive Orders] EO's on federal funding remain in full force and effect and will be rigorously implemented."  ECF No. 44.  And then the following day (January 30, 2025 at 7:50 MST and again at 5:27 p.m. EST) after the so-called rescission, the Environmental Protection Agency, in an email to

federal grant recipients, said that the awarded money could not be disbursed while it worked "diligently to implement the [OMB] Memorandum, Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs, to align Federal spending and action with the will of the American people as expressed through President Trump's priorities. The agency is temporarily pausing all activities related to the obligation or disbursement of EPA Federal financial assistance at this time. EPA is continuing to work with OMB as they review processes, policies, and programs, as required by the memorandum." ECF No. 48-1 at 6, 11.

Based on the Press Secretary's unequivocal statement and the continued actions of Executive agencies, the Court finds that the policies in the OMB Directive that the States challenge here are still in full force and effect and thus the issues presented in the States' TRO motion are not moot.

<u>Conclusion</u>

Consistent with the findings above, and to keep the status quo, the Court hereby ORDERS that a TEMPORARY RESTRAINING ORDER is entered in this case until this Court rules on the States' forthcoming motion for a preliminary injunction, which the States shall file expeditiously.

During the pendency of the Temporary Restraining Order, Defendants shall not pause, freeze, impede, block, cancel, or terminate Defendants' compliance with awards and obligations to provide federal financial assistance to the States, and Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

If Defendants engage in the "identif[ication] and review" of federal financial assistance programs, as identified in the OMB Directive, such exercise shall not affect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary's statement of January 29, 2025. ECF No. 44.

Defendants' attorneys shall provide written notice of this Order to all Defendants and agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m. Defendants shall file a copy of the notice on the docket at the same time.

Defendants shall comply with all notice and procedural requirements in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs.

The TRO shall be in effect until further Order of this Court. A preliminary hearing, at which time the States will have to produce specific evidence in support of a preliminary injunction, will be set shortly at a day and time that is convenient to the parties and the Court.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____

John J. McConnell, Jr.
Chief Judge
United States District Court for the District of Rhode Island

January 31, 2025

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.,

        Plaintiffs,

        v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES, et al.,

        Defendants.

C.A. No. 1:25-cv-00039

**REQUEST FOR EMERGENCY RELIEF TO ENFORCE TEMPORARY RESTRAINING ORDER OF JANUARY 31, 2025, UPON EVIDENCE OF VIOLATION**

## PLAINTIFF STATES' MOTION FOR ENFORCEMENT OF THE TEMPORARY RESTRAINING ORDER

On January 31, 2025, this Court issued a Temporary Restraining Order enjoining Defendants, including the President of the United States, Donald J. Trump, the United States Office of Management and Budget, and the United States Treasury Department, from "reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant)" by any means, including through oblique means "such as the continued implementation identified by the White House Press Secretary's statement of January 29, 2025." TRO 12, ECF No. 50 ("Order"). Yet Plaintiff States and entities within the Plaintiff States continue to be denied access to federal funds. These denials continue to cause immediate irreparable harm as demonstrated in the temporary restraining order proceedings and will be further demonstrated in support of the Plaintiff States' request for preliminary injunction, filed simultaneously with this motion. Jobs, lives, and the social fabric of life in the Plaintiff States are

1

at risk from the disruptions and uncertainty that have continued now a full week after entry of the Order. As this Court noted, executive action that is "in name-only and may have" proceeded "simply to defeat the jurisdiction of the courts" weighs in favor of temporary but decisive action. Order, 10. Unfortunately, such action is once again necessary on an urgent basis.

The sands have only continued to shift since January 31. As explained below, there has been an ever-changing kaleidoscope of federal financial assistance that has been suspended, deleted, in transit, under review, and more since entry of the Order. These conditions persist today. In particular, Defendants have—for the first time this week—taken the position that certain federal funds, including federal financial assistance under the Inflation Reduction Act ("IRA") and the Infrastructure Improvement and Jobs Act ("IIJA"), is outside the scope of the Court's Order, a position contradicted by the plain text of the Order and the notice Defendants previously filed with the Court explaining their view of the scope of the Order. *See* Order 11-12.

And, while it is imaginable that a certain amount of machinery would need to be re-tooled in order to undo the breadth of the Federal Funding Freeze, there is no world in which these scattershot outages, which as of this writing impact billions of dollars in federal funding across the Plaintiff States, can constitute compliance with this Court's Order. Defendants contemplated an all-of-government "pause" on federal funding could be implemented in the less than 24 hours between when the OMB Directive issued and when it took effect. Yet, as to a number of funding sources that provide critical services in Plaintiffs' States, the situation has not changed at all nearly a week after the Court's Order, which noted that "[t]he evidence in the record at this point shows that . . . the Executive's decision to pause appropriated federal funds [for at least some federal programs] 'remains in full force and effect.'" Order 10.

Defendants also seek resort to unspecified administrative and operational delays—but these are the delays the Defendants are enjoined from imposing. This Court should enforce the plain text of its temporary restraining order and order Defendants to immediately restore funds and desist from the federal funding pause until the preliminary injunction motion can be heard and decided, a process which is proceeding expeditiously in separate proceedings before this Court.

## I.      FACTUAL BACKGROUND

### A.      Court Order

This Court's Order restrained three types of conduct. First, Defendants shall "not pause, freeze, impede, block, cancel, or terminate Defendants' compliance with awards and obligations to provide federal financial assistance to the States, and Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." Order 11. Second, the Defendants shall not accomplish any of the listed prohibited activities during "'identif[ication] and review' of federal financial assistance programs, as identified in the OMB Directive." Order 12. Third, the Federal Funding Freeze is not to be reinstituted under any name—Defendants are "restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant)." *Id*. Moreover, the Court required affirmative action of the Defendants—that is, if any grant needed to be stopped, delayed, or otherwise withheld in the regular order, Defendants are required to "comply with all notice and procedural requirements in the award, agreement, or other instrument" governing the federal financial assistance at issue. *Id*.

In addition, in recognition that the scope of the Federal Funding Freeze was vast, the Court ordered Defendants' attorneys to "provide written notice of this Order to all Defendants and

agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m." and file a copy with the Court at the same time.  *Id*.

### B. Defendants' Subsequent Conduct

#### 1. Notice of Court Order

Defendants filed the Notice of Court Order on Monday, February 3, 2025.  In it, Defendants stated their understanding of the scope of the Court's Order, telling all of their "employees, contractors, and grantees" that "Federal agencies cannot pause, freeze, impede, block, cancel, or terminate any awards or obligations on the basis of the OMB Memo, or on the basis of the President's recently issued Executive Orders."  Notice of Ct. Order 1, ECF No. 51-1. Defendants accompanied their filing of the Notice with a brief cover memorandum to the Court, which elaborated on their views that:

- the Order did not restrain the "President or his advisors from communicating with federal agencies or the public about the President's priorities regarding federal spending."

- the Order did not enjoin "the President's Executive Orders, which are plainly lawful and unchallenged in this case."

- the Order did not "impos[e] compliance obligations on federal agencies that are not Defendants in this case."

#### 2. Noncompliance with Court Order

Despite the Court's order, Defendants have failed to resume disbursing federal funds in multiple respects.

*IRA/IIJA funds*. First, Defendants have failed to fully resume disbursing federal funds appropriated by the IRA and IIJA. Plaintiff States' agencies that receive IRA/IIJA-appropriated funds under final grant agreements have been regularly refreshing federal payment portals—in particular, the Automated Standard Application for Payments ("ASAP")—to check whether their

grants have been restored. For some IRA/IIJA grants, grant accounts have reappeared over the course of the week in ASAP, and federal grantor agencies have communicated to the States that grant accounts are or will shortly be un-suspended. For other IRA/IIJA grants, as of the evening of Wednesday, February 5, grant accounts continue to be missing in ASAP and unavailable for drawing down disbursements; other grant accounts are still flagged as suspended or held "per executive order" or "for agency review." In these cases, federal grantor agencies have replied to state agency inquiries with receipt-acknowledging non-answers or not replied at all—and often meetings with agency grant offices remain cancelled. The following grants are illustrative, although not exhaustive—many states have had these and other important grants frozen or paused:

- The **Climate Pollution Reduction Grant** program, administered by EPA and funded by a $5 billion IRA appropriation, supports States, tribes, and local governments in planning and implementing greenhouse-gas reduction measures. For example, the regional air district covering Los Angeles, California received a $500 million award, subject to a final grant agreement, to clean up the highly polluting goods movement corridor between the Imperial Valley's logistics hubs and warehouses to the Port of Los Angeles. (Ex. 42 to Thomas-Jensen Aff. ¶ 8.)[1] As of February 5, this grant and other Climate Pollution Reduction Grants remained inaccessible in ASAP. (Ex. 42 to Thomas-Jensen Aff. ¶¶ 8, 25; Ex. 28 to Thomas-Jensen Aff. ¶¶ 8, 11, 18–19; Ex. 84 to Thomas-Jensen Aff. ¶¶ 10, 11, 15; Ex. 106 to Thomas-Jensen Aff. ¶¶ 41–44; Ex. 83 to Thomas-Jensen Aff. ¶¶ 2, 25; Ex. 56 to Thomas-Jensen Aff. ¶ 12; *see also* Ex. 20 to Thomas-Jensen Aff. ¶¶ 19, 23 (as of Feb. 4); Ex. 44 to Thomas-Jensen Aff. ¶¶ 35–36 (same); Ex. 49 to Thomas-Jensen Aff. ¶ 19 (same); Ex. 97 to Thomas-Jensen Aff. ¶¶ 4(B), 5, 14 (same); Ex. 61 to Thomas-Jensen Aff. ¶¶ 8, 10 (same)).

- For sixty years, EPA has administered a national **air monitoring** network and research program under Clean Air Act sections 103 to 105. The IRA appropriated $117.5 million to fund air monitoring grants under this program to increase States' abilities to detect dangerous pollution like particulate matter (soot) and air toxics, including in disadvantaged communities. These pollutants create a particular public health emergency in areas recovering from wildfires. As of February 5, air monitoring grants remained inaccessible in ASAP. (Ex. 28 to Thomas-Jensen Aff. ¶¶ 7, 18-19; Ex. 97 to Thomas-Jensen Aff. ¶¶ 12,

---

[1] Simultaneous with this filing, Plaintiff States are filing a Motion for Preliminary Injunction to which the Affidavit of Molly Thomas-Jensen is an appended exhibit. All of the exhibits and other contents of the motion for preliminary injunction are hereby incorporated by cross-reference. Exhibits to this motion will be denoted by letters.

15; Ex. 42 to Thomas-Jensen Aff. ¶¶ 12-13, 25; Ex. 84 to Thomas-Jensen Aff. ¶¶ 12-13, 15; Ex. 106 to Thomas-Jensen Aff. ¶¶ 58-71; Ex. 73 to Thomas-Jensen Aff. ¶ 8; *see also* Ex. 23 to Thomas-Jensen Aff. ¶ 12 (as of Feb. 4)).

- The IRA appropriates $4.5 billion to the Department of Energy for the **Home Electrification and Appliances Rebates Program**. The rebate program, administered by state energy offices under final federal grants, subsidizes low- and moderate-income households' purchase and installation of electric heat pump water heaters, electric heat pump space heating and cooling systems, and other home electrification projects. Thousands of homeowners across Plaintiff States have signed up for Plaintiff States' programs, received approvals, and even started installation in reliance on these rebates, and are stuck paying their contractors an extra $8,000 if state energy offices cannot draw down funds. As of February 5, that remained the case: the home rebate grants are held "for agency review" in ASAP. (Ex. 40 to Thomas-Jensen Aff. ¶¶ 8, 11, 37; Ex. 95 to Thomas-Jensen Aff. ¶¶ 23, 37-40, 55; Ex. 20 to Thomas-Jensen Aff. ¶¶ 6, 22 (as of Feb. 4); *see also* Ex. 108 to Thomas-Jensen Aff. ¶¶ 33, 35; Ex. 85 to Thomas-Jensen Aff., Ex. J).

- The **Solar for All** program, administered by the Environmental Protection Agency ("EPA") and funded by the IRA's Greenhouse Gas Reduction Fund, awarded $7 billion to 60 grantees to install rooftop and community solar energy projects in low-income and disadvantaged communities. These awards—all with final grant agreements in place—support the construction of cheap, resilient power in underserved neighborhoods, and provide particular protection to communities in which wildfire risk regularly causes utilities to de-energize transmission lines. As of February 5, numerous Plaintiff States were unable to access their Solar For All grant accounts in ASAP. (Ex. 108 to Thomas-Jensen Aff. ¶¶ 19–21 (Rhode Island); Ex. 44 to Thomas-Jensen Aff. ¶ 14 (Connecticut); Ex. 52 to Thomas-Jensen Aff. ¶ 12 (Hawaiʻi); Ex. 73 to Thomas-Jensen Aff. ¶ 8 (Michigan); Ex. 71 to Thomas-Jensen Aff. ¶¶ 2, 7 (Maine); Ex. 85 to Thomas-Jensen Aff. ¶¶ 5, 10 (New Jersey); Ex. 95 to Thomas-Jensen Aff. ¶¶ 6, 55 (New York)). As of the time of filing, it appears that access in ASAP has at least begun to be restored in many of the Plaintiff States.

*Other funds.* Defendants have failed to follow the Court's order with respect to other funds, too. On February 3, the National Institutes of Health abruptly cancelled an advisory committee review meeting with Brown University's School of Public Health for a $71 million grant on dementia care research, saying "all federal advisory committee meetings had been cancelled."[2] Ex.

---

[2] Defendants have asserted that the National Institutes for Health ("NIH") is not a Defendant. Ex. C at 1. But NIH is a component of the United Department of Health and Human Services. *See* 42 U.S.C. § 281(a); 42 U.S.C. § 202.

107 to Thomas-Jensen Aff. ¶¶ 6, 10. Head Start programs in Michigan and Vermont were, as of February 5, still unable to access federal funds from the Department of Education. Ex. 111 to Thomas-Jensen Aff. ¶ 5; Ex. 76 to Thomas-Jensen Aff. ¶ 12. On February 5 and 6, the Centers for Disease Control and Prevention and the Health Resources and Services Administration renewed stop work orders to a University of Washington program doing global HIV prevention work. Decl. of Maya Beal (Feb. 7, 2025) ¶¶ 4, 10–11, 14–15, attached as Exhibit A. As Plaintiff States' preliminary injunction motion details, since the entry of the Court's Order, their agencies have received inconsistent guidance, cancelled and un-cancelled meetings, and inexplicably patchwork restorations of some grants but not others. Plaintiff's Motion for Preliminary Injunction 18, 20, 21, 24, 32.

### 3.    Attempts to Remedy

Plaintiff States attempted to remedy these issues on Wednesday, February 5, but were not successful. *See* Exhibits B and C. As part of that conferral process, Defendants have identified two grounds to excuse noncompliance.

***First***, in correspondence to Plaintiff State Oregon, Defendants explained that, in their view, certain IRA/IIJA funds lie outside the Order's scope. Specifically, Defendants explained that such funding "was paused pursuant to OMB Memorandum M-25-11, which is not challenged in *New York v. Trump* and preceded issuance of the challenged OMB Memorandum M-25-13." Exhibit B at 1.

As background, OMB Memorandum M-25-11 ("OMB *Unleashing* Guidance"), which predated the OMB Directive, instructed agencies that the "directive in section 7 of the Executive Order entitled *Unleashing American Energy* requires agencies to immediately pause disbursement of funds appropriated under the Inflation Reduction Act of 2022 (Public Law 117-169) [(IRA)] or

the Infrastructure Investment and Jobs Act (Public Law 117-58) [(IIJA)]," but that pause applied only to "funds supporting the Green New Deal"—a term the OMB *Unleashing* Guidance defines as "supporting programs, projects, or activities that may be implicated by the policy established in Section 2 of the order." Ex. 13 to Thomas-Jensen Aff. The Guidance provides no further explanation of how federal agencies are to make that determination.

Defendants thus appear to now take the position that the "freeze" set out in the *Unleashing* Guidance is distinct from the "freeze" set out days later in the OMB Directive, and that they remain free to freeze funds pursuant to the *Unleashing* Guidance. That position would appear to allow Defendants to continue to freeze any funds under either the IIJA or IRA that the federal grantor agency might characterize as "supporting the Green New Deal."[3]

***Second***, Defendants have taken the position that, as a categorical matter, "the mere fact of a pause in funding does not inherently violate the Court's Order," and that the payment delays and blockages the Plaintiff States have endured for the past week despite the Order are excusable because there "are operational and administrative reasons for payments taking longer than normal." As discussed below, certain federal funding streams have resumed, and others have not; consequently, key programs are at risk in the Plaintiff States because of Defendants' failure to timely comply with this Court's Order.

**LEGAL STANDARD**

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S.

---

[3] Defendants subsequently took a third view of the applicability of the Order to such funds, stating in further correspondence with Plaintiff States that the EPA, the grantor agency for a large majority of the IRA and IIJA funding streams, was "still working through the administrative process of 'unsuspending' grants." Exhibit C at 1.

187, 191 (1949)).  In the First Circuit, to remedy violations of court orders, there are four factors

to satisfy: (1) notice of the court order; (2) clarity and unambiguity of the order; (3) ability to

comply; and (4) violation of the order.  *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340,

at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st

Cir. 2012)).

      "[T]he 'clear and unambiguous' standard applies to the language of the relevant court order,

not to its effectiveness." *Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, No. CV

21-11398-DJC, 2022 WL 3227535, at *4 (D. Mass. May 17, 2022) (quoting *Goya Foods, Inc. v.

Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)).  When evaluating whether a court order is

"clear and unambiguous," the question is "not whether the order is clearly worded as a general

matter." *Saccoccia*, 433 F.3d at 28.  Instead, the "clear and unambiguous" prong "requires that the

words of the court's order have clearly and unambiguously forbidden the precise conduct" giving

rise to the need for enforcement. *Id.*  (emphasis omitted) (citing *Perez v. Danbury Hosp.*, 347 F.3d

419, 424 (2d Cir. 2003)).

## ARGUMENT

## I. The Court Should Order Defendants to Immediately Restore Frozen Funding Pursuant to the Court's Temporary Restraining Order.

      Clear and convincing evidence demonstrates that all four elements for further enforcement

of the Order are met.  Defendants had notice of the Order, the Order was clear and unambiguous,

Defendants had the ability to comply with the Order, and Defendants have violated and continue

to violate the Order.  *See Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340, at *2 (D.R.I.

Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

There can be no dispute as to the first, third, and fourth elements.  First, Defendants had notice of

the Order, as they appeared at the hearing on the motion for a temporary restraining order, received

the subsequent Order, filed the required Notice of the Order they intended to distribute to "all Defendants and agencies and their employees, contractors, and grantees," Order 12, in fact distributed the Order, and have communicated with Plaintiffs about the Order.

Second, and as explained further below, the language applicable to Defendants' assertions is plain and unambiguous and compels the result opposite from Defendants' assertion. That is, the plain language of the Order sweeps in all incorporated articulations of the Federal Funding Freeze that are patent in the OMB Directive *and* the Order requires compliance without exception for administrative or operational difficulties, especially for any that extend a multiple of the length of time it took to implement the Federal Funding Freeze in the first instance.

Third, Defendants had the ability to comply with the Order. Simply put, because Defendants were able to cut off funding streams, they are equally able to turn those streams back on. Plaintiff States of course appreciate the need to allow Defendants a short period of time to operationalize the Order, but that time has long since passed. Defendants managed to implement widespread and disruptive funding freezes immediately after the OMB Directive was distributed, yet they have somehow now required a week or more to restore only some of the withheld funding. As described in Plaintiff States' Motion for Preliminary Injunction 24–34, many of the programs for which funds were still frozen days after entry of the Order conspicuously mirror the President's policy attacks on funding for environmental projects, foreign aid, university research, and services for low-income families. Defendants' partial compliance demonstrates that they have the ability to fully comply, and the Order does not allow for selective compliance.

Fourth, Defendants have violated the Order. The evidence is overwhelming, as described *supra* Section B.2 and in the Motion for Preliminary Injunction 24–34, that Plaintiff States continue to experience widespread disruption in funds without notice or other procedural

requirements of the relevant award, agreement, or other instrument. Defendants appear to contend that their conduct is permissible under the Order. *Supra* Section B.3. But Defendants are wrong. Under the plain and unambiguous text of the Order, which bars Defendants from "implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants," Defendants' conduct violates the Order. Order 12.

### A. The Order Plainly Encompasses Categorical Funding Freezes Tied to Executive Orders (Including the *Unleashing American Energy* Executive Order)

Defendants apparently take the position that they can implement at least one of the funding freezes called for by the "series of Executive Orders" issued by the President "during the initial days of his Administration," including "Unleashing American Energy (Jan. 20, 2025)," Ex. 9 to Thomas-Jensen Aff.. But the plain text of the Order does not allow for such an interpretation; "the words of the court's order have clearly and unambiguously forbidden th[is] precise conduct." *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005) (emphasis omitted) (citing *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003)).

The Order requires Defendants to cease "implementing, or otherwise giving effect to the OMB Directive *under any other name or title* or through any other Defendants (or agency supervised, administered, or controlled by any Defendant)." Order 12 (emphasis added). The text of the Court's Order must be read in conjunction with the substance of the OMB Directive, which required agencies to "implement" the Executive Orders issued by the President during the initial days of his administration by "temporarily paus[ing] all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." OMB Directive, Compl. Ex. A. Any categorical pause of obligations or disbursements *to implement the*

11

*Executive Orders* is exactly "implementing, or otherwise giving effect to the OMB Directive." Order 12.

The OMB Directive acknowledges that it is the implementation of prior action.  In the *Unleashing American Energy* Executive Order, the President announced a categorical, immediate, and indefinite pause on federal funds under the IRA and IIJA. Ex. 1 to Thomas-Jensen Aff. at 8353 Specifically, Section 7(a) of the *Unleashing American Energy* Executive Order, entitled "Terminating the Green New Deal," ordered all federal agencies to "immediately pause the disbursement of funds appropriated through the [IRA] or the [IIJA]." *Id.* at 8357. The next day, OMB issued a memorandum clarifying that Section 7(a) of the *Unleashing American Energy* Executive Order only paused funding that the agencies identified as "Green New Deal" funding, i.e., "funds supporting programs, projects, or activities that may be implicated" by a set of Executive Branch priorities on energy and environmental regulation announced in Section 2 of that Executive Order.  Ex. 13 to Thomas-Jensen Aff..  The OMB Directive used equivalent language, express referencing the *Unleashing American Energy* Executive Order and announcing a categorical pause on disbursing "financial assistance for ... the green new deal." Compl. Ex. A.

Defendants' apparent argument that they are permitted to continue to freeze federal funds by reference to the *Unleashing* Guidance, as long as they do not formally do so pursuant to the OMB Directive, is unavailing. That an earlier directive *also* directed a categorical funding freeze does not alter or amend the text of this Court's Order, which restrains Defendants from categorically freezing duly appropriated and obligated funds. After that Order, the OMB Directive may not be given effect, "under any other name or title." Order 12.  That "title" includes the OMB *Unleashing* Guidance. Indeed, Defendants' own prior statements reflect that they previously understood the Court's Order to have that effect: The Notice that Defendants circulated to federal

12

employees and filed with this Court instructed employees not to "pause, freeze, impede, block, cancel, or terminate any awards or obligations on the basis of the OMB Memo, *or on the basis of the President's recently issued Executive Orders*." Notice of Ct. Order 1, ECF No. 51-1 (emphasis added). Neither that Notice nor the document that accompanied it to this Court identified a carveout for other memoranda or guidance documents that implemented functionally the same policy and with functionally the same effect. Indeed, Defendants' prior, broader understanding of the Court's Order is, as discussed *supra* Section B.1, the only plausible one, given that the Court specifically enjoined Defendants from carrying out the same policy "under any other name or title."

Defendants' multiple actions to pause IRA/IIJA funds implement the OMB Directive, even if those actions also were also consistent with the OMB *Unleashing* Guidance. For example, in Rhode Island, the first denial of the Solar for All grant fund drawdown request occurred on January 27, 2025, the same day OMB 25-13 was published. Ex. 108 to Thomas-Jensen Aff. at 14. And the account in the grants administration system was entirely suspended January 28, 2025, at 5:44pm. *Id.* at 17. Even if the initial draw was rejected as a result of the OMB *Unleashing* Guidance (and it is not clear that it was), the account suspension was clearly undertaken pursuant to the OMB Directive, going into effect right on time to meet the deadline articulated there. That account suspension, or the act taken pursuant to the OMB Directive, persisted as of February 5. Ex. 108 to Thomas-Jensen Aff. ¶ 19. No explanation that the grant was out of compliance or authority for the suspension of the account was given. Similarly, EPA's suspension of a Southern California air district's $500 million award under the Climate Pollution Reduction Grant program went into effect on January 28th precisely—that is, the grant account was available for disbursement on the morning of the 28th, but it disappeared the same afternoon—the day after the

OMB Directive was published, but an entire week after OMB's *Unleashing* Guidance. Ex. 42 to Thomas-Jensen Aff. ¶¶ 18–19 & Exs. B, C.

In addition, the President continued to order new extensions of the Federal Funding Freeze simultaneous with the OMB Directive taking effect. These Executive Orders are also covered by the Order. In an Executive Order issued January 28, the President ordered federal agencies "that provide[] research or education grants to medical institutions" to "take appropriate steps to ensure" (or, in other words, cut off vital funding) that those institutions immediately discontinue ongoing gender affirming care to existing minor patients and cease to serve minor patients. Ex. 8 to Thomas-Jensen Aff. § 4. That edict issued without regard to the harm to minor patients that would be inflicted by such a cessation or delay of care, in violation of settled law. This continued effort to, in concert with OMB, pause vital funding first without establishing any basis in law is similarly conduct prohibited by the Order.

As these facts demonstrate, Defendants now seek to dress up their actions taken as a result of the OMB Directive and the blanket command contained therein in a new guise. But doing that is what the Court has prohibited: Defendants may not "implement or give effect to" the commands of "the OMB Directive" even if "under any other name or title." Ascribing action to an Executive Order or a prior Guidance when the action is squarely within scope of OMB 25-13 is giving effect to the OMB Directive under a different name.

### B. The Plain Text of the Order Made No Provision for Day After Day of Administrative Pauses and Delays

The Defendants have responded to Plaintiff States' alerts that some essential federal financial assistance is still inexplicably paused with empty assurances. When Plaintiff States raised examples of the continued freeze of federal financial assistance in the face of the Court's order, counsel for Defendants suggested "operational and administrative reasons for payments

14

taking longer than normal" as an explanation for days-long delays.  Ex. C, 1.  "Operational and administrative reasons" is a phrase so vague as to not be helpful at all in understanding whether the Defendants understand and intend to comply with the plain text of this Court's Order.  This is an essential quandary, because from the Plaintiff States' perspective, the only evidence available is evidence of nonpayment.  Defendants were instructed not to leave Plaintiff States in the dark, and in those limited exceptions where some sort of pause or freeze could be supported by applicable legal authority, Defendants must give the appropriate notice and procedural safeguards meant to prevent the disruption here. Order 12.

Without explanation or substantiation, "operational and administrative reasons" for lengthy delays in restoring funding is incredible, particularly given the speed and efficiency with which hundreds of funding streams were frozen in the immediate wake of the OMB Directive.  When OMB issued the Directive in the evening on January 27, 2025, it required the temporary pause to "become effective on January 28, 2025, at 5:00 PM." Compl. Ex. A. Contemporaneous reporting and Plaintiffs' evidence demonstrate that funding shutoffs began almost immediately after the OMB Directive issued.  It is inexplicable why the federal government, which apparently determined it feasible to pause almost all federal funding within 24 hours, has not universally restored access to funds after nearly a week.  As explained in the Plaintiff States' Motion for Preliminary Injunction 34, even a momentary delay in the intricate accounting dance that underpins our cooperative federal system can result in failures to make payroll and the potential shuttering of programs and nonprofit entities that provide vital health and human services to the residents of the Plaintiff States.

Defendants' assertion that "the mere fact of a pause in funding does not inherently violate the Court's Order," Ex. C, also cannot be squared with the plain text of the Order, which states that

15

Defendants "shall not pause" federal financial assistance to the Plaintiff States. Order 11. Of course, as set forth in the Order, there could be an instance where a specific applicable statute, regulation or term of the grant allowed a pause—but in that case, the Defendants must "comply with all notice and procedural requirements in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs" before funding could be paused. Order 12. Across the Plaintiff States, there is no evidence that Defendants have made any attempt at this compliance as to the funding still paused.

## CONCLUSION

For the reasons provided above, the Court should enforce the clear and unambiguous text of its temporary restraining order and order Defendants to immediately restore funds until the preliminary injunction motion can be heard and decided. Plaintiff States do not request any sanction at this time. The Court should further Order that Defendants immediately take every step necessary to effectuate the Order, including clearing any administrative, operational, or technical hurdles to implementation. In addition, the Court should Order compliance with the plain text of the existing Order not to pause any funds on the basis of pronouncements pausing funding incorporated into the OMB Directive, like Section 7(a) of the Unleashing Executive Order and the OMB Unleashing Guidance.

Respectfully submitted,

February 7, 2025

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
Rabia.Muqaddam@ag.ny.gov
Michael.Myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
Colleen.Faherty@ag.ny.gov
Zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorneys General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Christopher J. Kissel*
Lara Haddad*
Theodore McCombs*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov

A202

Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Christopher.Kissel@doj.ca.gov
Lara.Haddad@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov

<table>
<tr><td>

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of
Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment
Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA 02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

</td><td>

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

</td></tr>
<tr><td>

**KRISTEN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

</td><td>

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov

</td></tr>
</table>

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: */s/ Kaliko'onālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kaliko'onālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

19

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
919-716-6026
Dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF System to counsel of record on this 7th day of February, 2025.

*/s/ Sarah W. Rice*

21

# Thomas-Jensen Affirmation

# Exhibit # 10



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

In implementing President Trump's Executive Orders, OMB issued guidance requesting that agencies temporarily pause, to the extent permitted by law, grant, loan or federal financial assistance programs that are implicated by the President's Executive Orders.

**Any program not implicated by the President's Executive Orders is not subject to the pause.**

The Executive Orders listed in the guidance are:

> *Protecting the American People Against Invasion*
>
> *Reevaluating and Realigning United States Foreign Aid*
>
> *Putting America First in International Environmental Agreements*
>
> *Unleashing American Energy*
>
> *Ending Radical and Wasteful Government DEI Programs and Preferencing*
>
> *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*
>
> *Enforcing the Hyde Amendment*

Any program that provides direct benefits to individuals is not subject to the pause.

The guidance establishes a process for agencies to work with OMB to determine quickly whether any program is inconsistent with the President's Executive Orders. A pause could be as short as day. In fact, OMB has worked with agencies and has already approved many programs to continue even before the pause has gone into effect.

Any payment required by law to be paid will be paid without interruption or delay.

**Q: Is this a freeze on all Federal financial assistance?**

A:  No, the pause does not apply across-the-board. It is expressly limited to programs, projects, and activities implicated by the President's Executive Orders, such as ending DEI, the green new deal, and funding nongovernmental organizations that undermine the national interest.

**Q: Is this a freeze on benefits to Americans like SNAP or student loans?**

A: No, any program that provides direct benefits to Americans is explicitly excluded from the pause and exempted from this review process. In addition to Social Security and Medicare, already explicitly excluded in the guidance, mandatory programs like Medicaid and SNAP will continue without pause.

Funds for small businesses, farmers, Pell grants, Head Start, rental assistance, and other similar programs will not be paused. If agencies are concerned that these programs may implicate the President's Executive Orders, they should consult OMB to begin to unwind these objectionable policies without a pause in the payments.

**Q: Is the pause of federal financial assistance an impoundment?**

**A:** No, it is not an impoundment under the Impoundment Control Act. It is a temporary pause to give agencies time to ensure that financial assistance conforms to the policies set out in the President's Executive Orders, to the extent permitted by law.

Temporary pauses are a necessary part of program implementation that have been ordered by past presidents to ensure that programs are being executed and funds spent in accordance with a new President's policies and do not constitute impoundments.

**Q: Why was this pause necessary?**

**A:** To act as faithful stewards of taxpayer money, new administrations must review federal programs to ensure that they are being executed in accordance with the law and the new President's policies.

# Thomas-Jensen Affirmation

# Exhibit # 13

BRIEFINGS & STATEMENTS

# MEMORANDUM TO THE HEADS OF DEPARTMENTS AND AGENCIES

OFFICE OF MANAGEMENT AND BUDGET

January 21, 2025

January 21, 2025

M–25–11

MEMORANDUM TO THE HEADS OF DEPARTMENTS AND AGENCIES

FROM: Matthew J. Vaeth, Acting Director, Office of Management and Budget

Kevin Hassett, Assistant to the President for Economic Policy and Director of the National Economic Council

SUBJECT: Guidance Regarding Section 7 of the Executive Order *Unleashing American Energy*

The directive in section 7 of the Executive Order entitled *Unleashing American Energy* requires agencies to immediately pause disbursement of funds appropriated under the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58).  This pause only applies to funds supporting programs, projects, or activities that may be implicated by the policy established in Section 2 of the order. This interpretation is consistent with section 7's heading ("Terminating the Green New Deal") and its reference to the "law and the policy outlined in section 2 of th[e] order."

For the purposes of implementing section 7 of the Order, funds supporting the "Green New Deal" refer to any appropriations for objectives that contravene the policies established in section 2.  Agency heads may disburse funds as they deem necessary after consulting with the Office of Management and Budget.

News

Administration

Issues

Contact Us

THE WHITE HOUSE

A212

1600 Pennsylvania Ave NW

Washington, DC 20500

THE WHITE HOUSE

WH.GOV

Copyright

Privacy

A213

# Thomas-Jensen Affirmation

# Exhibit # 14



## THE CHIEF FINANCIAL OFFICER
WASHINGTON, D.C. 20460

January 27, 2025

## CUI//SP-BUDG

**MEMORANDUM**

**SUBJECT:**    Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause

**FROM:**    Gregg Treml, Chief Financial Officer (Acting)

GREGG TREML
Digitally signed by GREGG TREML
Date: 2025.01.27 16:59:02 -05'00'

**TO:**    Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

This message is being provided based on instruction from OMB.

In accordance with the Executive Order *Unleashing American Energy,* unobligated funds (including unobligated commitments) appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58) are paused. Pursuant to this pause, the Compass financial system will temporarily not allow obligations to be made in these lines of accounting. EPA is in discussions with the Office of Management and Budget on the continuation of payroll in IIJA and IRA.

Additionally, all disbursements for unliquidated obligations funded by any line of accounting including funds appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58), are paused. Additional details on the pause in disbursements will be provided separately by the Office of the Controller.

This pause will allow for the review of processes, policies and programs as required by Section 7 of the Order.

All related actions, including new contract, grant, rebate and interagency actions, to include drawdowns, for IIJA and IRA are paused. Offices are not to put IIJA or IRA lines of accounting on any actions and all current actions are paused. Further, no IIJA or IRA funded travel is permissible at this time and all upcoming travel funded from either should be cancelled.

A process has been established at OMB for their review and approval of obligations and disbursements based on the Order. We will continue to update the community. We appreciate your work to ensure compliance with the Order.

cc:  Lek Kadeli
     Meshell Jones-Peeler
     Paige Hanson
     Senior Resource Officials
     Senior Budget Officers
     Regional Comptrollers
     Funds Control Officers

# Controlled by U.S. Environmental Protection Agency

# Thomas-Jensen Affirmation

# Exhibit # 15



# Department of Energy

Golden Field Office
15013 Denver West Parkway
Golden CO 80401

January 27, 2025

**MEMORANDUM FOR ALL DOE FUNDING AGREEMENTS OR AWARDS**

FROM:     SARA WILSON
          ACQUISITION DIRECTOR
          ACTING HEAD OF CONTRACTING ACTIVITY
          ENERGY EFFICIENCY & RENEWABLE ENERGY

Sara Wilson

Digitally signed by
Sara Wilson
Date: 2025.01.27
12:48:28 -07'00'

SUBJECT:     Cease all activities associated with DEI and CBP

The President has issued 43 Executive Orders, Presidential Memoranda, and Proclamations, including an Executive Order entitled *Ending Radical and Wasteful Government DEI Programs and Preferencing*. DOE is moving aggressively to implement this Executive Order by directing the suspension of the following activities in any loans, loan guarantees, grants, cost sharing agreements, contracts, contract awards, or any other source of DOE funding:

- diversity, equity, and inclusion (DEI) programs and activities involving or relating to DEI objectives and principles; and
- Community Benefits Plans (CBP); and
- Justice40 requirements, conditions, or principles.

Recipients and subrecipients must cease any activities, including contracted activities, and stop incurring costs associated with DEI and CBP activities effective as of the date of this letter for all DOE grants, cooperative agreements, loans, loan guarantees, cost sharing agreements, or other DOE funding of any kind. Recipients are responsible for communicating and enforcing this direction with all subrecipients and contractors. Costs incurred after the date of this letter will not be reimbursed. This letter will be incorporated into your award with the next modification.

Additional guidance will be forthcoming. Recipients who have DEI and CBP activities in their awards will be contacted by their Grants Officer to initiate award modifications consistent with this Order.

Thomas-Jensen
Affirmation

Exhibit # 58

Case: 25-1413    Document: 00118292174    Page: 154    Date Filed: 05/29/2025    Entry ID: 6724656

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; et al.,

        Plaintiffs,

    v.

DONALD TRUMP, in his official capacity as
President of the United States; et al.,

        Defendants.

C.A. No. 1:25-cv-00039-JJM-PAS

## DECLARATION OF SALEM STATE UNIVERSITY

I, Rita P. Colucci, declare as follows:

1.      I am a resident of the Commonwealth of Massachusetts. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am currently employed by Salem State University ("SSU") as Vice President and General Counsel.

3.      SSU is a regional public university located in the North Shore region of Massachusetts and awards both bachelor's and master's degrees. As a comprehensive university, Salem State prepares students of diverse backgrounds and interests to achieve their educational and career goals and to contribute to a global society as ethical and engaged community members. As a public university, Salem State also makes critical contributions to civic life, environmental sustainability, and the cultural, social, and economic vitality of the North Shore.

4.      As Vice President and General Counsel, I have been informed through the Vice President for Finance and Facilities (Karen House) about certain matters pertaining to federal

1

A220

funding received or due to the university. An attempt was made on January 28, 2025 at 2:01pm to draw down NSF Grant funding in the amount of $33,846.78 on the NSF website, Research.gov, Award Cash Management $ervice (ACM$). SSU was subsequently notified via email that ACM$ would be unavailable beginning Tuesday, January 28, 2025 at 5:00pm while NSF "performs a comprehensive review of the award portfolio to ensure compliance with recent Executive Orders, pursuant to [OMB M-25-13]" and therefore all payments under active awards would be paused. The email notified us that we would be receiving cancellation notices for any pending payments. A screen capture was made of this notification:



5.      SSU currently has two active federal grant awards totaling $526,922 from the National Science Foundation ("NSF"). This includes 1) Award 2200918, Designing Computational Modeling Curricula across Science Subjects to Study How Repeated Engagement Impacts Student Learning throughout High School, and 2) Award 2314916, Advancing Collaborations for Equity in Marine and Climate Sciences through Racial Equity.

6.      The NSF grants are for the following purposes. 1) Designing Computational Modeling Curricula across Science Subjects to Study How Repeated Engagement Impacts Student Learning throughout High School through improving access and addressing gaps in research literature (DC Models K12 NSF Grant). The project aims to address two problems of practice in DCPS high schools: A lack of access to computing and computer science education

2

Case: 25-1413    Document: 00118292174    Page: 155    Date Filed: 05/29/2025    Entry ID: 6724656

Case: 25-1413    Document: 00118292174    Page: 156    Date Filed: 05/29/2025    Entry ID: 6724656

for all students, and a lack of access to NGSS-based curricular resources and PD for teachers. and 2) Advancing Collaborations for Equity in Marine and Climate Sciences through Racial Equity in STEM Education (NSF ACE-MCS Grant) The purpose of this research project is to examine how Woods Hole Collaborative Network (WHCN) researchers and administrators advance collaborations for equity in MCS and what processes are employed for developing equity-driven and anti-racist educational collaborations, infrastructures, and pathways. Project outcomes will span individual, institutional, and disciplinary level transformations.

7. SSU's budget for this year has relied on the NSF funding, and we made plans and allocated funding for staffing and Travel, Dissemination of Research, Data Collection and Analysis, and Publication Costs, and Indirect costs based on the anticipated receipt of Federal funding promised for these NSF grants.

8. Any pause in our federal funding would create an unofficial "loan" from the university to the Federal government as the terms and conditions of the grant require us to pursue the work as described.

9. Potential lapse in funding could call into question the ability to support PI's time spent on this project, pay Graduate Research Assistants for time spent on this project, reimbursement for contracted services on project, and reimbursement for travel costs associated with this project.

10. In the next 24-48 hours, SSU is scheduled to receive reimbursement disbursements of $34,808.11 under these current federal NSF grants. The NSF ACM$ portal shows this drawdown transaction is "Accepted" per the screen capture below as of February 4,

3

2025 at 2:35pm:

| Transaction ID | Date Certified / Prepared | Certified/ Prepared By | Total # of Awards | Payment Transaction Total | Payment Date Requested | Transaction Status |
|---|---|---|---|---|---|---|
| 433387 | 02/03/2025 11:05:17 | Newbegin, Jenna | 2 | $34,808.11 | 02/03/2025 | Accepted |
| 431725 | 01/28/2025 14:01:41 | Newbegin, Jenna | 2 | $33,846.78 | 01/28/2025 | Cancelled |

Additionally, there is $124,084.29 Net Available Funds remaining on the DC Models K12 NSF Grant, and $266,238.81 Net Available Funds remaining on the NSF ACE-MCS Grant. These funds are currently appropriated, obligated and budgeted at Salem State University.

11.     We expect the next drawdowns to occur on a Monthly basis.  If SSU does not receive such disbursements, it will create receivables for costs incurred by the University, jeopardize status of student (Grad. Research Asst.) employment, and jeopardize status of course releases and summer pay for PI.

12.     Below are transmissions received by our institution that described or effected any pause or impediments for disbursements



13.     SSU draws down funds from the NSF grant via the NSF website. On January 28, 2025, SSU attempted, but was unable, to draw down the grant funds from the NSF, as payments were frozen and the website was not accessible. On January 29, 2025, SSU again was unable to

4

Case: 25-1413     Document: 00118292174     Page: 157     Date Filed: 05/29/2025     Entry ID: 6724656

draw down the funds and observed a notification on the NSF website indicating that "all NSF grantees must comply" with all relevant executive orders "by ceasing non-compliant grant and award activities." To date, SSU has not received this funding. A screen capture was made of this notification:

**Message to the NSF principal investigator community**

Jan. 29, 2025

Our top priority is resuming our funding actions and services to the research community and our stakeholders. We are working expeditiously to conduct a comprehensive review of our projects, programs and activities to be compliant with the existing executive orders.

We will continue to try and communicate with you as these changes are happening in real time.

All NSF grantees must comply with these executive orders, and any other relevant executive orders issued, by ceasing all non-compliant grant and award activities. Executive orders are posted at whitehouse.gov/presidential-actions. In particular, this may include, but is not limited to conferences, trainings, workshops, considerations for staffing and participant selection, and any other grant activity that uses or promotes the use of diversity, equity, inclusion and accessibility (DEIA) principles and frameworks or violates federal anti-discrimination laws.

Please work with your institutional research office to assist you in complying with the executive orders. You can also direct your questions through this webform. We are receiving a large volume of submissions, and we will not be able to respond individually. As we collect your questions, we will compile and post frequently asked questions (FAQs) on this page. Please check back regularly to access these FAQs.

Thank you for your work advancing science, engineering, technology and innovation for our nation.

15.    We continue to be concerned that the funding will again be delayed or denied because the notifications and messages are very broadly stated, which is not consistent with past Federal instructions which apply to specific research projects.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2025, at Salem, MA

Declaration of Rita P. Colucci

# Thomas-Jensen Affirmation (redacted)

# Exhibit # 61

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

---

STATE OF NEW YORK; STATE OF CALIFORNIA;
STATE OF ILLINOIS; STATE OF RHODE ISLAND;
STATE OF NEW JERSEY; COMMONWEALTH OF
MASSACHUSETTS; STATE OF ARIZONA; STATE
OF COLORADO; STATE OF CONNECTICUT;
STATE OF DELAWARE; THE DISTRICT OF
COLUMBIA; STATE OF HAWAI'I; STATE OF
MAINE; STATE OF MARYLAND; STATE OF
MICHIGAN; STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NORTH CAROLINA; STATE
OF NEW MEXICO; STATE OF OREGON; STATE OF
VERMONT; STATE OF WASHINGTON; STATE OF
WISCONSIN,

Plaintiffs,

v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS          C.A. No. 1:25-cv-00039
PRESIDENT OF THE UNITED STATES; U.S.
OFFICE OF MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, IN HIS OFFICIAL CAPACITY
AS ACTING DIRECTOR OF THE U.S. OFFICE OF
MANAGEMENT AND BUDGET; U.S.
DEPARTMENT OF THE TREASURY; SCOTT
BESSENT, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE TREASURY; PATRICIA
COLLINS IN HER OFFICIAL CAPACITY AS
TREASURER OF THE U.S.; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES; DOROTHY A.
FINK, M.D., IN HER OFFICIAL CAPACITY AS
ACTING SECRETARY OF HEALTH AND HUMAN
SERVICES; U.S. DEPARTMENT OF EDUCATION;
DENISE CARTER, IN HER OFFICIAL CAPACITY
AS ACTING SECRETARY OF EDUCATION; U.S.
FEDERAL EMERGENCY MANAGEMENT
AGENCY; CAMERON HAMILTON, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S. FEDERAL
EMERGENCY MANAGEMENT,

Defendants.

---

1

## DECLARATION OF DAVID MOHLER

I, David Mohler, hereby depose and state as follows:

1.     I am the Executive Director of the Office Transportation Planning at the Massachusetts Department of Transportation ("MassDOT"). I make this declaration as a representative of MassDOT, in part based on the business records of MassDOT, and in part based on my personal knowledge and experience. In my official capacity and based on my personal knowledge and other sources of information that I have obtained and reviewed in that official capacity, I am familiar with, and if called upon to do so would be competent to testify to, the facts and circumstances set forth herein.

2.     On April 28, 2023, the Commonwealth applied for a Climate Pollution Reduction Grant ("CPRG") from the U.S. Environmental Protection Agency ("EPA"). The Commonwealth received its CPRG award on August 9, 2023.

3.     The Commonwealth's CPRG funds have been and continue to be used for deliverables required by EPA's CPRG Formula Grants for Planning Program Guidance for States, Municipalities, and Air Pollution Control Agencies (March 1, 2023). The CPRG is also used to pay personnel charges of employees working on these issues, including in the Office of Climate Innovation and Resilience ("OCIR").

4.     On November 9, 2023, the Commonwealth received notification from EPA that the grant had been enrolled in the Automated Standard Application for Payments ("ASAP") system. The notification stated: "You may now access the grant for draw down of needed funds at your discretion. Please keep in mind that the drawdown should be requested for immediate needs to cover expenses incurred or forecasted expenses for no more than a period of 3-5

business days. Funds can be drawn as often as necessary but not in excess to avoid overpayment and/or cash on hand."

5.      To complete the deliverables, the Commonwealth, following a competitive bidding process, contracted with AECOM.  AECOM has been actively performing under that contract for seven months.

6.      Nationally, the CPRG program works on a reimbursement model:  states pay allowable expenses under the grant and then submit those expenses to the federal government through EPA's ASAP system for reimbursement.

7.      Since April 3, 2024, the Commonwealth has expended $74,095.34 for reimbursable charges under the grant and has been reimbursed the full amount. The Commonwealth's most recent reimbursement was received on January 17, 2025.

8.      On February 4, 2025, at approximately 2:30 PM, employees at the Massachusetts Office of the Comptroller accessed the ASAP system to check the status of MassDOT's CPRG. The ASAP system indicated that the CPRG had been suspended:



3

9.      MassDOT was provided with the above-shown screenshot, taken by representatives of the Comptroller's Office, as confirmation that the CPRG grant is currently suspended in the ASAP system.

10.      As of February 4, 2025, the Commonwealth continues to incur allowable expenses under the grant and is preparing to submit a request for reimbursement in the amount of $172,321.86 for already paid charges.  The Commonwealth expects to receive an invoice this week from AECOM in the amount of $109,860 for which the Commonwealth will attempt to seek reimbursement after payment. Should the CPRG remain suspended, the Commonwealth will not be able to receive reimbursement for these expenses.

11.      If the Commonwealth is unable to access CPRG funds for a significant period of time, it will not be able to use CPRG funds to pay its project consultant, AECOM, for expenses already accrued, and it may be forced to modify its contract with AECOM.

12.      On June 10, 2004, MassDOT submitted an application for a Low-Carbon Transportation Materials (LCTM) Grant.

13.      The LCTM program is administered by the Federal Highway Administration (FHWA) using funding provided under the Inflation Reduction Act.

14.      On November 14, 2024, MassDOT was notified that it had been selected for an award of $31,933,577.

15.      MassDOT entered in negotiations with FHWA on the grant agreement.

16.      On January 24, 2025, during a monthly check-in the MassDOT Project Manager for the grant was orally informed by his FHWA counterpart that the negotiations were on-hold due to a freeze in funding.

17.      As of today, the project is still on-hold and negotiations cannot progress.

18.     This grant is intended to support testing of low-carbon cement to supplement traditional cement on bridge abutments, bridge decks and concrete pavement and to test its efficacy. The grant will be implemented through a contract with the cement maker, as well as contracts with the Massachusetts Institute of Technology and the University of Massachusetts. If this grant is not executed, MassDOT may have to modify its planned contracts with those entities.

**Signed under penalties of perjury this 5th day of February, 2025.**

David Mohler
Executive Director of the Office Transportation &
Planning, MassDOT

5

# Thomas-Jensen Affirmation

# Exhibit # 92

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK et al.,

       Plaintiffs,

    v.

DONALD TRUMP, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE
UNITED STATES, et al.,

       Defendants.

C.A. No. 25-CV-39-JJM-PAS

## DECLARATION OF KATHERINE CALOGERO

I, Katherine Calogero, hereby depose and state as follows:

1.     I am the Division Director of the Division of Fiscal Management for the New York State Department of Environmental Conservation ("NYSDEC"). I have held that position since July 1, 2024. I make this declaration as a representative of NYSDEC, in part based on the business records of NYSDEC and in part based on my personal knowledge and experience. In my official capacity and based on my personal knowledge and other sources of information I have obtained and reviewed in that official capacity, I am familiar with, and if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

2.     This declaration describes the general scope and scale of programs implemented or administered by NYSDEC that are supported by federal funds appropriated by Congress under the Inflation Reduction Act ("IRA") and Infrastructure Investment and Jobs Act ("IIJA"). I discuss one example of a grant-funded program that has already suffered a funding disruption as a result of the impoundment of funds under recent Executive Orders and related federal agency actions, and an example of a program that is at risk of similar disruption. Those programs—

involving the plugging of orphaned oil and gas wells and improving the health of urban and community forests—are delivering important public health and environmental benefits to New Yorkers who live in urban and rural communities. Finally, I discuss the Climate Smart Commodities Program, which although not funded pursuant to the IRA or IIJA, nonetheless suffered a funding disruption shortly after the new Presidential Administration took office.

**IRA and IIJA Funded Programs**

3. NYSDEC receives substantial funding under the IRA and the IIJA to support numerous programs to protect public health and the environment in New York. For example, between 2022 and 2024, NYSDEC received grant awards in the amount of $26 million under the IRA and $385.4 million under the IIJA to be spent over the next few years. As of January 20, 2025, under the IRA, DEC has spent $400,000 out of its total awards and has been reimbursed for $280,841; and under the IIJA, NYSDEC has spent $175.1 million out of its total awards and has been reimbursed for $171,833,436.

**Plugging of Orphaned Oil and Gas Wells**

4. As a first example, NYSDEC has received funding through both statutes to plug oil and gas wells in the state. NYSDEC is using IIJA funds for the plugging of high-priority orphaned oil and gas wells in central and western New York to help tackle pollution from this legacy energy infrastructure, while providing jobs in the oil and gas economic sector. In 2022, the U.S. Department of Interior ("DOI") awarded NYSDEC $25 million for this work. As of January 20, 2025, NYSDEC has disbursed $22.9 million under this program and has been reimbursed for just over $19 million by the federal government. In 2024, DOI awarded NYSDEC an additional $25 million to continue this work but has no disbursements to date. Currently, NYSDEC is seeking reimbursement of approximately $3.7 million for well plugging

2

work performed through the Fourth Quarter of 2024 and will be seeking additional reimbursement for work performed through the First Quarter of 2025.

5.     And in December 2023, NYSDEC received an $8.1 million grant from the U.S. Department of Energy ("DOE") under the IRA's Methane Emissions Reduction Program ("MERP") for plugging marginal (low producing) conventional oil and gas wells. In New York State, approximately 75% of marginal conventional well operators produce gas for home use only and often lack sufficient resources to maintain or properly plug these wells. NYSDEC will use the MERP funding to mitigate environmental and public health and safety risks by permanently closing these oil and gas wells, thereby preventing methane and hydrogen sulfide emissions, oil and brine spills, and fire and explosive hazards, while creating good paying jobs. NYSDEC has worked extensively with DOE's National Energy Technology Lab on software to prioritize wells for inclusion in the program and to build cost effective plugging projects based on each candidate well's potential risk to the environment, public health, and public safety. NYSDEC is currently in the well plugging planning process under the MERP grant and has obligated $800,000 to a contractor for this purpose. NYSDEC has publicized this program and has received inquiries from operators who wish to have their well plugged. If the MERP funding is canceled, New Yorkers will lose these important environmental and economic benefits.

6.     On February 4, 2025, after NYSDEC fiscal staff received an error message while attempting to submit a reimbursement request for disbursements under the IIJA well plugging grant, NYSDEC staff contacted a DOI representative for guidance. The DOI representative's reply to NYSDEC stated: "Please refer to the following memo, *Unleashing American Energy* – OMB Memo M-25-11, regarding the funding pause." The DOI representative's email included a link to a federal Office of Management and Budget memorandum dated January 21, 2025, titled

"Guidance Regarding Section 7 of the Executive Order *Unleashing American Energy*." A true and accurate copy of that email chain is attached hereto as Exhibit A.

### Improving the Health of Urban and Community Forests

7.      As an example of another program at risk of funding disruption, in July 2023, NYSDEC was awarded $13.5 million in IRA funding for an Urban and Community Forest Program. NYSDEC plans to use the funding to jumpstart Community Forest Management Plans in disadvantaged communities, including preventing and addressing harm from the invasive Emerald Ash Borer and training local staff and those who care for municipal trees. NYSDEC is currently procuring tree planting and maintenance services under the program and expects to have contracts in place as soon as May 2025. Interruption to this funding would result in cancellation of these procurements, even though the State publicly announced in September 2024 the grant award and the State's intent to retain these services in disadvantaged communities. NYSDEC is currently in the process of contracting with 24 grantees in communities across the State. When work is underway, the grantees would be able to request reimbursement from NYSDEC quarterly, and in turn NYSDEC would request reimbursement form USDA quarterly. If the funds for these programs are suspended or canceled, disadvantaged communities throughout the State would lose out on the important benefits provided by healthy urban and community forests.

### USDA Climate-Smart Commodities Partnership

8.      The U.S. Department of Agriculture ("USDA") funds a program called Partnerships for Climate-Smart Commodities, which aims to improve resiliency to climate change in the agricultural and forestry sectors. The period for the grant program is January 1, 2023 through December 31, 2027.

9.     On May 6, 2022, NYSDEC applied to the USDA for funding under the Partnerships for Climate-Smart Commodities program.

10.    On April 24, 2023, NYSDEC received confirmation from USDA that NYSDEC had been awarded a grant in the amount of $60 million under the Partnerships for Climate-Smart Commodities program.

11.    NYSDEC's Climate-Smart Commodities grant will fund (a) establishment, restoration, and protection of forest lands in New York; (b) financial and technical assistance for New York farmers to improve the resiliency of their lands and operations to disruptions related to global climate change through adoption of "climate-smart" practices; (c) work to measure metrics on climate change-related benefits, costs, and landowner barriers related to climate-smart practices; and (d) promotion of large-scale development of markets for commodities produced using climate-smart practices. NYSDEC will fund these program areas through a mix of direct grants to landowners and distribution of funds to sub-awardees—the New York State Department of Agriculture and Markets ("NYSAGM") and the State University of New York's College of Environmental Science and Forestry ("SUNY ESF")—who in turn will use the funds to make grants and fund research, development, and technical assistance work.

12.    Once the projects under the grant begin, NYSDEC will receive funds from the USDA on a reimbursement basis. NYSDEC will spend in the first instance, then report spending to the USDA, which would reimburse NYSDEC by drawing down from the remaining grant funds.

13.    NYSDEC has suballocated $35.2 million to NYSAGM with $10.5 million encumbered with no disbursements; and $11.8 million to SUNY ESF with no encumbrances or disbursements.  NYSDEC manages the remaining $13 million with no encumbrances or

5

disbursements at this time. On October 30, 2024, NYSDEC released the invitation for bid for tree planting for farmers and landowners to create new forests, which closed on January 7, 2025. NYSDEC intends to make awards in the next couple of months.

14.     On January 22, 2025, program staff in NYSDEC's Division of Lands and Forests received an email from USDA stating that as of January 21, 2025, the federal administration had placed a temporary suspension on all actions related to grants, including Partnerships for Climate-Smart Commodities grants. A true and accurate copy of that email is attached hereto as Exhibit B.

15.     On January 23, 2025, NYSDEC program staff received another email from USDA stating that work can continue on existing awards until otherwise directed but that "[t]he above direction is subject to change pending updates from the current administration." A true and accurate copy of that email is attached hereto as Exhibit C. These communications have created confusion and uncertainty about the future of the program.

16.     If the federal administration were to impound the funds remaining in NYSDEC's Climate-Smart Commodities award, the staff and work of funded programs at NYSAGM and SUNY ECF would be in jeopardy. Furthermore, NYSDEC and its subgrantees would be unable to provide financial and technical assistance to New York farmers and forest landowners for climate-smart development absent alternative funding, which would both leave the benefits of climate-smart practices for farmers and forest landowners unrealized and undermine NYSDEC's hard-won relationship with landowners.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 6th DAY OF FEBRUARY, 2025.**

KATHERINE CALOGERO
DIRECTOR, DIVISION OF FISCAL MANAGEMENT

6

# EXHIBIT A

 Outlook

---

## RE: [EXTERNAL] ASAP error - D22AP00170

**From** Sarris, Eleni V <eleni_sarris@ibc.doi.gov>

**Date** Wed 2/5/2025 5:02 PM

**To** Frauenberger, Mark E (DEC) <Mark.Frauenberger@dec.ny.gov>

**Cc** Maio, James A <james_maio@ios.doi.gov>; orphanedwells, DOI <orphanedwells@ios.doi.gov>; IBC-AQD-FA States <aqd-fa.states@ibc.doi.gov>

---

> ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

Hi Mark,

Thank you for your recent email regarding Treasury's Automated Standard Application for Payments or ASAP.GOV. Please refer to the following memo, *Unleashing American Energy* – OMB Memo M-25-11, regarding the funding pause.

We will be in contact as soon as we have additional information or updates. Thank you!

Best wishes,



Eleni Sarris
Lead Grant Management Officer, Team 3
Acquisition Services Directorate, AQD D5/B4
Interior Business Center
U.S. Department of the Interior
Direct: 571-513-3033 | Mobile: 720-276-9105
www.doi.gov/IBC

*Uniform Guidance for Grants and Agreements*
*GrantSolutions Training and Assistance*

---

**From:** Frauenberger, Mark E (DEC) <Mark.Frauenberger@dec.ny.gov>
**Sent:** Tuesday, February 4, 2025 11:12 AM
**To:** Sarris, Eleni V <eleni_sarris@ibc.doi.gov>
**Subject:** [EXTERNAL] ASAP error - D22AP00170
**Importance:** High

---

> **This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Hi Eleni,

I am attempting to do a draw in ASAP for grant D22AP00170 and am receiving an error message.

*ERROR 2048: Summary payments cannot include draws that are subject to agency review.*

Hoping you can give some guidance on how to proceed.

Thanks for your help,
Mark

**Mark Frauenberger**
Associate Accountant, Division of Fiscal Management

**New York State Department of Environmental Conservation**
625 Broadway, Albany, NY 12233-4751
P: (518) 402-9371 | mark.frauenberger@dec.ny.gov

www.dec.ny.gov |  



# EXHIBIT B

 **Outlook**

---

**FW: FOR DISTRIBUTION TO GRANT RECIPIENTS: Partnerships for Climate-Smart Commodities Grant Update**

---

**From** Abouali, Mustapha - FPAC-NRCS, NV <mustapha.abouali@usda.gov>
**Date** Wed 1/22/2025 1:23 PM

*ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.*

Hello Grantees,

Please see message below for your awareness.

Thank you,

Mustapha & John,
*National Program Officers*
Office of the Associate Chief | Center for Sustainable Commodity Markets

 **Natural Resources Conservation Service**
**U.S. DEPARTMENT OF AGRICULTURE**

*USDA is an equal opportunity provider, employer, and lender.*

*************************************************************

Dear Grant Recipients,

As of late yesterday, January 21, 2025, the administration placed a temporary suspension on all actions related to grants, including Partnerships for Climate-Smart Commodities grants. This is a fluid situation, and we ask for your patience as we work to gain additional clarification for you in the coming days.

Please contact your National Program Officer if you have additional questions. We will continue to provide periodic updates via email as more information becomes available.

Sincerely,
Katina

*************************************************************

Katina D. Hanson
*Director*

Office of the Associate Chief | Center for Sustainable Commodity Markets

 **Natural Resources Conservation Service**
**U.S. DEPARTMENT OF AGRICULTURE**

*USDA is an equal opportunity provider, employer, and lender.*

A242

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

# EXHIBIT C

 Outlook

---

**FOR DISTRIBUTION TO GRANT RECIPIENTS: Partnerships for Climate-Smart Commodities Grant Update FAQs**

---

**From** Anderson, John - FPAC-FSA, SD <john.a.anderson@usda.gov>

**Date** Thu 1/23/2025 6:58 AM

**To** Anderson, John - FPAC-FSA, SD <john.a.anderson@usda.gov>

**Cc** Abouali, Mustapha - FPAC-NRCS, NV <mustapha.abouali@usda.gov>

---

*ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.*

---

Hi!

Additional information & clarification.

Thanks for your patience as we work through these new directives.

John & Mustapha

**********************************************************************************

Dear Grant Recipients,

We have received additional guidance from the USDA Office of the Chief Financial Officer's office on the temporary suspension of all USDA actions related to grants, including Partnerships for Climate-Smart Commodities grants. Please see Frequently Asked Questions (FAQs) below:

1. **Does the moratorium include no-cost extensions or no-cost modifications on existing awards?**
   a. <u>Answer:</u> No, it does not apply to no-cost extensions or no-cost modifications. This may include budget revisions that do not obligate additional funds, no-cost extensions of time, changes in key staff, and other changes that do not result in any additional expenditure of funds (regardless of their source).

2. **Can existing work continue under active awards?**
   a. <u>Answer:</u> Yes, until such time that you receive guidance in the future that specific transactions must be modified or terminated.

3. **Can payments or claims be processed under existing awards?**
   a. <u>Answer:</u> At this time, yes, payments or claims may continue to be processed under existing awards, provided that they are not funded using IRA and IIJA funding sources. Additional guidance related to IIJA and IRA funds will be provided by OCFO and/or OBPA, when available.

The above direction is subject to change pending updates from the current administration. Any updates will be communicated in writing when available.

A245

Again, this is a fluid situation, and we ask for your patience as we work to gain additional clarification for you in the coming days.  Please contact your National Program Officer if you have additional questions. We will continue to provide periodic updates via email as more information becomes available.

Sincerely,
Katina

************************************************************************

Katina D. Hanson
*Director*

Office of the Associate Chief | Center for Sustainable Commodity Markets

**USDA** | **Natural Resources Conservation Service**
U.S. DEPARTMENT OF AGRICULTURE

*USDA is an equal opportunity provider, employer, and lender.*

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

# Thomas-Jensen Affirmation

# Exhibit # 124



**The Secretary of Energy**
Washington, DC 20585

January 20, 2025

MEMORANDUM FOR HEADS OF DEPARTMENTAL ELEMENTS

FROM:              INGRID C. KOLB
                   ACTING SECRETARY

SUBJECT:           Agency-wide Review of Program and Administrative Activities

As we navigate through this transition period for a new Administration within the Department of Energy (DOE), it is imperative to ensure a deliberate approach to the Administration's programmatic and administrative policies and priorities.  To that end, effective immediately and until further notice, prior to any actions or decisions on all herein described activities, a review under varying criteria will be undertaken to ensure all such actions are consistent with current Administration policies and priorities, including budgetary priorities.[1]  The broad spectrum of actions include but are not limited to: personnel actions; awarding of grants, loans, funding opportunities, and cost sharing agreements; contracting, procurement announcements, and actions; rulings, decisions or other actions on any applications, enforcement action, or settlements of any contested matter; submissions to the Federal Register for publication; and the publication or announcement of reports, studies, congressional correspondence, and public statements. This includes all studies or reports that are either ongoing, set to be released, are already under review, or have not yet begun.

The reviews are necessary to facilitate a comprehensive review of the Department's ongoing activities and to align these efforts with Congressional authorizations and the Administration's priorities, to ensure that resources are allocated efficiently, and that the Department's initiatives are in line with the statutory mission of DOE and the priorities of the Administration.

As discussed below, a process will be in place for the submission of requests for action by the Secretary (acting) to ensure the important work of the Department continues to serve the American people.

Scope of Actions:

1. **Personnel Actions:**  All personnel actions, including appointments, promotions, and transfers, are to be halted.  This includes both internal staff movements and external hiring processes, unless expressly and unambiguously authorized with the prior approval of the acting Secretary, after the date of issuance of this order.

---

[1] With respect to NNSA, nothing herein is intended to contradict 50 USC Ch. 41but to be construed broadly consistent with the Secretary's authority thereunder, include §2402(d).

Case: 25-1413    Document: 00118292174    Page: 182    Date Filed: 05/29/2025    Entry ID: 6724656

Case: 25-1413    Document: 00118292174    Page: 183    Date Filed: 05/29/2025    Entry ID: 6724656

2. **Procurement Announcements and Actions:**  Any announcements or awards regarding procurement opportunities and contracts are to be put on hold, other than for routine building operations and supplies for contracts with a value of less than $100,000.  This includes, but is not limited to, requests for proposals (RFPs), requests for quotations (RFQs), and contract negotiations.  Such approvals will be made in writing by the Secretary (acting) or the Head of Departmental Element with the prior approval of the Secretary (acting).

3. **Funding Actions:**  All funding and financial assistance activities including loans, loan guarantees, grants, cost sharing agreements, funding opportunity announcements, and contracts shall not be announced, approved, finalized, modified, or provided until a review of such takes place to ensure compliance with Congressional authorization and Administration policy.  Such approvals will be made in writing by the Secretary (acting) or the program head with the prior approval of the Secretary (acting).

4. **Release of Reports, Studies, Congressional Correspondence, and Public Announcements:**  Submission of actions to the Secretary (acting) for approval shall be completed through relevant program heads prior to continuation of development and dissemination of any reports, studies, requests for information (RFIs) or congressional correspondence, including both finalized documents and those in draft form; conducting and scheduling public meetings related to any studies or reports.  Relative to studies and reports being conducted by the National Laboratories, approvals must be obtained by the Head of Departmental Element with concurrence by the Administration designee within the Departmental Element.  If reports or studies are subject to statutory or other requirements, a request for waiver from the reviews may be made to the Secretary (acting), who may grant the waiver.  Submission of actions to the Secretary (acting) for approval shall be completed before publishing any Department social media posts, press releases, or other public announcements including website changes, even if previously scheduled and approved.

5. **Federal Register Notices:**  Nothing should be sent to the Federal Register (FR) for publication without written approval of the Secretary (acting) or designee.  The Office of the General Counsel is directed to: (i) immediately withdraw all items that have been submitted to the FR but have not yet been published, and (ii) provide the Secretary (acting) by noon on January 23 a list of all items that have been published but have not yet reached the date by which any such item is considered final (including the date such item becomes final).

6. **Actions under the National Environmental Policy Act (NEPA):**  NEPA work may continue.  However, the Secretary (acting) shall be informed of all NEPA work by January 24, 2025; or if new action is taken, at least 10 days before initiated.  The scope of the NEPA reviews shall be reviewed by the Principal Deputy General Counsel or other person as designated by the Secretary (acting).  Final Environmental Assessments and Environmental Impact Statements shall be

reviewed and approved by the Principal Deputy General Counsel or other person as designated by the Secretary (acting).

The reviews shall be conducted by all DOE offices, field offices, National Laboratories, and NNSA. There are no exemptions other than for routine building operations and supplies for contracts with a value of less than $100,000 without prior approval by the Secretary (acting).

**Rescinding of Signature Authority.**

To ensure compliance with this Directive, all signature authority for any of the actions provided herein are rescinded. Any actions requiring signature authority should not proceed until explicit authorization is provided in writing by the Secretary (acting) or designee.

The heads or administrators of each of the program, administrative, and support offices, National Laboratory Directors, field offices, and NNSA shall immediately disseminate this memorandum within their respective organizations and ensure full compliance with the directives as applicable.

Further guidance regarding the full resumption of activities, results of the review process, additional changes in DOE priorities, interagency collaboration, and legal compliance guidance will be forthcoming. Your cooperation and understanding are greatly appreciated as we work to enhance the effectiveness and efficiency of the Department.

Case: 25-1413    Document: 00118292174    Page: 184    Date Filed: 05/29/2025    Entry ID: 6724656

# Thomas-Jensen Affirmation

# Exhibit # 126



# Thomas-Jensen Affirmation

# Exhibit # 127

**Menu**

THE WHITE HOUSE

**Search**

BRIEFINGS & STATEMENTS

# PRESS BRIEFING BY PRESS SECRETARY KAROLINE LEAVITT

January 29, 2025

1:06 P.M. EST

MS. LEAVITT:  Good afternoon, everybody.

Q    Good afternoon.

MS. LEAVITT:  How are we?  Good to see all of you.  It's an honor to be here with all of you.  A lot of familiar faces in the room, a lot of new faces.

And President Trump is back, and the golden age of America has most definitely begun.

The Senate has already confirmed five of President Trump's exceptional Cabinet nominees: Secretary of State Marco Rubio, Defense Secretary Pete

A254

Case: Case 1:25-cv-00039-JJM-PAS Document 68-127   Filed 02/07/25 Page 3 of 33 PageID #: 24656
#: 6498

Hegseth, CIA Director John Ratcliffe, Homeland Security Secretary Kristi Noem, and Treasury Secretary Scott Bessent. It is imperative that the Senate continues to confirm the remainder of the president's well-qualified nominees as quickly as possible.

As you have seen during the past week, President Trump is hard at work fulfilling the promises that he made to the American people on the campaign trail. Since taking the oath of office, President Trump has taken more than 300 executive actions; secured nearly $1 trillion in U.S. investments; deported illegal alien rapists, gang members, and suspected terrorists from our homeland; and restored common sense to the federal government.

I want to take a moment to go through some of these extraordinary actions. On day one, President Trump declared a national emergency at our southern border to end the four-year-long invasion of illegal aliens under the previous administration. Additionally, President Trump signed an executive order to end catch and release and finish construction of his effective border wall. By using every lever of his federal power, President Trump has sent a loud and clear message to the entire world: America will no longer tolerate illegal immigration.

And this president expects that every nation on this planet will cooperate with the repatriation of their citizens, as proven by this weekend, when President Trump swiftly directed his team to issue harsh and effective sanctions and tariffs on the Colombian government upon hearing they were denied a U.S. military aircraft full of their own citizens who were deported by this administration. Within hours, the Colombian government agreed to all of President Trump's demands, proving America is once again respected on the world stage.

So, to foreign nationals who are thinking about trying to illegally enter the United States, think again. Under this president, you will be detained, and you will be deported.

A255

Every day, Americans are safer because of the violent criminals that
President Trump's administration is removing from our communities.
On January 23rd, ICE New York arrested a Turkish national for entry without
inspection who is a known or suspected terrorist.  On January 23rd, ICE San
Francisco arrested a citizen of Mexico unlawfully present in the United States
who has been convicted of continuous sexual abuse of a child aged 14 years
or younger.  ICE Saint Paul has arrested a citizen of Honduras who was
convicted of fourth-degree criminal sexual conduct with a minor.  ICE Buffalo
arrested a citizen of Ecuador who has been convicted of rape.
ICE Boston arrested a citizen of the Dominican Republic who has a criminal
conviction for second-degree murder.  This criminal was convicted of murder
for beating his pregnant wife to death in front of her five-year-old son.

And ICE Saint Paul also arrested a citizen of Mexico who was convicted of
possessing pornographic material of a minor on a work computer.
These are the heinous individuals that this administration is removing from
American communities every single day.  And to the brave state and local law
enforcement officers, CBP, and ICE agents who are helping in the facilitation
of this deportation operation, President Trump has your back and he is
grateful for your hard work.
On the economic front, President Trump took immediate action to lower
costs for families who are suffering from four long years of the Biden
administration's destructive and inflationary policies.  President Trump
ordered the heads of all executive departments and agencies to help deliver
emergency price relief to the American people, untangle our economy from
Biden's regulatory constraints, and end the reckless war on American energy.
President Trump also signed sweeping executive orders to end the
weaponization of government and restore common sense to the federal
bureaucracy.  He directed all federal agencies to terminate illegal diversity,
equity, and inclusion programs to help return America to a merit-based

A256

Case: 25-1125    Document: 00118292192    Page: 5    Date Filed: 02/07/2025    Entry ID: 6700
Case 1:25-cv-00039-JJM-PAS    Document 68-127    Filed 02/07/25    Page 5 of 33 PageID #: 6500

society.

President Trump also signed an executive order declaring it is now the policy of the federal government that there are only two sexes: male and female. Sanity has been restored.

Before I take your questions, I would like to point out to — all of you once again have access to the most transparent and accessible president in American history.  There has never been a president who communicates with the American people and the American press corps as openly and authentically as the 45th and now 47th president of the United States.

This past week, President Trump has held multiple news conferences, gaggled on Air Force One multiple times, and sat down for a two-part interview on Fox News, which aired last week.  As Politico summed it up best, "Trump is everywhere again," and that's because President Trump has a great story to tell about the legendary American revival that is well underway.

And in keeping with this revolutionary media approach that President Trump deployed during the campaign, the Trump White House will speak to all media outlets and personalities, not just the legacy media who are seated in this room, because apporting — according to recent polling from Gallup, Americans' trust in mass media has fallen to a record low.  Millions of Americans, especially young people, have turned from traditional television outlets and newspapers to consume their news from podcasts, blogs, social media, and other independent outlets.

It's essential to our team that we share President Trump's message everywhere and adapt this White House to the new media landscape in 2025. To do this, I am excited to announce the following changes will be made to this historic James S. Brady Briefing Room, where Mr. Brady's legacy will endure.

This White House believes strongly in the First Amendment, so it's why our team will work diligently to restore the press passes of the 440 journalists whose passes were wrongly revoked by the previous administration.

A257

Case: 25-1125   Document: 00090-911279   Page: 6   Date Filed: 02/07/2025   Entry ID: 6724656
Case: 24-00089-JM-PAS   Document: 6812-7   Filed 03/05/29   Page 6 of 33   Page ID #: 6501

We're also opening up this briefing room to new media voices who produce news-related content and whose outlet is not already represented by one of the seats in this room.  We welcome independent journalists, podcasters, social media influencers, and content creators to apply for credentials to cover this White House.  And you can apply now on our new website, WhiteHouse.gov/NewMedia.

Starting today, this seat in the front of the room, which is usually occupied by the press secretary staff, will be called the "new media" seat.  My team will review the applications and give credentials to new media applicants who meet our criteria and pass United States Secret Service requirements to enter the White House complex.

So, in light of these announcements, our first questions for today's briefing will go to these new media members whose outlets, despite being some of the most viewed news websites in the country, have not been given seats in this room.

And before I turn to questions, I do have news directly from the president of the United States that was just shared with me in the Oval Office from President Trump directly — an update on the New Jersey drones: After research and study, the drones that were flying over New Jersey in large numbers were authorized to be flown by the FAA for research and various other reasons.

Many of these drones were also hobbyists — recreational and private individuals that enjoy flying drones.  In meanti- — in the — in time, it got worse, due to curiosity.  This was not the enemy.  A — a statement from the president of the United States to start this briefing with some news.

And with that, I will turn it over to questions, and we will begin with our new media members: Mike Allen from Axios, Matt Boyle from Breitbart.

Mike, why don't you go ahead.

Q   Thank you very much.  Karoline, does the president see anything fishy

Press Briefing by Press Secretary Karoline Leavitt – The White House          https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1125   Document: 00118292921   Page: 7   Date Filed: 02/07/2025   Entry ID: 6702656
Case 1:25-cv-00039-JJM-PAS   Document 68-127   Filed 02/07/25   Page 7 of 33 PageID #: 6502

about DeepSeek, either its origins or its cost?  And could China's ability to make these models quicker, cheaper affect our thinking about expanding generation data centers, chip manufacturing?

MS. LEAVITT:  Sure.  The president was asked about DeepSeek last night on Air Force One when he gaggled for, I think, the third or fourth time throughout the weekend with members of the traveling press corps.  The president said that he believes that this is a wake-up call to the American AI industry.  The last administration sat on their hands and allowed China to rapidly develop this AI program.

And so, President Trump believes in restoring American AI dominance, and that's why he took very strong executive action this past week to sign executive orders to roll back some of the onerous regulations on the AI industry.  And President Trump has also proudly appointed the first AI and crypto czar at this White House, David Sacks, whom I spoke with yesterday — very knowledgeable on this subject.  And his team is here working every single day to ensure American AI dominance.

As for the national security implications, I spoke with NSC this morning.  They are looking into what those may be, and when I have an update, I will share it with you, Mike.

Q   And, Karoline, you say "restore" U.S. dominance.  Is there fear that the U.S. either is falling or has fallen behind?  And how would the president make sure the U.S. stays ahead?

MS. LEAVITT:  No.  The president is confident that we will restore American dominance in AI.

Matt.

Q   Yeah.  So, Karoline, first off, thank you to you and President Trump for actually giving voices to new media outlets that represent millions and millions of Americans.  The thing I would add — the — I've got a two-part question for you.  The first is just: Can you expand upon what steps the White House is going to take to bring more voices, not less — which is what our

A259

Press Briefing by Press Secretary Karoline Leavitt – The White House    https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1125    Document: 00118292107    Page: 8    Date Filed: 02/07/2025    Entry ID: 6702456
Case: 25-1158    Document: 68-27    Filed 02/25/29/Page 8 of 33 PageID #: 6503

founder, Andrew Breitbart, believed in — into this room, where they rightly belong?

MS. LEAVITT: Yeah, absolutely. And as I said in my opening statement, Matt, it is a priority of this White House to honor the First Amendment. And it is a fact that Americans are consuming their news media from various different platforms, especially young people. And as the youngest press secretary in history, thanks to President Trump, I take great pride in opening up this room to new media voices to share the president's message with as many Americans as possible.

In doing so, number one, we will ensure that outlets like yours — Axios and Breitbart, which are widely respected and viewed outlets — have an actual seat in this room every day. We also, again, encourage anybody in this country — whether you are a TikTok content creator, a blogger, a podcaster — if you are producing legitimate news content, no matter the medium, you will be allowed to apply for press credentials to this White House.

And as I said earlier, our new media website is WhiteHouse.gov/NewMedia, and so we encourage people to apply. Again, as long as you are creating news-related content of the day and you're a legitimate independent journalist, you're welcome to cover this White House.

Q And secondly, Karoline, you sa- — you laid out several of the actions that President Trump has taken. Obviously, it's a stark contrast to the previous administration and a breakneck speed from President Trump. Can we expect that pace to continue as the hun- — the — you know, the first 100 days moves along here and beyond that?

MS. LEAVITT: Absolutely. There is no doubt President Trump has always been the hardest working man in politics. I think that's been proven over the past week. This president has, again, signed more than 300 executive orders. He's taken historic action.

I gaggled aboard Air Force One to mark the first 100 days of this administration — 4:00 p.m. last Friday — first 100 hours, rather. And this

A260

Press Briefing by Press Secretary Karoline Leavitt – The White House      https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1125   Document: 00118292792   Page: 9   Date Filed: 03/07/2025   Entry ID: 6707656
Case: 1:25-cv-00039-JJM-PAS   Document: 68-127   Filed 02/07/25   Page 9 of 33 PageID #: 6504

president did more in the first 100 hours than the previous president did in the first 100 days.

So, President Trump, I think you can all expect to — for him to continue to work at this breakneck speed.  So, I hope you're all ready to work very hard.  I know that we are.

Zeke Miller.

Q   Thanks, Karoline.  A question that we've asked your predecessors of both parties in this job.  When you're up here in this briefing room speaking to the American public, do you view yourself and your role as speaking on — advocating on behalf of the president, or providing the unvarnished truth that is, you know, not to lie, not to obfuscate to the American people?

MS. LEAVITT:  I commit to telling the truth from this podium every single day.  I commit to speaking on behalf of the president of the United States.  That is my job.

And I will say it's very easy to speak truth from this podium when you have a president who is implementing policies that are wildly popular with the American people, and that's exactly what this administration is doing.  It's correcting the lies and the wrongs of the past four years, many of the lies that have been told to your faces in this very briefing room.  I will not do that.

But since you brought up truth, Zeke, I would like to point out, while I vow to provide the truth from this podium, we ask that all of you in this room hold yourselves to that same standard.  We know for a fact there have been lies that have been pushed by many legacy media outlets in this country about this president, about his family, and we will not accept that.  We will call you out when we feel that your reporting is wrong or there is misinformation about this White House.

So, yes, I will hold myself to the truth, and I expect everyone in this room to do the same.

Q   And, Karoline, just on a substantive question.  Yesterday, the White House Office of Management and Budget directed an across-the-board freeze with

A261

— with some exceptions for individual assistance.  We understand just federal grants.

MS. LEAVITT:  Right.

Q    It's caused a lot of confusion around the country among Head Start providers, among providers — from services to homeless veterans, provid- — you know, Medicaid providers, states saying they're having trouble accessing the portal.  Could you put — help us clear up some confusion —

MS. LEAVITT:  Yes.

Q    — give some certainty to folks?  And then also, is that uncertainty — how does that uncertainty service the president's voters?

MS. LEAVITT:  Well, I think there's only uncertainty in this room amongst the media.  There's no uncertainty in this building.

So, let me provide the certainty and the clarity that all of you need.  This is not a blanket pause on federal assistance in grant programs from the Trump administration.  Individual assistance, that includes — I'm not naming everything that's included, but just to give you a few examples — Social Security benefits, Medicare benefits, food stamps, welfare benefits — assistance that is going directly to individuals will not be impacted by this pause.

And I want to make that very clear to any Americans who are watching at home who may be a little bit confused about some of the media reporting: This administration — if you are receiving individual assistance from the federal government, you will still continue to receive that.

However, it is the responsibility of this president and this administration to be good stewards of taxpayer dollars.  That is something that President Trump campaigned on.  That's why he has launched DOGE, the Department of Government Efficiency, who is working alongside OMB.  And that's why OMB sent out this memo last night, because the president signed an executive order directing OMB to do just this.  And the reason for this is to ensure that every penny that is going out the door is not conflicting with the executive

A262

orders and actions that this president has taken.

So, what does this pause mean?  It means no more funding for illegal DEI programs.  It means no more funding for the Green New Scam that has ta- — cost American taxpayers tens of billions of dollars.  It means no more funding for transgenderism and wokeness across our federal bureaucracy and agencies.  No more funding for Green New Deal social engineering policies.  Again, people who are receiving individual asintan- — assistance, you will continue to receive that.

And President Trump is looking out for you by issuing this pause because he is being good steward of your taxpayer dollars.

Q   Thanks, Karoline.

MS. LEAVITT:  Sure.

Q   How long is this pause going to last?  And how is the Trump administration recommending that organizations that rely on federal funding make payroll, pay their rent in the meantime?

MS. LEAVITT:  It is a temporary pause, and the Office of Management and Budget is reviewing the federal funding that has been going out the door, again, not for individual assistance, but for all of these other programs that I mentioned.

I also spoke with the incoming director of OMB this morning, and he told me to tell all of you that the line to his office is open for other federal government agencies across the board, and if they feel that programs are necessary and in line with the president's agenda, then the Office of Management and Budget will review those policies.

I think this is a very responsible measure.  Again, the past four years, we've seen the Biden administration spend money like drunken sailors.  It's a big reason we've had an inflation crisis in this country, and it's incumbent upon this administration to make sure, again, that every penny is being accounted for honestly.

Q   Why impose this pause with so little notice?  Why not give organizations

A263

Press Briefing by Press Secretary Karoline Leavitt – The White House	https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1413 Document: 00118290174 Page: 127 Date Filed: 02/25/2025 Entry ID: 6724656

Case 1:25-cv-00039-JJM-PAS Document 68-12 Filed 02/07/25 Page 12 of 33

PageID #: 6507

more time to plan for the fact that they are about to lose, in some cases, really crucial federal funding —

MS. LEAVITT:  There was —

Q    — at least for a — for a period of time?

MS. LEAVITT:  There was notice.  It was the executive order that the president signed.

There's also a freeze on hiring, as you know; a regulatory freeze; and there's also a freeze on foreign aid.  And this is a — again, incredibly important to ensure that this administration is taking into consideration how hard the American people are working.  And their tax dollars actually matter to this administration.

You know, just during this pause, DOGE and OMB have actually found that there was $37 million that was about to go out the door to the World Health Organization, which is an organization, as you all know, that President Trump, with the swipe of his pen in that executive order, is — no longer wants the United States to be a part of.  So, that wouldn't be in line with the president's agenda.

DOGE and OMB also found that there was about to be 50 million taxpayer dollars that went out the door to fund condoms in Gaza.  That is a preposterous waste of taxpayer money.

So, that's what this pause is focused on: being good stewards of tax dollars.

Q    And so, this doesn't affect —

MS. LEAVITT:  Jennifer.

Q    — Meals on Wheels or Head Start or disaster aid?

MS. LEAVITT:  Again, it does not affect individual assistance that's going to Americans.

Q    To follow up on Nancy, do you think there will be a list of who is affected and how much money is affected?  How — how will these contractors and organizations know if they are actually being — having their funding frozen?  And then, secondly, if you're willing, can you just clarify, is the end goal of this

A264

Press Briefing by Press Secretary Karoline Leavitt – The White House                    https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1539   Document: 00118250174   Page: 103   Date Filed: 02/25/2025   Entry ID: 6724656
Case 1:25-cv-00039-JJM-PAS   Document 68-127   Filed 02/07/25   Page 13 of 33
PageID #: 6508

to essentially challenge Congress or to — to prove that the president can withhold federal funding?  Is — in other words, is this an attempt to pick a fight to prove that he can do this?

MS. LEAVITT:  No, absolutely not.  As it says right here in the memo, which I have — and I'd encourage all of you to read it — it says, "The American people elected President Trump to be the president of the United States and gave him a mandate to increase the impact of every federal dollar."  "This memo requires federal agencies to identify and review all Federal financial assistance programs and supporting activities consistent with the president's policies and requirements."

The American people gave President Trump an overwhelming mandate on November 5th, and he's just trying to ensure that the tax money going out the door in this very bankrupt city actually aligns with the will and the priorities of the American people.

(Cross-talk.)

Brian Glenn.

Q   Yes.  Welcome.

MS. LEAVITT:  Thank you.

Q   You look great.  You're doing a great job.

MS. LEAVITT:  Thank you.

Q   You talked about transparency.  And some of us in this room know how just transparent President Trump has been the last five or six years; I think you'll do the same.

My question is, do you think this latest incident with the president of Colombia is indicative of the global, powerful respect they have for President Trump moving forward not only to engage in — in economic diplomacy with these countries but also world peace?

MS. LEAVITT:  Absolutely.  I'll echo the answer that the president gave on Air Force One last night when he was asked a very similar question by one of your colleagues in the media:  This signifies peace through strength is back, and

A265

this president will not tolerate illegal immigration into America's interior. And he expects every nation on this planet, again, to cooperate with the repatriation of their citizens who illegally entered into our country and broke America's laws. Won't be tolerated.

And as you saw, the Colombian government quickly folded and agreed to all of President Trump's demands. Flights are underway once again.

(Cross-talk.)

Diana.

Q   Two questions on deportations, if I may. President Trump had said on the campaign trail that he would deport pro-Hamas students who are here on visas, and on his first day in office, he signed an executive order that said, quote, "The U.S. must ensure that admitted aliens and aliens otherwise already present in the U.S. do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles." So, should we take this executive order as Trump saying he would be open to de- — deporting those students who are here on visas, but, you know, hold pro-Hamas sympathies?

MS. LEAVITT:  The president is open to deporting individuals who have broken our nation's immigrations laws. So, if they are here illegally, then certainly he is open to deporting them, and that's what this administration is hard at work at doing.

We receive data from DHS and from ICE every single day. From what we hear on the ground, ICE agents are feeling incredibly empowered right now because they actually have a leader in this building who is supporting them in doing their jobs that they were hired to do, which is to detain, arrest, and deport illegal criminals who have invaded our nation's borders over the past four years. That's what the president is committed to seeing.

Q   One more.

MS. LEAVITT:  Peter.

Q    Just following up on that, Karoline —

Q    Karoline, if I could ask you very quickly, just following up on the question on immigration.  First, President Trump, during the course of the campaign in 2024, said the following about illegal im- — immigration.  He said, "They're going back home where they belong, and we start with the criminals.  There are many, many criminals."  NBC News has learned that ICE arrested 1,179 undocumented immigrants on Sunday, but nearly half of them — 566 of the migrants — appear to have no prior criminal record besides entering the country illegally.

MS. LEAVITT:  (Laughs.)

Q    Is the president still focused exclusiv- — which is a civil crime, not a — not a — it's not criminal —

MS. LEAVITT:  It's a federal crime.

Q    It's a fed- — so, I'm asking though, he said he was going to focus on those violent offenders first.  So, is violent offenders no longer the predicate for these people to be deported?

MS. LEAVITT:  The president has said countless times on the campaign trail — I've been with him at the rallies; I know you've been there covering them too, Peter — that he is focused on launching the largest mass deportation operation in American history of illegal criminals.

And if you are an individual, a foreign national, who illegally enters the United States of America, you are, by definition, a criminal.  And so, therefore —

Q    So, to be clear, it's not exclusively —

MS. LEAVITT:  — you are subject deportation.

Q    I apologize for interrupting.  So, to be clear, it's not — violent criminals do not receive precedence in terms of the deportations taking place?

MS. LEAVITT:  The president has also said — two things can be true at the same time.  We want to deport illegal criminals, illegal immigrants from this country.  But the president has said that, of course, the illegal dr- — criminal drug dealers, the rapists, the murderers, the individuals who have committed

A267

heinous acts on the interior of our country and who have terrorized law-abiding American citizens, absolutely, those should be the priority of ICE.  But that doesn't mean that the other illegal criminals who entered our nation's borders are off the table.

Q    Understood.  Then let me ask you a separate question about the confusion that still exists across the country right now as it relates to the — the freeze — or the pause, as it's described.  President Trump, of course, ran — one of the key policy items was that he was going to lower prices, lower the cost of everything from groceries, as he often said.  But in many of the cases, it would seem that some of these moves could raise prices for real Americans on everything from low-income heating — that program; childcare programs.  Will nothing that the president is doing here, in terms of the freeze in these programs, raise prices on ordinary Americans?

MS. LEAVITT:  What particular actions are you referring to that would —

Q    I'm referring to LHEAP right now.  That's the low-income heating program, for example.  We can talk about — there's no clarity, so I could refer to a lot of them.  We don't know what they are specifically.  Can you tell us that LHEAP — that LIHEAP is not one of those affected?

MS. LEAVITT:  So, you're asking a hypoc- — -thetical based on programs that you can't even identify?

Q    No, I just identified — I —

MS. LEAVITT:  What I can tell you is that the —

Q    Well, just to be — just to be clear, since you guys haven't identified, let's do it together, just for Americans at home.  Medicaid, is that affected?

MS. LEAVITT:  I gave you a list of examples — Social Security, Medicare, welfare benefits —

Q    Medicaid too, correct?

MS. LEAVITT:  — food stamps — that will not be impacted by this federal pause.  I can get you the full list after this briefing from the Office of Management and Budget.

A268

But I do want to address the cost cutting, because that's certainly very important, and — and cutting the cost of living in this country. President Trump has taken historic action over the past week to do that. He actually signed a memorandum to deliver emergency price relief for American families, which took a number of actions. I can walk you through those. He also repealed many onerous Biden administration regulations. We know, over the past four years, American households has been essentially taxed $55,000 in regulations from the previous administration. President Trump, with the swipe of his pen, rescinded those, which will ultimately put more money back in the pockets of the American people. So, deregulation is a big deal.

And then, when it comes to energy, I mean, the president signed an executive order to declare a national energy emergency here at home, which is going to make America energy dominant. We know that energy is one of the number-one drivers of inflation, and so that's why the president wants to increase our energy supply: to bring down costs for Americans. The Trump energy boom is incoming, and Americans can expect that.

Q   Please share that memo. Thank you.

MS. LEAVITT: I will.

(Cross-talk.)

Q   Karoline, I think — some of the confusion, I think, may be here with this pause on federal funding. You've made it clear you're not stopping funds that go directly to individuals, but there certainly are lots of organizations that receive funding and then may pass along a benefit — Meals on Wheels, for one. They provide meals for over 2.2 million seniors.

What is the president's message to Americans out there, many of whom supported him and voted for him, who are concerned that this is going to impact them directly, even if, as you said, the funding isn't coming directly to their wallet?

MS. LEAVITT: I have now been asked and answered this question four times.

A269

To individuals at home who receive direct assistance from the federal government, you will not be impacted by this federal freeze.  In fact, OMB just sent out a memo to Capitol Hill with Q and A to — to clarify some of the questions and the answers that all of you are a- — are asking me right now.  Again, direct assistance will not be impacted.  I've been asked and answered about this OMB memo.  There's many other topics of the day.

Jacqui Heinrich.

Q   But on indirect assistance, Karoline —

Q   Thank you, Karoline.

Q   — if it's going to another organization and then trickling down?

MS. LEAVITT:  Direct assistance that is in the hands of the American people will not be impacted.

Again, as I said to Peter, we will continue to provide that list as it comes to fruition.  But OMB right now is focused on analyzing the federal government's spending, which is exactly what the American people elected President Trump to do.

(Cross-talk.)

Q   Thank you, Karoline.

Q   And one question on immigration, Karoline.  On immigration.

Q   Thank you, Karo- —

Q   Of the 3,500 arrests ICE has made so far since President Trump came back into office, can you just tell us the numbers?  How many have a criminal record versus those who are just in the country illegally.

MS. LEAVITT:  All of them, because they illegally broke our nation's laws, and, therefore, they are criminals, as far as this administration goes.  I know the last administration didn't see it that way, so it's a big culture shift in our nation to view someone who breaks our immigration laws as a criminal.  But that's exactly what they are.

Jacqui.

(Cross-talk.)

A270

Q    Karoline, on tariffs.

Q    But you made a point of going with the worst first.

Q    On tariffs.

Q    They all have a criminal record?

Q    And welcome to the briefing room.

MS. LEAVITT:  If they broke our nation's laws, yes, they are a criminal.

Yes.

Q    Thank you.  On stripping security details for figures like John Bolton, Pompeo, Brian Hook.  Senator Tom Cotton said that he's seen the intelligence and the threat from Iran is real for anyone who played a role in the Soleimani strike.  He voiced concern it wouldn't just impact those individuals but potentially their family, innocent bystanders, friends — anyone who is near them when they're out in public.  Is the president open to reconsidering his decision?

MS. LEAVITT:  The president was asked and answered this yesterday, and he was firm in his decision, despite some of the comments that you had referenced.  And he's made it very clear that he does not believe American taxpayers should fund security details for individuals who have served in the government for the rest of their lives.  And there's nothing stopping these individuals that you mentioned from obtaining private security. That's where the president stands on it.  I have no updates on that.

Q    Is there any concern that this decision might jeopardize the administration's ability to hire the best advisers for these kinds of positions in the future?

MS. LEAVITT:  No.  In fact, I've talked to the Presidential Personnel Office who has told me directly that there is such an influx of resumes for this administration that it's incredibly overwhelming.  There is no lack of talent for the Trump administration.

Reagan Ree- —

Q    And would he — would he take any responsibility —

A271

Press Briefing by Press Secretary Karoline Leavitt – The White House     https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1158 Case: 1:25-cv-00039-JMB-PAS174Document 268-127 Filed: 02/07/25 Page 20 of 32 Filed 02/05/25 Page 20 of 33 6724656 PageID #: 6515

Q    Thanks, Karoline.

Q    — if anything happened to these people?  Would he feel at all that his decision was a factor in that?

MS. LEAVITT:  The president was asked and answered this yesterday.  I'd defer you to his comments.

Q    Thanks, Karoline.

Q    Karoline —

MS. LEAVITT:  Reagan, since you're in the back row, I hear y- — the back row hasn't gotten much attention in the last four years —

Q    Yes, thank you.

MS. LEAVITT:  — so I'm happy to answer your question.

Q    And I can project.  (Laughter.)  Does the president intend to permanently cut off funding to NGOs that are bringing illegal foreign nationals to the country, such as Catholic Charities?

   MS. LEAVITT:  I am actually quite certain that the president signed an executive order that did just that, and I can point you to that.

   Q    One more, Karoline.

MS. LEAVITT:  Yeah.

Q    President Trump issued an executive order on increased vetting for refugees in visa applications.

MS. LEAVITT:  That's right.

Q    Part of that order was considering an outright ban for countries that have deficient screening processes.  Has the president considered yet which countries might fall into this category?  Are countries like Afghanistan or Syria under consideration for a full ban?

MS. LEAVITT:  Yeah.  So, the president signed an executive order to streamline the vetting for visa applicants and for illegal immigrants in this country who are coming, of course, from other nations.

It also directed the secretary of State to review the process and make sure that other countries around the world are being completely transparent with

A272

our nation and the individuals that they are sending here.  And so, the secretary of State has been directed to report back to the president.  I haven't seen that report yet.  We've only been here for a few days.

(Cross-talk.)

Q    Karoline, two questions for you.  One on the freeze in federal funding.  Who advised the president on the legality of telling government agencies that they don't have to spend money that was already appropriated by Congress?

MS. LEAVITT:  Well, as the OMB memo states, this is certainly within the confines of the law.

So, White House Counsel's Office believes that this is within the pe- — president's power to do it, and therefore, he's doing it.

Q    Okay.  So, they disagree with lawmakers who say that they don't have the power to — to freeze this funding?

MS. LEAVITT:  Again, I would point you to the language in the memo that clearly states this is within the law.

Q    And on what happened on Friday night.  The — the administration fired several inspectors general without giving Congress the 30-day legally required notification that they were being fired.  I think only two were left at DO- — DHS and the DOJ.  And then, yesterday, we saw several prosecutors — I believe 12 — fired from the Justice Department who worked on the investigations into the president.  As you know, they are career prosecutors; therefore, they are afforded civil service protections.  How is the administration deciding which laws to follow and which ones to ignore?

MS. LEAVITT:  So, it is the belief of this White House and the White House Counsel's Office that the president was within his exe- — executive authority to do that.  He is the executive of the executive branch, and, therefore, he has the power to fire anyone within the executive branch that he wishes to.

There's also a case that went before the Supreme Court in 2020: ~~Scaila~~ [Seila] Law LLC, v. the Customs — the [Consumer Financial Protection] Bureau

A273

~~Protection.~~ I would advise you to look at that case, and that's the legality that this White House has rested on.

Q   So, you're confident that if they bring lawsuits against you — those prosecutors who were fired — that — that they will succeed?

MS. LEAVITT:  We will win in court, yes.

Q   And did he personally direct this, given they worked on the classified documents investigation and the election interference investigation?

MS. LEAVITT:  This was a memo that went out by the Presidential Personnel Office, and the president is the leader of this White House.  So, yes.

Q   So, it did come from him?

MS. LEAVITT:  Yes, it came from this White House.

(Cross-talk.)

Q   Karoline.

MS. LEAVITT:  Sir.

Q   Thank you.  Congrats on your first day behind the podium.

MS. LEAVITT:  Thank you.

Q   President Trump ended funding for UNRWA and also designated the Houthis a foreign terrorist organization.

MS. LEAVITT:  That's right.

Q   Both were decisions that the previous administration had reversed.  So, here's my question: Will there be an investigation into who gave the previous administration this terrible advice?

MS. LEAVITT:  Well, that's a very good point.  I haven't heard discussions about such an ins- — investigation, but it wouldn't be a bad idea, considering that the Houthis cer- — certainly are terrorists.  They have launched attacks on U.S. naval ships across this world, and so I think it was a very wise move by this administration to redesignate them as a terrorist group, because they are.  And I think it was a foolish decision by the previous administration to do so.

As for an investigation, I'm not sure about that, but it's not a bad idea.

A274

(Cross-talk.)

Josh.

Q   Thank you for the question.  I appreciate it.  Can you give us an update on the president's plan for his tariff agenda?  He spoke a lot about this yesterday, and there's a couple of dates coming up that —

MS. LEAVITT:  Sure.

Q   — he's spoken to.  Number one, February 1st.  He's alluded to both the potential for tariffs for Canada and Mexico but also China to take effect on those days.  Where is — what's he thinking about that?

MS. LEAVITT:  Yeah.

Q   Should those countries expect that on the 1st?

MS. LEAVITT:  Again, he was asked and answered this question this past weekend when he took a lot of questions from the press, and he said that the February 1st date for Canada and Mexico still holds.

Q   And what about the China 10 percent tariff that he also had mused about last Tuesday going into effect on the same date?

MS. LEAVITT:  Yeah, the president has said that he is very much still considering that for February 1st.

Q   And then, separately, yesterday, he talked also about sectoral tariffs on, for instance, pharmaceuticals, as well as semiconductor computer chips.  He talked about steel, aluminum, and copper.  What's the timeline on those?  Is that a similar sort of "coming days" thing or —

MS. LEAVITT:  Yeah, so when the president talked about that in his speech yesterday, that actually wasn't a new announcement.  That was within a presidential memorandum that he signed in one of the first days here in the White House on his America First trade agenda.  So, there's more details on those tariffs in there.

As far as a date, I don't have a specific date to read out to you, but the president is committed to implementing tariffs effectively, just like he did in his first term.

A275

Q   And then — and then, finally, he also was asked on the plane when he gaggled about the potential for a universal tariff.  He was asked maybe about two and a half percent.

MS. LEAVITT:  Yeah.

Q   There was a report about that.  He said he wanted "much bigger than that."  Should we understand that these tariffs would add up?  You know, in other words, you might have country-specific tariffs like Canada, Mexico, China.  You might have sectoral tariffs, like on pharmaceuticals, as well as a potential universal tariff on top of that.  Do these stack on one or the other, or would one sort of take precedence over another?

MS. LEAVITT:  All I can point you to is what the president has said on this front: the February 1st date for Canada and Mexico and also the China tariff that he has discussed.

He rejected the 2.5 percent tariff.  He said that was a little bit too low.  He wants it to be higher.

I'll leave it to him to make any decisions on that front.

Q   Do you have any comment on what the —

(Cross-talk.)

Q   — what the Mexicans and Canadians —

MS. LEAVITT:  Phil.

Q   — have done so far?  Do you have any comment on whether that has met the bar of what he wants to see on fentanyl?  Thank you.

MS. LEAVITT:  I — I won't get ahead of the president, again, on advocating to foreign nations on what they should or shouldn't do to get away from these tariffs.  The president has made it very clear, again, that he expects every nation around this world to cooperate with the repatriation of their citizens.  And the president has also put out specific statements in terms of Canada and Mexico when it comes to what he expects in terms of border security.  We have seen a historic level of cooperation from Mexico.  But, again, as far as I'm still tracking — and that was last night talking to the president directly —

A276

February 1st is still on the books.

Q   Thank you.

MS. LEAVITT:  Phil.

Q   Thank you, Karoline.  Quick programming note, and then a question on taxes.

MS. LEAVITT:  A programming note.

Q   Well, in terms of programming, should —

MS. LEAVITT:  That sounds fun.

Q   — we expect to see you here every day?  How frequently will these —

Q   That's a good question.

Q   — press briefings be?

MS. LEAVITT:  It is a good question, April.

So, look, the president, as you know, is incredibly accessible.  First day here, he wanted all of you in the Oval Office.  You got a 60-minute press conference with the leader of the free world — while he was simultaneously signing executive orders, I may add.  That's pretty impressive.  I don't think the previous office holder would be able to pull such a thing off.

So, look, the president is the best spokesperson that this White House has, and I can assure you that you will be hearing from both him and me as much as possible.

Q   And then a question about tax cuts.  You know, the president has promised to extend the tax cuts from the previous term.  I'm curious, you know, does the president support corresponding spending cuts, as some Republicans have called for in Congress?  And will the new Treasury secretary be leading those negotiations with the Hill, as Mnuchin did during the first administration?

MS. LEAVITT:  The president is committed to both tax cuts and spending cuts.

And he has a great team negotiating on his behalf, but there's no better negotiator than Donald Trump, and I'm sure he'll be involved in this

A277

Press Briefing by Press Secretary Karoline Leavitt – The White House          https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1413   Case 1:25-cv-00039-JJM-PAS174 Document 68-127   Date Filed 02/07/25 2025 Page 26 of 33   6724656
PageID #: 6521

reconciliation process as it moves forward.

(Cross-talk.)

Q    Karoline, in the announcement that you made last night on the Iron Dome, it said the president had directed that the United States will build this Iron Dome.

MS. LEAVITT:  Yeah.

Q    When you read into the executive order, it seemed short of that.  It asked for a series of studies —

MS. LEAVITT:  Yeah.

Q    — and reports back on — can you tell us whether the president has directed this and, if he is this concerned on this issue, why the suspensions that we saw listed by OMB included so many different nuclear programs, nonproliferation programs, programs to blend down nuclear weapons, and s- — and so forth?

MS. LEAVITT:  First of all, when it comes to the Iron Dome, the executive order directed the implementation of the — of an Iron Dome.  It also, as you said, kind of directed research and studies to see if — or — or how the United States can go about doing this, particularly the Department of Defense.  When it comes to the other question that you asked about those specific programs, again, I would say, this is not a — a ban; this is a temporary pause and a freeze to ensure that all of the money going out from Washington, D.C., is in align with the president's agenda.

And as the Office of Management and Budget has updates on what will be kick-started, once again, I will provide those to you.

Q    Can you clarify for a sec what you were saying before on Medicaid?  It wasn't clear to me whether you were saying that no Medicaid would be cut off.  Obviously, a lot of this goes to states before it goes to individuals and so forth.  So, are you guaranteeing here that no individual now on Medicaid would see a cutoff because of the pause?

MS. LEAVITT:  I'll check back on that and get back to you.

A278

Jon.

Q   Thanks a lot, Karoline.  As you know, in the first week that the president was in office, signed an executive order as it relates to birthright citizenship — trying to eliminate that.  Now, 22 state attorney generals have said that this is unconstitutional.  A federal judge has just agreed with their argument. What's the administration's argument for doing away with birthright citizenship?

MS. LEAVITT:  The folks that you mentioned have a right to have that legal opinion, but it is in disagreement with the legal opinion of this administration. This administration believes that birthright citizenship is unconstitutional, and that is why President Trump signed that executive order.  Illegal immigrants who come to this country and have a child are not subject to the laws of this jurisdiction.  That's the opinion of this administration.

We have already appealed the rul- — the lawsuit that was filed against this administration, and we are prepared to fight this all the way to the Supreme Court if we have to, because President Trump believes that this is a necessary step to secure our nation's borders and protect our homeland.

Monica.

Q   And then on foreign policy — on foreign policy, Karoline —

Q   Thank you, Karoline.  It's great to see you, and you're doing a great —

Q   — on foreign policy, if I may.  The president's commitment to the NATO defense Alliance, is it as strong as the prior administration?  Is it the same as when he served as president in his first term in office?

MS. LEAVITT:  As long as NATO pays their fair share.

And President Trump has called on NATO Allies to increase their defense spending to 5 percent.  You actually saw the head of NATO at Davos last week on Bloomberg Television saying that President Trump is right and if Europe wants to keep itself safe, they should increase their defense spending.

I would just add that there was no greater ally to our European allies than President Trump in his first term.  The world, for all nations in Europe, and, of

A279

course, here at home was much safer because of Presidents Tru- — Trump's peace through strength diplomatic approach.

Monica.

Q   Karoline —

Q   Thank you.  Thank you, Karoline.  And it's great to finally be called on as well in the briefing room.  I appreciate that.

MS. LEAVITT:  You're welcome.

Q   Of course, we know President Trump just got back from North Carolina and California meeting with victims of natural disasters.  There's the two-year anniversary of the East Palestine, Ohio, toxic train derailment.  Does the president have any plans to go visit the victims of that toxic spill or just visit in general?

MS. LEAVITT:  Not — no plans that I can read out for you here.  If that changes, I will certainly keep you posted.

What I can tell you is that President Trump still talks about his visit to East Palestine, Ohio.  That was one of the turning points, I would say, in the previous election campaign, where Americans were reminded that President Trump is a man of the people.  And he, as a candidate, visited that town that was just derailed by the train derailment — no pun intended — and he offered support and hope, just like I saw the president do this past week.

It was a purposeful decision by this president, on his first domestic trip, to go to North Carolina and to California to visit with Americans who were impacted by Hurricane Helene and also by the deadly fires — a red state and a blue state, both of which feel forgotten by the previous administration and the federal government.  That has now — that has now ended under President Trump.

He will continue to put Americans first, whether they're in East Palestine, in Pacific Palisades, or in North Carolina.

(Cross-talk.)

Sure.

A280

Press Briefing by Press Secretary Karoline Leavitt – The White House          https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1158 Document: 00118262174 Page: 268 Date Filed: 02/07/2025 Entry ID: 6724656
Case 1:25-cv-00039-JJM-PAS Document 68-127 Filed 02/07/25 Page 29 of 33
PageID #: 6524

Q   Thank you, Karoline.  On California, could you please clarify what the military did with the water last night, as referenced in the president's Truth Social post?

MS. LEAVITT:  The water has been turned back on in California, and this comes just days after President Trump visited Pacific Palisades and, as you all saw, applied tremendous pressure on state and local officials in Pacific Palisades, including Los Angeles Mayor Karen Bass, to turn on the water and to direct that water to places in the south and in the middle of the state that have been incredibly dry, which has led to the expansion — the rapid expansion of these fires.

Q   So, could you clarify what the military's role was, where the water came from, and how it got there?

MS. LEAVITT:  Again, the Army Corps of Engineers has been on the ground in California to respond to the devastation from these wildfires.  And I would point out that just days after President Trump visited the devastation from these fires, the water was turned on.  That is because of the pressure campaign he put on state and local officials there, who clearly lack all common sense.

And I will never forget being at that round table with the president last week and hearing the frustration in the voices of Pacific Palisades residents who feel as though their government has just gone insane.  Before President Trump showed up on the scene, Karen Bass was telling private property owners that they would have to wait 18 months to access their private property.

So, this administration, the president and his team that's on the ground in California — Ric Grenell, who he has designated to oversee this great crisis — ha- — will continue to put pressure on Karen Bass and state and local officials to allow residents to access their properties.

This is a huge part of it.  These residents want to take part in their own clearing out of their properties.  They should be able to do that.  It's the United

A281

States of America.  What happened to our freedom?  Clearly, it's gone in California, but not anymore under President Trump.

Q    Karoline —

MS. LEAVITT:  April.

Q    Karoline, welcome to the briefing room.

MS. LEAVITT:  Thank you.

Q    Several questions.  One on the pause.  Will minority-serving institutions, preferably colleges and universities, have those monies held back temporarily at this moment?

MS. LEAVITT:  Again, I have not seen the entire list, because this memo was just sent out.  So, I will provide you all with updates as we receive them.  Okay?

Q    Karoline —

Q    And secondly — als- —

Q    Karoline.

Q    Also, secondly, when it comes to immigration, there is this southern border focus.  What happens to those who have overstayed their visas?  That is part of the broken immigration system.  In 2023, there was a report by the Biden administration, the Homeland Security Department, that said overstays of visas were three times more than usual.  Will there be a focus on the overstays for visas as well?

MS. LEAVITT:  If an individual is overstaying their visa, they are therefore an illegal immigrant residing in this country, and they are subject to deportation.

Q    And also, lastly —

MS. LEAVITT:  Yes.

Q    Lastly, as we're dealing with anti-DEI, anti-woke efforts, we understand this administration could — is thinking about celebrating Black History Month.  Have you got any word on that?  Anything that you can offer to us?

MS. LEAVITT:  As far as I know, this White House certainly still intends to celebrate, and we will continue to celebrate American history and the

A282

Press Briefing by Press Secretary Karoline Leavitt – The White House          https://www.whitehouse.gov/briefings-statements/2025/01/press-briefin...

Case: 25-1158   Document: 00118259174   Page: 267   Date Filed: 02/07/2025   Entry ID: 6724656
Case: 1:25-cv-00039-JMB-PAS   Document 63-127   Filed 02/07/25   Page 31 of 33   PageID #: 6526

contributions that all Americans, regardless of race, religion, or creed, have made to our great country.  And America is back.

Christian Datoc.

Q    Thanks, Karoline.  Just real quick.  You mentioned the inflation executive order the president signed, but egg prices have skyrocketed since President Trump took office.  So, what specifically is he doing to lower those costs for Americans?

MS. LEAVITT:  Really glad you brought this up, because there is a lot of reporting out there that is putting the onus on this White House for the increased cost of eggs.  I would like to point out to each and every one of you that, in 2024, when Joe Biden was in the Oval Office — or upstairs in the residence sleeping; I'm not so sure — egg prices increased 65 percent in this country.  We also have seen the cost of everything, not just eggs — bacon, groceries, gasoline — have increased because of the inflationary policies of the last administration.

As far as the egg shortage, what's also contributing to that is that the Biden administration and the Department of Agriculture directed the mass killing of more than 100 million chickens, which has led to a lack of chicken supply in this country, therefore a lack of egg supply, which is leading to the shortage.  So, I will leave you with this point.  This is an example of why it's so incredibly important that the Senate moves swiftly to confirm all of President Trump's nominees, including his nominee for the United States Department of Agriculture, Brooke Rollins, who is already speaking with Kevin Hassett, who is leading the economic team here at the White House, on how we can address the egg shortage in this country.

As for cots, I laid out — costs — I laid out the plethora of ways that President Trump has addressed saving costs for the American people over the past week.  He looks forward to continuing to doing that —

Q    Karoline, what —

MS. LEAVITT:  — in the days ahead.

A283

(Cross-talk.)

Thank you, guys, so much.  I'll see you soon.

END            1:52 P.M. EST

News

Administration

Issues

**THE WHITE HOUSE**

1600 Pennsylvania Ave NW
Washington, DC 20500

THE WHITE HOUSE

WH.GOV

A284

Case: 25-1158   Document: 00118259174   Page: 33   Date Filed: 02/07/2025   Entry ID: 6724656

Case 1:25-cv-00039-JJM-PAS   Document 68-127   Filed 02/07/25   Page 33 of 33 PageID #: 6528

Copyright

Privacy

A285

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; STATE OF
CALIFORNIA; STATE OF ILLINOIS;
STATE OF RHODE ISLAND; STATE OF
NEW JERSEY; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; THE DISTRICT OF
COLUMBIA; STATE OF HAWAI'I;
STATE OF MAINE; STATE OF
MARYLAND; STATE OF MICHIGAN;
STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NORTH
CAROLINA; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF
VERMONT; STATE OF WASHINGTON;
and STATE OF WISCONSIN,

    Plaintiffs,

v.

                                                   C.A. No. 25-cv-39-JJM-PAS

DONALD TRUMP, *in his Official
Capacity as President of the United
States*; U.S. OFFICE OF
MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, *in his Official
Capacity as Acting Director of the U.S.
Office of Management and Budget*; U.S.
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT, *in his Official
Capacity as Secretary of the Treasury*;
PATRICIA COLLINS, *in her Official
Capacity as Treasurer of the U.S.*; U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DOROTHY A.
FINK, M.D., *in her Official Capacity As
Acting Secretary Of Health And Human
Services*; U.S. DEPARTMENT OF
EDUCATION; DENISE CARTER, *in her
Official Capacity as Acting Secretary of
Education*; U.S. FEDERAL
EMERGENCY MANAGEMENT
AGENCY; CAMERON HAMILTON, *in*

his Official Capacity as Acting )
Administrator of the U.S. Federal )
Emergency Management Agency; U.S. )
DEPARTMENT OF )
TRANSPORTATION; )
JUDITH KALETA, in her Official )
Capacity as Acting Secretary of )
Transportation; U.S. DEPARTMENT OF )
LABOR; VINCE MICONE, in his Official )
Capacity as Acting Secretary of Labor; )
U.S. DEPARTMENT OF ENERGY; )
INGRID KOLB, in her Official Capacity )
as Acting Secretary of the U.S. )
Department of Energy; U.S. )
ENVIRONMENTAL PROTECTION )
AGENCY; JAMES PAYNE, in his Official )
Capacity as Acting Administrator of the )
U.S. Environmental Protection Agency; )
U.S. DEPARTMENT OF HOMELAND )
SECURITY; KRISTI NOEM, i n her )
Capacity as Secretary of the U.S. )
Department of Homeland Security; U.S. )
DEPARTMENT OF JUSTICE; JAMES R. )
McHENRY III, in his Official Capacity as )
Acting Attorney General of the U.S. )
Department of Justice; THE NATIONAL )
SCIENCE FOUNDATION; and DR. )
SETHURAMAN PANCHANATHAN, in )
his Capacity as Director of the National )
Science Foundation, )
)
Defendants. )
)

## ORDER

The Plaintiff States' Motion for Enforcement of the Temporary Restraining

Order ("TRO") (ECF No. 66) is GRANTED.

[It is a] basic proposition that **all orders and judgments of courts must be complied with promptly**. * * * Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter

and person must be obeyed by the parties until it is reversed by orderly
and proper proceedings.

*Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) (citations and quotations omitted)
(emphasis added).  The Defendants issued a broad, categorical, all-encompassing
directive freezing federal funding.  The plain language of the TRO entered in this case
prohibits all categorical pauses or freezes in obligations or disbursements based on
the OMB Directive or based on the President's 2025 Executive Orders.[1]  The
Defendants received notice of the TRO, the Order is clear and unambiguous, and
there are no impediments to the Defendants' compliance with the Order.

The States have presented evidence in this motion that the Defendants in some
cases have continued to improperly freeze federal funds and refused to resume
disbursement of appropriated federal funds.  *See* Exhibits A-C of the States' motion,
(ECF Nos. 66-1, 66-2, and 66-3).  The Defendants now plea that they are just trying
to root out fraud.  *See* ECF No. 70.  But the freezes in effect now were a result of the
broad categorical order, not a specific finding of possible fraud.  The broad categorical
and sweeping freeze of federal funds is, as the Court found, likely unconstitutional
and has caused and continues to cause irreparable harm to a vast portion of this
country.  These pauses in funding violate the plain text of the TRO.[2]  In response to

---

[1] The Defendants acknowledged that they understood what the TRO required:
"Federal agencies cannot pause, freeze, impede, block, cancel, or terminate any
awards or obligations on the basis of the OMB Memo, *or on the basis of the President's
recently issued Executive Orders.*"  ECF No. 51-1 at 1 (emphasis added).

[2] The Court disagrees with the Defendants' Notice (ECF No. 51), particularly
paragraph 2.  The Court's TRO is clear and unambiguous in its scope and effect, which
is inconsistent with the Defendant's interpretation contained in the Notice.  ECF
No. 51 at 2.

the Defendants' arguments, they can request targeted relief from the TRO from this Court where they can show a specific instance where they are acting in compliance with this Order but otherwise withholding funds due to specific authority.

Therefore, consistent with the United States Constitution, United States statutes, United States Supreme Court precedent, and the TRO, the Defendants are hereby further **ORDERED** as follows:

1.     The Defendants must immediately restore frozen funding during the pendency of the TRO until the Court hears and decides the Preliminary Injunction request.

2.     The Defendants must immediately end any federal funding pause during the pendency of the TRO.

3.     The Defendants must immediately take every step necessary to effectuate the TRO, including clearing any administrative, operational, or technical hurdles to implementation.

4.     The Defendants must comply with the plain text of the TRO not to pause any funds based on pronouncements pausing funding incorporated into the OMB Directive, like Section 7(a) of the *Unleashing* Executive Order, and the OMB *Unleashing* Guidance.  The TRO requirements include any pause or freeze included in the *Unleashing* Guidance.

5.     The Defendants must immediately restore withheld funds, including those federal funds appropriated in the Inflation Reduction Act and the

Infrastructure Improvement and Jobs Act. The directives in OMB M-25-11 are included in the TRO.

6. The Defendants must resume the funding of institutes and other agencies of the Defendants (for example the National Institute for Health) that are included in the scope of the Court's TRO.


IT IS SO ORDERED.

*/s/John J. McConnell, Jr.*
_____
John J. McConnell, Jr.
Chief Judge
United States District Court for the District of Rhode Island

February 10, 2025

# United States Court of Appeals
## For the First Circuit

————————————

No. 25-1138

STATE OF NEW YORK, et al.,

Plaintiffs, Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants, Appellants.

————————————

Before

Barron, <u>Chief Judge</u>,
Montecalvo and Rikelman, <u>Circuit Judges</u>.

————————————

### ORDER OF COURT
Entered: February 11, 2025

On January 31, 2025, the United States District Court for the District of Rhode Island issued an order granting the plaintiffs' Motion for a Temporary Restraining Order ("TRO"). On February 6, 2025, the District Court entered a text order extending the TRO. And, on February 10, 2025, the District Court granted the plaintiffs' Motion for Enforcement of the Temporary Restraining Order ("February 10 Order"). The defendants have appealed these orders. They have also filed with this Court two motions (contained within a single document) for, respectively, (1) a stay pending appeal, which they ask us to resolve by February 14, 2025, and (2) an administrative stay pending resolution of their motion for a stay pending appeal.[1] The sole motion we address in this order is the motion for an administrative stay.

This Circuit has not addressed whether or when an administrative stay of the sort being requested here may be issued, and there is well-recognized uncertainty as to what standards guide the decision to issue one or not. <u>See</u> <u>United States</u> v. <u>Texas</u>, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). Here, the defendants have requested a stay pending appeal from the District Court, which has not yet ruled on their motion. <u>See</u> Fed. R. App. P. 8(a)(1)(A) ("A party

---

[1] The defendants also state that "[e]ven if this Court were to conclude that the order is unappealable, the Court should exercise its discretion to treat this motion as a petition for a writ of mandamus."

must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal . . . ."); id. 8(a)(2)(A)(ii) (requiring, in the absence of a showing that "moving first in the district court would be impracticable," that the party moving for a stay pending appeal must "state that . . . the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action"). Moreover, a centerpiece of the dispute between the parties in this appeal concerns the proper way to construe the February 10 Order. Finally, insofar as we have jurisdiction to consider this request for an administrative stay arising out of a temporary restraining order, cf. Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO, 473 U.S. 1301, 1306 (1985) (Burger, C.J., in chambers) ("[S]ince the Court of Appeals was without jurisdiction over the appeal from the District Court's order denying the temporary restraining order, the motions panel was necessarily without authority to grant such a stay."), the defendants do not cite any authority in support of their administrative stay request or identify any harm related to a specific funding action or actions that they will face without their requested administrative stay.

In these circumstances, we assume we have jurisdiction, see Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023), and deny the motion for an administrative stay without prejudice. We are confident the District Court will act with dispatch to provide any clarification needed with respect to, among other things, the defendants' contention that the February 10 Order "bars both the President and much of the Federal Government from exercising their own lawful authorities to withhold funding without the prior approval of the district court." We note in this regard the plaintiffs' statement in their Opposition to Defendants' Motion for Administrative Stay Pending Appeal that, consistent with the TRO, the February 10 Order "does not stop defendants from limiting access to funds without any 'preclearance' from the district court 'on the basis of the applicable authorizing statutes, regulations, and terms.'" The parties may file any further memoranda in support of their positions on the motion for a stay pending appeal in this court by 5:00 PM on Thursday, February 13, 2025.

By the Court:

Anastasia Dubrovsky, Clerk

cc: Hon. John J. McConnell, Hanorah Tyer-Witek, Clerk, United States District Court for the District of Rhode Island, Zachary A. Cunha, Eric Dean McArthur, Daniel Tenny, Brett Allen Shumate, Daniel S. Schwei, Brian James Springer, Andrew F. Freidah, Eitan R. Sirkovich, Freedom Cheteni, Kathryn M. Sabatini, Michael J. Myers, Rabia Muqaddam, Sarah Rice, Mark Stephen Grube, Leonard Giarrano IV, Colleen K. Faherty, Molly Thomas-Jensen, Zoe Levine, Christine Chuang, Christopher J. Kissel, Kenneth J. Sugarman, Lara Haddad, Marie E. Logan, Nicholas R. Green, Theodore McCombs, Laura Faer, Carly J. Munson, Alex Hemmer, Jeremy Feigenbaum, Angela Cai, Shankar Duraiswamy, Katherine B. Dirks, Turner Smith, Anna Esther Lumelsky, Joshua Bendor, Nathan T. Arrowsmith, Shannon Wells Stevenson, Jill Lacedonia, Michael Kenneth Skold, Vanessa L. Kassab, Andrew C. Mendrala, David D. Day, Kalikoonalani D. Fernandes, Jason David Anton, Adam D. Kirschner, Neil Giovanatti, Linus Banghart-Linn, Elizabeth Kramer, Heidi Parry Stern, Daniel P. Mosteller, Anjana Samant, Christina L. Beatty-Walters, Jonathan T. Rose, Andrew R.W. Hughes, Leah Brown, Aaron Bibb, Arthur West

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN, | C.A. No. 25-cv-39-JJM-PAS |
| Plaintiffs, | |
| v. | |
| DONALD TRUMP, *in his Official Capacity as President of the United States*; U.S. OFFICE OF MANAGEMENT AND BUDGET; Russell Vought, *in his Official Capacity as Director of the U.S. Office of Management and Budget*; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his Official Capacity as Secretary of the Treasury*; PATRICIA COLLINS, *in her Official Capacity as Treasurer of the U.S.*; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D., *in her* | |

A293

*Official Capacity As Acting Secretary )
Of Health And Human Services*; U.S. )
DEPARTMENT OF EDUCATION; )
DENISE CARTER, *in her Official* )
*Capacity as Acting Secretary of* )
*Education*; U.S. FEDERAL )
EMERGENCY MANAGEMENT )
AGENCY; CAMERON HAMILTON, )
*in his Official Capacity as Acting* )
*Administrator of the U.S. Federal* )
*Emergency Management Agency*; U.S. )
DEPARTMENT OF )
TRANSPORTATION; )
SEAN P. DUFFY, *in his Official* )
*Capacity as Secretary of* )
*Transportation*; U.S. DEPARTMENT )
OF LABOR; VINCE MICONE, *in his* )
*Official Capacity as Acting Secretary* )
*of Labor*; U.S. DEPARTMENT OF )
ENERGY; CHRISTOPHER ALLEN )
WRIGHT*, in his Official Capacity as* )
*Secretary of the U.S. Department of* )
*Energy*; U.S. ENVIRONMENTAL )
PROTECTION AGENCY; LEE )
MICHAEL ZELDIN, *in his Official* )
*Capacity as Administrator of the U.S.* )
*Environmental Protection Agency*; )
U.S. DEPARTMENT OF )
HOMELAND SECURITY; KRISTI )
NOEM, i*n her Capacity as Secretary* )
*of the U.S. Department of Homeland* )
*Security*; U.S. DEPARTMENT OF )
JUSTICE; JAMES R. McHENRY III, )
*in his Official Capacity as Acting* )
*Attorney General of the U.S.* )
*Department of Justice*; THE )
NATIONAL SCIENCE )
FOUNDATION; and DR. )
SETHURAMAN PANCHANATHAN, )
*in his Capacity as Director of the* )
*National Science Foundation*, )
                                              )
        Defendants. )
                                              )

## ORDER

First, to be clear and to reaffirm the Court's Orders, the Temporary Restraining Order ("TRO") permits the Defendants to limit access to federal funds "on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50 at 12. The February 10, 2025 Order (ECF No. 96) does not "bar[] both the President and much of the Federal Government from exercising their own lawful authorities to withhold funding without the prior approval of the district court." ECF No. 102 at 2. Neither the TRO (ECF No. 50), nor the Court's subsequent Order (ECF No. 96) require the Defendants to seek "preclearance" from the Court before acting to terminate funding when that decision is based on *actual authority in the applicable statutory, regulatory, or grant terms*.

Second, the Court will act with alacrity in issuing an Order on the Defendants' Motion to Stay (ECF No. 100).

Third, the Defendants have filed two additional motions relating to the TRO: the "Emergency Motion Requesting Ruling by 11 a.m. on February 12 for Permission to Continue Withholding [Federal Emergency Management Agency ("FEMA")] and Other Funding" (ECF No. 102) and the "Supplemental Motion Requesting Permission to Continue Payment Review Processes" (ECF No. 103). As to FEMA funds to New York City, the Defendants represent that they intend to provide "notice to New York City regarding the funding pause and will provide the information and process required by regulation and the terms and conditions of the award." ECF No. 102-1 at ¶ 13. Because the Defendants are seeking to terminate funding *"on the basis*

*of the applicable authorizing statutes, regulations, and terms*," ECF No. 50 at 12 (emphasis added), the Court sees no need for further clarification. Finally, nothing in the TRO prevents the Defendants from continuing to use routine processes that the Payment Management Services (PMS) asserts it has used "for decades," ECF No. 103-1 at ¶ 4, before the Defendants imposed the categorical funding freeze that is the subject of the TRO.

Therefore, the Court REAFFIRMS the TRO, DENIES the Defendants' "Emergency Motion Requesting Ruling by 11 a.m. on February 12 for Permission to Continue Withholding FEMA and Other Funding" (ECF No. 102) and DENIES as moot the Defendants' "Supplemental Motion Requesting Permission to Continue Payment Review Processes" (ECF No. 103).

IT IS SO ORDERED.

*/s/John J. McConnell, Jr.*
_____
John J. McConnell, Jr.
Chief Judge
United States District Court for the District of Rhode Island

February 12, 2025

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiffs here seek to portray the Executive Branch's actions in extreme terms, as imposing an indefinite pause on all federal funding, occurring "via unilateral action untethered to the specific statutes, regulations, and grant or contract terms that govern each funding stream." Mot. for Prelim. Inj. (ECF No. 67) at 1 ("PI Mot."). In reality, this case is about something far more modest—the Executive's ability to instruct agencies to temporarily pause discrete categories of funding, to the extent doing so is consistent with their underlying statutory authorities, to ensure that such funding aligns with a new Administration's priorities. That authority is well-settled, and even Plaintiffs do not appear to dispute the legality of such an action. They instead portray the Executive's actions here in the broadest possible terms, thereby justifying their request for the broadest possible relief.

This Court need not address the outer bounds of the Executive's authority to pause funding, because the only action at issue here—an instruction to temporarily pause funding, to the extent permissible by law—is plainly lawful and essentially unchallenged. Nor should the Court accept Plaintiffs' invitation to become an ongoing superintendent over the funding decisions of almost a dozen federal agencies. Plaintiffs' claims do not warrant such intrusive relief, particularly in this preliminary posture when the only action challenged in this case has already been withdrawn. For numerous reasons, this Court should deny Plaintiffs' motion.

First, Plaintiffs' claims are moot. Their Complaint seeks relief against only one action—OMB Memorandum M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs* (Jan. 27, 2025) ("OMB Memo")—which has

now been withdrawn.  They cannot demonstrate a need for continued relief, and certainly not emergency preliminary relief, in light of that rescission.  Nor can they seek to litigate the legality of temporary pauses in funding through broad claims, untethered to any of the underlying statutory authorities, appropriations measures, or other grant agreement terms; such claims are not ripe for review.

Even if this Court allowed Plaintiffs to expand this suit beyond solely a challenge to the now-rescinded OMB Memo, Plaintiffs' claims would still fail.  They cannot seek relief directly against the President or his Executive Orders, as the Supreme Court confirmed over 150 years ago that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867).  And their attempt to challenge a broader "Funding Freeze" beyond just the OMB Memo is an impermissible programmatic challenge that is inconsistent with the Administrative Procedure Act (APA) and the separation of powers; there is no lawful basis for this Court to superintend every funding decision of a dozen federal agencies.

Plaintiffs' claims also all fail on the merits.  They portray this case as being about whether the Executive can unilaterally ignore all validly enacted appropriations laws, but that is not what the OMB Memo required—as is apparent from the text of the Memo, as well as guidance issued the following day, agencies were instructed to temporarily pause funding only to the extent doing so was consistent with their underlying statutory authorities.  The President's recent Executive Orders contain the same instructions.  Far from being a case where the

## ARGUMENT

### I.  The Court Lacks Jurisdiction to Enter Preliminary Relief

#### A.  Rescission of the OMB Memo Has Mooted Plaintiffs' Claims, Or At Least Mooted Their Demand for Preliminary Relief

Plaintiffs' Complaint challenges one action—the OMB Memo—which has now been rescinded.  Plaintiffs' claims are therefore moot, despite their efforts to broaden their claims to challenge other actions not properly within this suit.

**1.** There is no doubt that Plaintiffs' claims in this case are directed solely against the OMB Memo, as is the relief they seek in their Complaint.  *See, e.g.*, Compl. ¶ 1 ("This action seeks declaratory and injunctive relief and vacatur under the Administrative Procedure Act ('APA') with respect to the Office of Management and Budget's January 27, 2025, Directive for Heads of Executive Departments and Agencies (M-25-13), with the subject, "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs[.]'"); *id.* ¶¶ 101, 110 (identifying the "OMB Directive" as the alleged agency action for purposes of Plaintiffs' APA claims); *id.* ¶¶ 121, 127, 134 (alleging that the "OMB Directive" allegedly violates various constitutional provisions); *id.* at 35-36 (prayer for relief seeking relief solely against the "OMB Directive").

Now that the OMB Memo has been rescinded, Plaintiffs' claims are therefore moot.  *See Harris v. Univ. of Massachusetts Lowell,* 43 F.4th 187, 192 (1st Cir. 2022) ("claims for injunctive relief are inescapably moot" when a "polic[y] no longer appl[ies]"); *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) ("Because the memo has expired, this claim is moot."); *Christian Knights*

determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). Additionally, these final agency actions must be "circumscribed [and] discrete." *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 62 (2004). The APA does not provide for "general judicial review of [an agency's] day-to-day-operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1999), like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013).

    **1.** With respect to Plaintiffs' claims against the OMB Memo (and any other over-arching guidance about how to implement the President's priorities), those claims fail because they are not challenging final agency action. As discussed further below, the OMB Memo did not itself determine which funds or grants should be paused; instead, it required agencies to make that determination, consistent with their own authorities. *See* Part III.A, *infra*. Those agencies' subsequent decisions to pause funding for particular grants or awards might be final agency action. But that would permit only a grant- or program-specific lawsuit, not a facial attack directly against the OMB Memo itself, as Plaintiffs seek to bring here.

    The OMB Memo's instruction that agencies pause funding, to the extent permissible within the agency's own authorities, is conditional unless and until the grant-administering agency determines it has such discretion. This type of conditional instruction is not, on its own, a final agency action. *See Berkshire Env't Action Team, Inc. v. Tennessee Gas Pipeline Co., LLC*, 851 F.3d 105, 112 (1st Cir.

2017) (holding that "an initial letter granting a water quality certification *subject to Condition 15* . . . is not a final agency action" (emphasis added)); *cf. Louisiana v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023) ("Plaintiffs contemplate harms that are several steps removed from—and are not guaranteed by—the challenged Executive Order or the Interim Estimates.  The states cannot do away with their alleged parade of horribles in a single swipe at the duly elected executive.").

**2.**  Plaintiffs' claims also fail because they are not challenging discrete agency action; instead, they are bringing a broad, programmatic challenge to agency functioning as a whole.

"Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Nat'l Wildlife Fed'n*, 497 U.S. at 891. Again, the APA might allow Plaintiffs to challenge specific withholdings of funds under a particular grant.  But here, Plaintiffs have made expressly clear that they are not seeking to bring those types of claims.  *See, e.g.*, TRO Hrg. Tr. at 11 ("[W]e cannot proceed in the regular order of normal APA review of an agency decision because . . . we can't go program by program, bring to you the statute, bring to you the regulation, bring to you the grant agreement, bring to you all the things that courts would normally look at[.]"); *id.* at 12 (asserting that it is "simply impossible" to "present to you what I think courts normally like to see, which is a more agency-by-agency, grant-by-grant").  Indeed, Plaintiffs describe their claims here as seeking relief as to "thousands and thousands of programs across multiple States." *Id.* at 8.

Plaintiffs' PI motion, and their attempt to recharacterize their claims away

## III.    Plaintiffs' Challenges Are Meritless

Even if the Court were willing to review Plaintiffs' claims on the merits, none of the Executive Branch's actions was unlawful.  It is well established that, to effectuate his discretion and policy objectives, the President may direct agencies to take actions to pause or freeze funding pursuant to the authority those agencies possess under their organic statutes and regulations.  Plaintiffs do not take issue with that legal proposition, and this Court has recognized that Defendants may "limit access to federal funds on the basis of the applicable authorizing statutes, regulations, and terms."  ECF No. 107 at 3 (quotation marks omitted).  That should end the matter, for that is all the OMB Memo sought to accomplish.

Plaintiffs' claims all rest on a serious misreading of the OMB Memo.  Their constitutional claims are essentially recycled versions of their statutory claims, which fail for all these same reasons.  And the OMB Memo amply satisfies the minimal standard for arbitrary and capricious review under the APA.  Thus, none of Plaintiffs' claims warrants the extraordinary relief of a preliminary injunction.

### A.    All of Plaintiffs' Claims Rest on an Incorrect Reading of the OMB Memo

Plaintiffs' claims in this case all rest on a single flawed premise—that the OMB Memo and the President's Executive Orders direct an immediate pause in funding without regard to the underlying legal framework governing that funding.  Contrary to Plaintiffs' characterization, however, each Executive action expressly instructs agencies to implement a pause only to the extent permissible by law, which is critical language that cannot simply be ignored.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; OFFICE OF THE GOVERNOR *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN, | C.A. No. 1:25-cv-00039-JJM-PAS |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, in his official capacity as Director of the U.S. Office of Management and Budget; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; PATRICIA COLLINS, in her official capacity as Treasurer of the United States; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D., in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, in her official capacity as Acting Secretary of Education; U.S. DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; U.S. DEPARTMENT OF LABOR; VINCE MICONE, in his official capacity as Acting Secretary of Labor; U.S. DEPARTMENT OF ENERGY; CHRIS WRIGHT, in his official capacity as Secretary of Energy; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, | |

1

in his official capacity as Secretary of the Interior; U.S.
DEPARTMENT OF HOMELAND SECURITY; KRISTI
NOEM, in her capacity as Secretary of Homeland Security;
U.S. DEPARTMENT OF JUSTICE; PAMELA BONDI, in
her official capacity as Attorney General of the U.S.
Department of Justice; THE NATIONAL SCIENCE
FOUNDATION; DR. SETHURAMAN
PANCHANATHAN, in his capacity as Director of the
National Science Foundation; U.S. DEPARTMENT OF
AGRICULTURE; GARY WASHINGTON, in his official
capacity as Acting Secretary of Agriculture; U.S.
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT; SCOTT TURNER, in his official
capacity as Secretary of Housing and Urban Development;
U.S. DEPARTMENT OF STATE; U.S. AGENCY FOR
INTERNATIONAL DEVELOPMENT; MARCO RUBIO,
in his official capacities as Secretary of State and Acting
Administrator of the United States Agency for
International Development; U.S. DEPARTMENT OF
DEFENSE; PETER HEGSETH, in his official capacity as
Secretary of Defense; U.S. DEPARTMENT OF
VETERANS AFFAIRS; DOUG COLLINS, in his official
capacity as Secretary of Veterans Affairs; U.S.
DEPARTMENT OF COMMERCE; JEREMY PELTER, in
his official capacity as Acting Secretary of Commerce;
NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION; JANET PETRO in her official
capacity as Acting Administrator of National Aeronautics
and Space Administration; CORPORATION FOR
NATIONAL AND COMMUNITY SERVICE; JENNIFER
BASTRESS TAHMASEBI, in her official capacity as
Interim Head of the Corporation for National and
Community Service; U.S. SOCIAL SECURITY
ADMINISTRATION; MICHELLE KING, in her official
capacity as Acting Commissioner of United States Social
Security Administration; U.S. SMALL BUSINESS
ADMINISTRATION; and EVERETT WOODEL, in his
official capacity as Acting Administrator of U.S. Small
Business Administration,

       Defendants.

2

## <u>INTRODUCTION</u>

1.      This action seeks declaratory and injunctive relief against the federal government's categorical, immediate, and indefinite freeze on trillions of dollars of Congressionally authorized and appropriated federal funding (Federal Funding Freeze). Defendants' actions—beginning with certain Executive Orders (EOs) issued on or after January 20, 2025, followed by the EOs' implementation at federal agencies, and continuing through and beyond the issuance of a directive by the Office of Management and Budget (OMB) to pause virtually all federal disbursements to federal funding recipients—froze critical federal funding, including billions of dollars committed to Plaintiff States and benefitting their residents.

2.      The Federal Funding Freeze began with a January 20 EO entitled *Unleashing American Energy*, in which the President directed that all federal agencies impose a categorical, immediate, and indefinite pause on federal funds under the Infrastructure Improvement and Jobs Act (IIJA) (commonly known as the Bipartisan Infrastructure Law) and the Inflation Reduction Act of 2022 (IRA) pending review by those agencies of all such funding against the President's energy policy priorities. Exec. Order 14154, 90 Fed. Reg. 8353 (Jan. 29, 2025) (*Unleashing* EO). The day after that EO, OMB issued a directive stating that agencies must "immediately pause disbursement of funds appropriated under the [IRA] or the [IIJA]." Off. of Mgmt. & Budget, Exec. Off. of the President, M-25-11, *Guidance Regarding Section 7 of the Executive Order* Unleashing American Energy (Jan. 21, 2025) (*Unleashing* Directive).

3.      The Federal Funding Freeze continued through the following week when, on January 27, OMB issued a directive implementing an across-the-board Federal Funding Freeze—extending to nearly all federal funding streams nationwide—citing the *Unleashing* EO as well as several other EOs issued by the President in the previous week. Specifically, OMB ordered the

head of every executive branch department and agency to "**temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance," as well as any "other relevant agency activities" that "may be implicated by" recent executive orders, "including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." Off. of Mgmt. & Budget, Exec. Off. of the President, M-25-13, *Temporary Pause of Agency Grant, Loan, & Other Financial Assistance Programs* 2 (Jan. 27, 2025) (OMB Directive) (emphasis in original).[1]

4.  OMB purported to rescind that across-the-board OMB Directive shortly after Plaintiff States filed this lawsuit, and just before a hearing on Plaintiff States' motion for a temporary restraining order in this action. But that rescission was in name only. Defendants continued to implement the Federal Funding Freeze across myriad federal funding programs, as demonstrated through their repeated actions and communications, resulting in substantial disruptions across State agencies—both before and after OMB purported to rescind its Directive. These disruptions only stopped (and even then, only partially) following a temporary restraining order from this Court.

5.  The Federal Funding Freeze, effectuated through EOs, the *Unleashing* Directive, the OMB Directive, and other agency actions implementing them as detailed herein, is unconstitutional and exceeds statutory authority, and those agency actions violate the Administrative Procedure Act (APA).

6.  Defendants' actions to unlawfully withhold funds have caused substantial confusion and resulted in—and will continue to result in—immediate and devastating harm to Plaintiff States and their residents. The Federal Funding Freeze purports to allow federal agencies

---

[1] A copy of the OMB Directive is appended to this Complaint as Exhibit A.

to rescind hundreds of millions of dollars they have committed to pay, and on which Plaintiff States' budgets rely—monies that are necessary for the Plaintiff States to ensure that their residents have access to childcare, quality healthcare, a clean and safe environment, the protections of law enforcement, the benefit of safe roads, access to workforce development, and assistance in the aftermath of natural disasters, among many other key services. Indeed, the confusion caused by the Federal Funding Freeze itself constitutes immediate harm by impeding planning, wasting resources to mitigate potential impacts, and unnecessarily stopping work. Without the timely disbursement of this funding, the Plaintiff States will be unable to provide these essential services for residents, pay public employees, satisfy obligations, and carry on the important business of government.

7.      The Plaintiff States accordingly seek declaratory and injunctive relief to put an end to the Federal Funding Freeze and ensure that access to critical funds by the Plaintiff States and their residents continues, under the applicable statutes, regulations, and terms governing such disbursements.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the APA. 5 U.S.C. § 702.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. The State of Rhode Island is a resident of this district, and a substantial part of the events or omissions giving rise to this Complaint occurred and continues to occur within the District of Rhode Island.

## PARTIES

**A. Plaintiffs**

10. The State of New York is a sovereign state in the United States of America. New York is represented by Attorney General Letitia James, who is the chief law enforcement officer of New York.

11. The State of California is a sovereign state in the United States of America. California is represented by Attorney General Rob Bonta, who is the chief law enforcement officer of California.

12. The State of Illinois is a sovereign state in the United States of America. Illinois is represented by Attorney General Kwame Raoul, who is the chief law enforcement officer of Illinois.

13. The State of Rhode Island is a sovereign state in the United States of America. Rhode Island is represented by Attorney General Peter F. Neronha, who is the chief law enforcement officer of Rhode Island.

14. The State of New Jersey is a sovereign state in the United States of America. New Jersey is represented by Attorney General Matthew Platkin, who is the chief law enforcement officer of New Jersey.

15. The Commonwealth of Massachusetts is a sovereign state in the United States of America. Massachusetts is represented by Attorney General Andrea Joy Campbell, who is the chief law enforcement officer of Massachusetts.

16. The State of Arizona is a sovereign state in the United States of America. Arizona is represented by Attorney General Kris Mayes, who is the chief law enforcement officer of Arizona.

17.     The State of Colorado is a sovereign state in the United States of America. Colorado is represented by Attorney General Phil Weiser, who acts as the chief legal representative of the state.

18.     The State of Connecticut is a sovereign state in the United States of America. Connecticut is represented by Attorney General William Tong, who is the chief law enforcement officer of Connecticut.

19.     The State of Delaware is a sovereign state in the United States of America. Delaware is represented by Attorney General Kathleen Jennings, who is the chief law enforcement officer of Delaware.

20.     The District of Columbia is a municipal corporation organized under the Constitution of the United States. It is empowered to sue and be sued, and it is the local government for the territory constituting the permanent seat of the federal government. The District is represented by and through its chief legal officer, the Attorney General for the District of Columbia, Brian L. Schwalb.

21.     The State of Hawai'i is a sovereign state of the United States of America. Hawai'i is represented by Attorney General Anne Lopez who is the chief law enforcement officer of Hawai'i.

22.     Plaintiff Office of the Governor ex rel. Andy Beshear brings this suit his official capacity as Governor of the Commonwealth of Kentucky. The Kentucky Constitution makes the Governor the Chief Magistrate with the "supreme executive power of the Commonwealth," Ky. Const. § 69, and gives the Governor, and only the Governor, the duty to "take care that the laws be faithfully executed," *id.* § 81. In taking office, Governor Beshear swears an oath that he will support the Constitution of the United States and the Kentucky Constitution. *Id.* § 228. The

7

Governor is the head of his General Cabinet and his Executive Cabinet. Ky. Rev. St. § 11.060; Ky. Rev. St. § 11.065; Ky. Rev. St. § 12.255; Ky. Rev. St. § 12.270.

23.    The State of Maine is a sovereign state of the United States of America. Maine is represented by Attorney General Aaron Frey who is the chief law enforcement officer of Maine.

24.    The State of Maryland is a sovereign state of the United States of America. Maryland is represented by Attorney General Anthony G. Brown who is the chief law enforcement officer of Maryland.

25.    The State of Michigan is a sovereign state of the United States of America. Michigan is represented by Attorney General Dana Nessel who is the chief law enforcement officer of Michigan.

26.    The State of Minnesota is a sovereign state of the United States of America. Minnesota is represented by Attorney General Keith Ellison who is the chief law enforcement officer of Minnesota.

27.    The State of Nevada is a sovereign state of the United States of America. Nevada is represented by Attorney General Aaron Ford who is the chief law enforcement officer of Nevada.

28.    The State of North Carolina is a sovereign state of the United States of America. North Carolina is represented by Attorney General Jeff Jackson who is the chief law enforcement officer of North Carolina.

29.    The State of New Mexico is a sovereign state of the United States of America. New Mexico is represented by Attorney General Raúl Torrez who is the chief law enforcement officer of New Mexico.

30.    The State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield who is the chief law enforcement officer of Oregon.

31.     The State of Vermont is a sovereign state of the United States of America. Vermont is represented by Attorney General Charity Clark who is the chief law enforcement officer of Vermont.

32.     The State of Washington is a sovereign state in the United States of America. Washington is represented by Attorney General Nicholas W. Brown. The Attorney General of Washington is the chief legal adviser to the State and is authorized to act in federal court on behalf of the State on matters of public concern.

33.     The State of Wisconsin is a sovereign state of the United States of America. Wisconsin is represented by Attorney General Josh Kaul who is the chief law enforcement officer of Wisconsin.

34.     The Plaintiff States each receive billions of dollars annually from the federal government for services that range from providing essential healthcare and free or low-cost school meals to low-income children, to supporting law enforcement efforts to combat violence against children, elders and other vulnerable groups, to maintaining highways and roads, to pollution reduction efforts and critical infrastructure improvements. The Federal Funding Freeze jeopardizes all of this funding—funding that Congress designated and appropriated for the Plaintiff States.

**B.  Defendants**

35.     Defendant Donald J. Trump is the President of the United States. He is responsible for the actions and decisions that are being challenged by Plaintiff States in this action and is sued in his official capacity.

36.     Defendant the United States OMB is a cabinet agency within the executive branch of the United States government. OMB is responsible for oversight of federal agencies' performance and the administration of the federal budget. 31 U.S.C. §§ 501–07.

37.     Defendant Russell Vought is the Director of the OMB and that agency's highest ranking official. In that capacity, he oversees OMB and provides direction and leadership to the executive branch on financial management matters by establishing financial management policies and requirements. The OMB Director authored the OMB Directive and other OMB directives detailed herein and is responsible for ensuring that its directions are implemented by all federal agencies that provide relevant funding and support. He is sued in his official capacity. 31 U.S.C. §§ 502, 503.

38.     Defendant the United States Department of the Treasury is a cabinet agency within the executive branch of the United States government. 31 U.S.C. § 301(a). The Department of the Treasury is responsible for ensuring the financial security of the United States.

39.     Defendant Scott Bessent is the Secretary of the Department of the Treasury, responsible for the operations of the Department of the Treasury and management of the finances of the United States. 31 U.S.C. § 301(b). He is sued in his official capacity.

40.     Defendant Patricia Collins is the Treasurer of the United States, responsible for the management of the finances of the United States. 31 U.S.C. § 301(d). She is sued in her official capacity.

41.     Defendant the United States Department of Health and Human Services (HHS) is a cabinet agency within the executive branch of the United States government. 42 U.S.C. § 3501. The National Institutes of Health is an agency of the United States within the HHS. 42 U.S.C. § 281(a).

42.     Defendant Dorothy A. Fink, M.D., is the Acting Secretary of HHS and that agency's highest ranking official. Exec. Off. of the President, *President Trump Announces Acting Cabinet and Cabinet-Level Positions* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-

10

actions/2025/01/designation-of-acting-leaders/ (Acting Designations Directive). She is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 3501. She is sued in her official capacity.

43.     Defendant the United States Department of Education is a cabinet agency within the executive branch of the United States government. 20 U.S.C. § 3411.

44.     Defendant Denise Carter is the Acting Secretary of the United States Department of Education and that agency's highest ranking official. Acting Designations Directive. She is charged with the supervision and management of all decisions and actions of that agency. 20 U.S.C. § 3412. She is sued in her official capacity.

45.     Defendant United States Department of Transportation is a cabinet agency within the executive branch of the United States government. 49 U.S.C. § 102.

46.     Defendant Sean Duffy is the Secretary of the United States Department of Transportation and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 49 U.S.C. § 102. He is sued in his official capacity.

47.     Defendant United States Department of Labor (DOL) is a cabinet agency within the executive branch of the United States government. 29 U.S.C. § 551.

48.     Defendant Vincent Micone is the Acting Secretary of DOL and that agency's highest ranking official. Acting Designations Directive. He is charged with the supervision and management of all decisions and actions of that agency. 29 U.S.C. § 551. He is sued in his official capacity.

49.     Defendant United States Department of Energy (DOE) is a cabinet agency within the executive branch of the United States government. 42 U.S.C. § 7131.

11

50.     Defendant Chris Wright is the Secretary of the DOE and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 7131. He is sued in his official capacity.

51.     Defendant United States Environmental Protection Agency (EPA) is an independent agency within the executive branch of the United States government. 42 U.S.C. § 4321.

52.     Defendant Lee Zeldin is the Administrator of the EPA and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 4321. He is sued in his official capacity.

53.     Defendant United States Department of the Interior is a cabinet agency within the executive branch of the United States government. 43 U.S.C. § 1451. The United States Geological Survey (USGS) is an agency within the United States Department of the Interior. 43 U.S.C. § 31.

54.     Defendant Doug Burgum is the Secretary of the Department of the Interior, and that agency's highest-ranking official. 43 U.S.C. § 1451. He is sued in his official capacity.

55.     Defendant United States Department of Homeland Security is a cabinet agency within the executive branch of the United States government. 6 U.S.C. § 111. The United States Federal Emergency Management Agency (FEMA) is an agency within the Department of Homeland Security. 6 U.S.C. § 313.

56.     Defendant Kristi Noem is the Secretary of the United States Department of Homeland Security and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. 6 U.S.C. § 112. She is sued in her official capacity.

57. Defendant United States Department of Justice is a cabinet agency within the executive branch of the United States government. 28 U.S.C. § 501.

58. Defendant Pamela Bondi is the Attorney General for the United States Department of Justice and that agency's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. 28 U.S.C. § 503. She is sued in her official capacity.

59. Defendant the National Science Foundation is an independent agency within the executive branch of the United States government. 42 U.S.C. § 1861.

60. Defendant Dr. Sethuraman Panchanathan is the Director of the National Science Foundation and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 1864. He is sued in his official capacity.

61. Defendant United States Department of Agriculture (USDA) is a cabinet agency within the executive branch of the United States government. 7 U.S.C. § 2201. The United States Forest Service is an agency within the United States Department of Agriculture. 16 U.S.C. § 553. The Natural Resources Conservation Service is an agency within the United States Department of Agriculture. 7 U.S.C. § 6936.

62. Defendant Gary Washington is the Acting Secretary of USDA and that agency's highest-ranking official. 7 U.S.C. § 2202; Acting Designations Directive. He is sued in his official capacity.

63. Defendant United States Department of Housing and Urban Development (HUD) is a cabinet agency within the executive branch of the United States government. 42 U.S.C. § 3532(a).

64.     Defendant Scott Turner is the Secretary of HUD and that agency's highest-ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 3532(a)–(b). He is sued in his official capacity.

65.     Defendant United States Department of State is a cabinet agency within the executive branch of the United States government. 22 U.S.C. § 2651.

66.     Defendant United States Agency for International Development is an independent agency within the executive branch of the United States government. 22 U.S.C. § 6563(a).

67.     Defendant Marco Rubio is Secretary of the United States Department of State, and that agency's highest-ranking official. He is charged with supervision and management of all decisions and actions of that agency, 22 U.S.C. § 2651, and is sued in his official capacity. Defendant Marco Rubio is also the acting Administrator of the United States Agency for International Development and that agency's highest-ranking official. He is charged with the supervision and management of all decisions and actions of that agency. He is sued in his official capacity.

68.     Defendant United States Department of Defense is a cabinet agency within the executive branch of the United States government. 10 U.S.C. § 111.

69.     Defendant Peter Hegseth is the Secretary of the United States Department of Defense and that agency's highest-ranking civilian official. He is charged with the supervision and management of all decisions and actions of that agency. *Id.* He is sued in his official capacity.

70.     Defendant United States Department of Veterans Affairs is a cabinet agency within the executive branch of the United States government. 38 U.S.C. § 301.

71.     Defendant Doug Collins is the Secretary of the United States Department of Veterans Affairs. He is charged with the supervision and management of all decisions and actions of that agency. *Id.* He is sued in his official capacity.

72.     Defendant United States Department of Commerce is a cabinet agency within the executive branch of the United States government. 40 U.S.C. § 1501. The National Oceanic and Atmospheric Administration is a bureau within the United States Department of Commerce. 42 U.S.C. § 1511(1).

73.     Defendant Jeremy Pelter is Acting Secretary of the United States Department of Commerce, and that agency's highest-ranking official. Acting Designations Directive. He is charged with the supervision and management of all decisions and actions of that agency. 40 U.S.C. § 1501. He is sued in his official capacity.

74.     Defendant National Aeronautics and Space Administration is an independent agency within the United States government. 51 U.S.C. § 20111(a).

75.     Defendant Janet Petro is Acting Administrator of the National Aeronautics and Space Administration and that agency's highest-ranking official. She is charged with the supervision and management of all decisions and actions of that agency. 51 U.S.C. § 20111(a). She is sued in her official capacity.

76.     Defendant Corporation for National and Community Service, operating as AmeriCorps, is an independent agency within the United States government. 42 U.S.C. § 12651.

77.     Defendant Jennifer Bastress Tahmasebi is Interim Head of the Corporation for National and Community Service, operating as AmeriCorps, and that agency's highest-ranking official. She is sued in her official capacity.

15

78.     Defendant United States Social Security Administration is an independent agency within the United States government. 42 U.S.C. § 901.

79.     Defendant Michelle King is the Acting Commissioner of the United States Social Security Administration and that agency's highest-ranking official. Acting Designations Directive. She is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. § 902. She is sued in her official capacity.

80.     Defendant United States Small Business Administration is an independent agency within the United States government. 15 U.S.C. § 633.

81.     Defendant Everett Woodel is the Acting Administrator of United States Small Business Administration and that agency's highest-ranking official. Acting Designations Directive. He is charged with the supervision and management of all decisions and actions of that agency. 15 U.S.C. § 633(a)(1). He is sued in his official capacity.

## LEGAL BACKGROUND

**Constitutional and Statutory Provisions Governing Federal Funding**

82.     The Constitution gives the "power of the purse" to Congress. Specifically, the Constitution grants to Congress the authority to levy taxes, to finance government operations through appropriations, and to set the terms and conditions on the use of those appropriations. U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations Made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time."); art. I, § 8, cl. 1 (Congress has authority "[t]o lay and collect Taxes, Duties, Imposts and Excises; to pay the Debts and provide for the common Defence and general Welfare of the United States . . . .").

83.     The Constitution also vests in Congress all legislative powers and prescribes a specific procedure by which laws may be enacted, which include the requirements of bicameralism and presentment. U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States . . . ."); U.S. Const. art. I, § 7, cls. 2, 3. Bicameralism requires that both Houses of Congress pass an identical bill, and presentment requires that the proposed law be presented to the President for signature or veto. U.S. Const. art. I, § 7, cls. 2, 3.

84.     The President may recommend laws for Congress's consideration, including those related to spending. U.S. Const. art. II, § 3. Upon presentment with a bill, the President may sign it into law, veto it, or take no action on it for a period of ten days, after which time it becomes law. U.S. Const. art. I, § 7, cl. 2. Once a spending law is enacted, the Constitution imposes on the President a duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

**Appropriations Law**

85.     Congress authorizes federal spending not through one single piece of legislation but through many. To finance federal programs and activities, Congress authorizes an agency to incur financial obligations that will result in immediate or future disbursements of federal funds from the United States Treasury. *See* 2 U.S.C. § 622(2)(A)(i).

86.     One such authorization is an appropriation, which creates the legal authority to "make funds available for obligation" and to make "expenditure[s]" for the purposes, during the time periods, and in the amounts specified in the law authorizing the appropriations. *See* 2 U.S.C. § 622(2)(A)(i). An "obligation" is a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the part of the United States that could mature into" such a liability; an "expenditure," also known as a "disbursement," is the actual spending of federal funds. U.S. Gov't Accountability Off., *A Glossary*

17

*of Terms Used in the Federal Budget Process*, GAO-05-734SP, at 45, 48, 70 (Sept. 2005), https://www.gao.gov/assets/gao-05-734sp.pdf ("Budget Glossary").

87.     Congress has enacted multiple overarching framework statutes that affirm congressional control over federal spending. First, the so-called "purpose statute" states that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law," 31 U.S.C. § 1301(a)—that is, funds can only be used for the purposes that Congress has designated.

88.     Second, the Antideficiency Act, prevents agencies from obligating or spending funds absent congressional appropriation. 31 U.S.C. § 1341.

89.     Finally, the Congressional Budget and Impoundment Control Act of 1974, 2 U.S.C. §§ 681 *et seq.* (Impoundment Control Act), permits the Executive Branch to "impound" (or decline to spend) federal funds under a small set of highly circumscribed conditions.

90.     Under the Impoundment Control Act, the President must indicate his intention either to defer (delay) or rescind (cancel) a congressional appropriation by transmitting a "special message" to both Houses of Congress and the Comptroller General, which also must be published in the Federal Register. 2 U.S.C. §§ 681, 683 (rescissions), 684 (deferrals), 685 (transmission of messages; publication). The special message must justify the deferral or rescission, including its amount and likely fiscal consequences. *Id.* §§ 683(a) (rescissions), 684(a) (deferrals).

91.     Under the Impoundment Control Act, deferrals are required to be consistent with "legislative policy." 2 U.S.C. § 684(b). They are permissible only "to provide for contingencies"; "to achieve savings made possible" through "changes in requirements or greater efficiency of operations"; or "as specifically provided by law." 2 U.S.C. § 684(b). Deferrals for any other purpose are prohibited. 2 U.S.C. § 684(b).

92.     In the case of a proposed rescission, once the President transmits the requisite special message, Congress has 45 days to consider the President's proposal and approve it by passing a "rescission bill," which rescinds the agency's authorization to incur financial obligations, in whole or in part. 2 U.S.C. § 682(3). If Congress does not act within 45 days to approve the President's proposal, the funds are not rescinded and "shall" be made available for obligation. 2 U.S.C. § 683(b).

**Laws Governing Federal Funding to States**

93.     Many of the most significant funding streams to the Plaintiff States are so-called categorical or "formula" grants, which Congress has through specific statutory provisions instructed the federal agencies or officials to provide to States on the basis of enumerated statutory factors, such as population or the expenditure of qualifying state funds. *See, e.g.*, *City of Los Angeles v. Barr*, 941 F.3d 931, 935 (9th Cir. 2019). Congress authorized and appropriated other significant funding streams for specific purposes, or using specific statutory commands. For example:

94.     **Medicaid Funding.** Congress has directed the Secretary of Health and Human Services to "pay to each State" a fixed portion of their annual Medicaid expenditures, 42 U.S.C. § 1396b(a)—an amount totaling over $800 billion annually, and amounting to one of the Plaintiff States' most significant sources of federal funds.

95.     **Highway Funding.** Congress established a statutory formula by which the Secretary of Transportation is required to distribute federal highway funds to States, *see* 23 U.S.C. § 104(a)(1), (b), (c), totaling hundreds of millions of dollars annually in the coming two fiscal years, 23 U.S.C. §§ 104(a)–(e). The distribution methodology is mandatory and does not permit the Secretary to deviate from the formula. *Id.* §§ 104(b) ("The Secretary *shall* distribute the amount

19

A322

of the base apportionment . . . ."), 104(c)(1) ("[T]he amount for each State *shall* be determined as follows . . . .") (emphases added).

96. **Special Education Services.** Congress also instructed federal agencies to give States the funds they need to support the health and safety of children in their jurisdictions. The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, for instance, states that "[t]he Secretary [of Education] shall make grants to States . . . to assist them to provide special education and related services to children with disabilities" according to a statutory formula, *id.* § 1411(a)(1); *see id.* § 1411(d) (setting amounts of grants based on prior funding levels and population data).

97. **Mental Health and Substance Abuse Treatment.** In another example, Congress has directed the Secretary of HHS to provide nondiscretionary block grants to states for mental health and substance abuse treatment and appropriates over $2 billion annually to fund those grants. The Secretary "shall make" or "shall determine the amount of" grants according to fixed statutory formulas, 42 U.S.C. §§ 300x(a), 300x-7(a), 300x-21(a), 300x-33(a), and lacks the discretion to unilaterally withhold funds absent compliance with statutory procedures that afford the states notice and an opportunity to be heard, *see, e.g.*, *id.* §§ 300x-26(b)(1), 300x-55(e).

98. **Power and Heating for Low-Income Residents.** Congress also established the Low-Income Home Energy Assistance Program (LIHEAP), likewise administered by the HHS Secretary, to support the Plaintiff States in their efforts to ensure low-income residents are able to obtain electricity and heat in the winter. 42 U.S.C. § 8621(a). Congress has appropriated billions of dollars for LIHEAP, which established a set formula by which the Secretary must provide funding to the states, *id.* §§ 8623(a), 8626(a)(1); and sharply limited the Secretary's discretion to

withhold those funds (again, by requiring notice to the state and an opportunity for a hearing), *id.* § 8627.

99.     **The IIJA and IRA.** More recently, Congress enacted two federal statutes that authorize and direct federal agencies to make significant investments in, among other things, energy and infrastructure projects across the Nation—the IIJA, Pub. L. No. 117-58, 135 Stat. 429 (2021), and the IRA, Pub. L. No. 117-169, 136 Stat. 1818 (2022). Collectively, the IIJA and IRA directed over $2 trillion in spending on projects ranging from highways, to broadband access, to pollution reduction, to increasing the reliability of the electric grid.

100.     For example, section 50210 of the IIJA appropriated $14.65 billion in grants for States' Clean Water revolving funds for 2022 to 2026. IIJA § 50210, 135 Stat. at 1169. These funds were originally created through a separate statute, the Federal Clean Water Act, which directs that EPA "shall make capitalization grants to each State" to establish and support those States' water pollution control revolving funds for wastewater and sewage treatment, stormwater management and treatment, and water conservation and recycling projects using formula grants. 33 U.S.C. §§ 1381(a), (b); 1383(c); 1384(a), (c)(2) (mandating reallocation of any unallotted funds to State programs). Several of the Plaintiff States received Clean Water revolving fund awards under the IIJA appropriation that are subject to final, binding grant agreements.

101.     The IIJA also reauthorized and appropriated an additional $14.65 billion from 2022 to 2026 for Drinking Water State revolving funds. IIJA § 50102, 135 Stat. at 1136. Congress created these revolving funds in the Federal Safe Drinking Water Act, which provides that EPA "shall offer to enter into agreements with eligible States to make capitalization grants" via formula grants. 42 U.S.C. § 300j-12(a)(1)(A), (D); *see also id.* § 300j-12(a)(1)(E) (mandating reallocation of any unallotted funds to state programs). These funds provide loans and other financial assistance

21

to public water systems, including for the replacement or rehabilitation of aging treatment, storage, and distribution facilities. 42 U.S.C. § 300j-12(a)(2)(B). Multiple Plaintiff States have received Safe Drinking Water revolving fund awards obligated through final, binding grant agreements.

102.    As another example, the IRA also appropriated $117.5 million to EPA to award grants under an existing air monitoring program established in the 1963 Clean Air Act, 42 U.S.C. §§ 7401(a)(4), 7403(a)–(c), 7405. EPA "shall," Congress instructed, "provide financial assistance to air pollution control agencies" in conducting their activities, *id.* § 7403(a)(2), including the mandatory establishment of a national air monitoring network and research program, *id.* § 7403(c). EPA has awarded such grants to multiple Plaintiff States that are obligated under final, binding grant agreements with EPA.

103.    The IRA also created the Climate Pollution Reduction Grant (CPRG) program, in which Congress appropriated $5 billion to EPA and directed that EPA "shall competitively award grants to eligible entities to implement" greenhouse gas pollution reduction plans and "shall make funds available" to grantees. 42 U.S.C. §§ 7437(a)(1), (a)(2), (b), (c)(1), (c)(3). EPA awarded grants to multiple Plaintiff States which are obligated under final, binding grant agreements with EPA.

104.    The IRA also appropriated to EPA $7 billion to make grants to states and other eligible recipients "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies," including rooftop solar panels and storage systems. 42 U.S.C. § 7434(a)(1). EPA awarded these $7 billion through the "Solar for All" program to 60 grantees, including many Plaintiff States, all of which are also obligated under final, binding agreements with EPA.

105.    Another section of the IRA, entitled the High-Efficiency Electric Home Rebate Act,

provides that the Secretary of Energy "shall award grants to State energy offices . . . to establish a

high-efficiency electric home rebate program under which rebates shall be provided" for heat

pump heating and cooling and other electrification projects for low- and moderate-income

households and appropriated $4.5 billion through 2031 for a home rebate program. 42 U.S.C.

§ 18795a(a)(1), (c), (d)(1), (d)(6); § 18795a(a)(2)(A)(i). DOE awarded several Plaintiff States

grants under this formula grant program which are subject to final, binding grant agreements.

## FACTUAL ALLEGATIONS

### Executive Orders

106.    Between January 20 and 28, 2025, the President issued a series of executive orders

directing federal agencies to review funding recipients in connection with widespread policy

changes. Two of the EOs also direct agencies to withhold funds pending that review, in certain

circumstances.

107.    **Unleashing EO.** On January 20, 2025, the President issued the *Unleashing* EO.

Exec. Order 14154, 90 Fed. Reg. 8353 (Jan. 29, 2025). The *Unleashing* EO announces a

categorical, immediate, and indefinite pause on federal funds under the IIJA and IRA. *See id.*

Section 7(a) of the *Unleashing* EO, entitled "Terminating the Green New Deal," orders all federal

agencies to "immediately pause the disbursement of funds appropriated through the [IRA] or the

[IIJA]." *Id.* at 8357.

108.    Section 7(a) of the *Unleashing* EO further directs all agencies to "review their

processes, policies, and programs for issuing grants, loans, contracts, or any other financial

disbursements of such appropriated funds for consistency with the law and policy outlined in

section 2 of this order," *id.*, which in turn articulates the President's energy policy priorities. Those

Case: 25-1385 Document: 1-2 Page: 261 Filed: 02/18/2025 Entry ID: 6724656
#: 7227

priorities include encouraging fossil fuel and minerals exploration and production, eliminating "the electric vehicle (EV) mandate," and protecting the "freedom to choose from a variety of goods and appliances." *Id.* at 8353 (internal quotations omitted). The *Unleashing* EO orders agency heads to submit a report detailing this review and resulting recommendations to OMB and the National Economic Council ("NEC") within 90 days of the order and directs that: "[N]o funds [appropriated under the IRA or IIJA] shall be disbursed by a given agency until the Director of OMB and Assistant to the President for Economic Policy have determined that such disbursements are consistent with any review recommendations they have chosen to adopt." *Id.* at 8357.

109.    **Invasion EO.** On January 20, 2025, the President issued an executive order entitled "Protecting the American People Against Invasion" (*Invasion* EO). Exec. Order 14159, 90 Fed. Reg. 8443 (Jan. 29, 2025). This EO asserts that an "unprecedented flood of illegal immigration" over the last four years resulted in the entry of people who "present significant threats to national security and public safety," "are engaged in hostile activities, including espionage, economic espionage, and preparations for terror-related activities," or have "abused the generosity of the American people." *Id.* at 8443. To achieve a policy of "total and efficient enforcement" of the nation's immigration laws, *id.*, the *Invasion* EO calls for a "Funding Review" in which the Attorney General and Secretary of Homeland Security are to review "all contracts, grants or other agreements providing federal funding to non-governmental organizations" that support or provide services, "directly or indirectly," to "removable or illegal aliens" and "[p]ause distribution of all further funds pursuant to such agreements pending the results of" this review. *Id.* at 8447. The *Invasion* EO also directs the Attorney General and the Secretary of Homeland Security to ensure that "so-called 'sanctuary' jurisdictions" do not receive federal funds. *Id.* at 8446.

A327

110. **DEI EO.** On January 20, 2025, the President issued an executive order, entitled "Ending Radical and Wasteful Government DEI Programs and Preferencing" (*DEI* EO). Exec. Order 14151, 90 Fed. Reg. 8339 (Jan. 29, 2025). This EO declares an intention to "terminat[e] . . . all . . . 'diversity, equity, inclusion, and accessibility' (DEIA) . . . programs." *Id.* at 8339. In addition, the *DEI* EO orders federal agencies to provide the OMB Director with a list of all federal grantees who received federal funding "to provide or advance DEI, DEIA, or 'environmental justice'" programs since January 20, 2021. *Id.* at 8339–40.

111. **Gender EO.** On January 20, 2025, the President issued an executive order, entitled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (*Gender* EO). Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025). This EO defines federal policy to recognize "two sexes, male and female" determined only by "an individual's immutable biological classification . . . ." *Id.* The *Gender* EO requires that federal agencies "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" and "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." *Id.* at 8616.

112. **Gender-Affirming Care EO.** On January 28, 2025, the President issued an executive order, entitled "Protecting Children from Chemical and Surgical Mutilation" (*Gender-Affirming Care* EO). Exec. Order 14187, 90 Fed. Reg. 8771 (Feb. 3, 2025). This EO asserts as the "policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another." *Id.* Section 4 of the *Gender-Affirming Care* EO directs agencies that provide research or education grants to medical institutions to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Id.* at 8772.

25

A328

113. **Foreign Aid EO.** On January 20, 2025, the President also issued an executive order entitled "Reevaluating and Realigning United States Foreign Aid" (*Foreign Aid* EO). Exec. Order 14169, 90 Fed. Reg. 8619 (Jan. 30, 2025). This EO asserts that "[t]he United States foreign aid industry and bureaucracy are not aligned with American interests and in many cases antithetical to American values," and announces that it is "the policy of United States that no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President of the United States." The EO orders a 90-day pause in all U.S. foreign development assistance "for assessment of programmatic efficiencies and consistency with United States foreign policy," further specifying that "[a]ll department and agency heads with responsibility for United States foreign development assistance programs shall immediately pause new obligations and disbursements of development assistance funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors," pending review of those programs. *Id.* The *Foreign Aid* EO further instructs department and agency heads, the Secretary of State, and the Director of OMB to participate in a review of the programs, which is to culminate in a decision as to whether each program should be continued, modified, or ended. *Id.*

114. **Other EOs.** The President issued two other Executive Orders between January 20 and 28, 2025, that declare changes in policies that relate to federal funding decisions but did not by themselves pause funding or expressly refer to federal grants. *See* "Putting America First in International Environmental Agreements," Exec. Order 14162, 90 Fed. Reg. 8455 (Jan. 30, 2025); "Enforcing the Hyde Amendment," Exec. Order 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025).

**Initial Funding Disruptions Following the Executive Orders**

115. Following these Executive Orders, major funding disruptions ensued, as the following non-exhaustive examples illustrate.

26

116.    For example, on January 20—the same day as the *Unleashing* EO—DOE issued a memorandum ordering that, "effective immediately and until further notice," "[a]ll funding and financial assistance . . . shall not be announced, approved, finalized, modified, or provided" until reviewed "to ensure compliance with Congressional authorization and Administration policy." *See* Memorandum from Ingrid C. Kolb, Acting Secretary, Agency-wide Review of Program and Administrative Activities (Jan. 20, 2025).[2]  On January 23, DOE informed the Colorado Energy Office that it was pausing further communication while it evaluated information from the new administration.

117.    That same day, USDA advised grantees that payments would continue to be processed under existing awards, "provided that they are not funded using IIJA and IRA funding sources."

118.    On January 21, 2025, OMB Acting Director Matthew J. Vaeth and Kevin Hassett, Assistant to the President for Economic Policy and Director of the NEC, issued the *Unleashing* Directive, titled "Guidance Regarding Section 7 of the Executive Order *Unleashing American Energy*." OMB Mem. M-25-11.[3] This Directive reiterates the terms in *Unleashing* EO itself, directing that "section 7 of the [*Unleashing* EO] requires agencies to immediately pause disbursement of funds appropriated under the [IRA] or the [IIJA]." *Id.* It goes on to specify that the "pause" applies to "funds supporting the 'Green New Deal,'" meaning, "any appropriations for objectives that contravene the policies established in section 2" and that agencies may disburse funds only after consulting with OMB. *Id.*

---

[2] A copy of this DOE memorandum is appended to this Complaint as Exhibit B.
[3] A copy of the *Unleashing* Directive is appended to this Complaint as Exhibit C.

119.    On January 24, the Federal Highway Administration cancelled contract negotiations with the Massachusetts Department of Transportation for an awarded Low-Carbon Transportation Materials grant, citing a funding freeze; as recently as February 5, the grant remained on hold.

120.    On January 26, USAID issued stop work orders that appeared to unilaterally suspend grant awards, citing the Executive Order titled, "Reevaluating and Realigning U.S. Foreign Aid." Among the recipients who received this order was the State of Washington Water Research Center, which is administered through the Washington State University Office of Research. Other suspensions followed, affecting many research universities in Plaintiff States. Subsequently, a Declaration filed by the Deputy Assistant Commissioner for Federal Disbursement Services at the Bureau of Fiscal Services in the U.S. Department of Treasury revealed that, on January 26, Treasury leadership directed the Bureau to "identify" and "flag" "all USAID payment files" within the Bureau's payment system before they could be paid, apparently because they were "potentially implicated by the President's foreign aid Executive Order." By January 27, Treasury leadership "informed [the Bureau] that State Department had decided to intercept the USAID files prior to the initial submission."

121.    On the morning of January 27, Rhode Island's Office of Energy Resources received notification that a drawdown of $26,510.21 from Rhode Island's Solar for All grant had been rejected.

122.    And in the late afternoon of January 27, the acting Chief Financial Officer of the EPA issued a memorandum, entitled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause." *See* Mem. from Gregg Treml, Acting Chief Financial Officer, to Deputy Administrators, re: Inflation Reduction Act and Infrastructure Investment and Jobs

28

Funding Action Pause (Jan. 27, 2025) (Jan. 27 EPA Memo).[4] Stating that it is "based on instruction from OMB," the Jan. 27 EPA Memo explains: (i) "[i]n accordance with the [*Unleashing* EO], unobligated funds (including unobligated commitments) appropriated by" the IIJA and IRA "are paused"; (ii) "all disbursements for unliquidated obligations funded by any line of accounting including funds appropriated by" the IIJA and IRA likewise "are paused"; and (iii) "[a]ll related actions, including new contract, grant, rebate, and interagency actions, to include drawdowns, for IIJA and IRA are paused." *Id.*

**Issuance and Purported Rescission of the OMB Directive**

123.    On January 27, OMB Acting Director Vaeth issued the OMB Directive (M-25-13). Ex. A. The OMB Directive targeted a broader swath of federal fund disbursements for a near-immediate freeze. OMB Directive. This directive stated that all federal agencies "must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders." *Id.* at 2. While this analysis is ongoing, "[i]n the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." *Id.* (emphasis original). The OMB Directive ordered that the temporary pause take effect the following day, on January 28, 2025, at 5:00 PM. *Id.*

124.    The OMB Directive appeared to suspend all federal financial assistance, with few exceptions—by its terms, it was not limited to funds that may be related to "foreign aid,

---

[4] A copy of the Jan. 27 EPA Memo is appended to this Complaint as Exhibit D.

29

nongovernmental organizations, DEI, woke gender ideology, and the green new deal," but rather applied to "all activities related to obligation or disbursement of all Federal financial assistance." *Id.* at 2.[5] And it expressly stated that its list of "other relevant agency activities" that may be implicated by the EOs was merely illustrative and not exhaustive. *Id.*

125.    The blanket freeze required by the OMB Directive was also unambiguously indefinite. The OMB Directive stated that agencies must "submit to OMB detailed information on any programs, projects or activities subject to this pause" by February 10, 2025. *Id.* But it did not specify when OMB had to or planned to complete its review of the agencies' submissions or release funding pursuant to its findings. *Id.*

126.    Following the transmittal of the OMB Directive to federal agencies, OMB circulated a document labeled "Instructions for Federal Financial Assistance Program Analysis in Support of M-25-13."[6] This document contains a chart listing federal funding lines, with columns that ask whether the funding line "promote[s] gender ideology," "provide[s] Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens," or "relate[s] to 'environmental justice' programs or 'equity-related' grants," among other inquiries. *Id.* The OMB Spreadsheet also asks whether the funding, "[i]f not covered in the preceding columns," supports "any activities that must not be supported based on executive orders issued on or after January 20, 2025 (including executive orders released following the dissemination of this spreadsheet)." *Id.*

---

[5] The OMB Directive relied upon a potentially broad definition of affected federal funds. *See id.* at 1 n.1 ("For the purposes of this Memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs (1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or subrecipients *of any type* except for assistance received directly by individuals." (emphasis added)).

[6] A copy of this document is appended to this Complaint as Exhibit E.

127.    On January 28, the U.S. District Court for the District of Columbia ordered an administrative stay of the OMB Directive pending a hearing on a motion for a temporary restraining order. Order of Administrative Stay (ECF No. 13), *Nat'l Council of Nonprofits, et al. v. Trump, et al.*, No. 1:25-cv-00239-LLA (D.D.C. filed Jan. 28, 2025). At approximately 1:00 PM Eastern Time on January 29, OMB issued M-25-14, a memorandum purportedly rescinding the OMB Directive in two sentences: "OMB Memorandum M-25-13 is rescinded. If you have questions about implementing the President's Executive Orders, please contact your agency General Counsel."[7]

128.    Shortly after OMB purported to rescind the OMB Directive, however, White House Press Secretary Karoline Leavitt stated that the Federal Funding Freeze remained in place, notwithstanding the rescission of the OMB Memorandum. Leavitt announced on social media: "This is NOT a rescission of the federal funding freeze. It is simply a rescission of the OMB memo. Why? To end any confusion created by the court's injunction. The President's EO's on federal funding remain in full force and effect, and will be rigorously implemented."

129.    At a press conference that same day, Leavitt stated: "So, what does this pause mean? It means no more funding for illegal DEI programs. It means no more funding for the Green New Scam that has . . . cost American taxpayers tens of billions of dollars. It means no more funding for transgenderism and wokeness across our federal bureaucracy and agencies. No more funding for Green New Deal social engineering policies."

**Continued Implementation of the Federal Funding Freeze**

130.    Following the issuance of the OMB Directive but even before it was slated to go into effect, many Plaintiff States were unable to draw down vast swaths of appropriated and

---

[7] A copy of OMB Memorandum M-25-14 is appended to this Complaint as Exhibit F.

awarded funding using federal funding portals, like the Payment Management Services (PMS) portal used by HHS and DOL, and the EPA's payment portal, the Automatic Standard Application for Payments (ASAP).

131.     For example, Oregon was unable to access its Medicaid federal funding system on Tuesday, January 28, even before the OMB Directive was set to take effect at 5:00 pm, causing the Oregon Health Authority to lose a day of work.

132.     As another example, New Mexico's Early Childhood Education and Care Department found PMS not operational at approximately 8:00 am on January 28, 2025.

133.     And from January 27 to January 28, New York's Office of the State Comptroller was not able to draw any of over $70 million in obligated funds needed across state agencies.

134.     Similarly, after Arizona's Department of Homeland Security (AZDHS) submitted draw requests to FEMA's Payment and Reporting System (PARS) on January 28, 2025, for "critical homeland security needs," the Deputy Director of AZDHS contacted FEMA to inquire about the OMB Directive and received an email indicating that, "FEMA is actively reviewing President Trump's memo directing agencies to pause grants and other types of federal assistance issued Monday, January 27. We are working quickly to understand the exact implications across the full range of FEMA equities. We will provide additional guidance to stakeholders as soon as possible."

135.     On January 28, 2025, Oregon's Department of Emergency Management, which depends heavily on federal emergency management grants for disaster preparedness, response, mitigation, and recovery, was unable to withdraw federal funds for payroll because the federal payment system in use was offline. As a result, the Oregon Department of Emergency Management was unable to cover payroll with federal funds that day.

136. On January 28, 2025, California's Employment Development Department (EDD) requested $1.8 million in Workforce Innovation and Opportunity Act (WIOA) funds, which EDD distributes to 45 regional Local Workforce Development Areas to support job search assistance, career services, and training opportunities. EDD had to stop sub-granting WIOA funds to the Local Workforce Development Areas for these programs as its payment request remained pending throughout the day.

137. On January 28, 2025, Maryland's Department of Education attempted to submit a $31 million reimbursement request for Child Care Scholarship funds, which help low-income families pay for high-quality child care and early education programs. The PMS portal, however, was not initially accessible. Instead, the webpage included a banner stating: "Due to Executive Orders regarding potentially unallowable grant payments, PMS is taking additional measures to process payments. Reviews of applicable programs and payments will result in delays and/or rejections of payments."

138. Even after the purported rescission of the OMB Directive on January 28, the Federal Funding Freeze has continued to manifest through chaotic actions, including frozen grant funding, by federal agency defendants (Agency Defendants), resulting in widespread and significant disruptions of funding and related activities across the Plaintiff States' agencies—in many instances continuing to the present—and interfering with the Plaintiff States' ability to plan for provision of and provide essential services to their residents.

139. For example, on both January 27 and 29, 2025, Massachusetts's Department of Environmental Protection attempted to draw down grants funded by IIJA and IRA, but no reimbursements were issued.

140.    As another example, Illinois's available funds in EPA's payment portal, ASAP, decreased from $1 billion on January 28 to $52 million on January 29, with entire accounts, like CPRG, deleted and still inaccessible as of February 5.

141.    And as another example, Rhode Island has received a Specialty Crop Block Grant to improve competitiveness of specialty crops from the USDA for each of the past four years, but USDA froze those funds on January 30 and as of February 12 had still not released them, pending "further guidance."

142.    Salem State University in Massachusetts attempted to draw down grant funding from the National Science Foundation on January 28 and received a notice via email on the same day that while that agency "perform[ed] a comprehensive review of the award portfolio to ensure compliance with recent Executive Orders, pursuant to" the OMB Directive, "all payments under active awards will be paused."

143.    Beginning on January 27, various Plaintiff States found that grants they had been awarded pursuant to the IRA's Solar for All program were suspended in the federal payment portal. Solar for All grants remained suspended for other states on January 30.

144.    Then, following this Court's January 31 restraining order, Temporary Restraining Order, *New York v. Trump* (1:25-cv-00039-JJM-PAS) (Jan. 31, 2025), on or about February 4, EPA issued an "Update" on the IIJA and IRA funding pause, explaining that, "pursuant to the recent Court directive," the agency would now "enable the obligation of financial assistance" including some, but not all, "programs within the [IIJA] and [IRA]," to be specified on a forthcoming "detailed list." Mem. from Gregg Treml, Acting Chief Financial Officer, to Deputy Administrators, re: Update on Inflation Reduction Act and Infrastructure Investment and Jobs Funding Action

Pause (Feb. 4, 2025) (Feb. 4 EPA Memo).[8] But the referenced list included only twenty-eight IIJA grant programs—many of them small grant programs targeted at specific localities—and only one IRA program. U.S. Env't Prot. Agency, List of EPA IIJA and IRA Grants Referenced in Feb. 4 EPA Memo.[9]

145. But only two days later, on February 6, EPA Acting Deputy Administrator Chad McIntosh tried a different approach to freeze funding, ordering a review of all "issued grants" including "payments on all grant programs and awards where Agency personnel suspect that the grant is unlawful *or* contrary to Agency policy priorities," or "fraudulent, abusive, duplicative, *or implemented in a way that failed to safeguard Agency dollars*." Mem. from Chad McIntosh, Acting Deputy Administrator, "Review of Financial Assistance Programs" (Feb. 6, 2025) (Feb. 6 EPA Memo) (emphasis added).[10] The Feb. 6 EPA Memo purported to instruct that disbursements paused by the OMB Directive and any EOs it implemented "shall continue to be immediately released." *Id.* at 2.

146. Despite that caveat, the very next day, EPA's Office of Budget and Planning announced by email to EPA staff that, "pending a review for compliance with applicable administrative rules and policies," twenty-eight IIJA and IRA programs—including CPRG and air monitoring grants—"are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions." Email from Budget & Planning re: Additional Information on IIJA and IRA – program review pause (Feb. 7, 2025).

---

[8] A copy of the Feb. 4 EPA Memo is appended to this Complaint as Exhibit G.
[9] A copy of this document is appended to this Complaint as Exhibit H.
[10] A copy of the Feb. 6 EPA Memo is appended to this Complaint as Exhibit I.

147.    On February 4, 2025, the California State University received a phone call from the U.S. Economic Development Administration (a bureau within Defendant the Department of Commerce), in which it was informed that the Administration would receive reimbursement requests but had been directed not to process and pay reimbursements for a program relating to the Monterey Bay Small Business Assistance and Resilience Program.

148.    Further, Los Angeles County attempted to draw down $25.7 million in federal funds from the Payment Management System on January 28, as reimbursements for crucial services related to HIV programs, which was initially denied. Upon resubmission, the request was designated to be under "pending review," and the requested funds had not been reflected in Los Angeles County's accounts as of February 5.

149.    On February 10 and 11, 2025, accounts for many programs continued to be suspended or were re-suspended, including, just to name a few examples: EPA Clean Air Act air sensors and air monitoring grants to the Massachusetts Department of Environmental Protection, the Rhode Island Department of Environmental Management, the Michigan Department of Environment, Great Lakes, and Energy, and the Kentucky Energy and Environment Cabinet; wildlife prevention and response funding from USDA, FEMA, the U.S. Forest Service, and the USGS, to the Washington Department of Natural Resources; Home Efficiency Rebates and Home Electrification and Appliance Rebates Program grants from DOE to the New York State Energy Research and Development Authority and the Kentucky Energy and Environment Cabinet; and DOI Abandoned Mine Land Reclamation Fund Grants to the Maryland Department of the Environment and the Kentucky Energy and Environment Cabinet. As of February 11, the Kentucky Department for Local Government, which is attached to the Office of the Governor, still was unable to access $733,256.19 in appropriated and obligated funds from the U.S. Department of

Commerce for the Economic Development Administration Partnership Planning Grant. And though Solar for All grant accounts were reopened in the payment portal for many Plaintiff States by February 7, they were suspended once again for many Plaintiff States on the afternoon of February 10.

**Harms to the Plaintiff States from the Federal Funding Freeze**

150.    The Federal Funding Freeze has already harmed and will continue to harm the Plaintiff States and their residents in myriad ways. While a full account of the impacts of the countless interrupted federal grant programs (surpassing $1 trillion in fiscal year (FY) 2024[11]) that benefit the Plaintiff States is impossible here, the following examples demonstrate the Federal Funding Freeze's alarming toll.

151.    The impact of the Federal Funding Freeze on the State of Washington is one example. For the most recent fiscal year—FY2024, running from July 1, 2023, to June 30, 2024— Washington received over $27 billion in federal funding. This comprised approximately 32% of Washington's total budget for FY2024.

152.    More than $14 billion of these funds are threatened by the Federal Funding Freeze, including such critically important programs as: highway planning and construction funds (over $952 million in FY2024 state expenditures); Child Care and Development Block Grants (over $393 million in FY2024 state expenditures); National School Lunch Program (over $361 million in FY2024 state expenditures); Title I education grants ($310 million in FY2024 state expenditures); Special Education grants (over $275 million in FY2024 state expenditures); child

---

[11] Rebecca Thiess, Kate Watkins & Justin Theal, "Record Federal Grants to States Keep Federal Share of State Budgets High," Pew Charitable Trust (Sept. 10, 2024), https://www.pewtrusts.org/en/research-and-analysis/articles/2024/09/10/record-federal-grants-to-states-keep-federal-share-of-state-budgets-high.

support enforcement (over $134 million in FY2024 state expenditures); allergy and infectious disease research (over $121 million in FY2024 state expenditures); LIHEAP (over $96 million in FY2024 state expenditures); substance abuse treatment block grants (over $65 million in FY2024 state expenditures); veterans nursing care funding (over $59 million in FY2024 state expenditures); and hundreds or thousands of other programs, covering everything from immunizations to clean water to adoption assistance to transit to childcare to global AIDS prevention to National Guard operations to crime victim assistance to immigration and refugee assistance to wildlife restoration, and on and on.

153.    Washington simply does not have funds to cover all of these necessary programs that are currently funded through federal dollars. Nor does it have the funds to backfill federal dollars while continuing to pay for the many state-funded programs on which its residents rely. Thus, pausing or terminating federal funds necessarily entails cuts—likely drastic cuts—to key services provided by state agencies on which Washington residents depend. This threat to federal funding comes at a precarious time for Washington. Due to factors like inflation, higher projected caseloads in several safety net programs, and revenue declines, Washington is facing a forecasted budget deficit of over $12 billion over the next four years.

154.    Washington's Legislature is currently in session trying to address this budget shortfall and pass a budget for the FY2025–2027 biennium. Many Washington state agencies are facing budget cuts of between three and six percent to account for the lack of funding.

155.    As in Washington, the Federal Funding Freeze interferes with critical programs in all of the Plaintiff States and makes it nearly impossible for state agencies intelligently to prioritize budgeting needs.

A341

156.     For example, state health systems rely on federal grant programs to provide essential health services to millions of residents. State Departments of Health alone receive billions in federal grant funding. HHS grants support hospital facilities, community health centers, lab testing, addiction treatment centers, services for people living with disabilities, and facilities for aging people. The New York Department of Health alone has nearly $40 billion in federal funding obligated for FY2025. For California's fiscal year ending June 30, 2025, the state's federal Medicaid funding is $107.5 billion, and California's Department of Health Care Services receives more than $125 million in other federal funds annually for other health care services. Hundreds of millions of dollars from these federal funds support the facilities that provide community healthcare, including in rural and other under-resourced areas. The Federal Funding Freeze impedes the Plaintiff States from providing critical healthcare—from lifesaving measures to Medicaid and basic health care services for low-income, elderly, pregnant, and disabled individuals. The Federal Funding Freeze thus harms the health and safety of the Plaintiff States' residents and requires the Plaintiff States to incur significant expenses to attempt to cover the most pressing gaps in healthcare coverage.

157.     Plaintiff States also rely on federal funds for disaster relief and management. For example, California is relying heavily on FEMA's assistance to recover from recent devasting fires. Funds authorized by President Biden's declaration of a major disaster pursuant to the Stafford Act are critical to helping the state recover from a disaster whose economic losses are estimated at upwards of $150 billion. Similarly, North Carolina is still reeling from the catastrophic damages sustained during Hurricane Helene in September 2024, and needs federal assistance to rebuild homes, businesses, roads, bridges, and other critical infrastructure. Indeed, both President Biden and President Trump authorized expenditures of FEMA funding to assist North Carolina's

39

recovery. Kentucky currently has 14 presidentially declared disasters for which it is relying on FEMA for assistance and reimbursement. The Federal Funding Freeze impedes these critical disbursements and will continue to harm disaster relief, management, and recovery.

158.    Federal infrastructure funding often provides emergency augmentation of state budgeted and planned funds when disaster strikes. For example, Rhode Island experienced the unexpected failure of a bridge span carrying a major interstate highway, the Washington Bridge, that has a daily traffic volume of 90,000 vehicles and has been closed since December 2023. Rhode Island's Congressional Delegation wrote to Acting Director Vaeth on January 27, 2025, inquiring after the $220 million in competitive grant funding allocated for the bridge and the balance of the $600 million in competitive grant funding for other critical infrastructure, including bridges along I-95, currently awarded to Rhode Island. As of February 12, there has been no response to clarify that this money would not be impacted.

159.    The Plaintiff States' ability to provide for public safety and law enforcement are also hindered by the Federal Funding Freeze. In FY2024, the Federal Edward Byrne JAG grant program gave over $180 million in funding to the states to fund essential law enforcement and criminal justice programs, including programs that prevent and prosecute hate crimes, address the opioid crisis, and support mental health treatment services. Other grant programs administered by the U.S. Department of Justice fund initiatives to combat violence against women and internet crimes against children, support community policing, and provide services to victims of crimes. The High Intensity Drug Trafficking Areas program provides assistance to federal, state, local, and Tribal law enforcement agencies operating in areas determined to be critical drug-trafficking regions of the United States. The Federal Funding Freeze significantly impedes state and local government efforts to address violent crime and the proliferation of illegal drugs.

160.    State education systems also suffer due to the Federal Funding Freeze. The Department of Education has $2.1 billion obligated for FY2025 public education in New York alone. Included in that funding are formula grants for local education agencies to improve teaching and learning in high-poverty schools for children failing, or most at-risk of failing, to meet academic standards. Because this is a formula grant, the allocation is to be made automatically based on a statutory formula. Such grants serve millions of children nationwide.

161.    School districts nationwide receive billions of dollars in special education funding from the federal government to support critical services for millions of students with disabilities nationwide. For the school year 2024–25, for example, California is receiving $1.5 billion. Because this is also a formula grant, the allocation is to be made automatically. Without these funds, there would be disruption to educational services provided to students with disabilities, loss of related services (such as physical therapy, speech therapy, occupational therapy, and services for deaf or blind students), and delayed or reduced payments to staff and potential layoffs.

162.    The Plaintiff States also rely on federal funding to provide free and low-cost meals to low-income children, professional development for teachers, academic interventions such as tutoring, after-school programs and early childhood education, and anti-bullying programming, among many other critical services. California draws approximately $40 to $50 million in federal funds per week for school nutrition services. The Federal Funding Freeze thus has catastrophic impacts on student learning in the Plaintiff States.

163.    State institutions of higher education also receive billions of dollars in grants from Defendants—including the Department of Health and Human Services, the Department of Education, the National Science Foundation, the National Aeronautics and Space Administration, and USAID—not including direct student aid, that fund essential research in every conceivable

41

area of study. For instance, the University of California has multiple active USAID grants totaling millions of dollars. The Federal Funding Freeze chills research and undermines the Plaintiff States' ability to provide higher education, especially to students who cannot independently afford the costs of private colleges.

164. The Plaintiff States' job training and workforce development programs also suffer due to the Federal Funding Freeze. For example, the New Mexico Department of Workforce Solutions receives approximately 89% of its funding from the federal government, including funding for all personnel and operations for the State's Unemployment Insurance program. Without this funding, New Mexico can neither provide the benefits to newly unemployed workers to which they are entitled, nor provide job training to returning veterans who lack critical workplace skills.

165. The Federal Funding Freeze hampers the Plaintiff States' ability to provide services to older Americans and adults with disabilities. Federal funding currently supports services that help older Americans remaining in their homes and communities, rather than in nursing homes and similar facilities. The Federal Funding Freeze jeopardizes these services, including meal delivery and transportation to medical appointments, for the Plaintiff States' residents.

166. The Federal Funding Freeze also would prevent the Plaintiff States from completing much needed transportation infrastructure projects, including repairs and upgrades. For example, the Maryland Transportation Authority is awaiting $60 million in promised reimbursement in the coming months for the costs of removal and salvage of debris from the collapsed Francis Scott Key Bridge. Plaintiff States may be unable to complete necessary repair projects without federal assistance, leaving old infrastructure in place and increasing the risk of catastrophic events.

42

167.     The Federal Funding Freeze, including the *Unleashing* EO and agency actions implementing it, impede the Plaintiff States' ability to provide essential services to protect the health, safety, and welfare of their residents through critical IIJA- and IRA-funded programs.

168.     For example, IRA funding provides significant resources to the Plaintiff States to remediate contamination and pollution, including the cleanup of sites contaminated with hazardous waste and plugging orphaned oil and gas wells. The Federal Funding Freeze also jeopardizes initiatives to develop clean energy resources and realize associated reliability, bill savings, job creation, and other benefits for the Plaintiff States and their residents. It similarly impedes Plaintiff States' efforts to ensure clean air and water for their residents, by interfering with projects that help states monitor air quality, improve water quality, and ensure availability of clean drinking water. Further, the Federal Funding Freeze thwarts the Plaintiff States' plans to implement waste management, reduction, and recycling plans. And the freeze also causes the loss of workforce training programs, career opportunities, and community education opportunities within the Plaintiff States.

169.     The Federal Funding Freeze also has caused significant budgetary confusion, uncertainty, and risk among agencies of the Plaintiff States that administer IIJA- and IRA-funded programs and services. Dozens, if not hundreds, of Plaintiff States' agencies have experienced confusion and budgetary uncertainty as they have been cut off from access to funds to which they are entitled. These agencies' inability to access these funds and fear of non-reimbursement are already interfering with their ability to budget and plan, including with respect to planned hiring. The Federal Funding Freeze has harmed their ability to work with and reimburse subgrantees, potentially risking cancellation or modification of contracts with state vendors and subgrantees,

and it will continue to harm their goodwill and reputation among project partners and participants, making it more difficult to recruit project partners in the future.

170.     The lack of notice for the Federal Funding Freeze compounds these injuries. The Plaintiff States were unable to prepare for or mitigate the pause in federal funding, creating chaos and confusion. For example, given the less than 24-hours notice before the OMB Directive took effect, Plaintiff States were unable to set aside funding for the anticipated shortfall in response, work with their legislatures to appropriate funds, or take other similar measures to lessen the blow. And both the breadth of the Federal Funding Freeze and the speed with which the Defendants imposed it renders implausible any claim, in any of the EOs or any subsequent agency actions, that funding is halted only "to the extent permissible by law" or any allowance, as in the OMB Directive, for exceptions on a case-by-case basis.

171.     The Federal Funding Freeze has sown chaos and confusion around whether Plaintiff States can continue to receive disbursements of funding already obligated to them. And this uncertainty surrounds all grant programs, without regard to the specific statutes that authorize particular grant programs or what regulations or terms govern their award and use. For example, the OMB Directive references categories of funding with no clear reference to federal law, including categories like "woke gender ideology," terms not appearing in any statute governing the grant of federal financial assistance, and "green new deal social engineering policies," an apparent reference to proposed legislation that was never enacted.

172.     State agencies also administer numerous federal grants and direct grant programs of their own—some of which pass through federal funding. State agencies in the Plaintiff States do not know when or if disbursements and obligations may resume, complicating the important work they do to ensure that state residents have access to healthcare services, education support,

appropriate law enforcement, reliable infrastructure, among many other missions. They are also now unable to evaluate whether they need to take action under their own sub-agreements or contracts to mitigate any downstream effects of the pause.

173.    Thousands of nongovernmental and nonprofit organizations operating within the Plaintiff States also rely on federal funding to provide services to the Plaintiff States' residents, to the benefit of the Plaintiff States. Such organizations are engaged in federally funded projects such as improving heat resilience in cities disproportionately impacted by heat and poor air quality, promoting local sourcing of food, improving food accessibility and sustainability, and subgranting to public health and environmental projects. For such organizations, the Federal Funding Freeze could result in laid off workers as well as significant harms to the communities they serve, including at-risk populations. And such harms would have ripple effects within the Plaintiff States, increasing health care costs and regulatory burdens to make up for the loss of the pollution reduction, food security, and other benefits attributable to these organizations' reliance on federal funding.

174.    In sum, across all Plaintiff States, the Federal Funding Freeze has caused severe harm across a range of programs and services, and will continue to cause such harm if it remains in effect.

## CAUSES OF ACTION

### COUNT I

**Substantive Violation of the Administrative Procedure Act—Contrary to Law, Ultra Vires (Against Agency Defendants)**

175.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

176.    Agency Defendants are "agenc[ies]" under the APA. 5 U.S.C. § 551(1).

45

177.    Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B)–(C).

178.    Congress enacted the APA "as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024) (quoting *U.S. v. Morton Salt*, 338 U.S. 632, 644 (1950)). In *Loper Bright*, the Supreme Court clarified that historical principles of "respect" did not equate to deference, and that "Section 706 makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Id.* at 392 (emphasis in original). Rather, it "remains the responsibility of the court to decide whether the law means what the agency says." *Id.* (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)).

179.    An agency may not take any action that exceeds the scope of its constitutional or statutory authority.

180.    No constitutional or statutory authority authorizes OMB to order federal agencies to refrain from fulfilling their statutory duties, or to violate federal law.

181.    No constitutional or statutory authority authorizes federal agencies to refrain from fulfilling their statutory duties, or to violate federal law.

182.    The Agency Defendants lack authority to impose and maintain the Federal Funding Freeze, which is an across-the-board pause on disbursement of categories of federal funds without regard to the individual authorizing statutes, regulations, and terms that govern each funding stream. This Freeze is unauthorized, unprecedented, and not entitled to deference by this Court.

183.    As a general matter, the "purpose statute" requires that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law," 31 U.S.C. § 1301(a), meaning that funds can only be used for the purposes that Congress has designated. Federal agencies therefore lack authority to freeze funds immediately, categorically, and indefinitely, particularly where the stated purpose of that freeze is to pause, cancel, or reallocate funding to sources which do not align with the purpose for which those funds were appropriated by Congress.

184.    Moreover, in implementing the Federal Funding Freeze, the Agency Defendants have acted contrary to the statutes and regulations governing the disbursement of federal funds for the impacted programs.

185.    For example, in the IIJA and IRA, Congress appropriated billions of dollars to federal programs that support critical energy and infrastructure projects, among other legislative priorities, and used mandatory language to describe many of the most significant funding decisions that it made. For instance, the IIJA appropriated almost $30 billion for use in constructing and rehabilitating state water, wastewater, and sewage facilities, and directed that EPA "shall make capitalization grants to each State" for water pollution control pursuant to a statutory formula. 33 U.S.C. §§ 1381(a), 1384(a), (c)(2); *see also* 42 U.S.C. § 300j-12(a)(1)(A), (D) (similar for drinking water grant).

186.    Similarly, the IRA established a program to subsidize low- and moderate-income households' purchase of heat pump systems—and directed the Secretary of Energy to "reserve funds . . . for each State energy office" based on an allotment formula, 42 U.S.C. § 18795a(a)(2)(A)(i), that does not give the Secretary the power to decline to expend funds.

47

187.     Congress has elsewhere appropriated mandatory funds to the Plaintiff States to fund programs for their residents ranging from special education to mental health and substance abuse treatment to power and heat for low-income individuals, and imposed specific limits on the relevant agencies' power to withhold such funds (generally requiring notice and a hearing). *See* 20 U.S.C. §§ 1411, 1412, 1416 (Individuals with Disabilities Education Act); 42 U.S.C. §§ 300x(a), 300x-7(a), 300x-21(a), 300x-33(a) (mental health and substance abuse treatment); 42 U.S.C. §§ 8621, 8623, 8626, 8627 (LIHEAP).

188.     Federal agencies lack the authority to immediately, categorically, and indefinitely pause obligated grant funding in a purported effort to root out waste and fraud, as EPA claimed to do in its Feb. 7 EPA Memo.

189.     Moreover, the Impoundment Control Act of 1974, 2 U.S.C. §§ 681 *et seq.*, circumscribes the Agency Defendants' authority to immediately, categorically, and indefinitely pause obligated grant funding. The Impoundment Control Act permits the Executive Branch to impound (i.e., decline to spend) federal funds only under a very narrow set of specific circumstances. The Impoundment Control Act does not permit the Executive Branch to defer appropriated funds based on policy disagreement with Congressional priorities, nor rescind them without Congressional approval. Nor does the Impoundment Control Act permit agencies to unilaterally, categorically, immediately, and indefinitely freeze disbursement of federal funds.

190.     The Federal Funding Freeze thus violates the express terms and purpose of appropriations law, authorizing and appropriating statutes, governing regulations, and terms and conditions of operative grant agreements obligated pursuant to those authorities.

191.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Agency Defendants lack legal authority to categorically pause or freeze the

disbursement of federal funds contrary to congressional directive and intent, and have, in so doing, acted contrary to law, outside of statutory authority, and in violation of the APA.

192.    Plaintiff States are also entitled to vacatur of the OMB *Unleashing* Directive, the OMB Directive, and Agency Defendants' other actions implementing and maintaining the Federal Funding Freeze pursuant to 5 U.S.C. § 706, and a preliminary and permanent injunction preventing the Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through implementation of EOs, such as the *Unleashing* EO, and agency actions implementing them.

### COUNT II

### Substantive Violation of the Administrative Procedure Act—Arbitrary & Capricious
### (Against Agency Defendants)

193.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

194.    Defendants include "agenc[ies]" under the APA 5 U.S.C. § 551(1).

195.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

196.    An agency action is arbitrary or capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency must provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

197.    That "reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be

scrutinized by courts and the interested public." *Dep't of Commerce* v. *New York*, 588 U.S. 752, 785 (2019). Agencies may not rely on explanations that are "contrived" or "incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Id.*

198. An action is also arbitrary and capricious if the agency "failed to consider . . . important aspect[s] of the problem" before it. *Dep't of Homeland Sec.* v. *Regents of the Univ. of Calif.*, 591 U.S. 1, 25 (2020) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

199. Because the Agency Defendants provided no reasoned basis for pausing the disbursement and obligation of trillions of federal dollars and failed to consider the consequences of those actions, those actions were arbitrary and capricious. Neither the OMB *Unleashing* Directive, the OMB Directive, nor Agency Defendants' other directives implementing and maintaining the Federal Funding Freeze contain any reasoning regarding their immediate, categorical, and indefinite scope or regarding the impact and chaos they have caused, including as to the Plaintiff States and their residents, who rely on federal funding for key programs and services.

200. Moreover, neither the OMB *Unleashing* Directive, the OMB Directive, nor Agency Defendants' other directives implementing and maintaining the Federal Funding Freeze provide any reasoned basis for refusing to disburse funds authorized and appropriated by Congress contrary to congressional intent and directive. Agency Defendants' actions in implementing the Federal Funding Freeze are thus arbitrary and capricious.

201. Defendants have recently characterized the freezing of some funding streams for compliance reasons or for reasons related to budget periods, which is implausible given the timing of the immediate, categorical, and indefinite nature of the Federal Funding Freeze, and the massive number of funding streams affected.

50

202.    Agency Defendants' recent efforts to immediately, categorically, and indefinitely pause obligated grant funding purportedly to root out waste and fraud, as EPA claimed to do in its Feb. 7 EPA Memo, is a pretextual effort to achieve the Federal Funding Freeze, and is thus also arbitrary and capricious.

203.    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the OMB *Unleashing* Directive, the OMB Directive, and Agency Defendants' other actions implementing and maintaining the Federal Funding Freeze violate the APA because they are arbitrary and capricious.

204.    Plaintiff States are also entitled to vacatur of the OMB *Unleashing* Directive, the OMB Directive, and Agency Defendants' other actions implementing and maintaining the Federal Funding Freeze pursuant to 5 U.S.C. § 706, and a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through implementation of EOs, such as the *Unleashing* EO, and agency actions implementing them.

## COUNT III

### Equitable *Ultra Vires*—Conduct Outside the Scope of Statutory Authority Conferred on the Executive (Against All Defendants)

205.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

206.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). Indeed, the Supreme Court has repeatedly allowed equitable relief against federal officials who act "beyond th[e] limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

51

207.     Defendants' conduct in initiating and maintaining the Federal Funding Freeze without regard to the individual authorizing statutes, regulations and terms that govern each funding stream is contrary to law and outside of Defendants' authority. *See also* ¶¶ 182–90, *supra*. For example, implementation of the categorical, immediate, and indefinite pause on federal funds under the IRA and IIJA announced in the *Unleashing* EO exceeded Defendants' authority.

208.     Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Federal Funding Freeze—including as implemented through the *Unleashing* EO—is contrary to law and outside of Defendants' authority.

209.     Plaintiff States are further entitled to a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through implementation of EOs, such as the *Unleashing* EO, and agency actions implementing them.

### COUNT IV

**Violation of the Separation of Powers—Usurping the Legislative Function**
**(Against All Defendants)**

210.     Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

211.     Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). "[T]he President's actions may . . . be reviewed for constitutionality." *Franklin v. Mass.*, 505 U.S. 788, 801 (1992) (citations omitted). Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials, including "executive orders." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 414 (1935).

52

212.    The Constitution "grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018); *see* U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause).

213.    Congress also possesses exclusive power to legislate. Article I, Section 1 of the Constitution enumerates that: "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. art. I, § 1; *see also Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").

214.    Consistent with these principles, the executive acts at the lowest ebb of his constitutional authority and power when he acts contrary to the will of Congress by attempting to unilaterally decline to spend appropriated funds. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring).

215.    The Federal Funding Freeze violates the separation of powers because the executive branch has overridden the careful judgments of Congress by refusing to disburse funding for innumerable federal grant programs. *See also* ¶¶ 182–90, *supra*. For example, implementation of the categorical, immediate, and indefinite pause on federal funds under the IIJA and IRA announced in the *Unleashing* EO is a clear violation of the separation of powers.

216.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the Federal Funding Freeze—including through the EOs, including the *Unleashing* EO, and agency actions implementing them—violates the constitutional separation of powers doctrine, and impermissibly arrogates to the executive power that is reserved to Congress.

217.    Plaintiff States are further entitled to a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze,

including through implementation of EOs, such as the *Unleashing* EO, and agency actions implementing them.

## COUNT V

### Violation of the Spending Clause and Tenth Amendment
### (Against All Defendants)

218.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

219.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). "[T]he President's actions may . . . be reviewed for constitutionality." *Franklin v. Mass.*, 505 U.S. 788, 801 (1992). Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials, including "executive orders." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 414 (1935).

220.    The Spending Clause of the U.S. Constitution provides that Congress—not the Executive—"shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ." U.S. Const. art. I, § 8, cl. 1.

221.    The Tenth Amendment of the U.S. Constitution provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

222.    When actions by the federal government come in the form of "threats to terminate . . . significant independent grants," the actions "are properly viewed as a means of pressuring the States to accept policy changes" and are barred by the Tenth Amendment. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012).

223.     States must also have fair notice of the terms that apply to the disbursement of funds to them. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 583–84 (2012).

224.     The Federal Funding Freeze has altered the terms upon which grants were obligated and disbursed contrary to Congressional authority. These alterations are coercive, retroactive, ambiguous, and unrelated to the purpose of the myriad grants affected.

225.     Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Federal Funding Freeze—including through the EOs, such as the *Unleashing* EO, and agency actions implementing them—violates the Spending Clause.

226.     Plaintiff States are also entitled to a preliminary and permanent injunction barring the Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through the EOs, such as the *Unleashing* EO, and agency actions implementing them.

## COUNT VI

### Violation of the Presentment Clauses
### (Against All Defendants)

227.     Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

228.     Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). "[T]he President's actions may . . . be reviewed for constitutionality." *Franklin v. Mass.*, 505 U.S. 788, 801 (1992). Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials, including "executive orders." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 414 (1935).

229.    The Constitution prescribes a "single, finely wrought and exhaustively considered[]" procedure" for enacting legislation: passage of a bill by both houses of Congress and presentment to the President for his signature or veto. *Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983); *see* U.S. Const. art. I, § 7, cls. 2, 3.

230.    This procedure is an exclusive one. Therefore, the President's attempt to unilaterally decline to expend funds violates the Presentment Clauses by attempting to repeal federal laws that the President dislikes without following the "finely wrought" procedures for doing so. *Chadha*, 462 U.S. at 951

231.    Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Federal Funding Freeze—including through the EOs, including the *Unleashing* EO, and agency actions implementing them—violates the Presentment Clauses of the U.S. Constitution.

232.    Plaintiff States are further entitled to a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through the EOs, such as the *Unleashing* EO, and agency actions implementing them.

### COUNT VII

### Violation of the Appropriations Clause
### (Against All Defendants)

233.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

234.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). "[T]he President's actions may . . . be reviewed for constitutionality." *Franklin v. Mass.*, 505 U.S. 788, 801 (1992). Plaintiff States are "entitled to invoke the equitable

jurisdiction to restrain enforcement" of unconstitutional acts by federal officials, including "executive orders." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 414 (1935).

235.     The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9, cl. 7. The Appropriations Clause is a "straightforward and explicit command" that "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).

236.     Defendants' unilateral executive action to decline to expend appropriated funds, *see supra* at ¶¶ 109–49 (describing Federal Funding Freeze), therefore infringes on Congress's appropriations power and is unconstitutional.

237.     Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Federal Funding Freeze—including through implementation of EOs, including the *Unleashing* EO, and agency actions implementing them—violates the Appropriation Clause of the U.S. Constitution.

238.     Plaintiff States are further entitled to a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through the EOs, such as the *Unleashing* EO, and agency actions implementing them.

<div align="center">

**COUNT VIII**

**Violation of the Take Care Clause**
**(Against All Defendants)**

</div>

239.     The Plaintiff States reallege and reincorporate the foregoing allegations.

240.     Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

241.    The Take Care Clause provides that the Executive must "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3; *Utility Air Reg. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 327 (2014) ("Under our system of government, Congress makes laws and the President . . . 'faithfully execute[s]' them.").

242.    The Executive violates the Take Care Clause where it declines to execute or otherwise undermines statutes enacted by Congress and signed into law or duly promulgated regulations implementing such statutes. *See In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) ("the President is without authority to set aside congressional legislation by executive order"); *Kendall v. United States*, 37 U.S. 524, 613 (1838) (rejecting argument that by charging the President with faithful execution of the laws, the Take Care clause "implies a power to forbid their execution").

243.    Defendants' conduct in initiating and maintaining the Federal Funding Freeze without regard to the individual authorizing statutes, regulations and terms that govern each funding stream was contrary to the Executive's duty to faithfully execute the laws enacted by Congress.

244.    For example, implementation of the categorical, immediate, and indefinite pause on federal funds under the IRA and IIJA announced in the *Unleashing* EO violated the Take Care Clause.

245.    Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Federal Funding Freeze—including through the EOs, such as the *Unleashing* EO, and agency actions implementing them—violates the Take Care Clause of the U.S. Constitution.

246.    Plaintiff States are further entitled to a preliminary and permanent injunction preventing Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through the EOs, such as the *Unleashing* EO, and agency actions implementing them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff States pray that this Court:

    i.    Issue a judicial declaration that the Federal Funding Freeze, effected through the Executive Orders, agency actions implementing them, and OMB directives, is unconstitutional and/or unlawful because it violates the APA and the United States Constitution;

    ii.    Pursuant to 5 U.S.C. § 706, vacate Agency Defendants' actions implementing the Federal Funding Freeze;

    iii.    Preliminarily and permanently enjoin the Agency Defendants from implementing the Federal Funding Freeze;

    iv.    Issue a writ of mandamus compelling the Agency Defendants to immediately cease implementing the Federal Funding Freeze without further delay and to release funds withheld under the Federal Funding Freeze;

    v.    Award the Plaintiff States their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

    vi.    Grant other such relief as this Court may deem proper.

Respectfully submitted,

| | |
|---|---|
| **PETER F. NERONHA** | **LETITIA JAMES** |
| Attorney General for the State of Rhode Island | Attorney General for the State of New York |

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Marie.Logan@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner H. Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
Vanessa Arslanian**
Julia Jones-Day**
Nathaniel Hyman**
Chris Pappavaselio**
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
turner.smith@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.Skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

62

**OFFICE OF THE GOVERNOR** *ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

63

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
(919) 716-6026
Dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

64

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.wa.gov
Leah.Brown@atg.wa.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*
***Pro Hac Vice* Motion forthcoming

# United States Court of Appeals
## For the First Circuit

---

No.  25-1138

STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF
RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS;
STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF MAINE;
STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF
OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,

Plaintiffs - Appellees,

v.

DONALD J. TRUMP, in their official capacity as President of the United States; U.S. OFFICE
OF MANAGEMENT AND BUDGET; RUSSELL THURLOW VOUGHT, in their official
capacity as Director of the U.S. Office of Management and Budget; U.S. DEPARTMENT OF
THE TREASURY; SCOTT BESSENT, in their official capacity as Secretary of the Treasury;
PATRICIA COLLINS, in their official capacity as Treasurer of the U.S.; U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES; DR. DOROTHY A. FINK, in their official capacity
as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF EDUCATION;
DENISE CARTER, in their official capacity as Acting Secretary of Education; FEDERAL
EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, in their official
capacity as Acting Administrator of the U.S. Federal Emergency Management; US
DEPARTMENT OF TRANSPORTATION; SEAN PATRICK DUFFY, in their official capacity
as Secretary of Transportation; U.S. DEPARTMENT OF LABOR; VINCE MICONE, in their
official capacity as Acting Secretary of Labor; U.S. DEPARTMENT OF ENERGY;
CHRISTOPHER ALLEN WRIGHT, in their official capacity as Secretary of the U.S.
Department of Energy; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE M. ZELDIN,
in their official capacity as Administrator of the U.S. Environmental Protection Agency; U.S.
DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in their official capacity as
Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF JUSTICE;
PAMELA J. BONDI, in their official capacity as Attorney General; NATIONAL SCIENCE
FOUNDATION; DR. SETHURAMAN PANCHANATHAN, in their official capacity as
Director of the National Science Foundation,

Defendants - Appellants.

---

**JUDGMENT**

Entered: February 13, 2025
Pursuant to 1st Cir. R. 27.0(d)

Upon consideration of appellants' assented-to motion, it is hereby ordered that this appeal be voluntarily dismissed pursuant to Fed. R. App. P. 42(b)(2) with each party to bear its own costs.

Mandate to issue forthwith.

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Zachary A. Cunha, Eric Dean McArthur, Daniel Tenny, Brett Allen Shumate, Daniel S. Schwei, Brian James Springer, Andrew F. Freidah, Eitan R. Sirkovich, Freedom Cheteni, Kathryn M. Sabatini, Michael J. Myers, Rabia Muqaddam, Sarah Rice, Mark Stephen Grube, Leonard Giarrano IV, Colleen K. Faherty, Molly Thomas-Jensen, Zoe Levine, Christine Chuang, Christopher J. Kissel, Kenneth J. Sugarman, Lara Haddad, Marie E. Logan, Nicholas R. Green, Theodore McCombs, Laura Faer, Carly J. Munson, Alex Hemmer, Jeremy Feigenbaum, Angela Cai, Shankar Duraiswamy, Katherine B. Dirks, Turner Smith, Anna Esther Lumelsky, Joshua Bendor, Nathan T. Arrowsmith, Shannon Wells Stevenson, Jill Lacedonia, Michael Kenneth Skold, Vanessa L. Kassab, Andrew C. Mendrala, David D. Day, Kalikoonalani D. Fernandes, Jason David Anton, Adam D. Kirschner, Neil Giovanatti, Linus Banghart-Linn, Elizabeth Kramer, Heidi Parry Stern, Daniel P. Mosteller, Anjana Samant, Robert A. Koch, Jonathan T. Rose, Andrew R.W. Hughes, Leah Brown, Aaron Bibb, Arthur West

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.,

        Plaintiffs,

    v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES, et al.,

        Defendants.

C.A. No. 1:25-cv-00039

---

## SECOND MOTION TO ENFORCE THE COURT'S JANUARY 31, 2025, TEMPORARY RESTRAINING ORDER

Plaintiff States, through this motion, respectfully request that the Court use its inherent authority to enforce the Temporary Restraining Order entered on January 31, 2025, ECF No. 50, subsequent orders regarding the TRO entered on February 10, 2025 (ECF No. 96) and February 12, 2025 (ECF No. 107), or any preliminary injunction entered by the Court. Plaintiff States specifically request that the Court order Defendant the Federal Emergency Management Agency ("FEMA") to provide information on its compliance with the Court's orders promptly showing either that access to the funds identified below has been restored or that FEMA is otherwise complying with the TRO.[1] If FEMA is unable to establish compliance, Plaintiff States respectfully request that the Court order FEMA to cease freezing obligated funds and that the Court direct that notice of such order, along with notice of the court's TRO, February 10 order, February 12 order (ECF No. 50, 96, and 107, respectively), or any other forthcoming Order the Court deems relevant, be provided to FEMA's leadership and staff, as described below, *see infra* p. 8.

---

[1] Plaintiff States are not moving for contempt at this time.

1

The Court's intervention is necessary because, following the Court's February 10 order, Plaintiff States have continued to experience significant obstacles to accessing federal funds. Although Plaintiff States have successfully worked with Defendants to fully or partially restore access to certain funds without the Court's involvement, the parties have reached an impasse as to millions of dollars in obligated FEMA awards, which are and have remained frozen dating to as early as February 7. The Court should enforce the TRO.

## FACTUAL BACKGROUND

### I.     The Court's Orders

The Court's January 31, 2025, TRO prohibited Defendants from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] Defendants' compliance with awards and obligations to provide federal financial assistance to the States," and provided that "Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 11. That order expressly prohibited the Defendants from using "'identif[ication] and review' of federal financial assistance programs" to implement a "pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations and terms." *Id.* at 12. Included among the Defendants for purposes of the TRO was the Federal Emergency Management Agency, a defendant named in the original Complaint. ECF No. 01, ¶ 41.[2]

Following the entry of that order, Plaintiffs conferred with counsel for Defendants about ongoing freezes of numerous grants and awards but were unable to reach agreement. ECF No. 66,

---

[2] FEMA remains a defendant in the Amended Complaint because the Department of Homeland Security is a defendant.

at 7-8. Plaintiffs moved to enforce the TRO on February 7, 2025. ECF No. 66. On February 10, 2025, the Court granted that motion, ordering among other things that:

>  1.    The Defendants must immediately restore frozen funding during the pendency of the TRO until the Court hears and decides the Preliminary Injunction request.
>
>  2.    The Defendants must immediately end any federal funding pause during the pendency of the TRO.
>
>  3.    The Defendants must immediately take every step necessary to effectuate the TRO, including clearing any administrative, operational, or technical hurdles to implementation.

ECF No. 96, at 4.

The Court subsequently issued an order affirming that the TRO "permits the Defendants to limit access to federal funds 'on the basis of the applicable authorizing statutes, regulations, and terms'" and clarifying that neither the TRO nor the February 10 order instituted a "preclearance" or "prior approval" requirement. ECF No. 107 at 3.

## II.    Federal Grants and Awards Remain Frozen

Since the Court's February 10 order, Plaintiff States have worked diligently with counsel for Defendants to address compliance issues with the Court's orders, including providing counsel with lists of awards spanning multiple agencies that remained inaccessible even after the Court's orders.  *See* Correspondence between Kate Sabatini and Daniel Schwei, attached as Exhibit D to the Affirmation of Theodore McCombs ("McCombs Aff."). As a result of Plaintiff States' efforts, many funds frozen as of the Court's February 10 order have now been made available. *Id*.

Nevertheless, the parties have reached an impasse as to millions of dollars of FEMA funds that have been awarded and obligated but have remained inaccessible to Plaintiff States—some for almost three weeks. As of February 28, 2025, at least 140 FEMA grants from at least twenty different FEMA grant programs have been frozen or otherwise rendered inaccessible in sixteen

Plaintiff States, including Arizona, California, Colorado, Connecticut, Hawaii, Illinois, Maryland, Maine, Michigan, North Carolina, New Jersey, New York, Rhode Island, Vermont, Washington, and Wisconsin. Funds have been reported frozen as early as February 7, with an increasing number of grants reported frozen during the weeks of February 17 and 24. In several cases, the freezes apply to multiple grants in the same grant programs spanning several fiscal years. The FEMA grant programs subject to freezes include, but are not limited to, the following:

- Assistance to Firefighters Grant Program
- Building Resilient Infrastructure and Communities (incl. FYs 2020-2023)
- Community Assistance Program – State Support Services Element
- Cooperating Technical Partners
- Emergency Management Performance Grant (incl. FYs 2022-2024)
- Emergency Operations Center (incl. FYs 2022-2024)
- Emergency Management Preparedness Grant
- Flood Mitigation Assistance
- Floodplain Mapping Program - Cooperating Technical Partnership Award
- Hazard Mitigation Grant Program
- Hazard Mitigation Grant Program Post Fire
- Homeland Security Grant Program (incl. FYs 2021-2024)
- Legislative Pre-Disaster Mitigation (incl. FYs 2022-2023)
- Nonprofit Security Grant Program (incl. FYs 2021-2024)
- Port Security Grant Program
- Pre-Disaster Mitigation (incl. FYs 2019-2024)
- Regional Catastrophic Preparedness Grant Program
- Safeguarding Tomorrow Revolving Loan Fund Program
- Shelter and Services Program Grant
- State and Local Cybersecurity Grant Program (incl. FYs 2022-2024)
- Targeted Violence and Terrorism Prevention Grant Program
- Cooperating Technical Partners (CTP)

These grants comprise millions of dollars in essential health, safety and welfare funds for wildfire prevention response, flood mitigation, and emergency management that are not timely flowing to the States. And some states cannot even submit a request for reimbursement, because the system blocks them from doing so.

Plaintiff States have worked diligently with Defendants' counsel to obtain clarity as to the status of these funds. Ex. D to McCombs Aff. On February 18, Counsel initially sent to Plaintiffs'

counsel redacted copies of emails dated February 10 and 11 from FEMA. *Id.* The February 10 email from the Director of FEMA's Office of Grants Administration, titled "URGENT: Holds on awards," instructs, "put financial holds on *all* your awards – all open awards, all years." Ex. D-1 to McCombs Aff. (emphasis in original). The February 11 email, from the same director, instructs FEMA staff to amend "existing awards" to institute a novel payment review process, taking up to 30 days, whereby "reimbursement requests will be manually reviewed and manually processed upon approval by program/financial staff." Ex. D-2 to McCombs Aff. This email states,

> **Note that these are not "holds."** We are modifying our programs so that payment requests are now reviewed manually and processed manually. "Holds" implies what we were directed to originally [do] with OMB M-25-13, which was rescinded and a TRO injunction placed. We are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be[ing] released to recipients.

*Id.* (emphasis in original). Notwithstanding this directive, FEMA grants in at least Arizona, California, Colorado, Hawaii, Illinois, Maryland, Maine, Michigan, New York, North Carolina, Rhode Island, Vermont, Washington, and Wisconsin were frozen, with FEMA's Payment and Reporting System ("PARS") listing *all* of these grants as subject to a "Hold" and/or "under review" as of February 27. Draw-downs submitted as early as February 7 are still unpaid, and the system it generates an error message for many if state agencies attempt to submit a request for reimbursement. *E.g.*, McCombs Aff. ¶¶ 6, 17; Ex. A, C to McCombs Aff. (Arizona, California, Colorado and New York screen captures).

Following Defendants' February 18 email, Plaintiffs tried to resolve the FEMA issues twice more, on February 21 and 25. Ex. E to McCombs Aff. While Defendants' Counsel responded with some additional information about the status of the FEMA disbursements, Defendants' Counsel maintained that the delays in these disbursements were not in violation of the TRO. *Id.*

**LEGAL STANDARD**

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). In the First Circuit, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) ability to comply; and (4) violation of the order. *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

**ARGUMENT**

Plaintiffs have satisfied the first two factors: FEMA had notice of the Court's order, and the Court has now twice made clear the extent and scope of the TRO. Similarly, the third factor is satisfied because FEMA is plainly able to comply with the TRO by releasing frozen funds in existing automated payment systems.

As to the fourth factor, FEMA appears to have violated the TRO. To reiterate, the TRO prohibits FEMA from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] [its] compliance with awards and obligations to provide federal financial assistance to the States," except on the basis of the applicable statutes, regulations, and terms. ECF No. 50, at 11. The TRO further states that, if an agency "engage[s] in the 'identif[ication] and review' of federal financial assistance programs, as identified in the OMB Directive, such exercise shall not [e]ffect a pause, freeze, impediment, block, cancellation, or termination of [its] compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 12.

FEMA appears to be violating the TRO. FEMA has admitted that it is "engag[ing]" in a "review" of federal financial assistance, which is why critical funds are inaccessible to Plaintiff

States. The institution of this review coupled with its practical outcome—a categorical and indefinite freeze of many FEMA grants—reflects a TRO violation. Moreover, the delays prompted by FEMA's manual review process are significant and indefinite. Some States have requested disbursements of funds as long ago as February 7—three *weeks* ago. Most affected States have been unable to access funds for multiple weeks running. And the PARS system that governs access to these funds does not even allow Plaintiff States to submit disbursement requests at all. FEMA's insistence that "these are not 'holds,'" Ex. D-2 to McCombs Aff., is belied by its own disbursement system, which informs Plaintiff States attempting to submit requests that there is a "hold" on their funds. McCombs Aff. ¶¶ 6, 17; Exs. A, C to McCombs Aff. On these facts, FEMA's manual review process is simply a freeze by another name, and it violates the TRO.

FEMA has identified no "basis [in] applicable authorizing statutes, regulations, and terms," ECF No. 50, at 11, that could justify its decision to freeze access to these funds. Although the February 11 email refers generally to "2 CFR Part 200 principles"—an apparent reference to the regulations generally governing federal financial assistance—that passing reference identifies no authority that could justify a weeks-long funding freeze of this sort. Ex. D-2 to McCombs Aff. To the extent FEMA's view is that the freeze is authorized by 2 C.F.R. § 200.305(b), that section at most applies to non-State recipients, and does not authorize the indefinite suspension of payments to States. *Cf.* Ex. F to McCombs Aff. And neither FEMA nor its counsel has identified any other legal authority that might justify freezing Plaintiff States' access to these funds for fire prevention, emergency management, and flood mitigation. The Court should issue an order enforcing its TRO.

## RELIEF SOUGHT

Plaintiff States move the Court, under its inherent powers, to require FEMA, by a date certain, to provide to the Court evidence of their compliance with this Court's January 31, 2025,

Temporary Restraining Order and February 10, 2025, Order, or any subsequent orders the Court deems relevant, promptly showing either that access to the funds identified herein has been restored or that FEMA is otherwise complying with the TRO. If FEMA is unable to establish compliance, Plaintiff States respectfully request that the Court order FEMA to immediately halt the challenged practice and that the Court direct that notice of such order, along with notice of the court's TRO, February 10 order, February 12 order (ECF No. 50, 96, and 107, respectively), or any forthcoming orders the Court deems relevant, be provided to FEMA's leadership, as well as all FEMA staff who administer these grants and other federal financial assistance, with confirmation of such notice, including the names of recipients of the notice, no later than 48 hours after such order.

Dated: February 28, 2025

Respectfully Submitted,

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

8

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
marie.logan@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of
Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment
Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA 02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

9

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

10

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

11

**JEFF JACKSON**
Attorney General for the State of North
Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
919-716-6026
Dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**OFFICE OF THE GOVERNOR *ex rel.*
ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s Aaron J. Bibb
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

12

laurac.tipton@ky.gov

*Admitted *Pro Hac Vice*

**\**Pro Hac Vice* Motion forthcoming

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

---

STATE OF NEW YORK; et al.,

        Plaintiffs,

      v.

DONALD TRUMP, in his official capacity as President of the United States; et al.,

        Defendants.

C.A. No. 1:25-cv-00039-JJM-PAS

---

## AFFIRMATION OF THEODORE MCCOMBS

THEODORE MCCOMBS, an attorney admitted to practice *pro hac vice* before this Court and admitted to practice before the courts of the State of California, does hereby state the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am Theodore McCombs, Deputy Attorney General in the Office of the Attorney General for the State of California, and I appear on behalf of the State of California in this action.

2. I submit this declaration in support of Plaintiff States' Second Motion to Enforce the Court's January 31, 2025, Temporary Restraining Order (ECF No. 50), and subsequent orders regarding the TRO entered on February 10, 2025 (ECF No. 96) and February 12, 2025 (ECF No. 107). The facts set forth herein are based upon my personal knowledge and/or a review of the files in my possession.

3. In this declaration, I highlight several grants from the Federal Emergency Management Agency (FEMA) to state agencies in Arizona, California, Colorado, Hawaii, Illinois, Maine, Maryland, Michigan, New Jersey, New York, Vermont, Washington, and Wisconsin that remain frozen and unavailable for drawdown.

4.    The Arizona Department of Emergency and Military Affairs is the recipient of an Emergency Management Performance Grant for Fiscal Year 2024. As of February 20, 2025, award of the grant is delayed pending review and approval of the Office of the Chief Counsel for compliance with the President's Executive Order.

5.    The Arizona Department of Homeland Security is the recipient of a grant under the Nonprofit Security Grant Program for Fiscal Years 2022 (grant number EMW-2022-UA-00008) and 2023 (grant number EMW-2023-UA-00017). On February 19, 2025, a hold was placed on both the 2022 and 2023 grants. A true and correct screen capture of the Payment and Reporting System ("PARS") portal reflecting freezes of the 2022 and 2023 grants is attached as Exhibit A.

6.    The California Governor's Office of Land Use & Climate Innovation (LCI), formerly the Office of Planning & Research, is the recipient of a Cooperative Technical Partnership grant (grant number CA-EMF-2022-00014) under the National Flood Insurance Program. On February 21, 2025, a hold was placed on LCI's grant. On February 24, FEMA staff responded to LCI's inquiry, "No FEMA funding is paused but the agency does continue to review program delivery to ensure alignment with all White House directions and Executive Orders." A true and correct screen capture of the PARS portal reflecting the freeze is reproduced below, and a true and correct copy of FEMA's February 24, 2025 email is attached as Exhibit B.



7.      The Colorado Department of Natural Resources is the recipient of thirty-four grants under the Floodplain Mapping Program - Cooperating Technical Partnership Award from Fiscal Years 2018 through 2022, all of which have been on hold in PARS since February 21 (grant numbers EMD-2022-CA-00022, EMD-2022-CA-00027, EMD-2022-CA-00024, EMD-2022-CA-00028, EMD-2022-CA-00018, EMD-2022-CA-00020, EMD-2020-CA-00020, EMD-2022-CA-00024, EMD-2020-CA-00021, EMD-2019-CA-00049, EMD-2022-CA-00023, EMD-2019-CA-00037, EMD-2019-CA-00038, EMD-2020-CA-00025, EMD-2019-CA-00057, EMD-2018-CA-00014, EMD-2021-CA-0027, EMD-2021-CA-0025, EMD-2019-CA-00050, EMD-2022-CA-00021, EMD-2021-CA-0029, EMD-2021-CA-0026, EMD-2022-CA-00018, EMD-2019-CA-00034, EMD-2020-CA-00027, EMD-2018-CA-00011, EMD-2019-CA-00028, EMD-2020-CA-00021, EMD-2021-CA-0025, EMD-2019-CA-00031, EMD-2021-CA-0024, EMD-2021-CA-0029, EMD-2022-CA-00023, and EMD-2021-CA-0028) A true and correct screen capture of the PARS portal reflecting the freeze for 2022 grant number EMD-2022-CA-00022 is attached as Exhibit C.

8.      The Colorado Division of Homeland Security & Emergency Management is the recipient of Emergency Operations Center Grant Program grants for Fiscal Years 2023 and 2022 (grant numbers EMD-2023-EO-00003 and EMD-2022-EO-00001), Homeland Security Grant Program grants for Fiscal Years 2023, 2022, 2021 (grant numbers EMW-2023-SS-00050, EMW-2022-SS-00041, EMW-2021-SS-00044), Nonprofit Security Grant Program grants for Fiscal Years 2023, 2022, and 2021 (grant numbers EMW-2023-UA-00047, EMW-2022-UA-00040, and EMW-2021-UA-00081), State and Local Cybersecurity Grant Program grants for Fiscal Years 2023 and 2022 (grant numbers EMW-2023-CY-00061, EMW-2022-CY-00045), and Targeted Violence and Terrorism Prevention Grant Program grants for Fiscal Year 2023 (EMW-

2023-GR-00129). These grants have been reported as becoming inaccessible for payment between February 19th and 21st and remain frozen.

9.      The Colorado Division of Homeland Security & Emergency Management is also the recipient of a Shelter and Services Program Grant. The agency has received correspondence from FEMA claiming that it is out of compliance with various requirements of federal law, and that FEMA intends to claw back the grant funds.

10.      The Hawaii Department of Law Enforcement is a recipient of Homeland Security Grant Program grants for Fiscal Years 2021, 2022, 2023, and 2024 (grant numbers EMW-2021-SS-00030, EMW-2022-SS-00026, EMW-2023-SS-00026, and EMW-2024-SS-05015); Nonprofit Security Grant Program grants for Fiscal Years 2022, 2023, and 2024 (grant numbers EMW-2022-UA-00027, EMW-2023-UA-00028, and EMW-2024-UA-05010); and State and Local Cybersecurity Grant Program grants for Fiscal Years 2022, 2023, and 2024 (grant numbers EMW-2022-CY-00024, EMW-2023-CY-00021, and EMW-2024-CY-05274). These funds have been reported to be inaccessible in PARS since at least February 25, 2025.

11.      The Illinois Emergency Management Agency-Office of Homeland Security is the recipient of Homeland Security Grant Program grants for Fiscal Years 2021, 2022, and 2023 (grant numbers EMW-2021-SS-0001, EMW-2022-SS-00025, and EMW-2023-SS-00013), and Nonprofit Security Grant Program grants for Fiscal Years 2021, 2022, and 2023 (grant numbers EMW-2021-UA-0002, EMW-2022-UA-00013, and EMW-2023-UA-00013. As of February 20, 2025, these grants appeared as "On Hold" in PARS. The Maine Emergency Management Agency is the recipient of Homeland Security Grant Program grants for Fiscal Years 2021, 2022 and 2023 (grant numbers EMW-2021-UA-00065, EMW-2022-UA-00032, and EMW-2023-UA-00012) and Nonprofit Security Grant Program Grants for 2021, 2022, and 2023 (grant numbers

EMW-2021-UA-00057, EMW-2022-UA-00032, and EMW-2023-UA-00012), as well as a

Emergency Management Performance Grant (EMB-2023-EP-00004) and a Pre-Disaster

Mitigation grant (EMB-2023-PD-004). No funds have been received since February 10 to cover

regular reimbursed expenses and "holds" were placed on these grants in PARS between February

18 and 21.

    12.    The Maryland Department of Emergency Management is the recipient of

Homeland Security Grant Program grants for Fiscal Years 2021, 2022, and 2023 (grant numbers

EMW-2021-SS-00047, EMW-2022-SS-00009, EMW-2022-SS-00009, EMW-2023-SS-00011,

EMW-2023-SS-00011), Nonprofit Security Grant Program grants for Fiscal Years 2022 and

2023 (grant numbers EMW-2022-UA-00006-S01 and EMW-2023-UA-00010), and State and

Local Cybersecurity Grant Program grants for Fiscal Years 2022 and 2023 (grant numbers

EMW-2022-CY-00028-501 and EMW-2023-CY-00006), as well as a Targeted Violence

Prevention Program grant (grant number EMW-2022-GR-00056-S01), a Regional Catastrophic

Preparedness Grant Program grant (grant number EMP-2022-CA-00011), and an Emergency

Management Performance Grant (grant number EMP-2023-EP-0001). Holds were placed on

each of these grants between February 21 and 27.

    13.    The Michigan State Police are recipients of Homeland Security Grant Program

grants for Fiscal Years 2022 and 2023 (grant numbers EMW-2022-SS-00031 and EMW-2023-

SS-00022) and Nonprofit Security Grant Program Grants for 2021, 2022, and 2023 (grant

numbers EMW-2021-UA-00050, EMW-2022-UA-00031, and EMW-2023-UA-00039). Draws

were submitted for the Nonprofit Security Grant on February 7; for the 2022 Homeland Security

Grant Program grant on February 12; and for the 2023 Homeland Security Grant Program grant

on February 14. None of the grants have been disbursed in PARS. On February 19, a hold was placed on the Nonprofit Security Grant Program grants in PARS.

14.     The Michigan State Police are also recipients of a Safeguarding Tomorrow Revolving Loan Program grant for Fiscal Year 2024. The grant had initially been approved in September 2024 and since then had been in "final review." On February 18, 2025, the Regional Administrator stated that the terms and conditions of the grant were "being reviewed to ensure consistency with the President's Executive Orders."

15.     The New Jersey Department of Environmental Protection (NJDEP) is the recipient of a grant under the Community Assistance Program – State Support Services Element (CAP-SSSE), established by the National Flood Insurance Act of 1968. The grant number is EMN-2024-GR-05017. On February 18, 2025, NJDEP received a stop work order from the FEMA CAP-SSSE Program Lead for all activities relating to the terms "Disadvantaged, Marginalized, Underserved, Low-Income, Environmental Justice, Climate, Equity, Equitable, Inclusion, Diversity, Minority, Affirmative Action, Accessibility, Culture, Federal Flood Risk Management Standard (FFRMS), and Justice 40."

16.     The New York Department of Environmental Conservation is the recipient of a CAP-SSSE grant. New York has received a stop work order from the FEMA CAP-SSSE Program Lead for all activities relating to the terms "Disadvantaged, Marginalized, Underserved, Low-Income, Environmental Justice, Climate, Equity, Equitable, Inclusion, Diversity, Minority, Affirmative Action, Accessibility, Culture, Federal Flood Risk Management Standard (FFRMS), and Justice 40."

17.     The New York Division of Homeland Security and Emergency Services administers Preparedness and Disaster Recovery grants from FEMA. Between February 18 and

21, 2025, DHSES learned that all FEMA Preparedness Grants for FY 2020, FY 2021, FY 2022, and FY2023 have holds that prevent DHSES from submitting drawdown requests on PARS. Similarly, DHSES learned on February 21 that all Hazard Mitigation Assistance Grants for FY 2019-2024 had holds on drawdowns. Among the Preparedness grants that are affected are: Homeland Security Grant Program (HSGP), Nonprofit Security Grant Program (NSGP), Regional Catastrophic Grant Program (RCPGP), Emergency Management Performance Grant (EMPG), Emergency Management Performance Grant-American Rescue Plan Act (EMPG-ARPA), Emergency Operations Center Grant Program (EOCGP) and Targeted Violence and Terrorism Prevention (TVTP). Among the Hazard Mitigation Assistance Grants that are on hold are pre-Disaster Mitigation, Flood Mitigation Assistance, SWIFT Current (subset of FMA), Revolving Loan Fund (STORM Act), and Legislative Pre-Disaster Mitigation (Congressional Community Grants). All told, New York has hundreds of millions of dollars in FEMA grants that are inaccessible. When New York attempts to submit a drawdown request they have gotten error messages, of which the below true and correct screen capture is an example:



18. The Vermont Agency of Natural Resources is the recipient of a CAP-SSSE grant. The agency has received a stop work order from the FEMA CAP-SSSE Program Lead for all activities relating to the terms "Disadvantaged, Marginalized, Underserved, Low-Income, Environmental Justice, Climate, Equity, Equitable, Inclusion, Diversity, Minority, Affirmative Action, Accessibility, Culture, Federal Flood Risk Management Standard (FFRMS), and Justice 40."

19. The Washington Military Department Emergency Management Division is the recipient of multiple FEMA public assistance grants. As of February 17, 2025, reimbursement of the funds were being held "under review" by FEMA.

20. The Wisconsin Department of Military Affairs is the recipient of Homeland Security grants for 2021, 2022, and 2023 (grant numbers EMW-2021-SS-00068, EMW-2022-SS-00035, and EMW 2023-SS-00041), and Nonprofit Security Grant Program grants for 2021, 2022, and 2023 (grant numbers EMW-2021-UA-00060, EMW-2022-UA-00039, and EMW-2023-UA-00023). As of February 21, 2025, the Wisconsin Department of Military Affairs has been unable to draw down these grants.

21. Counsel for the parties has conferred extensively on these FEMA grants, as well as other disruptions to awarded funding. On February 11, Plaintiff's counsel sent a chart of still-frozen awards under the Infrastructure Investment and Jobs Act ("IIJA") and Inflation Reduction Act ("IRA"). In the same email, Plaintiff's counsel raised public reporting that the Director of the Office of Grant Administration for FEMA had directed her team to put financial holds on all awards for fiscal years 2021, 2022, 2023, and 2024. In emails dated February 12, 13, and 14, counsel continued to confer on whether FEMA had instituted a categorical freeze on awards, and on February 18, Defendants' counsel provided redacted copies of two communications from the

Director of the Office of Grants Administration, dated February 10 and 11. A true and correct copy of the February 11 to 18 emails is attached as Exhibit D, with true and correct copies of the February 10 and 11 redacted emails attached as Exhibits D-1 and D-2, respectively.

22.     Over February 21 to 26, Plaintiffs' counsel continued to confer on FEMA grants as well as a similar issue with the Department of Energy's payment review process for IIJA/IRA funds. On the FEMA grants, the parties appear to have reached an impasse, with Defendants' counsel asserting that the manual payment review process resulting in widespread holds in PARS is neither a "hold" nor a "freeze." A true and correct copy of the February 21 to 26 correspondence is attached as Exhibit E.

23.     On February 28, shortly before filing the present motion, several Plaintiff States, including California, Illinois, and New York, received an email from the FEMA Recovery Directorate, stating that FEMA is implementing "an additional review process of allocations before releasing funds for all grants" and that "payment requests may take up to 30 days to process." The email cites "2 C.F.R. Part 200." A true and correct copy of the FEMA Recovery Directorate's email is attached as Exhibit F.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


Dated:     San Diego, California
           February 28, 2025

                                   Theodore A.B. McCombs
                                   Office of the Attorney General
                                   State of California

A392

# Exhibit A




# Federal Emergency Management Agency
## Payment And Reporting System (PARS)

| Main | Payments |

**Main Menu** | **Help** | **Logout**

**Grant Maintenance**
Payment Requests

Your Vendor Number is:
**866004801**

## Grant Maintenance

Request a Payment
This section allows you to request a payment from your grant.

**STEP 2:**
Enter the dollar amount of your payment request in the space provided below.
then click the "Submit Payment Request" button.

### GRANT INFORMATION for : EMW-2022-UA-00008

Grant Number: EMW-2022-UA-00008
Grantee Name: HOMELAND SECURITY, ARIZONA OFFICE OF
Acceptance Date: 09/28/2022
Holds?

| Hold Date | Hold Amount |
|-----------|-------------|
| 02/19/2025 | $ 528053.27 |

Grant Amount: 2,906,542.10
Amount Previously Dispensed: 2,378,488.83 view payment history
Amount On Hold: 528053.27
Amount Available: 0.00 cancel payment request

Payment Request Amount: $ 0.00   Enter the requested amount in dollars.
Period Covered FROM: [        ]
Period Covered TO: [        ]

[ SUBMIT PAYMENT REQUEST ]

© 2024, Digital Systems Group, Inc.
build: 20240821_1018 {08/21/2024 10:18 AM sf269/rel}



# Federal Emergency Management Agency
## Payment And Reporting System (PARS)



| Main | Payments |
|------|----------|

| Main Menu | Help | Logout |
|-----------|------|--------|

**Grant Maintenance**

Payment Requests

Your Vendor Number is:
**866004801**

## Grant Maintenance

Request a Payment
This section allows you to request a payment from your grant.

**STEP 2:**
Enter the dollar amount of your payment request in the space provided below.
then click the "Submit Payment Request" button.

### GRANT INFORMATION for : EMW-2023-UA-00017

| | |
|---|---|
| Grant Number: | EMW-2023-UA-00017 |
| Grantee Name: | HOMELAND SECURITY, ARIZONA OFFICE OF |
| Acceptance Date: | 08/31/2023 |
| Holds? | |

| Hold Date | Hold Amount |
|-----------|-------------|
| 02/19/2025 | $ 1291146.67 |

| | |
|---|---|
| Grant Amount: | 4,075,729.00 |
| Amount Previously Dispensed: | 2,784,582.33  view payment history |
| Amount On Hold: | 1291146.67 |
| Amount Available: | 0.00  cancel payment request |

| | |
|---|---|
| Payment Request Amount: | $ 0.00  Enter the requested amount in dollars. |
| Period Covered FROM: | |
| Period Covered TO: | |

**SUBMIT PAYMENT REQUEST**

© 2024, Digital Systems Group, Inc.
build: 20240821_1018 {08/21/2024 10:18 AM sf269/rel}

A395

# Exhibit B

**From:** ███████
**To:** ███████
**Cc:** FEMA-R9-Grants-Services-Action-Office; ███████
**Subject:** RE: Revision Needed: SF-425 for Award EMF-2022-CA-00014
**Date:** Monday, February 24, 2025 2:33:10 PM
**Attachments:** image001.png
image002.png

Hi ███

No FEMA funding is paused but the agency does continue to review program delivery to ensure alignment with all White House directions and Executive Orders.

Thank you,

███████ ███

Grants Management Specialist | Grants Management Division | Region 9
Mobile: ███████
███████

**From:** ███████
**Sent:** Monday, February 24, 2025 10:58 AM
**To:** FEMA-R9-Grants-Services-Action-Office ███████
**Cc:** ███████
**Subject:** Re: Revision Needed: SF-425 for Award EMF-2022-CA-00014

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please select the Phish Alert Report button on the top right of your screen to report this email if it is unsolicited or suspicious in nature.

Hi ███

I hope this email finds you well. I was just informed by my accounting team that our award, EMF-2022-CA-00014 was placed on hold, effective 02/21. Can you share any insight on why this hold was placed?

Best,

███

A397

# Exhibit C



**Federal Emergency Management Agency**
**Payment And Reporting System (PARS)**

Main | Payments

**Grant Maintenance**
Payment Requests

Your Vendor Number is:
840644739E

## Grant Maintenance

Request a Payment
This section allows you to request a payment from your grant.

STEP 2:
Enter the dollar amount of your payment request in the space provided below,
then click the "Submit Payment Request" button.

GRANT INFORMATION for : EMD-2022-CA-00022
Grant Number: EMD-2022-CA-00022
Grantee Name: DEPARTMENT OF NATURAL RESOURCES COLORADO
Acceptance Date: 10/24/2023
Holds?

| Hold Date | Hold Amount |
|-----------|-------------|
| 02/21/2025 | $ 1887751 |

| | |
|---|---|
| Grant Amount: | 1,887,751.00 |
| Amount Previously Dispensed: | 417,903.00 view payment history |
| Amount On Hold: | 1887751.00 |
| Amount Available: | 0.00 cancel payment request |

A399

# Exhibit D



**From:** Schwei, Daniel S. (CIV) ▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Tuesday, February 18, 2025 5:03 PM
**To:** Kate Sabatini ▓▓▓▓▓▓▓▓▓▓
**Cc:** Sarah Rice ▓▓▓▓▓▓▓▓▓ ; Muqaddam, Rabia ▓▓▓▓▓▓▓▓▓▓ ; Thomas-Jensen, Molly ▓▓▓▓▓▓▓▓ ; Freidah, Andrew F. (CIV) ▓▓▓▓▓▓▓▓▓▓ ; Sirkovich, Eitan R (CIV) ▓▓▓▓▓▓▓▓
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

As noted in my e-mail below, attached are redacted copies of the two FEMA e-mails.

---

**From:** Schwei, Daniel S. (CIV) ▓▓▓▓▓▓▓▓
**Sent:** Tuesday, February 18, 2025 5:02 PM
**To:** 'Kate Sabatini' ▓▓▓▓▓▓▓▓▓
**Cc:** Sarah Rice ▓▓▓▓▓▓▓ ; ▓▓▓▓▓▓▓▓▓▓ ; Freidah, Andrew F. (CIV) ▓▓▓▓▓▓▓▓▓ ; Sirkovich, Eitan R (CIV) ▓▓▓▓▓▓▓▓▓
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Kate,

Regarding FEMA, I still do not think there is any basis for your continued concerns. You have not identified any funding that has actually been "held" or otherwise paused, and as I've already explained, the press reports do not convey the full picture in light of the subsequent February 11 e-mail making clear that FEMA is "not holding on awards." Thus, I do not think there is any basis for raising this issue with the Court, and certainly not on any sort of expedited timeline. Nonetheless, in an effort to demonstrate our good faith (and without conceding that any inquiry into Defendants' internal processes or documents is warranted), I will attach redacted copies of the two communications in a follow-up message (to avoid any file-size issues). I believe that these should resolve the matter.

For CDC, I believe this issue is now moot – I'm told that the relevant grants have been approved for release. All Notices of Awards should have been issued earlier this afternoon, though recipients may not see the awards until later tonight or tomorrow.

Finally, on EPA IRA/IIJA grants, EPA has informed me that I can represent the following to you all: "EPA intends to clear any remaining pauses on IRA/IIJA funds disbursement. As of 10am on February 18, 2025, the Office of the Chief Financial Officer is still in the process of unlocking the relevant accounts. That work should be completed no later than the morning of February 19th."

Thank you,
Daniel

---



**From:** Kate Sabatini ▓▓▓▓▓▓▓▓▓ >
**Sent:** Monday, February 17, 2025 7:43 PM
**To:** Schwei, Daniel S. (CIV) ▓▓▓▓▓▓▓▓▓▓ >
**Cc:** Sarah Rice < ▓▓▓▓▓▓▓ >; ▓▓▓▓▓▓▓▓▓ ; Freidah, Andrew F. (CIV) ▓▓▓▓▓▓▓▓ >; Sirkovich, Eitan R (CIV) < ▓▓▓▓▓▓▓ >
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Daniel:

Regarding FEMA, thank you for alerting us to the communications. If you are able to provide them to us, that would help us evaluate whether we can avoid motion practice on this matter.

With respect to IRA/IIJA, we have yet to hear any reassurance from you that, as to a vast majority of the grants—including several highlighted in Plaintiff States' first motion to enforce—those funds are not being paused or frozen in violation of the TRO. Indeed, we have received no information from you whatsoever regarding the reasons for these continued disruptions. Please confirm to us no later than 5 pm EST tomorrow (Tuesday) that all pauses or freezes of these funds have been ended, so that we can avoid further motion practice.

Finally, we would like to return to the issue of the CDC Rape Prevention and Education Grants. In addition to California, we have now learned that New York's RPE Grants are suspended. You previously said that this was being done independently as an exercise of "agency discretion." But the authorizing statute does not provide the agency with any discretion. *See* 42 U.S.C. § 280b-1b ("The Secretary . . . shall award targeted grants to States . . . ."). This is squarely covered by the Court's TRO. As with the IRA/IIJA grants, we ask that you confirm to us no later than 5 pm EST tomorrow (Tuesday) that all such pauses or freezes have been ended, so that we can avoid motion practice.

Best,
Kate



**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI - 02903
████████████ | www.riag.ri.gov |

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.

---



**From:** Schwei, Daniel S. (CIV) <████████████>
**Sent:** Friday, February 14, 2025 6:12 PM
**To:** Kate Sabatini <████████████>
**Cc:** Sarah Rice <████████████>; M████████████; Freidah, Andrew F. (CIV) ████████████; Sirkovich, Eitan R (CIV) ████████████
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

[External email: Use caution with links and attachments]
Sorry, one more technical clarification from DOE given the complexity of these programs. Payment to New York under the Methane Emissions Reduction Program (MERP) may not be ripe yet because there may still be some negotiations required between DOE and the State. So DOE's intent to make those payments is subject to the required negotiations.

Thank you,
Daniel

---



**From:** Schwei, Daniel S. (CIV)
**Sent:** Friday, February 14, 2025 5:32 PM
**To:** 'Kate Sabatini' ████████████
**Cc:** 'Sarah Rice' <████████████>; ████████████; Freidah, Andrew F. (CIV) ████████████; Sirkovich, Eitan R (CIV) ████████████
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Sorry, a couple slight corrections regarding DOE. First, the HER/HERE payment to NYSERDA has been approved, and I understand that HER/HERE payments for other states are in line for approval, but I'm not sure if those other states' payments have actually yet been approved. Second, regarding the spreadsheet, Solar for All is listed as a DOE program but it's an EPA program – so DOE "currently intend[ing] to make those payments," as stated in my email below, would not extend to Solar for All which is not their program.

Thank you,
Daniel

---



**From:** Schwei, Daniel S. (CIV)
**Sent:** Friday, February 14, 2025 4:57 PM
**To:** 'Kate Sabatini' <████████████>
**Cc:** 'Sarah Rice' <████████████>; 'R████████████ ████████████>; ████████████; Freidah, Andrew F. (CIV) ████████████; Sirkovich, Eitan R (CIV) ████████████ ████████████>
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Kate,

Following up on the Department of Energy grants, with reference to the spreadsheet you provided in your e-mail of Tuesday

(February 11) at 4:55pm, my understanding is that Department of Energy currently intends to make those payments. I'm told that the HER/HERE payment to New York (NYSERDA) has already been approved for payment ($25,935.84 most recently), as well as HER/HERE payments to other states.

Regarding FEMA, I now have copies of two communications – both the February 10 e-mail (mentioned in news reports) and a follow-up February 11 e-mail making clear that "[w]e are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments are released to recipients[.]" They are fairly programmatic in nature and I would not want them released publicly without review for potential redactions. But if providing copies would help avoid unnecessary motion practice, I am open to doing that – please let me know.

Thank you,
Daniel



**From:** Schwei, Daniel S. (CIV)
**Sent:** Friday, February 14, 2025 2:23 PM
**To:** Kate Sabatini <████████████>
**Cc:** Sarah Rice <████████████>; ████████████ Freidah, Andrew F. (CIV) <████████████>; Sirkovich, Eitan R (CIV) <████████████>
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Kate,

Regarding "account suspensions in ASAP," I am not entirely sure as to which agency or grants you're referring. I assume that most of them are EPA grants (based on the spreadsheet you sent over earlier). We have again passed along your concerns to EPA and they are aware of the Court's Orders. Unfortunately, I don't have further information from EPA that I can share with you at this time.

To the extent the account suspensions in ASAP are also the Department of Energy grants listed on your earlier spreadsheet, DOE is looking into those. I may have more information soon about payments on the accounts listed in that spreadsheet, and will pass along any further information when I receive it.

For the CDC award referenced below, my understanding is that the program involved was paused based on a directive from the Acting Secretary on January 21, 2025 to pause issuing documents and public communications, which was done independently of the EOs and the OMB Memo. Because it was based on agency discretion separate from the OMB Memo and the EOs, it falls outside the scope of the TRO.

On FEMA, my understanding continues to be that, outside of a small number of programs such as SSP (as noted below), the press reports are inaccurate as to a general pause on funding. Despite your concerns based on those news reports, you have not identified any funding that has actually been "held" or otherwise paused. If you can identify specific funding that the Plaintiffs have not been able to access from FEMA, we can try to resolve any concerns regarding those specific items.

When I have further information to report, I'll let you know.

Thank you,
Daniel

**From:** Kate Sabatini ████████████>
**Sent:** Thursday, February 13, 2025 9:21 PM
**To:** Schwei, Daniel S. (CIV) <████████████>
**Cc:** Sarah Rice <████████████>; ████████████; Freidah, Andrew F. (CIV) ████████████>; Sirkovich, Eitan R (CIV) <████████████>
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Daniel:

The account suspensions in ASAP the states and nonprofits within our states have been experiencing appear to be continuing today, days after we first notified you of this issue. The January 31, 2025 TRO specified that to the extent the Defendants were engaged in any "'identif[ication] and review' of federal financial assistance programs, . . . , such exercise shall not affect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations." The Court has further clarified that "The Defendants must comply with the plain text of the TRO not to pause any funds based on pronouncements pausing funding incorporated into the OMB Directive, like Section 7(a) of the Unleashing Executive Order, and the OMB Unleashing Guidance. The TRO requirements include any pause or freeze included in the Unleashing Guidance," and "The Defendants must immediately restore withheld funds, including those federal funds appropriated in the Inflation Reduction Act and the Infrastructure Improvement and Jobs Act. The directives in OMB M-25-11 are included in

the TRO."

Plaintiff States still cannot access the federal funds appropriated in the Inflation Reduction Act and the Infrastructure Improvement and Jobs Act (nor the DERA clean diesel grants we mentioned in my previous email) in what seems to be a sweeping deletion of many of their grant accounts in ASAP. Furthermore, we are hearing that states may have to stop work on programs funded by these awarded grants. Given these facts, please explain why Defendants believe they are in compliance with the TRO. If there are any communications from EPA or other defendant agencies related to the account deletions in ASAP, please provide them.

Further, the detail you have provided regarding FEMA does not reassure the Plaintiff States that there is compliance with the TRO. Public reporting referenced a communication that ordered a general pause in funding. Your answer that FEMA is developing a review process does not answer whether FEMA is in compliance with the Order — it only raises more questions. Moreover, we note that the Order prohibits any such review from delaying or impeding funding. Can you provide the publicly reported communication please? If there were subsequent communications withdrawing that communication or otherwise modifying it, please provide those as well.

Finally, I wanted to share CA's CDC grant number: CDC-RFA-CE-24-0027

Thank you,
Kate

**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI - 02903
Office: ██████████████

██████████████ | www.riag.ri.gov | 

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.

**From:** Schwei, Daniel S. (CIV) < ██████████████ >
**Sent:** Wednesday, February 12, 2025 7:47 PM
**To:** Kate Sabatini ██████████████ >
**Cc:** Sarah Rice < ██████████████ >; ██████████████ ; Freidah, Andrew F. (CIV) ██████████████ ; Sirkovich, Eitan R (CIV) < ██████████████ >
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

[External email: Use caution with links and attachments]
Kate,

Regarding California's OJJDP Title II grant, I'm told that there is a hold in place on that grant and that the hold has been in effect since December 6, 2024, which is the same date that the award itself was made.

My understanding is that, when reviewing California's application for Title II funding, OJJDP determined that the application lacked required information (or provided information that needed clarification in order for OJJDP to determine sufficiency). OJJDP nonetheless elected to make the award, but informed the State that drawdowns would be held under the award until such time as the State provided the missing information. The hold is still in effect because the State has not yet provided the required information to OJJDP. I'm told that OJJDP has been working with California to obtain the required information, and California is well aware of what the condition is and why the hold is in place.

In light of the above, I don't see how this hold relates to the issues in this case or any aspect of TRO compliance.

--Daniel

**From:** Schwei, Daniel S. (CIV)
**Sent:** Wednesday, February 12, 2025 6:05 PM
**To:** Kate Sabatini < ██████████████ >
**Cc:** Sarah Rice < ██████████████ >; ██████████████ Freidah, Andrew F. (CIV) < ██████████████ ✓>; Sirkovich, Eitan R (CIV) < ██████████████ >
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Kate,

I have passed along your concerns (both in this email and from last night) to EPA and am trying to get more information that I can provide to you all.

On FEMA, my understanding is that, with the exception of a small number of programs (such as the Shelter and Services Program, addressed in the Hamilton declaration filed last night), FEMA has not implemented a categorical pause or freeze on reimbursements for FEMA grants, but rather is developing a review process for payment requests, as part of FEMA's own statutory and regulatory authorities.

My contact at DOJ-OJJDP said he was unaware of California's Title II award being paused but is looking into it.

On the California CDC grant, do you have the grant number available? I have passed along your message but the grant number would likely help expedite efforts to identify what's happening there.

I hope you all can appreciate that we are doing our best to look into these issues while also complete our filing due tonight. I'll let you know when I have more information I can share.

Thanks,
Daniel



**From:** Kate Sabatini < ███████ >
**Sent:** Wednesday, February 12, 2025 4:49 PM
**To:** Schwei, Daniel S. (CIV) < ███████ >
**Cc:** Sarah Rice < ███ >; ███████ Freidah, Andrew F. (CIV) < ███████ >; Sirkovich, Eitan R (CIV) < ███████ >
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Daniel:

We are continuing to hear from state agencies and nonprofits located in our states that their grants related to IRA/IIJA are unavailable in ASAP.

Additionally, Massachusetts is reporting that state Clean Diesel grants (Diesel Emissions Reduction Act Electric Solicitation Grants) have been suspended in ASAP. These grants fund important projects that accelerate the retirement of less efficient, more polluting diesel vehicles, engines, and equipment.

California is also reporting that its USDOJ Office of Juvenile Justice Delinquency Prevention Title II grant has been paused, and that there is no word on as to when the already awarded funds will be provided. This grant provides critical support for aftercare/reentry to avoid future recidivism, alternatives to juvenile detention and placement, and community-based programs (diversion, job training, mentoring, counseling, and training programs) that prevent crime and keep our communities safe.

In addition, California's award of funding from CDC for Rape Prevention and Education as part of the national sexual violence prevention program has been delayed; funding should have been received by or about January 31, 2025. The CDC portal for grants is not accessible.

Please share any information you have on these matters, or those raised last night in my email with respect to FEMA, as soon as possible.

Best,
Kate

**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI - 02903
Office: ███████
███████ | www.riag.ri.gov |



The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.

**From:** Schwei, Daniel S. (CIV) < ███████ >
**Sent:** Tuesday, February 11, 2025 8:16 PM
**To:** Kate Sabatini < ███████ >

**Cc:** Sarah Rice ███████████ ; ███████████████████████ ; Freidah, Andrew F. (CIV)
<███████████████ >; Sirkovich, Eitan R (CIV) <█████████████ >
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

[External email: Use caution with links and attachments]
Kate,

As you saw, we filed a motion regarding FEMA funding for one program, which I believe is the subject of some of the reporting in that NBCNews article. As noted in our motion, the funding for that program was paused as an exercise of the agency's own authorities. In terms of the broader alleged pause reported in that article, I was not aware of it prior to reading the article. I've contacted my colleagues at DHS and FEMA, and my preliminary understanding is that there is not actually a blanket pause or freeze on funding for FEMA grants, but rather a new review process before releasing funds for reimbursement. I'm trying to get more details but I wanted to pass along what I have now.

As for EPA, I have also reached out to them and will let you know what I'm able to find out.

Thank you,
Daniel

---

**From:** Kate Sabatini <████████████ >
**Sent:** Tuesday, February 11, 2025 4:55 PM
**To:** Schwei, Daniel S. (CIV) <█████████████ >
**Cc:** Sarah Rice <████████████ ; ████████████████ ; Freidah, Andrew F. (CIV)
<████████████ >; Sirkovich, Eitan R (CIV) <█████████████ >
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Daniel:

Thank you for letting me know.

We had been planning to bring to your attention immediately some reports that we are receiving in the news and from various Plaintiff states about continued non-compliance with the Court's TRO, including reports in the news that Stacey Street, Director of the Office of Grant Administration for FEMA has directed her team to put financial holds on all awards for fiscal years 2021, 2022, 2023, and 2024. https://www.nbcnews.com/politics/donald-trump/fema-official-ignores-judge-order-freeze-grant-funding-rcna191674

We are also aware that EPA's Office of Budget and Planning announced to EPA staff that twenty-eight IIJA and IRA programs—including CPRG and air monitoring grants—"are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions." Email from Budget & Planning re: Additional Information on IIJA and IRA – program review pause (Feb. 7, 2025). https://hillheat.com/2025/02/10/trump-epa-again-freezes-all-biden-era-programs. Consistent with this, at least ten plaintiff states have reported experiencing interruptions accessing IRA and IIJA funds. A chart identifying these issues is attached.

Please note that as we are sending you this communication, we are being advised of additional disruptions from additional states.

Please advise on the Defendants' compliance with respect to these disruptions as soon as possible.

Thank you,
Kate

**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI - 02903
Office:
████████████ | www.riag.ri.gov |



The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.



**From:** Schwei, Daniel S. (CIV) <████████████>
**Sent:** Tuesday, February 11, 2025 4:35 PM
**To:** Kate Sabatini <████████████>
**Cc:** Sarah Rice <████████>; ████████████; Freidah, Andrew F. (CIV)
<████████>; Sirkovich, Eitan R (CIV) <████████>
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : Corrected Declaration

[External email: Use caution with links and attachments]
Kate,

Thanks for explaining that filing. As a heads up, I wanted to let you know that Defendants will be filing an emergency motion as soon as possible, pertaining to certain FEMA funding and requesting the Court's confirmation that Defendants may continue to withhold that funding.

Thank you,
Daniel

**From:** Kate Sabatini <████████>
**Sent:** Tuesday, February 11, 2025 12:15 PM
**To:** Schwei, Daniel S. (CIV) <████████████>
**Cc:** Sarah Rice <████████>; ████████████; Freidah, Andrew F. (CIV)
<████████>; Sirkovich, Eitan R (CIV) ████████ <████████>
**Subject:** [EXTERNAL] CA25-39JJM State of NY, et al. v. Trump, et al. : Corrected Declaration

Daniel:

Wanted to let you know that we just filed a corrected declaration. Due to a technological issue when redacting, certain characters had been removed from the original declaration.

Thank you,
Kate

**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI – 02903
Office: ████████
████████ | www.riag.ri.gov |

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

# Exhibit D-1

**From:**

**Sent:** Monday, February 10, 2025 4:31 PM

**To:**

**Cc:**

**Subject:** URGENT: Holds on awards

**Importance:** High

Good afternoon, all.

AAD is handling for FEMA GO for FY24 awards – ███ is putting hold toggles on **all** programs listed in the Daily Dash.

For all awards FY23 and prior: put financial holds on *all* of your awards – all open awards, all years (2021, 2022, 2023, 2024).

- ███████████████ you can toggle in **FEMA GO** and do so for all of your fire-related programs
- ███████████ your team will need to go in **ND Grants** and put individual holds on all HSGP and NSGP awards
- ███████████ your team will need to go in **ND Grants** and put individual holds on all EMPG, RCPGP, EOCGP, THSGP awards
- ███████████, your team will need to go in **ND Grants** and put individual holds on all SLCGP and TCGP awards

Please confirm once completed.

███

██████████

Director, Office of Grants Administration
Grant Programs Directorate | Resilience
Office: ██████████ | Mobile: ██████████
██████████

Federal Emergency Management Agency
fema.gov



1
A409

# Exhibit D-2

| | |
|---|---|
| **From:** | ████████ |
| **Sent:** | Tuesday, February 11, 2025 2:10 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | Follow-up |
| **Importance:** | High |

Hi everyone, follow up to yesterday's verbal late afternoon discuss and to the subsequent Teams meeting we had just a short while ago. Here is our action plan going forward:

Awards will be amended so that the following grant programs will result in reimbursement requests being manually reviewed and, when approved by staff, manually reimbursed to recipients:

*Already Standard Manual Approach Employed (no changes needed)*
- Assistance to Firefighters Grant (AFG) Program
- Fire Prevention & Safety (FP&S) Grant Program
- Staffing for Adequate Fire and Emergency Response (SAFER)
- Shelter and Services Program (SSP)
- State and Local Cybersecurity Grant Program (SLCGP) (FY24)

*Existing awards (FY2024/2023/2022/2021/2020) will be modified so that reimbursement requests will be manually reviewed and manually processed upon approval by program/financial staff. Upon approval of reimbursement requests, GPD will have 30 days to process payment, per 2 CFR Part 200.*
- PSGP
- TSGP
- IBSGP
- THSGP
- RCPGP
- EOCGP
- HSGP
- NSGP
- EMPG
- SLCGP
- TCGP

I am setting up a training meeting today with our system colleagues so that they can walk us through steps. PMO will also be able to add rights to staff to help in amending existing awards.

I will set up a timeline action plan with timelines, roles, and responsibilities for all staff to complete the amendments. I will also coordinate with program colleague counterparts across Resilience and ORR to help ensure that they are aware and can also replicate across their grant program portfolios and will be asking our AAD-Mitigation team members to assist their program colleague counterparts in amending awards.

I am working with ▮▮▮▮ to craft an Information Bulletin that will explain this approach to our grant program recipient stakeholders.

Last but not least, ▮▮▮▮ and I will work to modify the CY25 performance plans to account for this scope of responsibility and ensure that, upon manual review *approvals*, payments will be made within the allotted 30-day maximum timeline noted by 2 CFR Part 200. We will also provide guidance very shortly on program office versus financial office roles and responsibilities with manual reviews and manual reimbursements. I expect that we will model the fire grants approach whereby program offices have primary lead on reimbursement reviews, approval determinations, and manual reimbursement release processings.

**Note that these are not "holds."** We are modifying our programs so that payment requests are now reviewed manually and processed manually. "Holds" implies what we were directed to originally due with OMB M-25-13, which was rescinded and a TRO injunction placed. We are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be released to recipients (in order to ensure that payments align to the award project, NOFO scope of allowability, 2 CFR Part 200 principles, etc.) For FY 2025, the intent is to have this approach as standard in the NOFOs.

Happy to discuss, thank you.

▮▮▮▮▮

▮▮▮▮▮▮
Director, Office of Grants Administration
Grant Programs Directorate| Resilience
Office: ▮▮▮▮▮▮ |

▮▮▮▮▮▮▮▮

Federal Emergency Management Agency
fema.gov



# Exhibit E

| From: | Schwei, Daniel S. (CIV) |
|---|---|
| To: | Kate Sabatini; Theodore McCombs; Sirkovich, Eitan R (CIV) |
| Cc: | Sarah Rice; ▮▮▮▮▮; ▮▮▮▮▮; Freidah, Andrew F. (CIV); Hall, Emily (CIV) |
| Subject: | RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance |
| Date: | Wednesday, February 26, 2025 8:48:42 AM |
| Attachments: | image001.png |

| EXTERNAL EMAIL: This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious. |
|---|

Kate,

I'm writing to follow-up on the FEMA issue in your message below. We disagree that a "review" process is the same as a "freeze" on funding. Under a review process, the agency fully intends to issue payments but is simply ensuring that all payments are appropriate, and doing so under the terms of the grant program itself – which is fundamentally different than the type of "freeze" that Plaintiffs challenged in this case and that is governed by the TRO. Thus, we do not think that FEMA's review process, implemented as part of the agency's own statutory and regulatory authorities, violates the TRO.

Regarding the February 10 e-mail, as I have already explained (and as the February 11 e-mail makes clear), FEMA did not intend to implement a "hold" in the sense of a pause or withholding of grant funds—*i.e.*, the type of action at issue in this case. Instead, the "hold" referred to in that e-mail was part of implementing the manual review process pursuant to FEMA's own authorities.

That is the same answer for the screenshot you have provided, which simply reflects that the remaining balance is on "hold," but does not reflect that FEMA is unwilling to pay that balance amount. FEMA has confirmed to me that, for the particular grant referenced in the screenshot (the Arizona Office of Homeland Security, number EMW-2022-UA-00008), FEMA will process payment requests and approve them for payment as appropriate. My understanding is that, within PARS itself, FEMA has included a description for the "hold" on funds, stating that the hold is for purposes of "Additional Manual Review" – not an unwillingness to make payments.

I'll circle back later today once I have more substantive information from DOE (probably even sooner than this evening).

Thank you,
Daniel

---

**From:** Schwei, Daniel S. (CIV)
**Sent:** Tuesday, February 25, 2025 8:52 PM
**To:** Kate Sabatini <▮▮▮▮▮>; Theodore McCombs <▮▮▮▮▮>; Sirkovich, Eitan R (CIV) <▮▮▮▮▮>
**Cc:** Sarah Rice <▮▮▮▮▮>; ▮▮▮▮▮; Freidah, Andrew F. (CIV) <▮▮▮▮▮>; Hall, Emily (CIV) <▮▮▮▮▮>
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Kate,

I'm conferring with my clients on your e-mail, and will circle back tomorrow morning regarding FEMA.

Regarding DOE, as noted in my prior email, DOE has been continually working to expedite its payments. Along those lines, my understanding is that DOE has recently implemented changes that should make its payment approval process faster, and that they think should eliminate your concerns going forward, with all programs directed to pay invoices. Given your list of sixteen accounts that are purportedly not available, obviously that is a concern as to whether the system is working. DOE would like to investigate those accounts but they are not able to do so before noon tomorrow (given that we did not receive your inquiry until after 4pm today, and given the inclusion of sixteen accounts on the list). DOE expects it should be able to provide a more substantive response by tomorrow evening, and hopefully avoid the need for motion practice on these issues.

Thank you,
Daniel

---

**From:** Kate Sabatini <▮▮▮▮▮>
**Sent:** Tuesday, February 25, 2025 4:12 PM
**To:** Schwei, Daniel S. (CIV) <▮▮▮▮▮>; Theodore McCombs <▮▮▮▮▮>; Sirkovich, Eitan R (CIV) <▮▮▮▮▮>
**Cc:** Sarah Rice <▮▮▮▮▮>; ▮▮▮▮▮ Freidah, Andrew F. (CIV) <▮▮▮▮▮>; Hall, Emily (CIV) <▮▮▮▮▮>
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Daniel:

Thank you for your email. We can confirm that DOE appears to have restored access to the five grants that Ted emailed about. California has

identified a sixth frozen DOE grant, the Weatherization Assistance Program funded under the IIJA, and other Plaintiff States have identified further frozen DOE grants (see attachment).

In our view, DOE appears to have instituted an across-the-board funding freeze spanning multiple programs under the guise of a "review." Although we have attached a document that identifies affected grants in Plaintiff States, we disagree that we are under any obligation to identify specific grants to DOE in order to permit it to unfreeze the relevant funds. Rather, the TRO imposes an affirmative obligation on DOE to unfreeze those funds itself. We notice that many of the same programs are getting the same error messages in different States, so we assume the problems are more widespread among Plaintiff States than just those for which we are providing grant numbers for now. Indeed, at least one of our agencies has received a mass email from DOE attempting to suspend grants in which the email author wrote, "I am unable to provide your specific award number(s) as this email is going to all active awards for our office." If DOE isn't taking the time to identify which grants it is threatening by grant number, we are unsure why they are requiring it now.

It does not matter that DOE calls the freeze a "review." Many of our agencies' DOE grants have been frozen or missing in ASAP for three weeks or more, with some frozen or missing since the issuance of OMB M-25-13. A delay of this sort is unprecedented in our agencies' experience working with federal partners, and plainly reflects an express decision to freeze funding streams while reviewing federal programs for consistency with executive priorities. The freeze appears to be categorical in nature, and it applies only to "disfavored" programs, such as those funded by the IRA and IIJA. Under these facts, DOE's "review" process is simply a freeze by another name, and so it violates the TRO.

The same appears to be true at FEMA. As the emails you sent reflect, on February 10 (shortly after the issuance of the TRO), a FEMA official imposed "financial holds on _all_ . . . all open awards, all years (2021, 2022, 2024, 2024)." The February 11 email attempts to relabel this across-the-board freeze as a manual "review" process but, again, that is a distinction without a difference: many of our agencies have been waiting over two weeks to obtain funding under these grants, and FEMA's payment portal (see attached screenshot) states that these funds are still subject to "holds." Under these circumstances, too, FEMA's "review" process appears to be simply a freeze by another name, and it, too, violates the TRO.

We continue to hope to avoid motion practice on these matters. We therefore ask that DOE and FEMA cease freezing funds and resume funding to Plaintiff States under all grant programs that are currently subject to manual "review" processes. Please let us know by noon tomorrow whether your clients will do so.

Thank you,
Kate



Kathryn M. Sabatini (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI – 02903
Office: ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ | www.riag.ri.gov |

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.



**From:** Schwei, Daniel S. (CIV) <▮▮▮▮▮▮▮▮▮▮>
**Sent:** Monday, February 24, 2025 3:57 PM
**To:** Theodore McCombs ▮▮▮▮▮▮▮▮▮▮▮>; Kate Sabatini <▮▮▮▮▮▮▮>; Sirkovich, Eitan R (CIV)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Freidah, Andrew F. (CIV)
**Cc:** Sarah Rice <▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮>; Hall, Emily (CIV) <▮▮▮▮▮▮▮▮▮▮▮>
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

[External email: Use caution with links and attachments]

Kate, Ted,

Regarding your message below, we've conferred with our clients and do not believe there is any need or basis for motion practice.

In terms of the DOE grants, the only list of grant numbers we received was Ted's e-mail below – _i.e._, listing five specific grants involving California agencies and entities. DOE has investigated those grants, and confirmed that all of them are available for Plaintiffs to receive funding from DOE. DOE therefore disagrees that those grants are or were "frozen." As you note, DOE is using a process for reviewing and approving payment requests, but that is not the same as a "freeze" on the relevant grants; to the contrary, DOE is continually working to expedite payments further.

Going forward, to the extent Plaintiffs identify other DOE funding that Plaintiffs believe is not properly available, DOE is willing to investigate – but their ability to do so requires knowing sufficient information about the relevant contract (*e.g.*, the DOE Contract Number, the state involved, the name of the grant, etc.) And it would be most useful if Plaintiffs submit any queries on a rolling basis as they arise, rather than asking DOE to investigate numerous different funding streams all at once. As the parties have already demonstrated, we think that working cooperatively in this manner is the best path for resolving any issues, rather than unnecessary (and potentially premature) motion practice.

As for the FEMA issue, FEMA has likewise informed us that none of the grant programs you list has been "suspended." Again, FEMA has expanded its manual review process to additional grant programs, including some of the ones you list below. (My understanding is that, even before this Administration, the State and Local Cybersecurity Grant Program was subject to this manual review process, as noted in the February 11th FEMA e-mail I previously attached.) Just as with DOE, however, we do not understand this review process, implemented based on the agency's own statutory and regulatory authorities, to violate the TRO. If there is specific FEMA funding that you believe has been improperly "suspended," please let us know and we can provide a more specific response.

Thank you,
Daniel



**From:** Theodore McCombs <⬛⬛⬛⬛⬛>
**Sent:** Friday, February 21, 2025 1:15 PM
**To:** Kate Sabatini ⬛⬛⬛⬛⬛; Sirkovich, Eitan R (CIV) <⬛⬛⬛⬛⬛>
**Cc:** Sarah Rice ⬛⬛⬛⬛⬛>; ⬛⬛⬛⬛⬛; Freidah, Andrew F. (CIV)
<⬛⬛⬛⬛⬛>; Schwei, Daniel S. (CIV) ⬛⬛⬛⬛⬛; Hall, Emily (CIV) ⬛⬛⬛⬛⬛
**Subject:** [EXTERNAL] RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

Eitan and Daniel,

Below are the DOE-administered grants received by California state agencies and entities, which are still experiencing freezes:

| | | | |
|---|---|---|---|
| DOE | CEC - California Energy Commission | Home Electrification and Appliance Rebates (HEEHRA) Program | DE-SE0000080 |
| DOE | CEC - California Energy Commission | State Energy Program (SEP) | DEEE0010060 |
| DOE | CEC - California Energy Commission | Energy Efficiency and Conservation Block Grant (EECBG) Program | DESE0000299 |
| DOE | SDSU - San Diego State University | Industrial Assessment Centers, SDSU (ITACs) | DE-EE0010197 (CFDA: 81.117) |
| DOE | SJSU - San Jose State University | Energy Efficiency and Renewable Energy Information Dissemination, Outreach, Training, and Technical Analysis/Assistance Grant | DE-EE001094 (CFDA: 81.117) |

Thanks,
-Ted

**From:** Kate Sabatini <⬛⬛⬛⬛⬛>
**Sent:** Friday, February 21, 2025 9:31 AM
**To:** Sirkovich, Eitan R (CIV) ⬛⬛⬛⬛⬛>
**Cc:** Sarah Rice <⬛⬛⬛⬛⬛>; ⬛⬛⬛⬛⬛; Freidah, Andrew F. (CIV)
⬛⬛⬛⬛⬛>; Schwei, Daniel S. (CIV) <⬛⬛⬛⬛⬛>; Hall, Emily (CIV) ⬛⬛⬛⬛⬛; Theodore
McCombs
**Subject:** RE: CA25-39JJM State of NY, et al. v. Trump, et al. : TRO Compliance

EXTERNAL EMAIL: This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Eitan and Daniel:

Thank you for your emails.

With respect to the DOE grants, as a gesture of good faith, we will provide you with a list of the grant numbers that we are aware have been frozen in violation of the Court's TRO. At the same time, the TRO requires all relevant grants to be unfrozen, not merely the grants whose grant numbers we provide to DOE. To the extent these freezes are attributable to a newly instituted process of review and approval by political appointees, that policy violates the TRO. We will send grant numbers as we have them in batches. We expect any grants we specifically identify today to be unfrozen no later than Monday at noon. If DOE does not unfreeze these specific grants, or if we identify further DOE grants that remain frozen as of 5 PM on Monday, we will proceed to seek relief from the Court.

We are continuing to hear about additional freezes from other agencies, which we will compile and share when we are able.

We also wanted to return to the FEMA issue. Several Plaintiff States are experiencing suspensions and delays of FEMA funds, in particular funds associated with the State and Local Cybersecurity Grant Program, Homeland Security Grant Program, Nonprofit Security Grant Program, and Emergency Management Performance Grant Program. The February 11 email that you provided to us appears to have instructed staff to institute what amounts to a hold, by instructing staff to institute a new requirement to manually review and process payment requests. The freezes that result from this new process are likewise an impediment to access obligated funds in violation of the TRO. These are essential health, safety and welfare funds that are not timely flowing to the states. We ask that you correct this violation immediately, but no later than 5pm on Monday.

Best,
Kate

**Kathryn M. Sabatini** (she/her)
Special Assistant Attorney General
Chief | Civil Division
Office of the Attorney General
150 South Main Street | Providence, RI - 02903
Office: ██████ | www.riag.ri.gov |

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL, and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message from your system.



# Exhibit F

| From: | support.pagrants@fema.dhs.gov |
|---|---|
| To: | |
| Subject: | [External] FEMA PA Notification - Message to Grant Recipients on Review Process Updates |
| Date: | Friday, February 28, 2025 10:17:00 AM |

Dear Recipient,

The Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on the allowability of costs for all grant payments and obligations, as permitted by 2 C.F.R Part 200, where applicable.

Effective immediately, FEMA and DHS are implementing an additional review process of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction.

Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

For existing payment requests currently in the system, FEMA will reach out if additional information is needed.

Thank you,
FEMA Recovery Directorate

If you require additional assistance with the FEMA Grants Portal, please contact the Grants Portal Hotline at (866) 337-8448 or FEMA-Recovery-PA-Grants@fema.dhs.gov

*Please do not respond to this e-mail. This mailbox is not monitored, and you will not receive a response.*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

## <u>DEFENDANTS' NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States

Court of Appeals for the First Circuit from this Court's preliminary injunction, as set

forth in the Memorandum and Order dated March 6, 2025 and docketed at ECF

No. 161.

Dated: March 10, 2025          Respectfully submitted,

                              YAAKOV M. ROTH
                              Acting Assistant Attorney General

                              ALEXANDER K. HAAS
                              Director

                              */s/   Daniel Schwei*
                              DANIEL SCHWEI
                              Special Counsel (N.Y. Bar)
                              ANDREW F. FREIDAH
                              EITAN R. SIRKOVICH
                              Trial Attorneys
                              United States Department of Justice
                              Civil Division, Federal Programs Branch

1100 L Street NW
Washington, DC 20530
Tel.:  (202) 305-8693
Fax:  (202) 616-8460
Email:   daniel.s.schwei@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on March 10, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

<u>*/s/ Daniel Schwei*</u>
Daniel Schwei

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

## **DECLARATION**

I, Cameron Hamilton, hereby state as follows:

1. I am the Senior Official Performing the Duties of the Administrator, Department of Homeland Security (DHS or Department), Federal Emergency Management Agency (FEMA). The Senior Official Performing the Duties of the FEMA Administrator is the DHS official responsible for being the principal advisor to the President and the Secretary of Homeland Security for all matters relating to emergency management in the United States.

2. Since being sworn in on January 25, 2025, the Secretary of Homeland Security (Secretary) has issued several written and verbal directives regarding payments made by the Department, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is a January 28, 2025, Direction on Grants to Non-governmental Organizations. (Memorandum). *See* Exhibit 1.

1
A424

3. Pursuant to the Secretary's January 28, 2025, direction and for the reasons stated in my declaration filed with this Court on February 11, 2025, FEMA has paused funding to the Shelter and Services Program, Case Management Pilot Program, and Emergency Food and Shelter – Humanitarian program. *See* Exhibit 2.

4. On Monday, February 10, 2025 at 4:31 pm, the Director of FEMA's Office of Grants Administration, Stacey Street, issued an email directing "putting hold toggles on all programs listed in the Daily Dash" for Fiscal Year (FY) 2024 grants in FEMA's grant system, FEMA Grants Outcomes (FEMA GO). In the same email, Ms. Street also directed four team members to "put financial holds on all of your awards – all open awards, all years (2021, 2022, 2023, 2024)" and provided specific direction to each of the four. *See* Exhibit 3.

5. The regulations at 2 C.F.R. Part 200 establish the uniform administrative rules, cost principles, and audit requirements for Federal grants. Among other things, they establish requirements for a federal agency's management of grant programs before and throughout the lifecycle of the grant award. 2 C.F.R. §§ 200.100(a), (b). Pursuant to 2 C.F.R. § 200.300(a), FEMA has an affirmative duty to "manage and administer [its] Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." To effectively accomplish this, FEMA has inherent authority to manually review source documentation from a grant recipient and other information provided the process is otherwise consistent with the regulations at 2 C.F.R. Part 200 and other applicable requirements. Moreover, FEMA's authority to conduct a manual review process is bolstered by its inherent authority to monitor awards, review its

2

grant records and expenditures, and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient.

6. It was not Ms. Street's intention to freeze grant payments. The intention of her direction was to facilitate FEMA staff conducting a manual review process on grant payments. Putting a "hold toggle" or individual hold on an award in FEMA's grant systems referenced in the email is part of the process required in those systems to allow recipient payment requests to be reviewed manually. The term "hold" used by the system is not synonymous with a pause or withholding of grant funds as that term is used in 2 C.F.R. Part 200 or the terms and conditions of the grant awards. It does not mean that the grant is being frozen, held, or not being distributed; in the parlance used by FEMA's grant systems, it means that the grant can be reviewed manually by staff.

7. Notwithstanding the meaning of "hold toggle" within FEMA, within an hour after Ms. Street sent this email, given the complexity of implementing this guidance, Ms. Street instructed her team to stand down and that additional information would be provided the following day.

8. In a follow up email on Tuesday, February 11 at 2:10 p.m., Ms. Street reaffirmed the verbal discussion from Monday and clarified that the intent of her previous guidance was not a direction to freeze grant payments. She acknowledged that her use of the word "hold" could be misconstrued as an action in violation of the temporary restraining order imposed by this Court and explained, "we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be [sic] released to recipients" and that payments "will be made within the allotted 30-day

3
A426

maximum timeline noted by 2 CFR Part 200." *See* Exhibit 4. Her email also described that several FEMA programs have historically been subject to a manual review process, which is permitted under 2 C.F.R. Part 200. An example of such a program is Exhibit 5.

9. A manual review process is not a pause or withholding of grant funds as that term is used in C.F.R. Part 200 or the terms and conditions of the grant awards, nor does it mean that the grant is being frozen, held, or not being distributed. Instead, it is simply an internal control where FEMA staff manually review all grant payment requests before disbursing payments to recipients. This means FEMA reviews grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients. The process is intended to ensure reimbursement payment requests are allowable, allocable, and reasonable per each award's terms and conditions, including the respective program Notices of Funding Opportunity and 2 C.F.R. Part 200, and are free from fraud, waste, or abuse.

10. FEMA's authority to conduct a manual review process for grant payments equally applies to all recipients, including States. Six FEMA programs have historically been subject to a manual review process:  the Assistance to Firefighters Grant Program (AFG); Fire Prevention & Safety Grant Program (FP&S), Staffing for Adequate Fire and Emergency Response (SAFER), Shelter and Services Program (SSP), Tribal Cybersecurity Grant Program (TCGP) and State and Local Cybersecurity Grant Program (SLCGP). AFG and FP&S have used manual review since they were established in Fiscal Year 2002 and Fiscal Year 2003, respectively. SAFER began in Fiscal Year 2005 and FEMA has utilized manual review since their inception. SLCGP and TCGP were first awarded in Fiscal Year 2022

and Fiscal Year 2023, respectively, and FEMA has utilized manual review since their inception.

11. To ensure Secretary Noem has an opportunity to review relevant obligations, disbursements, and payments consistent with the direction of her January 28, 2025, Memorandum, on February 14, 2025, I formalized the additional manual review process described in Paragraph 9of this Declaration through the issuance of the Grant Processing Guidance (Grant Processing Guidance or Guidance). On that same day, I notified FEMA officials of the immediate implementation of the additional manual review. In this Guidance, I stated it "is necessary to ensure that funding is obligated, disbursed, and paid in line with Secretary Noem's direction, and that we can continue to support the communities and disaster survivors who rely on us for assistance." *See* Exhibit 6.

12. Implementing the Grant Processing Guidance is in furtherance of FEMA grant management obligations described in this Declaration.

13. Further, the issue of payments to recipients under this manual review process is permissible if it complies with the payment regulations governing Federal grant awards at 2 C.F.R. § 200.305. The Grant Processing Guidance specifies that the manual review process must meet regulatory timeframes for timely payments. *See* Exhibit 6.

14. FEMA must comply with regulations governing payments to grant recipients. See 2 C.F.R. §200.305. For grant recipients other than States, 2 C.F.R. §200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 calendar days after receipt of the payment request, unless FEMA reasonably believes the request to be improper.

15. For State recipients, 2 C.F.R. § 200.305(a) instructs that Federal grant payments are governed by Treasury-State Cash Management Improvement Act (CMIA) agreements

("Treasury-State agreement") and default procedures codified at 31 C.F.R. part 205 and Treasury Financial Manual (TFM) 4A-2000, "Overall Disbursing Rules for All Federal Agencies." *See* 2 C.F.R. § 200.305(a).

16. Treasury-State agreements generally apply to "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A and are identified in the Treasury-State agreement. 31 C.F.R. §§ 205.2, 205.6. Where a Federal assistance (grant) program is not governed by subpart A, payment and funds transfers from FEMA to the State are subject to 31 C.F.R. part 205, subpart B. Subpart B requires FEMA to "limit a funds transfer to a State to the minimum amounts needed by the State and must time the disbursement to be in accord with the actual, immediate cash requirements of the State in carrying out a Federal assistance program or project. The timing and amount of funds transfers must be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs." 31 C.F.R. § 205.33(a). Nothing in 31 C.F.R. part 205, subpart B or the Treasury Financial Manual (TFM) 4A-2000 prohibits FEMA's manual review process. Nearly all FEMA grants recently identified by the plaintiffs are not "major Federal assistance programs. "As a result, payments to States for those grants are subject to the "default" rules of subpart B.

17. By implementing this Grant Processing Guidance, in some ways, FEMA is merely expanding how it pays States to additional grant programs. This will include the following programs which Plaintiffs recently inquired about: SLCGP, Homeland Security Grant Program (HSGP), Nonprofit Security Grant Program (NSGP), and the Emergency Management Performance Grant Program (EMPG). With respect to SLCGP, FEMA instituted a manual review process when the program was first authorized in the Fiscal

Year 2022. FEMA is now extending this practice to HSGP, NSGP, EMPG, and other programs subject to my direction in the Grant Processing Guidance.

18. The grant programs identified in Paragraph 17 are generally not considered "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A. For example, they are not identified in the State of New York's FY 2025 Treasury-State agreement. *See* Exhibit 7. As a result, those programs are subject to the "default" rules in 31 C.F.R. part 205, subpart B.

19. There is at least one exception. The District of Columbia's (DC) FY 2025 Treasury-State agreement lists HSGP as a "major federal assistance program." Like the "default rules" at Subpart B, nothing in DC's Treasury-State agreement prohibits FEMA's manual review process. For example, nothing in the agreement stipulates the amount of time for which FEMA must review the State's source documentation to ensure all costs are allowable, allocable, and reasonable, before approving and processing a manual payment.

20. On February 28, 2025, FEMA provided written notice to its grant recipients that it has instituted an additional manual review process for its grant programs (February 28, 2025, Manual Review Notice). *See* Exhibit 8. Specifically, FEMA notified grant recipients:

> Effective immediately, FEMA and DHS are conducting additional reviews of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:

- Will this disbursement go to any subrecipients, and if so, which ones?
- What is the total amount of funds going to each subrecipient?
- What activities will be funded by this disbursement?
- What is the time period covered by this payment request?

For existing payment requests currently in the system, FEMA will reach out if additional information is needed. Please note that if FEMA does not receive this information, payment requests will not be processed.

21. The "hold" from the Payment and Reporting System (PARS), appearing on the screenshots submitted by Plaintiff States, is not a pause or freeze of a grant but is instead a mechanism to assist FEMA with conducting the additional manual review described in Exhibit 8. It gives FEMA the ability to limit the drawdown of funds by a grantee. In PARS, the grantee can see the reason why a certain amount is not available for immediate drawdown by running the Payment Hold Report in Detail Mode. PARS will state "hold", but it is a system term, and, in the description, it clearly states for "additional manual review." FEMA created the new "hold" reason code in PARS on February 18, 2025, and PARS provides a short description that states: "Additional Manual Review." Once the grants team completes the manual reviews the grants will be made available for drawn down post review. This "hold" does not appear for reimbursement requests submitted in the FEMA GO Payment system.

22. In 2018, FEMA began to open new funding opportunities to select grant programs in the FEMA GO grants management system. Because FEMA GO also manages payment requests, recipients were no longer required to use the PARS system for payment requests. For example, FEMA has used FEMA GO to open funding opportunities for the following

grants from 2018 to present: AFG, SAFER and FP&S. In 2022, FEMA began using FEMA GO to support funding opportunities for Building Resilient Infrastructure and Communities (BRIC) Grant Program and Flood Mitigation Assistance (FMA).

23. In 2023, an additional 14 non-disaster grant programs began using FEMA GO including:

- Cooperating Technical Partners (CTP)
- Community Assistance Program - State Support Services Element (CAP-SSSE)
- Earthquake Consortium and State Support, National Earthquake Hazard Reduction Program (NEHRP)
- Homeland Security National Training Program/National Domestic Preparedness Consortium (HSNTP-NDPC)
- Homeland Security National Training Program/Continuing Training Grant (HSNTP-CTG)
- National Dam Safety Program (NDSP)
- National Incident Management System (NIMS)
- Shelter and Services Program (SSP)
- State Fire Training System Grant (SFTS)
- Emergency Management Baseline Assessments Grant (EMBAG)
- High Hazard Potential Dams Rehabilitation Grant (HHPD)
- Urban Search and Rescue Readiness Cooperative Agreements (US&R)
- Homeland Security Preparedness Technical Assistance Program (HSPTAP)
- Presidential Residence Protection Assistance Grant (PRPA).

24. In 2024, 18 additional non-disaster grant programs opened funding opportunities in FEMA GO, including:

- Emergency Food and Shelter Program (EFSP)
- Emergency Management Performance Grants (EMPG)
- Intercity Bus Security Grant Program (IBSGP)
- Intercity Passenger Rail Program (IPR)
- Port Security Grant Program (PSGP)

- Targeted Violence and Terrorism Prevention (TVTP) Grant Program
- Transit Security Grant Program (TSGP)
- Tribal Homeland Security Grant Program (THSGP)
- Emergency Operations Center (EOC)
- Regional Catastrophic Preparedness Grant Program (RCPGP)
- Nonprofit Security Grant Program (NSGP-UA)
- Homeland Security Grant Program (HSGP)
- Case Management Pilot Program (CMPP)
- Next Generation Warning System (NGWS)
- Flood Mitigation Assistance SWIFT Current (SWIFT)
- Hazard Mitigation Grant Program (HMGP)
- Hazard Mitigation Grant Program (HMGP) - Post Fire
- Management Assistance Grant Program (FMAG)

25. In 2025, FEMA will begin using FEMA GO for the following grant funding opportunities:

- Disaster Case Management (DCM)
- Safeguarding Tomorrow RLD (STORM)
- Pre-Disaster Mitigation (PDM)

26. Funding opportunities for the years prior to the years in which FEMA GO began supporting the non-disaster grant programs are still managed in the legacy grant systems that use PARS for payment processing. These non- disaster grants will be migrated to FEMA GO beginning in late 2025. Following completion of the data migration, payment of older grants will be processed in FEMA GO. For example, in Paragraph 5 of Mr. McComb's Declaration, he asserts that Arizona's Nonprofit Security Grants for Fiscal Years 2022 and 2023 are subject to a hold or freeze. This is not a hold or a freeze of the grant. Rather, this is language from PARS which reflects the use of the additional manual review process for those grants.

10
A433

27. Plaintiffs contend that they receive an error message when they attempt to submit a request for payment and that the system generates an error message when an attempt is made. This only occurs in PARS and as explained above only some of the grants identified by Plaintiffs are still subject to payment through PARS.  As part of FEMA's initiation of the additional manual review and given the technical limitations of the PARS system, to facilitate FEMA's ability to conduct the additional manual review, FEMA's Office of the Chief Financial Officer (OFCO) was required to reduce each grant award in PARS to a zero balance. When the OCFO made this change, it temporarily precluded those with grants still subject to PARS from submitting a request for payment. The Grants Programs Directorate (GPD), however, was not aware of this change until on March 3, 2025, and is currently taking steps to rectify the issue. To correct this issue, FEMA must reconfigure its PARS system and which is the reason why the recipients could not submit requests for payment through PARS. FEMA is updating the process by which recipients will be able to submit payments for manual review, through the Non-Disaster Grants System (ND Grants), the grants system where awards in PARS will be functional, by on or around March 14, 2025. FEMA will provide instructions to grant recipients through FEMA's ND Grant System explaining how to submit requests for the manual review process.  For example, for the grants identified in Paragraph 5 of the McCombs Declaration, Arizona will be able to resubmit the request for payment following the instructions provided along with the additional information required set forth in the February 28, 2025, Manual Review Notice, (Exhibit 8) and FEMA then will determine the amount eligible for payment, if any. This will apply to the additional grants identified in the McCombs Affidavit other than the grant identified in Paragraph 3 of this Declaration.

28.. On January 31, 2025, it is my understanding that the Court issued a Temporary Restraining Order and pursuant to the Court's direction that TRO was distributed to FEMA's leadership and staff who administer grants and other financial assistance. *See* Exhibit 9.

29. On March 6, 2025, it is my understanding that the Court issued a Preliminary Injunction and ordered FEMA to file a status report informing it of the status of FEMA's compliance with the Preliminary Injunction. To the best of my knowledge, FEMA is complying with the Preliminary Injunction. FEMA's additional manual review is based upon the Secretary's authority and FEMA's inherent duty to ensure that grants are administered in a manner that is consistent with the US Constitution, applicable Federal statutes and regulations and with the terms and conditions of the grants.

29. On March 9, 2025, Plaintiff, through the Department of Justice, provided FEMA with a list of grants that they contend are "experiencing disruption." Exhibit 10. FEMA has reviewed this list and has determined that, of the 146 grants included:

- 114 are currently undergoing the manual review only as described in this Declaration (including the Colorado SSP award described below in Paragraph 30 and the Wisconsin SSP award described in Paragraph 31 below);
- 15, in addition to the manual review, also have a legacy hold[1] (defined below) on a portion of the grant for reasons described in the table below;
- 13 do not provide sufficient information to make a determination (no grant award number or incomplete grant number provided);
- three were duplicate grant award numbers, and

---

[1]   A Legacy Hold means a hold that was previously in place on all or a portion of a grant award while FEMA was awaiting additional information from a grant recipient. These holds can be in place for several reasons including programmatic reviews, budget reviews, Environmental and Historic Preservation reviews and approvals and other circumstances where the grant recipient is required to provide information to FEMA to ensure allowability, applicability, and eligibility of obligated grant funds.

- 1 (FY 2022 Cooperating Technical Partners grant for the state of Colorado) had drawn down all funds from the grant award.

The table below notes the fiscal year, grant program, award number, recipient, and the rationale for the legacy hold on the award in question.

| Fiscal Year | Grant Program | Award Number | Recipient | Reason for Legacy Hold |
|---|---|---|---|---|
| 2022 | SLCGP | EMW-2022-CY-00024 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $2,136,499: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00021 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $4,338,969: additional project details required |
| 2024 | SLCGP | EMW-2024-CY-05274 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $3,307,731.85: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00006 | Maryland Department of Emergency Management | Legacy hold in the amount of $6,172,838: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00010 | Michigan State Police | Legacy hold in the amount of $9,129,053: additional project details required |
| 2022 | SLCGP | EMW-2022-CY-00053 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $257,513: additional project details and indirect costs (IDC) rate information required |
| 2023 | SLCGP | EMW-2023-CY-00052 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $7,283,592: additional project details required |
| 2023 | SLCGP | EMW-2024-CY-05240 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $5,596,110.85: additional project details required and IDC |
| 2021 | NSGP | EMW-2021-UA-00057 | Maine Emergency Management Agency | Legacy hold in the amount of $150,000: additional project details required |
| 2022 | NSGP | EMW-2022-UA-00031 | Michigan State Police | Legacy hold in the amount of $150,000: additional project details required |
| 2024 | NSGP | EMW-2024-UA-05052 | Michigan State Police | Legacy hold in the amount of $2,240,403: additional project details required |

13
A436

| 2024 | NSGP | EMW-2024-UA-05153 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $169,200: IDC rate information required |
| 2024 | HSGP | EMW-2024-SS-05237 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $113,717.48: IDC rate information required |
| 2023 | EMPG | EMB-2023-EP-00004 | Maine Emergency Management Agency | Legacy hold in the amount of $48,000: IDC rate information required |
| 2023 | EOC | EMP-2023-EO-00001 | Maryland Department of Emergency Management | Legacy hold in the amount of $5,736,108: Environmental and Historic Preservation review |

30. As to the Colorado SSP Grant on February 18, 2025, I sent Colorado's Director of the Office of Grants Management a non-compliance letter notifying it that DHS/FEMA was temporarily withholding payment to Colorado of SSP Grants, pursuant to 2 C.F.R. § 200.339(a), and was instituting specific restrictions on Colorado's SSP grant awards, pursuant to 2 CFR § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. FEMA gave Colorado 30 days to provide additional information described in the letter and 60 days to appeal. To my knowledge, Colorado has neither provided the additional information nor appealed. Exhibit 11.

31. As to the Wisconsin SSP Grant listed in Exhibit 12, I sent a non-compliance letter on March 11, 2025 to the Wisconsin Department of Military of Affairs explaining that DHS/FEMA is temporarily withholding payments to Wisconsin for SSP Grant pursuant to 2 C.F.R. §200.339(a) and is instituting specific conditions on these awards pursuant to 2 C.F.R. § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. Exhibit 12. FEMA gave Wisconsin 30

days to provide additional information described in the letter and 60 days to appeal. *Id.* Specifically, DHS is concerned that entities receiving SSP payments may be guilty of encouraging or inducing an alien to come to, or enter, or reside in the United States in violation of law. *See* Exhibit 12.

I declare, under penalty of perjury, that the foregoing is true and correct based upon my personal knowledge, based upon the collective information known within the Agency and provided by pertinent individuals within the Agency with direct knowledge of that information, and based upon a review of records and information kept in the ordinary course of business pursuant to 28 U.S.C § 1746.

Executed on this ___ day of March 2025.

_____

Cameron Hamilton
Senior Official Performing the Duties of Administrator
Federal Emergency Management Agency

| | |
|---|---|
| **From:** | Street, Stacey |
| **Sent:** | Monday, February 10, 2025 4:31 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | URGENT: Holds on awards |

**Importance:** High

Good afternoon, all.

AAD is handling for FEMA GO for FY24 awards – ███ is putting hold toggles on <u>**all**</u> programs listed in the Daily Dash.

For all awards FY23 and prior: put financial holds on <u>*all*</u> of your awards – all open awards, all years (2021, 2022, 2023, 2024).

- ███████████, you can toggle in **FEMA GO** and do so for all of your fire-related programs
- ███████, your team will need to go in **ND Grants** and put individual holds on all HSGP and NSGP awards
- ███████████, your team will need to go in **ND Grants** and put individual holds on all EMPG, RCPGP, EOCGP, THSGP awards
- ███████, your team will need to go in **ND Grants** and put individual holds on all SLCGP and TCGP awards

Please confirm once completed.

Stacey

Stacey N. Street
Director, Office of Grants Administration
Grant Programs Directorate| Resilience
Office: ███████ | Mobile: ███████
███████

Federal Emergency Management Agency
fema.gov



| | |
|---|---|
| **From:** | Street, Stacey |
| **Sent:** | Tuesday, February 11, 2025 2:10 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | Follow-up |
| **Importance:** | High |

Hi everyone, follow up to yesterday's verbal late afternoon discuss and to the subsequent Teams meeting we had just a short while ago. Here is our action plan going forward:

Awards will be amended so that the following grant programs will result in reimbursement requests being manually reviewed and, when approved by staff, manually reimbursed to recipients:

*Already Standard Manual Approach Employed (no changes needed)*
- Assistance to Firefighters Grant (AFG) Program
- Fire Prevention & Safety (FP&S) Grant Program
- Staffing for Adequate Fire and Emergency Response (SAFER)
- Shelter and Services Program (SSP)
- State and Local Cybersecurity Grant Program (SLCGP) (FY24)

*Existing awards (FY2024/2023/2022/2021/2020) will be modified so that reimbursement requests will be manually reviewed and manually processed upon approval by program/financial staff. Upon approval of reimbursement requests, GPD will have 30 days to process payment, per 2 CFR Part 200.*
- PSGP
- TSGP
- IBSGP
- THSGP
- RCPGP
- EOCGP
- HSGP
- NSGP
- EMPG
- SLCGP
- TCGP

I am setting up a training meeting today with our system colleagues so that they can walk us through steps. PMO will also be able to add rights to staff to help in amending existing awards.

I will set up a timeline action plan with timelines, roles, and responsibilities for all staff to complete the amendments. I will also coordinate with program colleague counterparts across Resilience and ORR to help ensure that they are aware and can also replicate across their grant program portfolios and will be asking our AAD-Mitigation team members to assist their program colleague counterparts in amending awards.

I am working with ▮▮▮▮ to craft an Information Bulletin that will explain this approach to our grant program recipient stakeholders.

Last but not least, ▮▮▮▮ and I will work to modify the CY25 performance plans to account for this scope of responsibility and ensure that, upon manual review *approvals*, payments will be made within the allotted 30-day maximum timeline noted by 2 CFR Part 200. We will also provide guidance very shortly on program office versus financial office roles and responsibilities with manual reviews and manual reimbursements. I expect that we will model the fire grants approach whereby program offices have primary lead on reimbursement reviews, approval determinations, and manual reimbursement release processings.

**Note that these are not "holds."** We are modifying our programs so that payment requests are now reviewed manually and processed manually. "Holds" implies what we were directed to originally due with OMB M-25-13, which was rescinded and a TRO injunction placed. We are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be released to recipients (in order to ensure that payments align to the award project, NOFO scope of allowability, 2 CFR Part 200 principles, etc.) For FY 2025, the intent is to have this approach as standard in the NOFOs.

Happy to discuss, thank you.

Stacey

Stacey N. Street
Director, Office of Grants Administration
Grant Programs Directorate| Resilience
Office: ▮▮▮▮▮▮ | Mobile: ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

Federal Emergency Management Agency
**fema.gov**



 

## Message to Grant Recipients on Manual Review Process

Dear Recipient,

The Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on all grant payments and obligations to ensure allowability, as permitted by 2 C.F.R Part 200.

Effective immediately, FEMA and DHS are conducting additional reviews of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:

- Will this disbursement go to any subrecipients, and if so, which ones?
- What is the total amount of funds going to each subrecipient?
- What activities will be funded by this disbursement?
- What is the time period covered by this payment request?

For existing payment requests currently in the system, FEMA will reach out if additional information is needed. Please note that if FEMA does not receive this information, payment requests will not be processed.

Should guidance be updated or changed, we will notify recipients that this information is no longer requested.

For questions, please reach out to your designated FEMA point of contact for the specific grant award.

Thank you,

FEMA Grant Programs Directorate

**From:**
**To:** ▮
**Subject:** FEMA PA Notification - Message to Grant Recipients on Review Process Updates
**Date:** Friday, February 28, 2025 4:14:13 PM

---

**From:** support.pagrants@fema.dhs.gov <support.pagrants@fema.dhs.gov>
**Sent:** Friday, February 28, 2025 10:16 AM
**To:** ▮
**Subject:** FEMA PA Notification - Message to Grant Recipients on Review Process Updates

Dear Recipient,

The Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on the allowability of costs for all grant payments and obligations, as permitted by 2 C.F.R Part 200, where applicable.

Effective immediately, FEMA and DHS are implementing an additional review process of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction.

Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

For existing payment requests currently in the system, FEMA will reach out if additional information is needed.

Thank you,
FEMA Recovery Directorate

---

If you require additional assistance with the FEMA Grants Portal, please contact the Grants Portal Hotline at (866) 337-8448 or FEMA-Recovery-PA-Grants@fema.dhs.gov

*Please do not respond to this e-mail. This mailbox is not monitored, and you will not receive a response.*

▮

A444

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | C.A. No. 1:25-cv-00039 |
| v. | |
| DONALD TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT**

1.    Plaintiff States offer this response to Defendants' Status Report to provide further information regarding Defendants' compliance with the Court's Temporary Restraining Order (ECF No. 50) and Order of Preliminary Injunction (ECF No. 161).

2.    On February 28, 2025, Plaintiff States filed a Second Motion to Enforce the Court's Temporary Restraining Order. ECF No. 160. In that motion, Plaintiff States reported 140 Federal Emergency Management Agency ("FEMA") grants from at least twenty different FEMA grant programs to have been frozen or otherwise rendered inaccessible in sixteen Plaintiff States. Plaintiff States further reported FEMA grants been to have been frozen in FEMA's Payment and Reporting System ("PARS"), with grants showing as subject to a "Hold" and/or "under review." Draw-downs submitted as early as February 7 remained unpaid, with the system generating an error message when state agencies attempted to submit a request for reimbursement. *E.g.*, ECF No. 160-1 (McCombs Aff.), ¶¶ 6, 17; *id.*, Ex. A, C (Arizona and Colorado screen captures).

1

3.      On March 6, 2025, the Court granted Plaintiffs States' Motion for a Preliminary Injunction, denied Plaintiff States' Second Motion to Enforce the Court's Temporary Restraining Order as moot, and ordered Defendant FEMA to file a status report by March 14, 2025, informing the Court of the status of FEMA's compliance with the Court's March 6 Preliminary Injunction Order. ECF No. 161.

4.      As of March 12, 2025, none of the grants reported in the February 28 Motion have opened in the intervening two weeks since the Second Motion to Enforce was filed. *See* ECF No. 160-1 (McCombs Aff.), ¶¶ 4–20. Indeed, the number of frozen FEMA grants has increased. As of March 12, 2025, at least 215 FEMA grants to at least nineteen plaintiff states remain frozen or otherwise rendered inaccessible. This includes grants to the following states: Arizona, California, Colorado, Connecticut, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin. In several cases, the freezes apply to multiple grants in the same grant programs spanning several fiscal years. This is a significant increase from the 140 grants reported on February 28, 2025.

5.      The more than thirty FEMA grant programs subject to freezes include, but are not limited to, the following:

- Assistance to Firefighters Grant Program;
- Building Resilient Infrastructure and Communities (multiple fiscal years);
- Community Assistance Program – State Support Services Element;
- Cooperating Technical Partners;
- Dam Safety Grants;
- Disaster Case Management Program;
- Emergency Management Performance Grant (multiple fiscal years);
- Emergency Operations Center (multiple fiscal years);
- Emergency Management Preparedness Grant (multiple fiscal years);
- Fire Prevention & Safety Grant Program;
- Flood Mitigation Assistance;
- Floodplain Mapping Program – Cooperating Technical Partnership Award;

- Hazard Mitigation Grant Program;
- Hazard Mitigation Grant Program Post Fire;
- Hazardous Material Emergency Preparedness Grants;
- High Hazard Potential Dam Grants;
- Homeland Security Grant Program (multiple fiscal years);
- Map & Modernization & Risk Mapping;
- National Dam Safety Program State Assistance Grant-Infrastructure;
- National Earthquake Hazards Reduction Program;
- Nonprofit Security Grant Program (multiple fiscal years);
- Port Security Grant Program;
- Pre-Disaster Mitigation (multiple fiscal years);
- Public Assistance Grants (multiple fiscal years);
- Regional Catastrophic Preparedness Grant Program;
- Safeguarding Tomorrow Revolving Loan Fund Program;
- Shelter and Services Program Grant;
- Staffing for Adequate Fire and Emergency Response;
- State and Local Cybersecurity Grant Program (multiple fiscal years);
- Targeted Violence and Terrorism Prevention Grant Program; and
- Transit Security Grant Program.

6.     Consistent with information provided in Plaintiffs' Second Motion to Enforce the Court's Temporary Restraining Order, grants from the above-listed programs remain frozen in payment systems used by FEMA including the PARS portal, with holds dating back to February 7 and others newly reported as of March 12. In some instances, States cannot submit requests to drawdown reimbursement, because the entire grant has been frozen.

7.     Counsel for the Plaintiff States have continued to work with counsel for the Defendants to provide information regarding these ongoing disruptions and to achieve compliance with the Preliminary Injunction, including through email communications on March 13 and 14, 2025.

8.     In Defendants' Status Report filed March 14, 2025, Defendants state that the delays in FEMA funding reported by the Plaintiff States relate to a "manual review process that FEMA is utilizing" and that "FEMA reviews grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients." ECF No. 166 at 1.

3

Defendants further state that this "manual review process" is authorized by FEMA's "inherent authority to manually review source documentation from a grant recipient and other information relevant to confirming the requested funding." *Id.* at 2.

9.      As the basis for this "inherent authority," Defendants cite 2 C.F.R. § 200.300(a), which provides as follows:

> The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations—including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part. The Federal agency or pass-through entity must communicate to a recipient or subrecipient all relevant requirements, including those contained in general appropriations provisions, and incorporate them directly or by reference in the terms and conditions of the Federal award.

10.      Defendants' Status Report attaches an undated declaration of Cameron Hamilton, FEMA's "Senior Official Performing the Duties of the Administrator." ECF No. 166-1 (Hamilton Decl.). In that declaration, Hamilton states that FEMA's funding pause was implemented on February 10, *id.*, ¶ 4, when Stacey Street, Director of FEMA's Office of Grant Administration, instructed staff to "put financial holds on all of your awards – all open awards, for all years (2021, 2022, 2023, and 2024)." ECF No. 166-4.

11.      On February 14, Hamilton issued a more detailed "Grant Processing Guidance" on the FEMA hold process. ECF No. 166-7. That guidance, however, does not identify the discrete legal violations that FEMA is attempting to identify during this manual review. For some grant programs, the review is for whether the program may "indirectly or incidentally aid illegal aliens"; for others, it is a hold "pending a compliance review," without specifying to which obligation the compliance pertains; and for others, the review is simply a review "by Secretary Noem prior to issuance." *Id.* at 2.

12.     Neither Hamilton's February 14 guidance document nor his undated declaration filed in this litigation have provided an end date for the review process or any specifics as to how long a funding disbursement will be "held" pending review.

13.     Plaintiff States' experience directly contradicts the assertions made in FEMA's status report, in particular Hamilton's assertion that after March 14, 2025, "Arizona will be able to resubmit [its] requests for payments" previously identified in paragraph 5 of the McCombs Declaration. ECF No. 166-1, ¶ 27. As one example, PARS still shows that the entire remaining amount ($3,748,986.60) of Arizona's 2022 Homeland Security Grant Program grant (EMW-2022-SS-00010) is "on hold" and that there is $0 available to withdraw. On March 16, 2025, the Arizona Department of Homeland Security submitted a $1.00 draw request in the PARS account for the 2022 HSGP grant.  That request triggered the following error message: "INVALID PAYMENT AMOUNT REQUESTED! This grant has $0.00 available. You may only request up to an amount of 0.00. Please enter a valid payment request amount and try again." Thus, Arizona cannot even submit a draw request to be reviewed under FEMA's new "manual review process," because the PARS system automatically rejects any draw requests for accounts with a $0 balance. The consequences for FEMA's continued non-compliance are significant and imminent. If PARS remains functionally inoperable, the Arizona Department of Homeland Security will be unable to draw down funds to meet its payroll obligations for the pay period that began on March 15, 2025.

14.     Contrary to Defendants' assertions that a "financial hold" to permit a manual review process, for unspecified issues, "is not a 'pause' or 'freeze' on funding," ECF No. 166 at 3, the financial holds and pauses implemented by FEMA—as described by Defendants

5

themselves in their Status Report—were in violation of the Temporary Restraining Order, and are in violation of the Preliminary-Injunction Order, for several reasons.

15. **First**, the actions of FEMA are indisputably a pause on federal funding disbursements. Defendants' own Status Report makes this clear. Hamilton states that FEMA "has paused" funding to entire programs, ECF No. 166-1 (Hamilton Decl.), ¶ 3, has put "hold toggles" on these programs in FEMA's payment system, *id.*, ¶ 4, and has put "financial holds" on these awards, *id.*, ¶ 4. And while Hamilton has said that the use of the term "hold" in the PARS system "does not mean that the grant is being frozen, held, or not being distributed," *id.*, ¶ 6, a memorandum that he issued February 14, 2025 quite plainly calls for a "Hold of Funds" under some FEMA grants, ECF No. 166-7 at 2. The assertion that a "pause[]" is not a "pause" and that a "hold" is not a "hold" deserves no further discussion.

16. **Second**, the invocation of FEMA's purported need for a "manual review" process does not turn this sweeping and indiscriminate pause of FEMA funding into a normal grant administration exercise. In its comprehensive scope and immediate effect, the "manual review" that FEMA describes has no meaningful difference from the review that OMB directed in connection with the January 27, 2025 OMB Directive (M-25-13) that gave rise to this action. After OMB called for agencies to freeze funding disbursements, it provided a spreadsheet of funding streams to facilitate an ostensibly individualized review of those funding streams for compliance with various policy objectives before payments could be authorized. *See* ECF No. 1 (Compl.), Ex. B. Here, similarly, FEMA has frozen federal funding disbursements en masse in order to find irregularities it has not identified and has called for an individualized review of funding streams for grant recipients' compliance with obligations it has not specified, while

providing no instructions to States on how to navigate the "manual review" process or when they might expect the process to be resolved.

17.     **Third**, the Hamilton Declaration and documents attached to it mistakenly suggest at times that FEMA need only make payments to the States within thirty days. *See, e.g.*, ECF No. 166-1 (Hamilton Decl.), ¶ 20; ECF No. 166-5 (Email from Stacey Street, Feb. 11, 2025) (stating that FEMA "will have 30 days to process payment"). This is incorrect. The 30-day deadline applies to disbursements to non-states. 2 C.F.R. § 200.305(b)(3). The payments here are being held, for several weeks in some cases, without statutory authorization or clear justification. Even assuming that 31 C.F.R. Part 205 Subpart B controls here, FEMA's indefinite pause exceeds the timeframe contemplated by those regulations as well. *See* 31 C.F.R. § 205.33(a) (requiring fund transfers to be "as close as is administratively feasible to a State's actual cash outlay"). The indefinite pause also departs from past practice, in which payments were typically made within 24 hours of the request.

18.     **Fourth**, FEMA's pause has no other legal basis, nor do Defendants cite to such a basis. Instead, Defendants refer to an "inherent authority" to impose these pauses, citing 2 C.F.R. § 200.300(a). *See* ECF No. 166 at 2; ECF No. 166-1 (Hamilton Decl.), ¶ 5. That regulation provides no basis for the funding pause that FEMA has placed in effect. Rather, 2 C.F.R. § 200.300(a) is a regulation promulgated by the Office of Management and Budget for federal grants generally, and it simply provides that federal agencies must administer federal awards to ensure that programs are implemented "in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. Part 200 specifies the mechanisms that federal agencies may use to manage performance and ensure appropriate controls, including Subpart D (Post Federal Award Requirements) and Subpart F (Audit Requirements). *See especially* 2

C.F.R. §§ 200.339(a) (specifying the circumstances when grantor agencies may temporarily withhold payments for noncompliance), 200.501 (grantee audit requirements). The general duties of § 200.300(a) do not add to these mechanisms and provide no authority to implement a freeze with no set end date.

19.     For these reasons, FEMA's ongoing pause failed to comply with the TRO and is now failing to comply with the Preliminary-Injunction Order. Plaintiff States again request that all holds on FEMA grant funds be lifted and that payments be processed without delay.

Respectfully submitted,

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

8

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Marie.Logan@doj.ca.gov


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner H. Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
Vanessa Arslanian**
Julia Jones-Day**
Nathaniel Hyman**
Chris Pappavaselio**
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA  02108
(617) 963-2277
katherine.dirks@mass.gov
turner.smith@mass.gov


**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov


**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

9

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.Skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

**OFFICE OF THE GOVERNOR** *ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

11

A455

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
(919) 716-6026
Dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.wa.gov
Leah.Brown@atg.wa.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*

**Pro Hac Vice* Motion forthcoming

A457

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00039 |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al., | |
| Defendants. | |

## RENEWED SECOND MOTION TO ENFORCE THE COURT'S ORDERS PERTAINING TO FREEZE OF FEMA FUNDS

Plaintiff States, through this motion, respectfully request that the Court use its inherent authority to enforce the Preliminary Injunction Order entered on March 6, 2025. Plaintiff States specifically request that the Court order Defendant the Federal Emergency Management Agency ("FEMA") to cease freezing obligated funds and that the Court direct that notice of such order, along with notice of the court's March 6, 2025 Order, be provided to FEMA's leadership and staff, as described below.

The Court's intervention is necessary because, following the Court's March 6 order, Plaintiff States have continued to experience significant obstacles to accessing federal funds. This is so despite the Court's direction to Defendants to "file a status report on or before March 14, 2025, informing the Court of the status of their compliance with" the March 6 Order. ECF No. 161, at 45. The parties remain at an impasse as to millions of dollars in obligated FEMA awards, which are and have remained frozen dating to as early as February 7. Plaintiff States will need to wind down important programmatic emergency services, including disaster relief to people and communities affected by the Maui wildfires, in short order if funding is not immediately unfrozen.

1

A458

Speer Decl. ¶ 18, attached as Exhibit 1. The Court should enforce its March 6 preliminary injunction with respect to FEMA.

## FACTUAL BACKGROUND

### I.  The Court's Orders

The Court's January 31, 2025, TRO prohibited Defendants from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] Defendants' compliance with awards and obligations to provide federal financial assistance to the States," and provided that "Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 11. That order expressly prohibited the Defendants from using "'identif[ication] and review' of federal financial assistance programs" to implement a "pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations and terms." *Id.* at 12. Included among the Defendants for purposes of the TRO was FEMA, a defendant named in the original Complaint. ECF No. 1, ¶ 41.[1]

Following the entry of that order, counsel for Plaintiff States conferred with counsel for Defendants about ongoing freezes of numerous grants and awards, but were unable to reach agreement. ECF No. 66, at 7–8. Plaintiff States moved to enforce the TRO on February 7, 2025. ECF No. 66. On February 10, 2025, the Court granted that motion, ordering among other things that:

> 1.  The Defendants must immediately restore frozen funding during the pendency of the TRO until the Court hears and decides the Preliminary Injunction request.

---

[1] FEMA remains a defendant in the First Amended Complaint because the Department of Homeland Security is a defendant, and FEMA is an agency within the Department of Homeland Security. ECF No. 114, ¶ 55.

2.      The Defendants must immediately end any federal funding pause during the pendency of the TRO.

3.      The Defendants must immediately take every step necessary to effectuate the TRO, including clearing any administrative, operational, or technical hurdles to implementation.

ECF No. 96, at 4.

The Court subsequently issued an order affirming that the TRO "permits the Defendants to limit access to federal funds 'on the basis of the applicable authorizing statutes, regulations, and terms'" and clarifying that neither the TRO nor the February 10 order instituted a "preclearance" or "prior approval" requirement. ECF No. 107, at 3.

Plaintiff States continued to experience disruptions in federal funding, one of which was particularly acute and widespread—the funding freeze implemented by FEMA, which has impacted many public safety programs. Therefore, on February 28, Plaintiff States filed a Second Motion to Enforce based on continued inability to access these important funds. ECF No. 160.

On March 6, the Court issued its preliminary injunction order. ECF No. 161. In relevant part, the Court enjoined Defendants, including FEMA, "from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations based on the OMB Directive, . . . or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress." ECF No. 161, at 44. At the same time, the Court recognized that the Second Motion to Enforce was mooted by the decision on the preliminary injunction, but nevertheless ordered FEMA to submit a status report by March 14. ECF No. 161, at 45.

## II. FEMA Grants and Awards Remain Frozen, Endangering Important State Disaster Relief Programs

The issues raised in Plaintiff States' Second Motion to Enforce continue largely unabated. As Plaintiff States reported on March 17, "[a]s of March 12, 2025, at least 215 FEMA grants to at least nineteen plaintiff states remain frozen or otherwise rendered inaccessible." ECF No. 167, at 2. Now, approaching the close of the quarter, lack of access to funding is poised to disrupt programs.

For Hawaiʻi, this means the imminent cessation of case management services for victims of the 2023 Maui wildfires, "including the wildfire-initiated urban conflagration that caused extreme damage to the historic town of Lahaina, killed over 100 people and displaced thousands of Hawaiʻi residents from their homes." Speer Decl. ¶ 3. Before FEMA initiated its categorical, indefinite pause of funding, Hawaiʻi usually received reimbursement within approximately one week of submitting a request, a time period that allowed for FEMA's review and the mechanics of the fund transfer. *Id.* ¶ 13. As of today, Hawaiʻi has waited nearly 30 days for reimbursement. *Id.* ¶ 12. This abrupt change in practice is near fatal because a key requirement of FEMA regarding these grant funds is that Hawaiʻi is precluded from maintaining more than three business days' worth of cash on hand. *Id.* ¶ 18. If Hawaiʻi does not receive reimbursement by March 31, it will be forced to discontinue its "work with survivors to create unique disaster recovery plans that are individualized to each household, and . . . help survivors navigate their recovery and work with the myriad of resources available to meet their needs." *Id.* ¶¶ 6, 18. Hawaiʻi currently provides these services to more than 4,000 individual wildfire survivors, but that work will cease as of April 4 if funds are not released. *Id.* ¶¶ 6, 8, 18. Hawaiʻi has raised these serious issues with its counterpart grant administrators at FEMA. *Id.* ¶¶ 16, 18. Despite seeking reassurance or guidance

from FEMA, "there is no known timeline for when FEMA or the federal Department of Homeland Security will determine if, or when, it will approve" Hawaiʻi's pending funding requests. *Id.* ¶ 16.

Oregon is waiting on $129.4 million in federal funds and has not received payment on any of its FEMA requests for more than 30 days. McMahon Decl. ¶ 20, attached as Exhibit 2. Most of Oregon's grants are granted on to subrecipients such as local and tribal governments, *id.*, which are facing issues with timely reimbursement, *id.* ¶ 21. Oregon's Emergency Management Performance Grant coordinates local, state, and interstate resources to address life-safety needs through funding projects like auxiliary communications systems and joint training exercises. *Id.* ¶ 23. After the close of the first quarter on March 31, Oregon's emergency management agency will not have the funds to continue supporting these activities, including staff salaries, without FEMA reimbursement. *Id.* ¶ 22.

Colorado has experienced very similar disruption. From February 18 to March 24 Colorado's emergency management agency has requested or attempted to request over $33 million in reimbursement costs from FEMA under 14 grant programs. Haney Decl. ¶ 6, attached as Exhibit 3. None of the requests have been approved. *Id.* Many of Colorado's requests for payment were made more than 30 days ago. *Id.* ¶¶ 7–20. Colorado's grants fund flood hazard mitigation and the development of local hazard mitigation plans, among other important emergency preparedness goals. *Id.*

In their status report filed on March 14, Defendants asserted that this indefinite pause on obligated federal grant monies is not in violation of this Court's orders, including the preliminary injunction. ECF No. 166. That is, instead of taking this Court's order to provide a status report as an opportunity to inform the States of when they might expect an end to this widespread inaccessibility of funding administered by FEMA, Defendants provided no definite date by which

such pause might cease. *Id*. As described in Plaintiff States' Response, ECF No. 167, at 6–8, and further below, Defendants are wrong in their contention that statute or regulation authorizes them to withhold funding for 30 days for any purported "manual review" process. But regardless of the legal merit of that contention (there is none), as a factual matter, multiple states have funding requests that have been pending for longer than 30 days. McMahon Decl. ¶ 20; Haney Decl. ¶¶ 7–20; Rice Decl. ¶¶ 5–7, attached as Exhibit 4.

In addition, among Defendants' other arguments, they have asserted that the FEMA manual review process is "not new," implying some history of or relation to past manual review processes. ECF No. 166, at 3. But their own statements belie that claim: on March 18, FEMA asserted to Colorado that it would, "effective immediately" institute "an additional review process of allocations before releasing funds for all grants." Rice Decl. Ex. A. This was followed on March 19 with an announcement by FEMA of "additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305." Rice Decl. Ex. B. None of this correspondence to recipients referenced any prior manual review or linked the newly applicable procedures to any past procedure. Rice Decl. Exs. A–B.

## LEGAL STANDARD

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). In the First Circuit, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) ability to comply; and (4) violation of the order. *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

## ARGUMENT

Plaintiffs have satisfied the first two factors: FEMA had notice of the Court's order, and the Court has made numerous pronouncements about the scope and effect of its Orders. Similarly, the third factor is satisfied because FEMA is plainly able to comply with the preliminary injunction by lifting its pause on funding to Plaintiff States.

As to the fourth factor, FEMA appears to be violating the preliminary injunction. To reiterate, the preliminary injunction prohibits FEMA "from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants" if that action is "based on the OMB Directive, . . . or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress." ECF No. 161, at 44.

As explained in Plaintiff States' March 17, 2025 Response to Defendants' Status Report, FEMA's categorical and indefinite freeze of funding appears to be violating the preliminary injunction for at least four reasons. *See* ECF No. 167, at 6–8.

*First*, FEMA's own statements to this Court have characterized Plaintiff States' inability to access funds as a "hold" or a "pause." Specifically, defendants' submissions state that FEMA "has paused" funding to entire programs, ECF No. 166-1 (Hamilton Decl.), ¶ 3, has put "hold toggles" on these programs in FEMA's payment system, *id.* ¶ 4, and has put "financial holds" on these awards, *id.* ¶ 4. Moreover, a memorandum issued on February 14, 2025 quite plainly calls for a "Hold of Funds" under some FEMA grants, ECF No. 166-7, at 2.

*Second*, regardless of whether a delay of limited duration would violate the Court's orders, the sweeping, indiscriminate, and indefinite pause implemented by FEMA under the guise of a

purported "manual review" process is essentially the same funding pause pending purported review of grant programs that OMB directed each agency to carry out, and which this court enjoined. *See* ECF No. 1 (Compl.), Ex. B. After OMB called for agencies to freeze funding disbursements, it provided a spreadsheet of funding streams to review before payments could be authorized. *Id.* Here, similarly, FEMA has frozen federal funding disbursements en masse while it purports to review funding streams to find irregularities it has not identified or review grant recipients' compliance with obligations it has not specified.

*Third*, FEMA errs in arguing that a 30-day payment window that appears in 2 C.F.R. § 200.305(b)(3) demonstrates that payments are not paused. *See, e.g.*, Hamilton Decl. ¶ 20; ECF No. 166-5 (Email from Stacey Street, Feb. 11, 2025) (stating that FEMA "will have 30 days to process payment"). As an initial matter, that deadline is plainly inapplicable to disbursements to States. 2 C.F.R. § 200.305(b)(3); *see* 31 C.F.R. § 205.33(a) (requiring fund transfers to States to be "as close as is administratively feasible to a State's actual cash outlay"). In any event, for many States, FEMA has been continuing to refuse to release requested funds for more than thirty days. Thus, even if 31 C.F.R. Part 205 Subpart B controlled here—which it does not—FEMA has exceeded the timeframe contemplated by those regulations. FEMA's failure to abide by the (inapplicable) 30-day window that it invoked further demonstrates that its actions are an indefinite pause of funding in violation of the Court's preliminary injunction.

Indeed, after FEMA filed its status report, the agency has started claiming that it is entitled to *multiple* 30-day review periods that have no set end, all while obligated funding remains paused. In particular, on March 19, 2025, FEMA wrote to Plaintiff States that it is entitled to a *series* of 30-day reviews, relying on the same authorities discussed above. Rice Decl. Ex. B. FEMA has now asserted that it may deny a request for reimbursement "[i]f an adequate response is not

received" to its informational demands, in which case Plaintiff States "may need to submit a new reimbursement request; this will re-start the 30-day timeline." *Id.* There is no basis, even in the inapplicable 2 C.F.R. § 200.305(b)(3) regulation, for a series of rolling 30-day windows for approval of reimbursement requests. FEMA's actions essentially extend indefinitely a categorical pause on all grant funding it administers based on unarticulated criteria that are not based in any statute or regulation.

*Fourth*, FEMA identified no other legal basis in its status report for its withholding of funds with no end date, invoking only "inherent authority" that it is not granted under statute, citing 2 C.F.R. § 200.300(a). *See* ECF No. 166, at 2; Hamilton Decl. ¶ 5. That regulation provides no basis for the funding pause that FEMA has placed in effect. Rather, 2 C.F.R. § 200.300(a) is a regulation promulgated by the Office of Management and Budget for federal grants generally, and it simply provides that federal agencies must administer federal awards to ensure that programs are implemented "in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. Part 200 specifies the mechanisms that federal agencies may use to manage performance and ensure appropriate controls, including Subpart D (Post Federal Award Requirements) and Subpart F (Audit Requirements). *See especially* 2 C.F.R. §§ 200.339(a) (specifying the circumstances when grantor agencies may temporarily withhold payments for noncompliance), 200.501 (grantee audit requirements). The general duties of § 200.300(a) do not add to these mechanisms and provide no authority to implement a freeze with no set end date.

FEMA may not, consistent with the preliminary injunction, subject Plaintiff States to a pause without end to conduct a new process that is not authorized by law or regulation. FEMA's current actions mean that at minimum five States have now been unable to access funds for more than 30 days, with states such as Hawai'i now poised to discontinue critical programming.

## RELIEF SOUGHT

Plaintiff States move the Court, under its inherent powers, to order FEMA to immediately halt the challenged practice and to direct that notice of such order, along with notice of the court's preliminary injunction, or any forthcoming orders the Court deems relevant, be provided to FEMA's leadership, as well as all FEMA staff who administer these grants and other federal financial assistance, with confirmation of such notice, including the names of recipients of the notice, no later than 48 hours after such order.

Dated: March 24, 2025

Respectfully Submitted,

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*

**KWAME RAOUL**
Attorney General for the State of Illinois

10

Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
marie.logan@doj.ca.gov

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of
Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment
Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA 02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General

11

Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov


**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov


**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: */s/ Kaliko'onālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kaliko'onālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov


**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General

12

Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201

13

Raleigh, NC 27602
919-716-6026
Dmosteller@ncdoj.gov

(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*

14

# Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; et al.,<br><br>      Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; et al.,<br><br>      Defendants. | C.A. No. 1:25-cv-00039-JJM-PAS |

## DECLARATION OF TRISTA SPEER

I, Trista Speer, declare as follows:

1. I am a resident of the State of Hawaiʻi (State). I am over the age of 18 and have personal knowledge of all the facts stated herein, except those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the State of Hawaiʻi, Department of Human Services as Deputy Director.

3. In August 2023, wildfires on the island of Maui (the 2023 Maui Wildfires), including the wildfire-initiated urban conflagration that caused extreme damage to the historic town of Lahaina, killed over 100 people and displaced thousands of Hawaiʻi residents from their homes.

4. The Department of Human Services is responsible for administering the Federal Emergency Management Agency (FEMA) funded Disaster Case Management Program (DCMP) on behalf of the State for the survivors of the 2023 Maui Wildfires.

5.     As a Deputy Director for the Hawaiʻi Department of Human Services, I was responsible for drafting and submitting the State's September 2023 application for the FEMA DCMP grant and overseeing the administration of the program on behalf of the state.

6.     The DCMP connects survivors of disasters with specially trained Disaster Case Managers (DCMs) to help assess and address their disaster-related unmet needs. To accomplish this, DCMs work with survivors to create unique disaster recovery plans that are individualized to each household, and include resources, decision-making priorities, guidance, and tools. The DCMs act as a "quarterback" to help survivors navigate their recovery and work with the myriad of resources available to meet their needs.  Our DCMP services are available to all survivors impacted by the 2023 Maui Wildfires.

7.     The DCMP is a team of more than 120 staff members across the Department of Human Services, its contracted provider, and the provider's subcontracted local community-based organizations that provide these crucial recovery services to the more than 6,300 survivors we have assisted since November 2023.

8.     The DCMP currently serves approximately 1,729 active cases, totaling more than 4,431 individuals, and has made more than 9,000 referrals to community resources which has resulted in approximately $106 million of non-federal funds (Social Return On Investment) that have satisfied survivors' disaster related needs, and has successfully assisted more than 180 households to achieve their DCMP recovery plans.

9.     To date, FEMA has awarded the State $25,210,370.39 for a period of performance from August 10, 2023, through August 10, 2025, for the purpose of administering the DCMP.

10. The State has expended nearly all but approximately sixty (60) days of funds from the initial $5,738,960 obligation.

11. On February 21, 2025, in accordance with FEMA guidance, the State submitted a second obligation request for $5,738,959 (Second Obligation Request), and that request is still pending review with FEMA as of March 21, 2025, the date of the signing of this declaration.

12. On February 24, 2025, the State submitted a $475,423.62 drawdown reimbursement request through the federal Payment Management System (PMS) for essential expenses incurred in the administration of the DCMP, including payroll and invoices for direct services to survivors (PMS Request). That request is still pending with FEMA as of the signing of this declaration.

13. In the past, it typically took approximately 1 week for the state to receive federal funds from a PMS drawdown request. This process is a result of 1 to 3 business days for FEMA to review and approve a PMS drawdown request, and then another one to three business days for the transfer of federal funds to the State.

14. Based upon the unprecedented delay in approvals, it appears to me that the disbursement of federal funds for the DCMP has been paused, frozen, blocked, suspended, or otherwise impeded by FEMA.

15. The state intends to submit another drawdown request on or about March 21, 2025, for approximately $463,550 to cover additional essential expenses associated with the DCMP.

16. Our assigned FEMA grant team has stated via email, and I understand also verbally in our monthly FEMA grant team meeting, that there is no known timeline for when

FEMA or the federal Department of Homeland Security will determine if, or when, it will approve our pending PMS Request or the Second Obligation Request.

17. The Department of Human Services' budget for this year has relied on these FEMA grant funds, and we made plans and allocated funding for staffing, office space, telecommunications equipment, and entered into contractual agreements with non-profit organizations to manage and provide the direct disaster case management services to the more than 6,300 survivors assisted through this program—who lost nearly everything in devastating fires—based on the anticipated receipt of federal funding promised to be provided on a swift, and timely, reimbursable basis following grant fund drawdown requests.

18. Any pauses in our federal funding predictably result in the almost immediate cessation of the DCMP because a key requirement of FEMA regarding these grant funds is that the State is precluded from maintaining more than three (3) business days' worth of cash on hand. Specifically, because of the current pause, the Department of Human Services has informed FEMA that if the State does not receive notice of approval for the Second Obligation Request on or before March 31, 2025, all services of the DCMP will cease on **Friday, April 4, 2025**, due to insufficient funding.

19. The uncertainty of funding for this program has irreparably harmed this program in multiple ways, including: (1) our ability to hire additional staff and service providers as approved in the budget to meet the demand and capacity needed for these services for survivors; (2) our ability to timely cover expenses incurred by this program; (3) our ability to cover payroll for state employees hired and completely funded by these grant funds; and (4) our ability to provide assurances to the thousands of survivors served by this program that this critical assistance will continue as originally promised by FEMA.

4

A476

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 21, 2025, at Honolulu, Hawaiʻi.

_____

TRISTA SPEER

A477

# Exhibit 2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; et al.,

   Plaintiffs,

  v.

DONALD TRUMP, in his official capacity as
President of the United States; et al.,

   Defendants.

C.A. No. 1:25-cv-00039-JJM-PAS

## DECLARATION OF ERIN MCMAHON

I, Erin McMahon, declare as follows:

1. I am a resident of the State of Oregon. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Director of the Oregon Department of Emergency Management (OEM).

3. As noted in my previous declaration, I oversee emergency management and homeland security services for the State of Oregon, including disbursing federal funds for emergency management and homeland security needs statewide. Federal funding plays a critical role in state-level emergency management by providing financial support to help the state and local jurisdictions prepare for, respond to, and recover from disasters. The Federal Emergency Management Agency (FEMA) is the primary agency responsible for providing this support.

1

4.      FEMA funds and OEM manages state and local emergency preparedness and hazard mitigation projects. FEMA also reimburses state and local agencies and some nonprofits for the cost of disaster response and recovery in presidentially-declared disasters.

5.      Oregon's emergency management system as built out over decades has relied on funding from FEMA. This funding facilitates communication and coordination between the federal government, state governments and local governments, a critical element of Oregon's emergency response plans.

6.      OEM currently administers 29 separate FEMA grants or lines of federal disaster assistance that FEMA has effectively frozen. These grants fund activities including disaster preparedness, disaster response and mitigation, and recovery planning and training. There have been delays in reimbursement to Oregon and to local partners for losses experienced during major disasters, delaying recovery efforts and reimbursement for critical infrastructure repair and other essential recovery activities. There have also been delays in obligating subrecipient projects so that losses incurred during a declared disaster can be recovered in a timely way. On information and belief, OEM is not the only Oregon agency with FEMA grants that are currently frozen.  I understand both the Oregon Water Resources Department and the Oregon Department of Geology and Mineral Industries have been unable to draw funds on multiple FEMA grants as well, including High Hazard Potential Dam grants.

7.      The awarded FEMA grants and lines of disaster assistance from which OEM is currently unable to draw funds include the following:

a.  Public Assistance Grants along eight federal lines of disaster assistance for disasters including severe winter storms, flooding, mudslides, landslides, wildfires, and COVID-19

2

b. Flood Mitigation Assistance fiscal year (FY) 2021 and 2023 grants

c. Seven Hazard Mitigation Grant Program grants

d. Building Resilient Infrastructure and Communities grants for fiscal years 2021, 2022, and 2023

e. Pre-Disaster Mitigation Competitive Grant Program FY 2018 grant

f. Cooperating Technical Partners (RiskMAP Program) FY 2022 grant

g. Legislative Pre-Disaster Mitigation grants, for fiscal years 2022 and 2024

h. Two Emergency Management Performance Grant Program grants

i. Emergency Operations Center Grant Program FY 2022 and 2023 grant

j. Four Homeland Security Grant Program grants

k. Two Nonprofit Security Grant Program grants

l. Two Individual State Earthquake Assistance grants

m. State and Local Cybersecurity Grant Program FY 2022 grant

8.    Public Assistance grants are used to help communities recover from disasters that have impacted Oregon over the last several years.  At this time over $120 Million in public assistance grant dollars are frozen – these dollars need to be put back into the communities to support recovery efforts.

9.    All the federal funding committed to OEM in these programs supports critical services in Oregon. For example, the Emergency Management Performance Grant (EMPG) supports state, tribal, and local emergency management services. OEM distributes 80% of EMPG grant funds to local agencies (35 counties, 7 cities, and 7 tribal nations for FY24). Emergency management systems in rural areas of Oregon rely particularly heavily on these

federal grant funds. These funds specifically support OEM staff and local emergency manager personnel costs to support emergency response, planning, training and exercises and more.

10. The Hazard Mitigation Grant Program funds support specific projects designed to mitigate disasters such as earthquakes, flooding, tsunami, and wildfires. Hazard Mitigation Grant Program also funds natural hazard mitigation plans which are required to be FEMA approved and locally adopted for federal funding. For example, the Building Resilient Infrastructure and Communities FY 2022 grant program has approximately $120 Million in proposed projects that harden critical infrastructure such as Grants Pass's Water Treatment facility, Columbia Memorial Hospital's (Astoria) tsunami vertical evacuation structure, and the State of Oregon's natural hazard mitigation plan.

11. The Flood Mitigation Assistance grant funds help to purchase properties that are severe repeated losses during flood events. These property acquisitions remove people from the dangers of flooding and return the property back to its natural state. Flooding is the most predictable of all natural hazards. Flood Mitigation Assistance grants also fund flood and other water inundation studies to protect communities.

12. The Homeland Security Grant Program, Nonprofit Security Grant Program and the State Local Cybersecurity Grant Program provide funds to state, local, and tribal governments and nonprofits to prevent, protect against, prepare for, and respond to terrorist or other extremist acts. Funded projects include physical security improvements, cybersecurity enhancements, and emergency equipment and preparation activities.

13. The Emergency Operations Center Grant Program provides funds to improve emergency management and preparedness capabilities by supporting flexible, sustainable,

secure, strategically located, and fully interoperable emergency operations centers to be used in times of crisis.

14.     The Individual State Earthquake Assistance funds efforts to enhance and implement earthquake risk reduction at the state and local level.

15.     FEMA's Cooperative Technical Partners (CTP) grant funds Oregon's RiskMAP program. This program is a community collaborator to map, assess, and plan for identified risks throughout the state.  This funding includes staff salary and travel expenses.

16.     FEMA uses three separate payment platforms to track and fund its grants and federal assistance—PARS, FEMAGO, and PMS. OEM's general practice in drawing federal funds has been to draw funds once per week.  FEMA has in the past typically provided requested funds within three business days.

17.     OEM has several grants on the FEMAGO platform that are paused.  FEMA, through that platform, currently allows only one funding request to be made on a grant or line of federal assistance at a time, and each such funding request is reportedly subject to a 30-day review. On its FEMAGO grants, OEM has been unable to draw any funds since February 20, 2025. And OEM and its local partners have continued to incur costs for which OEM is unable to even request payment on the FEMAGO platform.

18.     Many of OEM's FEMA grants are hosted on the PARS platform. That platform shows that every such FEMA grant is on hold as of March 7. OEM has been unable to draw funds from any PARS-hosted grant since February 20, 2025.

19.     Multiple of OEM's paused FEMA grants are hosted on the PMS platform. On that platform, OEM is able to submit payment requests to the queue and has done so.  But requests

have not been paid since February 20, 2025. These grants are all reportedly on a 30-day FEMA review.

20. OEM has requested payment from FEMA on most of its paused grants but has not received payment from FEMA for more than 30 days. OEM has received no federal FEMA funds since February 20. OEM is waiting on approximately $129.4 million in federal funds, including $129.2 million in funding for subrecipients such as cities, counties, and tribal governments and $200K for OEM staff and administrative costs.

21. The unavailability of committed FEMA funds has created significant uncertainty and risk for emergency management in Oregon. OEM funding operates on a reimbursement model. OEM expends funds and only after expending funds does it seek federal reimbursement. OEM has been able to continue its service delivery to date, but OEM cannot continue to do so indefinitely without the receipt of committed federal funds. FEMA's funding pause has caused OEM to be unable to process reimbursements to its local partners in a timely way, which creates challenges for those local entities as well.

22. As one example, the Emergency Management Performance Grant quarter closes March 31. OEM does not have funds to cover the costs of these services without receipt of FEMA funding. We are and will continue to be unable to reimburse local emergency management programs in which salaries are funded by these FEMA grant funds.

23. At OEM and county, city and tribal level, EMPG and other preparedness grants fund:

      a. Coordinating local, state and interstate emergency response resources to address life-safety needs.

A484

  b. Updating emergency operations plans and associated annexes that provides the framework and outlines roles and responsibilities of jurisdictions and agencies to respond to emergencies.

  c. Maintaining the auxiliary communications systems utilized by the state emergency coordination center and local Emergency Operations Centers to ensure resilient communication with tribal, local, state, and federal emergency response personnel.

  d. Conducting training and exercises to ensure emergency managers and whole community partners are able to fulfill their roles in response and recovery operations to address disaster impacts ensuring direct and immediate support to victims in our next disaster.

I declare under penalty of perjury that the foregoing is true and correct.

  Executed on March 24, 2025, at Washington, DC.

_____

Erin McMahon, Director

7

A485

# Exhibit 3

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00039 |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; et al. | |
| Defendants. | |

## DECLARATION OF THE COLORADO DIVISION OF HOMELAND SECURITY AND EMERGENCY MANAGEMENT IN SUPPORT OF THE STATES' RENEWED SECOND MOTION TO ENFORCE THE COURT'S ORDERS PERTAINING TO FREEZE OF FEMA FUNDS

I, Michael Haney, declare and state as follows:

1.     I am the Director of the Office of Grants Management at Colorado's Department of Public Safety's Division of Homeland Security and Emergency Management ("DHSEM"). I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify completely to the truth of the matters stated herein.

2.     As the Director of the Office of Grants Management, I have personal knowledge of the matters set forth below, or have knowledge of the matters based on my review of information and records gathered by my staff.

3.      I am providing this declaration to explain the continued impacts of FEMA's denial of access to funds that had been guaranteed to the State of Colorado under various grant programs, described below.

4.      The DHSEM's mission is to lead and support Colorado's effort to prevent, protect, mitigate, respond to and recover from all hazardous events.

5.      The DHSEM is responsible for administering grants and managing homeland security and emergency management programs.  Approximately half of DHSEM's funding comes from the federal government.

6.      From February 18, 2025, to March 24, 2025, DHSEM has requested or attempted to request over $33 million in reimbursement costs from FEMA under 14 grant programs.  None of the requests have been approved.

7.      The FEMA Public Assistance program provides assistance so that communities can quickly respond to and recover from major disasters or emergencies.  DHSEM is awaiting reimbursement from FEMA for $24,199,379.20 under this program, having submitted requests to FEMA that are still pending on February 19, March 5, and March 14, 2025.

8.      The State Homeland Security Grant Program provides risk-based grants to assist state, local, tribal and territorial efforts in preventing, protecting against, mitigating, responding to and recovering from acts of terrorism and other threats. DHSEM is awaiting reimbursement from FEMA for $438,999.60 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, February 20, March 5, and March 17, 2025.

9.      The Emergency Management Performance Grant provides state, local, tribal and territorial emergency management agencies with the resources required for implementation of the

National Preparedness System and works toward the National Preparedness Goal of a secure and resilient nation. The grant's allowable costs support efforts to build and sustain core capabilities across the prevention, protection, mitigation, response and recovery mission areas. DHSEM is awaiting reimbursement from FEMA for $2,372,068.62 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 18, February 19, March 3, March 5, March 13, and March 17.

10.    The Nonprofit Security Grant Program provides assistance to enhance security for nonprofit organizations that are at high risk of terrorist attack. DHSEM is awaiting reimbursement for $514,373.02 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, March 5, March 10, and March 17, 2025.

11.    The Emergency Operations Center Grant improves emergency management and preparedness capabilities. DHSEM is awaiting reimbursement for $1,143.91 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19 and March 17, 2025.

12.    The State and Local Cybersecurity Grant program provides funding to eligible entities to address cybersecurity risks and threats to information systems owned or operated by or on behalf of state, local, or tribal governments. DHSEM is awaiting reimbursement for $4,513,194.65 under this program, having either submitted a request to FEMA that is still pending or having been denied access to submit the request on February 19, March 5, and March 17, 2025.

13.    The Building Resilient Infrastructure and Communities program supports states, local communities, tribes and territories as they undertake hazard mitigation projects, reducing the risks they face from disasters and natural hazards. DHSEM is awaiting reimbursement for

$7832.43 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, March 5, and March 17, 2025.

14.     The Flood Mitigation Assistance grant program provides funding to state, territory and local governments and federally recognized Tribal Nations for projects that reduce or eliminate the risk of repetitive flood damage to buildings insured by the National Flood Insurance Program. DHSEM is awaiting reimbursement for $136.54 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19 and March 4, 2025.

15.     The Hazardous Materials Emergency Preparedness grant program provides support to increase State, Territorial, Tribal, and local effectiveness in safely and efficiently handling hazardous materials incidents.  DHSEM is awaiting reimbursement for $938.41 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19 and March 5, 2025.

16.     The Pre-disaster Mitigation grant program provides funding to state, local, tribal, and territorial governments to plan for and implement sustainable cost-effective measures designed to reduce the risk to individuals and property from future natural hazards, while also reducing reliance on federal funding from future disasters.  DHSEM is awaiting reimbursement for $45,405.01 under the program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, March 5, and March 17, 2025.

17.     The Shelter and Services Program supports Customs and Border Protection in the safe, orderly, and humane release of noncitizen migrants from short-term holding facilities. DHSEM is awaiting reimbursement for $266,601.47 under the program, having either submitted

a request to FEMA that is still pending or having been denied access to submit a request on February 19, 2025.

18.     The Targeted Violence and Terrorist Prevention grant program provides funding for state, local, tribal, and territorial governments; nonprofits; and institutions of higher education to establish or enhance capabilities to prevent targeted violence and terrorism.  DHSEM is awaiting reimbursement for $61,077.79 under the program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, March 5, and March 17, 2025.

19.     The Urban Area Security Initiative grant program provides funding to enhance regional preparedness and capabilities in designated high-threat, high-density areas to prevent, protect against, mitigate, respond to, and recover from acts of terrorism and other threats.  DHSEM is awaiting reimbursement for $735,642.68 under the program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 19, March 5, and March 17, 2025.

20.     The Hazard Mitigation Grant Program provides funding to state, local, tribal and territorial governments so they can develop hazard mitigation plans and rebuild in a way that reduces, or mitigates, future disaster losses in their communities. This grant funding is available after a presidentially declared disaster.  DHSEM is awaiting reimbursement for $542,909.11 under this program, having either submitted requests to FEMA that are still pending or having been denied access to submit the requests on February 21, March 5, and March 17, 2025.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


A491

Executed this 24th day of March, 2025, in Centennial, Colorado.

/s/ _____

Michael Haney
Director, Office of Grants Management
Colorado Division of Homeland Security and
Emergency Management

# Exhibit 4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00039 |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al., | |
| Defendants. | |

## AFFIRMATION OF SARAH W. RICE

SARAH W. RICE, an attorney admitted to practice before this Court and admitted to practice before the courts of the State of Rhode Island, does hereby state the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I am Sarah W. Rice, Assistant Attorney General in the Office of the Attorney General for the State of Rhode Island, and I appear on behalf of the State of Rhode Island in this action.

2.      I submit this declaration in support of Plaintiff States' Renewed Second Motion to Enforce the Court's Orders Pertaining to Freeze of FEMA Funds. The facts set forth herein are based upon my personal knowledge and/or a review of the files in my possession.

3.      On March 18, Colorado received an email from FEMA staff, stating that FEMA would "[e]ffective immediately" implement "an additional review process of allocations before releasing funds for all grants." A true and correct copy of the March 18 FEMA email is attached as Exhibit A.

4.      On March 19, several Plaintiff States, including Colorado and Rhode Island, received an email from FEMA, announcing that FEMA was "instituting additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305." In its email, FEMA also asserted that it may deny a request for reimbursement "[i]f an adequate response is not received," to its informational demands, in which case the State "may need to submit a new reimbursement request; this will re-start the 30-day timeline." A true and correct copy of the March 19 FEMA email is attached as Exhibit B.

5.      Arizona has not received reimbursement for more than thirty days on a grant first mentioned in the State's Second Motion to Enforce, ECF No. 160-1, ¶ 5.  Arizona has additional reimbursement requests that have been pending for more than thirty days in five other grant programs.

6.      Illinois has not received reimbursement on any of the grants first mentioned in the State's Second Motion to Enforce, ECF No. 160-1, ¶ 11.  It has been more than thirty days since these funds were available to Illinois.

7.      Rhode Island's FEMA grants have similarly been unavailable for more than thirty days, including the 2022 State and Local Cybersecurity Grant Program (EMW-2022-CY-00004), 2023 State and Local Cybersecurity Grant Program (EMW-2023-CY-00049), 2022 Emergency Operations Center Grant Program (EMN-2022-EO-00001), 2023 Emergency Operations Center Grant Program (EMB-2023-EO-00001), 2022 Homeland Security Grant Program (EMW-2022-SS-00007), 2023 Homeland Security Grant Program (EMW-2023-SS-00020), 2022 Nonprofit Security Grant Program (EMW-2022-UA-00001), 2023 Nonprofit Security Grant Program (EMW-2023-UA-00021), 2022 Emergency Management Performance Grant (EMB-2022-EP-00001), and 2023 Emergency Management Performance Grant (EMB-2023-EP-00001).

I declare under penalty of perjury under the laws of the State of Rhode Island and the
United States of America that the foregoing is true and correct.

Dated: March 24, 2025

By: _Sarah W Rice_____

Sarah W. Rice
Rhode Island Office of the Attorney General
State of Rhode Island

# **Exhibit A**

**Leonard Giarrano**

| | |
|---|---|
| **From:** | ⬛@fema.dhs.gov> |
| **Sent:** | Tuesday, March 18, 2025 5:32 PM |
| **To:** | ⬛ - CDPS, ⬛ |
| **Cc:** | ⬛ |

**Subject:** RE: Colorado ARPA projects

Hi ⬛,

FEMA is taking swift action to ensure the alignment of its grant programs with Secretary Noem's direction. In accordance with this direction, FEMA, and the Department of Homeland Security (DHS) are instituting additional reviews on the allowability of costs for all grant payments and obligations, as permitted by 2 C.F.R Part 200, where applicable.

Effective immediately, FEMA and DHS are implementing an additional review process of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance.

If additional information becomes available, I will be happy to share it with you.

Thank you,

⬛
COVID Section Chief ∣ Recovery Division ∣ FEMA Region 8
Mobile: ⬛
⬛@fema.dhs.gov

Federal Emergency Management Agency
fema.gov

| | |
|---|---|
| **From:** | ⬛ |
| **Sent:** | |
| **To:** | ⬛ |
| **Cc:** | ⬛ |

**Subject:** ⬛

Hi ⬛,

We haven't talked in a long time. I hope you are doing well.

⬛ and ⬛ are out of the office today. The 2/28/2025 email message from FEMA Grant Programs Directorate indicated due to the additional review payment requests may take up to 30 days to process depending on the size and scope of the submission. I am not aware of a funding hold but only the request to include the additional information when submitted payment requests. I understand your frustration in provided the additional

A498

information however I believe the request from Grants Program Directorate is an effort to streamline the payment requests.

█ or █ may be able to provide additional information when they return to the office next week.

Have a great weekend!

█████

Emergency Management Specialist | Recovery Division | Region 8
Mobile: ████████
████ @fema.dhs.gov

Federal Emergency Management Agency
**fema.gov**

---

**From:** ██████ CDPS, ████████████ @state.co.us>
**Sent:** Friday, March 14, 2025 11:41 AM
**To:** ████████████ @fema.dhs.gov █████████████
██████████████
**Cc:** ████████████████████
████████████████████

**Subject:** Re: Colorado ARPA projects

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please select the Phish Alert Report button on the top right of your screen to report this email if it is unsolicited or suspicious in nature.

Dear █████,

I am writing to follow up on my previous email regarding the Colorado projects. I would appreciate clarification on whether our drawdowns are currently being processed or if they are on hold. We have not received a reimbursement for any Public Assistance projects since 2/19/2025.

As I noted in my earlier message, the information requested by the new guidance from the Grants Program Directorate is already accessible to FEMA. So a hold doesn't make sense, if there is one.

Thank you for your time and attention to this matter.

Sincerely,

████████████ | Director, Office of Grants Management

**OFFICE OF GRANTS MANAGEMENT (OGM)**
█████████ Mobile

8000 S. Chester Street, Suite 575 Centennial, CO 80112
█████████████████████████ | www.dhsem.state.co.us
www.readycolorado.com | www.coemergency.com
Twitter: @COEmergency | @READYColorado
Facebook: COEmergency | READYColorado

On Thu, Mar 6, 2025 at 12:06 PM ███████ CDPS, ████████████████████ wrote:

Hi ████ ,

Thank you for reaching out to us and I want to let you know that we appreciate that things are changing quickly and we are all trying to do the best we can. Unsurprisingly, I'm confused. On Friday, February 28, we received two different communications; one from the Recovery Division and one through the Grants Program Directorate. The key difference between the two is that the one from the Recovery Division just mentioned the additional time for review and specifically did not request any additional information. As you say, the one from the Grants Program Directorate asks for redundant information (the four bullet points). I, perhaps mistakenly, thought that that meant we would not get questions about the four bullet points from any Recovery Division grants. Can you help me understand this discrepancy?

Additionally, as I'm sure you know, you already have the information related to the four bullet points.

- Are there any subrecipients: As you know we draw down by PW that specifically lists the subrecipient, if there is one.
- How much is going to a subrecipient: Again, you already know this based on the PW
- What activities will be funded: Again, this is already listed in the PW
- What is the time period covered by the request: There is already a period of performance in the PW

Again, I know we're all trying to do our best on this but I also have to object when the requests don't make sense and increase the administrative burden on the State.

████████████████ | Director, Office of Grants Management

**OFFICE OF GRANTS MANAGEMENT (OGM)**
████████ Mobile
8000 S. Chester Street, Suite 575 Centennial, CO 80112
████████████ | www.dhsem.state.co.us
www.readycolorado.com | www.coemergency.com
Twitter: @COEmergency | @READYColorado
Facebook: COEmergency | READYColorado

On Thu, Mar 6, 2025 at 10:18 AM ███████ CDPS, ████████████████████ wrote:

Are you familiar with this? ▮ states that we need four bullet points for the manual review.

Thanks,

▮

**▮, Recovery Grants Manager**

Office of Grants Management (OGM)
▮ Mobile
8000 S. Chester Street, Suite 575 Centennial, CO 80112
▮ | DHSEM.Colorado.gov
COEmergency.com | MARS.Colorado.gov |COBEOC.Colorado.gov

Twitter: @COEmergency | Facebook: COEmergency

**SERVICE * TEAMWORK * RESPECT * INTEGRITY * VISION * EXCELLENCE**

---------- Forwarded message ---------
From: ▮@fema.dhs.gov>
Date: Thu, Mar 6, 2025 at 10:09 AM
Subject: Colorado ARPA projects
To: ▮@state.co.us▮

Cc: ▮

Hello all,

I am attaching a file with a list of projects that have ARPA funding braided into the fund codes. You can see in column AF and AG the drawdown data that we have as of Feb 18th, when this report was generated. I highlighted the three big ticket projects we discussed in today's meeting.

Don't forget to refer to the new guidance provided by the FEMA Grant Programs Directorate and include the four bullet points required with each drawdown for the manual review.

I appreciate that a lot is changing and information is coming from all angles. Thank you for being patient as we figure out this shifting landscape!

Take care,

███

_____

████████

Emergency Management Specialist | Recovery Division | Region 8

Mobile: ████████████

Email: ████████████████████

Federal Emergency Management Agency

**fema.gov**

Case: 1:25-cv-00039-JJM-PAS Document: 68-7 Date Filed: 02/25/2025 Entry Page ID #: 8490

# **Exhibit B**

**Leonard Giarrano**

| | |
|---|---|
| **From:** | FEMA (Federal Emergency Management Agency) ▓▓@service.govdelivery.com> |
| **Sent:** | Wednesday, March 19, 2025 6:51 PM |
| **To:** | ▓▓▓▓▓▓▓ (EMA) |
| **Subject:** | Instructions to Grant Recipients Pursuing Payments in FEMA GO and ND Grants/PARS |

---

**This Message Is From an External Sender**
This message came from outside your organization.

[ Report Suspicious ]



---

## Instructions to Grant Recipients Pursuing Payments in FEMA GO and ND Grants/PARS

FEMA and the Department of Homeland Security (DHS) are instituting additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305. As noted in the February 28, 2025, *Message to Grant Recipients on Manual Review Process,* the Federal Emergency Management Agency (FEMA) is taking swift action to ensure the alignment of its grant programs with Secretary of Homeland Security Kristie Noem's direction.

These measures will ensure funds are disbursed appropriately while continuing to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Once a recipient submits a payment request, FEMA will review the request. If FEMA approves a payment, it will process the payment through the respective non-disaster grant systems and inform recipients accordingly for drawdown purposes. If FEMA disapproves a payment, FEMA will inform the recipient.

**Processing and Payment Timeline:**

FEMA must comply with regulations governing payments to grant recipients. See 2 C.F.R. § 200.305. For grant recipients other than States, 2 C.F.R. § 200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 days after receipt of the payment request, unless FEMA reasonably believes the request to be improper. For state recipients, 2 C.F.R. § 200.305(a) instructs that federal grant payments are governed by Treasury-State Cash Management Improvement Act (CMIA) agreements ("Treasury-State

agreement") and default procedures codified at 31 C.F.R. part 205 and Treasury Financial Manual (TFM) 4A-2000, "Overall Disbursing Rules for All Federal Agencies." *See* 2 C.F.R. § 200.305(a).

Treasury-State agreements generally apply to "major federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A and are identified in the Treasury-State agreement. 31 C.F.R. §§ 205.2, 205.6. Where a federal assistance (grant) program is not governed by subpart A, payment and funds transfers from FEMA to the state are subject to 31 C.F.R. part 205, subpart B. Subpart B requires FEMA to "limit a funds transfer to a state to the minimum amounts needed by the state and must time the disbursement to be in accord with the actual, immediate cash requirements of the state in carrying out a federal assistance program or project. The timing and amount of funds transfers must be as close as is administratively feasible to a state's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs." 31 C.F.R. § 205.33(a). Nothing in 31 C.F.R. part 205, subpart B or the Treasury Financial Manual (TFM) 4A-2000 prohibits FEMA's manual review process. Nearly all FEMA grants are not "major federal assistance programs." As a result, payments to states for those grants are subject to the "default" rules of 31 C.F.R. part 205, subpart B.

If additional information is needed, a request for information will be issued by FEMA to the recipient; recipients are strongly encouraged to respond to any additional FEMA request for information inquiries within three business days. If an adequate response is not received, the request may be denied, and the entity may need to submit a new reimbursement request; this will re-start the 30-day timeline.

**Submission Process**

All non-disaster grant program reimbursement requests must be reviewed and approved by FEMA prior to drawdowns.

For all non-disaster reimbursement requests (regardless of system), please ensure submittal of the following information:

1. Grant ID / Award Number
2. Total amount requested for drawdown
3. Purpose of drawdown and timeframe covered (must be within the award performance period)
4. Non-Governmental Organizations (NGOs) Funding Details (if applicable).

- Is funding provided directly or indirectly to an NGO?
  - o If **no,** include statement "This grant funding is not being directed to NGOs."

- If **yes,** provide the following details:

  1. The name, mission statement, and purpose of each NGO receiving funds, along with the amount allocated and the specific role or activity being reimbursed.
  2. Whether the NGO's work or mission involves supporting aliens, regardless of whether FEMA funds support such activities.
  3. Whether the payment request includes an activity involving support to aliens?

5. Supporting documentation to demonstrate that expenses are allowable, allocable, reasonable, and necessary under 2 CFR Part 200 and in compliance with the

grant's Notice of Funding Opportunity (NOFO), award terms, and applicable federal regulations.

In some cases, additional supporting documentation may be required (if not already stipulated in the NOFO and/or award Terms and Conditions). Additional documentation could include:

- Invoices
- Purchase Orders – Supporting documentation for procured goods/services
- Evidence that the Indirect Cost Rate Agreement is current (if applicable)

If required, additional documentation would be submitted through the respective grants system (ND Grants or FEMA GO). Please coordinate with your FEMA program officer for more guidance.

For non-disaster grant programs, FEMA uses two different systems; each system requires different processes. More recent grant awards are managed (including payments) through the FEMA Grants Outcomes (FEMA GO) system. Older/legacy awards are managed in the Non-disaster Grants (ND Grants) System; ND Grants payments are facilitated through the separate Payment and Reporting System (PARS).

**FEMA GO**

**FEMA GO Steps to Submit Payment Requests for <u>active grant</u> awards – Authorized Organizational Representative (AOR) User Role**

The following guide provides instructions for FEMA GO external users to log-in, navigate the system, complete a request for payment, and view the request or FEMA decision. Once the grantee submits the payment request in FEMA GO it will contain the amount requested. The payment is then reviewed and approved/denied/returned by FEMA. If payment is approved, it is sent to the financial processing system to be processed by Treasury. Once processed, FEMA GO will notify the grantee of the final decision via email through the FEMA GO system and a copy of the email will be saved in the Grant File in the FEMA GO System. If FEMA disapproves a payment, FEMA will inform recipient.  Please use the guide to submit the required information as noted under "Submission Process" above.

- [FEMA GO Request for Payment Guide [links-2.govdelivery.com]](#)

For assistance, please contact the FEMA GO Help Desk, Monday-Friday | 9 a.m. – 6 p.m. E.T. | 1-877-585-3242 | [FEMAGO@fema.dhs.gov](mailto:FEMAGO@fema.dhs.gov)

**ND Grants/PARS**

**Steps to Submit Payment Requests**

Historically, grant recipients whose awards were located in ND Grants visit PARS to draw down for reimbursement. Given the manual review process underway, **grant recipients must now submit a narrative amendment first in ND Grants**. FEMA will review the narrative amendment and communicate approval status back to the recipient. If approved, the recipient will be instructed to draw down their approved monetary amount from PARS. If FEMA disapproves a payment, FEMA will inform recipient.

The following guide – *ND Grants Creating Narrative Only Amendment* [links-2.govdelivery.com] - provides instructions for grant recipients to submit payment requests via a narrative amendment approach in ND Grants.

For system assistance, please contact the ND Grants Service Desk. For programmatic or grants management questions, please contact your Program Manager or Grants Specialist, Monday – Friday, 9 a.m. – 6 p.m. E.T. at 1-800-865-4076 or by email at NDGrants@fema.dhs.gov.

## Stay up-to-date on all things grants

**@FEMAGrants | Twitter** [links-2.govdelivery.com]

**FEMA Grants | FEMA.gov** [links-2.govdelivery.com]

### *Unsubscribe Disclaimer:*

*If you no longer wish to receive messages on this topic, you must use "Change Delivery Preferences" [links-2.govdelivery.com] to edit the topics you follow.*

*Please note, clicking unsubscribe below will completely remove you from all GovDelivery distribution lists. If you clicked unsubscribe in error, you must resubscribe to receive any messages from GovDelivery.*

*If you have any questions, please contact us at FEMA-Grants-News@fema.dhs.gov.*

[links-2.govdelivery.com]

Update Your E-mail Address [links-2.govdelivery.com] | Change Delivery Preference [links-2.govdelivery.com] | Update State and Zip Code [links-2.govdelivery.com]

Subscribe to receive alerts during disasters in your state [links-2.govdelivery.com].

If you have questions or problems with the subscription service, please contact subscriberhelp.govdelivery.com [links-2.govdelivery.com].

This service is provided to you at no charge by FEMA [links-2.govdelivery.com].

Privacy Policy [links-2.govdelivery.com] | GovDelivery is providing this information on behalf of U.S. Department of Homeland Security, and may not use the information for any other purposes.

This email was sent to @ema.ri.gov using GovDelivery Communications Cloud on behalf of FEMA · U.S. Department of Homeland Security · Washington, DC 20472

links-2.govdelivery.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.,

        Plaintiffs,

      v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES, et al.,

        Defendants.

C.A. No. 1:25-cv-00039

## AFFIRMATION OF R. HENRY WEAVER

R. HENRY WEAVER, an attorney admitted *pro hac vice* to practice before this Court and admitted to practice before the courts of the State of Illinois, states the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.     I am an Assistant Attorney General in the Office of the Illinois Attorney General, and I appear on behalf of the State of Illinois in this action.

2.     I submit this declaration in support of Plaintiff States' Renewed Second Motion to Enforce the Court's Orders Pertaining to Freeze of FEMA Funds. The facts set forth herein are based upon my personal knowledge and/or a review of the files in my possession.

3.     FEMA "administers the Earthquake State Assistance grant program which is designed to increase and enhance the effective implementation of earthquake risk reduction activities at the national, regional, state and local level." SAM.gov, *Earthquake State Assistance*, https://sam.gov/fal/226c00bf60e64e56aae6c0aeeb7471b1/view (captured on March 25, 2025) (Exhibit A), at 2. The program's existence and its funding are mandated by statute. *See id.* at 9.

4.      The Illinois Emergency Management Agency – Office of Homeland Security ("IEMA-OHS") was awarded a Fiscal Year 2023 Individual State Earthquake Assistance ("ISEA") grant (grant number EMC-2023-GR-05005) under the above program.

5.      On February 20, 2025, IEMA-OHS submitted a payment request on its Fiscal Year 2023 ISEA grant through the FEMA GO payment system. Then, on February 25, IEMA-OHS received an email from the FEMA GO system that stated: "This email is confirmation that your payment request for grant number EMC-2023-GR-05005 in the amount of $941.57 has been approved. Your payment was accepted by our financial system on 02/25/2025. Please expect an electronic payment to be made to your organization's bank within 3 to 5 business days." *See* Exhibit B. Despite this statement, IEMA-OHS has never received any transfer of funds in relation to this payment request.

6.      On March 19, IEMA-OHS received from FEMA the same email about a new review process for grant payments that was received by other States and that was attached as Exhibit B to the Affirmation of Sarah W. Rice in this matter. *See* ECF 168-4 Ex. B.

7.      The March 19 email stated that FEMA would be "instituting additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305." *Id.* at 1. FEMA went on to list the additional information demands, *id.* at 2–3, and directed grant recipients to "[p]lease coordinate with your FEMA program officer for more guidance," *id.* at 3.

8.      Plaintiff States argued in their Renewed Second Motion to Enforce the Court's Orders Pertaining to Freeze of FEMA Funds, filed on March 24, that "the sweeping, indiscriminate, and indefinite pause implemented by FEMA under the guise of a purported 'manual review' process is essentially the same funding pause pending purported review of grant programs that OMB directed each agency to carry out, and which this court enjoined." ECF 168 at 7–8.

9.      In the afternoon of March 24, IEMA-OHS submitted another payment request on its Fiscal Year 2023 ISEA grant. *See* Email Correspondence Between IEMA-OHS and FEMA (Exhibit C).

10.      Shortly after submitting the payment request, an IEMA-OHS employee reached out to FEMA program officers to alert them that IEMA-OHS had "followed the new manual review payment process to submit a payment request from the FFY 23 ISEA award." *Id.*

11.      The next morning, on March 25 at 10:34 AM, a FEMA Grant Program Specialist replied, thanking the IEMA-OHS employee "for letting us know that you submitted the request." The FEMA program officer went on to provide further details: "Currently, all grants are still pending review for compliance with Executive Orders. We are waiting for further guidance for when we can approve payment requests. I'll provide an update as soon as possible." *Id.*

12.      FEMA's statement on March 25, the day after Plaintiff States filed their Renewed Second Motion to Enforce, that FEMA's "review" of "all grants" serves to ensure "compliance with Executive Orders" confirms Plaintiff States' position that this manual review "is essentially the same funding pause pending purported review of grant programs that OMB directed each agency to carry out, and which this court enjoined." ECF 168 at 7–8.

I declare under penalty of perjury under the laws of the State of Rhode Island and the United States of America that the foregoing is true and correct.

Dated: March 26, 2025

By: */s/ R. Henry Weaver*_____
R. Henry Weaver
Office of the Illinois Attorney General

# EXHIBIT A

 An official website of the United States government  Here's how you know  ⌄

 SAM.GOV®

 ←

Home　　Search　　Data Bank　　Data Services　　Help



📖 **Follow**

ASSISTANCE LISTINGS

# Earthquake State Assistance

**Assistance Listing**

Overview

Authorizations

Financial Information

Criteria for Applying

Applying for Assistance

Compliance Requirements

Contact Information

History

⚠ Note: This Assistance Listing was not updated by the issuing agency in 2025. Please contact the issuing agency listed under "Contact Information" for more information.

Assistance Listing

**Popular Name**
Earthquake State Assistance

**Sub-tier**
FEDERAL EMERGENCY MANAGEMENT AGENCY

**Assistance Listing Number**
97.082

**Related Federal Assistance**
Not Applicable.

View available opportunities on Grants.gov related to this Assistance Listing ↗

# Overview

## Objectives

A513

The National Earthquake Hazards Reduction Program (NEHRP) is the Federal Government's coordinated approach to addressing earthquake risks. In support of NEHRP, the Federal Emergency Management Agency (FEMA) administers the Earthquake State Assistance grant program which is designed to increase and enhance the effective implementation of earthquake risk reduction activities at the national, regional, state and local level, by making funding available through annual, non-competitive and competitive grants. NEHRP implements the Department of Homeland Security (DHS) and Presidential Policy Directive (PPD -8) objective of hazard mitigation, to develop and maintain those capabilities necessary to reduce the loss of lives and property by lessening the impact of earthquakes. In an effort to provide eligible States and Territories with multiple funding and project management options, as well as to allow for multi-state coordination of projects, the Earthquake State Assistance grant program utilizes two separate funding opportunities: Individual State Earthquake Assistance (ISEA), and Multi-State and National Earthquake Assistance (MSNEA). The Individual State Earthquake Assistance funding opportunity provides funding directly to those States and Territories that have been determined to be at a high, or a very high risk of earthquakes, and who can provide the statutory 25 percent cost-share. They must also be able to demonstrate that the assistance will result in enhanced seismic safety in the State. Funding is provided to eligible States and Territories through non-competitive grants that are administered by FEMA Regional earthquake program management staff. Allowable activities include: Support of seismic mitigation planning, developing inventories and conducting seismic safety inspections of critical structures and lifeline infrastructure, updating building codes, zoning codes, and ordinances to enhance seismic safety, increasing earthquake awareness and education, participation in emergency management exercises that substantially benefit earthquake mitigation efforts, and the promotion of earthquake insurance. Additionally, the Multi-State and National Earthquake Assistance funding opportunity is designed to facilitate the development and management of National, regional and multi-state earthquake risk reductions activities. Funding is made available through competitive grants to nonprofit organizations, as defined by 2 C.F.R. §200.70 and institutions of higher education as defined by 2 C.F.R. §200.55. The grants are administered by FEMA Headquarters' earthquake program management staff.

## Examples of Funded Projects

## Assistance Listing Description

A514

Earthquake State Assistance

# Authorizations

Title Earthquake Hazards Reduction Act of 1977, Part 95-124

The Earthquake Hazards Reduction Act of 1977, Pub. L. No. 95-124 (codified as amended at 42 U.S.C. §§ 7701-7709) (specifically 42 U.S.C. §§ 7704(a)(2)(B), (b)(2)(A)(i), (b)(2)(A)(iv) and (b)(2)(B).

# Financial Information

*These funding amounts do not reflect the award amounts that are displayed on USASpending.gov*



| Obligation(s) | FY 22 | FY 23 (est.) | FY 24 (est.) |
|---|---|---|---|
| ■ Cooperative Agreements Total | $3,489,001 | $3,203,650 | $3,300,000 |
| Totals | $3,489,001 | $3,203,650 | $3,300,000 |

## Range and Average of Financial Assistance

Refer to the official Notice of Funding Opportunity on Grants.gov by year for

A515

actual target allocations by program by eligible applicant.

## Accomplishments

## Account Identification

70-0711-0-1-453

# Criteria for Applying

## Types of Assistance

B - Cooperative Agreements

## Credentials and Documentation

Eligible States and Territories with High to Very High seismic risks as determined by the Program Office, non-profit organizations as defined by 2 C.F.R. §200.70, and institutions of higher education as defined by 2 C.F.R. §200.55. Subpart E - Cost Principles applies to this program. 2 CFR 200, Subpart E - Cost Principles applies to this program.

## Applicant Eligibility

### Designations

Other public institution/organization

The purpose of this funding is to support the earthquake mitigation efforts of States and Territories with High to Very High seismic risk as determined by the DHS, FEMA Program Office, non-profit organizations as defined by 2 C.F.R. §200.70 and institutions of higher education as defined by 2 C.F.R. §200.55. These efforts include 1) delivering and increasing awareness and education; 2) developing policies, tools, and products; and 3) implementing programs or projects to support risk reduction and resilience activities from earthquakes.

A516

## Beneficiary Eligibility

### Designations

U.S. Territories, State, Local, Federally Recognized Indian Tribal Governments

U.S. Territories, State, Local, Federally Recognized Indian Tribal Governments, eligible States and Territories with High to Very High seismic risks as determined by the DHS, FEMA Program Office, and eligible non-profit organizations and institutions of higher education.

## Length and Time Phasing of Assistance

Up to 18 months for both Individual State Earthquake Assistance, and Multi-State and National Earthquake Assistance. Extensions to the period of performance will be considered only through formal requests to FEMA and will only be granted for specific and compelling reasons. All extension requests must be submitted to FEMA at least ninety (90) days prior to the expiration of the grant period of performance. Any unobligated funds will be de-obligated at the end of the 90-day close-out period. For more information on extensions and how assistance is awarded/released, refer to the official Notices of Funding Opportunity on Grants.gov. Method of awarding/releasing assistance: Refer to official Notice of Funding Opportunity on Grants.gov.

## Use of Assistance

### Designations

Civil Defense/Disaster Prevention and Relief/Emergency Preparedness

For costs associated with providing guidance, technology transfer, and assistance to eligible States and Territories, for earthquake hazard mitigation activities. The Individual State Earthquake Assistance NOFO is a non-competitive grant, and restricted to certain specialized/qualified organizations designated by FEMA. Funding may only be used for the purpose set forth in the grant and must be consistent with the statutory authority for the award. Grant funds may not be

A517

used for matching funds for other federal grants / cooperative agreements, or for lobbying or intervention in federal regulatory or adjudicatory proceedings. In addition, federal funds may not be used to sue the federal government or any other government entity. All financial and progress reports must be current at the time of application. Refer to the Notice of Funding Opportunity. Pre-award costs are not allowed. Refer to the Notice of Funding Opportunity.Refer to the Notice of Funding Opportunity.Refer to the Notice of Funding Opportunity.

# Applying for Assistance

## Deadlines

All applications must be submitted in FEMA GO no later than 5:00:00 pm ET on Friday, May 31, 2023.

## Preapplication Coordination

Preapplication coordination is required. An environmental impact statement is required for this listing. An environmental impact assessment is required for this listing. This program is excluded from coverage under E.O. 12372. Preapplication coordination is required. An environmental impact assessment is required for this listing. This program is excluded from coverage under Executive Order (EO) 12372, Intergovernmental Review of Federal Programs, dated July 14, 1982. FEMA has prepared a Record of Environmental Consideration for both funding opportunities that documents EHP compliance for the range of activities eligible for funding under this program pursuant to FEMA's Instructions on Implementation of the Environmental Planning and Historic Preservation Responsibilities and Program requirements, FEMA Instruction 108-1-1, dated October 10, 2018.

## Application Procedures

2 CFR 200, Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards applies to this program.
Refer to official Notice of Funding Opportunity on Grants.gov.

A518

3/26/24, 4:48 PM                                                            SAM.gov

## Criteria for Selecting Proposals

Refer to official Notices of Funding Opportunity on Grants.gov.

## Award Procedure

Refer to official Notices of Funding Opportunity on Grants.gov.

## Date Range for Approval/Disapproval

Refer to official Notice of Funding Opportunity on Grants.gov.

## Renewals

Not Applicable.

## Appeals

Not Applicable.

# Compliance Requirements

## Policy Requirements

The following 2CFR policy requirements apply to this assistance listing:
Subpart B, General provisions

Subpart C, Pre-Federal Award Requirements and Contents of Federal Awards

Subpart D, Post Federal; Award Requirements

Subpart E, Cost Principles

Subpart F, Audit Requirements

A519

The following 2CFR policy requirements are excluded from coverage under this assistance listing:

*Not Applicable*

Additional Information:

## Reports

**Program Reports:** Refer to official Notice of Funding Opportunity on Grants.gov.

**Cash Reports:** Refer to official Notice of Funding Opportunity on Grants.gov.

**Progress Reports:** Refer to official Notice of Funding Opportunity on Grants.gov.

**Expenditure Reports:** Refer to official Notice of Funding Opportunity on Grants.gov.

**Performance Reports:** Refer to official Notice of Funding Opportunity on Grants.gov.

## Audits

Refer to the link below for 2 CFR Subpart F Audit Requirements.
https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-F
Additional audit requirements:

In accordance with the provisions of 2 CFR 200, Subpart F - Audit Requirements, non-federal entities that expend financial assistance of $750,000 or more in Federal awards will have a single or a program-specific audit conducted for that year. Non-Federal entities that expend less than $750,000 a year in Federal awards are exempt from Federal audit requirements for that year, except as noted in 2 CFR 200.503. These audits are due to the cognizant Federal agency, submitted through the Federal Audit Clearinghouse, not later than 9 months after the end of the audit period. For additional information regarding audit requirements, refer to 2 CFR, Section 200, Subpart F – Audit Requirements.

## Records

A520

Financial records, supporting documents, statistical records, and all other non-federal entity records pertinent to a federal award generally must be maintained for at least three years from the date the final Federal Financial Report (FFR) is submitted. See 2 C.F.R. § 200.334. Further, if the recipient does not submit a final FFR and the award is administratively closed, FEMA uses the date of administrative closeout as the start of the general record retention period. The record retention period may be longer than three years or have a different start date in certain cases. These include: • Records for real property and equipment acquired with federal funds must be retained for three years after final disposition of the property. See 2 C.F.R. § 200.334(c). • If any litigation, claim, or audit is started before the expiration of the three-year period, the records must be retained until all litigation, claims, or audit findings involving the records have been resolved and final action taken. See 2 C.F.R. § 200.334(a). • The record retention period will be extended if the recipient is notified in writing of the extension by FEMA, the cognizant or oversight agency for audit, or the cognizant agency for indirect costs. See 2 C.F.R. § 200.334(b). • Where FEMA requires recipients to report program income after the period of performance ends, the program income record retention period begins at the end of the recipient's fiscal year in which program income is earned. See 2 C.F.R. § 200.334(e). • For indirect cost rate proposals, cost allocation plans, or other rate computations records, the start of the record retention period depends on whether the indirect cost rate documents were submitted for negotiation. If the indirect cost rate documents were submitted for negotiation, the record retention period begins from the date those documents were submitted for negotiation. If indirect cost rate documents were not submitted for negotiation, the record retention period begins at the end of the recipient's fiscal year or other accounting period covered by that indirect cost rate. See 2 C.F.R. § 200.334(f).

## Regulations, Guidelines, and Literature

Authorizing Authority for the Program. Public Law 115-307, National Earthquake Hazards Reduction Program reauthorization Act of 2018. The specific authority to implement the Individual State Earthquake Assistance funding opportunity through the use of Grants comes from 42 U.S. Code 7704(a)(2)(B) and (b) (2) (a) (iv) National Earthquake Hazards Reduction Program (NEHRP). Appropriation Authority for Program: The Department of Homeland Security Appropriations Act, 2021(Public Law No. 116-260), Title III, FEMA, OPERATIONS AND SUPPORT, paragraph 1

A521

## Formula and Matching Requirements

Statutory formula is not applicable to this assistance listing.

Matching Requirements: Awardees of Individual State Earthquake Assistance (ISEA) Grants must provide 25 percent of the costs of the activities for which assistance is being given. The cost-share requirement is waived for U.S. Territories identified as "Insular Areas" in accordance with 48 U.S. Code, Title 48, Chapter 10, Section 1469a Congressional declaration of policy respecting "Insular Areas." In addition, the FEMA Administrator may lower or waive the cost-share requirement of these activities for a small, impoverished community, as defined in section 203 for the Disaster Relief Act of 1974 (42 U.S.C. 5133). Non-profit organizations and institutions of higher education awardees of Multi-State and National Earthquake Assistance (MSNEA) grants are not required to provide a cost-share. MOE requirements are not applicable to this assistance listing. MOE requirements are not applicable to this assistance listing.

# Contact Information

## Regional or Local Locations:

None. Region II (Commonwealth of Puerto Rico, Territory of the U.S. Virgin Islands) José A. Lebron One World Trade Center, 52 Floor Mail Room New York, New York 10007 Email: jose.lebron@fema.dhs.gov Office: (202) 805-7712 Region IV (Alabama, Kentucky, Mississippi, South Carolina, Tennessee) Noriko Kibble 3003 Chamblee-Tucker Road Atlanta, Georgia 30341 Email: noriko.kibble@fema.dhs.gov Office: (770)-220-8870 Region V (Illinois, Indiana) Daniel Ryan 536 South Clark Street Chicago, IL 60605 Email: daniel.p.ryan@fema.dhs.gov Office: (312) 408-4432 Region VI (Arkansas) Bart Moore Federal Regional Center, 800 North Loop 288, Denton, TX 76209 Email: bart.moore@fema.dhs.gov Office: (940) 898-5363 Region VII (Missouri) Cheickh Koma 11224 Holmes Road Kansas City, MO 64131 Email: Cheickh.koma@fema.dhs.gov Office: (816) 283-7067 Region VIII (Montana, Utah, Wyoming) Sean McGowan Denver Federal Center, Building 710A Denver, Colorado 80225 Email: sean.mcgowan@fema.dhs.gov Office: (303)-235-4681 Region IX (Arizona, California, Guam, Hawaii, Nevada) Anne Rosinski 1111 Broadway Oakland, California 94607 Email: anne.rosinski@fema.dhs.gov Office: (510) 627-7172) Region X (Alaska, Idaho, Oregon, Washington) Wendy Shaw 130 228th Street, SW Bothell, Washington 98021 Email: wendy.shaw@fema.dhs.gov Office: (202) 341-0848

A522

## Headquarters Office:

Jon Foster

400 C Street, SW 6th Floor Washington, DC 20472,
Washington, DC 20009

✉ Jonathon.Foster@fema.dhs.gov

📞 202-717-1601

Maigen Lawson

400 C Street, SW 6th Floor Washington, DC 20472,
Washington, DC 20471

✉ Maigen.Lawson@fema.dhs.gov

📞 202-341-4710

**Website:** https://www.fema.gov/emergency-managers/risk-management/earthquake/state-assistance-program-grants

# History

● **2023**
Published
Earthquake State Assistance

● **2023**
Published
Earthquake State Assistance

● **2023**
Published
Earthquake State Assistance

● **2023**
Published
Earthquake State Assistance

A523

**2023**
Published
Earthquake State Assistance

**2022**
Title Changed
**To:** Earthquake State Assistance
**From:** Earthquake Consortium

**2022**
Published
Earthquake Consortium

**2021**
Published
Earthquake Consortium

**2020**
Published
Earthquake Consortium

**2019**
Published
Earthquake Consortium

**2018**
Published
Earthquake Consortium

**2005**
Published
Earthquake Consortium

A524



**Feedback**

## Our Website

About This Site

Our Community ☑

Release Notes ☑

System Alerts

### Policies

Terms of Use

Privacy Policy

Restricted Data Use

Freedom of Information Act ☑

Accessibility

## Our Partners

Acquisition.gov ☑

USASpending.gov ☑

Grants.gov ☑

More Partners

### Customer Service

Help

Check Entity Status

Federal Service Desk ☑

External Resources

Contact



⚠ **WARNING**

This is a U.S. General Services Administration Federal Government computer system that is **"FOR OFFICIAL USE ONLY."** This system is subject to monitoring. Individuals found performing unauthorized activities are subject to disciplinary action including criminal prosecution.

This system contains Controlled Unclassified Information (CUI). All individuals viewing, reproducing or disposing of this information are required to protect it in accordance with 32 CFR Part 2002 and GSA Order CIO 2103.2 CUI Policy.

SAM.gov

**An official website of the U.S. General Services Administration**

# EXHIBIT B



| | |
|---|---|
| **From:** | FEMA GO |
| **To:** | |
| **Cc:** | |
| **Subject:** | [External] Payment confirmation: Fiscal Year 2023 Individual State Earthquake Assistance (ISEA) grant number EMC-2023-GR-05005 |
| **Date:** | Tuesday, February 25, 2025 7:21:37 AM |

This email is confirmation that your payment request for grant number EMC-2023-GR-05005 in the amount of $941.57 has been approved. Your payment was accepted by our financial system on 02/25/2025. Please expect an electronic payment to be made to your organization's bank within 3 to 5 business days.

# EXHIBIT C

From:
To:
Subject: Fw: IEMA OHS submits payment request from FFY 23 ISEA grant award
Date: Tuesday, March 25, 2025 4:16:47 PM

Get Outlook for iOS

From: [redacted] @fema.dhs.gov>
Sent: Tuesday, March 25, 2025 10:34:32 AM
To: [redacted] @illinois.gov>; [redacted] @fema.dhs.gov>
Cc: [redacted] @illinois.gov>; [redacted] @illinois.gov>
Subject: [External] RE: IEMA OHS submits payment request from FFY 23 ISEA grant award

Thank you for letting us know you submitted the request, [redacted] Currently, all grants are still pending review for compliance with Executive Orders. We are waiting for further guidance for when we can approve payment requests.

I'll provide an update as soon as possible.

Sincerely,

[redacted]
NDSP/HHPD/NEHRP Grant Program Specialist
FEMA | Region 5
Mitigation Division
Mobile: (202) [redacted]

From: [redacted] @illinois.gov>
Sent: Monday, March 24, 2025 3:49 PM
To: [redacted] @fema.dhs.gov>; [redacted] @fema.dhs.gov>
Cc: [redacted] @illinois.gov>; [redacted] @illinois.gov>
Subject: IEMA OHS submits payment request from FFY 23 ISEA grant award

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please select the Phish Alert Report button on the top right of your screen to report this email if it is unsolicited or suspicious in nature.

[redacted],

IEMA-OHS followed the new manual review payment process to submit a payment request from the FFY 23 ISEA award. Please review this request and if there are any issues let us know. Thank you!



[redacted]
Division of Preparedness and Grant Administration
Illinois Emergency Management Agency-Office of Homeland Security

2200 South Dirksen Parkway

Springfield, IL 62703
P:
E: ██████@illinois.gov

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

# United States Court of Appeals
## For the First Circuit

No. 25-1236

STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; OFFICE OF THE GOVERNOR *ex rel.* Andy Beshear, in his official capacity as Governor of the COMMONWEALTH OF KENTUCKY; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN,

Plaintiffs, Appellees,

v.

DONALD TRUMP, in his official capacity as President of the United States; U.S. OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, in his official capacity as Director of the U.S. Office of Management and Budget; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; PATRICIA COLLINS, in her official capacity as Treasurer of the United States; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; U.S. DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; U.S. DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor[*]; U.S. DEPARTMENT OF ENERGY; CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, in his official capacity as Secretary of the Interior; U.S. DEPARTMENT

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of Labor Lori Chavez-DeRemer is automatically substituted for former Acting Secretary of Labor Vince Micone as Respondent.

OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; U.S. DEPARTMENT OF JUSTICE;
PAMELA BONDI, in her official capacity as Attorney General; THE
NATIONAL SCIENCE FOUNDATION; DR. SETHURAMAN PANCHANATHAN, in his
official capacity as Director of the National Science
Foundation; U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in
her official capacity as Secretary of Agriculture; U.S.
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; ERIC SCOTT TURNER,
in his official capacity as Secretary of Housing and Urban
Development; U.S. DEPARTMENT OF STATE; U.S. AGENCY FOR
INTERNATIONAL DEVELOPMENT; MARCO RUBIO, in his official
capacities as Secretary of State and Acting Administrator of the
U.S. Agency for International Development; U.S. DEPARTMENT OF
DEFENSE; PETER HEGSETH, in his official capacity as Secretary of
Defense; U.S. DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, in
his official capacity as Secretary of Veterans Affairs; U.S.
DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in his official capacity
as Secretary of Commerce; NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION; JANET PETRO in her official capacity as Acting
Administrator of National Aeronautics and Space Administration;
CORPORATION FOR NATIONAL AND COMMUNITY SERVICE; JENNIFER
BASTRESS TAHMASEBI, in her official capacity as Interim Head of
the Corporation for National and Community Service; U.S. SOCIAL
SECURITY ADMINISTRATION; LELAND DUDEK, in his official capacity
as Acting Commissioner of U.S. Social Security Administration;
U.S. SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, in her
official capacity as Administrator of U.S. Small Business
Administration; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; and
CAMERON HAMILTON, in his official capacity as Acting
Administrator of the U.S. Federal Emergency Management Agency,

Defendants, Appellants.

─────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

─────────────

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

─────────────

Yaakov M. Roth, Acting Assistant Attorney General, Sara Miron

A533

Bloom, Acting United States Attorney, Eric D. McArthur, Deputy
Assistant Attorney General, Daniel Tenny, Sean R. Janda, Brian J.
Springer, Attorneys, Appellate Staff Civil Division, U.S.
Department of Justice, on brief for appellants.

Russell Coleman, Attorney General, and Matthew F. Kuhn,
Solicitor General, on brief for Commonwealth of Kentucky, amicus
curiae.

Nathan J. Moelker and Olivia F. Summers, on brief for American
Center for Law and Justice, amicus curiae.

Letitia James, Attorney General of New York, Barbara D.
Underwood, Solicitor General, Judith N. Vale, Deputy Solicitor
General, Mark S. Grube, Senior Assistant Solicitor General, Rabia
Muqaddam, Special Counsel for Federal Initiatives, Michael J.
Myers, Senior Counsel, Molly Thomas-Jensen, Special Counsel,
Colleen Faherty, Special Trial Counsel, Zoe Levine, Special
Counsel for Immigrant Justice, Rob Bonta, Attorney General of
California, Laura L. Faer, Christine Chuang, Supervising Deputy
Attorneys General, Joshua Patashnik, Deputy Solicitor General,
Nicholas Green, Carly Munson, Kenneth Sugarman, Marie Logan,
Theodore McCombs, Deputy Attorneys General, Kwame Raoul, Attorney
General of Illinois, Jane Elinor Notz, Solicitor General, Alex
Hemmer, Deputy Solicitor General, Peter F. Neronha, Attorney
General of Rhode Island, Kathryn M. Sabatini, Civil Division Chief,
Special Assistant Attorney General, Sarah W. Rice, Deputy Chief,
Public Protection Bureau, Assistant Attorney General, Leonard
Giarrano IV, Special Assistant Attorney General, Matthew J.
Platkin, Attorney General of New Jersey, Jeremy M. Feigenbaum,
Solicitor General, Andrea Joy Campbell, Attorney General of
Massachusetts, Katherine B. Dirks, Deputy Chief, Government
Bureau, Turner Smith, Deputy Chief, Energy and Environment Bureau,
David C. Kravitz, State Solicitor, Anna Lumelsky, Deputy State
Solicitor, Kristen K. Mayes, Attorney General of Arizona, Joshua
D. Bendor, Solicitor General, Philip J. Weiser, Attorney General
of Colorado, Shannon Stevenson, Solicitor General, William Tong,
Attorney General of Connecticut, Michael K. Skold, Solicitor
General, Kathleen Jennings, Attorney General of Delaware, Vanessa
L. Kassab, Deputy Attorney General, Brian L. Schwalb, Attorney
General of the District of Columbia, Andrew Mendrala, Assistant
Attorney General, Public Advocacy Division, Anne E. Lopez,
Attorney General of Hawai'i, David D. Day, Special Assistant to
the Attorney General, Kaliko'onālani D. Fernandes, Solicitor
General, Andy Beshear, Governor of Kentucky, S. Travis Mayo,
General Counsel, Taylor Payne, Chief Deputy General Counsel, Laura
C. Tipton, Deputy General Counsel, Aaron M. Frey, Attorney General
of Maine, Jason Anton, Assistant Attorney General, Anthony G.
Brown, Attorney General of Maryland, Adam D. Kirschner, Senior
Assistant Attorney General, Dana Nessel, Attorney General of

Michigan, Linus Banghart-Linn, Chief Legal Counsel, Neil Giovanatti, Assistant Attorney General, Keith Ellison, Attorney General of Minnesota, Liz Kramer, Solicitor General, Aaron D. Ford, Attorney General of Nevada, Heidi Parry Stern, Solicitor General, Raúl Torrez, Attorney General of New Mexico, Anjana Samant, Deputy Counsel, Jeff Jackson, Attorney General of North Carolina, Daniel P. Mosteller, Associate Deputy Attorney General, Dan Rayfield, Attorney General of Oregon, Christina Beatty-Walters, Senior Assistant Attorney General, Charity R. Clark, Attorney General of Vermont, Jonathan T. Rose, Solicitor General, Nicholas W. Brown, Attorney General of Washington, Andrew Hughes, Assistant Attorney General, Leah Brown, Assistant Attorney General, Joshua L. Kaul, Attorney General of Wisconsin, and Aaron J. Bibb, Assistant Attorney General, on brief for appellees.

Elizabeth B. Wydra, Brianne J. Gorod, Miriam Becker-Cohen, and Nina G. Henry, on brief for Constitutional Accountability Center, amicus curiae.

————————————

March 26, 2025

————————————

**BARRON**, **Chief Judge**.  The heads of various federal agencies as well as the agencies themselves -- collectively, the Agency Defendants[1] -- move for a stay pending appeal.  They seek to block temporarily a preliminary injunction that the United States District Court for the District of Rhode Island issued against them on March 6, 2025.[2]  The Plaintiffs are twenty-two states, including Rhode Island, as well as the District of Columbia and the Governor of Kentucky ("Plaintiff-States").

The suit challenges the Office of Management and Budget ("OMB") Memorandum M-25-13 ("OMB Directive"), issued on January 27, 2025.  It also challenges alleged funding freezes under the OMB Directive and Executive Orders that the President issued in his first week in office to which the OMB Directive referred.

The Plaintiff-States filed their initial complaint on January 28, 2025.  The next day, OMB rescinded the OMB Directive.  The operative complaint alleges that the funding freezes took place prior to that rescission and continued thereafter.

---

[1] The Appellants before us -- and thus those bringing the stay motion at issue -- also include the President, who is named as a defendant in this suit, but to whom the preliminary injunction does not apply.  We thus use the term Agency Defendants except where we mean to refer to all Defendants, the President included, in which case we use the term Defendants.

[2] In our discretion, we have accepted the proposed amicus briefs.  We have considered them only insofar as they concern legal issues and positions raised by the parties.  See Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 33 n.10 (1st Cir. 2020).

The preliminary injunction, among other things, bars the

Agency Defendants from:

> reissuing, adopting, implementing, giving
> effect to, or reinstating under a different
> name the directives in [the OMB Directive]
> with respect to the disbursement and
> transmission of appropriated federal funds to
> the States under awarded grants, executed
> contracts, or other executed financial
> obligations.[3]

It further prohibits the Agency Defendants from:

> pausing, freezing, blocking, canceling,
> suspending, terminating, or otherwise
> impeding the disbursement of appropriated
> federal funds to the States under awarded
> grants, executed contracts, or other executed
> financial obligations based on the OMB
> Directive, including funding freezes
> dictated, described, or implied by Executive
> Orders issued by the President before
> rescission of the OMB Directive or any other
> materially similar order, memorandum,
> directive, policy, or practice under which the
> federal government imposes or applies a
> categorical pause or freeze of funding

---

[3] An "obligation" is defined in federal appropriations law as "a definite commitment which creates a legal liability of the Government for the payment of appropriated funds for goods and services ordered or received."  2 U.S. Gov't Accountability Off., Principles of Federal Appropriations Law, at 7-3 (3d ed. 2006) (citations omitted) [hereinafter GAO Redbook].  Obligated federal funds may be payable immediately or at a later point, and the "fact that an unmatured liability may be subject to a right of cancellation does not negate the obligation."  Id. at 7-4 to -5. Funds available under awarded grants, executed contracts, or other executed financial obligations are obligated federal funds.  See 31 U.S.C. § 1501(a)(1), (5) (including, within the scope of the obligation-reporting requirement, funds payable under grant awards, whether fixed by law or under an agreement, and other binding agreements); see also GAO Redbook at 7-40 to -42 (explaining that a grant becomes obligated once it is awarded and its terms are communicated to the grantee).

appropriated by Congress. This includes, but is by no means [] limited to, Section 7(a) of Executive Order 14154, Unleashing American Energy.[4]

In addition, the preliminary injunction requires the Agency Defendants to provide written notice "to all federal departments and agencies to which the OMB Directive was addressed" that shall:

> [(1)] instruct [them] that they may not take any steps to implement, give effect to, or reinstate under a different name or through other means the directives in the OMB Directive with respect to the disbursement or transmission of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations[;] [and] [(2)] instruct [them] to release and transmit any disbursements to the States on awarded grants, executed contracts, or other executed financial obligations that were paused on the grounds of the OMB Directive and Executive Orders included by reference therein or issued before the rescission of the OMB Directive.

The stay motion is denied.

---

[4] The preliminary injunction states that it is "by no means not limited to, Section 7(a) of Executive Order 14154, Unleashing American Energy." We understand the inclusion of "not" to be a typographical error, and neither party contends otherwise.

**I.**

This case already has an unusually involved procedural history.  A detailed review of that history is necessary to set the stage for the substantive analysis that follows.

**A.**

On January 27, 2025, Matthew Vaeth, Acting Director of OMB, issued the OMB Directive, which is titled "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs," to all heads of executive departments and agencies.  The OMB Directive stated that it "requires Federal agencies to identify and review all Federal financial assistance programs and supporting activities consistent with the President's policies and requirements," (footnotes omitted), and it noted both the definition of "financial assistance" set forth in 2 C.F.R. § 200.1 and that "[n]othing in this memo should be construed to impact Medicare or Social Security benefits."

The OMB Directive identified a series of Executive Orders the President issued in his first week in office.  It then provided that, "[t]o implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders." It further provided that:

> [i]n the interim, to the extent permissible
> under applicable law, Federal agencies <u>must
> temporarily pause</u> all activities related to
> obligation or disbursement of all Federal
> financial assistance, and other relevant
> agency activities that may be implicated by
> the executive orders, including, but not
> limited to, financial assistance for foreign
> aid, nongovernmental organizations, DEI, woke
> gender ideology, and the green new deal.

The OMB Directive explained that "[t]his temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities."  It further stated that "[t]he temporary pause will become effective" the next day -- January 28 -- at 5:00 PM and that "[e]ven before completing their comprehensive analysis, Federal agencies must immediately identify any legally mandated actions or deadlines for assistance programs arising while the pause remains in effect" and "report this information to OMB along with an analysis of the requirement."

The OMB Directive went on to provide that: "[n]o later than February 10, 2025, agencies shall submit to OMB detailed information on any programs, projects or activities subject to this pause."  It added that:

> [e]ach agency must pause: (i) issuance of new
> awards; (ii) disbursement of Federal funds
> under all open awards; and (iii) other
> relevant agency actions that may be implicated
> by the executive orders, to the extent
> permissible by law, until OMB has reviewed and

provided guidance to your agency with respect
to the information submitted.

It provided as well that "OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis."

The OMB Directive explicitly identified the following Executive Orders: Protecting the American People Against Invasion, Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025); Reevaluating and Realigning United States Foreign Aid, Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025); Putting America First in International Environmental Agreements, Exec. Order No. 14,162, 90 Fed. Reg. 8455 (Jan. 20, 2025); Unleashing American Energy, Exec. Order No. 14,154, 90 Fed. Reg. 8353 (Jan. 20, 2025) [hereinafter Unleashing EO]; Ending Radical and Wasteful Government DEI Programs and Preferencing, Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025); and Enforcing the Hyde Amendment, Exec. Order No. 14,182, 90 Fed. Reg. 8751 (Jan. 24, 2025). The "Unleashing American Energy" Executive Order ("Unleashing EO") is particularly relevant for reasons that will become clear below.

The Unleashing EO provides in Section 2 a list of "polic[ies]" that it states are "the policy of the United States." It further provides in Section 7(a):

> All agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58) . . . and shall review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and the policy outlined in section 2 of this order. . . . No funds identified in this subsection . . . shall be disbursed by a given agency until the Director of OMB and Assistant to the President for Economic Policy have determined that such disbursements are consistent with any review recommendations they have chosen to adopt.

Unleashing EO, 90 Fed. Reg. 8357.

OMB issued guidance concerning the Unleashing EO on January 21, 2025 ("Unleashing Guidance"). The guidance states that "[t]his pause only applies to funds supporting programs, projects, or activities that may be implicated by the policy established in Section 2 of the order." It further provides that "[a]gency heads may disburse funds as they deem necessary after consulting with the Office of Management and Budget." Id.

On January 28, OMB also issued a separate document about the scope of the OMB Directive ("OMB Q&A"). The document stated in bold type: "Any program not implicated by the President's Executive Orders is not subject to the pause," and then listed the

- 11 -
A542

seven Executive Orders discussed above.  It explained that "the
pause does not apply across-the-board.  It is expressly limited to
programs, projects, and activities implicated by the President's
Executive Orders, such as ending DEI, the green new deal, and
funding nongovernmental organizations that undermine the national
interest."  Additionally, however, OMB circulated a document to
federal agencies entitled "Instructions for Federal Financial
Assistance Program Analysis in Support of M-25-13" ("OMB
Spreadsheet").  It "required" "[a]ll Federal agencies that provide
Federal financial assistance . . . to complete the attached
spreadsheet and submit it to OMB" by February 7, 2025.  The
spreadsheet listed over 2,500 federal funding lines, including for
programs that the OMB Q&A explicitly stated were excluded from the
pause, the Head Start program being one example.

**B.**

The Plaintiff-States filed their suit in the District of
Rhode Island on January 28, 2025, naming as defendants the
President, the OMB and its head, and eleven separate agencies and
their heads.  The complaint alleged that the OMB Directive, which
the complaint asserted was "set to take effect at [5:00 PM] today
but [was] actually being implemented even earlier," was
unconstitutional on various grounds.  The complaint also alleged
that the OMB Directive violated the Administrative Procedure Act
("APA"), 5 U.S.C. § 701 et seq., because it constituted "final

agency action" that was "contrary to law" and "arbitrary and capricious." As to the action being contrary to law, the complaint alleged, among other things, that the "Defendants have no authority to impose a government-wide pause on federal awards without regard to the individual authorizing statutes, regulations, and terms that govern each funding stream." As to the action being "arbitrary and capricious," the complaint alleged, also among other things, that "the OMB Directive provides no reasoned basis for pausing the disbursement and obligation of trillions of federal dollars and fails to consider the consequences of that action."

To support their claims, the Plaintiff-States alleged that they receive significant amounts of federal funds to provide essential services to their residents. They further alleged that the Agency Defendants' implementation of the OMB Directive, by resulting in the withholding of these funds and providing them with less than twenty-four hours' notice of doing so, would interfere with their ability to provide such services. They alleged, too, that the tight time frame for the OMB Directive's implementation and the last-minute notice of it "compounded the[ir] injuries" because they could neither "prepare for or mitigate" the fiscal impact nor effectively plan for any future or downstream fiscal effects.

The Plaintiff-States sought a declaratory judgment and an injunction, as well as to vacate the OMB Directive under § 706

of the APA.  See 5 U.S.C. § 706.  They also moved for a temporary restraining order ("TRO") to "restrain the Defendants from enforcing the OMB Directive's directive to 'pause all activities related to obligation or disbursement of all Federal financial assistance.'"

The same day the Plaintiff-States filed their complaint, the U.S. District Court for the District of Columbia issued an administrative stay of the OMB Directive pending that court's hearing on a separate request for a temporary restraining order. See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget, No. 1:25-cv-00239, 2025 WL 314433, at *1 (D.D.C. Jan. 28, 2025). In that case, non-profit organizations brought their own suit challenging the OMB Directive.[5]  See id.

On January 29, 2025, prior to the scheduled 3:00 PM hearing on the Plaintiff-States' TRO motion in the District of Rhode Island, the Defendants filed a notice with the District Court.  The notice stated that OMB had rescinded the OMB Directive and that the Plaintiff-States' claims and request for injunctive relief were moot.  The Defendants nevertheless indicated that they would appear at the 3:00 PM hearing.  The District Court proceeded

---

[5] The district court subsequently issued a preliminary injunction in that case.  See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget, No. 1:25-cv-00239, 2025 WL 597959, at *19-20 (D.D.C. Feb. 25, 2025).

with the hearing and, on January 31, 2025, granted a TRO as to the Agency Defendants.

With respect to whether the OMB Directive's rescission mooted the case, the District Court determined that the rescission of the OMB Directive was in name only, relying in part on a statement that the White House Press Secretary made on the social media platform "X" on the day of the rescission. She stated: "This is NOT a rescission of the federal funding freeze. It is simply a rescission of the OMB memo. Why? To end any confusion created by the court's injunction. The President's EO[]s on federal funding remain in full force and effect, and will be rigorously implemented." The District Court also relied on evidence submitted by the Plaintiff-States regarding emails that the Environmental Protection Agency ("EPA") sent federal grant recipients one day "after the so-called rescission." One email stated that the agency is working "diligently to implement the [OMB Directive], Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs, to align Federal spending and action with the will of the American people as expressed through President Trump's priorities." The email also explained that "[t]he agency is temporarily pausing all activities related to the obligation or disbursement of EPA Federal financial assistance at this time" and that "EPA is continuing to work with OMB as they review processes, policies, and programs, as required by the memorandum."

"Based on the Press Secretary's unequivocal statement and the continued actions of Executive agencies," the District Court determined that the case was not moot. It explained that "the evidence shows that the alleged rescission of the OMB Directive was in name-only and may have been issued simply to defeat the jurisdiction of the courts." It also explained that, based on the record, "the policies in the OMB Directive" were "still in full force and effect," such that the "substantive effect of the directive carries on."

### c.

One week later, on February 7, 2025, the Plaintiff-States filed a motion to enforce the TRO as to certain federal funds that they contended were due to them but remained paused. That same day, the Plaintiff-States also filed a motion for a preliminary injunction against the Agency Defendants.

That motion described the Plaintiff-States' requested relief in terms that approximate the preliminary injunction that the District Court ultimately entered. To support the motion, the Plaintiff-States introduced a large body of evidence to show that the Agency Defendants had implemented, within a matter of hours or days, categorical freezes of obligated federal funds, without regard to whether the relevant statute or grant award permitted the funding freezes.

This evidence included 127 exhibits, which included more than 100 declarations, as well as grant documents and communications with the relevant agencies. The communications concerned the named agencies' decisions to freeze funds in implementation of the OMB Directive and the President's Executive Orders. The declarations, most of which were submitted by public officials from the Plaintiff-States, described these states' inability to access their federal funding in the immediate aftermath of the issuance of the OMB Directive and the President's Executive Orders. The declarations also discussed the harm that the funding freezes and attendant uncertainty were causing and would continue to cause the Plaintiff-States.

Based on this evidence, the Plaintiff-States argued that they had standing and that the case was not moot. As to the elements of the established test for securing preliminary injunctive relief, see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), the Plaintiff-States contended that they had established a likelihood of success on the merits based on their claims that the Defendants' actions violated the APA and the Constitution, and exceeded the Executive's statutory authority.[6] They further contended that the remaining elements of the Winter

---

[6] As discussed below, the Plaintiff-States subsequently amended their complaint to expressly include this statutory ultra vires claim as a separate count.

test favored their request for preliminary injunctive relief due to the impact of the funding freezes on their ability to reliably provide essential services to their residents, and the absence of harm that the relief they sought would cause the Defendants.

The APA claims are the only ones that we address in resolving the stay motion before us here. The Plaintiff-States contended that they were likely to succeed in showing that the challenged agency actions -- which their preliminary injunction motion collectively termed the "Federal Funding Freeze"[7] -- violated the APA because those actions were contrary to law and ultra vires, 5 U.S.C. § 706(2)(B)-(C), as well as arbitrary and capricious, id. § 706(2)(A).

With respect to the agency actions being "contrary to law," the Plaintiff-States pointed to the Impoundment Control Act ("ICA"), 2 U.S.C. § 681 et seq. They also pointed to various statutory schemes governing the disbursement of federal funds under specific programs, including the Inflation Reduction Act ("IRA"), Pub. L. No. 117-169, 136 Stat. 1818 (2022), and the Infrastructure Investment and Jobs Act ("IIJA"), Pub. L. No. 117-58, 135 Stat. 429 (2021). They contended that these measures

---

[7] The term "Federal Funding Freeze" appears to be drawn from the White House Press Secretary's statement that the rescission of the OMB Directive "is NOT a rescission of the federal funding freeze."

establish mandatory funding directives based on allocation formulas and enumerated factors.

With respect to the challenged agency actions being "arbitrary and capricious," the Plaintiff-States asserted that the "only explanation provided" for the "Funding Freeze" was its "inten[t] to help the Executive achieve his policy priorities." They also argued that the Agency Defendants had neither identified statutory authority for the actions making up the "Funding Freeze" nor "attempted to explain their utter disregard for the [resulting] harms." And they argued that "freezing all funds under the IRA and the IIJA" was "substantively unreasonable" because doing so conflicted with applicable statutory directives.

The Plaintiff-States separately made arguments about the existence of "final agency action." See 5 U.S.C. § 704. They contended that the OMB Directive itself constituted final agency action. They also contended that the Agency Defendants' "actions to implement the Funding Freeze by unilaterally suspending funding" separately constituted final agency actions because "[e]ach of th[o]se actions . . . marked 'the consummation' of agency decision making and determined 'rights or obligations . . . from which legal consequences' flowed." (Second

alteration in original) (quoting <u>Bennett</u> v. <u>Spear</u>, 520 U.S. 154, 177-78 (1997)).[8]

### D.

Two days later, on February 9, 2025, the Defendants responded to the Plaintiff-States' pending motion to enforce the TRO. The District Court granted the motion the next day.

On February 10, 2025, the Defendants appealed the TRO (as well as the District Court's order granting its extension) and the District Court's order granting the motion to enforce the TRO. They also asked us to stay these orders pending appeal and to administratively stay them pending resolution of their motion for a stay pending appeal.[9] In seeking the administrative stay, the Defendants argued, among other things, that the order granting the motion to enforce effectively required them to go to the District Court for "preclearance" before exercising their lawful authority to withhold funds "across [a] multitude of [federal] programs."

On February 11, 2025, we denied the motion for an administrative stay without prejudice. We also noted the

---

[8] The Plaintiff-States also argued that "the funding freezes implemented by Agency Defendants are likewise reviewable as, at minimum, the 'denial' of 'relief' -- another form of agency action reviewable under the APA, 5 U.S.C. § 551(13), defined to include the denial of 'the whole or part of agency . . . grant of money,' <u>id.</u> § 555(11)."

[9] The Defendants simultaneously sought a stay pending appeal of those same orders from the District Court.

Plaintiff-States' position that the District Court's order granting the motion to enforce the TRO "does not stop [D]efendants from limiting access to funds without any preclearance from the [D]istrict [C]ourt on the basis of the applicable authorizing statutes, regulations, and terms" (internal quotation marks omitted), as well as our confidence that the District Court would provide any clarification necessary as to that issue. The next day, the District Court issued an order clarifying that: (1) the TRO "permits the Defendants to limit access to federal funds on the basis of the applicable authorizing statutes, regulations, and terms" (internal quotation marks omitted); (2) the order granting Plaintiff-States' motion to enforce "does not bar[] both the President and much of the Federal Government from exercising their own lawful authorities to withhold funding without the prior approval of the [D]istrict [C]ourt" (internal quotation marks omitted); and (3) neither order "require[s] the Defendants to seek 'preclearance' from the Court before acting to terminate funding when that decision is based on <u>actual authority in the applicable statutory, regulatory, or grant terms</u>."[10]

---

[10] In a separate order issued the same day, the District Court denied the Defendants' motion to stay the TRO, the order extending the TRO, and the order granting the Plaintiff-States' motion to enforce the TRO pending appeal to this Court. On February 13, 2025, the Defendants voluntarily dismissed their appeal.

**E.**

On February 12, 2025, the Defendants filed their opposition to the Plaintiff-States' motion for a preliminary injunction. Their primary argument was that the "Plaintiffs' Complaint challenges one action -- the OMB [Directive] -- which has now been rescinded," and they asserted that the rescission of the OMB Directive rendered the case moot. They did not attempt to dispute the Plaintiff-States' evidence or introduce any contrary evidence of their own.

As to the merits of the APA claims, the Defendants contended, among other things, that the Plaintiff-States had not identified any final agency action other than the rescinded OMB Directive. They also argued that the Plaintiff-States' attempt to invoke the ICA was unavailing, because that statute did not apply here and, in any event, was not enforceable under the APA. They further argued that the Plaintiff-States' claims "rest on a . . . flawed premise" because the OMB Directive and Executive Orders "expressly instruct[] agencies to implement a pause only to the extent permissible by law," and thus do not direct a "categorical[]" pause "without consideration of whether [such] a pause is consistent with the underlying legal framework governing that funding."

At the end of their response in opposition, the Defendants included the statement: "[p]articularly in light of the

extraordinary breadth of Plaintiffs' requested relief, to the extent the Court issues any injunctive relief, the United States respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized, or at a minimum that such relief be administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the court of appeals if an appeal is authorized."  They did not thereafter file a motion for such a stay with the District Court or at any point in the proceedings below mention or address the established test for securing one set forth in Nken v. Holder, 556 U.S. 418 (2009).  See Fed. R. App. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal.").

**F.**

On February 13, 2025, the day after the Defendants filed their opposition, the Plaintiff-States filed an Amended Complaint. It alleged that the challenged "Federal Funding Freeze" violated the APA, the Constitution, and exceeded the Executive's statutory authority.  It also alleged that the "Federal Funding Freeze [was] effectuated through EOs, the Unleashing [Guidance], the OMB Directive, and other agency actions implementing [those orders and directives] as detailed [in the Amended Complaint]."

The Amended Complaint named eleven additional agencies and their heads as defendants.  It also included additional factual

allegations regarding "major funding disruptions" that followed the issuance of certain Executive Orders that "direct[ed] federal agencies to review funding recipients in connection with widespread policy changes" but predated the issuance of the OMB Directive.  Among other things, the Amended Complaint sought as relief an "injunction preventing the Agency Defendants from maintaining or reinstating the Federal Funding Freeze, including through implementation of EOs, such as the Unleashing EO, and agency actions implementing them."

The Plaintiff-States filed a reply to the Defendants' opposition to their motion for preliminary injunction the next day.  The Defendants did not request an opportunity to respond to the Amended Complaint, either in a sur-reply or by filing a new opposition.  That was so even though their opposition to the motion for the preliminary injunction focused on the Plaintiff-States' initial complaint and asserted that it targeted only the OMB Directive itself, which had been rescinded.

On February 21, 2025, the District Court held a hearing on the preliminary injunction motion.  Both parties addressed the Amended Complaint, but the Defendants did not seek to make any additional filing or suggest it would be improper for the District Court to focus on the Amended Complaint in resolving the preliminary injunction motion.

## G.

On March 6, 2025, the District Court issued its ruling on the motion for the preliminary injunction. It granted the motion.

The District Court reasoned that the OMB Directive's rescission did not moot the case. The District Court concluded that, under the "voluntary cessation" doctrine, Lowe v. Gagné-Holmes, 126 F.4th 747, 756 (1st Cir. 2025), the rescission "was a clear effort to moot legal challenges to the federal funding freeze" and that it was "unreasonable to conclude that the Defendants will not reinstate [the OMB Directive] absent an injunction." The District Court also reasoned that the Plaintiff-States' claims were not moot because the challenged funding freezes continued and because of the additional claims in the Amended Complaint relating to "the Unleashing Guidance, the related Unleashing [Executive Order], and the general implementation of funding freezes based on the President's EO[s]."[11] Winding up its jurisdictional analysis, the District

---

[11] Although the District Court referred to a singular "EO," it later explained -- correctly -- that the Amended Complaint seeks to "enjoin the Agency Defendants from implementing 'the Federal Funding Freeze' 'effectuated through EOs, the Unleashing [Guidance], the OMB Directive, and other agency actions.'" (Emphasis added) (alteration in original). It further explained that the Plaintiff-States' challenge is to "a pause on federal funding that was implemented under not only the OMB Directive, but also . . . the EOs incorporated therein and other agency actions

Court determined that the Plaintiff-States had met their burden with respect to their Article III standing to sue.

The District Court then addressed the Plaintiff-States' contention that they were likely to succeed on the merits as to their APA claims. The District Court identified the OMB Directive and the Agency Defendants' "swift actions to execute the categorical funding freeze" under the OMB Directive, Unleashing EO, and Unleashing Guidance as final agency actions. It explained that those actions "marked the 'consummation of each agency's decisionmaking process'" (quoting Drs. for Am. v. Off. of Pers. Mgmt., No. CV 25-322, 2025 WL 452707, at *5 (D.D.C. Feb. 11, 2025)), and that the "abrupt, categorical, and indefinite pause of obligated federal funds is the direct, appreciable legal consequence" of those actions.

The District Court also determined that the Plaintiff-States had demonstrated that they were likely to succeed in showing that the challenged final agency actions were contrary to law and arbitrary and capricious. The District Court concluded that there was sufficient evidence to establish that the Agency Defendants' funding freezes were categorical in nature,[12] and not

---

such as the OMB's issuance of the Unleashing Guidance." (Emphasis added).

[12] The District Court treated the Unleashing EO and Guidance interchangeably at points.

individualized assessments of their authority to pause individual funding streams.  In doing so, the District Court referred to the evidence that the Plaintiff-States had submitted along with their motion for a preliminary injunction discussing their inability to access funds in the immediate aftermath of the issuance of the OMB Directive and the Unleashing EO, as well as communications received from Agency Defendants regarding the freezing of such funds.  Based on the unrebutted evidence before it, the District Court observed that any "suggest[ion] that the challenged federal funding freezes were purely the result of independent agency decisions" was "disingenuous."

As to the Plaintiff-States' "contrary to law" showing, the District Court determined that the challenged actions of the Agency Defendants involved categorical funding determinations that were likely barred by both the ICA and specific directives in individual statutes mandating that funds be spent in specific ways. As to the Plaintiff-States' "arbitrary and capricious" showing, the District Court determined that the challenged agency actions, given their breadth and immediacy, were likely not supported by rational reasons and that the Defendants had failed to consider meaningfully important aspects of the problem that they sought to address in taking those actions.

Finally, the District Court concluded both that the Plaintiff-States had presented "unrebutted evidence" of

irreparable harm and that the balance of equities, as well as the public interest, weighed heavily in favor of the Court granting preliminary relief.  Accordingly, the District Court issued a preliminary injunction against the Agency Defendants, which contained the elements described at the outset of this opinion.[13] The District Court also denied "Defendants' request to stay this Order pending appeal to the First Circuit."

### H.

The Defendants appealed the District Court's order granting the preliminary injunction on March 10, 2025.  They then moved for a stay pending appeal, which is the sole motion that we address here.

### II.

Because only the stay motion is before us, we address only the narrow question of whether the Defendants have met their burden to show that they are entitled to judicial intervention that is "not a matter of right," as a stay pending appeal is "an 'intrusion into the ordinary processes of administration and

---

[13] In response to a second motion to enforce the TRO filed by the Plaintiff-States on February 28, 2025, in connection with certain Federal Emergency Management Agency ("FEMA") funds, the District Court in the preliminary injunction also directed Defendant FEMA to "file a status report on or before March 14, 2025, informing the Court of the status of [its] compliance with th[e] [preliminary injunction]."  The District Court further denied as moot Plaintiff-States' motion to enforce the TRO because the issuance of the preliminary injunction "renders the TRO expired."

judicial review.'" Nken, 556 U.S. at 427 (first quoting Virginian R. Co. v. United States, 272 U.S. 658, 672 (1926); and then quoting Va. Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)).  To obtain the stay, the Defendants bear the burden of satisfying a most familiar test.  They must: (1) make a "strong showing that [they are] likely to succeed on the merits" in their appeal; (2) show that they "will be irreparably injured absent a stay"; (3) show that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) show that the stay would serve "the public interest." Id. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

In evaluating whether this burden has been met, we are mindful that the "first two factors" -- likelihood of success and irreparable injury -- "are the most critical." Id.  We also emphasize that addressing interlocutory motions on a "tight timeline" is "not always optimal for orderly judicial decisionmaking," Labrador v. Poe, 144 S. Ct. 921, 930 (2024) (Kavanaugh, J., concurring in the grant of stay), and that, especially in those circumstances, we "rely on the parties to frame the issues for decision," Greenlaw v. United States, 554 U.S. 237, 243 (2008).  We note, too, that a district court's decision to grant a preliminary injunction is reviewed for abuse of discretion. Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020).

Finally, we make two clarifying observations about the analysis that follows. First, we proceed on the understanding that the Defendants seek to stay the injunction in its entirety, notwithstanding their expressed choice to develop no argument in their stay motion that they are likely to succeed in showing that the District Court's analysis of the OMB Directive was mistaken. Second, after considering the parties' positions, we understand the scope of the District Court's preliminary injunction to operate on freezes that were implemented: (1) pursuant to the Unleashing EO and Guidance, the OMB Directive itself, or the other EOs referenced in the OMB Directive; and (2) regardless of whether the freezes began before the OMB Directive's issuance on January 27, 2025.

### A.

We begin with the Defendants' arguments regarding the first Nken factor -- which requires that they make a "strong showing" that they are likely to succeed on the merits in their appeal. Nken, 556 U.S. at 434 (quoting Hilton, 481 U.S. at 776). We conclude that the Defendants have not made that showing.

### 1.

A central line of the Defendants' challenge is that the preliminary injunction appears "[i]n the guise of litigation under the" APA but is in fact "unmoored from any specific agency

action."[14]  They assert that the Plaintiff-States have "leveraged their challenge to" the rescinded OMB Directive into "broad-based relief against innumerable funding decisions at twenty-three federal agencies" and that "such broad-based APA challenges" are impermissible.  As support, the Defendants cite to the Supreme Court's decision in Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004), and contend that "[i]t is black-letter law that cases under the APA must challenge discrete agency actions and may not level a 'broad programmatic attack,'" (quoting Norton, 542 U.S. at 64).  The thrust of this line of argument thus appears to be that the preliminary injunction rests on a broad programmatic attack rather than on challenges to discrete final agency actions.

Norton does make clear that the APA permits review of only discrete final agency actions and "precludes the kind of broad programmatic attack [the Supreme Court] rejected in Lujan v.

---

[14] As to the merits of the APA claims themselves, the Defendants only argue that the District Court erred in relying on the Impoundment Control Act ("ICA"), 2 U.S.C. §§ 681-692.  The District Court, however, separately determined that the Agency Defendants' actions violated the APA by virtue of having been arbitrary and capricious -- a determination that does not in any part rely on the ICA.  The Defendants fail to challenge that determination in their stay motion, thus leaving that independent ground for issuing the preliminary injunction unchallenged before us.  See Wadsworth v. Nguyen, 129 F.4th 38, 52 (1st Cir. 2025) (concluding that an appellate claim must fail where only one part of a two-part test was challenged on appeal); cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Accordingly, we need not address the Defendants' contentions regarding the ICA.

*National Wildlife Federation*, 497 U.S. 871 (1990)." 542 U.S. at 64. *Norton* explains, however, that the "broad programmatic attack" at issue in *Lujan* was an attempt to seek "wholesale" "programmatic improvements" "by court decree" by "couch[ing]" "[the Bureau of Land Management's] land withdrawal review program" as an "unlawful agency 'action'" that should be "'set aside' under § 706(2)" of the APA. *Id.* (emphasis omitted) (quoting *Lujan*, 497 U.S. at 891, 879). Because "the program was not [itself] an 'agency action,'" *Norton* explained, the Court in *Lujan* rejected the plaintiff's challenge to it. *Id.* (quoting 5 U.S.C. § 706(2)).

Indeed, *Lujan* concluded that the "program" challenged there was "simply the name by which [the government] ha[d] occasionally referred to the <u>continuing (and thus constantly changing) operations</u> of the [Bureau of Land Management] in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required" under federal law. 497 U.S. at 890 (emphasis added). *Lujan* observed that, in styling the challenge as against the "program," the plaintiff there was in fact challenging a variety of programmatic deficiencies that it claimed were unlawful for varied reasons. *Id.* at 891. But the APA, *Lujan* explained, does not "permit[] a generic challenge to all aspects of" a program, "as though that itself constituted a final agency action." *Id.* at 890 n.2.

The District Court determined here, by contrast, that the Plaintiff-States' APA claims do challenge discrete final agency actions. To be sure, those claims, like the motion for the preliminary injunction, describe those actions, collectively, as the "Federal Funding Freeze." The District Court at points uses that nomenclature as well. But the claims themselves, like the motion, assert that the discrete final agency actions are the decisions by the Agency Defendants to implement broad, categorical freezes on obligated funds.

It is also clear that the District Court determined that the discrete challenged agency actions were "final." The District Court did so based on its assessment that these actions satisfied the test set forth in Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (holding that agency actions will be deemed final where the challenged action (1) "mark[s] the 'consummation' of the agency's decisionmaking process" and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'" (first quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); and then quoting Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970))).

The stay motion does not address those findings by the District Court or, for that matter, Lujan itself. That is so even though Lujan recognized that "[i]f . . . in fact some specific

order or regulation[] appl[ied] some particular measure across the
board to all individual classification terminations and withdrawal
revocations, and . . . that order or regulation is final . . . it
can of course be challenged under the APA." 497 U.S. at 890 n.2;
see also Hisp. Affs. Project v. Acosta, 901 F.3d 378, 388 (D.C.
Cir. 2018) (applying that statement in Lujan and holding that the
plaintiffs' APA challenge to the Department of Homeland Security's
administration of the H-2A visa program was not impermissibly
programmatic in nature because the plaintiffs were challenging an
across-the-board agency practice in violation of a statutory
command). The stay motion instead makes the conclusory, implicit
assertion, based on a passage in Norton concerning a holding in
Lujan, that no such discrete final agency actions were identified
to support the preliminary injunction. And the Defendants do not
develop any independent argument as to why the challenged agency
actions, if discrete, do not satisfy the Bennett test for finality.
We therefore do not see how the Defendants have met their burden
of making a "strong showing," Nken, 556 U.S. at 434 (quoting
Hilton, 481 U.S. at 776), that the injunction was based on a "broad
programmatic attack" of the type Norton had in mind, 542 U.S. at
64.

　　　　Elsewhere in their stay motion, and more clearly in their
reply, the Defendants offer a variation on the same theme. They
assert that the Plaintiff-States challenge "unidentified past

funding decisions across thousands of programs and an untold number of hypothetical future funding decisions." They contend that such a challenge "runs squarely into the APA's limitation on leveling a 'broad programmatic attack' rather than seeking review of discrete agency actions."

To the extent that this argument is distinct from the one discussed above, we are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once. Nor do the movants identify any such precedent.

The Defendants do assert in their reply that the Plaintiff-States' opposition to their motion for a stay does not identify "specific agency actions other than the rescinded OMB [Directive]" and that "most of the agencies that are now subject to the injunction are not mentioned in [Plaintiff-States'] opposition at all." The Defendants are the movants, however. Their contention about deficiencies in an opposition to their motion thus cannot itself constitute a strong showing that they are likely to succeed in challenging the preliminary injunction itself. See Nken, 556 U.S. at 433-34 (burden to show that "the circumstances justify" a stay is on the party seeking such relief).

In any event, the Plaintiff-States' opposition does identify specific agency actions. The Plaintiff-States make clear that they challenge the Agency Defendants' "actions -- following

the executive orders and [OMB] Directive -- to implement
categorical funding freezes without regard and contrary to legal
authority." The Defendants' contention about the deficiencies in
the Plaintiff-States' opposition to the stay motion also must be
considered in light of the fact that, as we have already explained,
the stay motion does not address the District Court's findings
regarding the final agency actions that undergird the preliminary
injunctive relief.

Indeed, the record before the District Court included
numerous notices and emails authored by Agency Defendants that
support the finding that their funding freezes were categorical in
nature, rather than being based on "individualized assessments of
their statutory authorities and relevant grant terms." The
Plaintiff-States also attached numerous declarations describing
pauses, freezes, and sudden terminations of obligated funds that
suggested that these actions were taken pursuant to such
categorical decisions. And we note as well the familiar
proposition that, in reviewing the record, a court is "not required
to exhibit a naiveté from which ordinary citizens are free." Dep't
of Com. v. New York, 588 U.S. 752, 785 (2019) (quoting United
States v. Stanchich, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly,
J.)); see also, e.g., Nat'l Council of Nonprofits v. Off. of Mgmt.
& Budget, No. 1:25-cv-00239, 2025 WL 597959, at *7 (D.D.C. Feb.
25, 2025) (rejecting the contention that "countless federal

agencies . . . suddenly began exercising their own discretion to suspend funding across the board at the exact same time" because it requires "unfathomable" "coincidental assumptions" and "contradicts the record").

For these reasons, we see no basis for concluding that the Defendants have made a strong showing as to their likelihood of success on appeal insofar as they aim to demonstrate that there is no final agency action to support the entirety of the injunction. This ground for satisfying the first <u>Nken</u> factor therefore fails.

**2.**

The Defendants separately argue that because the District Court "fail[ed] to limit its injunction to the few statutory schemes that it concluded were nondiscretionary," it "enjoin[ed] broad swaths of lawful conduct."[15] The Defendants emphasize that "many federal funding programs and instruments provide the Executive with discretion to suspend or terminate funding that the Executive determines is inconsistent with the national interest." They also observe that the District Court found that the OMB Directive was implemented in a way that violated

---

[15] In the stay motion, the Defendants argue that the District Court's TRO "essentially acknowledged as much." We note, however, that the TRO merely questioned whether there "might be" "some aspects" of implementations of the OMB Directive that could be "legal and appropriate constitutionally for the Executive to take."

statutes that require the disbursement of funding in only "a handful of cases."  Because the District Court did not limit its injunction to the implementation of the OMB Directive to funding streams under those statutes, they contend, the District Court enjoined lawful behavior.  As the Defendants at one point put it, the District Court erred in "enter[ing] a sweeping injunction that was not tethered to the supposed flaws in the OMB [Directive], but instead broadly and unjustifiably prohibited actions based on other Executive Orders or directives."

The District Court found, however, that the "suggest[ion] that the challenged federal funding freezes were purely the result of independent agency decisions rather than the OMB Directive or the Unleashing Guidance . . . [was] disingenuous."  (Emphasis omitted).  And the District Court explicitly rejected the Defendants' "claim that the [OMB] Directive and the [Executive Orders] required the agencies to pause funding and impose restriction[s] on obligated funds consistent with the law."  The District Court did so, moreover, because it found that the "undisputed evidence before [it] [wa]s that adding the 'consistent with the law' caveat was nothing more than window dressing on an unconstitutional directive by the Executive."

The District Court further found that "[t]he OMB Directive essentially ordered agencies to effectuate the blanket pause and then decide later which funding streams they actually

had lawful authority to withhold," given "the mere twenty-four hours" that the OMB Directive gave agencies to "discern" which funding streams must be paused. It found, too, that the Unleashing EO and Unleashing Guidance, in particular, "instruct[ed] that agencies immediately pause disbursements of funds under the IRA or IIJA and d[id] not even attempt to allow for agency discretion."

The stay motion does not meaningfully engage with this aspect of the District Court's analysis. That is so even though the analysis rests on the District Court's view of the record considered as a whole and resulted in its conclusion that the final agency actions at issue -- the funding freezes by each of the Agency Defendants -- violated the APA because they were either contrary to law or arbitrary and capricious or both.

Moreover, the record contains evidence that the Plaintiff-States submitted to show that categorical freezes were undertaken pursuant to directives in Executive Orders referenced in the OMB Directive other than the Unleashing EO. Yet, despite bearing a "strong showing" burden under Nken's first factor, the Defendants make no clear or developed argument to us that the District Court abused its discretion in relying on that record to apply the preliminary injunction to such freezes. We thus conclude that, as to this aspect of their motion for the stay, the Defendants also have failed to make a strong showing of their

likelihood of success.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Accordingly, the Defendants' repeated assertions that the OMB Directive and Executive Orders solely directed agencies to pause funding "to the extent permitted by law" fail to show that the movants have a strong likelihood of success on appeal as to the merits of the Plaintiff-States' APA claims.  So, this ground for satisfying the first Nken factor also is without merit.[16]

**3.**

The Defendants' final argument as to the first Nken factor is that "the preliminary injunction . . . operates to interfere with the President's authority to supervise federal agencies by providing policy direction in the exercise of each agency's authorities" because it "appears to demand that, in exercising their discretionary authority, agencies should not take policy direction from the President."  The contention is that this

---

[16] The Defendants also argue that the preliminary injunction is "unclear" as to whether it permits agencies to make funding decisions based on Executive priorities when they have legal authority to do so.  But the preliminary injunction clearly refers to a "categorical pause or freeze of funding," which, by its terms, could not apply to a pause or freeze based on an individualized determination under an agency's actual authority to pause such funds.  Consistent with this understanding, the District Court explained in its opinion that the preliminary injunction "does not prevent the [Government] from making funding decisions in situations under the Executive's actual authority in the applicable statutory, regulatory, or grant terms." (Internal quotation marks omitted).

feature of the preliminary injunction "cannot be squared with Article II" of the Constitution, which grants the President "authority to exercise 'general administrative control of those executing the laws, throughout the Executive Branch of government, of which he is the head.'" (Quoting Bldg. & Constr. Trades Dep't., AFL-CIO v. Allbaugh, 295 F.3d 28, 32 (D.C. Cir. 2002)).

To be clear, the argument is not that the President has Article II authority to order a funding pause in contravention of a statutory directive precluding such a pause. We understand the argument to be only that the District Court has interfered with the Agency Defendants' ability to lawfully carry out the President's directives.[17] Indeed, the stay motion argues that the preliminary injunction interferes with the Executive's authority because the "President's Executive Orders are plainly lawful." And the stay motion rests this argument on the view that the "Executive Orders . . . simply direct federal agencies to pause or terminate federal funding programs that may not accord with the President's priorities where such action is consistent with applicable law."

---

[17] The Defendants also note, without further argument, that "the President's directions to subordinates" are not "themselves reviewable under the APA" because the "President is not an 'agency' within the meaning of th[at] statute." (Quoting Franklin v. Massachusetts, 505 U.S. 788, 800-01 (1992)). But the District Court did not review the President's actions for consistency with the APA. Rather, it reviewed -- and ultimately enjoined -- the Agency Defendants' actions under the Executive Orders.

- 41 -
A572

As we have already noted, however, the stay motion does not meaningfully address the District Court's findings as to the Agency Defendants having adopted categorical funding freezes. Therefore, the Defendants have not demonstrated that they have a likelihood of success in demonstrating that the injunction reaches lawful conduct. It follows that they have not made a strong showing that they are likely to succeed in defending what on their own account is a necessary premise of their Article II-based argument. We therefore conclude that the Defendants cannot rely on their Article II-based argument to satisfy their burden with respect to the first Nken factor.

### B.

The remaining three Nken factors require the movants to show that they "will be irreparably injured absent a stay," that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding," and that the stay would be in "the public interest." 556 U.S. at 434 (quoting Hilton, 481 U.S. at 776). The movants have not done so.

### 1.

The Defendants advance two arguments as to the second Nken factor, which concerns their irreparable harm absent a stay. As we noted at the outset of our substantive analysis, this factor, along with the likelihood of success factor, is one of the two "most critical" factors under the Nken test. Id.

The first contention is that the preliminary injunction "interferes with agencies' ability to exercise their lawful authorities to implement the President's policy directives." It further asserts that the preliminary injunction "undermines the President's unquestioned Article II authority to direct subordinate agencies how to exercise their own authorities, giving rise to an intolerable intrusion on the prerogatives of the Executive Branch."

The District Court's order granting the preliminary injunction does not bar all freezes in funding, however. It instead enjoins the discrete final agency actions to adopt the broad, categorical freezes challenged here. This argument thus suffers from the same flaw as the Article II-based argument as to the first <u>Nken</u> factor, as it rests on the same undefended premise about the lawfulness of the enjoined agency actions as that argument does.

Relatedly, the Defendants assert that the injunction includes "multiple vague instructions" and so "invites the [D]istrict [C]ourt to engage in precisely the sort of 'preclearance' regime that led the government to appeal the [District Court's TRO], and which the [D]istrict [C]ourt purported to disclaim." This type of separation-of-powers harm, the argument goes, "itself reflects irreparable injury."

For starters, no "preclearance" language appears in the preliminary injunction itself, a fact that the Defendants appear to acknowledge in their reply. The Defendants also acknowledge that the District Court has previously clarified that it had imposed no such requirement in enjoining the Agency Defendants, via its TRO or order granting the Plaintiff-States' motion to enforce, from taking specific funding actions.

We also cannot agree that the Defendants have made the case that the preliminary injunction is vague as to the OMB Directive or funding freezes pursuant to it. The Defendants take issue with the District Court's injunction against their "'implementing' or 'giving effect to' the OMB [Directive] 'under a different name,'" contending that this lacks the detail necessary for compliance. But Rule 65 requires injunctions to "describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added). It does not "require that an order list the components of a term whose boundaries are understood by common parlance." United States v. Pro. Air Traffic Controllers Org. (PATCO), PATCO Local 202, 678 F.2d 1, 3 (1st Cir. 1982). And the Defendants do not identify any particular action with respect to which they are unclear about the reach of this portion of the injunction.

Insofar as the Defendants contend that the injunction is vague because it enjoins them from "pausing funds as 'described' or 'implied by' the President's Executive Orders," we also do not agree.  The order granting the preliminary injunction plainly enjoins the Agency Defendants from maintaining categorical "funding freezes" based on the identified Executive Orders.  And, as we have explained, "funding freezes" are "categorical" freezes on obligated funds.  Given that the Defendants are in the best position to know the basis for any freezing decisions, we do not see -- nor do the Defendants explain -- why this instruction does not provide them with "reasonable detail" of the "acts restrained." Fed. R. Civ. P. 65(d)(1)(C); see also 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2955 (3d ed. 2024) ("[T]he issuance of a nonspecific injunction or restraining order may be justified. . . . when the information needed to make the order specific in form is known only to the party to be enjoined." (footnotes omitted)); see also M.G. ex rel. Garcia v. Armijo, 117 F.4th 1230, 1249-51 (10th Cir. 2024) (explaining how an injunction's form may depend on "information[al] asymmetr[ies]").

That leaves, as to the second Nken factor, only the argument that the Defendants face irreparable pecuniary harm absent a stay.  Here, they argue that "[i]f the government's position is later vindicated at the conclusion of the litigation,

there would be no guarantee that funds that the government obligated or disbursed pursuant to the [preliminary injunction] would be retrievable from the States or their subgrantees after the fact."

The Defendants devote only the single sentence mentioned above to making this argument in their stay motion, and they identify no authority and offer no reasoning suggesting that this would be the case here. Because the Defendants bear the burden of demonstrating that they "will be irreparably injured absent a stay," Nken, 556 U.S. at 434 (emphasis added) (quoting Hilton, 481 U.S. at 776), we cannot see how their speculative and conclusory statement suffices.

We note that the Defendants rely entirely on these same contentions to satisfy the fourth Nken factor -- whether a stay would be in the public interest. Id. So, they have failed to satisfy their burden as to that factor as well. That leaves to address the Defendants' arguments about the third Nken factor -- whether the "issuance of the stay will substantially injure the other parties interested in the proceeding." Id.

**2.**

As to the third Nken factor, the Defendants first contend that the Plaintiff-States "have no cognizable interest in receiving federal funds to which they are not legally entitled or on a timeline that is not legally compelled." This contention,

however, just repackages the arguments as to the first Nken factor that we rejected above.  And while the Defendants cite Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), for the proposition that "reviewing courts owe agency actions a 'presumption of regularity,'"  Overton Park did not hold that a court addressing a motion for a stay pending appeal of a lower court's injunction should presume the lawfulness of the enjoined conduct in assessing the harm to "the other parties interested in the proceeding" under the third Nken factor.  Nken, 556 U.S. at 434 (quoting Hilton, 481 U.S. at 776).  Indeed, Overton Park affirmatively stated that the "presumption [of regularity] is not to shield [agency] action from a thorough, probing, in-depth review."  401 U.S. at 415.

The Defendants separately urge us to disregard the harms that the Plaintiff-States' residents would suffer, because "States cannot invoke harms on behalf of their citizens in actions against the federal government."  The Defendants cite Haaland v. Brackeen, 599 U.S. 255, 294-95 (2023), as support for that proposition.

Brackeen did not hold, however, that residents of a state may not be counted among "the other parties interested in this proceeding" under the third Nken factor when that state obtained the injunction that is sought to be stayed.  It held only that "[a] State does not have [Article III] standing as parens patriae to bring an action against the Federal Government."  Id. at 295

(quoting Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,
458 U.S. 592, 610 n.16 (1982)).

Even if we were to set aside the harms to the
Plaintiff-States' residents, the District Court still found a
number of harms that the Plaintiff-States themselves would
irreparably suffer. These harms included the obligation of new
debt; the inability to pay existing debt; impediments to planning,
hiring, and operations; and disruptions to research projects by
state universities. And the Defendants do not contend that these
harms are not "substantial" or "irreparable," except by asserting
that "[the Plaintiff-States] will receive any funds that agencies
are legally obligated to disburse." But without supporting
explanations for how and when the Plaintiff-States could recoup
those funds, the movants have not met their burden to show that
the third Nken factor weighs in favor of a stay.

### III.

For the foregoing reasons, we **deny** the motion for a stay
pending appeal of the District Court's preliminary injunction.

**TABLE A: All FEMA Grant Programs and Recommended Review**

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|-----|---------|------------------|--------------|---------------------------|------------------------------|---------------------------|
| DRF | Community Disaster Loans (CDL) | 44 | $93,791,763 | Low | No | Cleared by FEMA |
| DRF | Disaster Unemployment Assistance (DUA) | 18 | $49,847,337 | Low | No | Cleared by FEMA |
| DRF | Fire Management Assistance Grants (FMAG) – previously included as part of Public Assistance – Grants to State & Local | 124 | $52,479,916 | Low | No | Cleared by FEMA |
| DRF | Hazard Mitigation Grant Program (HMGP) | 386 | $4,414,617,261 | Low | No | Cleared by FEMA |
| DRF | Hazard Mitigation Grant Program Post Fire (HMGP Post Fire) | 269 | $58,007,937 | Low | No | Cleared by FEMA |
| DRF | Individual and Households Program (IHP) | N/A | $380,898,640 | Low | No | Cleared by FEMA |
| DRF | Public Assistance – Grants to State & Local | 44,266 | $73,241,454,318 | Low | No | Cleared by FEMA |
| DRF | Urban Search and Rescue (US&R) | NA | $141,254,817 | Low | No | Cleared by FEMA |
| FA | Alliance for System Safety of Unmanned Aircraft Systems through Research Excellence (ASSURE) | 4 | $4,669,770 | Low | No | Cleared by FEMA |
| FA | Assistance to Firefighter Grants (AFG) | 3801 | $464,132,184 | Low | No | Cleared by FEMA |
| FA | Building Resilient Infrastructure and Communities (BRIC) | 1365 | $1,154,059,629** | Low | No | Cleared by FEMA |
| FA | Chemical Stockpile Emergency Preparedness Program (CSEPP) | 9 | $26,180,310 | Low | No | Cleared by FEMA |
| FA | Community Assistance Program State Support Services Element (CAP-SSSE) | 76 | $11,587,984 | Low | No | Cleared by FEMA |

Case: 25-1018 Document: 1-4 Page: 515 Filed: 07/31/2025 #: 8630

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | Cooperating Technical Partners (CTP) | 480** | $239,537,976** | Low | No | Cleared by FEMA |
| FA | Emergency Management Baseline Assessments Grant (EMBAG) | 3** | $127,416** | Low | No | Cleared by FEMA |
| FA | Emergency Operations Center (EOC) | 95 | $228,725,861 | Low | No | Cleared by FEMA |
| FA | Fire Prevention and Safety (FP&S) | 373 | $80,643,658 | Low | No | Cleared by FEMA |
| FA | Flood Mitigation Assistance (FMA) | 473 | $909,252,393 | Low | No | Cleared by FEMA |
| FA | Flood Mitigation Assistance Swift Current (FMA Swift) | 14 | $0** | Low | No | Cleared by FEMA |
| FA | Homeland Security Preparedness Technical Assistance Program (HSPTAP) | 4 | $406,557 | Low | No | Cleared by FEMA |
| FA | Homeland Security National Training Program (HSNTP) - National Domestic Preparedness Consortium (NDPC) | 17 | $134,067,348 | Low | No | Cleared by FEMA |
| FA | HSNTP– National Cybersecurity Preparedness Consortium | 5 | $16,906,852 | Low | No | Cleared by FEMA |
| FA | Intercity Bus Security Grant Program (IBSGP) | 59 | $2,905,029 | Low | No | Cleared by FEMA |
| FA | National Dam Safety Program and Rehabilitation of High Hazard Potential Dams Grant Program (HHPD) | 207 | $244,022,266 | Low | No | Cleared by FEMA |
| FA | National Earthquake Hazards Reduction Program (NEHRP) and Multi-State and National Earthquake Assistance (MSNEA) Grant Program | 62 | $4,876,775 | Low | No | Cleared by FEMA |
| FA | National Fire Academy Training Assistance (NFATA) | 10 | $1,446,388 | Low | No | Cleared by FEMA |

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration Jurisdiction | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | National Incident Management System (NIMS) | 3 | $2,208,411** | Low | No | Cleared by FEMA |
| FA | National Urban Search and Rescue (US&R) | 153 | $66,105,406 | Low | No | Cleared by FEMA |
| FA | Next Generation Warning System Grant Program (NGWSGP)[1] | 3 | $134,196,015 | Low | No | Cleared by FEMA |
| FA | Pre-Disaster Mitigation (PDM) | 99 | $504,369,174 | Low | No | Cleared by FEMA |
| FA | Safeguarding Tomorrow Revolving Loan Fund/Safeguarding Tomorrow through Ongoing Risk Mitigation Act (STORM) | 9 | $51,397,697 | Low | No | Cleared by FEMA |
| FA | Staffing For Adequate Fire and Emergency Response (SAFER) | 1125 | $1,148,541,961** | Low | No | Cleared by FEMA |
| FA | State and Local Cybersecurity Grant Program (SLCGP) | 161 | $760,367,208 | Low | No | Cleared by FEMA |
| FA | State Fire Training Systems Grants (SFT) | 59 | $876,377 | Low | No | Cleared by FEMA |
| FA | Tribal Cybersecurity Grant Program (TCGP) | 31 | $17,620,204 | Low | No | Cleared by FEMA |
| FA | Tribal Homeland Security Grant Program (THSGP) | 77 | $42,539,321 | Low | No | Cleared by FEMA |
| DRF | Crisis Counseling Program (CCP) | 63 | $53,020,947 | Medium | No | Pending Review |

[1] The Corporation for Public Broadcasting has filed a lawsuit in the District of Columbia District Court on March 13, 2025, contending that FEMA's manual payment review process for NGWSGP awards was arbitrary and capricious in violation of the Administrative Procedures Act. If FEMA's recommended approach to categorizing the NGWSGP as "Cleared by FEMA" is approved, FEMA will make appropriate payments to the CPB using the manual payment review process.

Case: 25-1413   Document: 00118312537   Page: 517   Date Filed: 07/31/2025   Entry ID: 6724656
#: 8632

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration Jurisdiction | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| DRF | Disaster Case Management (DCM) | 44 | $182,577,136 | Medium | No | Pending Review |
| DRF | Disaster Legal Services (DLS) | 11 | $95,000 | Medium | No | Pending Review |
| DRF | Public Assistance – NGOs | 7,234 | $8,498,374,550 | Medium | No | Pending Review |
| DRF | Public Assistance – Non-Congregate Sheltering | 284 | $1,297,129,208 | Medium | No | Pending Review |
| FA | Emergency Food and Shelter Program (EFSP) | 12 | $251,590,333 | Medium | No | Pending Review |
| FA | Nonprofit Security Grant Program (NSGP)[2] | 400 | $943,940,157 | Medium | No | Pending Review |
| FA | Emergency Management Performance Grant (EMPG) | 206 | $476,990,846 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – Operation Stonegarden (OPSG) | 87 | $170,946,880 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – State Homeland Security Program (SHSP) | 203 | $761,745,900 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – Urban Area Security Initiative (UASI) | 104 | $1,919,725,009 | Low | Yes | DHS Review |
| FA | Homeland Security National Training Program (HSNTP) - Continuing Training Grants Program - Competitive (CTG) | 15 | $15,525,591 | Low | Yes | DHS Review |
| FA | Port Security Grant Program (PSGP) | 787 | $266,441,010 | Low | Yes | DHS Review |
| FA | Presidential Residence Protection Assistance (PRPA) | 2 | $2,241,788** | Low | Yes | DHS Review |
| FA | Regional Catastrophic Preparedness Grant Program (RCGP) | 41 | $36,087,421 | Low | Yes | DHS Review |

[2] While State Administrative Agencies (SAA) are the direct recipients of NSGP funding, awards are passed through to nonprofit organizations that are not subject to the sanctuary jurisdiction conditions or restrictions as described in the criteria above. Management and Administration costs are allowable under this grant program and may be retained by SAAs.

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | Targeted Violence and Terrorism Prevention Grant Program (TVTP) | 122 | $34,939,702 | Medium | Yes | DHS Review |
| FA | Transit Security Grant Program (TSGP) / Intercity Passenger Rail (IPR)*** | 84 | $283,147,532 | Low | Yes | DHS Review |
| FA | Case Management Pilot Program (CMPP) | 4 | $47,201,306 | High | Yes | DHS Review for Termination |
| FA | Emergency Food and Shelter Program – Humanitarian (EFSP-H)[3] | 3** | $46,050,064** | High | No | DHS Review for Termination |
| FA | Shelter and Services Program (SSP) | 156** | $887,107,461 | High | Yes | DHS Review for Termination |
| TOTAL | | | $100.859B | | | |

\* ULOs are as of Jan. 28, 2025.

\*\* Chart updated with revised figures. After further review, inaccuracies were identified in previous data that have now been corrected.[4] Previous FMA Swift Current number reflected unobligated amount rather than unliquidated.

\*\*\* Sanctuary jurisdiction conditions would apply to Transit Security Grant Program (TSGP) and not Intercity Passenger Rail (IPR).

---

[3] For EFSP-H, all spending periods for subawards have expired and the provision of services under the sunset program has ended. The remaining amount is funding reserved for management and administration (approximately $4 million) for the grantee and funds returned by the board.

**TABLE B: Summary of Unliquidated Obligation (ULO) by Recommended Risk Determination**

FEMA is reviewing all grants at a programmatic level, and also at the individual grant award level to understand the existing information available, and where additional research within the system can be conducted or where information from recipients will need to be collected. As the policy decisions and process are under development, FEMA has begun and will continue the individual grant award manual payment review process in preparation for the approach and methodology being approved. This manual review process requires significant staff time, but once the backlog is cleared, the process will operate on a much shorter processing time.

| Risk Determination | Disaster Grants ULO | Non-Disaster Grant ULO | Total | Backlog Processing Time* |
|---|---|---|---|---|
| Cleared by FEMA | $78,432,351,989 | $6,251,770,170 | $84,684,122,159 | 45 days |
| Pending FEMA Review | $10,031,196,841 | $1,195,530,490 | $11,226,727,331 | 90 days |
| Recommend DHS Review | N/A | $3,967,791,679 | $3,967,791,679 | 60 days |
| Recommended Terminated Programs | N/A | $980,358,831 | $980,358,831 | 60 days |
| **Total** | **$88,463,548,830** | **$12,395,451,170** | **$100.859B** | |

*This estimate includes the approximately 1,450 payment requests already submitted in FEMA grants systems only. It is not inclusive of the total ULO because payment requests will continue to be submitted for these programs as the work is completed throughout the period of performance, which for some programs may be up to three years.

**Appendix A**
**Federal Emergency Management Agency Grant Programs Overview**
**Background/Purpose**

On Feb. 19, 2025, Secretary Noem issued a memorandum *Restricting Grant Funding for Sanctuary Jurisdictions* and directed all components to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions (hereinafter "S1 Memo"). Appendix A below provides an overview of each FEMA administered grant program, to include the purpose of each grant program and the award criteria (i.e. whether the award criteria are discretionary or governed by statutory or regulatory competition, allocation, or eligibility criteria).

<div style="background-color:green;color:white;font-weight:bold;text-align:center;">Recommended Determination: Cleared by FEMA</div>

1. **Community Disaster Loans (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Provides funding for local governments to operate their essential community services after substantial revenue loss caused by a disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

2. **Disaster Unemployment Assistance (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Assistance to individuals unemployed as a result of a major disaster administered through a grant to the declared state or tribe.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

3. **Fire Management Assistance Grants (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: The mitigation, management, and control of any fire on public or private forest land or grassland that threatens such destruction as would constitute a major disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

4. **Hazard Mitigation Grant Program (42 U.S.C. § 5170c)**

   <u>Purpose</u>: To help communities implement hazard mitigation measures, such as elevation, acquisition, and flood control projects, to reduce or eliminate long-term risk to people and property from natural hazards following a presidential major disaster declaration under the Stafford Act.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

5. **Hazard Mitigation Grant Program – Post Fire (42 U.S.C. § 5170c(a); 42 U.S.C. § 5187(d))**

Purpose: Makes assistance available to help communities implement hazard mitigation measures after wildfire disasters.

Award Criteria: Statutory and regulatory eligibility criteria. States, federally recognized tribes and territories affected by fires resulting in a Fire Management Assistance Grant (FMAG) declaration on or after Oct. 5, 2018, are eligible to apply.

### 6. Individual and Households Programs (IHP) (42 U.S.C. §§ 5121, et seq.)

Purpose: Provides financial and direct services to eligible individuals and households affected by a disaster, who have uninsured or under-insured necessary expenses and serious needs. IHP assistance is not a substitute for insurance and cannot compensate for all losses caused by a disaster. The assistance is intended to meet your basic needs and supplement disaster recovery efforts.

Award Criteria: Statutory and regulatory eligibility criteria.

### 7. Urban Search & Rescue (US&R) (42 U.S.C. §§ 5121, et seq)

Purpose: Provides reimbursement for lifesaving rescue operations that were performed by Federal Urban Search and Rescue teams during declared disaster.

Award Criteria: Statutory and regulatory eligibility criteria.

### 8. Public Assistance – State and Local (42 U.S.C. §§ 5121, et seq.)

Purpose: Financial assistance to states, tribal, territorial, and local governments for debris removal, for emergency work to support public safety, and for the repair, restoration, reconstruction, or replacement of a public facility damaged or destroyed by a major disaster.

Award Criteria: Noncompetitive, but with statutory and regulatory eligibility criteria.

### 9. Homeland Security National Training Program (HSNTP) – Alliance for System Safety of Unmanned Aircraft Systems through Research Alliance (Title III of the Department of Homeland Security Appropriations Act, 2024, (Pub. L. No. 118-47); Joint Explanatory Statement accompanying the Department of Homeland Security Appropriations Act, 2024)

Purpose: Provides funding for Mississippi State University's Federal Aviation Administration Center of Excellence for Unmanned Aircraft Systems (ASSURE) to support and target training solutions for state, local, tribal and territorial partners, which supports the objective of the National Preparedness System to facilitate an integrated, whole community, risk-informed, capabilities-based approach to preparedness.

Award Criteria: Discretionary, limited statutory award criteria. Award goes to Mississippi State University's Federal Aviation Administration Center of Excellence for Unmanned Aircraft Systems.

## 10. Assistance to Firefighters (15 U.S.C. § 2229)

Purpose: Financial assistance to fire departments, EMS organizations, and state fire training academies to enhance their ability to protect the health and safety of the public, as well as that of firefighting and EMS personnel against fire, fire-related, and other hazards.

Award Criteria: Competitive award with statutorily mandated criteria and peer review and statutory allocation requirements.

## 11. Building Resilient Infrastructure and Communities (42 U.S.C. §§ 5133, 5136)

Purpose: Makes federal funds available to states, the District of Columbia, U.S. territories, federally recognized Tribal governments, and local governments for hazard mitigation activities. BRIC aims to shift the focus of federal investments away from reactive, post-disaster spending and toward research-supported, proactive investments in community resilience. These investments aim to reduce future disaster losses, including loss of life and property as well as future spending from the Disaster Relief Fund (DRF). BRIC focuses on cost-effective mitigation measures including protecting public infrastructure so that critical services can withstand or more rapidly recover from future disasters, as well as other projects and activities to increase resilience throughout the nation.

Award Criteria: For the FY23 NOFO, there was a State/Territory allocation, a Tribal Set-Aside, and a National Competition with the remaining funds that are not awarded from the State/Territory Allocation and Tribal Set-Aside.

## 12. Chemical Stockpile Emergency Preparedness Program (50 U.S.C. § 1521)

Purpose: To assist state, local, and tribal governments in carrying out functions related to emergency preparedness and response in connection with the disposal of the lethal chemical agents and munitions in the United States' lethal chemical agents and munitions that existed on Nov. 8, 1985.

Award Criteria: Eligibility limited to communities in close proximity to military installations storing chemical weapons. FEMA currently awards a cooperative agreement to Kentucky who in turn pass-through subawards to local governments.

## 13. Community Assistance Program – State Support Services Element (CAP-SSSE) (42 U.S.C. §§ 4101, 4102)

A588

Purpose: CAP-SSSE is a cooperative agreement which provides funding to state National Flood Insurance Program (NFIP) Coordinators to monitor community adoption and enforcement of the minimum floodplain management standards required for participation in the NFIP. CAP-SSSE funding is used to provide technical assistance to NFIP communities, evaluate community performance in implementing floodplain management activities, and conduct community assistance contacts and visits to ensure communities are compliant with NFIP minimum requirements and flood insurance remains available for sale within the communities.

Award Criteria: Discretionary, non-competitive award to State NFIP Coordinators, which may subaward funding to local or municipal floodplain management authorities.

## 14. Cooperating Technical Partners (CTP) Program (42 U.S.C. § 4101)

Purpose: To provide assistance to state, local, tribal, university, and nonprofit organizations to increase local involvement in and ownership of flood hazard identification and assessment programs. Recipients assist in the development and maintenance of flood risk data, which is used to develop or amend Flood Insurance Rate Maps and provide the baseline for communities to prepare for and mitigate against flood risks.

Award Criteria: Discretionary. No statutory criteria.

## 15. Emergency Management Baseline Assessment Grant (6 U.S.C. § 112 (b)(2))

Purpose: To assist the updating and enhancement of a set of standards for emergency preparedness and response and a related assessment methodology for the evaluation of state, local, and territorial emergency management operations.

Award Criteria: Discretionary, no statutory award criteria.

## 16. Emergency Operations Center Grant Program (42 U.S.C. § 5196c)

Purpose: Grants made available to State Administrative Agencies (SAAs) for equipping, upgrading, and constructing state, local, and tribal emergency operations centers.

Award Criteria: Eligible Emergency Operations Center projects identified in the Joint Explanatory Statement.

## 17. Fire Prevention and Safety (15 U.S.C. § 2229)

Purpose: Financial assistance to fire prevention programs and support for firefighter health and safety research and development.

Award Criteria: Competitive award with statutorily mandated criteria and peer review and statutory allocation requirements.

**18. Flood Mitigation Assistance (42 U.S.C. § 4104c)**

Purpose: To fund mitigation projects such as elevation, acquisition, floodproofing, and planning that reduces or eliminates long-term risk of flood damage to structures insured under the NFIP.

Award Criteria: Statutory eligibility criteria. Award determinations and funding allocations among eligible jurisdictions are made on a competitive basis with discretion to add criteria.

**19. Flood Mitigation Assistance – Swift Current (42 U.S.C. § 4104c)**

Purpose: Provides funding to mitigate buildings insured through the National Flood Insurance Program (NFIP) after a major disaster declaration following a flood-related disaster event to reduce risk against future flood damage. Funds are made available to states, territories, and federally recognized tribal governments that receive a major disaster declaration following a flood-related disaster event and meet all other eligibility criteria.

Award Criteria: Funding is only available to property owners that have a current flood insurance policy under the National Flood Insurance Program (NFIP) and a history of repetitive or substantial damage from flooding.

**20. Homeland Security Preparedness Technical Assistance Program (6 U.S.C. § 112 (b)(2))**

Purpose: To help private organization recipients to conduct planning, coordination, and training activities related to emergency management and preparedness.

Award Criteria: Discretionary, no statutory award criteria.

**21. Homeland Security National Training Program (HSNTP) - National Domestic Preparedness Consortium (NDPC) (6 U.S.C. §§ 1102 and 112 (b)(2))**

Purpose: To assist statutorily designated National Domestic Preparedness Consortium members to identify, develop, test, and deliver training to state, local, and tribal emergency response providers; provide on-site and mobile training; and facilitate delivery of training.

Award Criteria: Discretionary, limited statutory award criteria. Awards may only go to one of the six non-Federal members of the National Domestic Preparedness Consortium named in statute, which consist of five state universities and one private entity.

**22. National Cyber Security Preparedness Consortium (National Cybersecurity Preparedness Consortium Act, 2021 (Pub. L. No. 117-122))**

Purpose: Delivers over 40 training courses for more than 1,000 SLTT emergency managers, cyber network managers, and critical infrastructure professionals, annually to strengthen local, state, and national cyber and information systems and defend against and recover from cyber-attacks including attacks with cascading physical consequences.

Award Criteria: Awards may only go to one of the six non-federal members of the National Domestic Preparedness Consortium named in statute, which consist of five state universities and one private entity.

**23. Intercity Bus Security Grant Program (6 U.S.C. § 1182)**

Purpose: To make awards to eligible private operators providing transportation by an over-the-road bus for security improvements.

Award Criteria: Discretionary, competitive award based on statutory criteria that require funding decisions to prioritize security risks. The eligible applicants are private bus operators and not states or local governments.

**24. National Dam Safety Program (33 U.S.C. § 467f)**

Purpose: To enable states to increase dam safety through increased inspections, emergency action planning, improved state and federal coordination, training and workshops, and purchasing of equipment.

Award Criteria: Awards are based on eligibility criteria that are set by statute with funding allocations based on a statutory formula.

**25. Rehabilitation of High Hazard Potential Dam Program (33 U.S.C. § 467f-2)**

Purpose: Provide technical, planning, design, and construction assistance in the form of grants for rehabilitation, repair, and removal of eligible high hazard potential dams.

Award Criteria: For FY 2024, FEMA made funding available in allocations for 32 states and one territory.

**26. National Earthquake Hazards Reduction Program – Multi-State and National Earthquake Assistance (MSNEA) (42 U.S.C. § 7704(a)(2)(B), (b)(2)(A)(i))**

Purpose: The National Earthquake Hazards Reduction Program (NEHRP) Multi-State and National Earthquake Assistance (MSNEA) grant program makes funds available to nonprofit organizations and institutions of higher education that possess the critical skills necessary to develop and implement regional (multi-state) and/or national earthquake risk mitigation activities.

Award Criteria: Discretionary. The program's authorizing statutes do not prescribe specific criteria for recipients. FEMA awards competitive grants to nonprofit organizations and institutions of higher education that possess the critical skills necessary to develop and implement regional (multi-state) and/or national earthquake risk mitigation activities, on behalf of states and territories participating in the FEMA NEHRP State Assistance program.

**27. National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance (ISEA) (42 U.S.C. § 7704(b)(2)(A)(ix) and 42 U.S.C. § 7704(b) (2)(B))**

Purpose: FEMA awards non-competitive grants to eligible states and territories with high to very high seismic risks to fund one or more of the following allowable activities. The purpose is to support the establishment of earthquake hazards reduction programming and the implementation of earthquake safety, mitigation, and resilience activities at the state and local level.

Award Criteria: Statutory and regulatory eligibility criteria. Eligibility is limited to states and territories that have been determined to have a high or very high risk of earthquakes. Eligibility is further limited to those states and territories who can provide the statutory 25% non-federal cost share.

**28. National Fire Academy Training Assistance (Section 7 of the Federal Fire prevention and Control Act 15 U.S.C. 2206 (i)(1))**

Purpose: Provides travel stipends (air or mileage) to SLTT fire and EMS personnel who attend resident classes at the National Fire Academy.

Award Criteria: Assistance to individuals reimbursing for part of cost to attend trainings in Emmitsburg, MD

**29. National Incident Management System (NIMS) / Emergency Management Assistance Compact Program (EMAC) Program (6 U.S.C. § 761)**

Purpose: To assist the administrator of the Emergency Management Assistance Compact (EMAC) to administer EMAC operations, to implement NIMS, and to continue coordination with FEMA and state, local, and tribal governments.

Award Criteria: Eligibility limited to administration of the Emergency Management Assistance Compact (EMAC).

**30. National Urban Search and Rescue (US&R) Response System (42 U.S.C. § 5165f, 6 U.S.C. § 722)**

Purpose: The purpose of these Readiness Cooperative Agreements is to support the continued development and maintenance of a national urban search and rescue capability among the 28 task forces within the National Urban Search and Rescue Response System.

Award Criteria: Statutory and regulatory eligibility criteria. Only the 28 sponsoring agencies currently designated by FEMA as members of the National Urban Search and Rescue Response System are eligible for readiness and response cooperative agreements.

**31. Next Generation Warning System (Annual DHS Appropriations Acts)**

Purpose: Enables public television broadcasters to upgrade to the Advanced Television Systems Committee broadcast standard (ATSC 3.0) that enables public projects that improve the ability of remote rural areas to receive alerts and warnings.

Award Criteria: The Corporation for Public Broadcasting is the only awardee of the grant. Per the FY24 NOFO, the awardee will then manage a competitive process to solicit sub-grant applications from eligible subrecipients to use these funds in accordance with the requirements and priorities set forth in the NOFO.

## 32. Pre-Disaster Mitigation (42 U.S.C. § 5133)

Purpose: Makes federal funds available to state, local, tribal, and territorial governments to plan for and implement sustainable cost-effective measures designed to reduce the risk to individuals and property from future natural hazards, while also reducing reliance on federal funding from future disasters.

Award Criteria: The FY 2024 PDM Grant Program provided funding to projects identified in the 2024 DHS Appropriations Act's Joint Explanatory Statement (JES) in the table starting on page 59 entitled "Homeland Security Community Project Funding/Congressionally Directed Spending."

## 33. Safeguarding Tomorrow Through Ongoing Risk Mitigation Loan Fund Program (42 U.S.C. § 5135)

Purpose: Provides capitalization grants to states, eligible federally recognized tribal governments, territories and the District of Columbia to establish revolving loan funds that provide hazard mitigation assistance for local governments to reduce risks from natural hazards and disasters.

Award Criteria: Awards are based on eligibility criteria that are set by statute with funding allocations based on a statutory formula.

## 34. Staffing for Adequate Fire and Emergency Response (15 U.S.C. § 2229a)

Purpose: Financial assistance for increasing the number of firefighters to help communities meet industry standards and attain 24-hour staffing to provide adequate protection from fire and fire-related hazards.

Award Criteria: Competitive award program with statutorily mandated minimum application criteria and peer review.

## 35. State and Local Cybersecurity Grant Program (6 U.S.C. § 665g)

Purpose: To assist state, local, and territorial governments with managing and reducing systemic cyber risk.

Award Criteria: Mandatory, allocations to each state and territory based on statutory formula with the remainder to the states based on population.

### 36. State Fire Training Systems Grants (15 U.S.C. § 2206(f))

<u>Purpose</u>: To assist state fire service systems in providing training programs.

<u>Award Criteria</u>: Discretionary, no statutory award criteria.

### 37. Tribal Cybersecurity Grant Program (6 U.S.C. § 665g)

<u>Purpose:</u> To assist tribal governments with managing and reducing systemic cyber risk.

<u>Award Criteria:</u> Statutory requirement that the Secretary of DHS shall consult with the Secretary of the Interior and tribal governments in determining whether the grant would be competitive or allocated equally among the tribal governments of the federally recognized tribal nations.

### 38. Tribal Homeland Security Grant Program (6 U.S.C. § 606)

<u>Purpose</u>: Financial assistance to tribal governments to build and sustain capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

<u>Award Criteria</u>: Competitive award based on statutory criteria.

### 39. Intercity Passenger Rail (6 U.S.C. § 1163)

<u>Purpose</u>: To assist Amtrak in protecting critical surface transportation infrastructure and the traveling public from acts of terrorism and to increase the resilience of the Amtrak rail system.

<u>Award Criteria</u>: Sole source award to Amtrak. No funding is granted to states or local governments.

**Recommended Determination: Pending Review**

### 1. Crisis Counseling Program (42 U.S.C. §§ 5121, et seq.)

<u>Purpose</u>: Assistance to provide professional counseling services or training of disaster workers to survivors of major disasters to relieve mental health problems caused or aggravated by major disasters or their aftermath.

<u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

### 2. Disaster Case Management (42 U.S.C. §§ 5121, et seq.)

<u>Purpose</u>: Case management services to survivors of major disasters to identify and address unmet needs.

<u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

3. **Disaster Legal Services (DLS) (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Provides confidential, free legal assistance to survivors who need legal help due to a major disaster, but who do not have the means to secure adequate legal services. For individuals seeking DLS, there is no formal application process. Individuals can access these services by contacting the phone number designated for the specific major disaster, which is established once the program has been authorized. In addition to this phone number, individuals can visit FEMA Disaster Recovery Centers where DLS attorneys may be physically located.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

4. **Public Assistance – Non-Governmental Organizations (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Financial Assistance to NGOs that perform essential community services for emergency work to ensure public safety, and for the repair, restoration, reconstruction, or replacement of an eligible facility damaged or destroyed by a major disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

5. **Public Assistance – Non-Congregate Sheltering (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Financial Assistance to state, local, tribal and territorial governments for eligible sheltering expenses caused by a disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

6. **Emergency Food and Shelter Program (42 U.S.C. §§ 11331-11346)**

   <u>Purpose</u>: To supplement and expand ongoing efforts to provide shelter, food and supportive services for hungry and homeless people across the nation.

   <u>Award Criteria</u>: Mandatory, subaward determinations made by external board based on statutory criteria.

7. **Nonprofit Security Grant Program (6 U.S.C. § 609a)**

   <u>Purpose</u>: To assist non-profit organizations in target hardening and other physical security enhancements and activities.

   <u>Award Criteria</u>: By statute, only nonprofits that are located within a FEMA designated Urban Area for purposes of the Urban Area Security Initiative (UASI) program are eligible to apply for funding. The criteria for competitive award include a risk prioritization that is statutorily required, providing limited discretion to add grant conditions. There is no discernible connection between an award for a nonprofit organization and 8 U.S.C. §§ 1324(a)(1)(A)(ii)-(iv), 1373, and 1644 and the other criteria established in the S1 Memo.

**Recommended Determination: DHS Review**

1. **Emergency Management Performance Grant (6 U.S.C. § 762)**

   <u>Purpose</u>: To assist state, local, tribal, and territorial governments "in preparing for all hazards" and all phases of emergency management.

   <u>Award Criteria</u>: Mandatory, allocations to each state based on a statutory formula.

2. **State Homeland Security Grant Program (6 U.S.C. §§ 601 – 613)**

   <u>Purpose</u>: Assists states and local and tribal governments in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

   <u>Award Criteria</u>: Statutory minimum allocation for each state with remaining awarded based on risk calculated using statutory criteria.

3. **Urban Area Security Initiative (6 U.S.C. §§ 601 – 613, DHS Appropriations Acts)**

   <u>Purpose</u>: Financial assistance to high-risk urban areas in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

   <u>Award Criteria</u>: Awards based on risk calculated using statutorily required criteria. Discretion in determining how many high-risk urban areas shall receive funding through a State, but that discretion is often limited or guided by Congress through the annual appropriations process.

4. **Operation Stonegarden (6 U.S.C. §§ 601 – 613, DHS Appropriations Acts)**

   <u>Purpose</u>: Operation Stonegarden funds target expenditure by local governments for the purpose of border protection and border security.

   <u>Award Criteria</u>: Discretionary, competitive awards to states with 100% of funds sub-awarded to local law enforcement. The Department adopts the requirement for competition and criteria for award that is provided for in the legislative history of the appropriations act funding the program.

5. **Homeland Security National Training Program - Continuing Training Grants – Competitive (Annual DHS Appropriations Acts)**

   <u>Purpose</u>: To help training partners develop and deliver training to prepare whole communities to prevent, protect against, mitigate, respond to, and recover from acts of terrorism and natural, man-made, and technological hazards.

   <u>Award Criteria</u>: Discretionary, no statutory award criteria. Per the FY24 NOFO, the Joint Explanatory Statement accompanying the FY 2024 DHS Appropriations Act (Pub. L. No.

118-47) directs Continuing Training Grants to be competitively awarded for FEMA-certified rural and tribal training.

**6. Port Security Grant Program (46 U.S.C. § 70107)**

<u>Purpose</u>: Assistance to port authorities, facility operators, and state and local governments for maritime transportation infrastructure security.

<u>Award Criteria</u>: Statute requires that funds be allocated based on risk, but otherwise discretionary.

**7. Presidential Residence Protection Assistance Program (Annual DHS Appropriations Acts)**

<u>Purpose:</u> Provides funds to reimburse state and local enforcement agencies (LEAs) and emergency management agencies (EMAs) for extraordinary law enforcement or other emergency personnel costs incurred while protecting any non-governmental residence of the President that is designated or identified to be secured by the U.S. Secret Service.

**8. Regional Catastrophic Preparedness Grant Program. (Annual DHS Appropriations Acts)**

<u>Purpose:</u> Supports the building of core capabilities essential to achieving the National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts.

<u>Award Criteria:</u> Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

**9. Targeted Violence and Terrorism Prevention (6 U.S.C. § 112 (b)(2); Annual DHS Appropriations Acts)**

<u>Purpose</u>: To help prepare for, prevent and respond to emergent threats from violent extremism through planning, developing, implementing, or expanding educational outreach, community engagement, social service programs, training and exercises.

<u>Award Criteria</u>: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

**10. Transit Security Grant Program (6 U.S.C. § 1135)**

<u>Purpose</u>: The purpose of the grant is to build and sustain transit agency security capabilities that protect national security.

<u>Award Criteria</u>: Discretionary, competitive awards based on statutory criteria that require prioritization of funding based on risk.

**Recommended Determination: DHS Review for Termination**

1. **Case Management Pilot Program (Annual DHS Appropriation Acts)**

   <u>Purpose:</u> Makes funds available to local governments and/or nonprofits to provide voluntary case management and other services to aliens in immigration removal proceedings.

   <u>Award Criteria:</u> Discretionary; the CMPP National Board makes funds available to local governments and/or nonprofits (subrecipients) to provide case management and culturally, trauma-informed, and linguistically responsive services to eligible noncitizens who affirmatively volunteer to participate in the program.

2. **Emergency Food and Shelter Program – Humanitarian (42 U.S.C. §§ 11331-11346)**

   <u>Purpose:</u> To provide shelter and other services to families and individuals encountered by the Department of Homeland Security.

   <u>Award Criteria</u>: Mandatory, subaward determinations made by external board based on statutory criteria.

3. **Shelter and Services Program. (Annual DHS Appropriations Acts)**

   <u>Purpose:</u> To provide funds to non-federal entities for sheltering and related activities to aliens following their release from DHS. The intent is to support Customs and Border Protection in the safe, orderly, and humane release of aliens from short-term holding facilities.

   <u>Award Criteria:</u> SSP-Competitive: Competitive grants made available to local governments, federally recognized tribal governments, nonprofit organizations, and states that serve aliens recently released from DHS custody to provide shelter, food, transportation, acute medical care, personal hygiene supplies, and case management services and to increase the non-federal entities capacity to shelter aliens recently released from DHS custody, including renovations and modifications to existing facilities.

   SSP-Allocated: Funding in the FY24 NOFO is allocated to eligible applicants listed in a table in the NOFO. The allocations were based on release and destination data received from CBP over the time period of July 1, 2023, to Dec. 31, 2023, along with operational information available to CBP.

# EXHIBIT 2

*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528


Homeland Security

February 19, 2025

MEMORANDUM FOR ALL AGENCIES AND OFFICES

FROM:     Kristi Noem
          Secretary

SUBJECT:  **Restricting Grant Funding for Sanctuary Jurisdictions**

---

Following the horrific attacks on this country on September 11, 2001, the American people trusted their leaders to make sure it would never happen again. Among the circumstances that led to those attacks was the failure to treat immigration as a national security issue. The 9/11 Commission Report, for example, recognized that "the institutions charged with protecting our borders . . . did not understand how grave th[e] threat could be." 9/11 Commission Report at xvi. The Commission also specifically noted that there were, at that time, "9 million people . . . in the United States outside the legal immigration system." *Id.* at 390. A second factor recognized by the Commission was the failure of different law enforcement entities to share information. The Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." *Id.* at xvi.

The year after those terrible attacks, President George W. Bush signed into the law the Homeland Security Act of 2002. The Act created the Department of Homeland Security (DHS), and it transferred into that new agency a number of important national security components, including those responsible for immigration enforcement. Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481(b)(8). Congress also found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attack." *Id.* § 481(b)(2).

The bottom line is that partnership is an essential element of our national security and public safety mission. And that mission undoubtedly includes immigration enforcement. State and local governments that refuse to cooperate with, refuse to share information with, or even actively obstruct federal immigration enforcement reject these ideals and the history we share in common as Americans. If any government entity chooses to thumb its nose at the Department of Homeland Security's national security and public safety mission, it should not receive a single dollar of the Department's money unless Congress has specifically required it.

For purposes of this memorandum, "sanctuary jurisdictions" include the following:

- Jurisdictions that fail to comply with the information sharing requirements of 8 U.S.C. §§ 1373 and 1644.

Prohibiting Grant Funding for Sanctuary Jurisdictions
Page 2

- Jurisdictions that violate other relevant laws, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, *id.* § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, *id.* § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

- Jurisdictions that fail to honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of alien pursuant to a valid detainer. A jurisdiction, however, is not a sanctuary jurisdiction merely because it lacks the necessary resources to assist in a particular instance.

- Any jurisdiction that fails to provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien.

- Any jurisdiction that leaks the existence of an enforcement operation.

All components are to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions. To the extent consistent with relevant legal authorities and the applicable terms and conditions of each award, each component must cease providing federal funding to sanctuary jurisdictions. Components should also make appropriate criminal referrals to the Department of Justice where illegal conduct is discovered.

For questions regarding applicable legal authorities, components must consult with the General Counsel or his designee. For questions regarding whether a particular jurisdiction is a sanctuary jurisdiction, components must consult with the Director of Immigration and Customs Enforcement and the Commissioner of Customs and Border Protection or their designees.

Within 30 days, each component shall provide a report to the Undersecretary for Management with a summary of actions taken to comply with this memorandum.

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, *et al.*,

    Plaintiffs,

    v.

DONALD TRUMP, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE
UNITED STATES, *et al.*,

    Defendants.

Civil Action No. 1:25-cv-39 (JJM)

## **DEFENDANTS' NOTICE OF APPEAL**

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States Court of Appeals for the First Circuit from this Court's Order enforcing the preliminary injunction as to certain funding administered by the Federal Emergency Management Agency, as set forth in the Memorandum and Order dated April 4, 2025 and docketed at ECF No. 175, and from this Court's Order denying reconsideration of that prior Order, dated April 14, 2025 and docketed at ECF No. 182.

Dated: April 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

DANIEL SCHWEI
Special Counsel

*/s/ Andrew F. Freidah*
ANDREW F. FREIDAH
EITAN R. SIRKOVICH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 305-0879
Fax: (202) 616-8470
Email: andrew.f.freidah@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on April 28, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.


*/s/ Andrew F. Freidah*
Andrew F. Freidah

APPEAL

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00039-JJM-PAS

State of New York et al v. Trump et al                          Date Filed: 01/28/2025
Assigned to: Chief Judge John J. McConnell, Jr.                 Jury Demand: Plaintiff
Referred to: Magistrate Judge Patricia A. Sullivan             Nature of Suit: 899 Other Statutes:
Case in other court:  First Circuit, 25-01138                   Administrative Procedures Act/Review or
                      First Circuit, 25-01236                   Appeal of Agency Decision
                      First Circuit Court of Appeals, 25-01413  Jurisdiction: U.S. Government Defendant
Cause: 05:551 Administrative Procedure Act

**Plaintiff**

**State of New York**                      represented by   **Kathryn M. Sabatini**
                                                            Rhode Island Attorney General
                                                            150 South Main Street
                                                            Providence, RI 02906
                                                            401-274-4400
                                                            Email: KSabatini@riag.ri.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Leonard Giarrano , IV**
                                                            RI Department of Attorney General
                                                            150 South Main Street
                                                            Providence, RI 02903
                                                            401-274-4400
                                                            Email: lgiarrano@riag.ri.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Colleen K. Faherty**
                                                            NYS Office of The Attorney General
                                                            Executive Division - Office of Federal
                                                            Initiatives
                                                            28 Liberty St.
                                                            18th Floor
                                                            New York, NY 10005
                                                            212-416-6046
                                                            Fax: 212-416-6009
                                                            Email: colleen.faherty@ag.ny.gov
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Michael Joseph Myers**
                                                            NYS Attorney General
                                                            Env. Prot. Bureau, The Capitol

A605

Albany, NY 12224
(518) 776-2382
Email: Michael.Myers@ag.ny.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
NYS Office of The Attorney General
28 Liberty Street
18th Floor
New York, NY 10005
212-416-8679
Email: molly.thomas-jensen@ag.ny.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rabia Muqaddam**
Office of the New York State Attorney
General
28 Liberty St
New York, NY 10005
212-416-8883
Email: rabia.muqaddam@ag.ny.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Zoe Levine**
NYS Office of The Attorney General
28 Liberty Street
New York, NY 10005
212-416-8329
Email: zoe.levine@ag.ny.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
RI Department of Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
Email: srice@riag.ri.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of California**                      represented by  **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A606

**Carly J. Munson**
California Dept. of Justice
1300 I Street
Sacramento, CA 95814
916-210-7845
Email: carly.munson@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Chuang**
Office of The Attorney General
California
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
415-510-3525
Email: christine.chuang@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J. Kissel**
California Dept. of Justice
300 S. Spring Street
Los Angeles, CA 90013
213-269-6388
Fax: 213-269-6250
Email: christopher.kissel@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth J. Sugarman**
Office of The Attorney General
Office of the Attorney General
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94110
415-510-3531
Email: kenneth.sugarman@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lara Haddad**
California Dept. of Justice
Los Angeles, CA 90013
213-269-6250
Fax: 916-269-6250
Email: lara.haddad@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Faer**
Office of The Attorney General
1515 Clay Street
Ste 20th Floor

A607

Oakland, CA 94612
510-879-3304
Email: laura.faer@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marie E. Logan**
California Dept. of Justice
1515 Clay St
Oakland, CA 94612
510-879-3136
Email: marie.logan@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas R. Green**
California Dept. of Justice
San Francisco, CA 94102
415-510-3597
Email: nicholas.green@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore McCombs**
Office of The Attorney General
Office of the Attorney General
600 W. Broadway, Suite 1800
San Diego, CA 92110
619-738-9000
Email: theodore.mccombs@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Illinois**                    represented by **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Hemmer**
Illinois Attorney General's Office

A608

115 S. LaSalle St.
Chicago, IL 60603
312-814-5526
Email: alex.hemmer@ilag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Henry Weaver**
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle St.
35th Floor
Chicago, IL 60603
773-590-6838
Email: robert.weaver@ilag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Rhode Island**                    represented by    **Kathryn M. Sabatini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of New Jersey**                    represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A609

**Angela Cai**
Office of the NJ Attorney General
25 Market St
PO Box 080
Trenton, NJ 06811
609-414-5954
Email: angela.cai@njoag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Feigenbaum**
NJ AG's Office
25 Market St
PO Box 080
Trenton, NJ 06811
609-376-2690
Email: jeremy.feigenbaum@njoag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shankar Duraiswamy**
New Jersey Office of Attorney General
25 Market Street
Ste 8th Floor
Trenton, NJ 08625
609-649-1019
Email: shankar.duraiswamy@njoag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Commonwealth of Massachusetts**　　　　represented by　**Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Esther Lumelsky**
Massachusetts Attorney General's Office
One Ashburton Place
Boston, MA 02108
617-963-2334

A610

Email: Anna.Lumelsky@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chris Pappavaselio**
Massachusetts Attorney General's Office
One Ashburton Pl.
Boston, MA 02108
213-219-0765
Email: chris.pappavaselio2@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julia Jonas-Day**
Massachusetts Office of the Attorney
General
One Ashburton Place
18th Fl
Boston, MA 02108
781-799-8675
Email: julia.jonas-day@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Brady Dirks**
Massachusetts Attorney General's Office
1 Ashburton Pl.
Ste 20th Floor
Boston, MA 02478
617-963-2277
Email: katherine.dirks@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathaniel James Hyman**
Massachusetts Office of the Attorney
General
1 Ashburton Place
18th Floor
Boston, MA 02108
617-963-2514
Email: nathaniel.j.hyman@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Turner Helen Smith**
MA Office of the Attorney General
One Ashburton Place
Ste 18th Floor
Boston, MA 02108

A611

le

617-721-9174
Email: Turner.Smith@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vanessa A. Arslanian**
Office of Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
617-963-2107
Email: Vanessa.arslanian@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Arizona**                          represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua David Rothenberg Bendor**
Arizona Attorney General's Office Solicitor
General□
2005 North Central Avenue
Pheonix, AZ 85004
602-542-8958
Fax: 602-542-8308
Email: joshua.bendor@azag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan T. Arrowsmith**
Arizona Attorney General's Office
Solicitor General's Office
2005 North Central Avenue
Phoenix, AZ 85004
602-542-8636
Email: nathan.arrowsmith@azag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A612

ECF - District of Rhode Island

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

State of Colorado     represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shannon Wells Stevenson**
Colorado Department of Law
1300 Broadway
10th Floor
Denver, CO 80203
720-508-6749
Email: shannon.stevenson@coag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

State of Connecticut     represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jill Lacedonia**
Office of the Attorney General, State of
Connecticut
Environment Department
165 Capitol Avenue
Hartford, CT 06106
860-808-5250
Fax: 860-808-5386
Email: jill.lacedonia@ct.gov
*PRO HAC VICE*

ATTORNEY TO BE NOTICED

**Michael Kenneth Skold**
State of Connecticut Office of the Attorney
General
Administration
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5316
Fax: 860-808-5387
Email: michael.skold@ct.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Delaware**                    represented by  **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vanessa L. Kassab**
Delaware Department of Justice
Division of Fraud and Consumer Protection
Carvel State Building
820 N. French St.
Wilmington, DE 19801
302-683-8881
Email: vanessa.kassab@delaware.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

A614

**District of Columbia**                    represented by **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew C. Mendrala**
Office of the Attorney General for the
District of Columbia
Civil Rights Section
400 Sixth Street N.W.
Washington, DC 20001
202-724-9726
Email: andrew.mendrala@dc.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Hawaii**                    represented by **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David D. Day**
State of Hawaii Dept. of the Attorney
General
425 Queen Street
Honolulu, HI 96813
808-586-1284
Fax: 808-586-1239
Email: david.d.day@hawaii.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kalikoonalani Diara Fernandes**
Department of the Attorney General, State
of Hawaii

A615

425 Queen Street
Honolulu, HI 96813
808-586-1360
Email: kaliko.d.fernandes@hawaii.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Maine**                        represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason David Anton**
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
207-626-8412
Email: jason.anton@maine.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Maryland**                     represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A616

**Adam Kirschner**
Office of the Attorney General- State of
Maryland
200 Saint Paul Place
Baltimore, MD 21202
410-576-6424
Email: akirschner@oag.state.md.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Michigan**                          represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linus Banghart-Linn**
Michigan Dept of Atty General
525 W Ottawa St
Lansing, MI 48933
517-281-6677
Fax: 517-335-7644
Email: banghart-linnl@michigan.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neil Giovanatti**
Michigan Department of Attorney General
525 W. Ottawa Street
P.O. Box 30758
Lansing, MI 48909
517-335-7603
Email: giovanattin@michigan.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Minnesota**                     represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Kramer**
MN Attorney General Office
445 Minnesota Street
St. Paul, MN 55102
651-757-1010
Email: liz.kramer@ag.state.mn.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Nevada**                        represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heidi Parry Stern**
Nevada Attorney General's Office
Solicitor General
1 State of Nevada Way
Ste 100
Las Vegas, NV 89119
702-486-3594
Email: hstern@ag.nv.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**

A618

(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of North Carolina**                    represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel P. Mosteller**
N.C Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
Email: dmosteller@ncdoj.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of New Mexico**                    represented by    **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anjana Samant**
NM Department of Justice
408 Galisteo St
Santa Fe, NM 87501
505-270-4332
Email: asamant@nmdoj.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A619

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

State of Oregon                                 represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina L. Beatty-Walters**
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201-5702
971-673-1880
Fax: 971-673-5000
Email: tina.beattywalters@doj.oregon.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

State of Vermont                                represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan T. Rose**
Office of the Attorney General
Appellate Unit
109 State Street
Montpelier, VT 05609

A620

802-793-1646
Email: jonathan.rose@vermont.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Washington**                    represented by   **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R.W. Hughes**
State of Washington Attorney General's
Office
Complex Litigation
800 Fifth Avenue
Suite 2000
Seattle, WA 98104
206-464-7744
Email: andrew.hughes@atg.wa.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah Brown**
Office of the Washington Attorney General
Environmental Protection Division
800 Fifth Ave
Suite 2000
Seattle, WA 98104
206-233-3391
Fax: 206-587-5088
Email: leah.brown@atg.wa.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**

A621

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Wisconsin**                                    represented by  **Kathryn M. Sabatini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Bibb**
Wisconsin Department of Justice
Special Litigation & Appeals
17 West Main St.
Madison, WI 53703
608-266-0810
Email: bibbaj@doj.state.wi.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Thomas-Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Office of the Governor of Kentucky ex**          represented by  **Kathryn M. Sabatini**
**rel. Andy Beshear**                                                (See above for address)
*Office of the Governor of Kentucky ex rel.*                        *LEAD ATTORNEY*
*Andy Beshear*                                                      *ATTORNEY TO BE NOTICED*

**Leonard Giarrano , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Rice**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura Crittenden Tipton**
Office of the Governor
700 Capitol Ave
Ste. 106
Frankfort, KY 40601
502-564-2611

A622

Fax: 502-564-6858
Email: laurac.tipton@ky.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Travis Mayo**
Office of the Governor
Office of General Counsel
The Capitol Building
700 Capitol Avenue
Ste 106
Frankfort, KY 40601
502-564-2611
Fax: 502-564-1275
Email: travis.mayo@ky.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Payne**
Office of the Governor
700 Capitol Ave
Ste. 106
Frankfort, KY 40601
502-564-2611
Fax: 502-564-6858
Email: taylor.payne@ky.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Donald Trump**
*in his official capacity as President of the United States*

represented by **Daniel Schwei**
DOJ-Civ
1100 L St., N.W.
Room 11532
Washington, DC 20530
202-305-8693
Email: daniel.s.schwei@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
DOJ-Civ
1100 L Street NW
Ste 12308
Washington, DC 20005
202-305-0879
Email: andrew.f.freidah@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
DOJ-Civ

A623

1100 L Street NW
Room 12310
Washington, DC 20005
585-694-1124
Email: eitan.r.sirkovich@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Office of Management and Budget**          represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matthew Vaeth**                                   represented by   **Daniel Schwei**
*in his official capacity as Acting Director of*                    (See above for address)
*the U.S. Office of Management and Budget*                          *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of the Treasury**               represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Scott Bessent**                                  represented by   **Daniel Schwei**
*in his official capacity as Secretary of the*                     (See above for address)
*Treasury*                                                         *LEAD ATTORNEY*

A624

5/28/25, 1:35 PM

*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Patricia Collins**                                           represented by   **Daniel Schwei**
*in her official capacity as Treasurer of the*                                  (See above for address)
*U.S.*                                                                          *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Andrew Freidah**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Eitan Sirkovich**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Health and Human**                       represented by   **Daniel Schwei**
**Services**                                                                    (See above for address)
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Andrew Freidah**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Eitan Sirkovich**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**M.D. Dorothy A Fink**                                       represented by   **Daniel Schwei**
*in her official capacity as Acting Secretary*                                  (See above for address)
*of Health and Human Services*                                                  *LEAD ATTORNEY*
*TERMINATED: 03/06/2025*                                                        *ATTORNEY TO BE NOTICED*

                                                                                **Andrew Freidah**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Eitan Sirkovich**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

A625

**U.S. Department of Education**                                        represented by    **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Denise Carter**                                        represented by    **Daniel Schwei**
*in her official capacity as Acting Secretary*                                    (See above for address)
*of Education*                                                            *LEAD ATTORNEY*
*TERMINATED: 03/06/2025*                                    *ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Federal Emergency Management**                                        represented by    **Daniel Schwei**
**Agency**                                                            (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cameron Hamilton**                                        represented by    **Daniel Schwei**
*in his official capacity as Acting*                                    (See above for address)
*Administrator of the U.S. Federal*                                    *LEAD ATTORNEY*
*Emergency Management*                                    *ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**

A626

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Transportation**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Judith Kaleta**
*in her official capacity as Acting Secretary of Transportation*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Labor**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vince Micone**
*in his official capacity as Acting Secretary of Labor*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)

A627

*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Energy**                   represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ingrid Kolb**                                 represented by   **Daniel Schwei**
*in her official capacity as Acting Secretary*                   (See above for address)
*of the U.S. Department of Energy*                               *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Environmental Protection Agency**        represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Payne**                                 represented by   **Daniel Schwei**
*in his official capacity as Acting*                             (See above for address)
*Administrator of the U.S. Environmental*                        *LEAD ATTORNEY*
*Protection Agency*                                              *ATTORNEY TO BE NOTICED*

A628

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Homeland Security**          represented by    **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kristi Noem**          represented by    **Daniel Schwei**
*in her official capacity as Secretary of the*          (See above for address)
*U.S. Department of Homeland Security*          *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Justice**          represented by    **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**James R McHenry, III**
*in his official capacity as Acting Attorney General of the U.S. Department of Justice*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The National Science Foundation**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Sethuraman Panchanathan**
*in his capacity as Director of the National Science Foundation*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lee Michael Zeldin**
*Administrator of the Environmental Protection Agency*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**

A630

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christopher Allen Wright**
*Secretary of the U.S. Department of Energy*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sean P. Duffy**
*Secretary of the U.S. Department of Transportation*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Russell Vought**
*Director of the U.S. Office of Management and Budget*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of the Interior**
*U.S. Department of the Interior*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)

ATTORNEY TO BE NOTICED

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Douglas Burgum**                                          represented by    **Daniel Schwei**
*Douglas Burgum, in his official capacity as*                                  (See above for address)
*Secretary of the Interior*                                                    *LEAD ATTORNEY*
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Andrew Freidah**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Eitan Sirkovich**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Pamela Bondi**                                            represented by    **Daniel Schwei**
*Pamela Bondi, in her official capacity as*                                    (See above for address)
*Attorney General of the U.S. Department of*                                   *LEAD ATTORNEY*
*Justice*                                                                      *ATTORNEY TO BE NOTICED*

                                                                               **Andrew Freidah**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Eitan Sirkovich**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Agriculture**                          represented by    **Daniel Schwei**
                                                                               (See above for address)
                                                                               *LEAD ATTORNEY*
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Andrew Freidah**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Eitan Sirkovich**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Gary Washington**                                         represented by    **Daniel Schwei**
*Gary Washington, in his official capacity as*                                 (See above for address)
*Acting Secretary of Agriculture*                                              *LEAD ATTORNEY*
*TERMINATED: 03/06/2025*                                                       *ATTORNEY TO BE NOTICED*

A632

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Housing and Urban Development**                   represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Scott Turner**
*Scott Turner, in his official capacity as Secretary of Housing and Urban Development*          represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of State**                   represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

A633

**Marco Rubio**
*Marco Rubio, in his official capacities as*
*Secretary of State and Acting Administrator*
*of the United States Agency for*
*International Development*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Agency for International**
**Development**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Defense**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Hegseth**
*Peter Hegseth, in his official capacity as*
*Secretary of Defense*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**

A634

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Veterans Affairs**                    represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Douglas Collins**                                        represented by   **Daniel Schwei**
*Douglas Collins, in his official capacity as*                               (See above for address)
*Secretary of Veterans Affairs*                                             *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Commerce**                            represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeremy Pelter**                                          represented by   **Daniel Schwei**
*Jeremy Pelter, in his official capacity as*                                (See above for address)
*Acting Secretary of Commerce*                                              *LEAD ATTORNEY*
*TERMINATED: 03/06/2025*                                                    *ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)

A635

*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Aeronautics and Space Administration**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Janet Petro**
*Janet Petro, in her official capacity as Acting Administrator of National Aeronautics and Space Administration*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Corporation for National and Community Service**

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Bastress Tahmasebi**
*Jennifer Bastress Tahmasebi, in her official capacity as Interim Head of the Corporation for National and Community Service*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A636

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Social Security Administration**          represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michelle King**                               represented by   **Daniel Schwei**
*Michelle King, in her official capacity as*                    (See above for address)
*Acting Commissioner of United States*                          *LEAD ATTORNEY*
*Social Security Administration*                                *ATTORNEY TO BE NOTICED*
*TERMINATED: 03/06/2025*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Small Business Administration**          represented by   **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

A637

**Everett Woodel**
*Everett Woodel, in his official capacity as*
*Acting Administrator of U.S. Small Business*
*Administration*
*TERMINATED: 03/06/2025*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert F. Kennedy, Jr.**
*in his official capacity as Secretary of the*
*Department of Health and Human Services*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Linda McMahon**
*in her official capacity as Secretary of*
*Education*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brooke Rollins**
*in her official capacity as Secretary of the*
*Department of Agriculture*

represented by **Daniel Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Freidah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**

A638

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Howard Lutnick**                          represented by **Daniel Schwei**
*in his capacity of the Secretary of*                       (See above for address)
*Commerce*                                                  *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Andrew Freidah**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Eitan Sirkovich**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Leland C. Dudek**                          represented by **Daniel Schwei**
*in his official capacity as Acting*                        (See above for address)
*Commissioner of the Social Security*                       *LEAD ATTORNEY*
*Administration*                                            *ATTORNEY TO BE NOTICED*

                                                            **Andrew Freidah**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Eitan Sirkovich**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Kelly Loeffler**                           represented by **Daniel Schwei**
*in her official capacity as the Administrator*             (See above for address)
*of the Small Business Administration*                      *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Andrew Freidah**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Eitan Sirkovich**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**American Center for Law and Justice**      represented by **Brandon S. Bell**
*TERMINATED: 02/13/2025*                                    Fontaine Bell, LLP
                                                            One Davol Square
                                                            Penthouse
                                                            Providence, RI 02903
                                                            274-8800
                                                            Fax: 274-8800

A639

Email: bbell@fontainebell.com
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**VR School**
*TERMINATED: 01/29/2025*

**Movant**

**Freedom Cheteni**
531 Lasuen Mall
#19492
Stanford, CA 94305
*United States Non Public School*
*Superintedent*
*TERMINATED: 01/30/2025*

**Movant**

**Arthur West**
120 State Ave
NE #1497
Olympia, WA 98501
*TERMINATED: 02/10/2025*

**Movant**

**Rubin Young**
14060 SW 258th Street
Homestead, FL 33032
256-864-2411
*TERMINATED: 02/12/2025*

**Movant**

**Cody R. Hart**
901 Metcalf Street #71
Sedro-Wolley, WA 98284
*TERMINATED: 02/18/2025*

**Movant**

**Derrill J. Fussell**
929. E. College Way
Mount Vernon, WA 98273
*TERMINATED: 02/18/2025*

**Movant**

**Rev. Anne Armstrong**
99 Hudson Pond Road
West Greenwich, RI 02817
401-304-6543
*TERMINATED: 02/24/2025*

A640

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2025 | 1 | COMPLAINT ( filing fee paid $ 405.00, receipt number ARIDC-2092620 ), filed by State of Vermont, State of Arizona, State of California, State of Nevada, State of New York, State of North Carolina, State of Minnesota, State of Maryland, State of Oregon, State of Delaware, District of Columbia, State of Washington, State of Maine, State of Wisconsin, Commonwealth of Massachusetts, State of Illinois, State of Connecticut, State of Hawaii, State of Michigan, State of Colorado, State of Rhode Island, State of New Mexico, State of New Jersey. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(Rice, Sarah) (Entered: 01/28/2025) |
| 01/28/2025 | | Case assigned to Chief Judge John J. McConnell, Jr. and Magistrate Judge Patricia A. Sullivan. (Simoncelli, Michael) (Entered: 01/28/2025) |
| 01/28/2025 | 2 | CASE OPENING NOTICE ISSUED (Simoncelli, Michael) (Entered: 01/28/2025) |
| 01/28/2025 | 3 | MOTION for Temporary Restraining Order filed by All Plaintiffs. (Attachments: # 1 Exhibit)(Rice, Sarah) (Entered: 01/28/2025) |
| 01/28/2025 | 4 | MOTION for Aaron J. Bibb to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092646 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 5 | MOTION for Alex Hemmer to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092647 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 6 | MOTION for Andrew Hughes to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092648 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 7 | MOTION for Andrew C. Mendrala to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092649 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 8 | MOTION for Christina L. Beatty-Walters to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092650 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 9 | MOTION for Colleen K. Faherty to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092651 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 10 | MOTION for Daniel P. Mosteller to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092652 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 11 | MOTION for David D. Day to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092653 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 12 | MOTION for Jonathan T. Rose to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092654 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 13 | MOTION for Joshua David Rothenberg Bendor to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092655 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |

A641

| | | |
|---|---|---|
| 01/28/2025 | 14 | MOTION for Kalikoonalani D. Fernandes to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092656 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 15 | MOTION for Leah Brown to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092657 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 16 | MOTION for Linus Banghart-Linn to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092658 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 17 | MOTION for Michael Kenneth Skold to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092659 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 18 | MOTION for Molly Thomas-Jensen to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092660 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 19 | MOTION for Shannon Stevenson to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092662 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 20 | MOTION for Zoe Levine to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number BRIDC-2092663 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 21 | MOTION for Katherine Dirks to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092664 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 22 | MOTION for Angela Cai to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092665 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 23 | MOTION for Shankar Duraiswamy to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092667 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/28/2025 | 24 | MOTION for Jeremy M. Feigenbaum to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092668 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/28/2025) |
| 01/29/2025 | 25 | MOTION for Jason Anton to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2092688 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | | NOTICE of Hearing on 3 MOTION for Temporary Restraining Order: Motion Hearing via Zoom **scheduled for Wednesday 1/29/2025 at 3:00 PM as a Remote Hearing** before Chief Judge John J. McConnell, Jr.; Zoom information has been provided to counsel under separate email. (Jackson, Ryan) (Entered: 01/29/2025) |
| 01/29/2025 | 26 | MOTION for Leave to File Amicus Brief filed by VR School. **Responses due by 2/12/2025.** (Attachments: # 1 Proposed Brief, # 2 Exhibit)(Simoncelli, Michael) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER denying 26 Motion for Leave to File Amicus Brief: VR School's Motion to File an Amicus Brief is DENIED. The filer, Mr. Freedom Cheteni, is not a member of |

| | |
|---|---|
| | the bar of this Court (or possibly any court). The Motion is filed on behalf of an entity called the "VR School." Pursuant to LR Gen 205(a), an entity needs an attorney of this Court to file with the Court. A non-lawyer may not file with the Court on behalf of an organization or corporate entity *pro se*. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Jackson, Ryan) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 5 Motion to Appear Pro Hac Vice of Alex Hemmer. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 6 Motion to Appear Pro Hac Vice of Andrew Hughes. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 7 Motion to Appear Pro Hac Vice of Andrew C. Mendrala. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | DOCKET NOTE: Today's (Wednesday 1/29/25) proceedings in this matter are available to non-case participants via the Court's YouTube channel. Interested parties should visit the Court's website for further viewing information. (Jackson, Ryan) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 8 Motion to Appear Pro Hac Vice of Christina L. Beatty-Walters. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 9 Motion to Appear Pro Hac Vice of Colleen K. Faherty. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 10 Motion to Appear Pro Hac Vice of Daniel P. Mosteller. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 11 Motion to Appear Pro Hac Vice of David D. Day. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 12 Motion to Appear Pro Hac Vice of Jonathan T. Rose. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 13 Motion to Appear Pro Hac Vice of Joshua David Rothenberg Bendor. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 14 Motion to Appear Pro Hac Vice of Kalikoonalani D. Fernandes. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 15 Motion to Appear Pro Hac Vice of Leah Brown. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) Modified Text on 1/29/2025 (Hill, Cherelle). (Entered: 01/29/2025) |
| 01/29/2025 | TEXT ORDER granting 16 Motion to Appear Pro Hac Vice of Linus Banghart-Linn. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |

A643

| 01/29/2025 | | TEXT ORDER granting 17 Motion to Appear Pro Hac Vice of Michael Kenneth Skold. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
|---|---|---|
| 01/29/2025 | | TEXT ORDER granting 18 Motion to Appear Pro Hac Vice of Molly Thomas-Jensen. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 19 Motion to Appear Pro Hac Vice of Shannon Stevenson. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | 27 | CORRECTED COMPLAINT, filed by State of Vermont, State of Arizona, State of California, State of Nevada, State of New York, State of North Carolina, State of Minnesota, State of Maryland, State of Oregon, State of Delaware, District of Columbia, State of Washington, State of Maine, State of Wisconsin, Commonwealth of Massachusetts, State of Illinois, State of Connecticut, State of Hawaii, State of Michigan, State of Colorado, State of Rhode Island, State of New Mexico, State of New Jersey. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(Rice, Sarah) Modified on 1/29/2025 to correct docket text. (Simoncelli, Michael). (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 20 Motion to Appear Pro Hac Vice of Zoe Levine. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 21 Motion to Appear Pro Hac Vice of Katherine Dirks. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | 28 | EXHIBIT IN SUPPORT by All Plaintiffs in support of 3 MOTION for Temporary Restraining Order *Corrected Exhibit 3-1*. (Rice, Sarah) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 22 Motion to Appear Pro Hac Vice of Angela Cai. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 23 Motion to Appear Pro Hac Vice of Shankar Duraiswamy. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 24 Motion to Appear Pro Hac Vice of Jeremy Feigenbaum. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 25 Motion to Appear Pro Hac Vice of Jason Anton. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 4 Motion to Appear Pro Hac Vice of Aaron Bibb. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | 29 | MOTION for Christine Chuang to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093054 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 30 | MOTION for Laura L. Faer to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093056 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |

A644

| 01/29/2025 | | TEXT ORDER granting 29 Motion to Appear Pro Hac Vice of Christine Chuang. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| --- | --- | --- |
| 01/29/2025 | | TEXT ORDER granting 30 Motion to Appear Pro Hac Vice of Laura Faer. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | 31 | MOTION for Heidi Parry Stern to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093071 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 32 | MOTION for Elizabeth Kramer to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093081 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 33 | MOTION for Adam D. Kirschner to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093082 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 34 | MOTION for Carly J. Munson to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number BRIDC-2093085 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 35 | MOTION for Christopher J. Kissel to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093089 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 36 | MOTION for Kenneth J. Sugarman to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093091 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 37 | MOTION for Lara Haddad to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093096 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 38 | MOTION for Nicholas R. Green to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093097 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 31 Motion to Appear Pro Hac Vice of Heidi Parry Stern. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 32 Motion to Appear Pro Hac Vice of Elizabeth Kramer. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | 39 | NOTICE of Appearance by Daniel Schwei on behalf of All Defendants (Schwei, Daniel) (Entered: 01/29/2025) |
| 01/29/2025 | 40 | MOTION for Rabia Muqaddam to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093108 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 41 | MOTION for Neil Giovanatti to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093110 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/29/2025 | 42 | MOTION for Vanessa L. Kassab to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093113 ) filed by State of Rhode Island. (Giarrano, Leonard) |

| | | (Entered: 01/29/2025) |
|---|---|---|
| 01/29/2025 | 43 | NOTICE by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, Dorothy A Fink, U.S. Department of Education, Denise Carter, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan re 3 MOTION for Temporary Restraining Order *of Factual Developments* (Attachments: # 1 Exhibit OMB Mem M-25-14, Rescission of M-25-13 (Jan. 28, 2025))(Schwei, Daniel) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 33 Motion to Appear Pro Hac Vice of Adam Kirschner. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 34 Motion to Appear Pro Hac Vice of Carly J. Munson. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 35 Motion to Appear Pro Hac Vice of Christopher J. Kissel. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 36 Motion to Appear Pro Hac Vice of Kenneth J. Sugarman. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 37 Motion to Appear Pro Hac Vice of Lara Haddad. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 38 Motion to Appear Pro Hac Vice of Nicholas R. Green. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 40 Motion to Appear Pro Hac Vice of Rabia Muqaddam. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 41 Motion to Appear Pro Hac Vice of Neil Giovanatti. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | TEXT ORDER granting 42 Motion to Appear Pro Hac Vice of Vanessa L. Kassab. So Ordered by Chief Judge John J. McConnell, Jr. on 1/29/2025. (Hill, Cherelle) (Entered: 01/29/2025) |
| 01/29/2025 | | Minute Entry for proceedings held before Chief Judge John J. McConnell, Jr.: Motion Hearing via Zoom held on 1/29/2025 re: 3 MOTION for Temporary Restraining Order filed by State of New York, et al. Counsel present: S. Rice, K. Sabatini; M. Thomas-Jensen, R. Muqaddam; A. Hemmer; C. Chuang, L. Faer; K. Dirks; D. Schwei. Court addresses withdrawal of the OMD memo; Plaintiffs (Rice) responds. Court questions Plaintiffs. One exhibit admitted as evidence. Defendants (Schwei) argues; Court questions Defendants. Plaintiffs (Rice) give reply argument. Court orders Plaintiffs/States to prepare a proposed order and share it with Defendants before submitting to the Court. |

| | | |
|---|---|---|
| | | Upon submission to the Court (via email to Case Manager), the Defendants will have 24-hours to response to the proposed order by letter-brief. Court will then consider the proposed order and response and schedule a conference if necessary. Adjourned. (Court Reporter Denise Webb in Courtroom Remote via Zoom Videoconference at 3:00 PM.) (Jackson, Ryan) (Entered: 01/29/2025) |
| 01/29/2025 | 44 | Exhibit List for 1/29/25 Motion Hearing on TRO before Chief Judge McConnell. (Jackson, Ryan) (Entered: 01/29/2025) |
| 01/29/2025 | 45 | MOTION for Anjana Samant to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2093253 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 01/29/2025) |
| 01/30/2025 | | TEXT ORDER granting 45 Motion to Appear Pro Hac Vice of Anjana Samant. So Ordered by Chief Judge John J. McConnell, Jr. on 1/30/2025. (Hill, Cherelle) (Entered: 01/30/2025) |
| 01/30/2025 | 46 | DOCKET NOTE: Proposed Temporary Restraining Order filed by State of NY, et al. Received by the Court at 6:15 PM on 1/29/25. (Jackson, Ryan) (Entered: 01/30/2025) |
| 01/30/2025 | 47 | MOTION for Leave to File Amicus Brief filed by Freedom Cheteni. **Responses due by 2/13/2025.** (Attachments: # 1 Proposed Amicus, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Simoncelli, Michael) (Entered: 01/30/2025) |
| 01/30/2025 | | TEXT ORDER denying 47 Motion for Leave to File Amicus Brief. So Ordered by Chief Judge John J. McConnell, Jr. on 1/30/2025. (Jackson, Ryan) (Entered: 01/30/2025) |
| 01/30/2025 | 48 | MOTION Motion to Supplement Record re: 3 MOTION for Temporary Restraining Order filed by All Plaintiffs. **Responses due by 2/13/2025.** (Attachments: # 1 Exhibit Sugarman Decl. and Exhibits)(Rice, Sarah) (Entered: 01/30/2025) |
| 01/30/2025 | 49 | RESPONSE In Opposition to 3 MOTION for Temporary Restraining Order filed by All Defendants. **Replies due by 2/6/2025.** (Attachments: # 1 Exhibit OMB Guidance (Jan. 28, 2025))(Schwei, Daniel) (Entered: 01/30/2025) |
| 01/31/2025 | | TEXT ORDER granting 48 MOTION to Supplement Record re: 3 MOTION for Temporary Restraining Order. So Ordered by Chief Judge John J. McConnell, Jr. on 1/31/2025. (Jackson, Ryan) (Entered: 01/31/2025) |
| 01/31/2025 | 50 | TEMPORARY RESTRAINING ORDER granting 3 Motion for TRO. So Ordered by Chief Judge John J. McConnell, Jr. on 1/31/2025. (Jackson, Ryan) (Entered: 01/31/2025) |
| 02/03/2025 | 51 | NOTICE by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, Dorothy A Fink, U.S. Department of Education, Denise Carter, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan re 50 Order on Motion for TRO (Attachments: # 1 Exhibit Written Notice of Court Order) (Schwei, Daniel) (Entered: 02/03/2025) |
| 02/03/2025 | 52 | NOTICE of Appearance by Eitan Sirkovich on behalf of All Defendants (Sirkovich, Eitan) (Entered: 02/03/2025) |
| 02/03/2025 | | TEXT ORDER: Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support is due on or before Friday 2/7/2025; Defendants' Opposition and Memorandum is due on or before Wednesday 2/12/25; Plaintiffs' Reply is due two days after the filing of |

| | | the Defendants' opposition. So Ordered by Chief Judge John J. McConnell, Jr. on 2/3/2025. (Jackson, Ryan) (Entered: 02/03/2025) |
|---|---|---|
| 02/03/2025 | 53 | NOTICE of Appearance by Andrew Freidah on behalf of All Defendants (Freidah, Andrew) (Entered: 02/03/2025) |
| 02/04/2025 | 54 | MOTION for Turner Helen Smith to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2095192 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/04/2025) |
| 02/04/2025 | 55 | MOTION for Anna Lumelsky to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2095198 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/04/2025) |
| 02/04/2025 | 56 | MOTION for Michael Joseph Myers to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2095201 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/04/2025) |
| 02/04/2025 | | TEXT ORDER granting 54 Motion to Appear Pro Hac Vice of Turner Helen Smith. So Ordered by Chief Judge John J. McConnell, Jr. on 2/4/2025. (Gonzalez Gomez, Viviana) (Entered: 02/04/2025) |
| 02/04/2025 | | TEXT ORDER granting 55 Motion to Appear Pro Hac Vice of Anna Lumelsky. So Ordered by Chief Judge John J. McConnell, Jr. on 2/4/2025. (Gonzalez Gomez, Viviana) (Entered: 02/04/2025) |
| 02/04/2025 | | TEXT ORDER granting 56 Motion to Appear Pro Hac Vice of Michael Joseph Myers. So Ordered by Chief Judge John J. McConnell, Jr. on 2/4/2025. (Gonzalez Gomez, Viviana) (Entered: 02/04/2025) |
| 02/04/2025 | | NOTICE of CONFERENCE: Chambers Conference via Zoom **scheduled for Thursday 2/6/2025 at 9:30 AM as a Remote Conference** before Chief Judge John J. McConnell, Jr. This conference is for _COUNSEL ONLY_ and Zoom Meeting information has been provided to counsel under separate cover. THIS IS NOT A PUBLIC HEARING. (Jackson, Ryan) (Entered: 02/04/2025) |
| 02/04/2025 | 57 | MOTION for Marie E. Logan to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2095272 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/04/2025) |
| 02/04/2025 | 58 | MOTION for Theodore McCombs to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2095275 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/04/2025) |
| 02/04/2025 | | TEXT ORDER granting 57 Motion to Appear Pro Hac Vice of Marie E. Logan. So Ordered by Chief Judge John J. McConnell, Jr. on 2/4/2025. (Hill, Cherelle) (Entered: 02/04/2025) |
| 02/04/2025 | | TEXT ORDER granting 58 Motion to Appear Pro Hac Vice of Theodore McCombs. So Ordered by Chief Judge John J. McConnell, Jr. on 2/4/2025. (Hill, Cherelle) (Entered: 02/04/2025) |
| 02/04/2025 | 59 | NOTICE of Appearance by Turner Helen Smith on behalf of Commonwealth of Massachusetts (Smith, Turner) (Entered: 02/04/2025) |
| 02/04/2025 | 60 | MOTION to Intervene filed by Arthur West. **Responses due by 2/18/2025.** (Attachments: # 1 DESCHUTES ESTUARY GRANT INFORMATION, # 2 NEPA NOV 25 As filed, # 3 NEPA NOV 25 EXHIBITS, # 4 WEST V. REED MISREPRESENTATION OF INJUNCTION, # 5 Email)(Hill, Cherelle) (Entered: 02/04/2025) |

A648

| 02/04/2025 | 61 | NOTICE of Appearance by Anna Esther Lumelsky on behalf of Commonwealth of Massachusetts (Lumelsky, Anna) (Entered: 02/04/2025) |
|---|---|---|
| 02/05/2025 | | Reset Hearings re: Notice of Public Chambers Conference via Zoom *scheduled for Thursday 2/6/2025 at 9:30 AM as a Remote Conference* before Chief Judge John J. McConnell, Jr. This conference will now be available for public viewing via the Court's YouTube channel; information on connecting to the conference is available on the Court's website. Counsel are still directed to connect to the conference via Zoom with the meeting invitation previously sent to counsel via email. (Jackson, Ryan) (Entered: 02/05/2025) |
| 02/05/2025 | 62 | MOTION for Nathan T. Arrowsmith to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2096068 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/05/2025) |
| 02/06/2025 | | TEXT ORDER granting 62 Motion to Appear Pro Hac Vice of Nathan T. Arrowsmith. So Ordered by Chief Judge John J. McConnell, Jr. on 2/6/2025. (Hill, Cherelle) (Entered: 02/06/2025) |
| 02/06/2025 | | Minute Entry for proceedings held before Chief Judge John J. McConnell, Jr.: Chambers Conference via Zoom held on 2/6/2025. Counsel present: S. Rice, K. Sabatini, L. Giarrano; R. Muqaddam, M. Thomas-Jensen, C. Faherty; L. Faer, T. McCombs; K. Dirks; D. Schwei, E. Sirkovich. (Jackson, Ryan) (Entered: 02/06/2025) |
| 02/06/2025 | | TEXT ORDER: The Court extends the 50 TEMPORARY RESTRAINING ORDER for good cause including the complexity of the issues involved, the number of parties, and the need to maintain the status quo while this matter is being expeditiously litigated - until the Court enters an order on the Plaintiffs' Motion for Preliminary Injunction. So Ordered by Chief Judge John J. McConnell, Jr. on 2/6/2025. (Jackson, Ryan) (Entered: 02/06/2025) |
| 02/06/2025 | 63 | TRANSCRIPT ORDER for proceedings held on Jan. 29, 2025 before Judge Chief Judge McConnell. Daily Transcript selected. Transcript to be delivered following adjournment and prior to the normal opening hour of court on the following morning.. (Schwei, Daniel) (Entered: 02/06/2025) |
| 02/06/2025 | 64 | MOTION for Jill Lacedonia to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2096517 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/06/2025) |
| 02/07/2025 | | TEXT ORDER granting 64 Motion to Appear Pro Hac Vice of Jill Lacedonia. So Ordered by Chief Judge John J. McConnell, Jr. on 2/7/2025. (Hill, Cherelle) (Entered: 02/07/2025) |
| 02/07/2025 | 65 | TRANSCRIPT ORDER ACKNOWLEDGMENT Entered re: 63 Transcript Order,. Daily Transcript Ordered. Court Reporter/Transcriber: Denise Webb. (Dias, Jennifer) (Entered: 02/07/2025) |
| 02/07/2025 | 66 | Emergency MOTION *to Enforce* re: 50 Order on Motion for TRO filed by All Plaintiffs. **Responses due by 2/21/2025.** (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Rice, Sarah) (Entered: 02/07/2025) |
| 02/07/2025 | 67 | MOTION for Preliminary Injunction filed by All Plaintiffs. **Responses due by 2/21/2025.** (Thomas-Jensen, Molly) (Entered: 02/07/2025) |
| 02/07/2025 | | TEXT ORDER: Defendants are hereby ORDERED to Respond to Plaintiffs' 66 Emergency MOTION to Enforce re: 50 Order on Motion for TRO *by this Sunday, 2/9/2025.* So Ordered by Chief Judge John J. McConnell, Jr. on 2/7/2025. (Jackson, Ryan) (Entered: 02/07/2025) |

A649

| 02/07/2025 | 68 | DECLARATION re 67 MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104, # 105 Exhibit 105, # 106 Exhibit 106, # 107 Exhibit 107, # 108 Exhibit 108, # 109 Exhibit 109, # 110 Exhibit 110, # 111 Exhibit 111, # 112 Exhibit 112, # 113 Exhibit 113, # 114 Exhibit 114, # 115 Exhibit 115, # 116 Exhibit 116, # 117 Exhibit 117, # 118 Exhibit 118, # 119 Exhibit 119, # 120 Exhibit 120, # 121 Exhibit 121, # 122 Exhibit 122, # 123 Exhibit 123, # 124 Exhibit 124, # 125 Exhibit 125, # 126 Exhibit 126, # 127 Exhibit 127)(Thomas-Jensen, Molly) **CLERK'S NOTE:** *PDF error in original Exhibit 83, corrected version filed at ECF No. 101 . Docket text modified on 2/11/2025.* (Gonzalez Gomez, Viviana) (Entered: 02/07/2025) |
| 02/07/2025 | 69 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/07/2025) |
| 02/09/2025 | 70 | RESPONSE In Opposition to 66 Emergency MOTION *to Enforce* re: 50 Order on Motion for TRO filed by All Defendants. **Replies due by 2/18/2025.** (Schwei, Daniel) (Entered: 02/09/2025) |
| 02/10/2025 | | TEXT ORDER denying 60 Motion to Intervene. So Ordered by Chief Judge John J. McConnell, Jr. on 2/10/2025. (Jackson, Ryan) (Entered: 02/10/2025) |
| 02/10/2025 | 71 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 72 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 73 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 74 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 75 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 76 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |

A650

| 02/10/2025 | 77 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
|---|---|---|
| 02/10/2025 | 78 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 79 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 80 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 81 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 82 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 83 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 84 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 85 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 86 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 87 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 88 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 89 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 90 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 91 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 92 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 93 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 94 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 95 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/10/2025) |
| 02/10/2025 | 96 | ORDER granting 66 Emergency MOTION to Enforce 50 Order on Motion for TRO. So Ordered by Chief Judge John J. McConnell, Jr. on 2/10/2025. (Jackson, Ryan) (Entered: 02/10/2025) |

A651

| 02/10/2025 | 97 | Summons Issued as to Scott Bessent, Denise Carter, Patricia Collins, Dorothy A Fink, Cameron Hamilton, Judith Kaleta, Ingrid Kolb, James R McHenry, III, Vince Micone, Kristi Noem, Sethuraman Panchanathan, James Payne, The National Science Foundation, Donald Trump, U.S. Department of Education, U.S. Department of Energy, U.S. Department of Health and Human Services, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of Labor, U.S. Department of Transportation, U.S. Department of the Treasury, U.S. Environmental Protection Agency, U.S. Federal Emergency Management Agency, U.S. Office of Management and Budget, Matthew Vaeth. (Attachments: # 1 Summons Issued as to D. Carter, # 2 Summons Issued as to U.S. Department of Education, # 3 Summons Issued as to U.S. Department of Energy, # 4 Summons Issued as to U.S. Department of Labor, # 5 Summons Issued as to U.S. Department of Justice, # 6 Summons Issued as to D. Trump, # 7 Summons Issued as to D. Fink, # 8 Summons Issued as to U.S. Department of Transporation, # 9 Summons Issued as to U.S. Environmental Protection Agency, # 10 Summons Issued as to U.S. Federal Emergency Management Agency, # 11 Summons Issued as to U.S. Department of Health and Human Services, # 12 Summons Issued as to U.S. Department of Homeland Security, # 13 Summons Issued as to I. Kolb, # 14 Summons Issued as to J. Payne, # 15 Summons Issued as to J. McHenry, # 16 Summons Issued as to J. Kaleta, # 17 Summons Issued as to K. Noem, # 18 Summons Issued as to M. Vaeth, # 19 Summons Issued as to The National Science Foundation, # 20 Summons Issued as to U.S. Office of Management and Budget, # 21 Summons Issued as to Collins, # 22 Summons Issued as to S. Bessent, # 23 Summons Issued as to S. Panchanathan, # 24 Summons Issued as to U.S. Department of Treasury, # 25 Summons Issued as to V. Micone) (Gonzalez Gomez, Viviana) (Entered: 02/10/2025) |
| 02/10/2025 | 98 | NOTICE OF APPEAL by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, Dorothy A Fink, U.S. Department of Education, Denise Carter, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan as to 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief (No fee paid, USA, Waived by Statute, or IFP.) **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 2/18/2025. (Schwei, Daniel) (Entered: 02/10/2025) |
| 02/10/2025 | 99 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b) re: 98 Notice of Appeal. Documents Sent: 50, 96. (Attachments: # 1 Record on Appeal) (Gonzalez Gomez, Viviana) (Entered: 02/10/2025) |
| 02/10/2025 | 100 | MOTION to Stay re 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief *Pending Appeal* filed by All Defendants. **Responses due by 2/24/2025.** (Schwei, Daniel) (Entered: 02/10/2025) |
| 02/11/2025 | | USCA Case Number 25-1138 for 98 Notice of Appeal, filed by U.S. Department of Energy, Scott Bessent, U.S. Department of Labor, U.S. Environmental Protection Agency, U.S. Federal Emergency Management Agency, U.S. Department of Health and Human |

| | | Services, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of the Treasury, U.S. Department of Homeland Security, Judith Kaleta, Donald Trump, Vince Micone, Patricia Collins, U.S. Department of Transportation, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Dorothy A Fink, James Payne, Denise Carter, Matthew Vaeth, Cameron Hamilton. (Hill, Cherelle) (Entered: 02/11/2025) |
|---|---|---|
| 02/11/2025 | 101 | *Corrected* DECLARATION re: *68 Declaration - Exhibit 83* by All Plaintiffs. (Giarrano, Leonard) **CLERK'S NOTE:** *Docket text modified on 2/11/2025 to tie to prior filing.* (Gonzalez Gomez, Viviana) (Entered: 02/11/2025) |
| 02/11/2025 | | TEXT ORDER: Plaintiffs State of NY, et al. shall have until **10 AM Wednesday 2/12/2025** to file a response to 100 MOTION to Stay re: 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief *Pending Appeal* filed by Donald Trump, et al. So Ordered by Chief Judge John J. McConnell, Jr. on 2/11/2025. (Jackson, Ryan) (Entered: 02/11/2025) |
| 02/11/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Russell Vought has been substituted for Matthew Vaeth as Director of the Office of Management and Budget in this action. So Ordered by Chief Judge John J. McConnell, Jr. on 2/11/2025. (Simoncelli, Michael) (Entered: 02/11/2025) |
| 02/11/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Sean P. Duffy has been substituted for Judith Kaleta as Secretary of the Department of Transportation in this action. So Ordered by Chief Judge John J. McConnell, Jr. on 2/11/2025. (Simoncelli, Michael) (Entered: 02/11/2025) |
| 02/11/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Christopher Allen Wright has been substituted for Ingrid Kolb as Secretary of the Department of Energy in this action. So Ordered by Chief Judge John J. McConnell, Jr. on 2/11/2025. (Simoncelli, Michael) (Entered: 02/11/2025) |
| 02/11/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Lee Michael Zeldin has been substituted for James Payne as Administrator of the Environmental Protection Agency in this action. So Ordered by Chief Judge John J. McConnell, Jr. on 2/11/2025. (Simoncelli, Michael) (Entered: 02/11/2025) |
| 02/11/2025 | 102 | Emergency MOTION *Requesting Ruling by 11am on February 12 for Permission to Continue Withholding FEMA and Other Funding* re: 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief filed by All Defendants. **Responses due by 2/25/2025.** (Attachments: # 1 Exhibit FEMA Hamilton Declaration, # 2 Exhibit Hamilton Decl Exhibit 1, # 3 Exhibit Hamilton Decl Exhibit 2, # 4 Exhibit Hamilton Decl Exhibit 3)(Schwei, Daniel) (Entered: 02/11/2025) |
| 02/11/2025 | 103 | Supplemental MOTION *Requesting Permission to Continue Payment Review Processes* re: 102 Emergency MOTION *Requesting Ruling by 11am on February 12 for Permission to Continue Withholding FEMA and Other Funding* re: 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief filed by All Defendants. **Responses due by 2/25/2025.** (Attachments: # 1 Exhibit PMS Bruce Declaration)(Schwei, Daniel) (Entered: 02/11/2025) |

| 02/11/2025 | 104 | RESPONSE In Opposition to 102 Emergency MOTION *Requesting Ruling by 11am on February 12 for Permission to Continue Withholding FEMA and Other Funding* re: 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief, 103 Supplemental MOTION *Requesting Permission to Continue Payment Review Processes* re: 102 Emergency MOTION *Requesting Ruling by 11am on February 12 for Permission to Continue Withholding FEMA and Other Funding* re: 50 Order o filed by All Plaintiffs. **Replies due by 2/18/2025.** (Muqaddam, Rabia) (Entered: 02/11/2025) |
| 02/11/2025 | 105 | RESPONSE In Opposition to 100 MOTION to Stay re 50 Order on Motion for TRO, 96 Order on Motion for Miscellaneous Relief *Pending Appeal* filed by All Plaintiffs. **Replies due by 2/18/2025.** (Lumelsky, Anna) (Entered: 02/11/2025) |
| 02/12/2025 | 106 | ORDER of the U.S. Court of Appeals for the First Circuit entered as to 98 Notice of Appeal, filed by U.S. Department of Energy, Scott Bessent, U.S. Department of Labor, U.S. Environmental Protection Agency, U.S. Federal Emergency Management Agency, U.S. Department of Health and Human Services, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of the Treasury, U.S. Department of Homeland Security, Judith Kaleta, Donald Trump, Vince Micone, Patricia Collins, U.S. Department of Transportation, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Dorothy A Fink, James Payne, Denise Carter, Matthew Vaeth, Cameron Hamilton. [25-1138] (Gonzalez Gomez, Viviana) (Entered: 02/12/2025) |
| 02/12/2025 | 107 | ORDER denying 102 Emergency MOTION *Requesting Ruling by 11am on February 12 for Permission to Continue Withholding FEMA and Other Funding*; and, denying as moot 103 Supplemental MOTION *Requesting Permission to Continue Payment Review Processes*. So Ordered by Chief Judge John J. McConnell, Jr. on 2/12/2025. (Jackson, Ryan) (Main Document 107 replaced on 2/12/2025: corrected typographical error) (Jackson, Ryan). (Entered: 02/12/2025) |
| 02/12/2025 | 108 | Supplemental Record on Appeal transmitted to U.S. Court of Appeals for the First Circuit re: 98 Notice of Appeal. Unrestricted Documents Sent: 107. (Attachments: # 1 Record on Appeal) (Gonzalez Gomez, Viviana) (Entered: 02/12/2025) |
| 02/12/2025 | 109 | MOTION for Leave to File Amicus Brief filed by Rubin Young. **Responses due by 2/26/2025.** (Simoncelli, Michael) (Entered: 02/12/2025) |
| 02/12/2025 | | TEXT ORDER denying 109 Motion for Leave to File Amicus Brief. So Ordered by Chief Judge John J. McConnell, Jr. on 2/12/2025. (Simoncelli, Michael) (Entered: 02/12/2025) |
| 02/12/2025 | 110 | MOTION for Leave to File Amicus Brief filed by American Center for Law and Justice. **Responses due by 2/26/2025.** (Attachments: # 1 Supporting Memorandum in Support of Defendants)(Bell, Brandon) (Entered: 02/12/2025) |
| 02/12/2025 | 111 | ORDER denying 100 Motion to Stay Pending Appeal. So Ordered by Chief Judge John J. McConnell, Jr. on 2/12/2025. (Jackson, Ryan) (Entered: 02/12/2025) |
| 02/12/2025 | 112 | Supplemental Record on Appeal transmitted to U.S. Court of Appeals for the First Circuit. 98 Notice of Appeal. Unrestricted Documents Sent: 111. (Attachments: # 1 Supplemental Record on Appeal)(Simoncelli, Michael) (Entered: 02/12/2025) |
| 02/12/2025 | 113 | RESPONSE In Opposition to 67 MOTION for Preliminary Injunction filed by All Defendants. **Replies due by 2/19/2025.** (Schwei, Daniel) (Entered: 02/12/2025) |
| 02/13/2025 | 114 | AMENDED COMPLAINT against All Defendants, filed by All Plaintiffs. (Attachments: # 1 Exhibit Exhibits A-I)(Smith, Turner) Modified on 2/13/2025 to correct docket text. (Simoncelli, Michael). (Entered: 02/13/2025) |

| 02/13/2025 | | TEXT ORDER denying 110 Motion for Leave to File Amicus Brief. The Court is not accepting any amicus briefs in this case. The issues before the Court are legal questions, not political, and both sides of the dispute are well represented. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Simoncelli, Michael) (Entered: 02/13/2025) |
|---|---|---|
| 02/13/2025 | 115 | MOTION for Robert Henry Weaver to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099021 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | 116 | MOTION for Laura Crittenden Tipton to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099026 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | 117 | MOTION for Steven Travis Mayo to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099032 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | 118 | MOTION for Taylor Payne to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099034 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 115 Motion to Appear Pro Hac Vice of Robert Henry Weaver. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 116 Motion to Appear Pro Hac Vice of Laura Crittenden Tipton. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 117 Motion to Appear Pro Hac Vice of Steven Travis Mayo. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 118 Motion to Appear Pro Hac Vice of Taylor Payne. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |
| 02/13/2025 | 119 | MOTION for Chris Pappavaselio to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099096 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | 120 | MOTION for Julia E. Jonas-Day to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2099115 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/13/2025) |
| 02/13/2025 | | NOTICE of Hearing on 67 MOTION for Preliminary Injunction: Motion Hearing (in person) *scheduled for Friday 2/21/2025 at 1:30 PM in Courtroom 1* before Chief Judge John J. McConnell, Jr.; a remote viewing option will be made available for the public and information on that will be available on the Court's website at https://www.rid.uscourts.gov/ (Jackson, Ryan) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 119 Motion to Appear Pro Hac Vice of Chris Pappavaselio. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |
| 02/13/2025 | | TEXT ORDER granting 120 Motion to Appear Pro Hac Vice of Julia Jonas-Day. So Ordered by Chief Judge John J. McConnell, Jr. on 2/13/2025. (Hill, Cherelle) (Entered: 02/13/2025) |

A655

| 02/14/2025 | 121 | JUDGMENT of the U.S. Court of Appeals for the First Circuit entered as to 98 Notice of Appeal, filed by U.S. Department of Energy, Scott Bessent, U.S. Department of Labor, U.S. Environmental Protection Agency, U.S. Federal Emergency Management Agency, U.S. Department of Health and Human Services, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of the Treasury, U.S. Department of Homeland Security, Judith Kaleta, Donald Trump, Vince Micone, Patricia Collins, U.S. Department of Transportation, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Dorothy A Fink, James Payne, Denise Carter, Matthew Vaeth, Cameron Hamilton. JUDGMENT entered voluntarily dismissed pursuant to Fed. R. App. P. 42(b)(2) with each party to bear its own costs. [25-1138] (Gonzalez Gomez, Viviana) (Entered: 02/14/2025) |
| 02/14/2025 | | DOCKET NOTE: Received a duplicate copy of a MOTION for Leave to File Amicus Brief filed by Rubin Young ECF 109 (Hill, Cherelle) (Entered: 02/14/2025) |
| 02/14/2025 | 122 | MANDATE of the U.S. Court of Appeals for the First Circuit issued as to and in accordance with 98 Notice of Appeal, filed by U.S. Department of Energy, Scott Bessent, U.S. Department of Labor, U.S. Environmental Protection Agency, U.S. Federal Emergency Management Agency, U.S. Department of Health and Human Services, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of the Treasury, U.S. Department of Homeland Security, Judith Kaleta, Donald Trump, Vince Micone, Patricia Collins, U.S. Department of Transportation, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Dorothy A Fink, James Payne, Denise Carter, Matthew Vaeth, Cameron Hamilton. [25-1138] (Gonzalez Gomez, Viviana) (Entered: 02/14/2025) |
| 02/14/2025 | 123 | MOTION for Leave to File Amicus Brief filed by Cody R. Hart, Derrill J. Fussell. **Responses due by 2/28/2025.** (Attachments: # 1 Amici Curiae Brief, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Memorandum in Support, # 8 Declaration of Service, # 9 Envelope)(Hill, Cherelle) (Attachment 3 replaced on 2/14/2025) (Hill, Cherelle). (Attachment 4 replaced on 2/14/2025) (Hill, Cherelle). (Entered: 02/14/2025) |
| 02/14/2025 | 124 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 125 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 126 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 127 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 128 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 129 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 130 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | 131 | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |

A656

| 02/14/2025 | [132](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [133](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [134](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [135](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [136](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [137](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [138](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [139](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [140](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [141](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [142](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [143](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [144](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [145](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [146](#) | Summons Request filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/14/2025) |
| 02/14/2025 | [147](#) | REPLY to Response re [113](#) Response to Motion filed by All Plaintiffs. (Muqaddam, Rabia) (Entered: 02/14/2025) |
| 02/18/2025 | | TEXT ORDER denying [123](#) Motion for Leave to File Amicus Brief: The Court is not accepting Amici briefs in this case both sides are adequately represented in this legal matter. So Ordered by Chief Judge John J. McConnell, Jr. on 2/18/2025. (Jackson, Ryan) (Entered: 02/18/2025) |
| 02/18/2025 | [148](#) | Summons Issued as to Jennifer Bastress Tahmasebi, Douglas Collins, Corporation for National and Community Service, Douglas Burgum, Gary Washington, Peter Hegseth, Michelle King, National Aeronautics and Space Administration, Jeremy Pelter, Janet Petro, Marco Rubio, Scott Turner, U.S. Agency for International Development, U.S. Department of Agriculture, U.S. Department of Commerce, U.S. Department of Defense, U.S. Department of Housing and Urban Development, U.S. Department of State, U.S. Department of Veterans Affairs, U.S. Department of the Interior, U.S. Small Business |

A657

| | | |
|---|---|---|
| | | Administration, U.S. Social Security Administration, Everett Woodel. (Attachments: # 1 Summons Issued as to Corporation for National and Community Service, # 2 Summons Issued as to U.S. Department of Commerce, # 3 Summons Issued as to D. Collins, # 4 Summons Issued as to U.S. Department of Defense, # 5 Summons Issued as to U.S. Department of the Interior, # 6 Summons Issued as to U.S. Department of Veterans Affairs, # 7 Summons Issued as to P. Hegseth, # 8 Summons Issued as to U.S. Department of Housing and Urban Development, # 9 Summons Issued as to M. King, # 10 Summons Issued as to N.A.S.A., # 11 Summons Issued as to J. Pelter, # 12 Summons Issued as to J. Petro, # 13 Summons Issued as to M. Rubio, # 14 Summons Issued as to U.S. Small Business Administration, # 15 Summons Issued as to U.S. Social Security Administration, # 16 Summons Issued as to U.S. Department of State, # 17 Summons Issued as to J. Bastress Tahmasebi, # 18 Summons Issued as to S. Turner, # 19 Summons Issued as to U.S. Agency for International Development, # 20 Summons Issued as to U.S. Department of Agriculture, # 21 Summons Issued as to G. Washington, # 22 Summons Issued as to E. Woodel) (Gonzalez Gomez, Viviana) (Entered: 02/18/2025) |
| 02/19/2025 | 149 | MOTION for Vanessa A. Arslanian to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2100707 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/19/2025) |
| 02/19/2025 | 150 | MOTION for Nathaniel James Hyman to Appear Pro Hac Vice ( filing fee paid $ 100.00, receipt number ARIDC-2100708 ) filed by State of Rhode Island. (Giarrano, Leonard) (Entered: 02/19/2025) |
| 02/19/2025 | | TEXT ORDER: For Friday's hearing (2/21/2025) on the Preliminary Injunction motion (ECF No. 67), the following schedule will be followed: Plaintiffs shall have up to one hour for presentation, Defendants will then have up to one hour for presentation, and then Plaintiffs will have up to 15 minutes for rebuttal. The hearing will begin at 1:30 p.m. EST and the Court will take a break from 3:30 p.m. to 3:45 p.m. EST. So Ordered by Chief Judge John J. McConnell, Jr. on 2/19/2025. (Jackson, Ryan) (Entered: 02/19/2025) |
| 02/19/2025 | | TEXT ORDER granting 149 Motion to Appear Pro Hac Vice of Vanessa A. Arslanian. So Ordered by Chief Judge John J. McConnell, Jr. on 2/19/2025. (Hill, Cherelle) (Entered: 02/19/2025) |
| 02/19/2025 | | TEXT ORDER granting 150 Motion to Appear Pro Hac Vice of Nathaniel James Hyman. So Ordered by Chief Judge John J. McConnell, Jr. on 2/19/2025. (Hill, Cherelle) (Entered: 02/19/2025) |
| 02/20/2025 | 151 | MOTION for Reconsideration re Order on Motion to Intervene *(ECF 60)*, MOTION for Leave to File Amicus Brief filed by Arthur West. **Responses due by 3/6/2025.** (Attachments: # 1 Exhibit - Governor Josh Green, M.D. Office of the Governor - News Release, # 2 Exhibit - Washington State Office of the Attorney General - Statement, # 3 Exhibit - FAA-2024-2006 SpaceX Revised EA Public Comment, # 4 Exhibit - Order Denying Intervention and Granting Amicus Status in CVH 2023 0069, # 5 Exhibit - National League of Legislatures Motion, # 6 Exhibit - Senate Bill Report SB 5436 Law OC 25, # 7 Email)(Gonzalez Gomez, Viviana) (Entered: 02/20/2025) |
| 02/20/2025 | 152 | NOTICE of Appearance by Heidi Parry Stern on behalf of State of Nevada (Stern, Heidi) (Entered: 02/20/2025) |
| 02/21/2025 | | TEXT ORDER denying 151 Motion for Reconsideration ; denying 151 Motion for Leave to File Amicus Brief: The Court is not accepting amici in this case; the issues and parties are well represented. So Ordered by Chief Judge John J. McConnell, Jr. on 2/21/2025. (Jackson, Ryan) (Entered: 02/21/2025) |
| 02/21/2025 | | Minute Entry for proceedings held before Chief Judge John J. McConnell, Jr.: Motion Hearing held on 2/21/2025 re: 67 MOTION for Preliminary Injunction filed by State of |

| | | NY, et al. Counsel present and arguing: S. Rice, R. Muqaddam; D. Schwei. Other counsel present: K. Sabatini; L. Faer and C. Chuang (via Zoom); M. Thomas-Jensen; A. Hemmer; T. McCombs; T. Smith; M. Myers; L. Giarrano; V. Arslanian; K. Dirks. States/Plaintiffs (S. Rice) argue its Motion for Preliminary Injunction. Court questions counsel throughout. States/Plaintiffs (R. Muqaddam) continue their argument and are further questioned by the Court. Defendants (Schwei) argue their objection to the Motion; Court questions counsel throughout. States/Plaintiffs (S. Rice) makes brief Reply argument. Court reiterates that the previously entered TRO is still in full force and effect. Court takes the Motion for Preliminary Injunction under advisement. Adjourned. (Court Reporter Denise Webb in Courtroom 1 at 1:30 PM) (Jackson, Ryan) Modified Text on 2/24/2025 (Hill, Cherelle). (Entered: 02/21/2025) |
|---|---|---|
| 02/23/2025 | 153 | TRANSCRIPT ORDER for proceedings held on 2/21/2025 before Judge Chief Judge McConnell. Daily Transcript selected. Transcript to be delivered following adjournment and prior to the normal opening hour of court on the following morning.. (Schwei, Daniel) (Entered: 02/23/2025) |
| 02/24/2025 | 154 | MOTION for Leave to File Amicus Brief filed by Anne Armstrong. **Responses due by 3/10/2025.** (Attachments: # 1 Proposed Amicus Brief, # 2 Email)(Gonzalez Gomez, Viviana) (Entered: 02/24/2025) |
| 02/24/2025 | 155 | TRANSCRIPT ORDER ACKNOWLEDGMENT Entered re: 153 Transcript Order,. Daily Transcript Ordered. Court Reporter/Transcriber: Denise Webb. (Dias, Jennifer) (Entered: 02/24/2025) |
| 02/24/2025 | | TEXT ORDER denying 154 Motion for Leave to File Amicus Brief filed by Anne Armstrong: The Court is not accepting any amicus briefs in this matter. So Ordered by Chief Judge John J. McConnell, Jr. on 2/24/2025. (Jackson, Ryan) (Entered: 02/24/2025) |
| 02/24/2025 | 156 | TRANSCRIPT ORDER for proceedings held on 2/21/2025 before Judge Chief Judge John J. McConnell, Jr.. Daily Transcript selected. Transcript to be delivered following adjournment and prior to the normal opening hour of court on the following morning.. (Giarrano, Leonard) (Entered: 02/24/2025) |
| 02/25/2025 | 157 | TRANSCRIPT ORDER for proceedings held on 02/21/2025 before Chief Judge John J. McConnell, Jr. Daily Transcript selected. Transcript to be delivered following adjournment and prior to the normal opening hour of court on the following morning. (Attachments: # 1 Email)(Hill, Cherelle) (Entered: 02/25/2025) |
| 02/25/2025 | 158 | AFFIDAVIT of Service, filed by State of Rhode Island for complaint Jennifer Bastress Tahmasebi served on 2/19/2025, answer due 4/21/2025; Scott Bessent served on 2/19/2025, answer due 4/21/2025; Denise Carter served on 2/19/2025, answer due 4/21/2025; Douglas Collins served on 2/19/2025, answer due 4/21/2025; Patricia Collins served on 2/19/2025, answer due 4/21/2025; Corporation for National and Community Service served on 2/19/2025, answer due 4/21/2025; Douglas Burgum served on 2/19/2025, answer due 4/21/2025; Dorothy A Fink served on 2/19/2025, answer due 4/21/2025; Gary Washington served on 2/19/2025, answer due 4/21/2025; Cameron Hamilton served on 2/19/2025, answer due 4/21/2025; Peter Hegseth served on 2/19/2025, answer due 4/21/2025; Judith Kaleta served on 2/19/2025, answer due 4/21/2025; Michelle King served on 2/19/2025, answer due 4/21/2025; Ingrid Kolb served on 2/19/2025, answer due 4/21/2025; James R McHenry, III served on 2/19/2025, answer due 4/21/2025; Vince Micone served on 2/19/2025, answer due 4/21/2025; National Aeronautics and Space Administration served on 2/19/2025, answer due 4/21/2025; Kristi Noem served on 2/19/2025, answer due 4/21/2025; Sethuraman Panchanathan served on 2/19/2025, answer due 4/21/2025; James Payne served on 2/19/2025, answer due 4/21/2025; Jeremy Pelter served on 2/19/2025, answer due 4/21/2025; Janet Petro served on 2/19/2025, answer due 4/21/2025; Marco Rubio served |

A659

| | | |
|---|---|---|
| | | on 2/19/2025, answer due 4/21/2025; The National Science Foundation served on 2/19/2025, answer due 4/21/2025; Donald Trump served on 2/19/2025, answer due 4/21/2025; Scott Turner served on 2/19/2025, answer due 4/21/2025; U.S. Agency for International Development served on 2/19/2025, answer due 4/21/2025; U.S. Department of Agriculture served on 2/19/2025, answer due 4/21/2025; U.S. Department of Commerce served on 2/19/2025, answer due 4/21/2025; U.S. Department of Defense served on 2/19/2025, answer due 4/21/2025; U.S. Department of Education served on 2/19/2025, answer due 4/21/2025; U.S. Department of Energy served on 2/19/2025, answer due 4/21/2025; U.S. Department of Health and Human Services served on 2/19/2025, answer due 4/21/2025; U.S. Department of Homeland Security served on 2/19/2025, answer due 4/21/2025; U.S. Department of Housing and Urban Development served on 2/19/2025, answer due 4/21/2025; U.S. Department of Justice served on 2/19/2025, answer due 4/21/2025; U.S. Department of Labor served on 2/19/2025, answer due 4/21/2025; U.S. Department of State served on 2/19/2025, answer due 4/21/2025; U.S. Department of Transportation served on 2/19/2025, answer due 4/21/2025; U.S. Department of Veterans Affairs served on 2/19/2025, answer due 4/21/2025; U.S. Department of the Interior served on 2/19/2025, answer due 4/21/2025; U.S. Department of the Treasury served on 2/19/2025, answer due 4/21/2025; U.S. Environmental Protection Agency served on 2/19/2025, answer due 4/21/2025; U.S. Federal Emergency Management Agency served on 2/19/2025, answer due 4/21/2025; U.S. Office of Management and Budget served on 2/19/2025, answer due 4/21/2025; U.S. Small Business Administration served on 2/19/2025, answer due 4/21/2025; U.S. Social Security Administration served on 2/19/2025, answer due 4/21/2025; Matthew Vaeth served on 2/19/2025, answer due 4/21/2025; Everett Woodel served on 2/19/2025, answer due 4/21/2025. (Attachments: # 1 Affidavit)(Giarrano, Leonard) (Entered: 02/25/2025) |
| 02/25/2025 | 159 | NOTICE by State of Delaware, District of Columbia, State of Hawaii, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of Nevada, State of North Carolina, State of New Mexico, State of New York, State of Oregon, State of Vermont, State of Washington, State of Wisconsin, State of California, State of Illinois, State of Rhode Island, State of New Jersey, Office of the Governor of Kentucky ex rel. Andy Beshear, Commonwealth of Massachusetts, State of Arizona, State of Colorado, State of Connecticut *of Supplemental Authority* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Hemmer, Alex) (Entered: 02/25/2025) |
| 02/28/2025 | 160 | Second MOTION to Enforce re: 50 Order on Motion for TRO filed by All Plaintiffs. **Responses due by 3/14/2025.** (Attachments: # 1 Affidavit Affirmation of Theodore McCombs)(Faer, Laura) (Entered: 02/28/2025) |
| 03/04/2025 | | TEXT ORDER: Defendant shall file a response on or before March 7th, 2025 re: 160 Second MOTION to Enforce re: 50 Order on Motion for TRO. So Ordered by Chief Judge John J. McConnell, Jr. on 3/4/2025. (Jackson, Ryan) (Entered: 03/04/2025) |
| 03/05/2025 | | TEXT ORDER Vacating this Court's Text Order dated 3/4/2025. No Further filings should be made re: 160 Second MOTION to Enforce re: 50 Order on Motion for TRO at this time. So Ordered by Chief Judge John J. McConnell, Jr. on 3/5/2025. (Jackson, Ryan) (Entered: 03/05/2025) |
| 03/06/2025 | 161 | MEMORANDUM AND ORDER granting 67 Motion for Preliminary Injunction; denying as moot 160 Second MOTION to Enforce re: 50 Order on TRO; and, denying the Defendants' request to stay this Order pending appeal to the First Circuit. Defendant Federal Emergency Management Agency ("FEMA") shall file a status report on or before 3/14/2025, informing the Court of the status of their compliance with this order. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Jackson, Ryan) (Entered: 03/06/2025) |

A660

| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Robert F. Kennedy, Jr. has been substituted for Dorothy A. Fink, MD as Secretary of the Department of Health and Human Services. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
|---|---|---|
| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Linda McMahon has been substituted for Denise Carter as Secretary of the Department of Education. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Brooke Rollins has been substituted for Gary Washington as Secretary of the Department of Agriculture. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Howard Lutnick has been substituted for Jeremy Pelter as Secretary of the Department of Commerce. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Leland Dudek has been substituted for Michelle King as Acting Commissioner of the Social Security Administration. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
| 03/06/2025 | | TEXT ORDER: Pursuant to Fed. R. Civ. P. 25(d), Kelly Loeffler has been substituted for Everett Woodel as Administrator of the Small Business Administration. So Ordered by Chief Judge John J. McConnell, Jr. on 3/6/2025. (Simoncelli, Michael) (Entered: 03/06/2025) |
| 03/10/2025 | 162 | NOTICE OF APPEAL by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, U.S. Department of Education, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan, Lee Michael Zeldin, Christopher Allen Wright, Sean P. Duffy, Russell Vought, U.S. Department of the Interior, Douglas Burgum, Pamela Bondi, U.S. Department of Agriculture, U.S. Department of Housing and Urban Development, Scott Turner, U.S. Department of State, Marco Rubio, U.S. Agency for International Development, U.S. Department of Defense, Peter Hegseth, U.S. Department of Veterans Affairs, Douglas Collins, U.S. Department of Commerce, National Aeronautics and Space Administration, Janet Petro, Corporation for National and Community Service, Jennifer Bastress Tahmasebi, U.S. Social Security Administration, U.S. Small Business Administration, Robert F. Kennedy, Jr., Linda McMahon, Brooke Rollins, Howard Lutnick, Leland C. Dudek, Kelly Loeffler as to 161 Order on Motion for Preliminary Injunction,,, Order on Motion for Miscellaneous Relief,, (No fee paid, USA, Waived by Statute, or IFP.)<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 3/17/2025. (Schwei, Daniel) (Entered: 03/10/2025) |
| 03/10/2025 | 163 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in |

| | | accordance with 1st Cir. R. 11.0(b). <u>162</u> Notice of Appeal. (Attachments: # <u>1</u> Record on Appeal)(Hill, Cherelle) (Entered: 03/10/2025) |
|---|---|---|
| 03/10/2025 | | USCA Case Number 25-1236 for <u>162</u> Notice of Appeal, filed by U.S. Department of State, Corporation for National and Community Service, Douglas Burgum, Lee Michael Zeldin, U.S. Environmental Protection Agency, Howard Lutnick, U.S. Department of Health and Human Services, U.S. Department of the Interior, Peter Hegseth, U.S. Small Business Administration, National Aeronautics and Space Administration, U.S. Department of the Treasury, U.S. Department of Homeland Security, U.S. Agency for International Development, Donald Trump, Vince Micone, Robert F. Kennedy, Jr., Linda McMahon, U.S. Department of Agriculture, U.S. Department of Transportation, Patricia Collins, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Brooke Rollins, Leland C. Dudek, Christopher Allen Wright, Scott Turner, Matthew Vaeth, Douglas Collins, U.S. Department of Energy, U.S. Department of Veterans Affairs, Scott Bessent, U.S. Department of Labor, U.S. Department of Housing and Urban Development, U.S. Federal Emergency Management Agency, U.S. Department of Commerce, Marco Rubio, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of Defense, Judith Kaleta, Janet Petro, Pamela Bondi, U.S. Social Security Administration, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, Kelly Loeffler, Jennifer Bastress Tahmasebi, Sean P. Duffy, James Payne, Russell Vought, Cameron Hamilton. (Hill, Cherelle) (Entered: 03/10/2025) |
| 03/14/2025 | <u>164</u> | TRANSCRIPT of Motion on Preliminary Injunction held on 02/21/2025 before Judge Chief Judge John J. McConnell, Jr.. Court Reporter/Transcriber Denise A Webb, Telephone number 4017527045. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **<span style="color:red">NOTICE TO COUNSEL: Redaction Requests must be filed for personal identifiers only. All other redactions must be requested by motion. For local policy and sample redaction request visit our website at www.rid.uscourts.gov and select Transcripts under the Case Information menu option</span>**. Redaction Request due 4/4/2025. Redacted Transcript Deadline set for 4/14/2025. Release of Transcript Restriction set for 6/12/2025. (Webb, Denise) (Entered: 03/14/2025) |
| 03/14/2025 | <u>165</u> | TRANSCRIPT of Motion for Temporary Restraining Order held on 01/29/2025 before Judge Chief Judge John J. McConnell, Jr.. Court Reporter/Transcriber Denise A Webb, Telephone number 4017527045. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **<span style="color:red">NOTICE TO COUNSEL: Redaction Requests must be filed for personal identifiers only. All other redactions must be requested by motion. For local policy and sample redaction request visit our website at www.rid.uscourts.gov and select Transcripts under the Case Information menu option</span>**. Redaction Request due 4/4/2025. Redacted Transcript Deadline set for 4/14/2025. Release of Transcript Restriction set for 6/12/2025. (Webb, Denise) Modified on 4/4/2025 to correct docket text(Simoncelli, Michael). (Entered: 03/14/2025) |

A662

| 03/14/2025 | [166](#) | STATUS REPORT *Regarding FEMA's Compliance With Preliminary Injunction* by All Defendants. (Attachments: # [1](#) Exhibit FEMA Hamilton Declaration, # [2](#) Exhibit Hamilton Decl. Exhibit 1, # [3](#) Exhibit Hamilton Decl. Exhibit 2, # [4](#) Exhibit Hamilton Decl. Exhibit 3, # [5](#) Exhibit Hamilton Decl. Exhibit 4, # [6](#) Exhibit Hamilton Decl. Exhibit 5, # [7](#) Exhibit Hamilton Decl. Exhibit 6, # [8](#) Exhibit Hamilton Decl. Exhibit 7, # [9](#) Exhibit Hamilton Decl. Exhibit 8, # [10](#) Exhibit Hamilton Decl. Exhibit 9, # [11](#) Exhibit Hamilton Decl. Exhibit 10, # [12](#) Exhibit Hamilton Decl. Exhibit 11, # [13](#) Exhibit Hamilton Decl. Exhibit 12, # [14](#) Exhibit OMB Written Notice Regarding Preliminary Injunction)(Freidah, Andrew) (Entered: 03/14/2025) |
|---|---|---|
| 03/17/2025 | [167](#) | RESPONSE IN OPPOSITION to ECF [166](#) STATUS REPORT by State of Delaware, District of Columbia, State of Hawaii, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of Nevada, State of North Carolina, State of New Mexico, State of New York, State of Oregon, State of Vermont, State of Washington, State of Wisconsin, State of California, State of Illinois, State of Rhode Island, State of New Jersey, Office of the Governor of Kentucky ex rel. Andy Beshear, Commonwealth of Massachusetts, State of Arizona, State of Colorado, State of Connecticut re [166](#) Status Report,, . (Thomas-Jensen, Molly) Modified Text on 3/20/2025 (Hill, Cherelle). (Entered: 03/17/2025) |
| 03/24/2025 | [168](#) | MOTION for Enforcement of Preliminary Injunction re: [161](#) Order on Motion for Preliminary Injunction,,, Order on Motion for Miscellaneous Relief,, [160](#) Second MOTION to Enforce re: [50](#) Order on Motion for TRO filed by All Plaintiffs. **Responses due by 4/7/2025.** (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4) (Rice, Sarah) (Entered: 03/24/2025) |
| 03/25/2025 | | TEXT ORDER: Defendants shall file a response on or before March 27th, 2025 to [168](#) MOTION for Enforcement of Preliminary Injunction re: [161](#) Order on Motion for Preliminary Injunction. So Ordered by Chief Judge John J. McConnell, Jr. on 3/25/2025. (Jackson, Ryan) (Entered: 03/25/2025) |
| 03/26/2025 | [169](#) | NOTICE by State of Delaware, District of Columbia, State of Hawaii, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of Nevada, State of North Carolina, State of New Mexico, State of New York, State of Oregon, State of Vermont, State of Washington, State of Wisconsin, State of California, State of Illinois, State of Rhode Island, State of New Jersey, Office of the Governor of Kentucky ex rel. Andy Beshear, Commonwealth of Massachusetts, State of Arizona, State of Colorado, State of Connecticut *of supplemental filing* (Attachments: # [1](#) Affidavit of R. Henry Weaver) (Hemmer, Alex) (Entered: 03/26/2025) |
| 03/27/2025 | [170](#) | OPINION of the U.S. Court of Appeals for the First Circuit entered as to [162](#) Notice of Appeal, filed by U.S. Department of State, Corporation for National and Community Service, Douglas Burgum, Lee Michael Zeldin, U.S. Environmental Protection Agency, Howard Lutnick, U.S. Department of Health and Human Services, U.S. Department of the Interior, Peter Hegseth, U.S. Small Business Administration, National Aeronautics and Space Administration, U.S. Department of the Treasury, U.S. Department of Homeland Security, U.S. Agency for International Development, Donald Trump, Vince Micone, Robert F. Kennedy, Jr., Linda McMahon, U.S. Department of Agriculture, U.S. Department of Transportation, Patricia Collins, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Brooke Rollins, Leland C. Dudek, Christopher Allen Wright, Scott Turner, Matthew Vaeth, Douglas Collins, U.S. Department of Energy, U.S. Department of Veterans Affairs, Scott Bessent, U.S. Department of Labor, U.S. Department of Housing and Urban Development, U.S. Federal Emergency Management Agency, U.S. Department of Commerce, Marco Rubio, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of Defense, Judith Kaleta, Janet Petro, Pamela Bondi, U.S. Social Security Administration, U.S. Office of Management and |

| | | Budget, U.S. Department of Education, Kristi Noem, Kelly Loeffler, Jennifer Bastress Tahmasebi, Sean P. Duffy, James Payne, Russell Vought, Cameron Hamilton. OPINION issued by David J. Barron, Chief Appellate Judge; Lara E. Montecalvo, Appellate Judge and Julie Rikelman, Appellate Judge. Published. [25-1236] (Gonzalez Gomez, Viviana) (Entered: 03/27/2025) |
|---|---|---|
| 03/27/2025 | 171 | ORDER of the U.S. Court of Appeals for the First Circuit entered as to 162 Notice of Appeal, filed by U.S. Department of State, Corporation for National and Community Service, Douglas Burgum, Lee Michael Zeldin, U.S. Environmental Protection Agency, Howard Lutnick, U.S. Department of Health and Human Services, U.S. Department of the Interior, Peter Hegseth, U.S. Small Business Administration, National Aeronautics and Space Administration, U.S. Department of the Treasury, U.S. Department of Homeland Security, U.S. Agency for International Development, Donald Trump, Vince Micone, Robert F. Kennedy, Jr., Linda McMahon, U.S. Department of Agriculture, U.S. Department of Transportation, Patricia Collins, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Brooke Rollins, Leland C. Dudek, Christopher Allen Wright, Scott Turner, Matthew Vaeth, Douglas Collins, U.S. Department of Energy, U.S. Department of Veterans Affairs, Scott Bessent, U.S. Department of Labor, U.S. Department of Housing and Urban Development, U.S. Federal Emergency Management Agency, U.S. Department of Commerce, Marco Rubio, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of Defense, Judith Kaleta, Janet Petro, Pamela Bondi, U.S. Social Security Administration, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, Kelly Loeffler, Jennifer Bastress Tahmasebi, Sean P. Duffy, James Payne, Russell Vought, Cameron Hamilton. ORDER entered by David J. Barron, Chief Appellate Judge; Lara E. Montecalvo, Appellate Judge and Julie Rikelman, Appellate Judge: In accordance with the opinion of even date, the appellants' motion for a stay pending appeal of the District Court's preliminary injunction is denied. The proposed amicus curiae briefs are accepted this day. [25-1236] (Gonzalez Gomez, Viviana) (Entered: 03/27/2025) |
| 03/27/2025 | 172 | RESPONSE In Opposition to 168 MOTION for Enforcement of Preliminary Injunction re: 161 Order on Motion for Preliminary Injunction,,, Order on Motion for Miscellaneous Relief,, 160 Second MOTION to Enforce re: 50 Order on Motion for TRO filed by All Defendants. **Replies due by 4/3/2025.** (Attachments: # 1 Exhibit Third Hamilton Declaration, # 2 Exhibit Third Hamilton Decl. Exhibit 1)(Freidah, Andrew) (Entered: 03/27/2025) |
| 03/27/2025 | | TEXT ORDER: Plaintiffs shall have until 3/31/25 to file a Reply to ECF No. 172, if they wish re: 172 Response to Motion filed by all Defendants. So Ordered by Chief Judge John J. McConnell, Jr. on 3/27/2025. (Jackson, Ryan) (Entered: 03/27/2025) |
| 03/31/2025 | 173 | REPLY to Response re 172 Response to Motion, filed by State of Delaware, District of Columbia, State of Hawaii, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of Nevada, State of North Carolina, State of New Mexico, State of New York, State of Oregon, State of Vermont, State of Washington, State of Wisconsin, State of California, State of Illinois, State of Rhode Island, State of New Jersey, Office of the Governor of Kentucky ex rel. Andy Beshear, Commonwealth of Massachusetts, State of Arizona, State of Colorado, State of Connecticut. (Dirks, Katherine) (Entered: 03/31/2025) |
| 03/31/2025 | 174 | REPLY to Response re 172 Response to Motion, *(CORRECTED)* filed by State of Delaware, District of Columbia, State of Hawaii, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of Nevada, State of North Carolina, State of New Mexico, State of New York, State of Oregon, State of Vermont, State of Washington, State of Wisconsin, State of California, State of Illinois, State of Rhode Island, State of New Jersey, Office of the Governor of Kentucky ex rel. Andy Beshear, Commonwealth of |

A664

| | | |
|---|---|---|
| | | Massachusetts, State of Arizona, State of Colorado, State of Connecticut. (Dirks, Katherine) (Entered: 03/31/2025) |
| 04/04/2025 | 175 | MEMORANDUM AND ORDER granting 168 MOTION for Enforcement of Preliminary Injunction. So Ordered by Chief Judge John J. McConnell, Jr. on 4/4/2025. (Simoncelli, Michael) Modified on 4/7/2025: Document replaced for typographical error (Jackson, Ryan). (Main Document 175 replaced on 4/7/2025) (Jackson, Ryan). (Entered: 04/04/2025) |
| 04/05/2025 | 176 | Emergency MOTION for Reconsideration re 175 Order on Motion for Miscellaneous Relief , MOTION to Alter Judgment filed by All Defendants. **Responses due by 4/21/2025.** (Attachments: # 1 Exhibit A - Department of Education v California, Supreme Court Slip Opinion)(Schwei, Daniel) (Entered: 04/05/2025) |
| 04/06/2025 | 177 | MOTION to Seal *List of Notice Recipients; Notice of Compliance Regarding FEMA* Filed. Notice Sent To: All Defendants. (Attachments: # 1 Exhibit Exhibit A - Written Notice of Court Orders, # 2 Proposed Sealed Document Exhibit B - List of Notice Recipients)(Freidah, Andrew) **This entry/document has been filed under seal pursuant to statute, rule or court order and access is restricted. Please login to CM/ECF to view document(s).** (Entered: 04/06/2025) |
| 04/06/2025 | 178 | NOTICE by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, U.S. Department of Education, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan, Lee Michael Zeldin, Christopher Allen Wright, Sean P. Duffy, Russell Vought, U.S. Department of the Interior, Douglas Burgum, Pamela Bondi, U.S. Department of Agriculture, U.S. Department of Housing and Urban Development, Scott Turner, U.S. Department of State, Marco Rubio, U.S. Agency for International Development, U.S. Department of Defense, Peter Hegseth, U.S. Department of Veterans Affairs, Douglas Collins, U.S. Department of Commerce, National Aeronautics and Space Administration, Janet Petro, Corporation for National and Community Service, Jennifer Bastress Tahmasebi, U.S. Social Security Administration, U.S. Small Business Administration, Robert F. Kennedy, Jr., Linda McMahon, Brooke Rollins, Howard Lutnick, Leland C. Dudek, Kelly Loeffler *of Compliance Regarding FEMA* (Attachments: # 1 Exhibit Exhibit A - Written Notice of Court Orders)(Freidah, Andrew) (Entered: 04/06/2025) |
| 04/06/2025 | 179 | RESPONSE In Opposition to 176 Emergency MOTION for Reconsideration re 175 Order on Motion for Miscellaneous Relief MOTION to Alter Judgment filed by All Plaintiffs. **Replies due by 4/14/2025.** (Thomas-Jensen, Molly) (Entered: 04/06/2025) |
| 04/07/2025 | | TEXT ORDER granting 177 Motion to Seal. So Ordered by Chief Judge John J. McConnell, Jr. on 4/7/2025. (Jackson, Ryan) (Entered: 04/07/2025) |
| 04/07/2025 | | TEXT ORDER Staying 175 Order on Motion for Miscellaneous Relief: In light of the recent Supreme Court Order (*Department of Education v. California*, No. 24A910, April 4, 2025), and the Defendants' Motion for Reconsideration 176 , the Court temporarily STAYS its enforcement Order 175 until such time as the Court can adequately address the Motion for Reconsideration. So Ordered by Chief Judge John J. McConnell, Jr. on 4/7/2025. (Jackson, Ryan) (Entered: 04/07/2025) |
| 04/07/2025 | 181 | REPLY to Response re 179 Response to Motion, filed by All Defendants. (Schwei, Daniel) (Entered: 04/07/2025) |

| 04/14/2025 | 182 | ORDER denying 176 Motion for Reconsideration of the Court's enforcement order; and denying alternative request for a stay pending appeal. So Ordered by Chief Judge John J. McConnell, Jr. on 4/14/2025. (Simoncelli, Michael) (Entered: 04/14/2025) |
| 04/17/2025 | 183 | Consent MOTION to Stay *April 21, 2025, Deadline to Respond to Plaintiffs' Complaint* filed by All Defendants. **Responses due by 5/1/2025.** (Sirkovich, Eitan) (Entered: 04/17/2025) |
| 04/21/2025 | | TEXT ORDER granting 183 Motion to Stay 4/21/2025 Deadline for Defendants to Respond to Plaintiffs' Complaint. So Ordered by Chief Judge John J. McConnell, Jr. on 4/21/2025. (Jackson, Ryan) (Entered: 04/21/2025) |
| 04/24/2025 | 184 | NOTICE by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, U.S. Department of Education, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan, Lee Michael Zeldin, Christopher Allen Wright, Sean P. Duffy, Russell Vought, U.S. Department of the Interior, Douglas Burgum, Pamela Bondi, U.S. Department of Agriculture, U.S. Department of Housing and Urban Development, Scott Turner, U.S. Department of State, Marco Rubio, U.S. Agency for International Development, U.S. Department of Defense, Peter Hegseth, U.S. Department of Veterans Affairs, Douglas Collins, U.S. Department of Commerce, National Aeronautics and Space Administration, Janet Petro, Corporation for National and Community Service, Jennifer Bastress Tahmasebi, U.S. Social Security Administration, U.S. Small Business Administration, Robert F. Kennedy, Jr., Linda McMahon, Brooke Rollins, Howard Lutnick, Leland C. Dudek, Kelly Loeffler *of Compliance Regarding FEMA Payments* (Attachments: # 1 Exhibit List of FEMA Grant Payments to Plaintiff States)(Freidah, Andrew) (Entered: 04/24/2025) |
| 04/28/2025 | 185 | NOTICE OF APPEAL by Donald Trump, U.S. Office of Management and Budget, Matthew Vaeth, U.S. Department of the Treasury, Scott Bessent, Patricia Collins, U.S. Department of Health and Human Services, U.S. Department of Education, U.S. Federal Emergency Management Agency, Cameron Hamilton, U.S. Department of Transportation, Judith Kaleta, U.S. Department of Labor, Vince Micone, U.S. Department of Energy, Ingrid Kolb, U.S. Environmental Protection Agency, James Payne, U.S. Department of Homeland Security, Kristi Noem, U.S. Department of Justice, James R McHenry, III, The National Science Foundation, Sethuraman Panchanathan, Lee Michael Zeldin, Christopher Allen Wright, Sean P. Duffy, Russell Vought, U.S. Department of the Interior, Douglas Burgum, Pamela Bondi, U.S. Department of Agriculture, U.S. Department of Housing and Urban Development, Scott Turner, U.S. Department of State, Marco Rubio, U.S. Agency for International Development, U.S. Department of Defense, Peter Hegseth, U.S. Department of Veterans Affairs, Douglas Collins, U.S. Department of Commerce, National Aeronautics and Space Administration, Janet Petro, Corporation for National and Community Service, Jennifer Bastress Tahmasebi, U.S. Social Security Administration, U.S. Small Business Administration, Robert F. Kennedy, Jr., Linda McMahon, Brooke Rollins, Howard Lutnick, Leland C. Dudek, Kelly Loeffler as to 182 Order on Motion for Reconsideration, Order on Motion to Alter Judgment, 175 Order on Motion for Miscellaneous Relief, (No fee paid, USA, Waived by Statute, or IFP.)<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF** |

| | | |
|---|---|---|
| | | **Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 5/5/2025. (Freidah, Andrew) (Entered: 04/28/2025) |
| 04/28/2025 | 186 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b) re: 185 Notice of Appeal. Documents Sent: 175, 182. (Attachments: # 1 Record on Appeal) (Gonzalez Gomez, Viviana) (Entered: 04/28/2025) |
| 04/28/2025 | | USCA Case Number 25-1413 for 185 Notice of Appeal, filed by U.S. Department of State, Corporation for National and Community Service, Douglas Burgum, Lee Michael Zeldin, U.S. Environmental Protection Agency, Howard Lutnick, U.S. Department of Health and Human Services, U.S. Department of the Interior, Peter Hegseth, U.S. Small Business Administration, National Aeronautics and Space Administration, U.S. Department of the Treasury, U.S. Department of Homeland Security, U.S. Agency for International Development, Donald Trump, Vince Micone, Robert F. Kennedy, Jr., Linda McMahon, U.S. Department of Agriculture, U.S. Department of Transportation, Patricia Collins, U.S. Department of Justice, James R McHenry, III, Ingrid Kolb, Brooke Rollins, Leland C. Dudek, Christopher Allen Wright, Scott Turner, Matthew Vaeth, Douglas Collins, U.S. Department of Energy, U.S. Department of Veterans Affairs, Scott Bessent, U.S. Department of Labor, U.S. Department of Housing and Urban Development, U.S. Federal Emergency Management Agency, U.S. Department of Commerce, Marco Rubio, Sethuraman Panchanathan, The National Science Foundation, U.S. Department of Defense, Judith Kaleta, Janet Petro, Pamela Bondi, U.S. Social Security Administration, U.S. Office of Management and Budget, U.S. Department of Education, Kristi Noem, Kelly Loeffler, Jennifer Bastress Tahmasebi, Sean P. Duffy, James Payne, Russell Vought, Cameron Hamilton. (Gonzalez Gomez, Viviana) (Entered: 04/28/2025) |
| 05/13/2025 | 187 | JUDGMENT of the U.S. Court of Appeals for the First Circuit. Judgment received regarding First Circuit Case #25-8010 that was filed directly with the Court of Appeals. (Hill, Cherelle) (Entered: 05/13/2025) |

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/25/2025 13:56:38 | | |
| **PACER Login:** | bjspringer | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00039-JJM-PAS |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, I electronically filed the foregoing

appendix with the Clerk of the Court for the United States Court of Appeals for the

First Circuit by using the appellate CM/ECF system.  Service will be accomplished by

the appellate CM/ECF system.

*s/ Brian J. Springer*
Brian J. Springer